
Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA,

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Judge:   Hon. James Donato |

# TABLE OF CONTENTS

Page

I. Introduction ...................................................................................................................1

II. Background ...................................................................................................................2

    A. Google's Chat Product .......................................................................................2

    B. Google's Preservation Efforts ............................................................................4

    C. Procedural History .............................................................................................4

III. Argument .......................................................................................................................4

    A. Google Took Reasonable Steps to Preserve Relevant Chats. ............................5

    B. Plaintiffs Fail to Demonstrate That They Suffered Any Prejudice. ...................7

    C. Plaintiffs Fail to Show that Google Intended to Deprive Plaintiffs of Information. .......................................................................................................9

IV. Conclusion ...................................................................................................................10

-i-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................................................6

*CAT3, LLC v. Black Lineage, Inc.*,
   164 F. Supp. 3d 488 (S.D.N.Y. 2016) ....................................................................................10

*Chinitz v. Intero Real Est. Servs.*,
   No. 18-cv-05623-BLF, 2020 WL 7389417 (N.D. Cal. May 13, 2020) ......................................5

*Colonies Partners, L.P. v. County of San Bernardino*,
   No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) .......................10

*Fast v. GoDaddy.com LLC*,
   No. CV-20-01448-PHX-DGC, 2022 WL 325708 (D. Ariz. Feb. 3, 2022)................................10

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020)......................................................................................................2

*Function Media, L.L.C. v. Google, Inc.*,
   No. 2:07–cv–279–CE, 2011 WL 4017953 (E.D. Tex. Sept. 9, 2011) ........................................9

*Glaukos Corp. v. Ivantis, Inc.*,
   No. SACV 18-620 JVS (JDEx), 2020 WL 10501850 (C.D. Cal. June 17, 2020)......................6

*John v. County of Lake*,
   No. 18-cv-06935-WHA(SK), 2020 WL 3630391 (N.D. Cal. July 3, 2020) .............................10

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006)......................................................................................................7

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   No. 15cv9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ...............................8

*Matthew Enterprise, Inc. v. Chrysler Group LLC*,
   No. 13-cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ......................................8

*Sanchez v. Jiles*,
   2012 WL 13005996 (C.D. Cal. June 14, 2012).........................................................................7

*Small v. Univ. Med. Ctr.*,
   No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238 (D. Nev. July 31, 2018) ..............................5

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
   857 F.2d 600 (9th Cir. 1988)......................................................................................................7

*WeRide Corp. v. Kun Huang*,
   No. 5:18-cv-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ................................ 6, 10

*Youngevity Int'l v. Smith*,
   No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ................................ 9

**FEDERAL RULES**

Fed. R. Civ. P. 37 ............................................................................................................... 1, 5, 7, 9

Fed. R. Civ. P. 37, Comment (2015) ................................................................................................ 6

Fed. R. Civ. P. 37(e) ................................................................................................... 1, passim

Fed. R. Civ. P. 37(e)(1) ............................................................................................................. 2, 5

Fed. R. Civ. P 37(e)(2) ............................................................................................................ 2, 5, 9

Fed. R. Civ. P. 37(e) & Comment (2015) ........................................................................................ 1, 5

I.  **INTRODUCTION**

Google fully complied with its discovery obligations by taking robust steps to preserve relevant chats, including by issuing litigation hold notices regarding chat preservation and automatically preserving certain categories of chats. As a result of its efforts, Google has produced thousands of chats and *millions* of other documents in this litigation.

Plaintiffs disregard Google's preservation efforts and contend that Google is required to automatically preserve every chat from every custodian, regardless of relevance. But that is not the law; Rule 37 requires "reasonable steps" not "perfection." Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P. 37(e). Nor do Plaintiffs show that Google acted with the "intent to deprive" Plaintiffs of information in this litigation—a prerequisite for imposing the extreme sanction of an adverse inference instruction. To the contrary, Google's efforts to preserve and produce chats and other information dispel any notion that Google sought to deprive Plaintiffs of evidence. The Court should deny this meritless motion.

