Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St., Suite 1200
Denver, Colorado 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.*

Brendan P. Glackin (SBN 199643)
Lauren M. Weinstein (*pro hac vice*)
bglackin@agutah.gov
lweinstein@agutah.gov
**OFFICE OF THE UTAH ATTORNEY GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC, et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS**<br><br>Judge: Hon. James Donato |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

      A.      Google Destroyed Relevant Chats ............................................................................1

      B.      Plaintiffs Were Prejudiced by Google's Destruction of Chats ................................4

      C.      Google Intended to Deprive Plaintiffs of Discoverable Evidence ..........................6

CONCLUSION ..........................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ....................................................................................... 4

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
   513 F. Supp. 3d 839 (N.D. Ill. 2021) ......................................................................................... 3

*Exp.-Imp. Bank of Korea v. ASI Corp.*,
   2018 WL 5263185 (C.D. Cal. Aug. 3, 2018) ............................................................................ 4

*John v. Cnty. of Lake*,
   2020 WL 3630391 (N.D. Cal. July 3, 2020) ............................................................................. 4

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   2016 WL 2957133 (N.D. Cal. May 23, 2016) .......................................................................... 3

*PersonalWeb Techs., LLC v. Google Inc.*,
   2014 WL 580290 (N.D. Cal. Feb. 13, 2014) ............................................................................ 6

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
   2022 WL 3133293 (C.D. Cal. July 1, 2022),
   *R&R adopted*, 2022 WL 16641829 (Nov. 2022) ..................................................................... 7

*Sanchez v. Jiles*
   2012 WL 13005996 (C.D. Cal. June 14, 2012) ........................................................................ 6

*Schmalz v. Vill. of N. Riverside*,
   2018 WL 1704109 (N.D. Ill. Mar. 23, 2018) ............................................................................ 6

*Small v. Univ. Med. Ctr.*,
   2018 WL 3795238 (D. Nev. July 31, 2018) ............................................................................. 7

*Ungar v. City of New York*,
   329 F.R.D. 8 (E.D.N.Y. 2018),
   *aff'd*, 2022 WL 10219749 (2d Cir. Oct. 18, 2022) ................................................................... 7

**Rules**

Fed. R. Civ. P. 37 ........................................................................................................................ 3, 6, 7

# INTRODUCTION

Google admits that it has deleted Chats daily and continues to do so, cannot recover those Chats, and had the ability to preserve those Chats with the push of a button but chose not to do so. Unable to contest these facts, Google claims that the Federal Rules do not require "perfection" and that its production of *other* documents cures its destruction of Chats. Opp. at 1. But Google's purported compliance with some of its obligations cannot excuse its utter disregard for others. The Federal Rules do not give Google license to systematically destroy a means of communication that its employees regularly use for substantive, candid business conversations.

None of Google's excuses for its ongoing destruction remotely pass muster. ***First***, Google's argument that its efforts were reasonable is irreconcilable with the systematic and *avoidable* destruction of relevant Chats as well as its continued failure to explain why it did not suspend automatic deletion, including after being expressly put on notice. ***Second***, Google's contention that Plaintiffs have not suffered prejudice is refuted by evidence showing that Chats are just as substantive as (and often more candid than) email. ***Third***, Google's argument that it lacked the requisite intent ignores the facts that Google *still*, to this day, continues the wholesale destruction of Chats, that Google withheld information about the company's destruction of Chats for months, and that Google's custodians intentionally divert sensitive conversations to Chat to avoid discovery. Indeed, Google does not, because it cannot, justify the undisputed fact that most Chats are set to "history off" and that these Chats are deleted every 24 hours—even though Google could easily have changed that setting to "history on." Google's ongoing, willful destruction of relevant Chats warrants significant sanctions.

# ARGUMENT

### A. Google Destroyed Relevant Chats.

Google's brief confirms that it failed to take reasonable steps to preserve Chats. Even though Google could easily have set its custodians' Chats to the "history on" setting, Google left the "history off" default setting for individual Chat messages and continues to delete Chats every 24 hours. For any Chat to be preserved, a custodian would need to independently determine that it relates to this litigation and take affirmative steps to preserve it, such as printing it out or emailing

it to themselves. It is unrealistic to expect executives, high-level management, and engineers to remember to take time away from their demanding workload throughout their day in order to review their Chats for preservation within 24 hours of sending them. Unsurprisingly, the evidence is clear that this did not happen. Mot. at 2-3. Google does not contest that trusting individual custodians to prevent the destruction of other potentially relevant documents such as email, would be entirely *un*reasonable. This policy is not any more reasonable when applied to Chats.

