# CRAMER DECL. EXHIBITS B - B16
## [PUBLIC-REDACTED]

# EXHIBIT B

1

2 Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
3 **BARTLIT BECK LLP**
1801 Wewetta St., Suite 1200
4 Denver, Colorado 80202
Telephone: (303) 592-3100

5 Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
6 **KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
7 New York, NY 10022
Telephone: (212) 687-1980

8

9 *Co-Lead Counsel for the Proposed Class in In re
Google Play Consumer Antitrust Litigation*

10 Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
11 **FAEGRE DRINKER BIDDLE & REATH
LLP**
12 Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
13 Telephone: (415) 591-7500

14 Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
15 **CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
16 New York, New York 10019
Telephone: (212) 474-1000

17

18 *Counsel for Plaintiff Epic Games, Inc. in Epic
Games, Inc. v. Google LLC et al.*

19

20

21

22

23

24

25

26

27

28

Brendan P. Glackin (SBN 199643)
Lauren M. Weinstein (*pro hac vice*)
bglackin@agutah.gov
lweinstein@agutah.gov
**OFFICE OF THE UTAH ATTORNEY
GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

Case No. 3:21-md-02981-JD

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. James Donato

## NOTICE OF MOTION TO ALL PARTIES HEREIN

## AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that pursuant to the October 5, 2022 Order in this litigation by the Honorable James Donato, Dkt. 340, Plaintiffs will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 37(e)(2) for an adverse inference instruction based on Defendants Google LLC, Google Ireland Limited, Google Commerce Limited, Google Asia Pacific Pte. Limited and Google Payment Corp.'s (collectively, "Google") spoliation of evidence in the above-captioned action (the "Action"), or in the alternative for sanctions to cure Plaintiffs' prejudice under Federal Rule of Civil Procedure 37(e)(1).  This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Proposed Order Granting Plaintiffs' Motion for Sanctions, the Declaration of Lee M. Mason (the "LMM Decl."), all matters with respect to which this Court may take judicial notice, and such oral and documentary evidence as properly may be presented to the Court.

### RELIEF SOUGHT

Plaintiffs request that the Court issue adverse inference jury instructions to remedy Google's spoliation of Google Chats as provided by Rule 37(e)(2)(B).  In the alternative, Plaintiffs request that the Court issue a curative jury instruction consistent with Rule 37(e)(1).

1
2

# TABLE OF CONTENTS

3   TABLE OF AUTHORITIES ............................................................................................... iii

4   STATEMENT OF FACTS ................................................................................................... 1

5       A.      Google Failed to Preserve Employees' Google Chats. ............................................ 1

6       B.      Google Destroyed Substantive Information. ............................................................ 2

7       C.      History of the Dispute. .............................................................................................. 4

8   ARGUMENT ....................................................................................................................... 5

9       A.      Google Spoliated Evidence by Deleting Google Chats. .......................................... 5

10      B.      Google Intentionally Deprived Plaintiffs of Google Chats ..................................... 7

11      C.      Plaintiffs Have Been Prejudiced by Google's Spoliation. ....................................... 8

12      D.      Remedy .................................................................................................................... 10

13  CONCLUSION ................................................................................................................... 10

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

# TABLE OF AUTHORITIES

**Page(s)**

3
**Cases**

4
5
*Apple Inc. v. Samsung Elecs. Co.,*
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ....................................................6, 7, 10

6
*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins.,*
2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) ..............................................7

7
8
*CAT3, LLC v. Black Lineage, Inc.,*
164 F. Supp. 3d 488 (S.D.N.Y. 2016)............................................................9

9
*Chinitz v. Intero Real Est. Servs.,*
2020 WL 7389417 (N.D. Cal. May 13, 2020) ..............................................6

10
11
*Colonies Partners, L.P. v. Cty. Of San Bernardino,*
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)................................................7

12
*DR Distribs, LLC v. 21 Century Smoking, Inc.,*
513 F. Supp. 3d 839 (N.D. Ill. 2021) ..........................................................6, 8

13
14
*Fast v. GoDaddy.com LLC,*
2022 WL 325708 (D. Ariz. Feb. 3, 2022)......................................................7

15
*Glaukos Corp. v. Ivantis, Inc.,*
2020 WL 10051850 (C.D. Cal. June 17, 2020) ............................................7

16
17
*John v. County of Lake,*
2020 WL 3630391 (N.D. Cal. July 3, 2020)................................................10

18
*Lokai Holdings LLC v. Twin Tiger USA LLC,*
2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ..............................................9

19
20
*Matthew Enter., Inc. v. Chrysler Grp. LLC,*
2016 WL 2957133 (N.D. Cal. May 23, 2016) ..............................................9

21
*PersonalWeb Techs., LLC v. Google Inc.,*
2014 WL 580290 (N.D. Cal. Feb. 13, 2014) ................................................8

22
23
*WeRide Corp. v. Kun Huang,*
2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ..............................................7

**Statutes & Rules**
24
Fed. R. Civ. P. 37...................................................................................*passim*

25
26
27
28

## **PRELIMINARY STATEMENT**

Plaintiffs bring this motion because Google has destroyed—irretrievably—an unknown but undoubtedly significant number of communications by its employees about relevant business conversations, including on topics at the core of this litigation.  Google permanently deletes Google Chats[1] every 24 hours—and did so even after this litigation commenced, after Plaintiffs repeatedly inquired about why those chats were missing from Google's productions, and after Plaintiffs submitted a proffer on this exact issue at the Court's direction.

Google blames its systematic spoliation of relevant evidence on an enterprise default setting for Google Chats that is set to "history off," but that is no excuse.  Any administrator of Google Chats—an application developed **by Google**—could have changed this default setting at any point for all custodians.  Google has never claimed otherwise.  But Google chose not to change the setting.  It also chose to do nothing to ensure that its custodians changed this default setting on their own workstations.

Google's failure to comply with its preservation obligations has prejudiced Plaintiffs and is sanctionable under Federal Rules of Civil Procedure 37(e)(1) and 37(e)(2).  Accordingly, Plaintiffs respectfully request (i) that the Court "instruct the jury that it may or must presume the information was unfavorable" to Google, under Rule 37(e)(2)(B), or, in the alternative, (ii) that the Court instruct the jury as to the circumstances of Google's spoliation under Rule 37(e)(1).

## **STATEMENT OF FACTS**

### A.    **Google Failed to Preserve Employees' Google Chats.**

Epic filed the first complaint in this MDL on August 13, 2020.  On September 11, 2020, Google acknowledged that it was under an obligation to preserve evidence that could be relevant to the litigation by issuing an initial litigation hold notice.  (LMM Decl., Ex. 1 (2021.11.11 Letter from B. Rocca to L. Moskowitz) at 3.)

---

[1] To Plaintiffs' knowledge, Google has employed different instant messaging platforms over time, including Google Hangouts, Google Meet, and, most recently, Google Chat. Plaintiffs refer to these platforms collectively as "Google Chats" or "Chats."

Consistent with its legal obligations to preserve documents, Google's Chat Retention Policy assumes the automatic preservation of Google Chats: "If you've been notified that you're subject to a 'legal hold,'" "your Google chats described below **will be preserved automatically** (all retention periods are paused) while the relevant matter is pending."  (*Id.* at Ex. A.)[2]  Google's Administrative Help page for Google Chats also states that administrators "can control whether to keep chat history for users in [their] organization."  (*Id.* at Ex. B.)  Google, however, has not preserved Google Chats for **any** custodians, automatically or otherwise.

### B.    Google Destroyed Substantive Information.

Google's failure to retain Google Chats caused the destruction of substantive, relevant information.  Discovery and deposition testimony confirms that Google employees use Google Chats on a **daily or near daily** basis, often for sensitive business communications.  Google argues that Chats are "generally non-substantive." (Dkt. 258 at 10.)  But that means some **are** substantive, and Google has already conceded that "**all** [37] Custodians used Google Chats at least once for business purposes during the Custodial Period."  (LMM Decl., Ex. 2 (Defendants' Responses and Objections to Plaintiffs' Document Preservation Interrogatories) at 11.)  Moreover, virtually every Google witness asked about the topic confirmed the pervasive use of Google Chats—and Google's failure to take sufficient steps to preserve those Chats.  For example:

- **Jamie Rosenberg**, VP of Strategy & Operations for Platforms & Ecosystems, used Google Chat "**a few times a day** for various purposes" and did not recall taking any steps to preserve Chats.  (LMM Decl., Ex. 3 (Rosenberg Dep. 127:3-8; 128:17-129:16).)

- **Tian Lim**, VP of User Experience and Product Management, testified that Google employees use Google Chat "**extensively**"—and in his case "**every day**"—to communicate "**with many people across the org.**" Mr. Lim did not recall ever turning on Chat history.  (*Id.*, Ex. 4 (Lim Dep. 446:20-23; 447:7-448:20; 459:5-7).)

- **Michael Marchak**, Director of Play Partnerships, Strategy & Operations, used "**email and chat primarily**" to communicate with colleagues and had "**not paid much attention**" to Chat preservation.  (*Id.*, Ex. 5 (Marchak Dep. 31:4-24, 32:4-11).)

- **Justin Mattson**, Senior Software Engineer, uses "**Google Chat, both directly and in chat rooms**" for substantive, work-related conversations and testified that there is **no**

[2] All emphasis in quotations have been added.

"**limitation to the topics that might be discussed** . . . **whatever is relevant to the work that's ongoing**." He testified that Google Chats are not saved by default and that he did not adjust the preservation settings for his Chats. (*Id.*, Ex. 6 (Mattson Dep. 200:20-21; 201:11-21; 201:24-202:4; 202:20- 203:3; 205:17-22).)

The few Google Chats that Google did produce in this litigation contain substantive post-litigation discussions of topics at the heart of the case, including: the value of the "Project Hug" deal offered to Activision Blizzard King (*id.*, Ex. 7 (GOOG-PLAY-005576717)); the "really high" bar for users to switch from Apple to Android and vice versa (*id.*, Ex. 8 (GOOG-PLAY-010510806)); and benchmarking the functionality of competing payment solutions against Google Play Billing ("GPB") (*id.*, Ex. 9 (GOOG-PLAY-003930716)). Google employees also regularly communicate by Chat with business partners, including ███████████, about relevant matters such as the home screen set-up on Android devices. (*Id.*, Ex. 10 (GOOG-PLAY-007213451); *id.*, Ex. 11 (Pimplapure Dep. 363:10-364:4).)

Google Chat has robust features that facilitate substantive conversations about Google employees' work. The few Google Chats that have been produced show employees using Google Chat features such as screen capturing and link sharing to (i) discuss edits to relevant documents, (*see, e.g.*, *id.*, Ex. 12 (GOOG-PLAY-005601967) (Chats regarding threats from third-party app stores)); (ii) share and discuss relevant screenshots from other Chats, (*see, e.g.*, *id.*, Ex. 13 (GOOG-PLAY-007611604) at -605); (iii) collaborate on meeting summaries, (*see, e.g.*, *id.*, Ex. 14 (GOOG-PLAY-000353866) (Chat regarding permissions to install apps)); and (iv) ask questions about draft presentations on issues central to this case. (*Id.*, Ex. 15 (GOOG-PLAY-007873896) (Chat regarding edits to a presentation about GPB policy).)

Moreover, Google intentionally diverted sensitive communications to Chat, with the understanding that those Chats would be expunged daily. For example, in a February 2020 Chat between Paul Bankhead and others about Chinese competition to Google Play, a participant asked, "**How did history get turned on again?**," (meaning that the Chat would be preserved, not expunged); another employee then noted that perhaps the group should "**switch back to Hangouts**"—another platform where communications would be expunged. (*Id.*, Ex. 16 (GOOG-

PLAY-003929257) at -257-58; *see also id.*, Ex. 17 GOOG-PLAY-010510815 (Chat from Mr. Samat reminding his colleague to "pls keep in mind this chat history is not off").)

### C. History of the Dispute.

As discovery progressed in this case, Plaintiffs noticed a glaring absence of Google Chats in Google's productions. Plaintiffs first raised this issue in an April 22, 2021 letter, noting that "to date, Plaintiffs have seen no Instant Messages[] in Google's productions." (LMM Decl., Ex. 18 (2021.04.22 Letter from M. Coolidge to M. Naranjo) at 4.) In August 2021, four months after Plaintiffs' initial letter on this topic, Google finally responded, stating that, in the normal course, Google Chats automatically delete after 24 hours, so Google did not expect to produce a significant number of additional Chats **pre-dating** the litigation—implying (contrary to fact) that Google Chats **post-dating** the litigation were preserved and would be produced. (LMM Decl., Ex. 19 (2021.08.13 Letter from B. Rocca to L. Moskowitz) at 5.)

However, Google did not produce additional Chats. In November 2021, after continued follow-up by Plaintiffs, Google for the first time revealed that it still was not preserving Chats, stating inexplicably that Google "does not have the ability to change default settings for individual custodians with respect to the chat history setting," and that "following their receipt of litigation holds," "the technological settings on Google's chat retention policy . . . did not change." (LMM Decl., Ex. 1 (2021.11.11 Letter from B. Rocca to L. Moskowitz) at 3.)

On January 14, 2022, in response to additional interrogatories ordered by this Court, Google confirmed that "Google's default settings for Google Chats is set for its entire organization as 'history off.'" (LMM Decl., Ex. 2 at 18.) Google further confirmed that "[w]hen a chat is set to 'history off,' messages are no longer available to the user after 24 hours, and Google has no available method or tool to hold, retain, or search for those messages."[3] (*Id.*) Google acknowledged that "all Custodians used Google Chat at least once for business purposes during their Custodial Period," but that only **11 out of 37** custodians recalled preserving **any** Google

---

[3] Google qualified this statement slightly: "To be clear, however, Chats may also be available if an individual took another action to preserve them, such as copying and pasting Chats into a document, or forwarding the Google Chat to Gmail." (LMM Decl., Ex. 2 at 18.)

Chats by manually turning history on.  (*Id*. at 11, 14, Ex. C.)  In other words, Google confirmed that, at a minimum, all Google Chats from the files of 26 of 37 custodians were irretrievably destroyed.

Plaintiffs raised Google's failure to preserve Google Chats with the Court at the December 16, 2021 and May 12, 2022 Case Management Conferences.  Per the Court's instruction, the Parties met and conferred regarding Plaintiffs' forthcoming motion for Rule 37 sanctions on May 13, 2022.  Google confirmed that, as of that time—nearly two years after the litigation commenced and over a year since the issue was first raised by Plaintiffs—Google still had not taken the most basic steps to preserve Google Chats, as it still had not turned "history on" for Google Chats or instructed individual custodians to do so manually.  As instructed by the Court, the Parties jointly filed a proposed method of resolution and Plaintiffs' proffer on May 27, 2022. On October 5, 2022, the Court directed briefing.

## ARGUMENT

Google breached its duty to preserve relevant Chats and must be held accountable for prejudicing Plaintiffs.  A party may be sanctioned "[i]f electronically stored information [("ESI")] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  "[U]pon finding prejudice . . . [the court] may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  If a court determines that a party "acted with the intent to deprive another party of the information's use in the litigation," it may "instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(B).  Google's conduct, **which persists today**, was willful and prejudicial. An adverse instruction is therefore an appropriate remedy.   At minimum, a curative jury instruction is warranted under Rule 37(e)(1).

### A.    Google Spoliated Evidence by Deleting Google Chats.

In determining whether spoliation has occurred, courts consider under Rule 37(e): "(1) [w]hether the information qualifies as ESI; (2) whether the ESI is lost and cannot be restored or replaced through additional discovery; (3) whether the ESI should have been preserved in the

anticipation or conduct of litigation; and (4) whether the responding party failed to take reasonable steps to preserve the ESI." *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7389417, at *3 (N.D. Cal. May 13, 2020). There is no reasonable dispute on the first three factors: (1) Google Chats are ESI, (2) Google admits the deleted Chats cannot be restored (LMM Decl., Ex. 2 at 21); and (3) Google's duty to preserve arose no later than when Epic filed its complaint, *see Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) ("The common law imposes the obligation to preserve evidence from the moment that litigation is reasonably anticipated.").

While Google disputes the fourth factor, Dkt. 258 at 8, the evidence makes clear that Google did not take reasonable steps to preserve Google Chats. Google had an off-switch and chose not to use it. Instead of leaving the "default settings for Google Chats" across the "entire organization as 'history off,'" (LMM Decl., Ex. 2 at 18), Google could have switched the default settings to "history on." "[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI." *DR Distribs, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977-79 (N.D. Ill. 2021). Google chose not to switch the default settings, in violation of its preservation obligations. *See id.* (holding defendants violated preservation obligations by not disabling auto-delete of Yahoo! Chats). Google's instruction to employees to preserve its Chats does not help its argument. Google's policy told employees subject to a legal hold that "your Google chats described below **will be preserved automatically,**" which did not happen because Google did not change its default settings. Google then did nothing to ensure custodians preserved their chats, knowing that it had not changed its default settings. (LMM Decl., Ex. 1 at Ex. A.) Those are not reasonable steps to preserve ESI. *See Apple*, 881 F. Supp. 2d at 1147.

At least one court in this district has found such conduct to violate preservation obligations. In *Apple Inc. v. Samsung Elecs. Co.*, Samsung's internal email system auto-deleted emails after two weeks; employees using the system could manually adjust this default setting by clicking to save emails before the deletion period. 881 F. Supp. 2d at 1139-40. Samsung's litigation hold instructed its employees to preserve relevant documents, but Samsung failed to "build[] itself an off-switch—and us[e] it" to prevent auto-deletion. *Id.* at 1134. And Samsung, like Google, did

not "verify whether its employees were actually complying" with the preservation obligation. *Id.* at 1143-44, 1147. The court therefore held that Samsung "conscious[ly] disregard[ed]" its duty and issued an adverse jury instruction as a sanction. *Id.* at 1147, 1150-51. As the court put it, defendants cannot "leave in place an adjudicated spoliation tool and . . . take almost no steps to avoid spoliation beyond telling employees not to allow what will otherwise certainly happen." *Id.* at 1151.

### B.    Google Intentionally Deprived Plaintiffs of Google Chats.

Google's document destruction was intentional. A party's conduct satisfies Rule 37(e)(2)'s intent requirement when "it is reasonable to infer, that [] a party purposefully destroyed evidence to avoid its litigation obligations." *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020). "[A] court can find such intent from circumstantial evidence." *Fast v. GoDaddy.com LLC*, 2022 WL 325708, at *7 (D. Ariz. Feb. 3, 2022). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence[.]" *Colonies Partners, L.P. v. Cty. Of San Bernardino*, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020).

Courts have held the failure to preserve by disabling auto-delete functionality—exactly what Google has done here—satisfies the intent requirement of Rule 37(e)(2). *See, e.g.*, *Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 10501850, at *6 (C.D. Cal. June 17, 2020); *WeRide Corp.*, 2020 WL 1967209, at *15-16. Google's misconduct goes beyond that: Google concealed from Plaintiffs its systematic destruction of documents for months, until instructed to respond to Court-ordered interrogatories. Even then, and to this day, Google did not stop the improper deletion of Google Chats from its custodians' files.

Finally, "[t]he court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts." Fed. R. Civ. P. 37 Advisory Comm. Notes to 2015 Amendment of Subdivision (e); *see Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins.*, 2019 WL 5694256, at *10 (E.D.N.Y. July 22, 2019), *adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) (noting that higher preservation standards apply to a "large corporation with greater resources"). It is difficult to imagine a litigant better situated to prevent automatic deletion on its own platforms

than **Google**.  When Google, whose stated mission is to "organize the world's information and make it accessible," irretrievably destroys information despite multiple warnings, its conduct is intentional.

