# EXHIBIT 16

# Morgan Lewis

**Brian C. Rocca**
Partner
+1.415.442.1432
brian.rocca@morganlewis.com

<span style="color:red">**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**</span>

November 11, 2021

**VIA E-MAIL**

Lauren A. Moskowitz
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Re:  *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.);
*Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.);
*In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-05761-JD (N.D. Cal.);
*In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792-JD (N.D. Cal.);
*State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.)

Dear Lauren:

We write in response to your letter of October 29 regarding outstanding discovery issues.

**Native PowerPoint Files**

Google reimaged PowerPoint files as color JPEGs and reproduced those files to Plaintiffs on
November 1, 2021 in production volume PROD048.  To the extent Plaintiffs determine that any of
the PowerPoint files reproduced as color JPEGs are still not legible, Google agrees to Plaintiffs'
protocol set forth in your letter of October 29, 2021 with one modification to provision (iv). As
discussed on our prior meet and confers, given the potential volume, system processing time, and
quality control measures that will be required to complete each request, Google is unable to
commit to providing Plaintiffs with a reproduction of files in native format within forty-eight hours.
Thus, Google proposes the following modification to provision (iv):

> (iv) Google will use best efforts to provide Plaintiffs with a reproduction of the
> file(s) in native .pptx format within ~~forty-eight (48)~~ <span style="color:red">seventy-two (72)</span> hours of the
> request, subject to reasonable extensions based on the timing or the number of
> requests.

**Metadata**

We are looking into Plaintiffs' inquiry regarding Google's production of certain metadata fields and
will follow up with additional information in due course.

<span style="color:red">**Morgan, Lewis & Bockius** LLP</span>

One Market
Spear Street Tower
San Francisco, CA  94105-1596      **T** +1.415.442.1000
United States                          **F** +1.415.442.1001

Lauren A. Moskowitz
November 11, 2021
Page 2

<span style="color:red">**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**</span>

**Search Query No. 95**

Google agrees to add the following terms to Search Query No. 95:

> (Marmot w/25 (app or apps or application*)) OR "Project Cake" OR "Project Robinson" OR "Project Pacific"

We understand that Plaintiffs are now requesting that Google add "Starburst", "Clover", and "Lion Force" as terms to Search Query No. 95.  The query already includes "Project Starburst", so Google objects to Plaintiffs' duplicative request to add "Starburst".  With respect to "Clover" and "Lion Force", Google requests that Plaintiffs explain the basis for their request to add each of these terms.

**Text Messages**

As Google has explained multiple times on several occasions, the vast majority of Google's custodians do not use text messages to conduct business.  For that reason, it is not surprising that there are relatively few text messages in Google's production.  Google is diligently evaluating whether its custodians possess responsive text messages that should be collected and produced.  We provided an example of such a responsive text message in Google's production in our November 3, 2021 correspondence.  Moreover, as we also explained previously, the mere fact that an individual refers to a "text" does not necessarily mean the use of an SMS text message, and can refer to other means of communication, including an email.  Moreover, Plaintiffs' examples in its October 29 letter do not suggest that responsive text messages should exist in Google's production.  The dates of both examples identified pre-date the filing of the complaint in this litigation; thus, even if those emails did actually refer to SMS text messages, the fact that they were no longer available after the filing of this lawsuit is entirely expected and does not support Plaintiffs' implication that Google's collection of text message is somehow incomplete.

**Instant Messages / Chats**

Plaintiffs' contention that if they had known that there was a "24-hour purge policy for instant messages when the parties initially negotiated the collection periods for Google custodians", they would have requested collection of instant messages for all custodians for the entire refresh period is nonsensical.  Negotiations relating to refresh collections were based on individuals' roles and relevant responsibilities and should not be affected by Google's usual course of business retention policy.  Google's obligation to preserve is independent of those negotiations and there is no reason to change the Parties' agreement as to which custodians require a refresh production.

Plaintiffs have made no showing that Google's production of instant messages and chats is incomplete or deficient aside from baseless assumptions.  The examples Plaintiffs identify in their October 29 letter to purport to show that there are "responsive chats throughout 2020 and 2021" are actually emails dated between January 2020 and July 2020, which pre-date the filing of the earliest complaint and fall within the period when the ordinary course 24-hour retention policy period was in place.  As we previously stated, to the extent Plaintiffs identify any information that suggests that instant messages or chat messages for the refresh custodians are incomplete, we will further investigate.  However, to date, Plaintiffs have not done so, and Google continues to believe that its productions of responsive chats and instant messages are comprehensive.

