# EXHIBIT 19

Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St., Suite 1200
Denver, Colorado 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone.: (212) 687-1980

*Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Eamon P. Kelly (*pro hac vice*)
ekelly@sperling-law.com
**SPERLING & SLATER P.C.**
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200

*Co-Lead Counsel for the Proposed Class in In re Google Play Developer Antitrust Litigation and Attorneys for Pure Sweat Basketball, Inc.*

Bonny E. Sweeney (SBN 176174)
bsweeney@hausfeld.com
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908

*Co-Lead Counsel for the Proposed Class in In re Google Play Developer Antitrust Litigation and Attorneys for Peekya App Services, Inc.*

[Additional counsel appear on signature page]

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.*

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for Utah*

Glenn D. Pomerantz (SBN 112503)
glenn.pomerantz@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Daniel M. Petrocelli, Bar No. 97802
dpetrocelli@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 7th Fl.
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700

*Counsel for Defendants Google LLC et al.*

1

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

Case No. 3:21-md-02981-JD

**JOINT CASE MANAGEMENT STATEMENT**

Date: December 16, 2021
Time: 11:00 a.m.
Courtroom: 11, 19th Floor (by remote access)
Judge: Hon. James Donato

2

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

Pursuant to this Court's Order dated October 22, 2021 (*In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal. 2021) ("MDL") Dkt. No. 122), setting a status conference for December 16, 2021, the parties in the above-captioned MDL action ("the Parties"), by and through their undersigned counsel, submit this Joint Case Management Statement. The parties respectfully request a conference with the Court to discuss the issues raised below and the progress the Parties have made in discovery since the last status conference on September 9, 2021.

## I.  CASE STATUS SUMMARY

### A.  Case Schedule

Class Plaintiffs are seeking an extension, which has been agreed to by the Parties, on the Motion for Class Certification and related deadlines because Class Plaintiffs require additional time to adequately prepare their motions for class certification and supporting expert reports. Class Plaintiffs' need arises from, inter alia, their need to complete critical discovery, including, most significantly, depositions of key witnesses that will either take place after the current deadline for a Motion for Class Certification or which have not yet been scheduled. Although the Parties have been working to schedule these depositions since early November, recent and upcoming holidays have interfered with identifying feasible and agreeable dates. The parties have conferred on an amended schedule and have agreed to a proposal attached as Exhibit A. This proposal will have no impact on the Pretrial Conference or Trial dates. The parties jointly request that the Court adopt this proposed schedule at the forthcoming Case Management Conference and, if the Court directs it, the parties will file a joint motion for entry of the proposed schedule.

### B.  Pleadings

On November 15, 2021, Google filed an Answer to the State AG's Amended Complaint. (MDL Dkt. No. 146.) On December 3, 2021, Consumer Plaintiffs filed a Motion for Leave to Amend their consolidated complaint to add named plaintiffs and to make certain other changes, including with respect to relevant markets. (MDL Dkt. No. 152.)

3

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

On December 3, 2021, Developer Plaintiffs filed a proposed amended complaint, to add a named plaintiff and to make certain other changes, including with respect to class definition and relevant markets, and on December 6, 2021, filed a motion to amend the consolidated complaint with a hearing date of January 13, 2022. (MDL Dkt. No. 170; No. 3:20-cv-05792, Dkt. No. 167.)

Google has agreed not to oppose the motions to amend identified above in exchange for Developer and Consumer Plaintiffs' agreement to meet the following discovery milestones:

(1) Class Plaintiffs will provide Google IDs for the new named plaintiffs by December 15, 2021;

(2) The new named class plaintiffs will respond to existing written discovery requests on or before January 10, 2022;

(3) The new named class plaintiffs will begin producing responsive documents as soon as possible and not later than January 10, 2022;

(4) The new named class plaintiffs will make best efforts to substantially complete their production in response to pending written discovery by January 18, 2022;

(5) At Google's request, Developer and Consumer Plaintiffs will provide proposed dates for the new named plaintiffs to be deposed before February 25, 2021.[1]

Google and Developer and Consumer Plaintiffs' agreement on these milestones is contingent on the parties' jointly proposed case schedule described above.

## II.    STATUS OF DISCOVERY

### A.    Fact Depositions

The parties are actively working on scheduling depositions. On November 5, 2021, Plaintiffs requested that Google provide dates for 20 witnesses that Class Plaintiffs believe need to be deposed prior to the deadline for class certification motions. Plaintiffs took two of those

---

[1] Developer and Consumer Plaintiffs have indicated that they intend to produce each of the new named plaintiffs for deposition only one time; Google has reserved all rights regarding the reopening of depositions as provided under the Federal Rules of Civil Procedures, this Court's rules or Standing Orders, or the parties' Deposition Protocol.

4

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

depositions on December 2, 2021 and December 9, 2021, respectively, and have scheduled an additional 11 depositions of current or former Google employees from December 15, 2021 through February 11, 2021. On October 15, 2021, Google requested depositions of three consumer class plaintiffs. On November 22, 2021, Google requested deposition dates for the two remaining Consumer Plaintiffs. Consumer Plaintiffs offered dates for two of the five consumer class plaintiffs, and are working on dates for the other three. On October 15, 2021, Google requested depositions of three Epic witnesses, which are scheduled for December 7, 2021, December 16, 2021, and January 7, 2022. On November 30, 2021, Google requested depositions of seven additional Epic witnesses, and Epic is working on dates for those depositions.

### B. Source Code

The Parties have negotiated the scope of source code that Google will make available for Plaintiffs' experts to review and are negotiating an associated protective order. The Parties hope to finalize that negotiation soon and then promptly submit to the Court the finalized protective order or any remaining disputes.

### C. Rule 45 Subpoenas to State Agencies

On November 5, 2021, Google sent the Plaintiff States a letter asking whether they could assist in collecting and producing documents that were in the possession, custody or control of certain state agencies, most of which distribute their own mobile apps to users. On November 17, 2021, the Plaintiff States informed Google in writing of their position that discovery requests seeking the production of documents in the possession, custody or control of state agencies that are not a party to this case must be served on those agencies through a subpoena pursuant to Fed. R. Civ. P. 45. On November 29, 2021, Google notified the Plaintiff States of its intention to serve 117 subpoenas on various state agencies pursuant to Fed. R. Civ. P. 45.

