1  | Brian C. Rocca, S.B. #221576
   | brian.rocca@morganlewis.com
2  | Sujal J. Shah, S.B. #215230
   | sujal.shah@morganlewis.com
3  | Michelle Park Chiu, S.B. #248421
   | michelle.chiu@morganlewis.com
4  | Minna Lo Naranjo, S.B. #259005
   | minna.naranjo@morganlewis.com
5  | Rishi P. Satia, S.B. #301958
   | rishi.satia@morganlewis.com
6  | **MORGAN, LEWIS & BOCKIUS LLP**
   | One Market, Spear Street Tower
7  | San Francisco, CA 94105
   | Telephone: (415) 442-1000
8  |
   | Richard S. Taffet, *pro hac vice*
9  | richard.taffet@morganlewis.com
   | **MORGAN, LEWIS & BOCKIUS LLP**
10 | 101 Park Avenue
   | New York, NY 10178
11 | Telephone: (212) 309-6000
12 |
   | *Counsel for Defendants Google LLC et al.*
13 |

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

This Document Relates To:

*Epic Games Inc. v. Google LLC et al.*, Case No.
3:20-cv-05671-JD

*In re Google Play Consumer Antitrust
Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*, Case
No. 3:21-cv-05227-JD

*Match Group, LLC et al. v. Google LLC et al.*,
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DEFENDANTS' REPLY TO
PLAINTIFFS' RESPONSES TO
MINUTE ORDER QUESTIONS**

Judge:      Hon. James Donato
Date:       January 31, 2023 at 1:30 p.m.
Courtroom: 11

# TABLE OF CONTENTS

**Page**

I.    GOOGLE ACCURATELY TOLD THE COURT THAT IT TOOK APPROPRIATE STEPS TO PRESERVE RELEVANT EVIDENCE ................................2

II.   PLAINTIFFS' PROPOSED SANCTIONS WOULD INVITE THE JURY TO DECIDE THIS CASE ON THE BASIS OF SANCTIONS RATHER THAN THE MERITS .................................................................................................................4

    A.    Plaintiffs' Proposed Sanctions Vastly Exceed Any Possible Prejudice ...................5

        1.    Plaintiffs Fail to Identify Any Prejudice from Lost Chats ............................5

        2.    Minimal or No Prejudice Warrants Less Severe Sanctions ...........................6

    B.    Plaintiffs Are Not Entitled to an Adverse Inference ..................................................7

    C.    Plaintiffs' Request to Preclude Google from Establishing a Defense Based on Lack of Evidence Lacks Authority and Is Overbroad ...........................................8

III.  GOOGLE'S STATEMENTS ABOUT THE FUNCTIONALITY OF GOOGLE CHAT AND ITS LEGAL HOLD TOOL WERE ACCURATE............................................9

    A.    Google's Statements in the November 11, 2021 Letter Were Accurate ...................9

    B.    Google's Statements in the December 9, 2021 Statement Were Accurate .............10

-i-

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSES TO MINUTE ORDER QUESTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

**FEDERAL CASES**

5

*Chinitz v. Intero Real Est. Servs.*,
    No. 18-cv-05623-BLF, 2020 WL 7389417 (N.D. Cal. May 13, 2020) ......................................7

6

7

*Function Media, L.L.C. v. Google, Inc.*,
    No. 2:07-cv-279-CE, 2011 WL 4017953 (E.D. Tex. Sept. 9, 2011) ...........................................3

8

*Goonewardena v. N.Y. Workers Comp. Bd.*,
    258 F. Supp. 3d 326 (S.D.N.Y. 2017)......................................................................................6

9

10

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (S.D.N.Y. 2022)..........................................................................................6, 8

11

12

*Leon v. IDX Sys. Corp.*
    464 F.3d 951 (9th Cir. 2006).....................................................................................................5

13

*Matthew Enter., Inc. v. Chrysler Grp. LLC*
    No. 13-cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) .....................................5

14

15

*Meta Platforms, Inc. v. BrandTotal Ltd,*
    No. 20-cv-07182-JCS, 2022 WL 1990225 (N.D. Cal. June 6, 2022) ....................................7, 8

