** H I G H L Y   C O N F I D E N T I A L **

UNITED STATES DISTRICT COURT

      FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

      Case No. 3:21-md-02981-JD

-----------------------------------x

      IN RE GOOGLE PLAY STORE

ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

      Epic Games Inc. v. Google LLC, et al.,

Case No: 3:20-cv-05671-JD

In re Google Play Consumer

      Antitrust Litigation,

Case No: 3:20-cv-05761-JD

In re Google Play Developer

      Litigation,

Case No: 3:20-cv-05792-JD

State of Utah, et al.,

      v. Google LLC, et al.,

Case No: 3:21-cv-05227-JD

Match Group, LLC, et al.,

      v. Google LLC, et al.,

Case No. 3:22-cv-02746-JD

      -----------------------------------x

          January 12, 2023

            10:05 a.m.


    Videotaped Deposition of TIAN LIM,

pursuant to Notice, held via Zoom

videoconference, before Todd DeSimone, a

Registered Professional Reporter and Notary

Public.

```
A P P E A R A N C E S:
Counsel for Plaintiff Epic Games, Inc. in:
        Epic Games, Inc. v Google LLC, et al:


        CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
        New York, New York 10019
BY:  LAUREN MOSKOWITZ, ESQ.
                lmoskowitz@cravath.com
        DANIEL OTTAUNICK, ESQ.
                dottaunick@cravath.com
        COLLEEN KOZIKOWSKI, ESQ.
                cmkozikowski@cravath.com



        Counsel for the Proposed Class In re:
Google Play Consumer Antitrust Litigation:
BARLIT BECK LLP
        Courthouse Place
54 West Hubbard Street
        Chicago, Illinois 60654
BY:  KARMA GIULIANELLI, ESQ.
                karma.giulianelli@bartlitbeck.com
        GLEN SUMMERS, ESQ.
                glen.summers@bartlitbeck.com



KAPLAN FOX & KILSHEIMER LLP
        850 Third Avenue
14th Floor
        New York, New York 10022
BY:  HAE SUNG NAM, ESQ.
                hnam@kaplanfox.com
        AARON L. SCHWARTZ, ESQ.
                aschwartz@kaplanfox.com
```

```
A P P E A R A N C E S: (Continued)
Counsel for Plaintiff States:
OFFICE OF THE UTAH ATTORNEY GENERAL
        111 South Main Street
Suite 1800
        Salt Lake City, Utah 84111
BY:  LAUREN WEINSTEIN, ESQ.
             lweinstein@agutah.gov


Counsel for Plaintiffs Match Group, LLC,
        Humor Rainbow, Inc., PlentyofFish Media
LLC, People Media, Inc.
HUESTON HENNIGAN LLP
        523 West 6th Street
Suite 400
        Los Angeles, California 90014
BY:  JULIA HAINES, ESQ.
             jhaines@hueston.com


        Counsel for Google LLC, et al:


        MORGAN LEWIS & BOCKIUS LLP
One Market
        Spear Street Tower
28th Floor
        San Francisco, California 94105
BY:  MICHELLE PARK CHIU, ESQ.
             michelle.chiu@morganlewis.com
        NICHOLAS PFEIFFER, ESQ.
             cole.pfeiffer@morganlewis.com
```

A P P E A R A N C E S: (Continued)

ALSO PRESENT:

KATE SMITH, Google

KATHLYN QUERUBIN, Google

STEPHEN MYERS, Match

JESSICA REID, Videographer

MADELYN GRANGER, Concierge Tech

Page 5

1     T. LIM - HIGHLY CONFIDENTIAL

2          THE VIDEOGRAPHER: Good morning.

3     We are going on the record at 10:05

4     a.m. Pacific standard time on Thursday,

5     January 12th, 2023.

6          Please note that this

7     deposition is being recorded virtually.

8     Quality of recording depends on the

9     quality of camera and internet

10    connection of participants.  What is

11    seen from the witness and heard on

12    screen is what will be recorded.  Audio

13    and video recording will continue to

14    take place unless all parties agree to

15    go off the record.

16          This is media unit one of the

17    video-recorded deposition of Tian Lim

18    in the matter of In Re Google Play

19    Store Antitrust Litigation filed in the

20    United States District Court for the

21    Northern District of California, San

22    Francisco Division, case number

23    3:21-MD-02981-JD.  This deposition is

24    being conducted remotely using virtual

25    technology.

1     T. LIM - HIGHLY CONFIDENTIAL

2          My name is Jessica Reid

3     representing Veritext Legal Solutions

4     and I am the videographer.  The court

5     reporter is Todd DeSimone also from the

6     firm Veritext Legal Solutions.  I am

7     not authorized to administer an oath, I

8     am not related to any party in this

9     action, nor am I financially interested

10     in the outcome.

11          Appearances will be noted on

12     the stenographic record.  So at this

13     time could the court reporter please

14     swear in the witness and counsel may

15     proceed.

16          *   *   *

17     T I A N   L I M,

18     called as a witness, having been first

19     duly sworn, was examined and testified

20     as follows:

21     EXAMINATION BY MS. CHIU:

22     Q.     Good morning.  Could you please

23     state your name for the record.

24     A.     Tian Fung Lim.

25     Q.     Mr. Lim, are you currently

1    T. LIM - HIGHLY CONFIDENTIAL

2    employed at Google?

3    A.    I am not.

4    Q.    When was your last day?

5    A.    January 9th, 2023.

6    Q.    And how long were you employed

7    at Google?

8    A.    About five years and three

9    months.