*First*, Google took reasonable steps to preserve relevant ESI. Google automatically preserved relevant employees' emails, custodial documents, and certain categories of chats. In addition, Google issued timely litigation hold notices and reminders to custodians regarding the preservation of chats. As a result of these efforts, Google has produced over *3.1 million* documents in this litigation, including 3,084 relevant chats from a collection of over 176,000 chats. Plaintiffs appear to contend these efforts were not just inadequate, but also *irrelevant*—that Google was subject to a *per se* rule requiring preservation of *every chat* by every custodian. Mot. at 6. That is not the law, and Plaintiffs do not cite any case establishing this purported *per se* rule.

In fact, Rule 37(e) "does not call for perfection," and recognizes that "reasonable steps to preserve suffice." Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P. 37(e). As deposition testimony in this case confirms, unlike emails, chats are typically used by Google employees to discuss *non-substantive* issues and coordinate simple logistics, such as employees' availability for meetings or video calls. In light of this fact, Google reasonably relied on a combination of litigation hold instructions regarding chats and automatic preservation for some categories of chats (as accurately described in Google's retention policy, contrary to Plaintiffs' selective misquoting).

To further confirm the reasonableness of its chat preservation efforts, Google offered to share the relevant portions of its litigation hold notices (without waiving privilege). But because Plaintiffs insist on a *per se chat preservation* rule that is unsupported by case law, they refused Google's offer, calling such notices "irrelevant." *See* Status Conference Hearing Transcript ("5.12.22 Hr'g Tr.") 27:8-10), ECF No. 229.

***Second*,** Plaintiffs do not show they suffered any prejudice under Rule 37(e)(1). The focus of this antitrust litigation is on (1) defining the "relevant market," (2) whether Plaintiffs can show evidence of "reduced output, increased prices, or decreased quality" as a result of Google's alleged conduct, and (3) Google's "procompetitive rationale[s]." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 989, 991-92 (9th Cir. 2020). Plaintiffs fail to explain why any unique evidence regarding their claims would be found in chats rather than in the massive corpus of contracts, emails, presentations, strategy documents, and transactional data produced by Google. As this Court previously recognized: "When you have email and memos and documents and everything else, the chats seems [like] the tail on the dog, in terms of where you're going to find good evidence." *See* 5.12.22 Hr'g Tr. 29:8-11.

***Third***, Plaintiffs' requested sanction—an adverse inference instruction—is reserved for those situations where a party has destroyed evidence with the "intent to deprive" another of use in litigation. *See* Fed. R. Civ. P 37(e)(2). The premise of an adverse inference instruction is that "a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence." Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P. 37(e). That inference makes no sense here in light of Google's extensive efforts to preserve custodial ESI and its issuance of litigation hold instructions regarding chat preservation. For these reasons, described more fully below, Plaintiffs' Motion should be denied.

## II. BACKGROUND

### A. Google's Chat Product

Currently, and as relevant here, Google offers Chat, a product that can be used for: (1) one-on-one chats and group chats, and (2) so-called "Threaded Rooms / Spaces," which are a

variation of a group chat. (*See* Declaration of Andrew Rope ¶ 2 ("AR Decl.").) Google employees generally use chats for short, non-substantive "pings" on logistics, scheduling, or personal matters. For instance, Tian Lim, VP of User Experience & Product Management, testified, "[W]e call them pings to various members of our team to coordinate meetings, quickly check in on the status of something. But it's typically quite logistics – logistical in nature." (Ex. 4 to Joint Statement Regarding Google's Preservation of Instant Messages (Lim Dep. 442:16-22), ECF No. 257-5.) Similarly, Mike Marchak, Director of Play Partnerships, Strategy & Operations, testified that "[c]hats are generally used for like quick updates for a meeting or need to reschedule or something like that." (Declaration of Lee M. Mason ("Mason Decl.") Ex. 5 (Marchak Dep. 32:18-21), ECF No. 348-7.) Jamie Rosenberg, VP of Strategy & Operations for Platforms & Ecosystems, testified that he generally used chats for similar purposes, such as "to see if they are available on short notice for a call or to join a meeting." (Mason Decl. Ex. 3 (Rosenberg Dep. 127:14-21), ECF No. 348-5.)