Google nevertheless contends that it took reasonable steps to preserve Chats by providing "instructions on chat preservation" in its hold notices. Opp. at 5. Google is silent on what these instructions are,[1] but regardless, instructions to individuals are no substitute for automated preservation. Indeed, the inefficacy of these instructions while automated destruction continues is evident: Google produced only 3,084 Chats (many of which were "history on" group chats), roughly 0.1% of the 3.1 million total documents Google has produced. Opp. at 1. That meager number is evidence of deficiency because multiple custodians testified that they use Chats every day. Mot. at 2 (citing LMM Decl. Exs. 3 & 4).

Google's conduct is unreasonable also in light of Google's own Preservation Policy, which assumes the automatic preservation of Google Chats. Specifically, it instructs custodians that when a litigation hold is in place, their " ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ " LMM Decl. Ex. 1 at Ex. A. Google disputes Plaintiffs' plain reading of that policy, claiming that "on the record 1:1 conversations" in this context is somehow "synonymous with 'history on,'" AR Decl. ¶ 6, but the Policy nowhere says that—nor does it specify that, for most Chats, retention periods *are not* paused, or that employees would need to take additional steps to preserve them.[2] The record is clear that most custodians took no efforts to preserve Chats.

---

[1] Google claims that Plaintiffs refused disclosure of Google's hold notices, but Google admits it conditioned that disclosure on an *exchange* of hold notices. ECH Decl. ¶ 5. Google made no showing that any Plaintiff failed to preserve ESI to justify its unwarranted demand for reciprocity. If Google wanted to rely on its hold notices to defend itself, it could have done so.

[2] The Policy also directs employees not to " ███████████████████████████████████████ " (emphasis added), further showing that the policy assumes automated retention, not automated deletion. LMM Decl. Ex. 1 at Ex. A.

1 ██████████████████████████████████████████████████ ' Mot. at 4-5
2 (citing LMM Decl. Ex. 2 at 11, 14, Ex. C).

Unable to credibly claim reasonable efforts to preserve Chats, Google looks to a comment to the 2015 amendments to Federal Rule 37, that states the Rule "does not call for perfection." Fed. R. Civ. P. 37(e) & cmt. (2015); Opp. at 5. But Google's conduct is far from trivial imperfection—it is a complete failure to preserve a primary means of communication. The advisory committee statements certainly do not permit a party to automatically delete records from one of its two primary communication platforms. On the contrary, the committee notes recognize that "the prospect of litigation may call for reasonable steps to preserve information by intervening in [the] routine operation" of an electronic information system. Fed. R. Civ. P. 37(e) & cmt. (2015). Furthermore, Google ignores that the very same portion of the committee notes advises courts to "be sensitive to the party's sophistication." *Id.* Google is one of the most sophisticated litigants in the world, its resources are unparalleled, and it designed the Chat platform at issue. Google could have easily chosen to turn off its own auto-delete mechanism, but it chose not to. In fact, it continues to delete these Chats today. Such conduct warrants sanctions. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016) (ordering sanctions where defendant did not instruct outside vendor to turn off automatic deletion).

Google's additional arguments as to why it did not need to take the basic step of changing its auto-delete settings are similarly unavailing. First, Google suggests Plaintiffs' cases are distinguishable because they involved auto-deletion of emails, not Chats. Opp. at 6. This is a distinction without a difference. Chats now have all the functionality of emails and provide additional benefits; they allow employees to communicate instantly with one or multiple others, to share files and provide instant feedback, to collaborate on documents and projects in real time, to post links to external websites, and much more. As noted in Plaintiffs' opening brief, employees' Chat communications are not limited to scheduling lunch and office gossip. They are a key means for ongoing substantive business communications, and are often far more candid and unguarded than email. Mot. at 8-9. Consistent with the proliferation of workplace instant messaging chat platforms, courts recognize that parties have a duty to preserve them. In *DR Distributors, LLC v.*

*21 Century Smoking, Inc.*, a case Plaintiffs cited and Google ignored, the court ordered sanctions after finding that defendants had a duty to preserve both emails and Yahoo! chats, where the destroyed Yahoo! chats were used for relevant communications. 513 F. Supp. 3d 839, 978-79 (N.D. Ill. 2021); *see also Exp.-Imp. Bank of Korea v. ASI Corp.*, 2018 WL 5263185, at *4 (C.D. Cal. Aug. 3, 2018) (ordering production of instant messages). Here too, Google employees used Chat for relevant business communications. Mot. at 2-4, 8-9.

Second, Google repeatedly invokes "proportionality," *e.g.*, Opp. at 5-6, but never explains why or how preventing the daily deletion of relevant Chats from negotiated custodians would impose any burden, much less an undue burden—or why this step would be "disproportionate" in a case where multiple Plaintiffs, including 37 States and a large, proposed class of consumers, challenge core aspects of Google's business practices. Incredibly, Google relies on the steps it took to stop the auto-deletion of other types of communications—emails and a narrow category of "Threaded Room/Space Chats"—to argue its wholesale destruction of most Chats was reasonable. Opp. at 5. But it establishes the opposite—that Google was fully aware of its obligation to preserve documents, *including Chats*, and that it inexplicably chose to destroy the vast majority of Chats.