### C.   Plaintiffs Have Been Prejudiced by Google's Spoliation.

Rule 37(e)(1) permits sanctions where a party's preservation failures caused "prejudice to another party from the loss of information."  Fed. R. Civ. P. 37(e)(1).  Google's destruction prejudices Plaintiffs by depriving them of nearly all Google Chats from Google employees.

Direct evidence of the contents of lost ESI is rare, and even when present likely understates the full scope of the lost ESI.  Courts thus consider circumstantial evidence to determine the extent of prejudice suffered and an appropriate remedy.  *See DR Distribs.*, 513 F. Supp. 3d at 982.  Rule 37 sanctions may therefore be awarded where the spoliated evidence could have supported the movant's case.  *See PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 580290, at *4 (N.D. Cal. Feb. 13, 2014) ("[A] party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been before a heavy burden shifts to the spoliating party to show a lack of prejudice").

Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other," instead leaving "judges with discretion to determine how best to assess prejudice."  Fed. R. Civ. P. 37 Advisory Comm. Notes to 2015 Amendment of Subdivision (e).  The evidence available here is sufficient to establish prejudice.  This case is about ongoing conduct, and Google's actions in the relevant markets **after** its preservation obligations arose—no later than August 2020—are the subject of core disputes in this case.  For example, Google and its experts have relied on its service fee reductions in 2021 and ongoing discussions about changing its business model to oppose class certification in the consumer case.  (*E.g.* Dkt. 273 at 16-21.) Plaintiffs expect those facts to figure prominently in Google's merits expert analysis as well.  Google Chats on these issues are central to Plaintiffs' case and Google's defenses.

The limited production of Google Chats confirms that Google employees provide some of their most honest assessments of the Play Store and its business in Google Chats.  *See, e.g.*, LMM Decl., Ex. 20 (GOOG-PLAY-002384214) (Chat concerning the possibility that Epic would release

a competing app distribution channel on Android, about which a Google employee noted, "gotta block it"); *id.*, Ex. 12 (GOOG-PLAY-005601967) (Chat in which David Kleidermacher, Google's top security engineer for Android, called a Google blog post about supposedly making sideloading easier, "PR crap").

Google employees also use Google Chats to have candid conversations that undermine Google's claims. For example, Plaintiffs allege that Google illegally coerces developers to use Google's inferior and overpriced payment solution, GPB for digital in-app sales, while Google claims GPB provides value to developers. Chats between Google employees show that Google's own employees agree with Plaintiffs, not with Google. In a Chat between two engineers at YouTube, one of Google's most popular apps, ████████████████████████████████████████, YouTube) warns ████████████████████, Engineering, YouTube) that ████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████ (LMM Decl., Ex. 21 (GOOG-PLAY-003600814) at -816.) Google's failure to preserve Chats therefore likely denied Plaintiffs access to some of the most damning documents concerning Google's core arguments and defenses. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016) (finding prejudice when parties lose the opportunity to use communications that "could have been probative.")

Finally, contrary to Google's argument, (Dkt. 258 at 11), its production of **other** communications, such as e-mail correspondence, does not negate the prejudice to Plaintiffs in this case. In *Lokai Holdings LLC v. Twin Tiger USA LLC*, defendants deleted emails after being advised to preserve relevant emails, due to storage concerns. 2018 WL 1512055, at *2 (S.D.N.Y. Mar. 12, 2018). The court found that while the plaintiff could adequately prosecute its claims with the documents the defendants had produced, defendants' destruction of relevant emails "limited the universe of documents available for . . . use in this litigation" in support of its claims," *id*. at 12, and therefore was prejudicial. *Id.* at *15; *see also CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) ("Plaintiff's case . . . is weaker when it cannot present the overwhelming quantity of evidence it otherwise would have[.]"). Here, Google deleted Chats from

dozens of custodians, and the evidence shows that there were deleted Chats that likely supported Plaintiffs' claims.  That is more than enough to show prejudice.

### D.     Remedy

Having established Google's spoliation and its intent to deprive Plaintiffs of the use of Google Chats in this litigation, Plaintiffs submit that the remedies enumerated in Rule 37(e)(2) are appropriate here, including the remedy of "instruct[ing] the jury that it may or must presume the information was unfavorable to the party".  Fed. R. Civ. P 37(e)(2)(B); *see also John v. County of Lake*, 2020 WL 3630391, at *7 (N.D. Cal. July 3, 2020) (ordering adverse inference instruction). In *Apple*, the Court granted Apple's motion for sanctions against Samsung after finding that Samsung's preservation efforts failed and that Samsung "kept the shredder on long after it should have known about the litigation, and simply trusted its custodial employees to save relevant evidence from it."  *Apple*, 881 F. Supp. 2d at 1150-1151.  Google, like Samsung, did not properly fulfil its preservation duty and as such, Plaintiffs respectfully submit that the proper remedy here is an instruction that (1) Google had a discovery obligation to maintain Google Chats no later than August 13, 2020; (2) Google had a mechanism to do so; (3) Google failed to implement that mechanism; (4) Google automatically deleted relevant Google Chats for each custodian in this case; (5) this destruction prevented Plaintiffs and the jury from learning the contents of those Google Chats; and (6) the jury should assume that the information Google had destroyed would have supported Plaintiffs' claims against Google.  In the alternative, having satisfied the elements of Rule 37(e)(1), Plaintiffs ask the Court to provide the jury with instruction (1) through (5) above.

### <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court issue adverse inference jury instructions to remedy Google's spoliation of Google Chats as provided by Rule 37(e)(2)(B).  In the alternative, Plaintiffs request that the Court issue a curative jury instruction consistent with Rule 37(e)(1).

Dated: October 13, 2022

BARTLIT BECK LLP
    Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
    Hae Sung Nam

Respectfully submitted,

By: _/s/ Karma M. Giulianelli_
    Karma M. Giulianelli

    *Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

PRITZKER LEVINE LLP
    Elizabeth C. Pritzker

Respectfully submitted,

By: _/s/ Elizabeth C. Pritzker_
    Elizabeth C. Pritzker

    *Liaison Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

CRAVATH, SWAINE & MOORE LLP
    Christine Varney *(pro hac vice)*
    Katherine B. Forrest *(pro hac vice)*
    Gary A. Bornstein *(pro hac vice)*
    Timothy G. Cameron *(pro hac vice)*
    Yonatan Even *(pro hac vice)*
    Lauren A. Moskowitz *(pro hac vice)*
    Justin C. Clarke *(pro hac vice)*
    M. Brent Byars *(pro hac vice)*
    Michael J. Zaken *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
    Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Lauren A. Moskowitz*
    Lauren A. Moskowitz

    *Counsel for Plaintiff Epic Games, Inc.*


OFFICE OF THE UTAH ATTORNEY GENERAL
    Brendan P. Glackin
    Lauren M. Weinstein

Respectfully submitted,

By: */s/ Lauren M. Weinstein*
    Lauren M. Weinstein

    *Counsel for the Plaintiff States*

1

## **<u>E-FILING ATTESTATION</u>**

2

     I, Lee M. Mason, am the ECF User whose ID and password are being used to file this

3

document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

                                           */s/ Lee M. Mason*
                                           Lee M. Mason

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B1

# EXHIBIT 1

FILED UNDER SEAL

# Morgan Lewis

**Brian C. Rocca**
Partner
+1.415.442.1432
brian.rocca@morganlewis.com

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

November 11, 2021

**VIA E-MAIL**

Lauren A. Moskowitz
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Re:  *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.);
     *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.);
     *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-05761-JD (N.D. Cal.);
     *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792-JD (N.D. Cal.);
     *State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.)

Dear Lauren:

We write in response to your letter of October 29 regarding outstanding discovery issues.

**Native PowerPoint Files**

Google reimaged PowerPoint files as color JPEGs and reproduced those files to Plaintiffs on November 1, 2021 in production volume PROD048.  To the extent Plaintiffs determine that any of the PowerPoint files reproduced as color JPEGs are still not legible, Google agrees to Plaintiffs' protocol set forth in your letter of October 29, 2021 with one modification to provision (iv). As discussed on our prior meet and confers, given the potential volume, system processing time, and quality control measures that will be required to complete each request, Google is unable to commit to providing Plaintiffs with a reproduction of files in native format within forty-eight hours. Thus, Google proposes the following modification to provision (iv):

> (iv) Google will use best efforts to provide Plaintiffs with a reproduction of the file(s) in native .pptx format within ~~forty-eight (48)~~ seventy-two (72) hours of the request, subject to reasonable extensions based on the timing or the number of requests.

**Metadata**

We are looking into Plaintiffs' inquiry regarding Google's production of certain metadata fields and will follow up with additional information in due course.

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596        **T** +1.415.442.1000
United States                        **F** +1.415.442.1001

Lauren A. Moskowitz
November 11, 2021
Page 2

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

**Search Query No. 95**

Google agrees to add the following terms to Search Query No. 95:

> (Marmot w/25 (app or apps or application*)) OR "Project Cake" OR "Project Robinson" OR "Project Pacific"

We understand that Plaintiffs are now requesting that Google add "Starburst", "Clover", and "Lion Force" as terms to Search Query No. 95. The query already includes "Project Starburst", so Google objects to Plaintiffs' duplicative request to add "Starburst". With respect to "Clover" and "Lion Force", Google requests that Plaintiffs explain the basis for their request to add each of these terms.

**Text Messages**

As Google has explained multiple times on several occasions, the vast majority of Google's custodians do not use text messages to conduct business. For that reason, it is not surprising that there are relatively few text messages in Google's production. Google is diligently evaluating whether its custodians possess responsive text messages that should be collected and produced. We provided an example of such a responsive text message in Google's production in our November 3, 2021 correspondence. Moreover, as we also explained previously, the mere fact that an individual refers to a "text" does not necessarily mean the use of an SMS text message, and can refer to other means of communication, including an email. Moreover, Plaintiffs' examples in its October 29 letter do not suggest that responsive text messages should exist in Google's production. The dates of both examples identified pre-date the filing of the complaint in this litigation; thus, even if those emails did actually refer to SMS text messages, the fact that they were no longer available after the filing of this lawsuit is entirely expected and does not support Plaintiffs' implication that Google's collection of text message is somehow incomplete.

**Instant Messages / Chats**

Plaintiffs' contention that if they had known that there was a "24-hour purge policy for instant messages when the parties initially negotiated the collection periods for Google custodians", they would have requested collection of instant messages for all custodians for the entire refresh period is nonsensical. Negotiations relating to refresh collections were based on individuals' roles and relevant responsibilities and should not be affected by Google's usual course of business retention policy. Google's obligation to preserve is independent of those negotiations and there is no reason to change the Parties' agreement as to which custodians require a refresh production.

Plaintiffs have made no showing that Google's production of instant messages and chats is incomplete or deficient aside from baseless assumptions. The examples Plaintiffs identify in their October 29 letter to purport to show that there are "responsive chats throughout 2020 and 2021" are actually emails dated between January 2020 and July 2020, which pre-date the filing of the earliest complaint and fall within the period when the ordinary course 24-hour retention policy period was in place. As we previously stated, to the extent Plaintiffs identify any information that suggests that instant messages or chat messages for the refresh custodians are incomplete, we will further investigate. However, to date, Plaintiffs have not done so, and Google continues to believe that its productions of responsive chats and instant messages are comprehensive.

Lauren A. Moskowitz
November 11, 2021
Page 3

<span style="color:red">**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**</span>

In the interest of closing out this issue, Google provides the following information in response to Plaintiffs' request for information relating to Google's preservation of chats and instant messages:

 i. Google's current chat retention policy is attached as Exhibit A to this letter.

 ii. Google provided litigation hold notices to the vast majority of custodians on September 11, 2020.  To the extent any custodians were not initially identified as having relevant information, hold notices were issued immediately upon notice of their relevance.

 iii. With respect to the technological processes required to be taken by individuals to preserve chats or instant messages following their receipt of litigation holds, Google responds that the technological settings on Google's chat retention policy (see Exhibit A) did not change, as Google does not have the ability to change default settings for individual custodians with respect to the chat history setting.  See Exhibit B, Google Workspace Admin Help page re: chat history.  Specifically:

  1. Google's default settings for chat history for the entire organization is set to off;

  2. Google employees need to apply the "history on" setting on a chat-by-chat basis; and

  3. Settings for chat history are set by each individual custodian.

 iv. To the extent the question asks for information that is covered by attorney-client privilege and work product, we decline to answer.  However, without divulging the content of attorney-client communications, Google states that it actively manages its litigation hold, including regular reminders to custodians about their preservation obligations.

 v. Google generally encourages Google employees to use Google corporate services for chat and other communications.  The use of third-party chat platforms is strongly discouraged.  However, to the extent any such platforms have been used for business purposes and contain messages relevant to this litigation and are within the possession, custody and control of Google, such messages are subject to the litigation hold and Google will produce relevant messages from those third-party chat platforms.

**<u>Organizational Charts</u>**

We are preparing a production of reporting information from the Teams tool for all agreed upon custodians as of October 18, 2021. We will produce this information in the near term and will identify responsive documents by Bates number.

**<u>House Judiciary Committee ("HJC") Productions</u>**

Google produced the remaining 31 documents from the HJC production that were tied up in the NDA notice process on October 28, 2021 in production volumes PROD046A and PROD046B.

Lauren A. Moskowitz
November 11, 2021
Page 4

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

██████ **Contracts**

As an initial matter, Google confirmed during the October 26, 2021 meet and confer that it would likely produce all of the "relevant" agreements between ████████████, because the individuals who were principally responsible for negotiating the ████████ are custodians in either the MDL or in the CID.  Given that Google offered to re-review and produce communications relating to ████████ agreements that were collected during discovery in the MDL, and given that the CID materials were being produced without a relevance review, we continue to believe that our offer should be sufficient.  Google agrees that Plaintiffs reserve their rights to request additional relevant contracts or custodians responsible for negotiating agreements between ████████. Google also reserves rights to object to such requests to the extent Google does not believe such agreements or custodians are relevant to the claims in this litigation.

██████ **Agreement**

Google has produced this agreement.  *See* GOOG-PLAY-007335679 - GOOG-PLAY-007335696.

**Individual Contracts with App Developers**

**Play Pass and Play Points Agreements.**  As previously noted, Google produced several exemplar Play Points agreements in Production Vol. 35.  Exemplar Play Pass / NBO agreements were included in Production Vol. 41.  This completes Google's production of these agreements.

**Updates Concerning Developer Deal Program Agreements.**  Plaintiffs request an update on the status of the production of agreements with developers participating in (1) the Games Velocity Program, (2) the App Velocity Program, (3) the Living Room Accelerator Program, (4) the Audio Accelerator Program, and (5) Subscribe with Google, and reiterate the request "that Google identify the Bates numbers of all final, singed versions of any agreements relating these five programs."  As discussed during the October 26, 2021 meet and confer, and again during the November 4, 2021 meet and confer, we are presently working to ensure we have identified all relevant agreements through a reasonable search, providing notice to additional third parties, and collecting additional agreements for production.  Based on the information available at this time, Google provides below an update for each deal program.  As for the identification of agreements by Bates number, as discussed during the October 26, 2021 meet and confer, identifying all deal program agreements by Bates number is an exercise Plaintiffs can perform just as easily as Google, as Plaintiffs have the deal program names and can search the production with those terms.  That said, in an effort to assist Plaintiffs in the identification of the relevant agreements, Google has identified sample agreements by Bates number, which should enable Plaintiffs to readily ascertain additional agreements from each program.

*Hug/Games Velocity Program Agreements*.  As stated during the October 26, 2021 meet and confer, Google anticipated the additional Games Velocity Program agreements would be produced the following week.  Google confirms that those agreements were included in Production Volume 49.  This completes Google's production of these agreements.  Games Velocity Program agreements were included in Production Vols. 31 and 49.  Examples of Games Velocity Program agreements and related addenda include GOOG-PLAY-007273051; GOOG-PLAY-007273234; GOOG-PLAY-007273255; GOOG-PLAY-007273839; GOOG-PLAY-007335462; GOOG-PLAY-007273439.

Lauren A. Moskowitz
November 11, 2021
Page 5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

*Apps Velocity Program.*  Google has identified previously unproduced Apps Velocity Program agreements with two developers.  Notice will be provided to the developers and we anticipate that the agreements will be produced by the end of the month.  No AVP agreements have been produced.

*Audio Accelerator Program (ADAP).*  Google has identified previously unproduced ADAP agreements with three developers.  Notice will be provided to these developers and we anticipate that the agreements will be produced by the end of the month.  ADAP agreements were included in Production Vol. 31.  Examples of produced ADAP agreements include GOOG-PLAY-007317084; GOOG-PLAY-007272061; GOOG-PLAY-007272068.

*Living Room Accelerator Program (LRAP).*  Google has identified previously unproduced LRAP agreements with seventeen developers.  Agreements with five of those developers were included in Production Vol. 49.  Google is continuing to work through notice issues with the remaining twelve, though we expect all of the remaining agreements will be produced by the end of the month.  LRAP agreements were included in Production Vols. 31, 35 and 49.  Examples of produced LRAP agreements include GOOG-PLAY-007272399; GOOG-PLAY-007272002; GOOG-PLAY-007272857; GOOG-PLAY-007272245; GOOG-PLAY-007273263; GOOG-PLAY-007274202.

*Subscribe with Google.*  To date, Google has produced Subscribe with Google agreements with more than a hundred developers.  Those agreements were included in Production Vols. 31, 35, and 49.  Examples of produced Subscribe with Google agreements include GOOG-PLAY-007272335; GOOG-PLAY-007335327; GOOG-PLAY-007272640.  While Google has located Subscribe with Google agreements with roughly 30 additional developers, Google has faced difficulty providing notice to some of these partners.  Rather than go through the time-consuming process of giving notice to each of these developers, Google has attached here as Exhibit C a list of Subscribe with Google developers for whom an agreement has not yet been produced.  To the extent Plaintiffs would like Google to produce any particular agreements from this list, up to a reasonable number, Google will agree to attempt to notify the developer and produce the agreement.

**NDAs**

Plaintiffs continue to ask Google to undertake a search for NDAs, but fail to address Google's objection to this request as irrelevant and unproportional to the case in light of the fact that relevant substantive communications made pursuant to any NDA would be produced--and have been, as evidenced by Plaintiffs own example of an email referencing a ████████ NDA.  Nor do Plaintiffs explain what an NDA "concern[ing] issues related to this litigation" even looks like or identify any documents demonstrating that such NDAs might exist.  *See* 2021.10.08 H. Nam Letter to B. Rocca.  For example, is the "Confidentiality" clause contained in many of the agreements Google has produced a "NDA" by Plaintiffs definition?  If so, then Plaintiffs already have access to NDAs "concern[ing] issues related to this litigation," in MADAs for instance.

In Plaintiffs' October 29, 2021 letter, Plaintiffs cite RFPs to which NDAs would be responsive, as they had not previously even attempted to do so.  These requests do not support Plaintiffs position.  RFP No. 1 requests all agreements between Google, on the one hand, and OEMs and wireless carriers, on the other.  But in response to that request Google only agreed to produce MADAs and RSAs for certain OEMs and wireless carriers, which it has done, and more, subject to the parties' subsequent meet and confer negotiations.  RFP No. 32 seeks agreements between

Lauren A. Moskowitz
November 11, 2021
Page 6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Google and developers deviating from exemplars of agreements developers must enter into as called for in RFP No. 31.  Google has produced agreements with developers that modify the terms of the standard DDA.  And RFP No. 37 seeks agreements with developers that operate other app marketplaces or software stores, and Google agreed to produce exemplars of DDAs, terms of service, and Android SDK License Agreements.  None of these RFPs necessarily seek either directly or indirectly NDAs.  That said, to the extent Plaintiffs identify any particular documents from the custodial productions that refer to the existence of an NDA between Google and OEM, developer, or carrier directly relevant to the issues in the case, Google is willing to consider a particularized request to search for the underlying NDA.