Lauren A. Moskowitz
November 11, 2021
Page 3

<span style="color:red">**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**</span>

In the interest of closing out this issue, Google provides the following information in response to Plaintiffs' request for information relating to Google's preservation of chats and instant messages:

i.    Google's current chat retention policy is attached as Exhibit A to this letter.

ii.    Google provided litigation hold notices to the vast majority of custodians on September 11, 2020.  To the extent any custodians were not initially identified as having relevant information, hold notices were issued immediately upon notice of their relevance.

iii.    With respect to the technological processes required to be taken by individuals to preserve chats or instant messages following their receipt of litigation holds, Google responds that the technological settings on Google's chat retention policy (see Exhibit A) did not change, as Google does not have the ability to change default settings for individual custodians with respect to the chat history setting.  See Exhibit B, Google Workspace Admin Help page re: chat history.  Specifically:

    1.    Google's default settings for chat history for the entire organization is set to off;

    2.    Google employees need to apply the "history on" setting on a chat-by-chat basis; and

    3.    Settings for chat history are set by each individual custodian.

iv.    To the extent the question asks for information that is covered by attorney-client privilege and work product, we decline to answer.  However, without divulging the content of attorney-client communications, Google states that it actively manages its litigation hold, including regular reminders to custodians about their preservation obligations.

v.    Google generally encourages Google employees to use Google corporate services for chat and other communications.  The use of third-party chat platforms is strongly discouraged.  However, to the extent any such platforms have been used for business purposes and contain messages relevant to this litigation and are within the possession, custody and control of Google, such messages are subject to the litigation hold and Google will produce relevant messages from those third-party chat platforms.

## Organizational Charts

We are preparing a production of reporting information from the Teams tool for all agreed upon custodians as of October 18, 2021. We will produce this information in the near term and will identify responsive documents by Bates number.

## House Judiciary Committee ("HJC") Productions

Google produced the remaining 31 documents from the HJC production that were tied up in the NDA notice process on October 28, 2021 in production volumes PROD046A and PROD046B.

Lauren A. Moskowitz
November 11, 2021
Page 4

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

## Apple Contracts

As an initial matter, Google confirmed during the October 26, 2021 meet and confer that it would likely produce all of the "relevant" agreements between Google and Apple, because the individuals who were principally responsible for negotiating the Apple RSA are custodians in either the MDL or in the CID.  Given that Google offered to re-review and produce communications relating to Google-Apple agreements that were collected during discovery in the MDL, and given that the CID materials were being produced without a relevance review, we continue to believe that our offer should be sufficient.  Google agrees that Plaintiffs reserve their rights to request additional relevant contracts or custodians responsible for negotiating agreements between Apple and Google.  Google also reserves rights to object to such requests to the extent Google does not believe such agreements or custodians are relevant to the claims in this litigation.

## Microsoft Agreement

Google has produced this agreement.  *See* GOOG-PLAY-007335679 - GOOG-PLAY-007335696.

## Individual Contracts with App Developers

**Play Pass and Play Points Agreements.**  As previously noted, Google produced several exemplar Play Points agreements in Production Vol. 35.  Exemplar Play Pass / NBO agreements were included in Production Vol. 41.  This completes Google's production of these agreements.

**Updates Concerning Developer Deal Program Agreements.**  Plaintiffs request an update on the status of the production of agreements with developers participating in (1) the Games Velocity Program, (2) the App Velocity Program, (3) the Living Room Accelerator Program, (4) the Audio Accelerator Program, and (5) Subscribe with Google, and reiterate the request "that Google identify the Bates numbers of all final, singed versions of any agreements relating these five programs."  As discussed during the October 26, 2021 meet and confer, and again during the November 4, 2021 meet and confer, we are presently working to ensure we have identified all relevant agreements through a reasonable search, providing notice to additional third parties, and collecting additional agreements for production.  Based on the information available at this time, Google provides below an update for each deal program.  As for the identification of agreements by Bates number, as discussed during the October 26, 2021 meet and confer, identifying all deal program agreements by Bates number is an exercise Plaintiffs can perform just as easily as Google, as Plaintiffs have the deal program names and can search the production with those terms.  That said, in an effort to assist Plaintiffs in the identification of the relevant agreements, Google has identified sample agreements by Bates number, which should enable Plaintiffs to readily ascertain additional agreements from each program.