5

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

### D.     Additional Discovery Disputes

### i.     Google's Production of Instant Messages and Text Messages

**Plaintiffs' Position**

Plaintiffs have serious concerns regarding Google's preservation of relevant Google Chats and text messages.  Plaintiffs first raised the issue of Google's lack of production of responsive texts and instant messages on April 22, 2021.  Shortly thereafter, on April 30, 2021, Google represented that it was "collecting and will produce existing, responsive instant messages and text messages".

### *Instant Messages*

In the six months since Google's April 30 letter, Google has produced several hundred instant messages in this litigation, many of which concerned technical support communications with users.[2]  Google has also represented to Plaintiffs, as recently as November 11, 2021, that its collection and production of chats and instant messages has been "comprehensive."  Nonetheless, Plaintiffs have been concerned about Google's collection and retention of chats because of the dearth of these types of documents in Google's production.  The December 2, 2021 testimony of a Vice President of User Experience (UX) and Product Management within the Google Play organization, Mr. Tian Lim, demonstrates that Plaintiffs' concerns were warranted.  Indeed, Mr. Lim testified that Google employees use Google Chat "extensively"— and in his case, "daily"—to communicate "with many people across the org" about business matters.  Lim Tr. at 446:20-23, 447:7-448:20.  By way of example, Mr. Lim testified that he had used Google Chat just "yesterday", in a meeting with another senior executive, after the senior executive had asked him a "question about a very very specific feature of the Play Store that [he] did not have any current details on.  And so so [he] quickly chatted the person that [he] thought would know the – would have some update on that feature area."  *Id*. at 444:2-24.  Given the routine use of chat at Google, as testified to by Mr. Lim, one would expect the production to

---

[2] Notably, it has been difficult for Plaintiffs to verify the precise number of text messages produced due to the lack of relevant metadata.

6

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

include numerous chat threads.  However, by Google's own count of the documents and chat messages it has produced, only .04% of its total production are chat messages.  Google claims that employees do not really use chat for business communications and that Mr. Lim was only referring to "logistical communications" during this line of questioning.  But that is not supported by the testimony.  Counsel specifically asked Mr. Lim whether "logistical" chats were "the only types of communications that [Mr. Lim has] had over Google Chat".  Lim Tr. at 442:24-443:2.  And Mr. Lim responded that "there is a wide variety of chats that may occur *in a day*".  *Id*. at 443:4-13 (emphasis added).

Mr. Lim went on to describe Google's document preservation efforts, which only substantiated Plaintiffs' concerns.  For example, Mr. Lim, who only joined Google in 2017, testified that he has been the subject of 10 distinct litigation holds since he started working at Google, the earliest of which was put into place just a few months after he started working there in 2017.  *Id*. at 452:1-14.  And despite these numerous litigation holds, Mr. Lim explained that "[b]y default" the contents of his daily one-on-one or small group chats would "disappear after 24 hours" unless he—or another member of that specific Google Chat group—happened to decide, unilaterally, that some or all the contents of that chat concerned any one of the numerous, ongoing litigations that were subject to a hold.  *Id*. at 454:2-455:23.  If one of the conversation participants happened to make such a determination, that individual was then responsible for "cut[ting] and past[ing]" the relevant portion of the Google Chat "into a document", which was then provided to counsel.  *Id*. at 454:2-24.  Needless to say, Plaintiffs believe that a litigation hold predicated on each employee's individual determination of relevance and subsequent diligence in extracting and forwarding potentially relevant information to counsel does not satisfy Google's obligations.

Alternatively, according to Mr. Lim, a Google Chat file might also have been preserved if a member of that chat manually "enable[d] Chat history".  *Id*. at 455:25-456:13, 458:25-459:7.  But Mr. Lim testified that he did not recall *ever* having turned on the Chat history function despite also acknowledging that he had discussed business matters in various chats.  *Id.*  As a

7

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

result, Mr. Lim had to admit that "there were definitely messages that were work related that were deleted", including "most likely" during the time of this litigation. *Id.* at 462:1-17.

Notably, much of Mr. Lim's testimony contradicts the "Chat Retention Policy" that Google provided to Plaintiffs. That document states that once a legal hold has been put in place, Google automatically preserves—"all retention periods are paused"—on-the-record 1:1 chats, Group DMs, Flat Rooms and Threaded Rooms "while the relevant matter is pending." Considering that language, Mr. Lim's testimony concerning his use of chats, and the fact that litigation holds have been in place since near the start of Mr. Lim's employment, one might expect that at least the custodial production of Mr. Lim would include numerous chat files. Yet, to date, only a handful of such files have been produced. Indeed, the language of the Chat Retention Policy is irreconcilable with the testimony provided by Mr. Lim regarding Google's preservation of such messages and raises serious questions as to whether Google employees have been properly instructed about the affirmative steps that are necessary to preserve relevant and responsive documents in compliance with litigation holds. Plaintiffs therefore request the Court promptly order Google to:

1. Identify when and to whom the litigation hold notices in this case were given, the categories of information and data employees were instructed to preserve and collect and the specific actions they were instructed to take to that end;

2. Identify, for each custodian in this litigation, whether they used Google Chat for business purposes and how Google made that determination;

3. Identify, for each custodian in this litigation, the start and end date, if applicable, of each litigation hold in place during the relevant time period;

4. Identify, for each custodian in this litigation, whether any Google Chats were manually preserved during the relevant litigation hold periods through enabling Chat history;

5. Identify, for each custodian in this litigation, whether any Google Chats were manually preserved during the relevant litigation hold periods by a custodian who

provided relevant portions of Google Chats to counsel, the counsel to whom such chats were provided, and the corresponding Bates number of the produced Google Chat files;

6. For each custodian, identify whether any of the custodian's Google Chat files were destroyed or otherwise automatically deleted during the pendency of the litigation holds, and if so, whether all the custodian's Google Chat files were destroyed or otherwise deleted during the pendency of the litigation holds;

7. Confirm it will promptly produce any relevant Google Chat files that still exist for each custodian in this litigation;

8. Confirm it will promptly produce the full contents of all relevant "large chat rooms" where "[h]istory is on by default", including, but not limited to, the "Play p.m. chat", as well as each relevant document distributed through such rooms;

9. Identify all "large chat rooms" and produce the full contents of all relevant chat rooms created for various events, trainings or other such business purposes, including, where applicable, the documents distributed through such rooms[3]; and

10. Ascertain whether Google has *any* database within its possession, custody or control that may provide a mechanism to access deleted Google Chat files, and if one is so identified, produce all relevant material. For clarity, this request includes but is not limited to those data sources identified in 4(a) of the ESI Protocol entered in this case. *See* Dkt. 14.