16

**FEDERAL RULES**

17

Fed. R. Civ. P. 37 .................................................................................................... passim

18

19

20

21

22

23

24

25

26

27

28

Google and Plaintiffs sharply disagree as to whether Google's long-standing approach to chat preservation—automatically preserving history "on" chats and providing written instructions and reminders to custodians regarding the use and preservation of history "off" chats—is reasonable. If the Court concludes that Plaintiffs are right and that Google got it wrong, then the remedy must be limited to addressing the actual prejudice shown by Plaintiffs, if any. *See* Fed. R. Civ. P 37(e)(1). As the Court advised the parties, any "proposed remedies must be specific and proportionate." Civil Minutes at 2, MDL ECF No. 415.

So what actual prejudice is at issue? Plaintiffs do not, and could not, claim that they were prejudiced by the loss of any chats sent before August 2020, when Epic filed the first Complaint in these actions. Nor do they argue that this issue affected the tens of thousands of non-chat documents produced by Google that post-date August 2020 or the millions that pre-date August 2020.

Rather, any conceivable prejudice here is confined to the *post-August 2020* chats of *21 Google custodians*. *See* Google's Responses to the Court's Questions Regarding Preservation of Chat Messages at 5-8 ("Google's Responses"), MDL ECF No. 429. And even then, any conceivable prejudice extends only to a subset of chats, because "threaded" chats are automatically preserved and only "non-threaded" chats require the custodian to turn history "on" for preservation to occur.[1] Even as to these non-threaded chats, the only ones at issue are relevant chats, if any, that the custodian participated in (contrary to Google's instructions) and for which no participant turned history "on" (also contrary to Google's instructions). Moreover, the prejudice from the loss, if any, of post-August 2020 chats is necessarily limited because the core conduct challenged by Plaintiffs relates to business or product design decisions that were taken years before Plaintiffs filed their complaints.

---

[1] Google automatically (with no user action required) preserves the chat threads within threaded rooms/spaces in which an employee on legal hold participates. *See* Declaration of Gregory Johnson ("Johnson Decl.") ¶ 8, MDL ECF No. 429-3. Plaintiffs concede that threaded rooms are not at issue. *See* Plaintiffs' Responses to Minute Order Questions ("Plaintiffs' Responses") at 1 n.1, 12, MDL ECF No. 428.

Despite the narrow range of prejudice that could potentially warrant a remedy, Plaintiffs have sought draconian and disproportionate sanctions: (1) an adverse inference jury instruction and (2) precluding Google from arguing that there is "no evidence" with respect to "*any* of Plaintiffs' claims or factual allegations." Plaintiffs' Responses at 12 (emphasis added). As discussed in Google's prior brief and below, these remedies are not available here as a matter of law because, whatever the Court decides about the reasonableness of Google's practices, Google did not act with the "intent to deprive" Plaintiffs of evidence, and such remedies would, in any event, be disproportionate to any finding of wrongdoing.

Finally, Plaintiffs argue that Google was not transparent with Plaintiffs and the Court regarding its approach to chat preservation. As discussed below, Google contends that it took reasonable steps to preserve chat messages. If the Court ultimately disagrees after this hearing, that does not render false Google's earlier statement that it was taking appropriate steps to preserve evidence. And when Plaintiffs raised concerns about Google's preservation of chats, Google disclosed—as Plaintiffs admit—that history "off" chats are not automatically preserved.

Google submits that this case, which affects the design of a product used by millions of consumers, thousands of developers, and numerous smartphone manufacturers, should be decided on the merits. If the Court concludes that Google erred in its approach to chat preservation, it should issue a tailored remedy to address any actual prejudice shown by Plaintiffs. But the Court should reject Plaintiffs' invitation to drastically tilt the scales in their favor.

I. **GOOGLE ACCURATELY TOLD THE COURT THAT IT TOOK APPROPRIATE STEPS TO PRESERVE RELEVANT EVIDENCE**

Plaintiffs' contention that Google improperly told the Court on October 1, 2020, that it took "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action" ignores the steps that Google took to preserve relevant evidence.