10    Q.    So, Mr. Lim, your deposition is

11    obviously being conducted remotely today.

12    Can you tell us where you are located right

13    now?

14    A.    I am vacationing in Arizona

15    near the Grand Canyon.

16    Q.    And when did you first decide

17    to go on this trip?

18    A.    Probably early December when I

19    first got the car I wanted to take on this

20    road trip.

21    Q.    And when did you leave to go to

22    Arizona?

23    A.    The 6th of January 2023.

24    Q.    Mr. Lim, thank you for taking

25    time out of your vacation to appear

Page 8

1       T. LIM - HIGHLY CONFIDENTIAL

2    remotely for this proceeding today.  You

3    were previously deposed in this litigation;

4    is that right?

5       A.    That's correct.

6       Q.    And are you aware that your

7    deposition this morning is in connection

8    with a hearing regarding Google's Chat

9    message preservation?

10      A.    I am.

11      Q.    Now, at your prior deposition

12   in this case you were asked questions about

13   your use of Google Chat during your

14   employment at Google, right?

15      A.    That's right.

16      Q.    So I'm going to ask you some

17   additional questions about chat today.  My

18   first one being, Mr. Lim, did you use

19   Google Chat during your tenure as a Google

20   employee?

21      A.    I did.

22      Q.    And how frequently did you use

23   chat?

24      A.    I would say probably every

25   working day.

Page 9

1    T. LIM - HIGHLY CONFIDENTIAL

2        Q.     And what were the kinds of

3    communications that you used chats for?

4        A.     A lot of it was logistical,

5    what is coming up in this next meeting, who

6    is attending, those sorts of things.

7    Occasionally there were some more

8    substantive conversations.

9        Q.     Did you typically use chat as a

10   forum for discussing substantive

11   communications about your work?

12       A.     I generally strongly disliked

13   using chat for substantive discussions.  It

14   was extremely hard to manage open issues,

15   track alignment, track what the open issues

16   are, and so I very much preferred moving

17   those conversations to a format that was

18   more conducive to driving alignment,

19   getting all the disparate viewpoints in a

20   structured way, such as documents or slide

21   decks.

22       Q.     And what other tools, if any,

23   did you use to discuss business issues or

24   make decisions as you were just describing,

25   in addition to Google Docs?

1     T. LIM - HIGHLY CONFIDENTIAL

2     A.     I think Google Docs is the

3   primary way in which things happened.

4   Occasionally there would be some e-mail

5   threads.  But those e-mail threads I think

6   also suffered from similar issues as chat.

7     Q.     Now, Mr. Lim, during your

8   employment at Google, did you ever have

9   substantive business communications via

10  chat?

11    A.     I probably did.

12    Q.     And what, if anything, did you

13  do with information that you might have

14  received that you thought was substantive

15  or important that you received via chat?

16    A.     If it was substantive referring

17  to me, I might cut and paste it into my

18  private notes doc.  If it was pertaining to

19  a project or decision or something else, I

20  would generally move those -- move that

21  information into a document or e-mail where

22  it could be more efficiently and

23  effectively followed up on.

24    Q.     And why did you move that

25  information into those formats?

1      T. LIM - HIGHLY CONFIDENTIAL

2      A.     It is just much easier to keep

3    track of open issues.  If something was

4    like, for example, a substantive

5    conversation was about feedback on a

6    project, it does no good for that feedback

7    to just sit in chat.  It is much more

8    useful to type that feedback into a comment

9    on the project doc or e-mail that feedback

10     directly to the project stakeholders to

11     make sure it actually gets actioned.

12      Q.     Were there any other reasons

13    that you moved information out of chat into

14    other formats?

15      A.     Personal reference, things that

16    I would need to refer to for my own needs.

17      Q.     So I'm going to introduce a

18    document.  If we could upload PXCH 98.

19          (Exhibit PXCH 98 marked for

20    identification.)

21      Q.     Mr. Lim, you should be able to

22    refresh your screen in a few minutes and

23    see that file appear.

24      A.    I'm still waiting for it.

25      Q.     It should be coming up in a

1      T. LIM - HIGHLY CONFIDENTIAL

2    couple of seconds.

3      A.    Okay, I have it open.

4      Q.    So PXCH 98 is a document

5    produced in this litigation by Google

6    bearing Bates number GOOG-PLAY-004145883.

7    It is dated January 19th, 2021.

8         Mr. Lim, I will just represent

9    to you that this is a chat that was

10   produced by Google.  Is that what it

11   appears to be to you?

12     A.    That's what it appears to be.

13     Q.    And the participants on this

14   chat communication are Ms. Purnima

15   Kochikar, yourself, Mr. Alexi Douvas,

16   Mr. Doug Lucas and Mr. Mike Hochberg; is

17   that right?

18     A.    That's correct.

19     Q.    And do you recall this chat

20   communication?

21     A.    Vaguely.

22     Q.    Could you provide us your

23   recollection of what you are discussing or

24   is being discussed in this chat?

25     A.    I believe Purnima had started

Page 13

1      T. LIM - HIGHLY CONFIDENTIAL

2    this sidebar conversation while we were all

3    in a meeting reviewing our Runway project

4    plan and she had some thoughts that she had

5    been thinking about and I think wanted to

6    get some feedback on.

7        Q.    And the chat appears to have

8    about six messages from Ms. Kochikar.  At

9    the very end of the chat is a message from

10   you.  Do you see that?

11       A.    I do.

12       Q.    Could you read aloud what your

13   chat message says?

14       A.    I said "what does the opposite

15   of what?  Sorry not quite sure I grok your

16   point."