One-on-one and certain group chats can be set to "history on" or "history off," and users can toggle between those two settings at any time. (AR Decl. ¶ 3.) Google's default setting for such chats is "history off." *Id.* "Threaded Rooms / Spaces," however, are always set to "history on," and users cannot turn "history off." (AR Decl. ¶ 4.) In the normal course of business, "history on" chats are preserved for 30 days to 18 months depending on the type of chat, and "history off" chats are retained for 24 hours[1]. (AR Decl. ¶ 3.) When an employee becomes subject to a legal hold, Google retains "history-on" chats, including all chat threads within Threaded Rooms / Spaces in which the employee has participated, for as long as the legal matter is pending. (Mason Decl., Ex. 1 at Ex. A ("Retention Policy"), ECF No. 348-3.) Google's Retention Policy separately instructed employees subject to a legal hold not to "manually delete any chats relevant to the matter at issue under any circumstances." (Retention Policy at 2.)

---

[1] The preservation period for "history off" chats is not Google-specific functionality; rather it is part of the functionality of the Google Chat product and applies equally to all companies and users of the product. (AR Decl. ¶ 3)

-3-

Contrary to Plaintiffs' misleading assertions, Mot. at 2, 6, Google does not represent to employees that all chats are automatically preserved when an employee is on hold. (Retention Policy.)

### B.  Google's Preservation Efforts

Google timely issued litigation hold notices in September 2020, shortly after these cases were filed. Plaintiffs do not argue that Google's litigation hold was untimely. The hold notices, including a March 2021 update, instructed custodians on chat preservation. In addition, Google sent reminders to particular custodians on November 30, 2020, June 29, 2021, July 23, 2021, and July 26, 2021, that included instructions on chat preservation. (AR Decl. ¶ 12.) Plaintiffs first raised concerns about Google's retention of chats with the Court in the parties' December 9, 2021 Joint Case Management Statement. *See* ECF No. 159 at 6-14. Google subsequently issued two additional hold updates, in January and May 2022, both of which contained instructions on chat preservation. Ultimately, Google produced more than 3.1 million documents in this case totaling more than 21 million pages. (AR Decl. ¶ 12, 17.)

### C.  Procedural History

After Plaintiffs raised the issue of chats preservation with the Court on December 9, 2021, the parties served and responded to additional interrogatories about preservation,[2] then met and conferred on February 7 and again on February 17. (Declaration of Emily Curran-Huberty ¶ 2, 4 ("ECH. Decl.").)  Plaintiffs then did nothing for nearly three months. (ECH. Decl. ¶ 6.) On May 6, 2022, Plaintiffs notified Google that they intended to move for sanctions and raised the issue just days later with the Court. (*See* 5.12.22 Hr'g Tr. 22:2-21.) The Court subsequently issued a briefing schedule. (Oct. 5, 2022 Order, ECF No. 340.)

### III. ARGUMENT

Under Rule 37(e), sanctions for a party's failure to preserve ESI are available only if Plaintiffs can show: (1) that electronically stored information ("ESI") "that should have been

---

[2] The State AG Plaintiffs categorically refused to respond to any of the preservation interrogatories and refused to state whether and when they issued any hold notices, refused to state whether or how they preserved any text messages or chats, refused to state whether any text or chat messages were destroyed, and refused to describe their document preservation or retention practices. (Ex. 1 to ECH Decl.).

-4-

preserved" was lost "because a party failed to take reasonable steps to preserve it"; (2) that any lost ESI "cannot be restored or replaced through additional discovery"; and (3) "prejudice . . . from the loss of the information." *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7389417, at *2 (N.D. Cal. May 13, 2020) (quoting Fed. R. Civ. P. 37(e)).