**B.     Plaintiffs Were Prejudiced by Google's Destruction of Chats.**

Plaintiffs have been prejudiced by Google's destruction of Chats. The evidence in Plaintiffs' opening brief shows that Google employees regularly use Chats for substantive purposes. Indeed, the few Google Chats that were not destroyed illustrate that Google employees use Chats for real-time, candid communication about topics that are highly relevant to this litigation. Mot. at 8-10. Google's daily deletion of Chats, and the pervasive use of Chats for substantive conversations, establish prejudice.

Google argues that Plaintiffs' motion is a "fishing expedition" because Plaintiffs have failed to "articulate why key evidence would be buried in the midst of chats regarding lunch plans and meeting requests." Opp. at 7. Google's argument turns the standard on its head: Plaintiffs are not required to prove the contents of Chats that Google destroyed. *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012); *see also John v. Cnty. of Lake*, 2020 WL

3630391 at *7 (N.D. Cal. July 3, 2020) (finding prejudice from deleted text messages in part because "the text message chain that was produced goes to some of the key issues in this case").

Google has failed to show that the deleted Chats have not prejudiced Plaintiffs. Google asserts (without the support of a declaration) that "chats are typically used by Google employees to discuss *non-substantive* issues and coordinate simple logistics." Opp. at 1. This unsupported statement runs contrary to Google's own statements and testimony. Google's sworn interrogatory responses state that ███████████████████████████████ (LMM Decl., Ex. 2 at 11.)[3] And as detailed in Plaintiffs' opening brief, the Chats that were produced contained highly relevant substantive information. That some Google employees testified that they use Chats for logistics is irrelevant. The same employees admitted that they also use Chats for substantive business purposes. *See, e.g.*, Mot. 2-3. For example, Google cites deposition testimony of Tian Lim for the proposition that his Chats were "typically . . . logistical in nature," Opp. at 3, but at least one of his Chats showed Mr. Lim having a remarkably candid conversation on ███████ ███████████ *see* LMM 2d Decl. Ex. 22 (GOOG-PLAY-007021362 at -426-429); *see also id.* Ex. 23 (Lim Dep. 151:8-152:12; 160:25-165:24). Similarly, while Google CFO Ruth Porat testified that ████████████████████████████████████████████████████████ ████████████████,]" LMM 2d Decl. Ex. 24 (Porat Dep. 69:7-10), this testimony was contradicted by one of her own documents, in which she commented in a Chat that she had ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* 69:15-78:5; Ex. 25 (PX1612). Plaintiffs cited several additional examples in their opening brief and fact proffer. *See* Mot. at 8-9; Dkt. 258 at 4-5; *see also* LMM 2d Decl. Ex. 26 (PX314) (Chat from ████ ████████████

---

[3] Google also points to the 1.8% responsiveness rate as evidence that Chats are largely non-substantive. Opp. at 7. But the statistic is meaningless without context. Google has not given the responsiveness rate for other documents it collected. Nor does it say what percentage of non-responsive chats were logistical, or what percentage were non-responsive because they concerned other areas of Google's business. And the responsiveness rate is meaningless because of Google's failure to preserve Chats.

1 ██████████████████████████████████). By systematically deleting its Chats, Google has deprived Plaintiffs of key evidence regarding Google's motives, among other things.

Google dismisses Plaintiffs' examples of prejudice as merely "three chats." Opp. at 7. Setting aside that Plaintiffs' motion cited more than three, Mot. at 8-9, the fact that Plaintiffs were able to locate highly probative documents even among Google's meager production is more than enough for the Court to infer that many highly probative documents were destroyed—and that Google has not met its "heavy burden" of proving otherwise. *See* Mot. at 8 (citing *PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 580290, at *4 (N.D. Cal. Feb. 13, 2014) ("[A] party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been before a heavy burden shifts to the spoliating party to show a lack of prejudice.")).