**Revenue Share Agreements**

As noted in Plaintiffs' October 29, 2021 letter, Plaintiffs agreed to Google's offer to search centralized repositories for RSAs with non-OEMs and non-wireless carriers for revenue share agreements relating to Google Play and Google Play Billing.  Plaintiffs ask for an update on the production of additional agreements, but as Google represented in its August 13, 2021 letter, Google conducted that search and was unable to locate any revenue share agreements related to Google Play and Google Play Billing other than those with OEMs and carriers.  As Google explained in its October 18, 2021 letter, Google is searching for and producing revenue share agreements relevant to the cases--that is, revenue share agreements with app store or installer preinstallation restrictions.  Those revenue share agreements with such restrictions are found between Google and OEMs and wireless carriers, which Google has produced pursuant to the parties' various agreements through the meet and confer process.

**Contracts with OEMs**

Plaintiffs request a list of OEMs for whom Google has produced agreements to date, in order to enable Plaintiffs to determine what agreements Google has produced for each OEM.  While Google believes Plaintiffs are able to find all relevant agreements by searching for agreement types, Google has attached as Exhibit D the requested list of OEMs.

*Contracts with Larger OEMs.*  Plaintiffs contend that "for some of the larger OEMs, Plaintiffs have received only certain types of agreements or amendments to agreements without the underlying agreement" for a number of OEMs.  As an initial matter, Google believes it has collected and produced all available contracts, per the parties' agreements, for each of the larger OEMs.  That said, the one example cited by Plaintiffs is Alcatel, for whom Plaintiffs state they have received MADA amendments without receiving the underlying MADAs themselves.  Based on the documents cited in Plaintiffs' letter, it appears Plaintiffs are aware that the signing party for ▮▮▮▮▮ agreements is ▮▮▮▮▮▮▮▮▮.  At least one MADA has been produced for ▮▮▮▮▮▮▮.  *See* GOOG-PLAY-000617393.

*Contracts Smaller OEMs.*  Plaintiffs ask Google to confirm that the agreements listed in Exhibit A to Google's September 17, 2021 letter represent all agreements with the subset of smaller OEMs that Plaintiffs identified.  Based on a reasonable search, Google can confirm that the agreements produced for the smaller OEMs constitute all of the relevant agreements identified for those OEMs.

Lauren A. Moskowitz
November 11, 2021
Page 7

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

**Wireless Carrier Agreements**

Plaintiffs contend that they are unable to locate revenue share agreements and direct carrier billing agreements for the top four U.S. carriers in Google's production.  Google believes, as it has previously represented, that these agreements have already been produced and the production of U.S. carrier agreements is complete.  While Plaintiffs do not specify which agreements they believe they do not have, to assist Plaintiffs with identifying the relevant carrier agreements, Google provides the following examples by Bates number:

(1) ███ (GOOG-PLAY-003604531; GOOG-PLAY-003604606; GOOG-PLAY-001507837);

(2) ███ (GOOG-PLAY-003604546; GOOG-PLAY-003604937; GOOG-PLAY-001507921);

(3) ███ (GOOG-PLAY-003604627; GOOG-PLAY-003604732; GOOG-PLAY-003604574 GOOG-PLAY-001507814); and

(4) ███ (GOOG-PLAY-3604808; GOOG-PLAY-003604862).

**Chrome Web Store Agreements**

Google produced the current version of the chrome web store agreement, GOOG-PLAY-007274442, as well as historical versions of that agreement, *see, e.g.* GOOG-PLAY-007274481 and GOOG-PLAY007274462

**App Store Reports**

Plaintiffs asked in their October 6, 2021 letter that Google produce all "App Store Reports," as found at GOOG-PLAY-001167043.  Based on a reasonable investigation, the App Store Reports document Plaintiffs identified contains not only the final App Store Report for March 2018, but all prior iterations of the App Store Report, dating back to the first report covering November 2017.

*            *            *

We are available to discuss these issues at the next scheduled meet and confer.

 Sincerely,

Brian C. Rocca

cc:     Yonatan Even (YEven@cravath.com)
        Justin C. Clarke (jcclarke@cravath.com)
        Eric Zepp (ezepp@cravath.com)
        Zachary Jarrett (zjarrett@cravath.com)
        Daniel Ottaunick (dottaunick@cravath.com)

Lauren A. Moskowitz
November 11, 2021
Page 8

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Bonny E. Sweeney (bsweeney@hausfeld.com)
Melinda R. Coolidge (mcoolidge@hausfeld.com)
Katie R. Beran (kberan@hausfeld.com)
Alberto Rodriguez (arodriguez@sperling-law.com)
Steve W. Berman (steve@hbsslaw.com)
Rob F. Lopez (robl@hbsslaw.com)
Ben J. Siegel (bens@hbsslaw.com)
Karma M. Giulianelli (karma.giulianelli@bartlitbeck.com)
Jamie L. Boyer (jboyer@koreintillery.com)
Hae Sung Nam (hnam@kaplanfox.com)
Aaron Schwartz (ASchwartz@kaplanfox.com)
Brendan Glackin (bglackin@agutah.gov)
Brian Christensen (bchristensen1@agutah.gov)
Sarah Boyce (sboyce@ncdoj.gov)

# EXHIBIT A

# Google Chat Retention Policy

Policy Last modified: November 18, 2020

Page last modified:  February 26, 2021

Our Google Chat retention policy aims to reduce redundant, obsolete, and trivial information in corporate chats. By helping us all focus on our most meaningful and useful messages, we can reduce time spent sifting through irrelevant old messages and reduce storage costs.

## Retention Periods

- **24 hours** if history is off

- **30 days** for history-on chats with just one one other person

- Currently **18 months** for history-on chats in a group conversation or flat (non-threaded) room
  - Exception: 30 days if the history-on flat room was created from within classic Hangouts before 11/18/20
  - **Please be aware:** You may have noticed that your group chats created in classic Hangouts are also reflected as flat rooms in Google Chat (and vice versa). Historically, both had a retention period of 30 days. The current 18-month retention of flat rooms is a technical interim step and will be brought back to the initial **30 days** earliest H1 2021 (we'll be sure to announce when this is happening!). If you need 18-month-long retention, please consider a threaded room instead.

- **18 months** for chats in a threaded room (history is always on and can't be turned off)

  NOTE:  Turning history "on" or "off" applies only to messages sent after that change. For example, if you send or receive messages while history is "off" and then you turn it "on," the pre-existing messages will only be retained for 24 hours.

  NOTE: Once a chat's retention period expires and it's removed from your view, it can't be recovered back into your view.

## Business Records

If your role involves data that is potentially subject to different or longer retention periods (for example, private user data or tax records), consider taking information like this off of Chat into Gmail (Gmail Retention Policy), Google Docs, or another storage system. If you aren't sure whether the data you're handling should be stored outside of Chat for a different retention period, reach out to your manager or product counsel (go/whichlawyer). Otherwise, feel free to reach out to us at records-retention@google.com  for more general data retention questions.

## Legal Holds

**CONFIDENTIAL**

8/3/2021
Case 3:22-cv-02746-JD Document 102-5 Filed 12/01/22 Page 33 of 142
Google Chat Retention Policy: Information Governance (go/retention) Help Center

If you've been notified that you're subject to a "legal hold": To comply with our preservation obligations, your Google Chats described below will be preserved automatically (all retention periods are paused) while the relevant matter is pending. Still, don't manually delete any chats relevant to the matter at issue under any circumstances.

- On-the-record 1:1s, Group DMs, and Flat Rooms you've sent or received

- Threaded Rooms conversations in which you've participated (i.e., sent a message, not just received)

Once all applicable legal holds have been lifted, the retention periods will take effect again and remove expired messages.

## Policy Scope

This policy applies to corporate Google Chat only. It applies to all employees and our extended workforce (temporary workers/vendors/contractors) across Alphabet (minus Calico and Sidewalk Labs).

## Approvals & Changes

This policy periodically will be reviewed by Google Legal to ensure alignment and compliance with our legal and regulatory obligations. Any changes to this retention policy will be approved by Google Legal.

## Questions/Feedback

If you have any questions about this policy, you can send us an email at records-retention@google.com.

Chat Retention FAQs

**CONFIDENTIAL**

# EXHIBIT B

# Turn chat history on or off for users

As an administrator, you can control whether to keep chat history for users in your organization. You can set the default and also let users change their history setting for each conversation.

The chat history settings for Google Chat and classic Hangouts are combined in the Google Admin console. There's now one setting to control chat history for your organization. Learn more

1. Your current account, maryfer.mendoza@morganlewis.com, doesn't have permission to perform these steps. To continue, switch to a *super administrator account*. This will open the Google Admin console.

   Switch to super administrator account (signs you out)    or Learn more.

2. From the Admin console Home page, go to **Apps** › **Google Workspace** › **Google Chat and classic Hangouts.**

3. Click **History for chats**.

4. Under **Organizational Units**, select the domain or organizational unit you want to apply settings to.

5. Turn history **On** or **Off**.

   - If you turn history **On**, you can use Vault to control how long messages are retained   . Messages will disappear after the Vault retention period (if you set one).

   - If you turn history **Off**, messages are deleted after 24 hours. Vault   can't hold, retain, or search direct messages that are sent with history turned off.

     Turning history off does not hide content from scans to detect sensitive data or abuse. See "History details" below for more information.

6. To let users change their history setting, check **Allow users to change their history setting**.

   **Note:** If your organization uses both Chat and classic Hangouts, and you don't allow users to change their history setting, there may be times users can't join or stay in a Chat space. To learn more, visit Set a space history option for users   .

7. Click **Save**.

# History details

- Chat history settings apply to direct messages and group messages. If your organization has both Chat and classic Hangouts (that is, your chat setting is "Chat preferred" or "Chat and classic Hangouts"), then **Allow users to change their history setting** also applies to unthreaded spaces. History is always on in spaces with threaded conversations and can never be changed.

- History changes apply only to new messages. For example, If you turn chat history on, only new messages will be saved. If you turn chat history off, old messages that were previously saved are still saved.

- If history is forced on, people in different data regions can't chat. (History is forced on if **History for chats** is **On** and **Allow users to change their history setting** is not selected.) If you allow users to

change their history setting, history will automatically be turned off when people from different data regions chat.

- When history is off, data is not reported in the Audit report for direct messages except when messages are associated with Data Loss Prevention (DLP) incidents. (Chat DLP is now in beta.) Chat DLP incidents are logged in the Audit report for all messages, including those sent with history off. The DLP incident log points to the message, and admins can view the message until it's deleted in 24 hours. After that point, the incident log remains with a record that the message was deleted.
- When history is off, a message with external participants may be preserved longer than 24 hours if a user flags it for abuse or the message is reported to Google for spam, phishing, or malware.

> Even if chat history is turned off, it's possible that a separate copy of the conversation can be saved. For example, the message might be forwarded to Gmail or saved using a 3rd-party client.

## Related topics

- Set a space history option for users
- History settings and classic Hangouts

---

## Need more help?
Try these next steps:

### Ask the Help Community
Get answers from community experts

### Contact us
Tell us more and we'll help you get there

# EXHIBIT C



NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY



NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY

# EXHIBIT D



NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY



NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY



NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY

# EXHIBIT B2

# EXHIBIT 3

FILED UNDER SEAL

HIGHLY CONFIDENTIAL

Page 1

1    ** H I G H L Y   C O N F I D E N T I A L **
2    UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF CALIFORNIA
3    SAN FRANCISCO DIVISION
     Case No. 3:21-md-02981-JD
4    ------------------------------------X
     IN RE GOOGLE PLAY STORE
5    ANTITRUST LITIGATION
6
     THIS DOCUMENT RELATES TO:
7    Epic Games Inc. v. Google LLC, et al.,
     Case No: 3:20-cv-05671-JD
8
     In re Google Play Consumer
9    Antitrust Litigation,
     Case No: 3:20-cv-05761-JD
10
     In re Google Play Developer
11   Antitrust Litigation,
     Case No: 3:20-cv-05792-JD
12
     State of Utah, et al.,
13   v. Google LLC, et al.,
     Case No: 3:21-cv-05227-JD
14
     ------------------------------------X
15
                      February 10, 2022
16                    9:04 a.m.
17
18        Videotaped Deposition of JAMIE
19   ROSENBERG, taken by Plaintiffs, pursuant to
20   Notice, held via Zoom videoconference,
21   before Todd DeSimone, a Registered
22   Professional Reporter and Notary Public.
23
24
25

HIGHLY CONFIDENTIAL

Page 2

```
 1    A P P E A R A N C E S :
 2    Counsel for Plaintiff Epic Games, Inc. in:
      Epic Games, Inc. v Google LLC, et al:
 3
      CRAVATH, SWAINE & MOORE LLP
 4    825 Eighth Avenue
      New York, New York 10019
 5    BY: YONATAN EVEN, ESQ.
             yeven@cravath.com
 6          DAVID KUMAGAI, ESQ.
             dkumagai@cravath.com
 7          RAVI SINGH, ESQ.
             rsingh@cravath.com
 8
 9
      Counsel for Google LLC, et al:
10
      MUNGER, TOLLES & OLSON LLP
11    350 South Grand Avenue
      50th Floor
12    Los Angeles, California 90071-3426
      BY:  GLENN D. POMERANTZ, ESQ.
13           glenn.pomerantz@mto.com
            LAUREN N. BECK, ESQ.
14           lauren.beck@mto.com
15
16
      Counsel for the Proposed Class In re:
17    Google Play Developer Antitrust Litigation
      and Pure Sweat Basketball, Inc:
18
      HAGENS BERMAN SOBOL SHAPIRO LLP
19    715 Hearst Avenue
      Suite 202
20    Berkeley, California 94710
      BY:  BEN HARRINGTON, ESQ.
21           benh@hbsslaw.com
22
23
24
25
```

HIGHLY CONFIDENTIAL

Page 3

```
 1   A P P E A R A N C E S: (Continued)
 2   Counsel for the Proposed Class In re:
     Google Play Consumer Antitrust Litigation:
 3
     BARTLIT BECK LLP
 4   1801 Wewetta Street
     Suite 1200
 5   Denver, Colorado 80202
     BY: KARMA M. GIULIANELLI, ESQ.
 6       karma.giulianelli@bartlitbeck.com
         GLEN E. SUMMERS, ESQ.
 7       glenn.summers@bartlitbeck.com
 8           - and -
 9   BARTLIT BECK LLP
     54 West Hubbard Street
10   Courthouse Place
     Suite 300
11   Chicago, Illinois 60654
     BY:  LEE MASON, ESQ.
12       lee.mason@bartlitbeck.com
13
14
15   Counsel for Plaintiff States:
16
     OFFICE OF THE UTAH ATTORNEY GENERAL
17   111 South Main Street
     Suite 1800
18   Salt Lake City, Utah 84111
     BY:  BRENDAN GLACKIN, ESQ.
19       bglackin@agutah.gov
20
21   OFFICE OF THE MISSOURI ATTORNEY GENERAL
     615 East 13th Street
22   Suite 401
     Kansas City, Missouri 64106
23   BY:   STEPHEN HOEPLINGER, ESQ.
           stephen.hoeplinger@ago.mo.gov
24
25
```

HIGHLY CONFIDENTIAL

Page 4

1   ALSO PRESENT:

2      JEREMY JACOBSON, Law Clerk, Cravath

3      KATE SMITH, ESQ., Google

4      STEPHEN KENT, Videographer

5      PAUL RAFFERTY, Veritext Concierge Tech

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 5

1            THE VIDEOGRAPHER: Good morning.
2    We are going on the record at 9:04 a.m.
3    Pacific on February 10th, 2022.
4            Please mute your audio input if
5    you are not a speaking party as your
6    microphones are sensitive and can pick up
7    whispering and background noise.  Please
8    turn off all cell phones or place them away
9    from your computer as they can interfere
10   with the deposition audio.  Audio and video
11   recording will continue to take place
12   unless all parties agree to go off the
13   record.
14           This is media unit one of the
15   video-recorded deposition of Jamie
16   Rosenberg in the matter of In Re Google
17   Play Antitrust Litigation, filed in the
18   United States District Court for the
19   Northern District of California, San
20   Francisco Division, case number
21   3:21-MD-02981-JD.  This deposition is being
22   held via videoconference with the witness
23   located in California.
24           My name is Stephen Kent from
25   the firm Veritext Legal Solutions and I am

                                    Page 6

1    the videographer.  The court reporter is
2    Todd DeSimone also from Veritext Legal
3    Solutions.  I'm not authorized to
4    administer an oath, I'm not related to any
5    party in this action, nor am I financially
6    interested in the outcome.
7                All appearances will appear on
8    the stenographic record.  Will the court
9    reporter please swear in the witness.
10               *    *    *
11   J A M I E    R O S E N B E R G,
12   called as a witness, having been first duly
13   sworn, was examined and testified
14   as follows:
15   EXAMINATION BY MS. GIULIANELLI:
16        Q.     Good morning, Mr. Rosenberg.
17   My name is Karma Giulianelli and I will be
18   asking you questions today on behalf of the
19   consumer class.
20        A.     Good morning.
21        Q.     Good morning.  What is your
22   name, for the record?
23        A.     My name is Jamie Rosenberg.
24        Q.     Is there anything that would
25   interfere with your memory here today?

Page 127

1      Q.      Correct.

2      A.      Yes.

3      Q.      And how long -- how often do

4  you use Google Chat to discuss business

5  with coworkers?

6      A.      Well, I mean, I use -- I use

7  Google Chat probably a few times a day for

8  various purposes.

9      Q.      And some of those purposes

10  involve discussions about the business of

11  the Play Store, right?

12      A.      Typically it would be, I mean,

13  there is different purposes, sometimes I

14  would ping someone on Chat to see if they

15  are available on short notice for a call or

16  to join a meeting.  I might ping my

17  assistant on Chat to ask her a question or

18  ask her to please schedule a follow-up with

19  someone.  I might ping someone for, if we

20  are in a meeting, you know, remind me who

21  that person is on the left.  Those types of

22  things.  Maybe to clarify a fact or make

23  sure I heard something correctly.

24      Q.      Sometimes you also have

25  substantive business discussions with

1    respect to not just logistical issues, but

2    you are discussing something about the

3    business on Google Chat too, right?

4         A.      No, not typically, as I recall.

5         Q.      And in this instance it looks

6    like you were using the IM chat with

7    Mr. Kolotouros to talk about the rev share

8    on the Play Store that ████████ ██ ██████

9    ████████ ██ ████████ rev share on the Play

10   Store, right?

11        A.      I don't -- I don't know.  It

12   looks like from this it was a chat that he

13   initiated and he might have said, you know,

14   something very simple without a lot of

15   detail, and then it was in the e-mail where

16   I was asking for the detail behind it.

17        Q.      And according to your e-mail

18   that you sent at 10:28 you said to

19   Mr. Kolotouros "You mentioned in our IM

20   chat yesterday that ████████ ████████ ████

21   ████████ ██ ████████ ██ ██ ████████ on the Play

22   Store."

23               Do you still have those IM

24   chats?

25        A.      No, I don't believe so.

HIGHLY CONFIDENTIAL

Page 129

1      Q.      Do you know -- why don't you
2   believe you have those chats, is it because
3   your chat history is turned off, or what
4   leads you to believe that you don't have
5   those chats anymore?
6      A.      Based on -- I believe my chat
7   history is turned off, so they wouldn't
8   have been preserved.
9      Q.      Is your chat history still
10  turned off or did you turn your chat
11  history on at some point?
12     A.      It is off.
13     Q.      Have you done anything to
14  preserve chats for purposes of this
15  litigation?
16     A.      No, not that I recall.
17     Q.      Now, Mr. Kolotouros in response
18  to your e-mail here says that ████████
19  ████████ █ █ █ █ ████ █ █ ██
20  ████ "  And by that, that means that
21  ██████ █████ ████ █ █  in return for
22  ███ ████ ███ ████ , is that what that
23  means?
24     A.      Can I just take a minute to
25  read his e-mail?