*Hug/Games Velocity Program Agreements*.  As stated during the October 26, 2021 meet and confer, Google anticipated the additional Games Velocity Program agreements would be produced the following week.  Google confirms that those agreements were included in Production Volume 49.  This completes Google's production of these agreements.  Games Velocity Program agreements were included in Production Vols. 31 and 49.  Examples of Games Velocity Program agreements and related addenda include GOOG-PLAY-007273051; GOOG-PLAY-007273234; GOOG-PLAY-007273255; GOOG-PLAY-007273839; GOOG-PLAY-007335462; GOOG-PLAY-007273439.

Lauren A. Moskowitz
November 11, 2021
Page 5

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

*Apps Velocity Program.*  Google has identified previously unproduced Apps Velocity Program agreements with two developers.  Notice will be provided to the developers and we anticipate that the agreements will be produced by the end of the month.  No AVP agreements have been produced.

*Audio Accelerator Program (ADAP).*  Google has identified previously unproduced ADAP agreements with three developers.  Notice will be provided to these developers and we anticipate that the agreements will be produced by the end of the month.  ADAP agreements were included in Production Vol. 31.  Examples of produced ADAP agreements include GOOG-PLAY-007317084; GOOG-PLAY-007272061; GOOG-PLAY-007272068.

*Living Room Accelerator Program (LRAP).*  Google has identified previously unproduced LRAP agreements with seventeen developers.  Agreements with five of those developers were included in Production Vol. 49.  Google is continuing to work through notice issues with the remaining twelve, though we expect all of the remaining agreements will be produced by the end of the month.  LRAP agreements were included in Production Vols. 31, 35 and 49.  Examples of produced LRAP agreements include GOOG-PLAY-007272399; GOOG-PLAY-007272002; GOOG-PLAY-007272857; GOOG-PLAY-007272245; GOOG-PLAY-007273263; GOOG-PLAY-007274202.

*Subscribe with Google.*  To date, Google has produced Subscribe with Google agreements with more than a hundred developers.  Those agreements were included in Production Vols. 31, 35, and 49.  Examples of produced Subscribe with Google agreements include GOOG-PLAY-007272335; GOOG-PLAY-007335327; GOOG-PLAY-007272640.  While Google has located Subscribe with Google agreements with roughly 30 additional developers, Google has faced difficulty providing notice to some of these partners.  Rather than go through the time-consuming process of giving notice to each of these developers, Google has attached here as Exhibit C a list of Subscribe with Google developers for whom an agreement has not yet been produced.  To the extent Plaintiffs would like Google to produce any particular agreements from this list, up to a reasonable number, Google will agree to attempt to notify the developer and produce the agreement.

## NDAs

Plaintiffs continue to ask Google to undertake a search for NDAs, but fail to address Google's objection to this request as irrelevant and unproportional to the case in light of the fact that relevant substantive communications made pursuant to any NDA would be produced--and have been, as evidenced by Plaintiffs own example of an email referencing a Facebook NDA.  Nor do Plaintiffs explain what an NDA "concern[ing] issues related to this litigation" even looks like or identify any documents demonstrating that such NDAs might exist.  *See* 2021.10.08 H. Nam Letter to B. Rocca.  For example, is the "Confidentiality" clause contained in many of the agreements Google has produced a "NDA" by Plaintiffs definition?  If so, then Plaintiffs already have access to NDAs "concern[ing] issues related to this litigation," in MADAs for instance.