*Text Messages*

Plaintiffs similarly have serious concerns about Google's failure to preserve relevant and responsive text messages. To date, Google has produced only a single text message thread for Sundar Pichai, and no text messages for any of Google's other custodians, despite Google's acknowledgment that some of the agreed-upon custodians have texted for business purposes.

---

[3] Mr. Lim testified that chats within "large chat rooms" may have been preserved more systemically. Lim Tr. at 458:13-19.

9

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

Plaintiffs have pressed the issue on numerous letters and meet-and-confer discussions in the more than six months since April 30, 2021 without traction. Google recently conceded, in its November 11, 2021 letter, that it was only now "diligently evaluating whether its custodians possess responsive text messages that should be collected and produced". Given the length of the delay, lack of progress in negotiations and recent start of fact-depositions, Plaintiffs request the Court order Google to:

1. Immediately produce Google's text message retention policy;

2. Identify which Google custodians used text messages for business purposes;

3. Explain how Google identified which custodians used text messages for business purposes;

4. Ascertain whether Google has *any* database within its possession, custody, or control that may provide a mechanism to access any text messages from the relevant custodians, and if one is so identified, produce all relevant material. For clarity, this request includes, but is not limited to, those data sources identified in 4(a) of the ESI Protocol entered in this case, *see* Dkt. 14; and

5. Complete its production of all responsive text messages for all custodians who used text messaging for business purposes at least seven days prior to that individual's deposition, if scheduled, and by December 30, 2021 for all other custodians.

**Google's Position**

In connection with this action, Google implemented a comprehensive, reasonable, good-faith document preservation process, which, to date, has yielded the production of ***2.4 million documents***, including approximately 960 chat messages. The custodian-facing aspects of the process included both written and oral preservation instructions to potential custodians, preservation reminders, all available preservation methods via its legal hold tool, and active management by legal counsel at every step of the process.

*Instant Message / Chats*

Google agrees that relevant instant message or chat communications are subject to preservation, and Google in fact took reasonable steps to preserve such messages. Plaintiffs rely on the deposition of Mr. Tian Lim, Vice President of User Experience (UX), Engineering, and Product for Google Play, as supposed evidence of a preservation problem with respect to instant messages or chats. But Mr. Lim's testimony actually confirms that Plaintiffs' claims are unfounded.

*First*, with respect to the preservation of chats Mr. Lim confirmed that he understood the need to preserve relevant chats: "[w]e are told and are aware when there is a substantive--any substantive communication about a topic related to the litigation hold, that we should preserve it." Lim Tr. at 454:8-12.

*Second*, Mr. Lim testified that he has, in fact, followed that instruction. Lim Tr. at 454:14-15. Indeed, Mr. Lim specifically confirmed that "when there is substantive conversation about an issue, I have documented those." Lim Tr. at 453:20-22.

*Third*, during the deposition Plaintiffs themselves introduced materials that confirmed Mr. Lim's testimony and that showed that he had, in fact, preserved substantive chats. Lim Tr. at 453:18-20 (referencing Exhibit 108, a document containing Mr. Lim's notes, including substantive chats he copied); *see, e.g.*, *id.* at 161:13-16 ("Q: So you had a conversation with Mr. Zhang, it looks like, via chat? Was it some sort of chat? A: This was in chat, Yes").

In the face of this clear record, Plaintiffs distort Mr. Lim's testimony by using his testimony about *logistical* communications–such as quick pings to coordinate meetings or calls–to suggest that he admitted to destroying *substantive* communications that could be relevant to this case. During Mr. Lim's deposition, in an attempt to obtain a soundbite, Plaintiffs defined "business purposes" broadly as "***anything*** related to work." Lim Tr. at 448:6-8 (emphasis added). Based on this broad definition, Mr. Lim agreed that he uses Google Chat for work-related communications. Lim Tr. at 448:13-20. But Mr. Lim made clear that the "business purposes" for which he used Google Chat were "typically quite . . . logistical in nature."--he

"pings" members of his team "to coordinate meetings, quickly check in on the status of something." Lim Tr. at 442:15-22. Although those communications may be related to work, Plaintiffs have not explained why Mr. Lim or Google had any obligation to retain such logistical communications. Google custodians have no obligation to broadly preserve "*anything related to work*", but rather only *relevant* information.[4]

Plaintiffs rely heavily on a single example where Mr. Lim sent a "ping" to someone about a "very specific feature," but notably there is no indication that the unidentified feature or the ping about it were relevant to this case, and thus there would be no associated preservation obligation. And, by leaving out a portion of the testimony they quote, Plaintiffs neglect to mention that the chat recipient in their example did not even respond. Lim. Tr. at 444:10 ("... I got no response."). Contrary to Plaintiff's assertion, based on Mr. Lim's testimony one would not expect Google's production to include numerous relevant chats.

Plaintiffs also misleadingly suggest that Mr. Lim admitted to deleting relevant Google Chats. That was not Mr. Lim's testimony. Mr. Lim made clear that any deletion of Chats was based on Google's usual course retention of chats for 24 hours *and* that any deleted messages likely were only "*tangentially work related.*" Lim Tr. at 454:2-12; 461:15-24 (emphasis added). Nothing in Mr. Lim's testimony suggests that these chats were potentially relevant, or that any such chats were actively deleted.[5] To the contrary, as noted above, Mr. Lim testified that he in fact retained substantive chats that could be relevant to this case.

---

[4] Fed. R. Civ. P. 26(b)(1) (limiting scope of discovery to "matter that is relevant to any party's claim or defense"); The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 104 (2018) (noting that a party is "responsible for preserving information relevant to claims or defenses in that litigation or investigation").

[5] Mr. Lim testified that "there is a very large chat room called Play PM Chat where most of Play's product managers are in the room. History is on by default for constructs like this", Lim Tr. at 458:14-19, so such chats are fully preserved. Despite Mr. Lim's note that "there's not much real business communication occurring [in that chat Play PM chat]", Lim Tr. at 459:20-460:1, following this testimony, Google commits to investigating whether this chat room has already been collected and to produce any relevant chats from this chat room, to the extent they exist and have not yet been produced.

Moreover, Plaintiffs' claim that Mr. Lim's testimony contradicts the "Chat Retention Policy" Google provided to Plaintiffs is wrong. Indeed, as Plaintiffs themselves note "Google automatically preserves" "on-the-record" chat conversations and "Threaded Rooms." Mr. Lim confirmed these points: "[i]f we enable chat history, messages will be preserved," Lim Tr. at 456:4-6, and, for certain types of chat rooms, "[h]istory is on by default." *Id.* at 458:14-19.