Google's October 1, 2020 statement was accurate. By that date, Google had already taken appropriate steps to preserve relevant evidence, including chats. *See* Google's Responses at 2-3. Some of these steps were technical measures: Google implemented a back-end legal hold that automatically preserved all emails, history "on" chats, and other documents. As is common in civil

-2-

litigation, another step included issuing legal hold notices to potential custodians. Specifically, with respect to chats, Google issued a hold notice instructing recipients not to use Google Chat to discuss topics listed in the hold notice or to turn history "on" for any such discussions. *See* Declaration of Brian C. Rocca ("Rocca Decl.") ¶¶ 8-9, MDL ECF No. 429-1; Johnson Decl. ¶¶ 4-6.

Google's statement that it took "appropriate steps" to preserve evidence is consistent with the 2015 amendments to Rule 37, which was intended to address a trend of "litigants [] expend[ing] excessive effort and money on preservation in order to avoid the risk of severe sanctions" and emphasizes the principles of reasonableness and proportionality in deploying preservation efforts. *See Fed*. R. Civ. P. 37 advisory committee's note to 2015 amendment ("This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection.").

Plaintiffs claim that Google's statement that it took "appropriate steps" was inaccurate because it was unreasonable for Google to rely on its custodians to preserve relevant chats by turning history "on." But that ignores that Google *also* instructed its custodians *not* to use Google Chats for such discussions and preserved all history "on" and threaded chats. Plaintiffs have not identified authority establishing that the only appropriate way to preserve chat messages is through automatic, technological preservation.[2] To the contrary, the Court in *Function Media, L.L.C. v. Google, Inc*., denied a request for a spoliation instruction based on Google's decision, after litigation began, to "suspend the practice of saving all instant messages." No. 2:07-cv-279-CE, 2011 WL 4017953, at *3 (E.D. Tex. Sept. 9, 2011), *aff'd*, 708 F.3d 1310 (Fed. Cir. 2013). The court found that no spoliation instruction was necessary because Google instructed employees "to change the setting for instant messages to 'on the record' (or saved) for communications that involved matter[s] subject to a litigation hold" and implemented a litigation hold. *Id.*

---

[2] Plaintiffs incorrectly claim that if history is turned "off" "there is no way for the recipient to preserve that message within the Google Chat program." Plaintiffs' Responses at 4. As Mr. Lopez testified, the Google Chat product includes a "Forward to Inbox" feature that allows an individual to save messages for longer-term archiving. 1/12/23 Hr'g Tr. at 30:3-6 (Lopez).

1    At a minimum, even if the Court were to ultimately conclude that Google's chat

2 preservation steps were not appropriate, that conclusion would not mean that Google falsely stated

3 that it was taking appropriate steps. Google's approach to chat preservation predates this litigation

4 by at least five years, *see* Johnson Decl. ¶¶ 8-9, and Google is not aware of any court that has held

5 that Google's approach or any similar approach to chat preservation is inadequate.

6  **II.    PLAINTIFFS' PROPOSED SANCTIONS WOULD INVITE THE JURY TO
        DECIDE THIS CASE ON THE BASIS OF SANCTIONS RATHER THAN THE
7       MERITS**

8    Plaintiffs' submission makes clear that the jury would be invited to decide Plaintiffs'

9 claims on the basis of sanctions rather than the merits. Plaintiffs' request that the Court issue an

10 adverse inference instruction to the jury *and* order that Google "be precluded from arguing that

11 there is 'no evidence' of *any* of Plaintiffs' claims or factual allegations" would relieve Plaintiffs of

12 the burden of proving the merits of their claims and invite the jury to find for Plaintiffs based on

13 potentially lost chats from a small group of custodians during a narrow time period. Plaintiffs'

14 Responses at 8, 12 (emphasis added). As the Court observed, "this is a sizable, important,

15 complicated antitrust case" and the jury should not be given an "invitation . . . to decide it all on

16 the basis of missing chats." 1/12/23 Hr'g Tr. at 134:20-22.