17       Q.    And maybe to explain to others

18   like myself who don't know tech lingo, what

19   does "grok" mean?

20       A.    In this context it means

21   understand.

22    Q.    And so what did you mean by

23   your chat?

24    A.    So reading off this, what's

25   here, the first three messages from Purnima

1       T. LIM - HIGHLY CONFIDENTIAL

2    are somewhat understandable.  The first one

3    is she wants to start a sidebar

4    conversation.  The second one is she is

5    responding to a conversation that Mike

6    made.  The third one, she is stating some

7    concerns that she has expressed many times

8    to the team before and actually we all

9    share, and she is just stating that as an

10    example of the sort of thing that she is

11    concerned about.  Then there are three more

12    messages that I personally just didn't

13    understand, hence my response.

14       Q.    And so you were indicating to

15    Ms. Kochikar that you didn't understand

16    what she was communicating in that chat; is

17    that right?

18       A.    That's correct.

19       Q.    Now, do you believe that

20    Ms. Kochikar's opinions, to the extent you

21    understood them in this chat, appear or are

22    reflected in other Google documents?

23           MS. MOSKOWITZ:  Objection.

24       A.    That's correct.  Specifically I

25    think the concern that she mentions in the

1    T. LIM - HIGHLY CONFIDENTIAL

2    third message, that's something that she

3    repeated many times over.  The project team

4    had probably heard it many times over.  It

5    was probably integrated into our artifacts.

6        Q.    So I would like to show you

7    another exhibit, Mr. Lim.  If I could ask

8    that DXCH 72 be uploaded into Exhibit

9    Share.

10        (Exhibit DXCH 72 marked for

11    identification.)

12        Q.    It is actually coming on now,

13    Mr. Lim.  If you can refresh your page.

14        A.    Okay, I have it open.

15        Q.    So this is another document

16    produced by Google in this litigation

17    bearing the Bates number

18    GOOG-PLAY-01116053.  It is a slide deck

19    titled Project Runway - Developing a

20    Broader Plan.

21        Mr. Lim, do you recognize this

22    document?

23        A.    Vaguely.

24        Q.    And do you think you saw it

25    before today?

1     T. LIM - HIGHLY CONFIDENTIAL

2        A.     Probably -- it was probably

3    presented to me.

4        Q.     So I would like to direct your

5    attention to slide 5 of this document,

6    which ends with Bates numbers 6057.

7        A.     I'm there.

8        Q.     Can you explain to me what

9    generally the information on this deck

10   contains?

11       A.     I believe, if I recall

12   correctly, this was a fairly early slide

13   deck describing my team's -- the collective

14   cross-functional team's take on Project

15   Runway, which turned into the Small

16   Business Program, I think -- I think that

17   was the external name.

18       Q.     And does this slide reflect

19   some of the concepts that were in the prior

20   chat that we looked at, which is PXCH 98?

21       A.     It does, in particular, I think

22   the second bullet point under the first

23   paragraph pretty much paraphrases Purnima's

24   concern.

25       Q.     You can set that aside,

1        T. LIM - HIGHLY CONFIDENTIAL

2    Mr. Lim.

3            So I believe you mentioned

4    earlier today and previously at your prior

5    deposition that you copied and pasted chats

6    into another document to save them; is that

7    correct?

8        A.    That's correct.

9        Q.    So I would like to upload

10    another document for you to take a look at.

11    This was previously introduced as

12    Plaintiff's Exhibit 108 in your deposition,

13    but is now being assigned PXCH 170.

14            (Exhibit PXCH 170 marked for

15    identification.)

16        Q.    For the record, it is a

17    document Bates labeled GOOG-PLAY-007021362.

18    It should be up now.  Just let me know when

19    you can get it.

20        A.    Sorry, what was the number of

21    the document again?

22        Q.    Look for PXCH 170.

23        A.    Okay.

24        Q.    Mr. Lim, do you recognize this

25    document?

1     T. LIM - HIGHLY CONFIDENTIAL

2     A.     I do.

3     Q.     And could you just explain at a

4  high level what it is?

5     A.     It is a note -- a scratch pad

6  set of notes that I kept for myself.

7     Q.     And I would like to direct your

8  attention to page 29 of this document.  I

9  recognize it's a pretty long one.  That

10  document, or that page, excuse me, has

11  Bates number 21390.

12     A.     Yes, I'm there.

13     Q.      So could you explain to me what

14  is the text that appears in italicized font

15  at the top third of the page?

16     A.     It appears to be an excerpt of

17  a chat conversation between myself and

18  Aaron Rothman, who was a PM director on my

19  team.

20     Q.     And do you recall generally

21  what the conversation you were having with

22  Mr. Rothman was about?

23     A.     At a very high level.

24     Q.     And what was it?

25     A.     The context was that we at the

1      T. LIM - HIGHLY CONFIDENTIAL

2   Play Store had generally been thinking

3   about some blue sky concepts, brainstorming

4   approaches to perhaps finding ways to

5   bifurcate the store and trying to find ways

6   to think about that.

7      Q.    And why did you save this chat

8   into your notes?

9      A.    I think this was one of the

10   first times I was talking about it with

11   Aaron and he had a novel way of, novel to

12   me, way of thinking about it, and I thought

13   it was interesting and I wanted to noodle

14   on it later.

15      Q.    And your conversation with

16   Mr. Rothman was relating to your work about

17   the Play Store; is that right?

18      A.    That's right.

19      Q.    Mr. Lim, is this the only chat

20   that you would have saved in your notes

21   document?