Even when a plaintiff has met these elements, sanctions must be limited to "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Sanctions in the form of an adverse inference instruction may be imposed "only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Plaintiffs fail to make this showing.

### A. Google Took Reasonable Steps to Preserve Relevant Chats.

Rule 37(e) requires "reasonable steps" to preserve electronically stored information, and "does not call for perfection." Fed. R. Civ. P. 37(e) & cmt. (2015). Google took the requisite reasonable steps to preserve potentially relevant chats in this litigation:

- Automatically preserved all custodians' "history on" chats as part of document collections, accounting for over 176,000 chats;
- Issued a legal hold at the beginning of the litigation that instructed custodians about chat preservation;
- Sent four reminders and three litigation hold updates, all of which included instructions on chat preservation.

Plaintiffs either misrepresent or ignore those efforts, and have repeatedly refused Google's offer to review the legal hold language under a privilege non-waiver agreement.

Instead, Plaintiffs' position appears to be that the law imposes a *per se* obligation on Google to preserve every single chat sent by every employee, regardless of whether that ephemeral data is relevant to this case or such retention is proportional. But they cite no case to support such a broad proposition. To the contrary, since the amendment of Rule 37, courts have stressed the importance of "evaluat[ing] proportionality in allowing discovery and considering sanctions for the loss of relevant or potentially relevant ESI." *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at *68 (D. Nev. July 31, 2018). Google's preservation

efforts—which included automatic preservation for "history on" chats, hold instructions regarding chats, and automatic preservation for other categories of ESI—were reasonable and proportional, particularly considering the typical use of chats for non-substantive purposes, (*see supra,* at p. 3).

Plaintiffs' authorities do nothing to support their Motion, beginning with their misplaced reliance on *Apple, Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012)—a case that was decided *before* Rule 37(e) was amended to emphasize proportionality in the wake of case law that "caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough." Fed. R. Civ. P. 37, cmt. (2015). In any event, Google's preservation efforts differ markedly from the defendant's conduct in *Samsung*, where after previously being sanctioned for failing to preserve emails in another matter, Samsung "failed to send litigation hold notices . . . beyond a select handful of employees" for *seven months* after litigation became reasonably foreseeable, with thousands of employees left to delete potentially relevant emails during that time frame. *Samsung*, 881 F. Supp. 2d at 1147. This is a far cry from Google's efforts that began in earnest at the very beginning of the litigation, including consistent reminders to custodians about their preservation obligations. Notably, Plaintiffs do not argue that Google's litigation hold was untimely. Moreover, *Samsung* also involved the preservation of email communications, which are often used for substantive business purposes and are automatically preserved by Google. *See id.* at 1138-39.

Plaintiffs' only other authorities are likewise distinguishable. In *Glaukos Corp. v. Ivantis, Inc.*, No. SACV 18-620 JVS (JDEx), 2020 WL 10501850, at *4 (C.D. Cal. June 17, 2020), a party failed to suspend the automatic deletion of all *e-mail* for *eight years*. Similarly, in *WeRide Corp. v. Kun Huang*, the company "had not turned off an auto-delete setting on the company's *email* server leading to the company-wide destruction of emails" and had "wiped the[] laptops and deleted the[] email accounts" of employees who left the company. No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *3, *8 (N.D. Cal. Apr. 24, 2020) (emphasis added). In sum, Plaintiffs fall far short of establishing that Google's preservation efforts were not reasonable.

B. **Plaintiffs Fail to Demonstrate That They Suffered Any Prejudice.**

Plaintiffs fall far short of establishing that Google's chat preservation policy has somehow "impaired [their] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (alterations in original) (quoting *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)). If anything, Google's efforts here facilitated Plaintiffs' discovery of relevant information.