Finally, Google argues that any substantive Chats that were destroyed could be replaced by "contracts, emails, presentations, strategy documents, and transactional data produced by Google." Opp. at 2. Google has no basis for that assertion. Google nowhere explains how these other documents could replace the candid conversations about Google's conduct and motives in employees' Chats. Moreover, Google cannot credibly make this representation because it cannot establish the contents of the Chats it destroyed. The sole case Google cites in support is entirely inapposite; in *Sanchez v. Jiles*, the Court did not issue an adverse inference for *another party's* destruction of evidence where that evidence may have been "largely duplicative" of specifically identified available evidence, including testimony from the witness whose recorded interview was lost. 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012); *see also Schmalz v. Vill. of N. Riverside*, 2018 WL 1704109, at *4 (N.D. Ill. Mar. 23, 2018) (rejecting argument that plaintiff could substitute other evidence for deleted text messages and finding prejudice). Google's conjecture that the documents it produced can replace the untold number of destroyed Chats— which Plaintiffs have shown are categorically different than other documents—should be rejected.

C.   **Google Intended to Deprive Plaintiffs of Discoverable Evidence.**

Google ignores all Plaintiffs' evidence of Google's intent, instead pointing to the steps it took to preserve other non-Chat documents to suggest a lack of intent. Opp. at 9-10. But "a party's conscious dereliction of a known duty to preserve electronic data" satisfies Rule 37(e)(2)'s intent

requirement. *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), *aff'd*, 2022 WL 10219749 (2d Cir. Oct. 18, 2022). Google knows whatever preservation steps it has taken are not working. It admitted in Court-ordered interrogatories that ████████████████████ ████████████████████████████████████████████████████████████████ LMM Decl., Ex. 2 at 11, 14, 18, Ex. C. And Google *continues* to delete Chats daily.

Furthermore, the evidence shows that Google employees take advantage of this ongoing daily deletion to hide their actions. Google employees intentionally divert sensitive conversations to "history off" Chats, and chide others for honesty in "history on" Chats. Mot. at 3-4 (citing LMM Decl., Exs. 16-17). And finally, it is undisputed that the Parties in this litigation engaged in painstaking negotiations of their search protocols. If Google truly believed that the wholesale destruction of all communications on one of the two communications platforms its employees routinely use was reasonable, it could have raised this position with Plaintiffs. It did not. To the contrary, Google does not dispute that it failed to disclose its auto-deletion of Chats for months, despite obligations in the ESI Protocol to produce Chats and repeated inquiries from Plaintiffs as to why Chats had not been produced. Mot. at 7. The only logical explanation is that Google's conduct has the purpose of providing its employees a place to communicate free from discovery in litigation. These actions, considered together, are powerful evidence of intent. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 3133293, at *28-30 (C.D. Cal. July 1, 2022) ("[I]ntent may be inferred where a party is on notice that documents potentially are relevant but fails to take the steps necessary to preserve them."), *R&R adopted*, 2022 WL 16641829 (Nov. 2, 2022).[4]

## CONCLUSION

Plaintiffs respectfully request an adverse inference jury instruction as provided by Rule 37(e)(2)(B), or, in the alternative, a curative jury instruction consistent with Rule 37(e)(1).

---

[4] Google fails to address Plaintiffs' alternative request for relief. Unlike Rule 37(e)(2), Rule 37(e)(1) does not require a showing of intent. *See* Fed. R. Civ. P. 37(e)(1). While there is sufficient evidence to show Google's intent, at a minimum, a curative instruction under Rule 37(e)(1) is warranted. *See Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *68 (D. Nev. July 31, 2018).

Dated: November 10, 2022

BARTLIT BECK LLP
  Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
  Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
  Karma M. Giulianelli

  *Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*


PRITZKER LEVINE LLP
  Elizabeth C. Pritzker

Respectfully submitted,

By: */s/ Elizabeth C. Pritzker*
  Elizabeth C. Pritzker

  *Liaison Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

CRAVATH, SWAINE & MOORE LLP
   Christine Varney *(pro hac vice)*
   Katherine B. Forrest *(pro hac vice)*
   Gary A. Bornstein *(pro hac vice)*
   Timothy G. Cameron *(pro hac vice)*
   Yonatan Even *(pro hac vice)*
   Lauren A. Moskowitz *(pro hac vice)*
   Justin C. Clarke *(pro hac vice)*
   M. Brent Byars *(pro hac vice)*
   Michael J. Zaken *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Lauren A. Moskowitz*
   Lauren A. Moskowitz

*Counsel for Plaintiff Epic Games, Inc.*

OFFICE OF THE UTAH ATTORNEY GENERAL
   Brendan P. Glackin
   Lauren M. Weinstein

Respectfully submitted,

By: */s/ Lauren M. Weinstein*
   Lauren M. Weinstein

*Counsel for the Plaintiff States*

HUESTON HENNIGAN LLP
   Douglas J. Dixon
   Christine Woodin
   Joseph A. Reiter

Respectfully submitted,

By: */s/ Douglas J. Dixon*
   Douglas J. Dixon

*Counsel for Plaintiffs Match Group LLC et al*

## E-FILING ATTESTATION

I, Douglas J. Dixon, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Douglas J. Dixon*
Douglas J. Dixon