HIGHLY CONFIDENTIAL

Page 428

1                CERTIFICATION

2

3     I,   TODD DeSIMONE, a Notary Public for

4    and within the State of New York, do hereby

5    certify:

6     That the witness whose testimony as

7    herein set forth, was duly sworn by me; and

8    that the within transcript is a true record

9    of the testimony given by said witness.

10     I further certify that I am not related

11    to any of the parties to this action by

12    blood or marriage, and that I am in no way

13    interested in the outcome of this matter.

14     IN WITNESS WHEREOF, I have hereunto set

15    my hand this 11th day of February, 2022.

16

17

18

19    _____

20           TODD DESIMONE

21

22

23

24

25

# EXHIBIT B3

# EXHIBIT 6

FILED UNDER SEAL

HIGHLY CONFIDENTIAL

Page 1

```
 1          UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
 3             SAN FRANCISCO DIVISION
 4  _____
                                            )
 5  IN RE GOOGLE PLAY STORE                 ) Case No.
    ANTITRUST LITIGATION                    ) 3:21-md-02981-JD
 6                                          )
    THIS DOCUMENT RELATES TO:              )
 7  Epic Games Inc. v. Google LLC et       )
    al., Case No. 3:20-cv-05671-JD          )
 8                                          )
    In re Google Play Consumer             )
 9  Antitrust Litigation, Case             )
    No. 3:20-cv-05761-JD                    )
10                                          )
    In re Google Play Developer            )
11  Antitrust Litigation, Case             )
    No. 3:20-cv-05792-JD                    )
12                                          )
    State of Utah et al. v. Google LLC)
13  et al., Case No. 3:21-cv-05227-JD )
    _____)
14
15
16
17
18     HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER
19      VIDEOTAPED REMOTE DEPOSITION OF JUSTIN MATTSON
20             San Francisco, California
21                Friday, July 29, 2022
22
23  Reported by:
24  CATHERINE A. RYAN, RMR, CRR, B.S., CSR No. 8239
25
```

HIGHLY CONFIDENTIAL

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4   ─────────────────────────────────────
                                          )
 5   IN RE GOOGLE PLAY STORE              ) Case No.
     ANTITRUST LITIGATION                 ) 3:21-md-02981-JD
 6                                        )
     THIS DOCUMENT RELATES TO:            )
 7   Epic Games Inc. v. Google LLC et     )
     al., Case No. 3:20-cv-05671-JD       )
 8                                        )
     In re Google Play Consumer           )
 9   Antitrust Litigation, Case           )
     No. 3:20-cv-05761-JD                 )
10                                        )
     In re Google Play Developer          )
11   Antitrust Litigation, Case           )
     No. 3:20-cv-05792-JD                 )
12                                        )
     State of Utah et al. v. Google LLC)
13   et al., Case No. 3:21-cv-05227-JD )
     ─────────────────────────────────────)
14
15
16
17            Videotaped deposition of JUSTIN MATTSON,
18   taken on behalf of Plaintiffs, at MUNGER, TOLLES &
19   OLSON, LLP, 560 Mission Street, 27th Floor, San
20   Francisco, California, beginning at 9:03 a.m.
21   and ending at 4:30 p.m., on Friday, July 29, 2022,
22   before CATHERINE A. RYAN, Certified Shorthand
23   Reporter No. 8239.
24
25
```

HIGHLY CONFIDENTIAL

```
                                                     Page 3

 1    APPEARANCES:

 2

 3    For State of North Carolina:

 4         NORTH CAROLINA DEPARTMENT OF JUSTICE
           BY:  SARAH BOYCE

 5         Attorney at Law
           114 West Edenton Street

 6         Raleigh, North Carolina  27603
           sboyce@ncdoj.gov

 7

 8    For State of California:

 9         STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
           OFFICE OF THE ATTORNEY GENERAL

10         BY:  PAULA L. BLIZZARD
           Deputy Attorney General

11         455 Golden Gate Avenue, Suite 11000
           San Francisco, California  94102-7004

12         (415) 510-3765
           (415) 703-5480 Fax

13         paula.blizzard@doj.ca.gov

14

15    For Plaintiff Epic Games Inc.:

16         CRAVATH, SWAINE & MOORE LLP
           BY:  COLLEEN M. KOZIKOWSKI

17         Attorney at Law
           Worldwide Plaza

18         825 Eighth Avenue
           New York, New York  10019-7475

19         (212) 474-1461
           (212) 474-3700 Fax

20         cmkozikowski@cravath.com

21

22

23

24

25    //
```

HIGHLY CONFIDENTIAL

Page 4

```
 1   APPEARANCES (Continued):
 2
 3   For Consumer Plaintiffs:
 4        COTCHETT, PITRE & McCARTHY
          BY:  JAMES G. DALLAL
 5        Attorney at Law
          840 Malcolm Road
 6        Burlingame, California  94010
          (650) 697-6000
 7        jdallal@cpmlegal.com
 8
 9   For Defendant and the Witness:
10        MUNGER, TOLLES & OLSON, LLP
          BY:  EMILY C. CURRAN-HUBERTY
11        Attorney at Law
          560 Mission Street, 27th Floor
12        San Francisco, california  94105-2907
          (415) 512-4052
13        (415) 512-4077 Fax
          emily.curran-huberty@mto.com
14
          BY:  JAMIE B. LUGURI
15        Attorney at Law
          350 South Grand Avenue, 50th Floor
16        Los Angeles, California  90071
          (213) 683-9557
17        jamie.luguri@mto.com
18
19   ALSO PRESENT:
20   KATHLYN QUERUBIN, Attorney at Law, Google LLC
21   TOM ZICK, Intern, State of California Department of
     Justice
22
     FRANK QUIRARTE, Videographer, Veritext
23
24
25
```

HIGHLY CONFIDENTIAL

Page 5

1                    INDEX

2   WITNESS                              EXAMINATION

3   JUSTIN MATTSON

4                   BY MS. BOYCE                11

5                   BY MS. KOZIKOWSKI          166

6                   BY MS. CURRAN-HUBERTY      206

7                   BY MS. BOYCE               215

8

9

10                   EXHIBITS

11  NUMBER              DESCRIPTION          PAGES

12  Exhibit 1336 Resumé "Justin Mattson"; 4 pages     30

13

14  Exhibit 1337 Email series, "Subject:          73

15               [android-vendingmachine] Re: Priced

16               apps blocked for Vodafone users now";

17               Bates GOOG-PLAY-001381141 -

18               GOOG-PLAY-001381146

19

20  Exhibit 1338 Email series, "Subject:          86

21               [android-vendingmacine] Re: Change in

22               default revenue share"; Bates

23               GOOG-PLAY-006038394 -

24               GOOG-PLAY-006038396

25  //

HIGHLY CONFIDENTIAL

Page 6

1                    EXHIBITS (Continued)

2    NUMBER                 DESCRIPTION                    PAGES

3    Exhibit 1339 "ANDROID MARKET DEVELOPER                122

4                 DISTRIBUTION AGREEMENT"; Bates

5                 GOOG-PLAY-004285484 -

6                 GOOG-PLAY-004285491

7

8    Exhibit 1340 Email series, "Subject:  Re:             136

9                 Subscription billing policy for

10                Skyscape"; Bates GOOG-PLAY-001379022

11                - GOOG-PLAY-001379026

12

13   Exhibit 1341 Email series, "Subject:  Re:             140

14                'Secure-Me'"; Bates

15                GOOG-PLAY-001076901 -

16                GOOG-PLAY-001076902

17

18   Exhibit 1342 Email series dated 10/2/2008,            148

19                "Subject:  Re: How will software

20                update work in the android Market?";

21                Bates GOOG-PLAY-005646665 -

22                GOOG-PLAY-005646667

23

24

25   //

HIGHLY CONFIDENTIAL

Page 7

1                    EXHIBITS  (Continued)

2      NUMBER                  DESCRIPTION                    PAGES

3      Exhibit 1343 Email series dated 2/11/2010,        156

4                   "Subject:  Re:

5                   [android-vendingmachine] Free -> Paid

6                   migration"; Bates GOOG-PLAY-005656076

7                   - GOOG-PLAY-005656078

8

9      Exhibit 1344 Email series, "Subject:  Re:         160

10                  [android-advocates] Fwd: CTIA 2010

11                  Wrap up"; Bates GOOG-PLAY-005662858 -

12                  GOOG-PLAY-005662861

13

14     Exhibit 1345 Email series, "Subject:  Re:         181

15                  [android-advocates] Ops, Policy, and

16                  Advocates"; Bates GOOG-PLAY-004310614

17                  - GOOG-PLAY-004310615

18

19     Exhibit 1346 Email series, "Subject:  Re:         191

20                  [android-advocates] Ops, Policy, and

21                  Advocates"; Bates GOOG-PLAY-002745384

22                  - GOOG-PLAY-002745387

23

24

25     //

HIGHLY CONFIDENTIAL

Page 8

1                    EXHIBITS (Continued)

2    NUMBER                DESCRIPTION                PAGES

3    Exhibit 1347 "Android Developers Blog, Android      209

4                 Market update: suport for priced

5                 applications, 13 February 2009"; 2

6                 pages

7

8

9                  PREVIOUSLY MARKED EXHIBITS

10   NUMBER                DESCRIPTION                PAGES

11   Exhibit 305  "Android Developers Blog, Android      65

12                Market: Now available for users, 22

13                October 2008"; 2 pages

14

15   Exhibit 304  Email series, "Subject:  Re:          106

16                [android-advocates] Re:

17                [android-vendingmachine] Re: CHange

18                in default revenue share"; Bates

19                GOOG-PLAY-001677481 -

20                GOOG-PLAY-001677484

21

22                  INSTRUCTIONS NOT TO ANSWER

23                                           PAGE/LINE

24   "Q.  Did you review this document as part     87/24

     Of your prep sessions for this deposition?"

25

HIGHLY CONFIDENTIAL

Page 9

1         San Francisco, California; Friday, July 29, 2022
2                          9:03 a.m.
3
4              THE VIDEOGRAPHER:  All right.  Good
5     morning, ladies and gentlemen.
6              We're on the video record.  The time is
7     approximately 9:03 a.m. on July 29th, 2022.
8              Please note that microphones are sensitive
9     and may pick up whispering and private
10    conversations.
11             Please mute your phones at this time.
12             Audio and video recording will continue to
13    take place unless all parties agree to go off the
14    record.
15             This is the beginning of Media No. 1 in
16    the video-recorded deposition of Justin Mattson,
17    taken by the plaintiff in the matter of In Re:
18    Google Play Store Antitrust Litigation.  It's being
19    held in the United States District Court, Northern
20    District of California, San Francisco Division.
21    It's case No. 3:21-md-02981.
22             The location of our deposition today is
23    560 Mission Street, in San Francisco, California.
24             My name is Frank Quirarte.  I'm your video
25    production specialist today, representing Veritext.

Page 10