In Plaintiffs' October 29, 2021 letter, Plaintiffs cite RFPs to which NDAs would be responsive, as they had not previously even attempted to do so.  These requests do not support Plaintiffs position.  RFP No. 1 requests all agreements between Google, on the one hand, and OEMs and wireless carriers, on the other.  But in response to that request Google only agreed to produce MADAs and RSAs for certain OEMs and wireless carriers, which it has done, and more, subject to the parties' subsequent meet and confer negotiations.  RFP No. 32 seeks agreements between

Lauren A. Moskowitz
November 11, 2021
Page 6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Google and developers deviating from exemplars of agreements developers must enter into as called for in RFP No. 31.  Google has produced agreements with developers that modify the terms of the standard DDA.  And RFP No. 37 seeks agreements with developers that operate other app marketplaces or software stores, and Google agreed to produce exemplars of DDAs, terms of service, and Android SDK License Agreements.  None of these RFPs necessarily seek either directly or indirectly NDAs.  That said, to the extent Plaintiffs identify any particular documents from the custodial productions that refer to the existence of an NDA between Google and OEM, developer, or carrier directly relevant to the issues in the case, Google is willing to consider a particularized request to search for the underlying NDA.

## Revenue Share Agreements

As noted in Plaintiffs' October 29, 2021 letter, Plaintiffs agreed to Google's offer to search centralized repositories for RSAs with non-OEMs and non-wireless carriers for revenue share agreements relating to Google Play and Google Play Billing.  Plaintiffs ask for an update on the production of additional agreements, but as Google represented in its August 13, 2021 letter, Google conducted that search and was unable to locate any revenue share agreements related to Google Play and Google Play Billing other than those with OEMs and carriers.  As Google explained in its October 18, 2021 letter, Google is searching for and producing revenue share agreements relevant to the cases--that is, revenue share agreements with app store or installer preinstallation restrictions.  Those revenue share agreements with such restrictions are found between Google and OEMs and wireless carriers, which Google has produced pursuant to the parties' various agreements through the meet and confer process.

## Contracts with OEMs

Plaintiffs request a list of OEMs for whom Google has produced agreements to date, in order to enable Plaintiffs to determine what agreements Google has produced for each OEM.  While Google believes Plaintiffs are able to find all relevant agreements by searching for agreement types, Google has attached as Exhibit D the requested list of OEMs.

*Contracts with Larger OEMs.*  Plaintiffs contend that "for some of the larger OEMs, Plaintiffs have received only certain types of agreements or amendments to agreements without the underlying agreement" for a number of OEMs.  As an initial matter, Google believes it has collected and produced all available contracts, per the parties' agreements, for each of the larger OEMs.  That said, the one example cited by Plaintiffs is Alcatel, for whom Plaintiffs state they have received MADA amendments without receiving the underlying MADAs themselves.  Based on the documents cited in Plaintiffs' letter, it appears Plaintiffs are aware that the signing party for Alcatel agreements is TCT Mobile Limited.  At least one MADA has been produced for TCT Mobile Limited.  *See* GOOG-PLAY-000617393.

*Contracts Smaller OEMs.*  Plaintiffs ask Google to confirm that the agreements listed in Exhibit A to Google's September 17, 2021 letter represent all agreements with the subset of smaller OEMs that Plaintiffs identified.  Based on a reasonable search, Google can confirm that the agreements produced for the smaller OEMs constitute all of the relevant agreements identified for those OEMs.

Lauren A. Moskowitz
November 11, 2021
Page 7

<span style="color:red">**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**</span>

**Wireless Carrier Agreements**

Plaintiffs contend that they are unable to locate revenue share agreements and direct carrier billing agreements for the top four U.S. carriers in Google's production.  Google believes, as it has previously represented, that these agreements have already been produced and the production of U.S. carrier agreements is complete.  While Plaintiffs do not specify which agreements they believe they do not have, to assist Plaintiffs with identifying the relevant carrier agreements, Google provides the following examples by Bates number:

(1) AT&T (GOOG-PLAY-003604531; GOOG-PLAY-003604606; GOOG-PLAY-001507837);

(2) Sprint (GOOG-PLAY-003604546; GOOG-PLAY-003604937; GOOG-PLAY-001507921);

(3) T-Mobile (GOOG-PLAY-003604627; GOOG-PLAY-003604732; GOOG-PLAY-003604574 GOOG-PLAY-001507814); and

(4) Verizon (GOOG-PLAY-3604808; GOOG-PLAY-003604862).