Despite all this evidence that Google has, in fact, reasonably acted to preserve relevant chats, Plaintiffs now claim they need sweeping discovery-on-discovery, including requests for privileged information regarding counsel's communications with Google employees relating to all categories of information and data employees were instructed to preserve and collect, and demands as to the status of ***any*** litigation hold in place during the relevant time period for Plaintiffs' claims, regardless of its relevance. Such requests are inappropriate and unwarranted. *See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 123 cmt. 6.b. (2018) ("[T]there should be no discovery on discovery, absent an agreement between the parties, or ***specific, tangible***, ***evidence-based indicia*** (versus general allegations of deficiencies or mere 'speculation') ***of a material failure*** by the responding party to meet its obligations.") (emphasis added); The Sedona Conference Commentary on Ephemeral Messaging, 22 Sedona Conf. J. 435, 482-83 (2021) ("ESI that does not exist at the time a preservation duty triggers is not subject to a preservation obligation.").

Contrary to Plaintiffs' suggestions, Google has indeed had a robust collection of chat messages–almost 127,000 chats from the Parties' agreed upon custodians. After applying search terms negotiated by the parties and a responsiveness review, thus far only 960 responsive chats have been identified and produced, confirming that chat messages are not frequently used for substantive relevant communications.

Google has confirmed that after a reasonable investigation, it has completed its collection of instant messages on Google Hangouts, Google Chat, and third-party chat platforms. Beyond

13

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

this, Google has committed to producing any additional responsive chats at least seven days in advance of the scheduled deposition of any witness pursuant to Parties' deposition protocol.

_Text messages_

Plaintiffs' concerns about Google's alleged failure to preserve relevant and responsive text messages are also unsubstantiated and do not support Plaintiffs' demands for discovery-on-discovery. Google has explained multiple times on various meet and confers and in correspondence to Plaintiffs that it had indeed been conducting a diligent search for responsive text messages over the course of many months and that through its investigation, Google confirmed that the vast majority of Google's custodians do not use text messages to conduct business. Mr. Lim testified that he "[n]ever" uses text messages to communicate as far as he recalls and he confirmed that he would not know and has no recollection of "anyone at Google using texts to discuss business." Lim Tr. 448:22-449:10. Yet, Plaintiffs continue to request responsive text messages that simply never existed. Google again confirms it has completed its investigation of text messages and that for the very small number of custodians identified with potentially responsive text messages, Google is reviewing those messages to determine if any responsive information exists.[6] Google is committed to producing responsive text messages at least seven days before each individual's deposition pursuant to the Parties' deposition protocol.

ii. **30(b)(6) Deposition Topics**

**Plaintiffs' Position**

Plaintiffs seek the Court's intervention to confirm that each of the four Plaintiff groups are permitted to coordinate and ask questions of Google's Rule 30(b)(6) designee(s) on any and all topics on which each designee has been designated. The issue is simple. Google is attempting to frustrate the coordination of discovery by asserting that only one Plaintiff group can ask questions on each Rule 30(b)(6) topic served on Google. Google's position should be rejected for at least three reasons. _First_, it is an attempt to renege on a prior agreement among

---

[6] As Plaintiffs are aware, one of those custodians had been on leave and had not been available to produce their device for collection. That collection is underway.

14

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

the parties.  *Second*, it is inconsistent with the Coordination Order.  *Third*, it would serve no

purpose other than to obstruct the coordination of discovery among Plaintiffs because Google

has not (and cannot) point to any prejudice it would suffer from such coordination.

   ***Google's position is an attempt to renege on a prior agreement***.  The Parties have met

and conferred numerous times on a draft deposition protocol over the past several months,

discussing at length the conduct of Rule 30(b)(6) depositions.  During these discussions, Google

agreed that each Plaintiff group was entitled to ask questions about any Plaintiff group's Rule

30(b)(6) topics.  That issue was resolved weeks ago.  However, the Parties were unable to reach

agreement on certain other issues relating to Rule 30(b)(6) depositions, including the number of

Rule 30(b)(6) deposition topics Plaintiffs could notice on Google, and therefore submitted a joint

discovery letter to the Court on October 28, 2021.  (MDL Dkt. No. 191.)  Plaintiffs took the

position that each Plaintiff group was entitled to 10 topics, consistent with Paragraph 16(a) of the

Court's Standing Order for Discovery in Civil Cases.  (*Id*.)  Google, however, proposed a limit

on the Court's Standing Order, namely 12 topics across all Plaintiffs and two additional topics

for each Plaintiff group.  (*Id*.)  The Court agreed with Plaintiffs, ordering that "each plaintiff

group may designate up to 10 topics for Rule 30(b)(6) examinations", resulting in 40 total Rule

30(b)(6) deposition topics  among Plaintiffs.  (MDL Dkt. No. 195., the "November 5 Order".)

   Google now claims that Plaintiffs' position (and the parties' prior agreement) is somehow

inconsistent with the November 5 Order.   That is wrong.  The coordination of Rule 30(b)(6)

topics among Plaintiffs—at issue here—was never raised in the October 28, 2021 joint letter

because Google had already agreed that Plaintiffs could ask questions on the other Plaintiffs'

Rule 30(b)(6) topics.  And the November 5 Order made clear that Google would not be

prejudiced by such questioning, because the 30(b)(6) questioning, by default, must be completed

within the time allotted for 30(b)(1) testimony by the same witness, such that questioning by all

four Plaintiffs groups will not subject Google's witnesses to additional deposition time.

   Consistent with the Coordination Order and the November 5 Order, Plaintiffs coordinated

their discovery efforts and sent Google a letter stating their intention to jointly notice a Rule

30(b)(6) deposition of Google, including 32 topics.  However, Google now demands that Plaintiffs identify which Rule 30(b)(6) topics came from which Plaintiff group for the sole purpose of prohibiting three of the four Plaintiff groups from asking questions on such topics. Google claims that when it previously agreed that any Plaintiff group could ask questions about any 30(b)(6) topic, its statements were contingent on the Parties resolving their separate dispute over the number of topics that Plaintiffs could serve on Google without having to consult the Court.  At the time, however, Google did not make that "condition" known to Plaintiffs.  Had it done so, Plaintiffs would have raised that issue in the October 28, 2021 joint letter.