17    The severe sanctions Plaintiffs propose are unwarranted here for three reasons: *First*, none

18 of Plaintiffs' proposed sanctions are sufficiently tailored to "fit the wrong" because the prejudice

19 to Plaintiffs, if any, is at most minimal. *Second*, Plaintiffs misstate both the facts and the law in

20 asserting that Google acted with the intent to deprive Plaintiffs of information for use in this

21 litigation and cannot show that the loss of any post-Complaint chats was intentional, rather than at

22 most negligent or grossly negligent. *Third*, Plaintiffs' proposal to bar Google from asserting that

23 Plaintiffs lack evidence on "any of Plaintiffs' claims or factual allegations" cannot be issued

24 absent a finding of intent to deprive, lacks any authority, and would violate Google's due process

25 rights by imposing a sanction on claims and facts wholly unaffected by allegedly lost post-

26 Complaint chats from a subset of custodians.

27

28

### A.   Plaintiffs' Proposed Sanctions Vastly Exceed Any Possible Prejudice

Rule 37 authorizes sanctions "no greater than necessary to cure the prejudice," Fed. R. Civ. P. 37(e)(1), from loss of ESI caused by negligent or grossly negligent conduct. Even if the loss was the result of a party's intent to deprive others of relevant evidence, the "remedy should fit the wrong" and severe sanctions should not be ordered when "lesser measures . . . would be sufficient to redress the loss." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment; *see also* Google's Responses at 4-5, MDL ECF No. 429. Plaintiffs' proposed sanctions vastly exceed the outer bounds of an appropriate remedy in this case because Plaintiffs do not demonstrate any actual prejudice to their ability to litigate their claims on the merits. The record shows that Plaintiffs have extensive evidence to litigate their claims and they have, at most, been minimally prejudiced by any loss of chats post-dating Epic's August 2020 Complaint from a limited number of custodians. *See* Google's Responses at 5-8.

#### 1.   Plaintiffs Fail to Identify Any Prejudice from Lost Chats

The "prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (alterations and internal quotation marks omitted). But Plaintiffs do not identify any prejudice—a word that does not appear once in their submission—to their ability to litigate this case on the merits or go to trial and instead speculate that lost "[c]hats undoubtedly relate to issues of critical importance to the case." Plaintiffs' Responses at 11. Relevance alone is insufficient to establish prejudice. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016) (denying sanctions for lost emails where moving party failed to show prejudice). Nor do Plaintiffs identify any issue on which they lack sufficient evidence to litigate their claims on the merits. *See also* Google's Responses at 5-8.

Plaintiffs speculate that they have lost evidence relevant to the "heart of Plaintiffs' damages and tying theories" by pointing to post-Complaint developments relating to the service fees charged to developers and Google's "User Choice Billing" program. Plaintiffs' Responses at 11. Not so. Plaintiffs' damages, if any, will be proven based on the actual service fees that Google

-5-

charges to app developers, what consumers actually pay to those developers, and whether any reductions in fees are actually passed on to consumers. That evidence is in the 13 terabytes of data that Google has produced to Plaintiffs and that their expert reports have relied on to advance Plaintiffs' damages theories. Plaintiffs do not explain how internal chats among Google employees could add anything to that data, nor have any of Plaintiffs' experts claimed to be unable to opine on damages because of missing chats. Similarly, Plaintiffs' tying claims are based on product design decisions that predate Epic's Complaint by many years. *See, e.g.*, Match Plaintiffs' FAC ¶ 197, MDL ECF No. 380 (alleging that "Google's efforts to force app developers to use Google Play Billing dates to at least 2013"). Plaintiffs do not explain how post-Complaint chats would meaningfully impact the analysis given the millions of documents—including thousands of chats—that Google has produced.

### 2. Minimal or No Prejudice Warrants Less Severe Sanctions

Because Plaintiffs can show "very little, if any, prejudice," the "'extreme sanctions' of preclusion or an adverse inference" are not appropriate. *Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 348 (S.D.N.Y. 2017), *aff'd*, 788 F. App'x 779 (2d Cir. 2019). This is "not . . . a case in which Plaintiffs are bereft of evidence to support their claims." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 508 (S.D.N.Y. 2022) (denying adverse inference sanction).