22      A.    Probably not.

23      Q.    Do you recall if there were

24   other chats that you put into your notes

25   document?

Page 20

1    T. LIM - HIGHLY CONFIDENTIAL

2    A.    I might have, in the course of

3    being a manager and requesting feedback on

4    employees, cut and paste ping chats related

5    to feedback on employees, as one example

6    that comes to mind right now.

7    Q.    Okay.  So you can set that

8    document aside.

9        Now, Mr. Lim, you received a

10    legal hold notice relating to this

11    litigation; is that right?

12    A.    That's correct.

13    Q.    Do you recall approximately

14    when you received that notice?

15    A.    I believe it was September

16    2020.

17    Q.    Did you understand the

18    instructions regarding document

19    preservation that were in that legal hold

20    notice?

21    A.    I do.

22    Q.    And what actions did you take

23    to comply with those instructions in the

24    legal hold notice?

25    A.    This was probably one of at

Lim, Tian

Page 21

1          T. LIM - HIGHLY CONFIDENTIAL

2    least ten or more other litigation holds

3    that I was on, and so at this point in time

4    I pretty much assumed that any substantive

5    conversation or information I have is

6    probably required in some legal hold of

7    some kind or other, so my general policy

8    was not to delete documents and to ensure

9    any substantive information was preserved

10   in some way.

11        Q.    And what was your understanding

12   regarding your obligation to preserve chats

13   specifically as a result of the legal hold

14   notice?

15        A.    My interpretation was that if

16   there was substantive information in chat

17   that I should ensure the information was

18   preserved.

19        Q.    And did you comply with that

20   instruction or obligation?

21        A.    I believe I did.

22        Q.    And how did you do that?

23        A.    In some cases I would have cut

24   and pasted into my personal document if I

25   thought it might potentially be applicable,

Page 22

1      T. LIM - HIGHLY CONFIDENTIAL

2    but probably more often I would make sure

3    that the information was funneled into the

4    right documents, the right comments in

5    other documents, to make sure that the

6    right stakeholders would actually see it,

7    integrate those thoughts, and action on

8    them.

9      Q.     Mr. Lim, did you ever turn

10   history on in the chat program to save any

11   chat conversations?

12     A.     Not that I recall.

13     Q.      Mr. Lim, I think you previously

14   testified that you believed there were

15   messages related to work that were deleted.

16   Could you explain what you meant by that?

17     A.      At the time of the previous

18   deposition I think the definition of

19   work-related communications was exceedingly

20   broad, so by definition pretty much any

21   communication I deleted would have been

22   work-related, in chat, excuse me.

23     Q.      And when you say anything

24   work-related at the time of your

25   deposition, what did you understand that to

Lim, Tian

Page 23

1       T. LIM - HIGHLY CONFIDENTIAL

2   mean?  Could you give us examples?

3       A.    It appeared to mean pretty much

4   anything that could have related to work,

5   including grabbing people for lunch.

6       Q.    Mr. Lim, did you make a

7   good-faith effort to comply with your

8   obligations to preserve chat communications

9   that were subject to the legal hold?

10          MS. MOSKOWITZ:  Objection.

11      A.    I believe I did.

12      Q.    And what did you do

13  specifically to preserve information

14  received via chat?

15      A.    As mentioned, I would ensure

16  that relevant passages -- I would cut and

17  paste relevant passages into a personal

18  document, notes document.  I might cut and

19  paste the sentence into an e-mail and send

20  that out to people to action on.  I might

21  have synthesized the information and put it

22  into comments or feedback to stakeholders

23  to ensure that the information was

24  preserved in a more durable form in

25  documents or slides.

Page 24

1    T. LIM - HIGHLY CONFIDENTIAL

2         MS. CHIU:  I have no further

3    questions at this time.

4         MS. MOSKOWITZ:  All right.  Why

5    don't we just take a quick break, if

6    that's okay.

7         MS. CHIU:  Yeah.  How much time

8    do you need?

9         MS. MOSKOWITZ:  Ten.

10        MS. CHIU:  All right.  Let's go

11    off the record.

12        THE VIDEOGRAPHER:  We are going

13    off the record.  The time is 10:25 a.m.

14        (Recess taken.)

15        THE VIDEOGRAPHER:  We are back

16    on the record.  The time is 10:36 a.m.

17    This is media unit number two.

18    EXAMINATION BY MS. MOSKOWITZ:

19    Q.    Good morning, Mr. Lim.

20    A.    Good morning.

21    Q.    My name is Lauren Moskowitz.  I

22    represent Epic Games.  I will be

23    questioning you on behalf of all of the

24    plaintiffs this morning.

25         You understand that it was

1    T. LIM - HIGHLY CONFIDENTIAL

2    plaintiffs and not Google who sought your

3    testimony for today's evidentiary hearing?

4    A.    I believe so.

5    Q.    And we are doing this by video

6    because you are on a trip outside the

7    jurisdiction of the courthouse?

8    A.    That is correct.

9    Q.    But you do understand that this

10   testimony you are giving right now will be

11   played to the Court this afternoon?

12   A.    Absolutely.

13   Q.    And you understand that you

14   should testify exactly as you would if you

15   were sitting in the courtroom right now

16   with the judge present?

17   A.    Understood.

18   Q.    You mentioned that you worked

19   at Google for just over five years, right?

20   A.    That's right.

21   Q.    And during your entire time at

22   Google, you worked in the Google Play

23   product area, correct?

24   A.    That's correct.

25   Q.    You talked a bit about your use

1      T. LIM - HIGHLY CONFIDENTIAL

2   of chat during your tenure at Google.  Is

3   it fair to say that Google Chat has been

4   used extensively over your five-year tenure

5   at Google?