Google produced *millions* of internal documents. These documents provide a detailed record of Google's business strategy and decisions, its product design, its dealings and negotiations with third-parties, and its financial records. Particularly relevant for an antitrust case, Google also produced over one hundred unique datasets, including extensive transactional data, for many years, which comprises 13 terabytes of data. Plaintiffs' experts have relied upon these documents in their nearly 2000 pages of expert reports—many of which recite Google documents at length. Plaintiffs also relied on Google's extensive productions to move for class certification, brief a Preliminary Injunction motion, and depose dozens of Google witnesses, belying any prejudice argument.[3]

With this extensive record, Plaintiffs fail to articulate why key evidence would be buried in the midst of chats regarding lunch plans and meeting requests. Because Google preserved over 176,000 chats, those messages were searched and reviewed: less than 1.8% were produced as responsive, showcasing how chats are largely a fishing expedition for irrelevant information that does nothing to bolster Plaintiffs' claims.

To argue that they were prejudiced, Plaintiffs point to three chats about YouTube and Google Play billing, app distribution competition, and sideloading. Mot. at 8-9. Those chats

---

[3] This is also why Plaintiffs have not demonstrated the second of the three requirements under Rule 37(e), that the chats cannot be "replaced" through existing discovery. As recognized by the Advisory Committee Notes to the 2015 Amendment: "[T]he content of the lost information may be fairly evident, the information may appear to be unimportant, *or the abundance of preserved information may appear sufficient to meet the needs of all parties*." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (emphasis added); s*ee also Sanchez v. Jiles*, 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012) ("The fact that other evidence exists that duplicates or serves the same function as the evidence that was purportedly lost therefore weighs further against the admission of evidence of the spoliation and against giving the jury a spoliation instruction.").

1    were, of course, preserved and produced, reinforcing the reasonableness of Google's preservation

2    efforts.  But even had they not been preserved, Plaintiffs have countless *other* documents

3    regarding these issues.  For example, Plaintiffs' experts point to numerous internal documents

4    about app distribution competition, Google Play billing, and sideloading.  *See, e.g.*, Giulianelli

5    Decl. in Support of Consumer Plaintiffs' Mot. for Class Cert. Ex. 4 (D. Schmidt Class Cert. Rep.

6    at 22-23, 28), ECF No. 250-6; *Id.* at Ex. 2 (H. Singer Class Cert. Rep. at 101-103, 266), ECF No.

7    250-4.

8           Plaintiffs' reliance on *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15cv9363 (ALC)

9    (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018), is thus misplaced.  The court in that case

10   rejected an adverse inference and refused to grant any jury instruction regarding the loss of

11   evidence unless the party could show "material gaps in the records" of its adversary's financial

12   information that would harm its ability to prove damages.  *Id.* at *17.  Unlike *Lokai*, Plaintiffs here

13   have failed to identify a gap in any information needed to prosecute their claims–nor could they,

14   having received over 21 million pages of discovery. Where Plaintiffs' "own evidentiary

15   presentation shows that [they have] not been so prejudiced as to preclude [them] from pursuing"

16   their claims, their claim to have been "greatly hindered" in proving their case "is overly

17   conclusory and unpersuasive." *See id.* at *13.

18          Similarly, Plaintiffs' authority, *Matthew Enterprise, Inc. v. Chrysler Group LLC*, No. 13-

19   cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016), actually supports Google's position

20   that Plaintiffs did not suffer the prejudice required for sanctions.  The Court in that case found *no*

21   *prejudice* where a party deleted internal e-mails where, as here, the other party had "not come

22   forward with plausible, concrete suggestions about what the internal emails might have

23   contained." *Id.* at *4 (internal quotation marks omitted).  The court found prejudice only as to

24   external communications because the case "hinge[d] on . . . negotiations with customers and the

25   reasons that customers chose other dealerships," and the "customer contact information and

26   salespeople' shorthand notes" were "not nearly as valuable as what salespeople and customers

27   actually said." *Id.*

28

### C. Plaintiffs Fail to Show that Google Intended to Deprive Plaintiffs of Information.

To obtain the severe sanction of an adverse inference instruction, Plaintiffs must establish that Google "acted with the *intent* to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2) (emphasis added). "Negligent or even grossly negligent behavior" is insufficient. Fed. R. Civ. P. 37, Advisory Committee Notes (2015); *see e.g.*, *Youngevity Int'l v. Smith*, No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *4 (S.D. Cal. July 28, 2020). This is because the "premise" of an adverse inference instruction is that a party's "intentional loss or destruction of evidence to prevent its use in litigation" supports a "reasonable inference that the evidence was unfavorable to the party." Fed. R. Civ. P. 37, Advisory Committee Notes (2015).