```
 1   We're here with our court reporter, Catherine Ryan,
 2   also with Veritext.
 3            Counsel at this time will please identify
 4   yourself for the record.
 5            MS. BOYCE:  My name is Sarah Boyce with
 6   the North Carolina Department of Justice.
 7            MS. BLIZZARD:  Paula Blizzard, California
 8   Attorney General's Office.
 9            MS. ZICK:  Tom Zick, California Attorney
10   General's Office.
11            MS. KOZIKOWSKI:  Colleen Kozikowki from
12   Cravath, Swaine & Moore on behalf of Plaintiff --
13   Plaintiff Epic Games.
14            MR. DALLAL:  James Dallal, Cotchett
15   Pitre & McCarthy, on behalf of the consumer
16   plaintiffs.
17            MS. CURRAN-HUBERTY:  And this is Emily
18   Curran-Huberty of Munger, Tolles & Olson on behalf
19   of Google and the witness.  With me as well are
20   Jamie Luguri, also of Munger, and Kathlyn Querubin
21   of Google.
22            THE VIDEOGRAPHER:  Madam Court Reporter,
23   will now please swear in the witness.
24                   JUSTIN MATTSON,
25   having been administered an oath, was examined and
```

HIGHLY CONFIDENTIAL

Page 11

1   testified as follows:

2                       EXAMINATION

3   BY MS. BOYCE:

4       Q    Good morning, Mr. Mattson.  I just said

5   this on the record, but my name is Sarah Boyce with

6   the North Carolina Department of Justice.

7            And I want to start by thanking you for

8   your time today.  I know this is not how you would

9   choose to spend a Friday, and we are very grateful

10  that you're here.

11      A    Okay.

12      Q    ████████████████████████████████████████████

    ██████████████████████

    █   █     ████████████████████

    █   █     ██████████████████████████████

    █   █     ███████████████████████  ████████████

    █   █████████████████████

    █   █     █████████████████████████████████████

    █   ██████████████████████████████████████████

    █   █     █████████████

21      Q    Have you been deposed before?

22      A    I have not.

23      Q    I'm sorry.  I'm sorry about that.  I'm

24  sorry this is the first time.

25           I assume, though, that you understand that

HIGHLY CONFIDENTIAL

Page 200

1    BY MS. KOZIKOWSKI:

2        Q    Your understanding of what Mr. Woodward

3    meant was that, as Google improves and refines its

4    techniques, bad actors will continue to get more

5    clever in engaging in that bad behavior, and Google

6    will need to further refine its techniques, correct?

7             MS. CURRAN-HUBERTY:  Object to form.

8             THE WITNESS:  Yes.

9             MS. KOZIKOWSKI:  Okay.  I think we can go

10   off the record.

11            THE VIDEOGRAPHER:  We're going off the

12   record.  The time is 3:46 p.m.

13            (Recess.)

14            THE VIDEOGRAPHER:  Back on the record.

15   The time is 3:58 p.m.

16            MS. KOZIKOWSKI:  Okay.  Just a couple more

17   questions, Mr. Mattson.

18        Q    What mediums of communication do you use

19   to talk with your colleagues at Google?

20        A    Email, obviously.  Google Chat, both

21   directly and in chat rooms.  Not very recently, but

22   in the somewhat recent past, on Fuchsia we've used

23   IRC and Discord as well.

24        Q    What is IRC?

25        A    Internet relay chat.

HIGHLY CONFIDENTIAL

Page 201

1        Q     Can you describe what that is?

2        A     It's -- it's a chat protocol.  It's a

3   fairly old one for chat rooms.

4        Q     And what is Discord?

5        A     Discord is another chat service.

6        Q     So you said email, Google Chat, IRC, and

7   Discord.

8              Do you ever use text messages to

9   communicate with colleagues?

10       A     No.

11       Q     And do you have substantive communications

12   with your colleagues via Google Chat --

13       A     Yes.

14       Q     -- or other chat methods?

15       A     Yes.

16       Q     And what -- by "substantive

17   communications," you have business-related or

18   communications -- work-related communications with

19   your colleagues over Google Chat and other chat

20   services, correct?

21       A     That's correct.

22             MS. CURRAN-HUBERTY:  Object to form.

23   BY MS. KOZIKOWSKI:

24       Q     Do you know what the default is with

25   respect to whether those chats are saved or not?

1          MS. CURRAN-HUBERTY:  Object to form.

2          THE WITNESS:  The default with the current

3    incarnation of Google Chat is for chats not to be

4    saved, I believe.

5    BY MS. KOZIKOWSKI:

6      Q    Do you have an understanding of when they

7    are saved?

8      A    I believe they would be saved if either --

9    if any of the related parties turns history on.

10     Q    So, for example, if you're participat- --

11   participating in a Google Chat, you could turn on

12   chat history; is that right?

13     A    That's correct.

14     Q    Do you recall receiving a litigation hold

15   in connection with this lawsuit?

16     A    I don't recall specifically this one.  I

17   have received multiple litigation holds, and I don't

18   recall which one was for which particular

19   litigation.

20     Q    And can you give examples of what types of

21   substantive communications you might discuss with

22   colleagues over a chat?

23          MS. CURRAN-HUBERTY:  Object to form.

24          THE WITNESS:  For the most part, any --

25   any topics that -- I don't think there's really a

1   limitation to the topics that might be discussed.

2   So whether -- whatever is relevant to the work

3   that's ongoing.

4   BY MS. KOZIKOWSKI:

5        Q    So, for example, if a developer had raised

6   a concern with you about Android Market, is there

7   any chance that you would have communicated that

8   with a colleague via a chat?

9             MS. CURRAN-HUBERTY:  Object to form.

10            THE WITNESS:  Yes, there's -- there's a

11   chance.

12   BY MS. KOZIKOWSKI:

13        Q    As another example, if you felt frustrated

14   by a decision that was made by an executive at

15   Google, is there a chance that you would have

16   discussed your reaction with your colleagues via

17   chat?

18            MS. CURRAN-HUBERTY:  Object to form.

19            THE WITNESS:  Yes, that's possible.

20   BY MS. KOZIKOWSKI:

21        Q    Do you recall any specific instances where

22   that's happened?

23        A    No.

24        Q    Do you recall any specific instances where

25   you've discussed developer concerns via chat?

HIGHLY CONFIDENTIAL

Page 204

1        A     I don't.

2        Q     The -- the topics that we looked at and

3    the various emails that we looked at today, could

4    those be the types of topics that you talk about in

5    Google Chat as well?

6              MS. CURRAN-HUBERTY:  Object to form.

7              THE WITNESS:  I guess I'll refer to my

8    previous answer that there is not really a

9    limitation of the topics that -- that might be

10   discussed.

11             I would like to highlight that we're using

12   the term "chat" and -- and "Google Chat" generally.

13   They're -- that product has evolved significantly

14   over time, and some of my previous responses refer

15   to how chat works today and would not be the same as

16   how chat worked in the time that I worked on

17   Android.

18   BY MS. KOZIKOWSKI:

19        Q     Was Google Chat the -- do you recall if

20   that was the operative chat product at the time that

21   you were working on Android?

22        A     I believe at the -- the time that chat was

23   fully integrated into Gmail, and I probably would

24   have referred to it as Gmail Chat.

25        Q     So you kind of -- you testified that, kind

HIGHLY CONFIDENTIAL

Page 205

1    of, anything goes in Google Chat nowadays.  People

2    talk about, kind of, anything and everything in

3    Google Chat, or at least you do; is that fair?

4              MS. CURRAN-HUBERTY:  Object to form.

5              THE WITNESS:  Yes, there's not generally a

6    limitation to the -- the topics.

7    BY MS. KOZIKOWSKI:

8        Q    In your experience, do your colleagues

9    engage in similar communication on Goog- -- on

10   Google Chat that you do?

11             MS. CURRAN-HUBERTY:  Object to form.

12             THE WITNESS:  They do.

13   BY MS. KOZIKOWSKI:

14       Q    You also testified that you've received

15   several litigation hold notices in connection with

16   lawsuits during your time at Google.

17             After receiving those litigation hold

18   notices, do you remember having to do anything to

19   adjust the preservation settings for chats that you

20   send and receive?

21             MS. CURRAN-HUBERTY:  Object to form.

22             THE WITNESS:  I do not.

23   BY MS. KOZIKOWSKI:

24       Q    Do you remember ever copying and pasting

25   chats with your colleagues into Word documents or

HIGHLY CONFIDENTIAL

Page 220

1   EMILY C. CURRAN-HUBERTY

2   emily.curran-huberty@mto.com

3                          August 8, 2022

4   RE: In Re Google Play Store Antitrust Litigation

5       7/29/2022, Justin Mattson (#5287423)

6       The above-referenced transcript is available for

7   review.

8       Within the applicable timeframe, the witness should

9   read the testimony to verify its accuracy. If there are

10  any changes, the witness should note those with the

11  reason, on the attached Errata Sheet.

12      The witness should sign the Acknowledgment of

13  Deponent and Errata and return to the deposing attorney.

14  Copies should be sent to all counsel, and to Veritext at

15  erratas-cs@veritext.com.

16

17      Return completed errata within 30 days from

18  receipt of testimony.

19      If the witness fails to do so within the time

20  allotted, the transcript may be used as if signed.

21

22                    Yours,

23                    Veritext Legal Solutions

24

25

# EXHIBIT B4

# EXHIBIT 7

FILED UNDER SEAL

Message

| | |
|---|---|
| **From:** | Mike Herring█████████████ |
| **Sent:** | 8/28/2020 3:45:01 AM |
| **To:** | Christian Cramer██████████████ |

- **Mike Herring**, 2020 08 27 20:45:01

Have you been hearing any concerns from our business partners on the accounting for or structure of the Hug deals or other xPA arrangements?

- **Christian Cramer**, 2020 08 27 21:32:22

not recently

- **Christian Cramer**, 2020 08 27 21:33:21

I expect that it is a topic lingering in Sameer&#39;s mind for ABK - but he has not talked to me about it

- **Mike Herring**, 2020 08 27 21:34:17

Yes that was frustrating, but with the process and the late change, not the deal itself, or was it both?

- **Christian Cramer**, 2020 08 27 21:35:10

I would say both - the deal is incredibly expensive for Play

- **Mike Herring**, 2020 08 27 21:35:59

interesting, ok thanks

- **Christian Cramer**, 2020 08 27 21:40:33

ABK cost $42M in Q2 alone - ████████████████████ - see earnings prep

- **Christian Cramer**, 2020 08 27 21:40:37

<a href "https://www.google.com/url?q  https://docs.google.com/document/d/17MaVQV2HRhd  cL7nlEccTDwid TSamX5-3gIpwjIjGBo/edit?ts%3D5f072c2a&amp;sa  D&amp;source  hangouts&amp;ust  1598676037839000&amp;us g  AFQjCNFPjzYvIS54jEOELLbJQouhikYwmg">https://docs.google.com/document/d/17MaVQV2HRhd  cL7 nlEccTDwidTSamX5-3gIpwjIjGBo/edit?ts  5f072c2a</a>

- **Christian Cramer**, 2020 08 27 21:41:11

I can get you all the detail for 2020 if helpful

- **Mike Herring**, 2020 08 27 21:42:23

it is a revenue deferral from the cloud deal or transfer to YT?

- **Mike Herring**, 2020 08 27 21:42:56

sorry to bug at night, not urgent, just preparing for a xPA discussion

- **Mike Herring**, 2020 08 27 21:43:06

i am home alone so catching up

- **Christian Cramer**, 2020 08 27 21:43:07

a lot comes from the fact that the accounting pushes a lot of the YT cost to Play

- **Christian Cramer**, 2020 08 27 21:43:22

let me see if I have something good ready

- **Christian Cramer**, 2020 08 27 21:47:18

CONFIDENTIAL

GOOG-PLAY-005576717

in this chart █████████████████████████████

- **Christian Cramer**, 2020-08-27 21:47:18

<a
href="https://www.google.com/url?q=https://docs.google.com/presentation/d/1zVbM_OAfoU_GUUCvKratMQ
9_jX32sEsuQ1MnUbj7fPA/edit?ts%3D5eea4556%23slide%3Did.g86eb45f099_25_8&amp;sa=D&amp;source
=hangouts&amp;ust=1598676439029000&amp;usg=AFQjCNFEdoi6TFLcdhQelCXNC-
u2U2ck7g">https://docs.google.com/presentation/d/1zVbM_OAfoU_GUUCvKratMQ9_jX32sEsuQ1MnUbj7f
PA/edit?ts=5eea4556#slide=id.g86eb45f099_25_8</a>

- **Christian Cramer**, 2020-08-27 21:48:44

...but this is the number from BC █████████████████████████████

- **Christian Cramer**, 2020-08-27 21:49:03

...but do not have the exact number in front of me at the moment

- **Christian Cramer**, 2020-08-27 21:49:52

when is your meeting - I can ask Cyrous to send you something if not first thing in the morning

- **Mike Herring**, 2020-08-27 21:51:12

like i said not urgent but i would like to have the current numbers in front of me, next week some time. this is
very helpful in the interim

- **Christian Cramer**, 2020-08-27 21:53:33

ok - will get back

- **Mike Herring**, 2020-08-27 21:58:17

Thanks Christian, have a good night

- **Christian Cramer**, 2020-08-27 21:59:49

you too - we are still working on the deck for Hiroshi - Devin and Sunny are both on the East coast and will
therefore start early - we should have it done by 9:00 - sorry for being so late with it....overall we have a very
meaty agenda for 30 min

- **Mike Herring**, 2020-08-27 22:36:04

yes, thank you, I&#39;ll be up early too

 GOOG-PLAY-005576718

# EXHIBIT B5

# EXHIBIT 8

## FILED UNDER SEAL

Message

From: █████████████████████████
Sent: 1/21/2021 6:33:31 PM
To: ████████████████████████████████████████
Subject: AAAATEh6aUk-qJk1ffGlrUs


• ████████████ 2021-01-21T12:33:31.515-06:00

https://www.cnbc.com/2021/01/21/samsung-galaxy-s21-review-high-end-version-is-gorgeous.html

o     https://www.cnbc.com/2021/01/21/samsung-galaxy-s21-review-high-end-version-is-gorgeous.html

• ████████████ 2021-01-21T12:33:46.904-06:00

hope this is not the title for our Pixel phone later

• ████████████ 2021-01-21T12:37:46.042-06:00

the s21 ultra manages to squeeze in 10x folded optics, i wonder how their thickness compares to our visor?

• ████████████ 2021-01-21T12:46:26.532-06:00

The s20 ultra was pretty thick but from what we saw on GVC, our visor looks fairly big too

• ████████████ 2021-01-21T13:37:04.868-06:00

"Samsung's new phones won't convert any iPhone fans" because "there's nothing in either of these phones that will convert iPhone users".

• ████████████ 2021-01-21T13:37:19.916-06:00

This line of reasoning seems a little dubious

• ████████████ 2021-01-21T13:47:50.861-06:00

Right now I would settle for holding on to all the current android users.

• ████████████ 2021-01-21T13:48:17.782-06:00

but I agree that the statement is dubious Andrei. I think the larger point perhaps is the bar to switch people is really high

• ████████████ 2021-01-21T15:17:09.853-06:00

This quote from the verge is more on point(s):

• ████████████ 2021-01-21T15:17:15.086-06:00

"The biggest reality check is the software, which suffers from Samsung's heavy-handed attempts to build its own ecosystem and further monetize an already expensive phone. I doubt that the Samsung Galaxy S21 Ultra will convince many iPhone users to switch — the ecosystem lock-in on iOS is too strong for that and getting the most out of Samsung's version of Android is daunting."

• ████████████ 2021-01-21T15:18:11.707-06:00

and

• ████████████ 2021-01-21T15:18:14.851-06:00

"Then there's texting. In the US, Samsung ships these phones with Samsung Messages by default, whereas everybody else in the world gets Android Messages and therefore RCS. Some US carriers support RCS on Samsung Messages, but badly. AT&T's version of RCS doesn't interoperate with other carriers yet, for example. I know Samsung isn't to blame for RCS's problems, but as the biggest Android seller in the US, you'd like to think the company would try to fix this.

But if you know your way around Android, you can make the S21 Ultra a really amazing and powerful phone. Dodge or disable all those ads and install all the non-Samsung versions of software, and it's a powerful and sometimes elegant experience."

- ███████████████ 2021-01-21T15:18:18.782-06:00

it goes on an on...

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT B6

# EXHIBIT 9

## FILED UNDER SEAL

Message

**From:**   Sait Izmit
**Sent:**   9/9/2020 9:02:46 PM
**To:**   Paul Bankhead

- **Sait Izmit**, 2020-09-09 14:02:46

ok she didn&#39;t really let me ask a question but at least for you ... it might be good to benchmark with platforms like Stripe the billing functionality they offer. Using Stripe products actually you can build a play store billing service ... their platform is quite flexible and they offer interesting features for developers like early payments based on extra percentage cuts etc

- **Paul Bankhead**, 2020-09-09 14:04:12

They are kicking our butt

- **Paul Bankhead**, 2020-09-09 14:04:34

But I also think you need a slightly more sophisticated developer team to cobble together a billing platform even with stripe

- **Paul Bankhead**, 2020-09-09 14:04:48

Stripe just hired the 2 pms that built the play billing system

- **Paul Bankhead**, 2020-09-09 14:05:09

So we beat them on fops and countries

- **Paul Bankhead**, 2020-09-09 14:05:17

They beat us on primitives

- **Paul Bankhead**, 2020-09-09 14:05:43

Our main value though is not in The primitives it is that we have a whole bunch of users with fops ready to spend which they don&#39;t offer because they are infra

- **Sait Izmit**, 2020-09-09 14:08:23

I did the feasibility of a billing service based on stripe on my previous life and it looked quite ok to be honest :-) they are indeed infra, just mentioning as an inspiration channel, since they offer it as a product they worked a lot on creating flexibility and additional features which might be inspiration for us as well.

- **Paul Bankhead**, 2020-09-09 14:08:59

Yeah

- **Paul Bankhead**, 2020-09-09 14:09:14

In general it is embarrassing that Google did not create stripe ourselves

- **Paul Bankhead**, 2020-09-09 14:09:26

We were too busy fighting about future requests on the Google payments platform for internal customers to worry about external customers

# EXHIBIT B7

# EXHIBIT 10

## FILED UNDER SEAL

Message
_____

**From:**     Ashish Pimplapure [ ████████████████ ]
**Sent:**     8/22/2016 5:21:35 AM
**To:**       Seungho Song [ ██████████████ ]

- **Ashish Pimplapure,** 2016-08-21 22:21:35

Hello

- **Seungho Song,** 2016-08-21 22:24:56

Hi Ashish.

- **Seungho Song,** 2016-08-21 22:25:03

How was weekend?

- **Ashish Pimplapure,** 2016-08-21 22:27:46

It is still going on, but good so far :)

- **Seungho Song,** 2016-08-21 22:28:14

Yes!! Still Sunday :)

- **Seungho Song,** 2016-08-21 22:28:29

Daniel left today... so sad...

- **Ashish Pimplapure,** 2016-08-21 22:28:53

That was a loss

- **Seungho Song,** 2016-08-21 22:29:22

He always want to work near to oroduct side.

- **Seungho Song,** 2016-08-21 22:29:26

Product

- **Seungho Song,** 2016-08-21 22:29:35

Good for him..

- **Ashish Pimplapure,** 2016-08-21 22:29:38

Do you get to backfill him? Or will it be just you and Seungmok?

- **Seungho Song,** 2016-08-21 22:29:57

Already new one joined.

- **Seungho Song,** 2016-08-21 22:30:07

I will introduce her next time.

- **Seungho Song,** 2016-08-21 22:30:20

Her name is Fiona.

- **Ashish Pimplapure,** 2016-08-21 22:31:07

Is it the person who is working with Jennie?

- **Seungho Song,** 2016-08-21 22:33:35

Yes, she is.

- **Seungho Song,** 2016-08-21 22:33:43

CONFIDENTIAL

Oh you alrwady knew her.

- **Seungho Song**, `2016-08-21 22:33:50`

Already

- **Ashish Pimplapure**, `2016-08-21 22:34:43`

she was working on one of the amendments

- **Seungho Song**, `2016-08-21 22:35:11`

She will work with me.

- **Ashish Pimplapure**, `2016-08-21 22:35:20`

ok

- **Seungho Song**, `2016-08-21 22:35:38`

While she will cover agreement side as well.

- **Seungho Song**, `2016-08-21 22:35:54`

Also hiting one more person.

- **Seungho Song**, `2016-08-21 22:36:24`

Hiring. Sorry for typo...:)

- **Ashish Pimplapure**, `2016-08-21 22:36:36`

no worries

- **Ashish Pimplapure**, `2016-08-21 22:36:41`

it is a tough job :)

- **Seungho Song**, `2016-08-21 22:37:17`

I was about to send agenda for next week.

- **Seungho Song**, `2016-08-21 22:37:36`

Have we fix the time to meet?

- **Ashish Pimplapure**, `2016-08-21 22:38:07`

We need two meetings, right?

- **Seungho Song**, `2016-08-21 22:38:17`

Yes.

- **Ashish Pimplapure**, `2016-08-21 22:39:52`

Wed: can we do 1 - 3:30 PM?

- **Ashish Pimplapure**, `2016-08-21 22:40:00`

Thu: 5 - 6:30 followed by dinner?

- **Seungho Song**, `2016-08-21 22:40:18`

Sounds perfect.

- **Seungho Song**, `2016-08-21 22:40:44`