**Chrome Web Store Agreements**

Google produced the current version of the chrome web store agreement, GOOG-PLAY-007274442, as well as historical versions of that agreement, *see, e.g.* GOOG-PLAY-007274481 and GOOG-PLAY007274462

**App Store Reports**

Plaintiffs asked in their October 6, 2021 letter that Google produce all "App Store Reports," as found at GOOG-PLAY-001167043.  Based on a reasonable investigation, the App Store Reports document Plaintiffs identified contains not only the final App Store Report for March 2018, but all prior iterations of the App Store Report, dating back to the first report covering November 2017.

*       *       *

We are available to discuss these issues at the next scheduled meet and confer.

 Sincerely,

Brian C. Rocca

cc:    Yonatan Even (YEven@cravath.com)
       Justin C. Clarke (jcclarke@cravath.com)
       Eric Zepp (ezepp@cravath.com)
       Zachary Jarrett (zjarrett@cravath.com)
       Daniel Ottaunick (dottaunick@cravath.com)

Lauren A. Moskowitz
November 11, 2021
Page 8

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Bonny E. Sweeney (bsweeney@hausfeld.com)
Melinda R. Coolidge (mcoolidge@hausfeld.com)
Katie R. Beran (kberan@hausfeld.com)
Alberto Rodriguez (arodriguez@sperling-law.com)
Steve W. Berman (steve@hbsslaw.com)
Rob F. Lopez (robl@hbsslaw.com)
Ben J. Siegel (bens@hbsslaw.com)
Karma M. Giulianelli (karma.giulianelli@bartlitbeck.com)
Jamie L. Boyer (jboyer@koreintillery.com)
Hae Sung Nam (hnam@kaplanfox.com)
Aaron Schwartz (ASchwartz@kaplanfox.com)
Brendan Glackin (bglackin@agutah.gov)
Brian Christensen (bchristensen1@agutah.gov)
Sarah Boyce (sboyce@ncdoj.gov)

# EXHIBIT A

# Google Chat Retention Policy

Policy Last modified: November 18, 2020

Page last modified:  February 26, 2021

Our Google Chat retention policy aims to reduce redundant, obsolete, and trivial information in corporate chats. By helping us all focus on our most meaningful and useful messages, we can reduce time spent sifting through irrelevant old messages and reduce storage costs.

## Retention Periods

- **24 hours** if history is off

- **30 days** for history-on chats with just one one other person

- Currently **18 months** for history-on chats in a group conversation or flat (non-threaded) room
  - Exception: 30 days if the history-on flat room was created from within classic Hangouts before 11/18/20
  - **Please be aware:** You may have noticed that your group chats created in classic Hangouts are also reflected as flat rooms in Google Chat (and vice versa). Historically, both had a retention period of 30 days. The current 18-month retention of flat rooms is a technical interim step and will be brought back to the initial **30 days** earliest H1 2021 (we'll be sure to announce when this is happening!). If you need 18-month-long retention, please consider a threaded room instead.

- **18 months** for chats in a threaded room (history is always on and can't be turned off)

  NOTE:  Turning history "on" or "off" applies only to messages sent after that change. For example, if you send or receive messages while history is "off" and then you turn it "on," the pre-existing messages will only be retained for 24 hours.


  NOTE: Once a chat's retention period expires and it's removed from your view, it can't be recovered back into your view.


## Business Records

If your role involves data that is potentially subject to different or longer retention periods (for example, private user data or tax records), consider taking information like this off of Chat into Gmail (Gmail Retention Policy), Google Docs, or another storage system. If you aren't sure whether the data you're handling should be stored outside of Chat for a different retention period, reach out to your manager or product counsel (go/whichlawyer). Otherwise, feel free to reach out to us at records-retention@google.com  for more general data retention questions.

## Legal Holds

**CONFIDENTIAL**

If you've been notified that you're subject to a "legal hold": To comply with our preservation obligations, your Google Chats described below will be preserved automatically (all retention periods are paused) while the relevant matter is pending. Still, don't manually delete any chats relevant to the matter at issue under any circumstances.

- On-the-record 1:1s, Group DMs, and Flat Rooms you've sent or received

- Threaded Rooms conversations in which you've participated (i.e., sent a message, not just received)

Once all applicable legal holds have been lifted, the retention periods will take effect again and remove expired messages.