**_Google's position is inconsistent with the Coordination Order._**  The Coordination Order provides that the "Plaintiffs shall coordinate discovery efforts to the fullest extent reasonably possible".  (Coordination Order, ¶ 2.)  Plaintiffs have in fact coordinated their discovery efforts and intend to take depositions of Google witnesses together.  Plaintiffs expect that most if not all of Google's Rule 30(b)(6) witnesses will also be Rule 30(b)(1) witnesses.  There is no reason to require Plaintiffs' counsel to provide each other questions in advance or during depositions for other Plaintiffs' counsel to ask on the record.  In addition, it is quite possible that Google will designate a single witness to testify on several of the Plaintiff groups' Rule 30(b)(6) topics.  In that case, Google's proposal would require several questioners to tag each other in and out of the deposition—a pointless exercise made even more difficult by the need to clearly differentiate which questions fall under which topic or to repeat questions that fall under multiple topics.[7] Moreover, Google's approach would frustrate the coordination of discovery in that it would splinter the discovery record available to each Plaintiff Group, as certain testimony would be considered corporate testimony for one Plaintiff group but only individual-capacity testimony for

---

[7] Google's imagined scenario of "12" sessions for a witness designated on three topics will never happen.  It is in Plaintiffs' interests to efficiently use the deposition time they must share under the Coordination Order.  Indeed, the Plaintiff groups are coordinating, and one group is taking the lead on each jointly noticed deposition.  The other three Plaintiff groups plan to attend and ask questions, as needed, after the lead group completes its examination and within the time provided for under the Coordination Order.  That means that each deposition likely will have between two to four sessions with different attorneys asking questions.  That is a perfectly manageable and routine process—typical in MDLs—and precisely the format envisioned by the Coordination Order.

16

the other three Plaintiff groups.  That splintering of the record evidence is clearly *not* what coordinated discovery was meant to achieve.

   ***Google has not (and cannot) point to any prejudice it would suffer from the Plaintiffs' coordination***.  There is no added burden on Google.  For instance, Google cannot credibly claim that its requested relief from Plaintiffs' coordination efforts would allow it to spend less time or resources preparing witnesses.  Nor can Google claim that Plaintiffs' coordination would somehow expose Google's witnesses to more time on the record.  It would not.  Regardless of whether the Plaintiffs serve their topics jointly, as previously agreed and as contemplated by the Coordination Order—or separately, as Google now demands, Google would be subject to the same number of Rule 30(b)(6) topics (i.e., 40), the same number of depositions and the same number of hours on the record.

   Plaintiffs respectfully request confirmation from the Court that Plaintiffs are permitted to jointly serve up to 40 Rule 30(b)(6) deposition topics on Google and that all Plaintiffs are entitled to ask questions on such topics.

## Google's Position

   The parties have different interpretations of this Court's November 5th Order (Dkt. No 141), and Google would be grateful for the Court's clarification.  In the meet and confer process leading to that Order, Plaintiffs requested the right to issue 40 topics, and that those topics be served ***collectively*** by all Plaintiffs.  Plaintiffs then issued to Google 32 topics–again, collectively–before the parties briefed their dispute to Your Honor.  In that briefing, Plaintiffs reiterated their request for 30(b)(6) topics that would be shared by all Plaintiffs; in their words, "Plaintiffs propose that the Plaintiff groups ***collectively*** notice up to 37 topics on Google (less than 10 topics per Plaintiff group), and Google notice up to 10 topics on each Plaintiff group other than Consumers."  (Dkt. No 134 at 5 (emphasis added).)

   This Court's subsequent order  provides that, "in the absence of an agreement between the parties, ***each plaintiff group*** may designate up to 10 topics for Rule 30(b)(6) examinations,

17

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

as stated in the Court's Standing Order for Discovery in Civil Cases." (Dkt. No. 141 (emphasis added).)

In subsequent meet and confer discussions, Plaintiffs refused to say which topics were served by which Plaintiff Group, and insisted that, notwithstanding the "per plaintiff group" language of the Court's Order, they have the right to proceed with topics issued collectively, *i.e.*, as though ***each*** Plaintiff has issued all the 40 possible topics, rather than the 10 allocated to each plaintiff group. .

Google does not understand this approach to be consistent with the Court's November 5 Order. In any case, there are several reasons that Plaintiffs' approach should be rejected:

*First*, in practical terms it permits Plaintiffs to greatly exceed the limits imposed by the Court's November 5 order and those imposed by the Court's standing orders. For example, under Plaintiffs' proposal, Epic may—and likely will—question Google witnesses on *dozens* of 30(b)(6) topics, a result that is both contrary to the Court's existing orders and exceptionally unfair to Google, which has to right to question Epic on just 10 topics in total. Epic offers no substantive justification for its request for permission to individually pursue testimony on twenty, thirty, or even forty 30(b)(6) topics against Google merely because another Plaintiff group is also interested in the same topics.

*Second*, it permits each of the four plaintiff groups to question Google's 30(b)(6) designees separately on each topic in every deposition. So, for example, a Google witness designated to testify on just three topics could be questioned by all four Plaintiff groups on each topic, resulting in 12 separate questioning sessions with a series of duplicative questions by many different attorneys from the Plaintiffs' side. This approach is needlessly inefficient, duplicative, and likely confusing to the witness. It also eliminates all incentives for the Plaintiffs to coordinate in the preparation for 30(b)(6) examinations, as each Plaintiff can proceed as though the others do not exist—the precise opposite of the coordination that Plaintiffs are required to undertake.

18

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

*Third*, it promotes later disputes amongst the parties. If the separate Plaintiff Groups believe that good cause exists for additional 30(b)(6) topics later on, how will Plaintiffs determine which Plaintiff group is entitled to issue the remaining topics?

None of Plaintiffs' arguments in favor of their approach are convincing. For one thing, there is no merit to Plaintiffs' claim that permitting each Plaintiff to question 30(b)(6) designees *separately* encourages them to coordinate or is consistent with the Coordination Order. Successful coordination by the Plaintiffs would result in *one* attorney seeking 30(b)(6) testimony that the Plaintiffs are jointly interested in, not as many as *four* attorneys questioning the witness separately on the same topic. Furthermore, the notion that questioning by separate attorneys for two, three, or four separate parties rather than one will have no impact on the length of a deposition–and thus the burden on Google and its witnesses–is fantasy. Plaintiffs' approach suggests that they intend to consume every moment of a witnesses' time on the record merely because they can, regardless of whether the approach is efficient, fair, or respectful to the witness.