In the event Plaintiffs are found to have demonstrated any prejudice, the more appropriate remedies proposed by Google could be narrowly tailored to cure that prejudice. For example, if Plaintiffs show prejudice from the lack of "candid" post-Complaint chats (as they claim), Google's proposal to produce retained chats from other custodians is tailored to that specific prejudice and would advance, rather than impede, resolution of this case on the merits. *See* Google's Responses at 9.

Plaintiffs themselves recognized that production of chats from other custodians would substantially cure any possible prejudice. In October 2021, after Google clarified that history "off" chats are not automatically preserved, Plaintiffs explained that, had they known that earlier, they "would have requested that Google collect instant messages for all custodians throughout the

extended collection period." MDL ECF No. 429-1 at 120. In other words, Plaintiffs recognized

that an appropriate remedy for the loss of some post-Complaint chats is to search for more post-

Complaint chats. Plaintiffs do not explain why the remedy they proposed is now insufficient.

### B.   Plaintiffs Are Not Entitled to an Adverse Inference

Plaintiffs misread *Meta Platforms, Inc. v. BrandTotal Ltd.* as standing for the proposition

that "[a] court may order an adverse inference instruction," Plaintiffs' Responses at 9, if it finds

that a party has control over the evidence, an obligation to preserve, and "that the records were

destroyed with a 'culpable state of mind.'" No. 20-cv-07182-JCS, 2022 WL 1990225, at *5 (N.D.

Cal. June 6, 2022). *BrandTotal* does not say that.

*First*, as *BrandTotal* itself makes clear, the three-part test described by Judge Spero is used

"to *determine whether spoliation occurred*"—not to determine whether to impose an adverse

inference instruction under Rule 37. *See BrandTotal*, 2022 WL 1990225, at *5 (emphasis added).

Rule 37(e)(2) makes crystal clear that, with respect to ESI, an adverse inference instruction is

available "only upon finding that the party acted with the intent to deprive another party of the

information's use in the litigation." Fed. R. Civ. P. 37(e)(2); Google's Responses at 10-11.

*Second*, the portion of *BrandTotal* quoted by Plaintiffs describes the Court's "inherent

authority" to sanction spoliation. But Rule 37 "forecloses reliance on inherent authority" to

sanction parties for the loss of ESI. Fed. R. Civ. P. 37 advisory committee's note to 2015

amendment; *see also Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7389417,

at *4 (N.D. Cal. May 13, 2020) (the court "does not have the inherent authority to impose adverse

inference instructions because the evidence in question . . . consists of ESI").

Properly evaluated under an "intent to deprive" standard, Plaintiffs' claim that "Google

knowingly and intentionally chose to violate its discovery obligations" is not supported by the full

record before the Court. Plaintiffs' Responses at 10. That record shows the opposite: Google took

multiple steps to preserve relevant chats rather than attempting to intentionally destroy them.

These steps included implementing a "back end" hold to preserve "history-on chats"; distributing

legal hold notices to 383 employees; sending "repeated emails" reminding employees of the hold;

and "[i]n almost every such reminder," emphasizing the importance of retaining chats by

-7-

instructing employees to take steps to "preserve them." Johnson Decl. ¶¶ 4-5. These actions are entirely inconsistent with an intent to deprive Plaintiffs of chats.[3] Nor does Plaintiffs' passing reliance on a training that no custodian in this case has testified to having seen establish an intent to destroy. *See* 1/12/23 Hr'g Tr. at 101:18-19 (Rosenberg) ("This is not – this is the not [*sic*] training that I remember"); PX-120, MDL ECF No. 414-13. While the Court may disagree with the reasonableness of Google's approach, a defendant that "sloppily implemented [its] litigation hold by not following up with certain of its custodians sooner to make sure that net was capturing what was required" acts negligently, not with an intent to deprive. *Keurig*, 341 F.R.D. at 521.

**C.**     **<u>Plaintiffs' Request to Preclude Google from Establishing a Defense Based on Lack of Evidence Lacks Authority and Is Overbroad</u>**

Plaintiffs ask the Court, without citing any authority, to order that Google "be precluded from arguing that there is 'no evidence' of any of Plaintiffs' claims or factual allegations." Plaintiffs' Responses at 12. As Google explained in its post-hearing brief, that request should be denied because it is unavailable here, would violate Google's due process rights, and is not proportionate to any possible prejudice in light of the voluminous production available to Plaintiffs. *See* Google's Responses at 12-14. In addition, Plaintiffs fail to cite any authority to support their proposed order, Plaintiffs' Responses at 12, and the remedy is far too broad because it would constrain Google's defense as to conduct unaffected by post-Complaint chats.