6      A.    I would say that I personally

7   used it a medium amount.  I wouldn't call

8   it extensive.

9      Q.    You testified just earlier

10   today and at your deposition that

11   throughout your five-year tenure at Google

12   you typically used Google Chat every day,

13   correct?

14      A.    That's right.

15      Q.    And doing the math, just five

16   years, you participated in many thousands

17   of chats over your five years at Google?

18      A.    Possibly.

19      Q.    Do you have any reason to

20   believe it's not in the thousands?

21      A.    No, I do not.

22      Q.    And you personally have used

23   Google Chat for substantive business

24   communications, correct?

25      A.    Most likely, yes.

1      T. LIM - HIGHLY CONFIDENTIAL

2      Q.     And substantive business, when

3   we use -- when I use that term, that is not

4   grabbing people for lunch, correct?

5      A.     That's right.

6      Q.     So if you wanted to speak about

7   business matters with your colleagues, one

8   of the ways you did that was over Google

9   Chat?

10      A.     Only when they really had to.

11   I much preferred in person or documents or

12   e-mails.

13      Q.     Right.  You mentioned that you

14   preferred to collaborate in things like

15   documents and presentations rather than

16   chat and e-mail, you said that earlier?

17      A.     That's right.

18      Q.     But you still did use chat and

19   e-mail to conduct substantive business

20   communications, correct?

21      A.     Yes.

22      Q.     Many of the colleagues that you

23   discussed business with over chat had

24   responsibility over Google Play and

25   Android, correct?

Page 28

1      T. LIM - HIGHLY CONFIDENTIAL

2      A.     That's correct.

3      Q.     For example, you chatted

4   frequently with Mr. Alexi Douvas, I think

5   you saw one earlier, the chief of staff for

6   Google Play?

7      A.     That's right.  He was my chief

8   of staff.

9      Q.     And that wasn't just for lunch,

10  right?

11     A.     No.

12     Q.     And you chatted with Mr. Aurash

13  Mohbod, a senior engineering director for

14  Google Play, correct?

15     A.     That's correct.

16     Q.     Not just for lunch, right?

17     A.     That's correct.

18     Q.     And you also chatted and

19  conducted substantive business

20  communications over chat with Greg

21  Hartrell, Deepthi Menon, John Ayres, Doug

22  Lucas and Purnima Kochikar, right?

23     A.     That's correct.

24     Q.     And those are all folks within

25  the Android and Google Play business unit,

1      T. LIM - HIGHLY CONFIDENTIAL

2    right?

3         A.    They are all in the Google

4    Play.

5         Q.    And those were substantive --

6    I'm sorry, I interrupted you.

7              Those were all substantive

8    business communications you had with those

9    folks, right?

10              MS. CHIU:  I object to form.

11         A.    I wouldn't say they were all,

12    and I think I'm unclear as to what the

13    definition of "substantive" here is.

14         Q.    You conducted work-related

15    business communications separate from

16    logistical lunch grabbing, you actually did

17    work in connection with your job over chat?

18         A.    Yes.  But, as I said earlier,

19    more likely than not all that information

20    ended up in a document or a presentation

21    somewhere or an e-mail.

22         Q.    Yeah, well, we will talk about

23    that.

24              But you conducted -- you had

25    substantive business-related doing of your

1      T. LIM - HIGHLY CONFIDENTIAL

2    job that happened over chat, correct?

3        A.    I would say part of my job, or

4    part of the business of doing my job might

5    have partially occurred on chat, but then a

6    lot of other stuff happens --

7        Q.    I'm not talking about anything

8    that happens anywhere else right now.  I'm

9    saying that you had work-related, not

10    lunch, but business communications over

11    chat, correct?

12        A.    Correct.

13        MS. CHIU:  Counsel, I would

14        just ask you to please give Mr. Lim a

15        chance to finish his answers.

16        MS. MOSKOWITZ:  Nope, we're in

17        court right now, he has to give me yes

18        or no answers, and we are going to keep

19        going.

20        Q.    So I just want to be clear, all

21    of the people I just listed out to you, you

22    had substantive business communications on

23    more than one occasion with each of those

24    individuals, correct?

25        A.    Correct.

Page 31

1       T. LIM - HIGHLY CONFIDENTIAL

2       Q.    And there were other people

3    that I didn't list.  You had so many chats

4    that you can't even recall all of the

5    individuals at Play with whom you messaged

6    over chat, correct?

7            MS. CHIU:  I object to form.

8       A.    That's correct.

9       Q.    And you had an understanding

10   that other people beyond you on the Play

11   team communicated with each other over

12   chat, correct?

13      A.    I had that understanding that

14   they were chatting with each other.

15      Q.    And they were chatting about

16   substantive business, not just setting up

17   lunches, correct?

18           MS. CHIU:  I object to form.

19      A.    I don't think I could speak on

20   their behalf because I didn't -- I wasn't

21   privy to all their chats.

22      Q.    But you understood, though,

23   that they were using it for substantive

24   business, not just to set up lunch,

25   correct, even if you didn't see them?

1        T. LIM - HIGHLY CONFIDENTIAL

2        A.    It was a possibility, but I

3    don't have direct experience.

4        Q.    So you talked about earlier and

5    you mentioned it again that when you have

6    these substantive business communications

7    over chat, that you sometimes moved those

8    topics over to other formats, right?

9        A.    That's right.

10       Q.    But you didn't always do that,

11    right?  Not every single substantive

12    business communication ended up in another

13    format, correct?