Plaintiffs do not come close to showing Google acted with the intent to deprive plaintiffs of evidence. To the contrary, the record shows that Google worked to *preserve* relevant evidence: Google (a) ensured that "history on" chats are automatically preserved, (b) provided users with a way to set history on for any potentially relevant chats, and (c) provided relevant employees with litigation hold instructions—and multiple reminders—on chat preservation. *See, e.g.*, *Function Media, L.L.C. v. Google, Inc.*, No. 2:07–cv–279–CE, 2011 WL 4017953, at *3 (E.D. Tex. Sept. 9, 2011) (no spoliation jury instruction necessary where Google instituted litigation hold and "employees were specifically instructed to change the setting for instant messages to 'on the record' (or saved) for communications that involved matter subject to a litigation hold"). Plaintiffs fail to point to a shred of evidence that a custodian intentionally deleted a single relevant chat, that Google deleted any potentially relevant chats that were "history on," or that any custodian intentionally left history off for a relevant chat—much less that Google did so to deprive Plaintiffs of evidence in this litigation. Even more, Plaintiffs repeatedly refused to review how Google instructed its employees regarding chat preservation, further undermining their claims to have evaluated Google's alleged intent to deprive. (ECH Decl. ¶ 5.)

Plaintiffs' authorities demonstrate that parties must exhibit extreme conduct to warrant such a severe sanction. Google did not create "fabricated" alternative copies of deleted

-9-

documents, as in *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). Nor did Google "wipe" laptops or e-mail accounts, as in *WeRide*, 2020 WL 1967209, at *3; manually delete messages, as in *Fast v. GoDaddy.com LLC*, No. CV-20-01448-PHX-DGC, 2022 WL 325708, at *5, *7 (D. Ariz. Feb. 3, 2022); "routinely" delete text messages, as in *Colonies Partners, L.P. v. County of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *4, *8-10 (C.D. Cal. Feb. 27, 2020); or delete text messages and e-mails and then testify that they did not use these kinds of communications "when they clearly did," *John v. County of Lake*, No. 18-cv-06935-WHA(SK), 2020 WL 3630391, at *6 (N.D. Cal. July 3, 2020). Google's efforts were instead entirely reasonable.

## IV. CONCLUSION

Google respectfully requests that Plaintiffs' motion be denied.

DATED: November 3, 2022           Respectfully submitted,

By:     /s/ *Glenn D. Pomerantz*
       Glenn D. Pomerantz

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER TOLLES & OLSON LLP**
560 Mission St., Suite 2700
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

| | |
|---|---|
| 1 | Brian C. Rocca, S.B #221576 |
|   | brian.rocca@morganlewis.com |
| 2 | Sujal J. Shah, S.B #215230 |
|   | sujal.shah@morganlewis.com |
| 3 | Michelle Park Chiu, S.B #248421 |
|   | michelle.chiu@morganlewis.com |
| 4 | Minna Lo Naranjo, S.B #259005 |
|   | minna.naranjo@morganlewis.com |
| 5 | Rishi P. Satia, S.B #301958 |
|   | rishi.satia@morganlewis.com |
| 6 | **MORGAN, LEWIS & BOCKIUS LLP** |
|   | One Market, Spear Street Tower |
| 7 | San Francisco, CA 94105 |
|   | Telephone: (415) 442-1000 |
| 8 | Facsimile: (415) 422-1001 |

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC et al.*

-12-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

**E-FILING ATTESTATION**

I, Glenn D. Pomerantz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that counsel for Defendants have concurred in this filing.

*/s/ Glenn D. Pomerantz*
Glenn D. Pomerantz