Can we start little late on Wed?

- **Seungho Song**, `2016-08-21 22:40:54`

We will arrive there on Wed.

- **Ashish Pimplapure**, `2016-08-21 22:40:57`

CONFIDENTIAL

GOOG-PLAY-007213452

I have a hard stop at 4

- **Seungho Song,** `2016-08-21 22:41:37`

2-4?

- **Ashish Pimplapure,** `2016-08-21 22:42:49`

that works

- **Seungho Song,** `2016-08-21 22:43:37`

Good.

- **Ashish Pimplapure,** `2016-08-21 22:44:05`

btw, did you get any info on the S7 unlocked security updates?

- **Seungho Song,** `2016-08-21 22:45:04`

One team answers that there is no way and now I am asking another team.

- **Seungho Song,** `2016-08-21 22:45:28`

Sorry I meant password lost.

- **Ashish Pimplapure,** `2016-08-21 22:45:55`

ok

- **Seungho Song,** `2016-08-21 22:46:14`

Re Security update on unlocked phone, there is long story...

- **Ashish Pimplapure,** `2016-08-21 22:48:11`

what happened

- **Seungho Song,** `2016-08-21 22:49:30`

We are getting carrier&#39;s approval for S7 unlocked security MR.

- **Ashish Pimplapure,** `2016-08-21 22:49:38`

ok

- **Seungho Song,** `2016-08-21 22:50:21`

Since unlocked phone needs to get all the approvals from all carriers, the schedule ends up with the worst case.

- **Ashish Pimplapure,** `2016-08-21 22:50:33`

ok

- **Seungho Song,** `2016-08-21 22:50:49`

That s the reason why currently we provide Quaterly MR for unlicked.

- **Seungho Song,** `2016-08-21 22:51:29`

While investigating this I found that there is inefficiencies so now I am driving changes.

- **Seungho Song,** `2016-08-21 22:52:09`

We really don&#39;t have to get carriers approval on it and can just deploy by samsung&#39;s own.

- **Seungho Song,** `2016-08-21 22:53:01`

I will share the revised plan with you soon.

- **Seungho Song,** `2016-08-21 22:53:23`

Thanks for your heads uo and it was a trigger point.

- **Ashish Pimplapure,** `2016-08-21 22:54:29`

np. thanks

- **Seungho Song,** `2016-08-21 22:54:59`

Will share more details in the meeting.

- **Ashish Pimplapure,** `2016-08-21 22:56:08`

you mean our meeting on Wed?

- **Seungho Song,** `2016-08-21 22:58:02`

Yes.

- **Seungho Song,** `2016-08-21 22:58:22`

One more heads up.

- **Seungho Song,** `2016-08-21 22:59:32`

Peter can join the meeting on Thu thru video conference. Can we schedule the meeting to morning time?

- **Seungho Song,** `2016-08-21 22:59:59`

I and Jay will be there and Peter will join thru GVC.

- **Ashish Pimplapure,** `2016-08-21 23:00:54`

ok. Is Peter in MTV? If so, should we find another time?

- **Seungho Song,** `2016-08-21 23:01:42`

No unfortunately Peter cannot come to MTV. He will join from Korea.

- **Seungho Song,** `2016-08-21 23:02:09`

That s why I want to set up meeting during morning time.

- **Ashish Pimplapure,** `2016-08-21 23:03:02`

ok, but morning in California will be night in Korea?

- **Ashish Pimplapure,** `2016-08-21 23:06:31`

For example, 10 AM PST is 2 AM KST.

- **Seungho Song,** `2016-08-21 23:23:27`

Sorry late afternoon (PST) and early morning(KST)

- **Ashish Pimplapure,** `2016-08-21 23:23:52`

Okay

- **Seungho Song,** `2016-08-21 23:23:58`

So after 3:30(PST) will work

- **Seungho Song,** `2016-08-21 23:24:31`

Original suggestion works perfect :)

- **Ashish Pimplapure,** `2016-08-21 23:25:06`

ok

- **Ashish Pimplapure,** `2016-08-21 23:25:15`

so I guess Peter won&#39;t join us for dinner then :)

- **Seungho Song,** `2016-08-21 23:25:50`

He cannot. Or via GVC :)

- **Ashish Pimplapure,** `2016-08-21 23:26:05`

CONFIDENTIAL

GOOG-PLAY-007213454

:)

- **Ashish Pimplapure**, `2016-08-21 23:26:28`

btw, what is the agenda? Is it mostly the open issues on MADA?

- **Seungho Song**, `2016-08-21 23:26:59`

Yes. Open issue on MADA which we need to close asap.

- **Ashish Pimplapure**, `2016-08-21 23:27:25`

ok.

- **Seungho Song**, `2016-08-21 23:27:27`

Just want to be aligned on open issues.

- **Ashish Pimplapure**, `2016-08-21 23:27:49`

I have been working with our UX team and looking at various homescreen experiences

- **Ashish Pimplapure**, `2016-08-21 23:28:38`

it looks like users strongly prefer high utility apps on homescreen for ease of access

- **Ashish Pimplapure**, `2016-08-21 23:29:35`

In fact, if you look at the competition, most of their default home screen has apps

- **Ashish Pimplapure**, `2016-08-21 23:31:07`

for example:

- **Ashish Pimplapure**, `2016-08-21 23:31:09`

<a href="https://www.google.com/url?q=https%3A%2F%2Fsupport.apple.com%2Fen-us%2FHT200290&amp;sa=D&amp;sntz=1&amp;usg=AFQjCNGh8GgGSMr1NxxYo2F3rC2yg9wTSw">https://support.apple.com/en-us/HT200290</a>

- **Seungho Song**, `2016-08-21 23:31:17`

True. But users want to layout it as they want.

- **Ashish Pimplapure**, `2016-08-21 23:31:18`

the leftmost is what default usually looks like

- **Ashish Pimplapure**, `2016-08-21 23:31:37`

they can always change it no?

- **Ashish Pimplapure**, `2016-08-21 23:32:22`

it seems that the cost of discovery (of high utility apps) outweighs the cost of rearrangement?

- **Ashish Pimplapure**, `2016-08-21 23:32:54`

that is what I was told, but if there is any research / study that shows otherwise, I am happy to take it back to them

- **Seungho Song**, `2016-08-21 23:36:42`

Yes they can change it and indeed they change it as they want. To help their rearrangement, we may provide clean homescreen so that users freely start to rearrange.

- **Ashish Pimplapure**, `2016-08-21 23:37:13`

but they still need to find the apps?

- **Ashish Pimplapure**, `2016-08-21 23:37:38`

it will be a bit odd if they have to start searching for their favorite apps after oobe

CONFIDENTIAL

- **Seungho Song**, 2016-08-21 23:38:24

Since users are educated thru many smartphone generations, they knew they can find it in app tray.

- **Seungho Song**, 2016-08-21 23:39:25

What they don&#39;t like is that application are placed where they dont like.

- **Ashish Pimplapure**, 2016-08-21 23:39:35

ok. it just seems like a sub-optimal experience. and I am wondering if in the absence of any conclusive study, we are making it inconvenient

- **Ashish Pimplapure**, 2016-08-21 23:39:48

especially given that another premium phone has it all on top screen

- **Seungho Song**, 2016-08-21 23:40:54

It is really hard to convince with data.

- **Ashish Pimplapure**, 2016-08-21 23:41:07

btw, qq for you: will it be just you and Jay for dinner, or is anyone else joining?

- **Seungho Song**, 2016-08-21 23:41:23

No just Jay and me

- **Ashish Pimplapure**, 2016-08-21 23:41:27

ok, thanks

- **Ashish Pimplapure**, 2016-08-21 23:43:33

so that is my concern

- **Ashish Pimplapure**, 2016-08-21 23:43:40

without data, we are making a big decision

- **Seungho Song**, 2016-08-21 23:47:35

I totally agree and understand.

- **Ashish Pimplapure**, 2016-08-21 23:47:42

this is arguably a challenging conversation internally, as you can imagine.

- **Ashish Pimplapure**, 2016-08-21 23:48:38

the feedback that I got was that while clutter should be avoided, by creating a blank screen we may be over-correcting

- **Ashish Pimplapure**, 2016-08-21 23:55:19

btw, thanks for the email. Could you please also confirm via email that Peter will be on GVC?

- **Seungho Song**, 2016-08-21 23:57:56

Yes. I will send email that Peter will join via GVC.

- **Ashish Pimplapure**, 2016-08-21 23:58:02

thanks

- **Ashish Pimplapure**, 2016-08-21 23:58:16

if you have a few more minutes, I have a couple more questions

- **Seungho Song**, 2016-08-21 23:58:38

I totally understand your concerns.

CONFIDENTIAL

- **Seungho Song**, `2016-08-21 23:58:47`

Yes I am free.

- **Ashish Pimplapure**, `2016-08-21 23:58:51`

thanks

- **Ashish Pimplapure**, `2016-08-21 23:59:12`

1. PAI. would you happen to know where the teams are with PAI? Can we confirm it for S8?

- **Seungho Song**, `2016-08-21 23:59:54`

Yes. It was confirmed.

- **Ashish Pimplapure**, `2016-08-22 00:00:18`

ok. is it for all apps (google / samsung / carrier)?

- **Seungho Song**, `2016-08-22 00:01:03`

For all apps if there is no objection from carriers.

- **Ashish Pimplapure**, `2016-08-22 00:01:34`

and in case carriers object, what is the fallback?

- **Seungho Song**, `2016-08-22 00:03:43`

Carrier will use their own solution for their apps. Even in the situation, we will use PAI for google app and samsung app.

- **Ashish Pimplapure**, `2016-08-22 00:04:45`

thanks. has this been communicated to the teams?

- **Ashish Pimplapure**, `2016-08-22 00:36:05`

Hi Seung

- **Ashish Pimplapure**, `2016-08-22 00:36:10`

are you available?

- **Seungho Song**, `2016-08-22 00:40:07`

Hi sorry.

- **Seungho Song**, `2016-08-22 00:40:14`

Available.

- **Ashish Pimplapure**, `2016-08-22 00:40:18`

np

- **Ashish Pimplapure**, `2016-08-22 00:40:36`

just responded to your email. it includes a proposal for gms apps placement

- **Seungho Song**, `2016-08-22 00:40:42`

Yes PAI position is all aligned.

- **Ashish Pimplapure**, `2016-08-22 00:40:57`

one more question

- **Seungho Song**, `2016-08-22 00:41:02`

Thanks sir!!

- **Ashish Pimplapure**, `2016-08-22 00:41:21`

CONFIDENTIAL

GOOG-PLAY-007213457

are you planning to offer a touch-less experience for app launching / switching?

- **Ashish Pimplapure**, `2016-08-22 00:45:18`

that may seem like an option when default homescreen is clean, all apps are in basement, and user invokes the apps via voice commands.

- **Seungho Song**, `2016-08-22 00:46:49`

That feature is already included in S voice and google voice.

- **Seungho Song**, `2016-08-22 00:48:54`

But still major scenario is that user jus pull out the application that they want from the basement.

- **Ashish Pimplapure**, `2016-08-22 00:52:04`

Ok

- **Seungho Song**, `2016-08-22 00:58:00`

New apps are Allo and Duo :) Is this what gg wants to discuss. Right?

CONFIDENTIAL

GOOG-PLAY-007213458

# EXHIBIT B8

# EXHIBIT 12

FILED UNDER SEAL

Message

| | |
|---|---|
| **From:** | Eugene Liderman |
| **Sent:** | 9/29/2020 3:01:42 PM |
| **To:** | Dave Kleidermacher |

- **Eugene Liderman**, 2020-09-29 08:01:42

<a href="https://www.google.com/url?q=https://techcrunch.com/2020/09/28/google-play-to-better-enforce-in-app-purchase-policies-ease-use-of-third-party-android-app-stores/&amp;sa=D&amp;source=hangouts&amp;ust=1601478102813000&amp;usg=AFQjCNEiq3qDMZWghi c_p2iGGAxZhkSB5Q">https://techcrunch.com/2020/09/28/google-play-to-better-enforce-in-app-purchase-policies-ease-use-of-third-party-android-app-stores/</a>

- **Eugene Liderman**, 2020-09-29 08:01:46

Did you see this yesterday

- **Dave Kleidermacher**, 2020-09-29 08:02:11

yeah this was a huge launch many months in the making

- **Eugene Liderman**, 2020-09-29 08:02:35

The choice of stores thing came out of left field though?

- **Dave Kleidermacher**, 2020-09-29 08:03:45

it&#39;s all PR crap. Sameer wanted to indicate we&#39;re being flexible. In practice, what&#39;s been considered ▮▮▮▮▮▮

- **Eugene Liderman**, 2020-09-29 08:04:23

Should we be thinking about this with regards to TR and keep side loaded on the charts?

- **Dave Kleidermacher**, 2020-09-29 08:04:52

not sure I understand your link there

- **Eugene Liderman**, 2020-09-29 08:08:07

▮▮▮▮▮▮▮▮▮▮ should we continue including off-play in our TR to show the risk

- **Eugene Liderman**, 2020-09-29 08:08:34

even though off-play risk has continued to go down in the TR, it&#39;s still like 5 or 6 times higher than on-play

- **Dave Kleidermacher**, 2020-09-29 08:09:35

If we had good quality data, we&#39;d probably want to include it, but we don&#39;t. It&#39;s worse to show misleading data

- **Eugene Liderman**, 2020-09-29 08:15:43

Speaking of quality data for the TR. Now that I showed you that for Android Enterprise, devices with an MTD represent ▮▮▮ of all AE devices are you cool with us publishing the Device Hygiene chart where it&#39;s Consumer Play Only vs. Enterprise Play Only

- **Dave Kleidermacher**, 2020-09-29 08:17:38

I still don&#39;t like it. Maybe I can be convinced. Other than making AE team happy, what purpose does it have? And how will we make it very clear what it means in terms of P0 vs. DO? I think this shows how important curation/allowlisting is for safety, that&#39;s my main takeaway, but not sure this is something that belongs in a transparency report

- **Eugene Liderman**, 2020-09-29 08:21:11

I think the benefits are:<br>1) As you mention its a great talking point for AE and allows us to consider having more Enterprise specific stats in the future - The AE team uses our TR more than anyone. I also think this helps with our analyst work with Gartner, Forrester, etc... because they all publish about MTDs so for us to prove that malware rates are amazingly low on AE devices could help sway their thinking about recommendations on Android<br>2) It allows us to still show a comparison in chart one so it makes deprecating the off-play stat a little easier<br><br>With regards to making it clear about PO/DO, we would add an FAQ item and link to it from that chart so viewers understand what this entails

- **Dave Kleidermacher**, 2020-09-29 08:25:38

the goal of transparency is to provide useful information to the public and raise confidence in what we&#39;re doing. What is the message we&#39;re trying to send here? Is it simply that enterprise devices are safer? Again, how does that not play right into the hands of the MTDs? Are we going to say that only .5% of devices have MTD installed? That would be pretty cool actually but I&#39;m not sure we can say that...

- **Eugene Liderman**, 2020-09-29 08:30:06

I dont think we would put that in the TR but the AE team does want to do a blog post around GPP capabilities as a refresher. We could certainly add the MTD stat there - <a href="https://www.google.com/url?q=https://docs.google.com/document/d/18LqiSTJpUa-470r0PsgpA7-Mh8jsH3ZAfm-5arNiduQ/edit&amp;sa=D&amp;source=hangouts&amp;ust=1601479806649000&amp;usg=AFQjCNFlpWfOs yUcGcE8vmuJBA4rPZtlpQ">https://docs.google.com/document/d/18LqiSTJpUa-470r0PsgpA7-Mh8jsH3ZAfm-5arNiduQ/edit</a>

- **Dave Kleidermacher**, 2020-09-29 08:30:52

happy to talk more about the TR idea but it&#39;s not a slam dunk

- **Eugene Liderman**, 2020-09-29 08:31:06

ok let me book some time

- **Eugene Liderman**, 2020-09-29 08:31:30

Any feedback on the ioXt App Profile trix I shared with you?

- **Dave Kleidermacher**, 2020-09-29 08:31:40

still hadn&#39;t had time to review

- **Eugene Liderman**, 2020-09-29 08:33:55

I basically did a fine grained mapping of ioXt Pledge to VPN pledge to OWAS MASVS

- **Eugene Liderman**, 2020-09-29 08:34:20

A message was edited in Google Chat; view the updated message on (<a href="https://chat.google.com/dm/ipSjpAAAAAE">https://chat.google.com/dm/ipSjpAAAAAE</a>).

- **Dave Kleidermacher**, 2020-09-29 08:39:08

can you ping me the enterprise vs. consumer graph again? I want to use the stat today in a talk - is it 10x safer on an enterprise device?

- **Eugene Liderman**, 2020-09-29 08:39:35

<a href="https://www.google.com/url?q=https://dashboards.corp.google.com/google::_b5e0e744_d47b_491a_8c8d _c8365c1a4021&amp;sa=D&amp;source=hangouts&amp;ust=1601480375690000&amp;usg=AFQjCNEF35_ Xql_4Yqm-hNT20Vkuy_dpuw">https://dashboards.corp.google.com/google::_b5e0e744_d47b_491a_8c8d_c8365c1a4021 </a>

- **Eugene Liderman**, 2020-09-29 08:39:41

do you have access to this?

- **Eugene Liderman**, 2020-09-29 08:39:47

if not I can email you a screenshot

- **Dave Kleidermacher**, 2020-09-29 08:40:39

I can access, thanks

- **Eugene Liderman**, 2020-09-29 08:40:45

its all the way at the bottom

- **Eugene Liderman**, 2020-09-29 08:40:50

&quot;Experimental&quot;

- **Dave Kleidermacher**, 2020-09-29 08:41:16

looks roughly 10x

- **Eugene Liderman**, 2020-09-29 08:44:58

Consumer: 0.1126% Enterprise: 0.0039%

- **Eugene Liderman**, 2020-09-29 08:45:14

thats looking at the last day, and using the 12month rolling rate

- **Eugene Liderman**, 2020-09-29 08:46:25

Comes out to 27X right?

- **Dave Kleidermacher**, 2020-09-29 08:47:12

I was eyeballing, saw some .01 and .11s a lot. But that number is better, thanks

- **Eugene Liderman**, 2020-09-29 08:49:01

On the right hand side if you gray out the non-SMA values it will be easier to see - <a href="https://www.google.com/url?q=https://screenshot.googleplex.com/7b6LXFriqocxh6C.png&amp;sa=D&amp;source=hangouts&amp;ust=1601480941663000&amp;usg=AFQjCNGzCXfW1ZLDPMcdAV8GyfiyRTHUQg">https://screenshot.googleplex.com/7b6LXFriqocxh6C.png</a>

- **Dave Kleidermacher**, 2020-09-29 08:58:39

what is SMA?

- **Eugene Liderman**, 2020-09-29 09:18:54

Simple Moving Average = 12 month rolling rate

- **Eugene Liderman**, 2020-09-29 09:19:29

We use a rolling rate to smooth out the numbers and mitigate against data volitility

- **Eugene Liderman**, 2020-09-29 09:46:25

Let me know if you have any other questions

- **Eugene Liderman**, 2020-09-29 09:46:33

Do you want the MTD data as well?

- **Dave Kleidermacher**, 2020-09-29 10:05:49

sure, maybe bring that to our meeting...

- **Dave Kleidermacher**, 2020-09-29 10:06:03

GOOG-PLAY-005601969

(I don&#39;t need it now)

# EXHIBIT B9

# EXHIBIT 13

FILED UNDER SEAL

Message

| | |
|---|---|
| **From**: | Eric Chu |
| **Sent**: | 6/8/2020 3:22:14 PM |
| **To**: | Prachi Gupta ; Will Aldrich Eunice Kim |
| **Subject**: | YTC Eng/PM Leadership |

- **Eric Chu**, 2020-06-08 08:22:14

Good morning. Hope you all had a great weekend. I found something that might help with all that&#39;s going on around the world. It is completely personal and I&#39;m sharing as a friend with best wishes to all of you.

- **Eric Chu**, 2020-06-08 08:22:19

<a href="https://www.google.com/url?q=https://vm.tiktok.com/oLdKgn/&amp;sa=D&amp;source=hangouts&amp ;ust=1591716140025000&amp;usg=AFQjCNFLWep-XG_G4oWvKBFeslpRzatYoQ">https://vm.tiktok.com/oLdKgn/</a>

- **Prachi Gupta**, 2020-06-08 08:32:42

Good morning ☺.. thanks for sharing...video does feel familiar these days ☺

- **Eunice Kim**, 2020-06-08 08:38:40

Always good to remind oneself to not get sucked into the void by news

- **Prachi Gupta**, 2020-06-08 08:46:52

Hmm.. wondering if I did not see the right one...your link took me to a video of someone doing deft skateboarding...

- **Eric Chu**, 2020-06-08 08:51:57

Hmmm, definitely not skateboard.

- **Eric Chu**, 2020-06-08 08:52:07

I clicked the link in this chat message again.

- **Eric Chu**, 2020-06-08 08:52:21

It should go to a TikTok page with a creator &quot;Beej&quot;

- **Eunice Kim**, 2020-06-08 09:00:25

Hah... i don&#39;t think TikTok links always resolve properly. One of the times I clicked Eric&#39;s link, it took me to a video of a guy pretending to style Trump&#39;s hair with a comb and a hairdryer as it was blowing in the wind on the TV screen

- **Eric Chu**, 2020-06-08 09:02:15

Hmmmm

- **Prachi Gupta**, 2020-06-08 09:08:39

☐ some morning fun today! I did get to the creator page now

- **Prachi Gupta**, 2020-06-08 10:10:06

Heard some of the videos..it&#39;s is very positive and powerful.. thanks for sharing Eric!

- **Will Aldrich**, 2020-06-08 10:28:58

do you mean the &quot;windows&quot; video?

- **Will Aldrich**, 2020-06-08 10:29:38

<a
href="https://www.google.com/url?q=https://www.tiktok.com/@bijanpousti/video/6836024945517153541&amp;sa=D&amp;source=hangouts&amp;ust=1591723778510000&amp;usg=AFQjCNGE3cdNBT1jVJtMGiAWwTlbutE2Eg">https://www.tiktok.com/@bijanpousti/video/6836024945517153541</a>

- **Eric Chu**, 2020-06-08 10:30:41

This is a good one also.

- **Eric Chu**, 2020-06-08 10:30:53

I love all his videos.  So insightful.

- **Prachi Gupta**, 2020-06-08 10:38:59

Love it because also of it&#39;s brevity!

- **Prachi Gupta**, 2020-06-08 10:39:51

I have been watching some Indian ones but they are at least 30 mins and so had to find time..also they are in Hindi :-)

- **Prachi Gupta**, 2020-06-08 10:40:45

<a href="https://youtu.be/65grVv1tzss">https://youtu.be/65grVv1tzss</a>

- **Eunice Kim**, 2020-06-08 12:15:05

# Redacted - Privilege

- **Eunice Kim**, 2020-06-08 12:15:15

I shared &quot;Screen Shot 2020-06-08 at 12.13.28 PM.png&quot; using the new Google Chat <a
href="https://chat.google.com/room/AAAAXeBExcc">https://chat.google.com/room/AAAAXeBExcc</a>.

- **Eunice Kim**, 2020-06-08 12:16:30

In the discussion, question about comparability to the House Ads policy.

- **Eunice Kim**, 2020-06-08 12:24:38

- **Eunice Kim**, 2020-06-08 12:24:49

- **Eunice Kim**, 2020-06-08 12:28:49

Part of the problem with this kind of regulatory argument is that many subs business are not profitable... so why should YT have to prove this?

- **Eunice Kim**, 2020-06-08 12:29:06

i.e. Spotify and Netflix have only been profitable very very recently

- **Eunice Kim**, 2020-06-08 12:30:43

Some questions about where the line would be drawn from a segment reporting perspective.

- **Eric Chu**, 2020-06-08 13:34:23

- **Eric Chu**, 2020-06-08 13:34:40

GOOG-PLAY-007611605

- **Prachi Gupta**, 2020-06-08 13:36:34

Hi Team - another update from my 1:1 with Adam

- **Prachi Gupta**, 2020-06-08 13:37:13

might be easier on GVC..if we all can make it

- **Prachi Gupta**, 2020-06-08 13:37:23