## Policy Scope

This policy applies to corporate Google Chat only. It applies to all employees and our extended workforce (temporary workers/vendors/contractors) across Alphabet (minus Calico and Sidewalk Labs).

## Approvals & Changes

This policy periodically will be reviewed by Google Legal to ensure alignment and compliance with our legal and regulatory obligations. Any changes to this retention policy will be approved by Google Legal.

## Questions/Feedback

If you have any questions about this policy, you can send us an email at records-retention@google.com.

Chat Retention FAQs

CONFIDENTIAL

# EXHIBIT B

11/10/21, 2:58 PM
Turn chat history on or off for users - Google Workspace Admin Help
Case 3:22-cv-02746-JD Document 125-10 Filed 01/24/23 Page 14 of 22

# Turn chat history on or off for users

As an administrator, you can control whether to keep chat history for users in your organization. You can set the default and also let users change their history setting for each conversation.

The chat history settings for Google Chat and classic Hangouts are combined in the Google Admin console. There's now one setting to control chat history for your organization. Learn more

1. Your current account, maryfer.mendoza@morganlewis.com, doesn't have permission to perform these steps. To continue, switch to a *super administrator account*. This will open the Google Admin console.

   Switch to super administrator account (signs you out)   or Learn more.

2. From the Admin console Home page, go to **Apps** > **Google Workspace** > **Google Chat and classic Hangouts.**

3. Click **History for chats.**

4. Under **Organizational Units**, select the domain or organizational unit you want to apply settings to.

5. Turn history **On** or **Off.**

   - If you turn history **On**, you can use Vault to control how long messages are retained . Messages will disappear after the Vault retention period (if you set one).

   - If you turn history **Off**, messages are deleted after 24 hours. Vault    can't hold, retain, or search direct messages that are sent with history turned off.

     Turning history off does not hide content from scans to detect sensitive data or abuse. See "History details" below for more information.

6. To let users change their history setting, check **Allow users to change their history setting**.

   **Note:** If your organization uses both Chat and classic Hangouts, and you don't allow users to change their history setting, there may be times users can't join or stay in a Chat space. To learn more, visit Set a space history option for users    .

7. Click **Save.**

# History details

- Chat history settings apply to direct messages and group messages. If your organization has both Chat and classic Hangouts (that is, your chat setting is "Chat preferred" or "Chat and classic Hangouts"), then **Allow users to change their history setting** also applies to unthreaded spaces. History is always on in spaces with threaded conversations and can never be changed.

- History changes apply only to new messages. For example, If you turn chat history on, only new messages will be saved. If you turn chat history off, old messages that were previously saved are still saved.

- If history is forced on, people in different data regions can't chat. (History is forced on if **History for chats** is **On** and **Allow users to change their history setting** is not selected.) If you allow users to

change their history setting, history will automatically be turned off when people from different data regions chat.

- When history is off, data is not reported in the Audit report for direct messages except when messages are associated with Data Loss Prevention (DLP) incidents. (Chat DLP is now in beta.) Chat DLP incidents are logged in the Audit report for all messages, including those sent with history off. The DLP incident log points to the message, and admins can view the message until it's deleted in 24 hours. After that point, the incident log remains with a record that the message was deleted.

- When history is off, a message with external participants may be preserved longer than 24 hours if a user flags it for abuse or the message is reported to Google for spam, phishing, or malware.

    Even if chat history is turned off, it's possible that a separate copy of the conversation can be saved. For example, the message might be forwarded to Gmail or saved using a 3rd-party client.