For another, Plaintiffs' claim that Google is "reneging" on some prior agreement is false. Plaintiffs previously rejected all of Google's offers of compromise regarding the allocation of 30(b)(6) topics, including Google's offer of compromise regarding this subject, which was connected only to Google's proposal of **two** shared topics per Plaintiff Group–not **forty** in total. Plaintiffs' rejection of that proposal led to the presentation of the issues for resolution by this Court, and the result is determined by the Court's Order. Plaintiffs cannot now pick and choose distinct aspects of the offer they previously rejected, and Google never suggested that its offer could be accepted piecemeal as the entire dispute was presented for judicial resolution.

   iii. **Privilege Logs**

**Plaintiffs' Position**

The Parties have an ongoing discovery dispute concerning Google's refusal to substantiate thousands of entries on its privilege log that were copied, entirely, from privilege logs in prior litigation. That dispute is described in more detail below, and at this point,

19

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

Plaintiffs believe that guidance from the Court on this issue at the upcoming Case Management

Conference would be beneficial prior to any formal motion practice.

On January 8, 2021, after extensive negotiations, the parties entered a Stipulation Re:

Privilege Logs. This stipulation memorializes the Parties' agreements with regards to the

content, format, timing, and exchange of privilege logs. Relevant to this dispute, Paragraph 5 of

the Stipulation Re: Privilege Logs provides:

> A Party who re-produces documents from other matters in
> satisfaction of its discovery obligations in this litigation may also
> produce the associated privilege logs to satisfy the obligation of the
> Party to provide a privilege log for those re-productions, even if
> the privilege logs do not comply with the requirements of this
> stipulation. However, the burden shall remain on the Producing
> Party to substantiate any privilege assertion reflected in such
> privilege log. This provision does not waive the right of a Party to
> object to any requests for reproduction of production files from
> another litigation, arbitration, government inquiry, or other matter.

Since entering into this agreement, Google has provided a privilege log to Plaintiffs with

thousands of reproductions from prior litigations. Indeed, most of the entries on Google's

Privilege Log Volume II (2,666 out of 2,850 entries) were simply copied and pasted from prior

privilege logs. Class Plaintiffs initially requested additional information for 297 of those entries

(in categories Google had already agreed to reassess in Privilege Log Volume I) because Class

Plaintiffs cannot determine whether the claimed privilege is properly asserted based on the

descriptions given for those entries. However, Google has taken the position that the first

sentence of Paragraph 5 prohibits Plaintiffs from challenging a privilege assertion set forth in a

log reproduced from a prior litigation and absolves Google from having to substantiate the

asserted privilege. Plaintiffs may have additional challenges to Privilege Log Volume II after the

Court provides guidance on this issue.

Plaintiffs believe Google's position is in direct contradiction with the second sentence of

Paragraph 5, which states: "However, the burden shall remain on the Producing Party to

substantiate any privilege assertion reflected in such privilege log." Furthermore, Google's

20

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

preferred reading of the language would write Google's obligations under Rule 26(b)(5) out of existence for 94% of Google's privilege log entries on Privilege Log Volume II.

Plaintiffs respectfully request that the Court confirm that the party producing a Privilege Log is required to substantiate any privilege asserted as required by Federal Rule of Procedure 26, regardless of whether the documents and corresponding Privilege Log entries were reproduced from a prior litigation.

**Google's Position**

Plaintiffs mischaracterize the log entries at issue in Google's Privilege Log Volume II and seek to compel Google to re-review documents designated as privileged in other matters. The entries at issue do not reflect documents that are responsive to Plaintiffs' document requests or that were withheld from production in this litigation on the basis of privilege; rather they reflect documents that were withheld from production in *other cases or investigations* for which Google has produced "cloned discovery" in this case.

Specifically, Plaintiffs served document requests on Google for "all DOCUMENTS YOU have produced" in certain other matters and investigations. In light of guidance from the Court and negotiations during which Plaintiffs argued that providing such documents would be minimally burdensome, Google produced to Plaintiffs nearly fifty thousand documents previously produced in certain prior matters. These documents were originally produced the better part of a decade ago under entirely different circumstances for entirely different parties. Plaintiffs have not articulated why documents *withheld* from production in other matters more than five years ago (and in some cases, up to ten years ago) are likely to be relevant to *this* litigation, let alone why discovery of such documents would not be "unreasonably cumulative or duplicative" under Rule 26.

Plaintiffs rely heavily on Paragraph 5 of the parties' privilege log stipulation, but that reliance is misplaced. Paragraph 5 of the privilege log stipulation is designed to decrease burdens on a producing party by allowing previously produced documents to be re-produced "in satisfaction of [] discovery obligations *in this litigation*" (emphasis added), such as where a party

21

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

might respond to a request for production on a substantive topic by re-producing documents previously produced in response to an identical or similar request for production in a different matter (as Epic has done here with respect to documents it previously produced to Apple).  In that situation, rather than satisfying its obligations by searching for and producing documents and conducting a privilege review, the producing party would simply provide the receiving party its productions and privilege logs from other matters.

That is *not* what has happened here.  To satisfy its discovery obligations in *this* litigation,    Google responded to hundreds of unique RFPs from Plaintiffs by conducting a reasonable search, collecting documents, reviewing them, producing non-privileged, responsive documents, and logging privileged, responsive documents.   Those documents collected in accordance with the parties' agreed search parameters have undergone an independent privilege review and privilege logging regardless of how they were treated in connection with a prior matter.  Indeed, Google has agreed to re-review thousands of documents, because those log entries (unlike the 2,666 entries at issue here) describe documents that were independently collected and reviewed for this litigation.

In short, Paragraph 5 does not require Google to re-review or re-log documents that are neither responsive to Plaintiffs' document requests nor within the scope of the parties' negotiated searches.  Moreover, Plaintiffs' request imposes undue burdens on Google.   It will be difficult, if not impossible, for Google to reconstruct the exact circumstances of privilege calls made so many years ago, many of which involve past employees and past in-house and outside counsel.

    iv. **Epic's Response to Interrogatory Regarding Fortnite Versions**

**Google's Position**

Google respectfully seeks the Court's guidance with respect to Epic's refusal to provide a complete response to Google's Interrogatory No. 10, which asked for a description of Epic's efforts to prevent and respond to "pirated, modified, counterfeit, or fake" versions of its flagship

game Fortnite distributed on other app stores.[8]  This information is unquestionably relevant, as it goes directly to Google's defense that the challenged conduct in this action allows Google to maintain a secure mobile ecosystem, precisely to protect users and developers from the risks and costs of unauthorized apps.  In response to this interrogatory, however, Epic provided only a high-level summary of its general practices, and described just a single "illustrative example" of its efforts to remove such copies of Fortnite.