Plaintiffs' proposal to preclude Google from asserting that "any" claim or fact in the case advanced by Plaintiffs lacks evidence would prevent Google from explaining to the jury that Plaintiffs lack evidence of factual allegations or claims arising out of conduct before Google had an obligation to preserve chats. The parties agree that *only* chats post-dating August 13, 2020 are relevant to Plaintiffs' sanctions motion. *See* Plaintiffs' Responses at 3, 8. Plaintiffs speculate only

---

[3] In fact, *BrandTotal* supports the conclusion that Google's preservation efforts were at most negligent. The defendant in *BrandTotal* "negligently failed to take steps to counteract the automatic deletion" of certain databases and "affirmatively acted to alter its programs to cease collecting" some relevant data. *BrandTotal Ltd.*, 2022 WL 1990225, at *6. The court denied the plaintiff's request for an adverse inference instruction because it had not shown intentional destruction "to be the most likely explanation for the ongoing automatic deletion." *Id.*

that they may have lost access to helpful post-Complaint chats without explaining how any

conduct before August 2020 could have been affected by the loss of those chats. *See id.* at 11. But

as Google explains above and in its prior brief, regardless of the time period, an order limiting

Google's defense based on Plaintiffs' lack of evidence would be disproportionate in light of

extensive discovery on every important issue in the case and the, at most, minimal prejudice to

Plaintiffs. *See* Google's Responses at 12-14.

## III.   <u>GOOGLE'S STATEMENTS ABOUT THE FUNCTIONALITY OF GOOGLE CHAT AND ITS LEGAL HOLD TOOL WERE ACCURATE</u>

Plaintiffs claim that certain statements made by Google in a November 11, 2021 letter to

Plaintiffs and the December 9, 2021 Joint Case Management Statement were false. That is wrong.

Google accurately described the technological functionality of its internal tools and plainly

disclosed to Plaintiffs that history "off" chats were not subject to an automatic hold. Plaintiffs also

do not explain how Google's statements prejudiced them, particularly in light of the fact that they

acknowledge that Google informed them in October 2021, before any depositions began, that it

does not automatically preserve history "off" chats. *See* Plaintiffs' Responses at 6.

### A.   <u>Google's Statements in the November 11, 2021 Letter Were Accurate</u>

Google's November 11, 2021 letter responded to Plaintiffs' question, in an October 29,

2021, letter regarding "[t]he step-by-step technological processes required to be taken by

individuals who received litigation hold notices to preserve instant messages." MDL ECF No.

429-1 at 119. In describing that process, Google noted that it "does not have the ability to change

default settings for individual custodians with respect to the chat history setting. See Exhibit B,

Google Workspace Admin Help page re: chat history." *Id.* at 135. This statement was accurate.

*See* Declaration of Genaro Lopez ("Lopez Decl.") ¶¶ 2-3. The Google Chat product and Vault—

Google's legal hold tool—do not have functionality that allows Google to control default history

settings on an individual-by-individual basis. *Id.* ¶ 3. The publicly available help page regarding

chat history and the Vault product that Google cited in and attached to its letter explained that chat

history can be set at the group level. *See* MDL ECF No. 429-1 at 145 (describing how to set chat

history for an "organizational unit"). Although it is possible to work around the limitations of the

-9-

1  Google Chat product by creating groups, such as organizational units, and changing the chat

2  settings for those groups, those potential solutions have their own limitations and drawbacks. *See*

3  Lopez Decl. ¶ 4.

4         This is confirmed by Mr. Lopez's testimony. Mr. Lopez did not testify that Google could

5  change default settings for individual custodians or that it was possible to set defaults on a

6  custodian-by-custodian basis. Rather, he acknowledged that it is possible "to set 'History on' as

7  the default for all employees on legal hold," 1/12/23 Hr'g Tr. at 43:22-24, and he explained that

8  this would occur at a group level. *See id.* at 48:21-49:2. Mr. Lopez further testified that Google has

9  not taken this approach for logistical and technical reasons. *See id.* at 49:8-16, 60:17-22.