14       A.    I don't have any specific

15    recollection of something that would have

16    fallen into that category.

17       Q.    Can you sit here and testify

18    under oath that there is not a single chat

19    that you participated in that didn't end up

20    copied into another format?

21       A.    I certainly don't recall that

22    happening.

23       Q.    Do you recall every single

24    substantive business communication you ever

25    had over chat?

Lim, Tian

Page 33

1     T. LIM - HIGHLY CONFIDENTIAL

2     A.     No, I do not.

3     Q.     So you can't tell me that every

4 single substantive business communication

5 you had over chat ended up copied into

6 another format, can you?

7     A.     No, I don't think I could say

8 that.

9     Q.     And even when you talked about

10 moving things over to other formats, one of

11 the ways you did that, I think you said,

12 was that you synthesized the point that was

13 being discussed that you thought was

14 relevant to advance the work project you

15 were working on and continued that

16 communication on that other channel; is

17 that fair?

18     A.     Yes.

19     Q.     You did not always copy and

20 paste the entirety of the substantive

21 business communication you were having over

22 chat into those other formats, correct?

23     A.     I would say that the

24 substantive --

25     Q.     Sir, can you just answer that

1     T. LIM - HIGHLY CONFIDENTIAL

2   one yes or no?  Your counsel will have a

3   chance.  Do you need to hear the question

4   back?

5       A.   Yes, please.

6       Q.   You did not always copy and

7   paste the entirety of the substantive

8   business communication you were having over

9   chat into those other formats, correct?

10      A.   That's right.

11      Q.   And you cannot testify under

12  oath, can you, that your chats did not

13  contain any information that would be

14  relevant to this litigation that did not

15  make its way into another document?

16      A.   I would argue that anything

17  substantive would have been -- would have

18  made its way to an e-mail or document.

19      Q.   The topic, not the actual back

20  and forth chat though, correct?

21      A.   The substantive information in

22  the back and forth chat would have.

23      Q.   Right.  But you did not -- you

24  cannot say that the actual back and forth

25  communication that you had with your

1      T. LIM - HIGHLY CONFIDENTIAL

2    colleagues ended up in another document

3    somewhere?

4      A.    The exact back and forth

5    sequence may not have made it all the way.

6      Q.    So you decided what you thought

7    was relevant for your business purposes

8    what to put into this other format, right?

9      A.    I'm sorry, I'm struggling with

10    the term "business purposes" in this case,

11    sorry.

12      Q.    Well, let's make a distinction.

13    You talked about being on legal holds,

14    right?

15      A.    That's right.

16      Q.    When you were -- when you were

17    deciding that something in the chat was

18    something you wanted to put into another

19    document, you were doing that not to comply

20    with the legal hold, but to figure out what

21    you needed to advance your business purpose

22    of what you were working on, right?

23      A.    But if there is substantive

24    conversation about anything in particular,

25    it usually is pertaining to or needs to be

1        T. LIM - HIGHLY CONFIDENTIAL

2    considered in all our business dealings, so

3    that information generally makes it into

4    our artifacts.

5        Q.    And just to make sure everyone,

6    including the Court, understands, your

7    understanding of your compliance with legal

8    holds was that it was enough for you to

9    summarize or synthesize a point that was

10    being discussed in a substantive business

11    chat and put your summarization into

12    another format, and that was complying with

13    the legal hold?

14        A.    For me, it was very similar to

15    if you and I were in a meeting and we were

16    taking meeting notes, and those meetings

17    notes are a synthesized version of our

18    conversation, and that is the durable

19    document.

20        Q.    Just let's go back to the

21    question.  And I want to be clear, was your

22    understanding of compliance with legal

23    holds that you were under that covered

24    every aspect of your job, that it was

25    sufficient for you to summarize a point

Page 37

1       T. LIM - HIGHLY CONFIDENTIAL

2    that was being discussed in a substantive

3    business chat and put your summarization

4    into another document?

5       A.     Sorry, could you repeat the

6    question?

7       Q.     Yeah.  You testified earlier

8    that you were under ten or so legal holds,

9    right?

10       A.     That's right.

11       Q.     Sorry, I just need your audible

12    answer.  Can you just say it?

13       A.     I said that's right, yes.

14       Q.     Thank you.  And you said, I

15    think, that by virtue of those holds it

16    covered every aspect of the work you were

17    doing at Google?

18       A.     That's right.

19       Q.     So what I'm trying to make sure

20    that I understand is that your counsel

21    asked you some questions about your efforts

22    to preserve documents under those legal

23    holds, right?  Do you remember that?

24       A.     That's right.

25       Q.     I want to understand if you

1    T. LIM - HIGHLY CONFIDENTIAL

2    thought that you are complying with your

3    obligation to preserve chats by summarizing

4    the business point that was being made in

5    that chat and then putting your

6    summarization into another format?

7        A.    I think that's correct, but I

8    would generally always make sure that the

9    nuance and texture of the conversation

10    would be represented appropriately.

11        Q.    But not the exact back and

12    forth of that conversation, correct?

13        A.    That's correct.  It was

14    typically too chaotic and impossible to be

15    a useful artifact.

16        Q.    And just to be clear, you

17    understood that your chats were not going

18    to be automatically preserved because the

19    default was for them to be destroyed every

20    24 hours, correct?

21        A.    We were generally aware that

22    chats would disappear after 24 hours, yes.

23        Q.    And you do not recall at any

24    time when you ever turned on your chat

25    history, right?

1      T. LIM - HIGHLY CONFIDENTIAL

2      A.    That's right.

3      Q.    And you do not recall anyone at

4    Google ever asking you to turn on your chat

5    history, correct?

6      A.    That's right.

7      Q.    Let's look at this document,

8    but we are going to give you the full

9    document, not the fully redacted version,

10    of PX 170.  So please look into your

11    Exhibit Share and pull up the unredacted

12    version.  Let me know when you have it,

13    please.

14          (Plaintiffs' Exhibit 170 marked

15    for identification.)

16      A.    Yes, I have it open.

17      Q.    All right, this is like a

18    70-odd page set of notes you took, right,

19    in a Word -- in a Google document?

20      A.    That's right.

21      Q.    I think you have called it a

22    scratchpad set of notes that you took for

23    yourself, right?

24      A.    That's right.

25      Q.    Some pages in there, and your

1      T. LIM - HIGHLY CONFIDENTIAL

2   counsel pointed you to one, you copied and

3   pasted some excerpts, as you put it, of

4   some chats that you had with your

5   colleagues, correct?

6      A.    That's right.

7      Q.    And those chats that you copied

8   in here were substantive business

9   discussions, correct?

10     A.    They were important enough to

11  me that I felt I needed to keep them.

12     Q.    They were substantive business

13  conversation that you conducted over chat,

14  correct?

15     A.    Substantive to me, yes.

16     Q.    So you were making the decision

17  as to what mattered to you whether you put

18  it in this document?

19     A.    Well, to me also means kind of

20  the business concerns and company concerns,

21  but yes, I'm making the decision as to what

22  to keep here.

23     Q.    Right.  You weren't -- you

24  weren't saying I need to put this in this

25  document because I'm subject to a legal

Page 41

1     T. LIM - HIGHLY CONFIDENTIAL

2    hold, right?

3      A.    That thought process doesn't

4   occur because, as I said, I'm under so many

5   legal holds, it's impossible to think that

6   way.

7      Q.    Right. But you didn't create

8   this document and maintain this document

9   for purposes of preserving all of your

10   substantive business communications that

11   you conducted over chat, correct?

12      A.    That's right.

13      Q.    Just to be clear, there are

14   other notes that you have in this document,

15   this isn't just a compilation of chats that

16   you copied and pasted, right?

17      A.    Sorry, could you -- what did

18   you mean by that?

19      Q.    In this 70 pages there are a

20   bunch of just your notes from various days

21   of what you jotted down over the course of

22   the day, right?

23      A.    That's correct.

24      Q.    You also mentioned that you

25   might have copied and pasted some chats

1      T. LIM - HIGHLY CONFIDENTIAL

2    into e-mails to have further discussion.

3    Do you recall that?

4       A.    Yes.

5       Q.    Are you aware that Google

6    produced 1.7 million e-mails of which

7    37,000 were from you?

8       A.    I was not aware of that.

9       Q.    So I take it you're not aware

10   that that production of e-mails contained

11   zero chats that were copied and pasted into

12   an e-mail?

13      A.    I am not aware of that.

14      Q.    And your counsel didn't show

15   you any examples of this phenomenon, right?

16         MS. CHIU:  Objection.  Counsel,

17      that's privileged.

18         MS. MOSKOWITZ:  Well, you

19      didn't show it today, correct?

20      A.    There may have been privileged

21   e-mails that may have had more stuff.  I'm

22   not entirely sure.  But it is also quite

23   possible that --

24      Q.    That's fine.  I'm just asking

25   did your counsel show you at your testimony

1    T. LIM - HIGHLY CONFIDENTIAL

2    today any examples of you sending copied

3    and pasted chats via e-mail?

4        A.    Not today, no.

5        Q.    There were many messages that

6    you sent and received over your time at

7    Google that were work-related and that were

8    deleted, correct?

9        A.    Sorry, could you say that

10    again?

11        Q.    Okay.  Let's back up.

12            You had history off by default

13    and never turned it on, correct?

14        A.    That's right.

15        Q.    And some chats made their way

16    into copied and pasted but others did not,

17    correct?

18        A.    Correct.

19        Q.    And some substantive business

20    communications that you conducted over chat

21    did not end up copied and pasted into other

22    documents, correct?

23        A.    Not cut and pasted verbatim

24    perhaps, but I would say that if there was

25    substantive information, it got conveyed.

Page 44

1    T. LIM - HIGHLY CONFIDENTIAL

2    Q.    I understand that that's your

3 view of compliance. I'm just talking about

4 the actual chat that happened, the back and

5 forth, that the actual back and forth that

6 you had, substantive business back and

7 forth that you had in chats, some of those

8 have been deleted, correct?

9    A.    That's right.

10    Q.    Many have been deleted,

11 correct?

12    A.    I wouldn't know.

13    Q.    Well, you know how many you

14 copied and pasted verbatim, right?

15    A.    I don't have that off the top

16 of my head either.

17    Q.    Would you be surprised to learn

18 that this document, PX 170, is the only

19 document that was produced in this entire

20 litigation that has any copied and pasted

21 chats by you?

22    A.    As I said, I think, for

23 example, when there is a substantive chat

24 on, like, for example, feedback --

25    Q.    I'm only talking about copied

Page 45

1        T. LIM - HIGHLY CONFIDENTIAL

2    and pasted.

3        A.    Yes, I would cut and paste the

4    body -- I might have cut and pasted the

5    body of the chat but not the entire chat

6    back and forth because sometimes I didn't

7    need to.  So I think that would not show up

8    in discovery clearly as a chat.

9        Q.    All right.  So there were some

10   chats that you decided you didn't need to

11   preserve the full chat, right?

12       A.    That's right.

13       Q.    And as a result there were some

14   substantive business communications that

15   you sent and received that were deleted,

16   right?

17       A.    If they were truly substantive,

18   I think the material made it elsewhere, but

19   the chats themselves, you are correct,

20   probably got deleted.

21       Q.    Definitely were deleted?

22   Definitely were deleted, right?

23       A.    I can't say for sure, because I

24   have no specific recollection.

25       Q.    But you cannot testify that

Page 46

1     T. LIM - HIGHLY CONFIDENTIAL

2    they weren't, right? You can't testify

3    that no substantive business communications

4    that happened over chat were not deleted?

5     A.    That's correct.

6     Q.    And some of those chats that

7    were deleted were deleted during the course

8    of this litigation, correct?

9     A.    I wouldn't know that.

10     Q.    Do you remember testifying to

11    that at your deposition?

12     A.    I don't recollect. It would be

13    helpful if I had --

14     Q.    You communicated over chat

15    after this litigation was filed, correct?

16     A.    Correct.

17     Q.    So some of the chats that you

18    conducted substantive business

19    communications over were not preserved and

20    were thus deleted, correct?

21     A.    Again, the substantive

22    information almost definitely made it into

23    a document.

24     Q.    Sir, I'm talking about copying

25    and pasting of chats. There were

Page 47

1      T. LIM - HIGHLY CONFIDENTIAL

2    substantive business communications that

3    you had over chat that were not, after this

4    litigation was commenced, that were deleted

5    because the actual chat was not copied and

6    pasted elsewhere, correct?

7        A.    That's probably correct.

8        Q.    It is definitely correct,

9    right?

10       A.    I wouldn't know specifically.

11   I have no specific recollections of things

12   that fell into that category.

13       Q.    So you think that you can say

14   that there were every single substantive

15   chat that you had after this litigation was

16   filed was copied and pasted into another

17   document?

18       A.    Not copied and pasted, not cut

19   and pasted, but, again, I think substantive

20   information, decisions, other things were

21   communicated and preserved.

22       Q.    I think we got the message.

23           MS. MOSKOWITZ:  I will pass the

24   witness back.  Thank you, Mr. Lim.

25           THE WITNESS:  Thank you.

Page 48

1     T. LIM - HIGHLY CONFIDENTIAL

2       MS. CHIU:  Counsel, I just need

3   like a five-minute break.

4       MS. MOSKOWITZ:  Yeah.

5       THE VIDEOGRAPHER:  We are going

6   off the record.  The time is 10:59 a.m.

7       (Recess taken.)

8       THE VIDEOGRAPHER:  We are back

9   on the record.  The time is 11:07 a.m.

10    This is media unit number three.

11      MS. CHIU:  Mr. Lim, thank you

12    very much for your time this morning,

13    but I have no further questions for

14    you.

15      MS. MOSKOWITZ:  Okay.  Thank

16    you all.  Thank you, Mr. Lim.  I do

17    appreciate you doing this.

18      THE WITNESS:  I appreciate you

19    all making time and accommodation for

20    me.

21      MS. MOSKOWITZ:  All right, we

22    are done.

23      THE VIDEOGRAPHER:  This

24    concludes today's deposition.  We are

25    off the record at 11:08 a.m. PST, and

Page 49

1     T. LIM - HIGHLY CONFIDENTIAL

2     the total number of media units used

3     was three and will be retained by

4     Veritext Legal Solutions.

5

6          [TIME NOTED:  11:08 a.m.]

7

      _____

8          TIAN LIM

9

      _____

10    Subscribed and sworn to

       before me this _____

11    day of _____, 2023.

12    _____

      Notary Public

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---------|----------------|------|
| LIM | CHIU | 6 |
|  | MOSKOWITZ | 24 |

E X H I B I T S

| PXCH | DESCRIPTION | PAGE |
|------|-------------|------|
|  | Exhibit 98 GOOG-PLAY-004145883 | 11 |
| Exhibit 170 GOOG-PLAY-007021362- | 17 |
|  | 007021431 |  |

| PLAINTIFFS' | DESCRIPTION | PAGE |
|-------------|-------------|------|
| Exhibit 170 GOOG-PLAY-007021362- | 39 |
|  | 007021431 (unredacted) |  |

| DXCH | DESCRIPTION | PAGE |
|------|-------------|------|
|  | Exhibit 72 GOOG-PLAY-011116053- | 15 |
|  | 011116079 |  |

DIRECTIONS NOT TO ANSWER

Page      Line

(NONE)

REQUESTS

Page      Line

(NONE)

CERTIFICATION

I, TODD DeSIMONE, a Notary Public for
and within the State of New York, do hereby
certify:

That the witness whose testimony as
herein set forth, was duly sworn by me; and
that the within transcript is a true record
of the testimony given by said witness.

I further certify that I am not related
to any of the parties to this action by
blood or marriage, and that I am in no way
interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set
my hand this 12th day of January, 2023.


                  _____

          TODD DESIMONE


                *      *      *

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC


CASE NAME: IN RE GOOGLE PLAY
DATE OF DEPOSITION: 1/12/23
WITNESS' NAME: TIAN LIM


PAGE/LINE(S)/    CHANGE        REASON

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/_____/_____

     ____/_____/_____/_____

____/_____/

____/_____/_____/_____

____/_____/_____/_____


_____

TIAN LIM

SUBSCRIBED AND SWORN TO

        BEFORE ME THIS_____DAY

OF_____, 2023.

_____

        NOTARY PUBLIC

MY COMMISSION EXPIRES_____