<a href="https://www.google.com/url?q=http://goto.google.com/meet/play-yt&amp;sa=D&amp;source=hangouts&amp;ust=1591735043880000&amp;usg=AFQjCNFw1aQzWOM8_HLBYNwMJqscunz9Pw">go/meet/play-yt</a>?

- **Eric Chu**, 2020-06-08 13:37:37

OK

- **Eric Chu**, 2020-06-08 14:12:27

Called in now

- **Prachi Gupta**, 2020-06-08 14:12:50

perfect timing!

CONFIDENTIAL

# EXHIBIT B10

# EXHIBIT 14

## FILED UNDER SEAL

Message

| From: | Tian Lim █████████████ |
| Sent: | 6/10/2020 9:07:15 PM |
| To: | Purnima Kochikar █████  Alexi Douvas ██████████  Doug Lucas ██████████ |
| | Mike Hochberg ████████████ |

- **Tian Lim**, 2020-06-10 14:07:15

does this reflect the █ convo we just had? lmk if we need a doc or meeting time to align

- **Tian Lim**, 2020-06-10 14:07:59

hey damion, sorry for delay <br><br>we had a meeting with sagar and sameer to dump high level context and align on an initial position for hiroshi to engage with █ br><br>for the short term starting point, the one that seems to set android/play up better long term, is a slight modification to your proposal (███████████████████

███████████████████████████████████████████████████████████ (for reference, i think this is what you meant by option 2, but the asterisk made it unclear if ██████████████████████ <br><br>some questions:<br>2. we&#39;re unsure what this means for ███. i believe the intent is that ██████████████████████. does your mid/long term solution for app ownership factor in the london console team&#39;s work in app integrity - ie. a developer can pick which app stores to publish to? it&#39;s not clear how the 2 projects interact<br>4. ████████████████████████████ the separate signing key solution might seem untenable, and again, unclear how it might interact with app integrity project.<br><br>some decisions<br>5. congratulations. you&#39;ve been nominated to be single POC for the play/android/bd inbound on this topic.  purnima/play BD will be single POC for BD on this topic.  charmaine on android can support

- **Doug Lucas**, 2020-06-10 14:37:37

lgtm

- **Mike Hochberg**, 2020-06-10 14:42:16

lgtm

- **Purnima Kochikar**, 2020-06-10 15:02:36

lgtm. With one caveat. ██████████████████████████████████  □

- **Tian Lim**, 2020-06-10 15:03:44

(− ˛ ဢ)

# EXHIBIT B11

# EXHIBIT 15

FILED UNDER SEAL

Message

| | |
|---|---|
| **From:** | Christina Schaengold [ |
| **Sent:** | 5/26/2021 7:54:53 PM |
| **To:** | Nicholas Plassaras _____  Paul Feng _____ ]; Mrinalini Loew _____ |
| | Tia Arzu [ |

- **Nicholas Plassaras Paul Feng Tia Arzu Mrinalini Loew** have joined the conversation, 2021-05-26 12:54:53

- **Christina Schaengold**, 2021-05-26 12:55:45

WDYT of this table for the link out/CTA examples (slide 4)? <a href="https://www.google.com/url?q=https://docs.google.com/presentation/d/1xdBliOiG8zaxS96DwCb9O7Kae5A0YWHBAAiR_efzPyE/edit?resourcekey%3D0-Z3c5ADb0bb9issUQTY6GqA%23slide%3Did.gd7e584c1b6_1_0&amp;sa=D&amp;source=hangouts&amp;ust=1622145345915000&amp;usg=AFQjCNF5dHaJe_4nq8oARmxvm_4x6sO--A">https://docs.google.com/presentation/d/1xdBliOiG8zaxS96DwCb9O7Kae5A0YWHBAAiR_efzPyE/edit?resourcekey=0-Z3c5ADb0bb9issUQTY6GqA#slide=id.gd7e584c1b6_1_0</a>

- **Christina Schaengold**, 2021-05-26 13:38:01

Headed to pick my kids up from school a little early so I&#39;ll be back by the Sameer meeting time. Feel free to edit or re-arrange any of the slides. I&#39;ll have a few minutes beforehand to respond to comments/edit as well.

- **Nicholas Plassaras**, 2021-05-26 14:41:25

# **Redacted - Privilege**

- **Nicholas Plassaras**, 2021-05-26 14:42:08

**Redacted - Privilege**

- **Nicholas Plassaras**, 2021-05-26 14:42:25

**Redacted - Privilege**

- **Paul Feng**, 2021-05-26 14:46:29

Interesting.

- **Mrinalini Loew**, 2021-05-26 14:57:48

i also find it interesting that they&#39;re calling BNPL &quot;alternative payment providers&quot;

- **Mrinalini Loew**, 2021-05-26 15:36:04

WOO HOO

- **Mrinalini Loew**, 2021-05-26 15:36:14

I&#39;ll try and find for next steps

- **Nicholas Plassaras**, 2021-05-26 15:36:20

Go team!

- **Mrinalini Loew**, 2021-05-26 16:21:05

# Redacted - Privilege

- **Mrinalini Loew,** 2021-05-26 16:21:12

can you PTAL at this email?

- **Mrinalini Loew,** 2021-05-26 16:21:17

<a
href="https://www.google.com/url?q=https://docs.google.com/document/d/1C3njT4rVKhJu3L2_gaGGmfTwW
yzn6y2ryjNEAAhiK3s/edit?resourcekey%3D0-

8v_8MIPf5XyVLEu2lVn5Pg&amp;sa=D&amp;source=hangouts&amp;ust=1622157677667000&amp;usg=AF
QjCNH4DGbq4tpScJf8tjspBTVKSq7CFg">https://docs.google.com/document/d/1C3njT4rVKhJu3L2_gaGGm
fTwWyzn6y2ryjNEAAhiK3s/edit?resourcekey=0-8v_8MIPf5XyVLEu2lVn5Pg</a>

- **Mrinalini Loew,** 2021-05-26 16:21:24

a) make sure YOU agree

- **Mrinalini Loew,** 2021-05-26 16:21:48

b) edit directly to reflect details of

- **Christina Schaengold,** 2021-05-26 16:33:44

Taking a look now. I think we ignore the first screen to simplify things (screen 2 &amp; 3 are really the
important ones) and I also think we need to note that they won&#39;t necessarily be using our interstitial, but
the texted hyperlink model effectively is equivalent. Working on some edits.

- **Christina Schaengold,** 2021-05-26 16:33:51

Also should we include images of the ▮▮▮▮ flow?

- **Paul Feng,** 2021-05-26 16:38:49

Yes, we should include ▮▮▮▮

- **Christina Schaengold,** 2021-05-26 16:44:21

Added the images and a few edits. Working with Rachel to see if we can get an image of the landing page/know
exactly what language they use once directed to the web. I think that will be an important detail to include.

- **Christina Schaengold,** 2021-05-26 17:02:00

<a
href="https://www.google.com/url?q=https://docs.google.com/presentation/d/1xdBliOiG8zaxS96DwCb9O7Kae
5A0YWHBAAiR_efzPyE/edit?resourcekey%3D0-

Z3c5ADb0bb9issUQTY6GqA%23slide%3Did.gdcf298b99e_6_10&amp;sa=D&amp;source=hangouts&amp;us
t=1622160121020000&amp;usg=AFQjCNEbm9o2IaB6q88yfgLjODroV84rZg">https://docs.google.com/prese
ntation/d/1xdBliOiG8zaxS96DwCb9O7Kae5A0YWHBAAiR_efzPyE/edit?resourcekey=0-
Z3c5ADb0bb9issUQTY6GqA#slide=id.gdcf298b99e_6_10</a>

- **Paul Feng,** 2021-05-26 17:53:52

Thanks for pointing that out, Christina.

- **Paul Feng,** 2021-05-26 17:55:59

I&#39;m thinking it through again one more time.

- **Christina Schaengold,** 2021-05-26 18:01:03

- **Paul Feng**, 2021-05-26 18:03:09

I agree. I think the way this would be compliant is if we don&#39;t consider the phone number thing a link at all.

- **Christina Schaengold**, 2021-05-26 18:03:18

I think our options are (1) we say it&#39;s fine because no CTA on landing page (okay for mobile to do that), (2) we say it&#39;s fine because it&#39;s a &quot;sign up&quot; flow not a &quot;purchase flow.&quot; (i.e., treat subscriptions a little different), (3) say this is only okay with mobile, that the text/SMS is a clean break and okay regardless of what&#39;s on the landing page

- **Christina Schaengold**, 2021-05-26 18:03:55

- **Mrinalini Loew,** 2021-05-26 18:08:13



- **Mrinalini Loew,** 2021-05-26 18:11:38

ok, i need to bathe kiddos and get them ready for bed

- **Mrinalini Loew,** 2021-05-26 18:11:58

i&#39;ll find some time tomorrow for us to discuss briefly so we can all totally forget about it over the long weekend ☺

- **Mrinalini Loew,** 2021-05-26 18:12:09

i&#39;ll include JZ since he&#39;s eager to get some kind of answer before sameer signs off

- **Christina Schaengold**, 2021-05-26 18:12:21

Sg!

- **Paul Feng**, 2021-05-26 18:13:03



- **Paul Feng**, 2021-05-26 18:23:48

You might be right let me give it some thought. I also have a one-on-one w Sameer tomorrow. I can try to squeeze it in

GOOG-PLAY-007873900

# EXHIBIT B12

# EXHIBIT 16

FILED UNDER SEAL

Message

| | |
|---|---|
| **From**: | Aurash Mahbod |
| **Sent**: | 2/6/2020 4:28:05 PM |
| **To**: | Justin Ho ▮ ]; Brent VerWeyst ▮ ]; Ryan Troll ▮ ]; Zain Nemazie ▮ ]; Paul Bankhead ▮ ; Damion Heredia ▮ ]; Sundeep Sancheti ▮ ]; Zhi Qiao ▮ |
| **Subject**: | gmscore-uberleads |

- **Aurash Mahbod**, 2020-02-06 08:28:05

<a href="https://www.google.com/url?q=https://www.reuters.com/article/us-china-mobile-exclusive/exclusive-chinas-mobile-giants-to-take-on-googles-play-store-sources-idUSKBN20018H?feedType%3Dmktg%26feedName%3DtechnologyNews%26WT.mc_id%3DPartner-Google%26from%3Dgroupmessage&amp;sa=D&amp;source=hangouts&amp;ust=1581092885291000&amp;usg=AFQjCNGM--td3nOYxFRuNgx3H6RkCGHFKg">https://www.reuters.com/article/us-china-mobile-exclusive/exclusive-chinas-mobile-giants-to-take-on-googles-play-store-sources-idUSKBN20018H?feedType=mktg&amp;feedName=technologyNews&amp;WT.mc_id=Partner-Google&amp;from=groupmessage</a>

- **Damion Heredia**, 2020-02-06 08:45:31

Was waiting for this play. Here it is.

- **Paul Bankhead**, 2020-02-06 08:45:57

Time to brush off the banyan deck

- **Damion Heredia**, 2020-02-06 08:46:19

Related. Is there a process for deciding what goes in aosp vs gmscore on Android side?

- **Damion Heredia**, 2020-02-06 08:48:36

Need access to deck.

- **Sundeep Sancheti**, 2020-02-06 08:48:37

- **Sundeep Sancheti**, 2020-02-06 08:48:39

Only forward-looking and non-Google specific stuff goes in AOSP. All Google-specific stuff, or things that we want to be working backwards (on older versions on Android) go in gmscore.

- **Aurash Mahbod**, 2020-02-06 08:49:14

How did history get turned on again?

- **Sundeep Sancheti**, 2020-02-06 08:49:23

You did it ☺

- **Aurash Mahbod**, 2020-02-06 08:49:34

There is no history setting in Google chat

- **Aurash Mahbod**, 2020-02-06 08:49:37

At least the mobile client

- **Aurash Mahbod**, 2020-02-06 08:49:40

I can&#39;t figure out how to turn off

- **Aurash Mahbod**, 2020-02-06 08:50:28

GOOG-PLAY-003929257

Wondering if I need to switch back to Hangouts

- **Aurash Mahbod**, `2020-02-06 08:50:48`

Do you all use Hangouts?

- **Sundeep Sancheti**, `2020-02-06 08:50:56`

I use hangouts

- **Damion Heredia**, `2020-02-06 08:51:45`

i think it is per thread by creator.

- **Aurash Mahbod**, `2020-02-06 08:52:15`

And you can&#39;t change it?

- **Damion Heredia**, `2020-02-06 08:52:16`

create a new thread and it gives you an option (on is the default)

- **Damion Heredia**, `2020-02-06 08:52:21`

i miss slack

- **Aurash Mahbod**, `2020-02-06 08:52:45`

I shared &quot;Screenshot_20200206-085224.png&quot; using the new Hangouts Chat <a href="https://chat.google.com/room/AAAAqI7fRas">https://chat.google.com/room/AAAAqI7fRas</a>.

- **Damion Heredia**, `2020-02-06 08:53:19`

little clock bottom left

- **Damion Heredia**, `2020-02-06 08:53:26`

#uxwinning

- **Damion Heredia**, `2020-02-06 08:56:13`

better yet, when the room is sycned with hangouts (not sure that is set) it limits functionality of the threads.

- **Ryan Troll**, `2020-02-06 08:57:19`

&gt;&gt; Aurash turned history off.<br>&gt;&gt; Damion turned history on.

- **Ryan Troll**, `2020-02-06 08:57:24`

Nice.

- **Damion Heredia**, `2020-02-06 08:58:33`

the worst.

GOOG-PLAY-003929258

# EXHIBIT B13

# EXHIBIT 17

FILED UNDER SEAL

Message

**From:**
**Sent:** 2/9/2021 10:02:41 PM
**To:**
**Subject:** AAAATEh6aUk-CgfnQTbfM_Y

- ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀2021-02-09T16:02:41.521-06:00

https://stratechery.com/2021/an-interview-with-eric-seufert-about-apple-facebook-and-mobile-advertising/

o⠀⠀⠀⠀⠀https://stratechery.com/2021/an-interview-with-eric-seufert-about-apple-facebook-and-mobile-advertising/

- ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀2021-02-09T16:03:16.820-06:00

i hadn't thought about things in this way

- ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀2021-02-09T16:03:18.845-06:00

The thing that is always kind of weird to me about this is I think people underestimate and frankly I think Apple underestimates the degree to which Apple's growth in services revenue and the growth in the App Store is because of Facebook and that Facebook and Apple have had this very symbiotic relationship where Facebook has done all of Apple's dirty work, and Apple has harvested 30% on the backend just by virtue of owning the App Store. The question I have is, is it possible that Apple is shooting themselves in the foot here where their services revenue actually takes a meaningful hit because they've destroyed the engine driving it and they didn't even realize it because they actually didn't understand Facebook's role in this?

ES: I don't think so. I think Apple very much recognizes the role that it plays in the app ecosystem, which is the distribution engine for apps, and I think that's what Apple doesn't like. I think Apple sees that the App Store has basically become irrelevant as a point of content discovery. It's basically this kind of frictional, annoying moment between clicking an ad and installing an app. Almost all discovery happens via ads or word of mouth and I think what Apple is doing in this, in recognizing the power that Facebook has in terms of influencing which apps become big, which apps are popular, how people are using their iPhones essentially.

In recognizing that, Apple is trying to regain control of that because if Apple cripples advertising, which it basically is doing, mobile advertising — this is all happening within the context of all this stuff that's happening on the browser, which we don't need to go down that rabbit hole, but Apple has been the instigator of all of that too. If Apple cripples mobile advertising, then the App Store becomes the primary discovery point for apps again, and Apple decides how people use our iPhones, Apple decides which apps are the most popular, and by the way, that's a position that Apple used to occupy. 2012, 2013, Apple was king maker, if you got featured, your company valuation might increase by a hundred million dollars. It was really important to make that pilgrimage to Apple, go to Cupertino and beg for featuring, like "Please feature us, please give us the headline featuring because that would make such a big difference for our company".

Then in that way, Apple got to influence what kind of apps got made and how you made them, so my sense here is that Apple wants to regain control. Now, I think there's a broader three to five year arc that's also happening, which is that maybe Apple recognizes that these one-to-one hardware dependent content platforms are becoming anachronistic, everything's moving to the cloud. I don't care about the App Store, I've got a device that connects to the internet, I can connect to any content platform, the App Store is just a middleman. Why do I need that? And if Apple maybe feels that way, then this would be the way to try to lengthen the useful life of this paradigm of hardware-based content platform.

- ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀2021-02-09T16:03:47.189-06:00

pls keep in mind this chat history is not off.

CONFIDENTIAL GOOG-PLAY-010510815

# EXHIBIT B14

# EXHIBIT 19

FILED UNDER SEAL

# Morgan Lewis

**Brian C. Rocca**
Partner
+1.415.442.1432
brian.rocca@morganlewis.com

August 13, 2021

**VIA E-MAIL**

Lauren Moskowitz
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

John D. Byars
Barlit Beck LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654

Re:     *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.)
        *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.)
        *In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD (N.D. Cal.)
        *In re Google Play Developer Antitrust Litigation*, No. 3:20-cv-05792-JD (N.D. Cal.)

Dear Lauren and John:

I write in response to the issues that you both raised in your letters sent on behalf of Plaintiffs on August 2 and August 10, and as follow-up on issues discussed during our August 3 meet and confer.

**PowerPoint Quality**

Thank you for sending examples of the PowerPoint quality and readability issue Plaintiffs are encountering.  Google assessed the issue and proposes reproducing all PowerPoint files affected by this issue as color JPEG files, which we believe will address the quality and readability concerns raised by Plaintiffs.  Please confirm whether Plaintiffs agree to this proposal.

**Additional Custodians and Refresh Collections**

On the August 3 meet and confer, Plaintiffs stated that they had a proposal related to our ongoing discussions relating to additional custodians.  We have not yet seen that proposal.  Please share it with us as soon as possible.

**Morgan, Lewis & Bockius LLP**

One Market
Spear Street Tower
San Francisco, CA  94105-1596
United States

**T** +1.415.442.1000
**F** +1.415.442.1001

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 2

Plaintiffs also have resisted discussions related to refreshing the collections of certain custodians and centralized documents and data, so that the court can assess evidence of current conditions in an injunction case.  We agreed to revisit this issue on a per-custodian basis after the substantial completion date.  That date has now passed.  We'd like to begin discussions of the specific categories of documents and data that Parties will pursue in this case, particularly given our understanding of Epic's position of restricted refresh collections with respect to Tim Sweeney.

**Search Query No. 95**

Google confirms that it will add "Agave" as a term to Search Query No. 95.  In addition, Google agrees to extend the search period for Search Query No. 95 to January 1, 2010 through August 13, 2020 for all agreed upon custodians.  Google further agrees to extend the search period to March 31, 2021 for the six agreed-upon refresh custodians (i.e., Sundar Pichai, Hiroshi Lockheimer, Paul Bankhead, Tian Lim, Michael Marchak, and Sameer Samat).

**Chrome Web Store Agreements**

Google has searched for and collected exemplar Chrome Web Store agreements between January 1, 2014 and August 13, 2020 and expects to produce them by the end of next week.

**House Judiciary Committee Productions**

As stated in our prior letters, Google already produced—and for months, Plaintiffs have had access to—the vast majority of relevant documents that Google previously produced to the House Judiciary Committee in response to its Investigation of Competition in the Digital Markets.  A subset of the relevant documents, however, require Google to navigate a third-party notification process, and thus a small universe of these documents are still in that process.  As the remaining documents clear the third-party notification process, Google produces them on a rolling basis.  Indeed, most recently, on July 28, 2021 in PROD028A and PROD028B (GOOG-PLAY2-000331636 - GOOG-PLAY2-000339654), Google produced an additional set of HJC documents that were previously withheld pending completion of the third-party notification process.  There are currently fewer than one hundred relevant HJC documents that are in the third-party notification process, and Google will produce those remaining relevant documents in the near term.

**Data Requests**

Google has produced and delivered one hard drive containing transactional data to counsel for Consumer Plaintiffs, Developer Plaintiffs, and Epic as of August 13, 2021.  Google anticipates delivering a second copy of this data as requested to each group of Plaintiffs the week of August 30.

With respect to YouTube financial data, Google is in the process of finalizing this data, which required several custom and complex pulls.  We anticipate producing this data the week of August 16.  With respect to family sharing data, this data has been produced as GOOG-PLAY-007203252.

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 3

**Revenue Sharing Agreements ("RSAs")**

In Plaintiffs' May 22, 2021 letter, Plaintiffs asked that Google confirm whether it has RSAs with non-OEM third parties.  On May 25, 2021 we explained that Google also has RSAs with certain wireless carriers, which Google agreed to, and has now, produced.  Plaintiffs then raised the issue of RSAs again on June 9, 2021, asking whether Google has any RSAs with any non-OEMs *other than* wireless carriers.  In our June 18, 2021 response, Google explained that it had already agreed to produce certain OEM and wireless carrier RSAs in response to RFP No. 1 consistent with the parties' discussions.  Google further explained that it agreed to search custodial files, including through the use of search terms, for documents responsive to RFP Nos. 29. 55, and 87, the overly broad, unduly burdensome, and inapposite RFPs Plaintiffs apparently relied on in seeking further documents concerning RSAs.  Plaintiffs were not satisfied with Google's response and, on July 6, 2021, requested that Google search non-custodial files for RSAs with third parties other than OEMs and carriers, citing to RFP No. 1, which by its plain terms, applies only to OEMs and carriers.  We further note the operative complaints only challenge RSAs with OEMs.  Nevertheless, on July 13, 2021, Google agreed to conduct a reasonable search of centralized repositories for RSAs relating to Google Play and Google Play Billing with non-OEMs and non-wireless carriers.  Google has completed that search and was unable to locate any revenue share agreements related to Google Play and Google Play Billing other than those with OEMs and carriers.

**Contracts with OEMs**

While Plaintiffs are amenable to Google's proposal of producing RSAs with the top 20 OEMs, which covers 90% of device activations, Plaintiffs ask that Google (1) "confirm in writing that it will not argue that any conclusions Plaintiffs draw from the produced contracts are inaccurate because they do not take into account the full universe of OEM contracts"; and (2) provide a list of all OEMs with non-standard agreements whose contracts Google has not produced in this litigation.  As for the latter request, Google will provide a list of OEMs with RSAs with Google, many of which (based on Google's investigation), will contain bespoke terms.  Google will also agree to produce a reasonable sample of RSAs with OEMs from this list.  As for the former request, Google will agree not to argue that any conclusions drawn from the produced RSAs between Google, on the one hand, and carriers and OEMs, on the other, that contain terms that restrict pre-installation of app stores and other apps with installation rights are inaccurate because they do not take into account the full universe of OEM contracts, provided that Google is permitted to rebut Plaintiffs' conclusions with fact witness and expert testimony and produced data.  Put another way, with produced data, documentary evidence, and witness testimony, Google reserves its right to show and quantify the small fraction of phones and activations that are subject to an RSA.

**Agreement with** ███████

We understand that the ███████████████████████████████████████████████████████
████████████████████  While Plaintiffs have stated that this agreement "had an impact on the market for Android", we do not understand how ███████ avoidance of lodging public complaints about Google are relevant to the claims in this litigation.  Please explain.

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 4

**Organization Information**

In response to Plaintiffs' request for Google to identify information or documents that contain organizational information in Google's productions to date, Google directs Plaintiffs to the following non-exhaustive list of examples:  GOOG-PLAY-000759981, GOOG-PLAY-000910948, GOOG-PLAY-004728186, GOOG-PLAY-001831248, GOOG-PLAY-002442883, GOOG-PLAY-003691843, and GOOG-PLAY-004541554.

**Source Code**

As requested in the August 3 meet and confer, Plaintiffs provided their explanation for why they are seeking source code.  While we appreciate that information, the explanation is incomplete on many levels.  We list several examples:

First, while Plaintiffs have noted that they allege that Google used "technical barriers" to foreclose competition, it's still unclear what types of technical barriers Plaintiffs believe require the review of source code.  For example, Plaintiffs request "any source code that implements any processes that a user must go through to install apps or app stores outside of Google Play, including the 'unknown sources' process."  As Plaintiffs know, users allow their devices to download from unknown sources by adjusting their user settings; we do not believe this is a technical barrier or one that requires an analysis of source code to understand.  Simply put, source code written to implement Google's business decisions contain numerous trade secrets and Plaintiffs have failed to establish why they need access to those trade secrets.  Google requests that Plaintiffs explain for each source code request, the "technical barriers" it wishes to understand and why source code is the probative source of information, so that we can consider each of Plaintiffs' specific source code requests and whether there is a less burdensome source of information that Google can provide.

Second, Plaintiffs include requests for source code that do not appear to even relate to "technical barriers".  For example, Plaintiffs request source code "that implements in-app purchase functionality within Android devices." Please explain how this analysis of this code is relevant to your claims in this case.

Third, beyond source code, Plaintiffs request "training data related to ML-based models or other heuristics" used for detecting malware.  This request is overly broad and unduly intrusive.  Please explain how Google's proprietary training data is relevant to your claims in this case.

Google also notes that for some of these requests, the responsive source code may not be in Google's possession, custody, or control.  Modifications to the process of sideloading applications, or that override the functionality within AOSP, should be sought from third parties, i.e., OEMs.  Code related to warnings given by individual apps should be sought from the developer of such apps.

**Instant Messages**

As previously explained on meet and confer calls, without disclosing  information protected by the attorney-client privilege and/or attorney work product doctrine, we can confirm that chats are subject to the litigation hold and that Google has collected and produced relevant chats for custodians that are responsive to Plaintiffs' discovery requests.  As requested on the August 3

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 5

meet and confer, Google is providing non-exhaustive Bates numbers of examples of chats to the extent helpful for Plaintiffs to locate them:  GOOG-PLAY-000326905, GOOG-PLAY-000353866, GOOG-PLAY-000087767, GOOG-PLAY-000807392, GOOG-PLAY-002343851, and GOOG-PLAY-002044243.  Unfortunately, we do not have a metadata field that can be used to easily identify chats within the production.

Plaintiffs have articulated what they say are deficiencies in Google's production of chats.  However, we disagree.  Like many companies, Google's chats are not retained in the normal course of business.  Chats are kept by default for only 24 hours in the usual course of business.  To the extent a custodian was using chats before these lawsuits were filed, Google had no obligation to preserve those chats.  Thus, we do not expect that we would have records of "pings" discussed in emails that were dated prior to this lawsuit, as identified in your August 2 letter.

We understand that Google custodians use Google Chats and Google Hangouts as their primary chat tools.  Google does not believe that there are responsive chats on other messaging software, including WhatsApp, Slack, Jabber, or Microsoft Teams, but will agree to confirm and produce any responsive chats from other messaging software, to the extent they exist.

**Text Messages**

Google previously conducted a reasonable and diligent inquiry to determine whether it was likely that its custodians would possess responsive information in the form of SMS text messages or other messaging apps.  Without disclosing information protected by the attorney-client privilege and/or attorney work product doctrine, Google determined that it was unlikely that responsive information would exist in these formats and it was not proportionate to the needs of the case to undertake the burden to collect such information given that determination.  In response to Plaintiffs' July 15 inquiry, as you are aware, Google undertook additional analysis to investigate this issue.  Our conclusion remains the same.  Of the examples that Plaintiffs shared with Google, many references to the use of texts were from many years ago, and certainly before this litigation was filed.  Moreover, the references to the use of texts appear to be largely logistical or administrative, such as availability for scheduling meetings.  These limited examples are not sufficient to warrant the burden of collecting and searching individual users' text messages on their personal devices.  Nevertheless, in the interest of moving forward on this issue, Google will agree to  review text messages sent and/or received by custodians who used such messaging to communicate about information that is otherwise responsive, and, to the extent Google is able to identify any relevant communications within the search period after a reasonable and diligent search, Google will produce those messages.

**Individualized Contracts with App Developers, including Facebook**

As mentioned in our prior correspondence, Google is obligated to provide notice to developers whose agreements would be produced in light of Google's commitment to produce contracts relating to the developer programs cited in our July 14, 2021 letter.  Google anticipates that it will begin producing these contracts next week.  Google also investigated the existence of additional, relevant developer programs, and will be producing exemplars of Play Points and NBO/Play Pass agreements.

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 6



As for agreements with ███████, as discussed on our August 2, 2021 meet and confer, ███████ ███████ Plaintiffs previously identified relates not to Play but to Search, and Google does not believe it is relevant.  Nor does it appear that ███████ is a part of any of the developer programs for which Google has agreed to produce agreements.  Plaintiffs' August 10, 2021 letter raises again the issue of ███████ agreements, claiming that public news reports, the Texas AG complaint, and documents in Google's production show that there exist relevant agreements with ███████ yet Plaintiffs appear to describe potential agreements relating to advertising ███ ███████████████████████.[1]  Google does not see how these agreements bear on the issues in this case, which is about Google Play and the app distribution market, not advertising.  Plaintiffs also make reference to preinstallation of Facebook apps on certain Android devices.  Any agreements to preinstall Facebook apps on devices would be between Facebook and the relevant OEMs.  Finally, Plaintiffs refer to potential agreements that would give Facebook a share of Google advertising revenues to disincentivize Facebook from "v[ying] for a prominent position for competing application distribution services."  While Plaintiffs do not specify what Facebook app distribution services they contend competes with Google Play, Google is investigating the existence of joint marketing or revenue share agreements with Facebook related to app distribution.

**Agreement related to ███████████████**

Google's position remains that its agreement with ███████████████████████ is irrelevant and simply not probative of any of Plaintiffs' claims regarding Google Play and Android app distribution.  However, to avoid burdening the Court, Google is considering a compromise position to resolve this discovery issue, which may include certain redactions.  Google is working through these issues with ███████  Any production of the agreement would be with a Non-Party Highly Confidential – Outside Counsel Eyes Only designation.  Google requests an additional week to work through the specifics with ████ regarding this potential compromise production.

**Communications Between Apple and Google**

Google confirms that it had applied all of the agreed upon search queries to all of the agreed upon custodians and has produced relevant communications with Apple.  ███████████████████████ ███████████  If that compromise is acceptable, Google may also be willing to arrive at an agreement relating to review and produce some additional, limited communications related to ███████████.

<p style="text-align:center">*      *      *</p>

---

[1] Google believes that Plaintiffs' citation in the August 2, 2021 to GOOG-PLAY-001593726 was in error, as that Bates number does not appear at the beginning of any document in Google's production.  To the extent Plaintiffs believe specific documents in Google's production demonstrate the relevance of specific agreements with ███████ to the issues in this litigation, Google will consider them.

Lauren Moskowitz
John D. Byars
August 13, 2021
Page 7


We look forward to discussing these issues further on our omnibus meet and confer scheduled for August 17.


Sincerely,

Brian C. Rocca

cc: Yonatan Even (yeven@cravath.com)
  Eric Zepp (ezepp@cravath.com)
  Timothy Cameron (tcameron@cravath.com)
  Jamie L. Boyer (jboyer@koreintillery.com)
  Stephen M. Tillery (stillery@koreintillery.com)
  Karma M. Giulianelli (karma.giulianelli@bartlitbeck.com)
  Glen E. Summers (glen.summers@bartlitbeck.com)
  Jameson R. Jones (Jameson.jones@bartlitbeck.com)
  Steve W. Berman (steve@hbsslaw.com)
  Rob F. Lopez (robl@hbsslaw.com)
  Ben J. Siegel (bens@hbsslaw.com)
  Bonny E. Sweeney (bsweeney@hausfeld.com)
  Melinda R. Coolidge (mcoolidge@hausfeld.com)
  Katie R. Beran (kberan@hausfeld.com)
  DevelopersvGoogle@hausfeld.com
  Peggy J. Wedgworth (pwedgworth@milberg.com)
  Elizabeth C. Pritzker (ecp@pritzkerlevine.com)
  Jonathan K. Levine (jkl@pritzkerlevine.com)
  Laurence D. King (lking@kaplanfox.com)
  Mario M. Choi (mchoi@kaplanfox.com)
  Hae Sung Nam (hnam@kaplanfox.com)
  Mark C. Molumphy (mmolumphy@cpmlegal.com)
  Adam J. Zapala (azapala@cpmlegal.com)
  Noorjahan Rahman (nrahman@cpmlegal.com)
  Eric H. Gibbs (ehg@classlawgroup.com)
  Andre M. Mura (amm@classlawgroup.com)

# EXHIBIT B15

# EXHIBIT 20

FILED UNDER SEAL

Message

| | |
|---|---|
| **From**: | Larry Yang |
| **Sent**: | 8/3/2018 2:54:10 PM |
| **To**: | David Riphager ██████████████   Patrick Davis [██████████████   Jeremy Frank |
| | ██████████   Winston Mok [██████████████ ]; Darshini Thiagarajan ██████████ |
| | Angela Ying ██████████ ; Paul Feng ██████████ ]; Manish Bhargava |
| | ██████████ ]; Mrinalini Loew ██████████ ]; Meghdutt Brahmachari ██████████ |
| | Austin Shoemaker ██████████   Vivek Gandhi ██████████████ ]; Kasra Koushan |
| | ██████████ ]; Konstantin Rodin ██████████ |
| **Subject**: | ??PF-Team? |

- **Larry Yang**, 2018-08-03 07:54:10

The Verge: Fortnite for Android will ditch Google Play Store for Epic's website.<br><a
href="https://www.google.com/url?q=https://www.theverge.com/2018/8/3/17645982/epic-games-fortnite-
android-version-bypass-google-play-
store&amp;sa=D&amp;source=hangouts&amp;ust=1533394451006000&amp;usg=AFQjCNFpODmgY0R_uIv
-1byaGWl2kBjtrA">https://www.theverge.com/2018/8/3/17645982/epic-games-fortnite-android-version-
bypass-google-play-store</a>

- **Larry Yang**, 2018-08-03 07:54:30

Tian alluded to this yesterday at the town hall

- **Larry Yang**, 2018-08-03 07:55:14

&quot;the company plans to directly distribute the software to players through the
official Fortnite website&quot;

- **Konstantin Rodin**, 2018-08-03 07:56:48

I guess they will release apk loader on Play - gotta block it 😊

- **Larry Yang**, 2018-08-03 07:56:56

Doesn&#39;t want to pay 30%

- **Patrick Davis**, 2018-08-03 07:57:50

Correct. And yet on iOS....

- **Larry Yang**, 2018-08-03 07:57:56

Ironically , EPIC runs a market place themselves... Taking a rev share on digital assets distributed for unreal

- **Patrick Davis**, 2018-08-03 07:58:25

Also my understanding is there will be some kind of Samsung exclusive

- **Larry Yang**, 2018-08-03 07:58:31

&quot;For Fortnite on iOS, Epic decided to distribute the game on the App Store, most likely because it had no
other method of getting iPhone users to easily download the software. (Apple, unlike Google, does not allow
iOS users to download apps that are not first approved by its internal review processes and distributed through
its proprietary marketplace.) With Google and its more open platform, Epic can get away with distributing the
app itself.&quot;

- **Patrick Davis**, 2018-08-03 07:58:34

*timed exclusive

- **Larry Yang**, 2018-08-03 07:59:05

&quot;Epic declined to comment on the game's release date or any partnership plans with Samsung.&quot;

- **Larry Yang**, 2018-08-03 07:59:32

CONFIDENTIAL

GOOG-PLAY-002384214

<a href="https://www.google.com/url?q=https://www.theverge.com/2018/7/26/17619428/fortnite-android-samsung-galaxy-note-9-exclusive-launch&amp;sa=D&amp;source=hangouts&amp;ust=1533394772991000&amp;usg=AFQjCNHWO1iVBHh41XbkR2jjU1OgC4yhhw">https://www.theverge.com/2018/7/26/17619428/fortnite-android-samsung-galaxy-note-9-exclusive-launch</a>

- **David Riphagen**, 2018-08-03 09:47:07

Anyone got the new Android update? Looks a lot like iPhone, especially the new swipe up to kill app

CONFIDENTIAL

GOOG-PLAY-002384215

# EXHIBIT B16

# EXHIBIT 21

FILED UNDER SEAL

Message

| | |
|---|---|
| **From**: | Eric Chu ███████████ |
| **Sent**: | 6/7/2020 2:37:26 AM |
| **To**: | Eunice Kim ███████████ |

- **Eric Chu**, 2020-06-06 19:37:26

Good evening.  Starting to look at the Play stuff more closely now.

- **Eric Chu**, 2020-06-06 19:38:07

Please send me links to key docs around Play policy and P-to-B if you have them handy.

- **Eunice Kim**, 2020-06-06 19:38:35

Sure thing

- **Eunice Kim**, 2020-06-06 19:38:45

Will send over email since chat gets lost

- **Eric Chu**, 2020-06-06 19:38:54

Thanks

- **Eric Chu**, 2020-06-06 19:39:12

It is crazy on what&#39;s happening in the housing market currently.

- **Eric Chu**, 2020-06-06 19:39:35

Huge disconnect with the Financial and house market vs. what I think is happening on the streets.

- **Eric Chu**, 2020-06-06 19:46:18

Does this doc captures everything including key links?

- **Eric Chu**, 2020-06-06 19:46:19

<a
href="https://www.google.com/url?q=https://docs.google.com/document/d/1fdXmygKHhIlpedTolsXnCbgSk8b
E5ZJgCd7L6YchjvM/edit&amp;sa=D&amp;source=hangouts&amp;ust=1591584379311000&amp;usg=AFQj
CNElNm4yB-
Km79uER8icksVgPXxm7Q">https://docs.google.com/document/d/1fdXmygKHhIlpedTolsXnCbgSk8bE5ZJg
Cd7L6YchjvM/edit</a>

- **Eunice Kim**, 2020-06-06 19:47:12

Ah, I forgot a couple of decks that Paul Feng sent

- **Eunice Kim**, 2020-06-06 19:47:19

But they may be less relevant at this point

- **Eunice Kim**, 2020-06-06 19:47:29

You probably can find those if you search on his name

- **Eric Chu**, 2020-06-06 19:47:45

ok, if that&#39;s the case.  I&#39;m good then.

- **Eric Chu**, 2020-06-06 19:47:57

No need to send anything.

- **Eunice Kim**, 2020-06-06 19:48:11

ok... sent an email with the most pertinent docs

CONFIDENTIAL

- **Eric Chu**, 2020-06-06 19:48:21

Got it. Thanks.

- **Eunice Kim**, 2020-06-06 19:48:30

You should definitely take a look at the options Play was considering on its side

- **Eric Chu**, 2020-06-06 19:48:42

Will do

- **Eric Chu**, 2020-06-06 19:50:17

I didn&#39;t see the email to Prachi. Were you planning to send it? Or should I send it?

- **Eric Chu**, 2020-06-06 19:50:31

I&#39;m fine either way. Whatever is easier for you so that you can focus on ShopTube.

- **Eunice Kim**, 2020-06-06 19:51:53

Hadn&#39;t finished writing it

- **Eunice Kim**, 2020-06-06 19:52:09

It would be great if you could write it

- **Eric Chu**, 2020-06-06 19:52:39

Ok. Please forward what you have so that I have a high launch point.

- **Eunice Kim**, 2020-06-06 19:53:44

Sure, I had just written out some bullets on what the email was meant to cover, will send that to you

- **Eric Chu**, 2020-06-06 19:53:57

Thanks

- **Eunice Kim**, 2020-06-06 19:57:21

Sent!

- **Eric Chu**, 2020-06-06 19:57:28

Thanks

- **Eric Chu**, 2020-06-06 19:59:11

I only have one doc from Paul. The one he shared on Thursday.

- **Eunice Kim**, 2020-06-06 19:59:58

I&#39;ll share both with you via drive

- **Eric Chu**, 2020-06-06 20:47:39

First draft.

- **Eric Chu**, 2020-06-06 20:47:40

<br> Hi Prachi and Will,<br> <br> Eunice and I had a meeting with Paul Feng, Andrew, Mrinalini , and Hareesh on Thursday. We were expecting to work with them to explore best options to help Play meet Europe&#39;s regulatory requirement with minimum efforts and revenue impact to Play and YouTube.<br> <br> Instead, Paul said he has been asked by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We told them this is different from what we&#39;ve been hearing on our side but Paul was very explicit and repeated on the marching order he received. Further more, he said he has been asked to present ▮▮▮▮▮▮▮▮▮ next Friday at the VP meeting.<br> <br> Eunice and I shared with him that this is a complete surprise, different from what we&#39;ve heard on our side, and seems odd that he will be presenting ▮▮▮▮▮▮▮▮▮ We eventually agreed on the following:<br> Schedule a 3-

way meeting including Payment with goal to narrow down to a few potentially viable options knowing each of them will have pros/cons. This is now scheduled next Monday at 2:30 pm.<br> Once we narrow down to the few potential options, we'll then pull in TLs to go to next level costing with a goal to have something before next Friday.<

, etc.

- **Eric Chu**, 2020-06-06 20:47:50

Hmmm, words limit

- **Eric Chu**, 2020-06-06 20:47:54

I'll put in a doc

- **Eric Chu**, 2020-06-06 22:10:44

My goal is to send this out tonight to catch Prachi's early working time on Sunday. I'm thinking that if you don't have time to review, I'll make this email to come from me vs. from both of us. Don't want to speak for both of us if you haven't had a chance to review this.

- **Eric Chu**, 2020-06-06 23:14:45

Ok, I'm going to send off only under my name then. Please feel free to add to the email thread.

 GOOG-PLAY-003600816