# Related topics

- Set a space history option for users

- History settings and classic Hangouts

---

## Need more help?
Try these next steps:

> ### Ask the Help Community
> Get answers from community experts

> ### Contact us
> Tell us more and we'll help you get there

# EXHIBIT C

| |
|---|
| A Gazeta do Espirito Santo Radio e TV Ltda |
| Advance Magazine Publishers |
| Arte Gráfico Editorial Argentino S.A |
| BRASIL/MN MANCHETE EDITORA -EIRELI |
| Common Wealth Magazine Ltd (天下雜誌股份有限公司) |
| COMMUNITAINMENT LP |
| Conde Nast India Pvt Ltd |
| CUP Interactive SAS |
| DIRCOMFIDENCIAL MEDIOS S.L. |
| Editora e Gráfica Paraná Press S/A |
| EDITORA O DIA LTDA |
| El Diario de Prensa Digital SL |
| EL LEÓN DE EL ESPAÑOL PUBLICACIONES S.A. |
| Empresa Folha da Manhã S.A. |
| FP Newspapers Inc. |
| Global Notícias - Media Group. S.A. |
| Golem Media GmbH |
| Grupo Nacion GN S.A. |
| Harrison Daily Times |
| Hearst Communications Inc |
| Hearst Netherlands |
| IE Online Media Services Private Limited |
| Insider, Inc. |
| Japan Business Press Co., Ltd. |
| Nine Entertainment Co. PTY LTD |
| PT Kompas Media Nusantara |
| RBS - Zero Hora Editora Jornalística SA |
| Rhein-Neckar-Fernsehen und TV-Produktion GmbH |
| S.A. "O ESTADO DE SÃO PAULO |
| S/A Estado de Minas |
| SEIF Spa |
| Telegraph Media Group Ltd |
| Titania Compañía Editorial, S.L. |

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

| |
|---|
| Volksfreund Druckerei Nikolaus Koch GmbH |
| Wordsmithie, Inc. |

NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY

# EXHIBIT D

| |
|---|
| Afrifone Ltd |
| ARCHOS S.A. |
| ASUSTek Computer Inc. |
| Beijing Xiaomi Mobile Software Co.,Ltd |
| BLU Products, Inc. |
| Cisco Systems, Inc. |
| Essential Products, Inc. |
| Fly Mobile DMCC |
| General Motors LLC |
| GuangDong OPPO Mobile Telecommunications Corp ., LTD |
| Guangdong vivo Software Technology Co., Ltd. |
| Guangzhou Xiaomi Information Service Co., Ltd |
| Hewlett-Packard Company |
| Hisense International Co., Ltd |
| HMD Global Oy |
| HTC Corporation |
| Huawei Device Co. Ltd. |
| Huawei Software Technologies Co., Ltd. |
| Ibritech DMCC |
| Interactive Trading 266 Pty Ltd |
| Jaina India Private Limited |
| KYOCERA Corporation |
| Landis, LLC |
| LAVA International Limited |
| Lenovo (Beijing) Ltd |
| Lenovo / Motorola |
| Lenovo Group Limited |
| Lenovo Mobile Communication Technology Ltd. |
| LG CNS Co., Ltd. |
| LG Electronics, Inc. |
| MetroPCS Wireless |
| Micromax Informatics Ltd. |
| Motorola Mobility Inc |

1

NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY

| |
|---|
| Motorola Mobility LLC |
| Motorola Solutions, Inc |
| MUNDO READER SL |
| NEC Casio Mobile Communications |
| NEC Corporation |
| NEC Mobile Communications, Ltd. |
| Nokia USA Inc. |
| OnePlus Technology (Shenzhen) Co., Ltd. |
| OPPO Mobile Communication Corp |
| Optus Mobile Pty Limited |
| Palm Ventures Group, Inc. |
| Positivo Informatica S.A. |
| Positivo Tecnologia S.A |
| Reliance Communications, LLC |
| Samsung Electronics Co. Ltd (Global) |
| Samsung Group |
| Semp TCL Mobilidade LTDA |
| Sharp Corporation |
| Shenzhen Huawei Communication Technologies Co., Ltd |
| Shenzhen Tinno Wireless Technology Co., Ltd. |
| Sony Corporation |
| Sony Home Entertainment & Sound Products Inc. |
| Sony Mobile Communications |
| TCL Communication Technology Holdings Limited |
| TCL Corporation Technology Center |
| TCL Technology Electronics (Huizhou) Co., Ltd. |
| TCT Mobile International Limited |
| TCT Mobile Limited (Alcatel) |
| Transsion Communication Limited |
| Transsion Investment Limited |
| VinSmart |
| Vivo Mobile Communication Co., Ltd. |
| Xiaomi Inc. |

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

| ZTE Corporation |
| ZTEODM International (HK) Limited |

NON-PARTY HIGHLY CONFIDENTIAL -
OUTSIDE COUNSEL EYES ONLY