Epic's response is inadequate.  Interrogatory No. 10 did not ask for a single example of Epic's efforts to combat "pirated, modified, counterfeit, or fake" versions of Fortnite, but instead for all instances in which Epic identified such copies and all actions taken by Epic upon identifying such copies.  To illustrate the deficiency in Epic's response, Google went out and found on the web numerous examples of app stores that appear to have pirated (i.e. unauthorized) or modified versions of Fortnite which Epic did not include in its interrogatory response, included four such examples in a meet and confer letter, and advised Epic that these examples demonstrate that their single example was not sufficient.[9]   Only Epic is able to provide a full response, but Epic does not want to do that.

Google raised this deficiency in a letter on November, 12, 2021, and in subsequent meet and confer discussions on November 18 and November 23.  It was not until December 6 that Epic finally responded in writing that it is too burdensome for Epic to identify "all" instances it has found modified or pirated versions and "all" of Epic's responsive actions.  In other words, Epic simply does not want to do the work to answer this basic question about all instances where it has sought to combat pirated versions of its flagship product.  Epic stated it is "investigating" the situation with the above-listed app stores only, but nothing more.  But these cases identified

---

[8] The full text of Interrogatory No. 10 is as follows:  "Please describe all efforts taken to prevent pirated, modified, counterfeit, or fake copies or versions of Fortnite from being Distributed by App stores, Platforms, or websites, including describing all instances in which Epic identified such copies, the date such copies were identified, and the actions taken by Epic upon identifying such copies."

[9] Based on previous interrogatory responses served by Epic, Google determined that Epic does not charge a service fee for distribution of Fortnite on any of these app stores, which suggests that these may be pirated or modified versions of Fortnite.  During the parties' meet and confer discussions, Epic has not disputed that these examples illustrate instances in which "pirated, modified, counterfeit, or fake" Fortnite versions are actually distributed.

by Google were exemplary only, not a comprehensive list.   By limiting its response to the examples Google provided, Epic is unilaterally and improperly limiting the instances for which it will provide information to those that Google found on its own and expressly identified.  But Epic knows the full universe of modified or pirated versions of Fortnite that it has identified and what it did in response, which is what this interrogatory seeks.

The parties appear to be at an impasse and Google seeks the Court's guidance.  Epic nevertheless suggests that this dispute is "premature," claiming that during a meet and confer Google voluntarily limited its own interrogatory on this important subject matter to just the four example app stores that Google itself identified.  That is both perplexing and false:  Google has consistently asked for and still requires a complete response.  To the extent there was a misunderstanding, Google repeated that message in advance of this submission, yet Epic has still not agreed to supplement its response, citing instead to the fact that Google could pursue this discovery through other means (a fact deposition of Andrew Grant, and a 30(b)(6) deposition).  That reply only confirms that, without the Court's guidance, Epic will continue to stonewall on this interrogatory and does not intend to provide a fulsome response.

Google respectfully requests that the Court direct Epic to supplement its response to Interrogatory No. 10 to describe all identified instances of "pirated, modified, counterfeit, or fake" copies of Fortnite, and all actions taken in response to the identification on those copies.  If Epic has taken no action in response to any such instances, then Epic can so state and explain in the supplemental response why it took no action.

**Plaintiff's Position**

Google's request for the Court's intervention with respect to Google's Interrogatory No. 10 mischaracterizes the nature of Google's request and Epic's responses to date.  Google's Interrogatory No. 10 requests a description of "*all* efforts taken to prevent pirated, modified, counterfeit or fake copies or versions of *Fortnite* from being Distributed by App stores, Platforms, or websites" (emphasis added) and "*all* instances in which Epic identified such copies" (emphasis added).  Epic objected to this Interrogatory, including on the grounds that it is

24

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

overbroad, unduly burdensome, and not proportional to the needs of the case.  Moreover, Epic's

determinations of whether a copy or version of *Fortnite* is pirated, counterfeit or otherwise

unauthorized—and any efforts taken in response—may involve analyses of and strategies

concerning the protection of Epic's intellectual property relating to this issue.  Consistent with

Epic's objections, Epic responded to Interrogatory No. 10 by providing information about the

specific steps, policies, processes, and tools Epic employs to prevent pirated, modified,

counterfeit, or fake copies or versions of *Fortnite* from distribution.  Further, Epic identified an

illustrative example of such a version of *Fortnite* and described the steps Epic took upon

identifying that version.

On November 12, 2021, Google sent Epic a letter stating that "this Interrogatory did not

just ask for a single example of such efforts but asked for *all* instances in which Epic identified

such copies and the actions taken by Epic upon identifying all such copies" (emphasis added).

Further, Google stated that it identified four "app stores [that] purport to have some form of the

*Fortnite* app available for download": Aptoide, Uptodown, HappyMod, and AndroidOut.

Google requested that Epic "supplement [its] response to Interrogatory No. 10 to describe "all

identified instances of pirated, modified, counterfeit or fake copies or versions of Fortnite, and

all actions taken in response."

On the parties' November 18, 2021 meet and confer, Epic requested clarification about

how Google expected Epic to respond to this request, given that identifying *all* instances of

unauthorized copies or versions of *Fortnite* would be unduly burdensome and infeasible.  Google

clarified that it seeks a supplement to Epic's response to Interrogatory No. 10 that addresses the

four app stores Google raised in its letter (Aptoide, Uptodown, HappyMod, and AndroidOut).  In

its December 6, 2021 letter, Epic stated that it is investigating Google's claim with respect to

these four app stores and that investigation is ongoing.  As such, the parties are not at impasse on

this issue and Google's request for the Court's intervention on this issue is premature.

Finally, Google fails to mention the additional discovery on this issue that Epic has

already provided.  Andrew Grant, an Engineering Fellow at Epic Games, Inc., verified Epic's

25

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

1  response to Interrogatory No. 10 on October 28, 2021. Google deposed Mr. Grant on

2  December 7, 2021, more than a month after it received Mr. Grant's verification of Epic's

3  response to Interrogatory No. 10. Google also had the opportunity to question Mr. Grant

4  regarding Epic's general knowledge, opinions, research, analyses, and assessments regarding

5  security concerns, malware, or security breaches associated with different distribution channels,

6  a topic on which Epic designated Mr. Grant to testify pursuant to Rule 30(b)(6).

7

8                                    CRAVATH, SWAINE & MOORE LLP

9                                         Christine Varney *(pro hac vice)*
                                         Katherine B. Forrest *(pro hac vice)*
10                                        Darin P. McAtee *(pro hac vice)*
                                         Gary A. Bornstein *(pro hac vice)*
11                                        Timothy G. Cameron *(pro hac vice)*
                                         Yonatan Even *(pro hac vice)*
12                                        Lauren A. Moskowitz *(pro hac vice)*
                                         Omid H. Nasab *(pro hac vice)*
13                                        Justin C. Clarke *(pro hac vice)*
                                         M. Brent Byars *(pro hac vice)*
14

15                                   FAEGRE DRINKER BIDDLE & REATH LLP
                                         Paul J. Riehle (SBN 115199)
16

17                                   Respectfully submitted,

18                                   By: */s/ Yonatan Even*
                                         Yonatan Even
19
                                         *Counsel for Plaintiff Epic Games, Inc.*
20

21                                   BARTLIT BECK LLP
22                                        Karma M. Giulianelli

23                                   KAPLAN FOX & KILSHEIMER LLP
24                                        Hae Sung Nam

25

26

27

28
26

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

Respectfully submitted,

By: /s/ Karma M. Giulianelli
    Karma M. Giulianelli

*Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

PRITZKER LEVINE LLP
    Elizabeth C. Pritzker

Respectfully submitted,

By: /s/ Elizabeth C. Pritzker
    Elizabeth C. Pritzker

*Liaison Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP
    Steve W. Berman
    Robert F. Lopez
    Benjamin J. Siegel

SPERLING & SLATER PC
    Joseph M. Vanek
    Eamon P. Kelly
    Alberto Rodriguez

Respectfully submitted,

By: /s/ Steve W. Berman
    Steve W. Berman

*Co-Lead Interim Class Counsel for the Developer Class and Attorneys for Plaintiff Pure Sweat Basketball*

27

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

HAUSFELD LLP
    Bonny E. Sweeney
    Melinda R. Coolidge
    Katie R. Beran
    Scott A. Martin
    Irving Scher

Respectfully submitted,

By: /s/ Bonny E. Sweeney
    Bonny E. Sweeney

*Co-Lead Interim Class Counsel for the
Developer Class and Attorneys for Plaintiff
Peekya App Services, Inc.*


OFFICE OF THE UTAH ATTORNEY GENERAL
    Brendan P. Glackin

Respectfully submitted,

By: /s/ Brendan P. Glackin
    Brendan P. Glackin

*Counsel for Utah*


MORGAN, LEWIS & BOCKIUS LLP
    Brian C. Rocca
    Sujal J. Shah
    Michelle Park Chiu
    Minna L. Naranjo
    Rishi P. Satia

Respectfully submitted,

By: /s/ Brian C. Rocca
    Brian C. Rocca

*Counsel for Defendants Google LLC et al.*

1    O'MELVENY & MYERS LLP
         Daniel M. Petrocelli
2        Ian Simmons
         Benjamin G. Bradshaw
3        Stephen J. McIntyre

4    Respectfully submitted,

5    By: _/s/ Danial M. Petrocelli_
         Daniel M. Petrocelli
6
7        *Counsel for Defendants Google LLC et al.*

8

9    MUNGER, TOLLES & OLSON LLP
         Glenn D. Pomerantz
10       Kyle W. Mach
         Kuruvilla Olasa
11       Justin P. Raphael
         Emily C. Curran-Huberty
12       Jonathan I. Kravis
         Marianna Y. Mao
13

14   Respectfully submitted,

15   By: _/s/ Glenn D. Pomerantz_
         Glenn D. Pomerantz
16
17       *Counsel for Defendants Google LLC et al.*

18

19

20

21

22

23

24

25

26

27

28

---

29

# E-FILING ATTESTATION

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even

30

JOINT CASE MANAGEMENT STATEMENT
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD

**Exhibit A**

| Event | Current Scheduled Date (ECF No. 122) | Proposal |
|---|---|---|
| Plaintiffs' class certification motion with expert reports | January 28, 2022 | Feb 25, 2022 |
| Google's class certification opposition with expert report; Daubert motion (if any)[10] | February 25, 2022 | March 25, 2022 |
| Status conference | March 17, 2022, at 11 a.m. (by remote access) | March 17, 2022, at 11 a.m. (by remote access) |
| Plaintiffs' class certification reply with reply expert report (if any)[11]; Daubert opposition (if any) | March 21, 2022 | April 15, 2022 |
| Plaintiffs' class certification Daubert reply (if any) | March 28, 2022 | April 22, 2022 |
| Fact discovery cut-off | April 4, 2022 | April 4, 2022 |
| Plaintiffs' merits expert reports | April 11, 2022 | May 2, 2022 |
| Class certification hearing and concurrent expert proceeding | April 14, 2022, at 1:30 p.m. | May 5, 2022, at 1:30 p.m. |
| Google's merits expert reports | May 9, 2022 | June 6, 2022 |
| Plaintiffs' merits reply expert reports | June 6, 2022 | July 11, 2022 |
| Status conference | June 16, 2022, at 11 a.m. (by remote access) | June 16, 2022, at 11 a.m. (by remote access) |
| Expert discovery cut-off | June 24, 2022 | July 29, 2022 |
| Last day to file dispositive and Daubert motions | June 30, 2022 | August 4, 2022 |
| Dispositive and Daubert motion responses | July 22, 2022 | August 25, 2022 |
| Dispositive and Daubert motion replies | August 4, 2022 | September 9, 2022 |
| Dispositive motion hearing and concurrent expert proceeding | August 18, 2022, at 1:30 p.m. | September 22, 2022 |
| Serve (but not file) Motions in Limine | September 8, 2022 | September 8, 2022 |

---

[10] Class Plaintiffs have the right to file Daubert motions after receiving Google's class certification expert report. Google and Class Plaintiffs will confer regarding an appropriate schedule for briefing such a motion in advance of the class certification hearing should any Class Plaintiffs elect to file such a motion(s).

[11] Google reserves all objections regarding any class certification reply report. If Class Plaintiffs file such a reply report, and Google determines it needs to seek relief to address it, Google shall file any such request by April 22, 2022, and any response thereto by a Class Plaintiff shall be filed by April 29, 2022.

| Event | Current Scheduled Date (ECF No. 122) | Proposal |
|---|---|---|
| Serve (but not file) opposition to Motions in Limine | September 18, 2022 | September 18, 2022 |
| Pretrial Filings Due Date | September 22, 2022 | September 22, 2022 |
| Pretrial conference | October 6, 2022, at 1:30 p.m. | October 6, 2022, at 1:30 p.m. |
| Trial | October 17, 2022, at 9:00 a.m. | October 17, 2022, at 9:00 a.m. |