10        **B.**    <u>**Google's Statements in the December 9, 2021 Statement Were Accurate**</u>

11         Google's statement in the December 9, 2021 Joint Case Management Statement that it had

12  employed "all available preservation methods via its legal hold tool, and active management by

13  legal counsel at every step of the process" was accurate. MDL ECF No. 159 at 10. There is no

14  dispute that Google's "back-end hold" automatically preserves documents including history "on"

15  chats. Johnson Decl. ¶ 4. But Google's legal hold tool, Vault, is not able to collect or retain history

16  "off" chats—preserving history "off" chats is therefore not an "available preservation method via

17  its legal hold tool." Google disclosed that fact to Plaintiffs, attaching a copy of publicly available

18  information about Vault to the November 11, 2021 letter.[4] That attachment states: "If you turn

19  history [o]ff, messages are deleted after 24 hours. *Vault can't hold, retain, or search direct*

20  *messages that are sent with history turned off.*" MDL ECF No. 429-1 at 145 (emphasis added).

21  Nor do Plaintiffs contend that Vault can preserve history "off" chats. Indeed, this entire dispute is

22  about what steps Google should have taken in light of Vault's technical limitation. Google has

23  also actively managed the legal hold process, including with respect to chats. *See* Johnson Decl.

24  ¶¶ 4-6 (explaining instructions and reminders to custodians related to chat preservation).

25

26

27  _____

[4] "Turn chat history on or off for users," Google Workspace Admin Help,

28  https://support.google.com/a/answer/7664184?hl=en (last accessed Jan. 27, 2023).

1    DATED: January 27, 2023          Respectfully submitted,

2

3
                                      By:      /s/ *Glenn D. Pomerantz*
4                                            Glenn D. Pomerantz

5                                            Glenn D. Pomerantz, S.B. #112503
                                             glenn.pomerantz@mto.com
6                                            Kuruvilla Olasa, S.B. #281509
                                             kuruvilla.olasa@mto.com
7                                            Nicholas R. Sidney, S.B. #308080
                                             nick.sidney@mto.com
8                                            **MUNGER, TOLLES & OLSON LLP**
9                                            350 South Grand Avenue, Fiftieth Floor
                                             Los Angeles, California 90071
10                                           Telephone: (213) 683-9100

11
                                             Kyle W. Mach, S.B. #282090
12                                           kyle.mach@mto.com
                                             Justin P. Raphael, S.B. #292380
13                                           justin.raphael@mto.com
                                             Emily C. Curran-Huberty, S.B. #293065
14                                           emily.curran-huberty@mto.com
                                             Dane P. Shikman, S.B. #313656
15                                           dane.shikman@mto.com
16                                           **MUNGER TOLLES & OLSON LLP**
                                             560 Mission St., Suite 2700
17                                           San Francisco, CA 94105
                                             Telephone: (415) 512-4000
18                                           Facsimile: (415) 512-4077

19
                                             Jonathan I. Kravis, *pro hac vice*
20                                           jonathan.kravis@mto.com
                                             **MUNGER, TOLLES & OLSON LLP**
21                                           601 Massachusetts Avenue NW, Suite 500E
                                             Washington, D.C. 20001
22                                           Telephone: (202) 220-1100

23

24

25

26

27

28

1                          Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com

2                          Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com

3                          Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com

4                          Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com

5                          Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com

6                          **MORGAN, LEWIS & BOCKIUS LLP**

7                          One Market, Spear Street Tower
San Francisco, CA 94105

8                          Telephone: (415) 442-1000
Facsimile: (415) 422-1001

9

10                       Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com

11                       **MORGAN, LEWIS & BOCKIUS LLP**

12                       101 Park Avenue
New York, NY 10178

13                       Telephone: (212) 309-6000
Facsimile: (212) 309-6001

14

15                       *Counsel for Defendants Google LLC et al.*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSES TO MINUTE ORDER QUESTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD