1    Karma M. Giulianelli (SBN 184175)
     karma.giulianelli@bartlitbeck.com
2    **BARTLIT BECK LLP**
     1801 Wewetta St., Suite 1200
3    Denver, Colorado 80202
     Telephone: (303) 592-3100
4
     Hae Sung Nam (*pro hac vice*)
5    hnam@kaplanfox.com
     **KAPLAN FOX & KILSHEIMER LLP**
6    850 Third Avenue New
     York, NY 10022 Tel.:
7    (212) 687-1980

8    *Co-Lead Counsel for the Proposed Class in In
     re Google Play Consumer Antitrust Litigation*
9
     Steve W. Berman (*pro hac vice*)
10   steve@hbsslaw.com
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
11   1301 Second Ave., Suite 2000
     Seattle, WA 98101
12   Telephone: (206) 623-7292

13   Eamon P. Kelly (*pro hac vice*)
     ekelly@sperling-law.com
14   **SPERLING & SLATER P.C.**
     55 W. Monroe, Suite 3200
15   Chicago, IL 60603
     Telephone: 312-641-3200
16
     *Co-Lead Counsel for the Proposed Class in In
17   re Google Play Developer Antitrust Litigation
     and Attorneys for Pure Sweat Basketball, Inc.*
18
     Bonny E. Sweeney (SBN 176174)
19   bsweeney@hausfeld.com
     **HAUSFELD LLP**
20   600 Montgomery Street, Suite 3200
     San Francisco, CA 94104 Telephone:
21   (415) 633-1908

22   *Co-Lead* Counsel *for the Proposed Class in In
     re Google Play Developer Antitrust Litigation
23   and Attorneys for Peekya App Services, Inc.*

24   Douglas J. Dixon (SBN 275389)
     ddixon@hueston.com
25   **HUESTON HENNIGAN LLP**
     620 Newport Center Drive, Suite 1300
26   Newport Beach, CA 92660  Telephone:
     (949) 229-8640
27

28   *Counsel for Plaintiffs Match Group, LLC et al.*

     Paul J. Riehle (SBN 115199)
     paul.riehle@faegredrinker.com
     **FAEGRE DRINKER BIDDLE & REATH LLP**
     Four Embarcadero Center, 27th
     Floor San Francisco, CA 94111
     Telephone: (415) 591-7500

     Christine A. Varney (*pro hac vice*)
     cvarney@cravath.com
     **CRAVATH, SWAINE & MOORE LLP**
     825 Eighth Avenue
     New York, New York 10019
     Telephone: (212) 474-1000

     *Counsel for Plaintiff Epic Games, Inc. in Epic
     Games, Inc. v. Google LLC et al.*

     Brendan P. Glackin (SBN 199643)
     bglackin@agutah.gov
     **OFFICE OF THE UTAH ATTORNEY
     GENERAL**
     160 E 300 S, 5th Floor
     PO Box 140872
     Salt Lake City, UT 84114-0872
     Telephone:  801-366-0260
     *Counsel for Utah and the Plaintiff States*

     Brian C. Rocca (SBN 221576)
     brian.rocca@morganlewis.com
     **MORGAN, LEWIS & BOCKIUS LLP**
     One Market, Spear Street Tower
     San Francisco, CA 94105-1596
     Telephone: (415) 442-1000

     *Counsel for Defendants Google LLC et al.*

     Glenn D. Pomerantz (SBN 97802)
     glenn.pomerantz@mto.com
     **MUNGER, TOLLES & OLSON LLP**
     350 South Grand Avenue, Fiftieth Floor
     Los Angeles, California 90071-3426
     Telephone: (213) 683-9100

     *Counsel for Defendants Google LLC et al.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT SUBMISSION REGARDING FEBRUARY 1, 2023 MINUTE ORDER**<br><br>Judge:  Hon. James Donato |

Pursuant to the Court's February 1, 2023 Minute Order (MDL Dkt. No. 440), and further to their statements filed on February 6, 2023 (MDL Dkts. 444, 445), the parties submit this joint statement concerning their proposed plans to execute the Court's instructions regarding Plaintiffs' Motion for Sanctions (MDL Dkt. No. 349).

The parties have met and conferred regarding the instructions in the Court's Minute Order. The parties' respective positions are as follows.

## I.   Issue 1:  Protocol for the Production of Chats

### Plaintiffs' Position

The parties agree that Google will produce Chats from the files of all 383 litigation hold recipients identified in Exhibit A to the Ho Declaration, including individuals 1-21.  The parties remain at an impasse, however, on the process Google should apply in producing those Chats.

Google insists on treating its forthcoming Chat production like ordinary course discovery by (1) running search terms, (2) conducting a responsiveness review, and (3) conducting a privilege review for all custodians *before* producing any of these documents.  Google's claim that this discovery should be treated like any other discovery misses critical context:  This production is being made months after the close of fact discovery, pursuant to a Court order, because Google misled the Court and Plaintiffs about its use and preservation of Chats.  This production is anything but ordinary course discovery and should not be treated as if it were.

Google should simply produce the "on the record" and threaded Chats that have been preserved, and all "family members" of those Chats.  Doing so would minimize the burden on Google, allow Google to meet the Court's fourteen-day deadline (which Google itself proposed and now seeks to extend), and allow Plaintiffs to assess the universe of Chats (and their family members) preserved by Google.  For the reasons set forth in their February 6, 2023 filing (MDL Dkt. 444 at 1-3), such a production is the only way to ensure, as the Court proposed, that the supplemental production of Chats would be a "deeper dive" into the "on the record" Chats and the prejudice caused by Google's failure to preserve "off the record" Chats.  (1/31/2023 Tr. 290:21-291:8.)

**Search Terms and Responsiveness Review.**  Google's proposed review protocol is far too narrow to provide the "deeper dive" the Court envisioned.  Google proposes to limit its production to search terms and responsiveness criteria that were applied in the context of antitrust discovery, and then address the Chat prejudice issues by running three narrow search terms— "history on", "history off" and "off the record"—"treating as responsive any chat in which a participant discusses turning history on or off or moving to a history off chat *in the context of any legal hold, investigation, regulatory proceeding, or litigation*."  (MDL Dkt. 445 at 2 (emphasis added).)  Google's proposal is plainly insufficient.

*First*, contrary to Google's assertions, this production is not focused only on additional information about Google Play and the underlying anticompetitive conduct; it is directed primarily at identifying evidence that would shed light on the extent to which Plaintiffs have been prejudiced by Google's failure to preserve Chats and whether Google's representations about how Chat is used within the organization (*i.e.*, primarily for nonsubstantive purposes) were false.  Chats about other aspects of Google's business will undoubtedly be relevant to those inquiries.  One purpose of the "deeper dive" the Court ordered is to provide more information on how Google employees use Chat.  A Chat in which Google employees subject to litigation holds agree to take sensitive topics "off the record" is relevant to that inquiry regardless of whether it discusses Search, ad tech, Google Play, or any other aspect of Google's business.  Google's myopic focus on relevance under Rule 26 is thus misplaced.  If Google were producing "off the record" chats in the ordinary course, then a strict Rule 26 relevance screen would make sense.  But Google cannot produce "off the record" Chats because it destroyed them.  Left only with indirect evidence (at best) of the contents of the destroyed Chats, the Court directed Google that "more is better right now".  (Tr. at 289:10-11.)  Google's proposal ignores that directive.[1]

---

[1] Google's representation that Chats "likely contain privileged information" and that "produc[ing] chats without privilege review would require clawing back thousands, if not tens of thousands of documents", is a remarkable departure from its earlier statements to the Court characterizing Plaintiffs' motion as seeking "key evidence . . . buried in the midst of chats regarding lunch plans and meeting requests."  (MDL Dkt. 367 at 7.)  Google appears to now admit that Chat is a channel for substantive communications.

*Second,* Google's proposed additional search terms are inadequate and exclude obvious terms such as "on the record", "history", "sensitive", "litigation", "preservation" or "hold", to name just a few.  Indeed, there are countless ways in which a Google employee could suggest taking a substantive discussion to an "off the record" Chat, and Google's proposal appears designed to miss most of them, thereby highlighting the issue of why any set of search terms applied to this set of documents would be inadequate.  In the course of preparing this joint statement, Google offered to negotiate search terms.  That is yet another delay tactic.  Negotiating search terms for fact discovery took approximately four months.  Negotiating search terms for its Chat production would only burden the court with inevitable disputes and distract the parties from the important work of completing expert discovery and preparing for trial.

*Third*, Google's proposed responsiveness criteria would exclude as nonresponsive the Chats most relevant to the adverse inference issues before the Court.  As raised in Plaintiffs' February 6 submission on this issue, if a Google employee suggested moving a sensitive discussion about Google Search off the record, that Chat, even if somehow captured by Google's proposed search terms, would *still* be marked nonresponsive and not produced—unless that employee took the extra step of noting explicitly that the move to "off the record" Chats was motivated by concerns about a "legal hold, investigation, regulatory proceeding, or litigation.

The deficiency in Google's proposed protocol is demonstrated by the existing productions in this case.  Google produced approximately 3,200 Chats, and the Chat-related search terms it now proposes appear in only *four* of them.  Those four chats do not reference "any legal hold, investigation, regulatory proceeding, or litigation", so none of these four would be captured by Google's new responsiveness category.  For example, Google's proposal would screen out critical evidence like Plaintiffs' Exhibit 103 from the January 12, 2023 evidentiary hearing, in which Sameer Samat, the Head of Google Play, received a lengthy message from another Google Vice President about a purported competitor to Google Play and responded: "pls keep in this mind this chat history is not off," at which point the "on the record" portion of the Chat abruptly ended.  This document would not have been captured by Google's three proposed search terms, because it says "history is not off" rather than verbatim "history off".  It would also have failed Google's

1   proposed Chat-related responsiveness review because it does not reference a specific legal

2   proceeding.  Google notes that this Chat was captured by the *antitrust* responsiveness criteria, but

3   that is a red herring.  Similar Chats relating to other parts of Google's business (such as Search or

4   YouTube) are relevant to the prejudice inquiry because they show how Google uses "off the

5   record" Chats—and Google seeks to withhold such documents from production.

6        Google's latest proposal ensures that if any surviving Chats contain evidence of prejudice,

7   those Chats would remain hidden from Plaintiffs and the Court.  Today, for the first time, Google

8   asserts that it would be burdensome to produce all Chats.  That late-in-the-day claim flies in the

9   face of Google's representations to the Court that the Chats at issue are "sitting there" waiting to

10   be produced.  (1/31/2023 Tr. 278:10-20.)  Google should do what it said it would do and produce

11   them.[2]

12        **Privilege Review.**  As Plaintiffs have explained to Google, Plaintiffs would agree to

13   Google running a privilege review for the hold-notice recipients who are in litigation-related roles.

14   Plaintiffs also would agree to a broad non-waiver agreement allowing the clawback of any

15   privileged material.  This is not a recognition that the Chats are likely to contain privileged

16   material; it is Plaintiffs' attempt to compromise so that Google will start producing Chats—which

17   it has yet to do.  Google's concerns about having to deal with too many clawbacks are contrived.

18   Throughout the litigation, the parties have worked cooperatively to address clawback requests, and

19   Plaintiffs have brought to Google's attention numerous documents that they believed Google

20   inadvertently produced.  There is no reason to believe Plaintiffs would not or could not comply

21   with any reasonable clawback requests regarding Chats or that any privileged documents that may

22   be produced would "taint" Plaintiffs' counsel's ability to prosecute this case.

23        **Timing of Google's Production.**  Plaintiffs oppose Google's request for an extension of

24   time to produce Chats.  Google represented to the Court that it could make this production within

25   two weeks of the date of the hearing.  (1/31/2023 Tr. 286:17-21; 288:23-24.)  The Court relied on

26

27   _____

[2] Google's suggestion that the Court approved the use of search terms does not reflect the reality

28   of the hearing.  As the Court is aware, no meaningful discussion of the parameters of Google's
Chat production occurred.

-4-

1   that representation when it ordered Google to make the production by February 14.  Now, just four

2   days before its production is due, Google claims it cannot meet its own deadline despite a Court

3   order.  Any problem with meeting the February 14 deadline is of Google's own making.  Google

4   could meet the production deadline if it did not insist on a responsiveness review, and if it

5   accepted Plaintiffs' compromise on privilege review.  Google cannot simply erect obstacles to get

6   out of complying with Court orders.

7        This counterproductive delay will prejudice Plaintiffs, who continue to expend an

8   inordinate amount of time and effort litigating an issue that Google created when it failed to

9   preserve Chats and failed to disclose that fact to Plaintiffs and the Court.  Google should produce

10  all Chats referenced in Exhibit A to the Ho Declaration without further delay.

11       **Google's Position**

12       Google has proposed to use the standard process for document production that the parties

13  have used throughout this case:  apply the parties' agreed-upon search terms to identify a subset of

14  potentially responsive documents, review those documents for (a) responsiveness to relevant

15  discovery requests and (b) for privilege.  To address Plaintiffs' concerns and avoid an unnecessary

16  dispute, Google has also agreed to include additional search terms relating to chat history settings

17  ("history on", "history off", and "off the record") and treat as responsive any chats that involve a

18  participant discussing turning history "on" or "off" or moving to a history off chat in the context

19  of any legal hold, investigation, regulatory proceeding, or litigation.

20       Plaintiffs have rejected this proposal, demanding instead the en masse production of 1.1

21  million chats (including attachments and related documents known as "families") without regard

22  for whether any of those documents is even remotely related to (a) the parties' claims or defenses

23  or (b) the retention of chats that are subject to a preservation obligation.  Plaintiffs have proposed

24  that Google be able to conduct a privilege review for only 37 custodians.

25       Plaintiffs do not dispute that their demand would result in the production of hundreds of

26  thousands of irrelevant documents.  They offer a single conclusory sentence that "Chats about

27  other aspects of Google's business will undoubtedly be relevant to the prejudice question before

28  the Court."  But Plaintiffs do not explain why documents regarding aspects of Google's business

that are unrelated to the issues in the case or unrelated to Google employees' preservation of documents in the context of legal proceedings or a legal hold are relevant—because they are not. Nor do Plaintiffs dispute that their proposal would result in the production of many privileged documents. Indeed, their proposal that Google be able to conduct a privilege review for 37 of the 58 custodians at issue who are in Google's legal department confirms the risk of production of privileged information. Finally, Plaintiffs do not and cannot identify any prejudice from Google applying search terms and reviewing documents for responsiveness and privilege.

**Search Terms.** Plaintiffs' complaints that applying search terms will yield overly narrow results is unfounded, as Google's proposed search terms will identify documents far beyond those that Plaintiffs agreed were relevant to post-complaint developments. The parties previously agreed to search the documents of 21 custodians using varying sets of discrete search terms targeted to particular post-complaint developments, depending on the issue and custodians involved. Google's proposal would set aside these agreed-upon limits and run *all* search terms the parties agreed to in this litigation. In addition, Google has agreed to add the terms "history off," "history on" and "off the record" to identify documents that may relate to Plaintiffs' allegations regarding the preservation of chats. In short, Google plans to use any search term the parties previously agreed would identify documents relevant to any merits issue in the case *and* search terms related to the present dispute regarding the preservation of chats. Plaintiffs cannot explain why chats that do not include a single one of the hundreds of agreed-upon search terms or search terms related to chat preservation would be relevant for any purpose.

Moreover, Google's proposal at the January 31 hearing was specifically to run search terms. *See* Jan. 31, 2023 H'rg Tr. at 282:12-283:3 (colloquy discussing Google's proposal to "run the same search terms"). Google understands that the Court accepted Google's proposal, leaving open the question whether a further responsiveness review should be conducted. *Id.* at 283:19-20 (Court: "They'll run the searches for all 300-and-whatever are left, 22 through 300X").

Finally, applying search terms would also permit Google to conduct an efficient and timely privilege review, as discussed below, on a reasonable set of documents. If Google were not

-6-

1  permitted to apply search terms, it would have to review tens of thousands of chats for privilege in

2  a limited time available for production.

3       Plaintiffs suggest that Google should add additional search terms related to chat history

4  and preservation.  Google has not had sufficient time to evaluate the appropriateness and burden of

5  adding all of these terms, several of which Plaintiffs raised for the first time this morning.  Google,

6  however, notes that several of these search terms appear overbroad.  For example, Plaintiffs'

7  proposal to apply the terms "hold" and "sensitive" would require review (and, under Plaintiffs'

8  proposal, production) of every chat in which a Google employee said "hold on" or characterized a

9  matter totally unrelated to this case as "time-sensitive."  The existence of many such irrelevant

10  chats is hardly speculative given that Google Chat is used for real-time, quick communication.

11       Google is willing to meet and confer regarding search terms to be applied to identify a set

12  of documents which will be reviewed for responsiveness as discussed below, but Plaintiffs have

13  consistently maintained that Google should not be permitted to apply any search terms and should

14  instead simply produce all 1.1 million chats and families.  Plaintiffs assert that a meet and confer

15  on search terms will cause delay, but it will not delay Google's ability to begin making rolling

16  productions of documents on February 14 using the search terms and review it has proposed.

17       **Responsiveness Review.**  The Court ordered the parties to meet and confer on whether

18  Google would perform a responsiveness review.  Google has proposed to review chats that hit

19  upon the search terms and determine whether they are responsive to any of the hundreds of

20  requests for production that any plaintiff has served in this case.  All responsive, non-privileged

21  chats will be produced.  In addition, if a non-privileged chat involves a participant discussing

22  turning history "on" or "off" or moving to a "history off" chat in the context of any legal hold,

23  investigation, regulatory proceeding, or litigation, Google will produce that chat, even if it is not

24  otherwise responsive.

25       Plaintiffs' demand that Google produce any chat discussing turning history "on" or "off"

26  or moving to a "history off" chat, regardless of context or relevance to the merits issues in this

27  case, is not tailored to identify relevant chats.  *See* Fed. R. Civ. P. 26 (limiting the scope of

28

-7-

1   discovery to "any nonprivileged matter that is relevant to any party's claim or defense and

2   proportional to the needs of the case").

3       Plaintiffs do not dispute that the parties' search terms coupled with a responsiveness

4   review will identify non-privileged chats that are relevant to the substantive issues in the

5   case.  Instead, they argue that *all* chats by Google employees are relevant to their sanctions motion

6   because they shed light on how employees use chats or because they may show a participant

7   discussing turning history off or moving a discussion to a "history off" chat.  Plaintiffs are

8   wrong.  Their challenge relates to whether Google custodians retained post-Complaint chats that

9   relate to the *topics of this case*.  Google's proposal will ensure that Plaintiffs get any chats relating

10  to the topics of this case (including any chats in which participants discuss history settings in the

11  context of such topics).  *In addition*, Google has already agreed to produce chats discussing

12  turning history "on" or "off" or moving to a "history off" chat in the context of any legal hold,

13  investigation, regulatory proceeding, or litigation, even if they do not otherwise relate to the topics

14  of this case, which is the only type of communication that would bear on Plaintiffs'

15  motion.[3]  There is no basis for Plaintiffs to demand production of chats that do not discuss turning

16  history "on" or "off" in connection with the topics of this case or in connection with legal hold,

17  investigation, regulatory proceeding, or litigation.

18      Plaintiffs argue that Google's proposal is deficient because only four chats out of the

19  approximately 3,000 that Google produced contain Google's proposed search terms related to

20  history settings and that those chats would not have been marked responsive under Google's

21  proposal.  Plaintiffs are wrong.  Those chats were produced because they contain the agreed-upon

22  search terms regarding the merits issues in the case and were deemed responsive to one or more of

23  Plaintiffs' requests for production.  Google has agreed to produce all non-privileged post-

24  complaint chats from custodians 1-383 meeting those criteria.  Indeed, the one example Plaintiffs

25

26  _____

27  [3] To be clear, Plaintiffs would also obtain any discussion of history settings in chats related to the
    substantive issues in this case via Google's agreement to review chats that hit upon the previously
    agreed-upon search terms targeted to those issues and determine whether they are responsive to

28  any of the hundreds of requests for production that any plaintiff has served in this case.

1  highlight, PX-103, contains agreed-upon search terms and an extensive discussion of Google's

2  competitor, the Apple App Store, which is an important aspect of this case.  Thus, Plaintiffs' own

3  example shows that Plaintiffs have received relevant chats and would receive them under

4  Google's proposal.

5       **Privilege Review.**  Plaintiffs cannot justify requiring Google to turn over hundreds of

6  thousands of chats without regard for whether they contain privileged information.

7       The scope of discovery under the federal rules is specifically cabined to any "non-

8  privileged matter."  Fed. R. Civ. P. 26(b)(1).  Google should have the opportunity to review these

9  chats before production to ensure that it is not producing privileged materials.  The need for a

10  privilege review is particularly heightened here for two reasons.  First, some 44,000 of those chats

11  are from 58 custodians who are members of Google's legal department.  Indeed, Plaintiffs have

12  acknowledged that at least 37 of the 58 custodians who are members of Google's legal department

13  are likely to have engaged in privileged communications, as reflected in their proposal to not

14  object to Google reviewing those 37 custodians' chats for privilege, but *only* if Google abandoned

15  any other pre-production privilege review for the chats of all other custodians.  Plaintiffs cannot

16  explain why the other 21 custodians who are members of Google's legal department are not likely

17  to have privileged communications.  And their proposal ignores that non-lawyer custodians

18  communicate with Google's lawyers including those who are not custodians and thus would not

19  be subject to privilege review under Plaintiffs' proposal.

20       Second, all of the chats at issue in the Court's Minute Order relate to the *post-Complaint*

21  period, after litigation commenced.  As the Court is aware, in general post-Complaint documents

22  are more likely to be privileged or constitute work product.  *See Swinomish Indian Tribal Cmty. v.*

23  *BNSF Ry. Co.*, 2016 WL 2610247, at *3 (W.D. Wash. May 6, 2016) ("[A]t some point in most

24  civil suits the focus of the principals' discussions shifts from the acts or omissions giving rise to

25  the claims to the prosecution or defense of the lawsuit.  Once that point is reached, most, if not

26  everything, is then subject to the attorney/client privilege and/or the work product doctrine.")

27  (cleaned up); *accord Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077 at *3

28  (N.D. Cal. Dec. 18, 2009) ("[C]ounsel's communications with the client and work product

1 developed once the litigation commences are presumptively privileged and need not be included

2 on any privilege log.").  Once litigation commences, employees will have a heightened need to

3 check with counsel, and counsel will have a greater need to discuss the litigation with

4 employees.

5        Google appreciates the Court's assurances with respect to the lack of a privilege waiver

6 from inadvertent production and is mindful of the provisions of Section 13 of the Third Amended

7 Protective Order in this action.  Hr'g Tr. at 292:8-13; MDL ECF 249, § 13.  Notwithstanding those

8 protections, it is not appropriate to require Google to divulge attorney-client communications or

9 work product to an adversary, particularly when those communications may relate specifically to

10 the litigation at hand.  Courts in this circuit decline to order even *logs* describing privileged, post-

11 complaint documents.  *See, e.g.*, *In re Snap Inc. Sec. Litig.*, No. CV1703679SVWAGRX, 2018

12 WL 7501294 at *1 (C.D. Cal. Nov. 29, 2018) ("[A] rule requiring creation of an ongoing log of all

13 post-compliant privileged communications would have a chilling effect on the attorney-client

14 relationship. . . . Courts in this circuit routinely deny a motion to compel a privilege log of

15 attorney-client communications or work product dated after commencement of litigation.").

16        Plaintiffs cite no authority supporting the much more serious invasion they propose:  mass

17 production of thousands of documents that likely contain privileged information—including

18 thousands of documents involving members of a company's legal department—without applying

19 any privilege review.  Indeed, Google expects that requiring Google to produce chats without

20 privilege review would require clawing back thousands, if not tens of thousands of

21 documents.  Even if that were feasible and Plaintiffs' counsel acted in complete good faith,

22 Plaintiffs' counsel's receipt of thousands of privileged documents would taint their prosecution of

23 this case to a degree that simply destroying and returning the documents—as is the practice for a

24 stray, inadvertently produced privileged document—could not cure.  Plaintiffs have no solution to

25 this prejudice to Google from their proposal to prohibit Google from conducting a well-accepted

26 review of documents for privileged information.

27       **Custodians 1–21.**  The Court's order regarding this production was plainly limited to the

28 chats from "Custodians 22 through 383 listed in Exhibit A to the Declaration of Duy Ho."  The

-10-

1   order does not contemplate the production of additional chats from custodians 1 - 21.  Google has

2   already produced post-complaint chats from these custodians based on the scope, search terms,

3   and time-frame agreed to by the parties.

4           Nevertheless, in the interest of resolving this dispute, Google will agree to review and

5   produce additional chats from custodians 1 - 21 identified based on the process described above

6   for applying search terms and reviewing for responsiveness and privilege.

7                        *              *              *              *

8           Finally, Google respectfully requests a one-week extension to February 21 of the February

9   14 deadline to complete production.  Specifically, Google proposes to begin a rolling production

10   on February 14, completing production on or before February 21.  As Google has been working

11   diligently to produce post-complaint chats, it has become clear that the additional time is needed

12   regardless of whether the Court agrees with Google or Plaintiffs regarding whether search terms

13   will be applied and a responsiveness review will be conducted.  First, given the volume of chats

14   that have been preserved, the mechanical work required to process the documents into a form in

15   which they can be produced to Plaintiffs is taking substantial time.  Second, Google needs time to

16   conduct an appropriate review of the preserved chats for privileged information to protect the

17   attorney-client privilege.  Completing production by February 21 will be within the one-month

18   time period that Google originally estimated at the hearing.  Hr'g Tr. at 286:3-15.  Given the

19   November trial date, Plaintiffs will not be prejudiced by a one-week extension.  And, as noted,

20   Google expects to make rolling productions of documents beginning on February 14, which would

21   enable Plaintiffs to begin reviewing chats beginning on the original deadline.

22   **II.     Issue 2:  System-Wide Backend Log**

23           **Plaintiffs' Position**

24           The Court ordered Google to "produce to plaintiffs the 'system-wide backend log'

25   referenced in the Declaration of Devin Chen, Dkt. No. 429-4."  (MDL Dkt. 440.)  As Plaintiffs

26   explained in their February 6, 2023 filing, Google refused to produce a native version of the log,

27   citing security and privacy concerns.  (MDL Dkt. 444 at 4.)  As a compromise, Plaintiffs asked

28   Google on February 3, 2023 to allow their expert to inspect the log on Google's campus and under

-11-

1   the supervision of appropriate Google personnel to address any privacy and security concerns.

2   Plaintiffs have repeated this request several times, including in their February 6, 2023 filing, but

3   Google has not yet agreed to this proposal or provided any compelling reason why it cannot be

4   accommodated.  Google claims that accessing the log on Google's campus under the supervision

5   of Google personnel would not resolve its security or privacy concerns and that it would be

6   burdensome.  That is not true:  All it would require is a few hours working with a knowledgeable

7   person at Google who could supervise Plaintiffs' access to the log the Court ordered Google to

8   produce.  Again, Google has refused to simply comply with the Court's order and has instead

9   forced the parties to engage in a protracted process aimed at curtailing Plaintiffs' access to

10  relevant information.

11          On February 3, 2023, Google offered to provide Plaintiffs with a list of certain "Chat-

12  related events", relevant fields and other information discernable from the log.  On February 9,

13  2023, Google sent this information to Plaintiffs in hard copy.  Plaintiffs received this information

14  today, February 10, 2023, and are beginning to review it.

15          **Google's Position**

16          Google has agreed to provide agreed-upon relevant data from the system-wide backend log

17  in an electronic file format that Plaintiffs' consultants can search and analyze.  It is necessary to

18  pull extracts because the log is massive and system-wide; it includes data far beyond the use of

19  Google Chat by the 383 legal hold recipients.  Rather, this log includes data for all users of the

20  Google Chat product, including Google's non-party customers.  To facilitate agreement on the

21  relevant data to be extracted from this massive dataset, Google has provided Plaintiffs with a list

22  of the Google Chat events and fields in the log and identified the events that relate to the chat

23  history settings discussed in the Declaration of Devin Chen.[4]  As explained in Google's February

24

25  _____

[4]  Plaintiffs indicate that Google has produced this list in hard copy form.  That is correct because
26  the information that Google has provided has been designated as "source code" under sections 2.2
    and 2.3 of the Stipulated Supplemental Protective Order Governing Source Code. See MDL ECF.
27  No. 256 at 3.  Specifically, this information is derived from source code and reveals the structure
    of software.  Nevertheless, in the interest of producing these materials as quickly as possible and
28  to facilitate efficient review, Google produced them in paper form as provided in the Protective

-12-

1  6 submission, MDL ECF 445 at 4, Google also will facilitate a discussion between Plaintiffs and a

2  Google subject matter expert who can answer any questions Plaintiffs may have regarding the

3  information stored in the log.  Thus, Plaintiffs are receiving the information needed to identify

4  relevant information in the system-wide log.

5       Plaintiffs' demand for the entire log or the ability to access the log from a Google facility

6  or computer system is unnecessary and would create significant privacy and security risks for

7  Google's third-party customers.  As explained in Google's February 6, 2023 submission, *see* MDL

8  ECF 445 at 3-5, the log includes event data related to non-party customers of the Google

9  Workspace product (i.e. other companies and individuals who use Google Chat).  Given Counsel's

10  understanding that the log is not designed to technologically restrict access to data relating to the

11  383 Google employees at issue, allowing Plaintiffs' consultants to directly access the log on

12  Google's systems unnecessarily risks exposure of non-party customer data.  Plaintiffs do not

13  dispute that access to the entire system-wide log or Google's computer systems would create

14  significant privacy and security risks to Google and to the non-party customers who use Google

15  Chat and whose data is stored in the log.  Plaintiffs' proposal to have a Google employee monitor

16  their experts' on-site access to the log is burdensome and does not mitigate the privacy and

17  security risks because Plaintiffs would still have access to and be able to review non-party

18  customer data.  There is no reason to incur these burdens or risks when Plaintiffs are able to

19  review relevant data based on agreed-upon fields and events.

20  **IV.    Issue 3: Automatic Preservation of Chats for Litigation Hold Recipients**

21       **Plaintiffs' Position**

22       On a provisional basis, Google has agreed to begin preserving all Chats for the 383

23  litigation hold recipients by setting history to "on" and preventing users from turning it "off".  (*See*

24  MDL Dkt. 448.)  Google maintains that it wishes to reverse this setting and resume the destruction

25  of "off the record" Chats with respect to as many of these individuals as possible, and has asked

26

27  _____

28  Order, waived other provisions of the Protective Order, and offered to meet and confer with
Plaintiffs to discuss and resolve any impediment to their review of these materials.

-13-

1   Plaintiffs to identify any of the 383 individuals as to which Plaintiffs do not seek to have all Chats

2   preserved.  Plaintiffs cannot fully assess Google's request until Google produces the Chats at issue

3   for these custodians.

4        **Google's Position**

5        Google has turned the Google Chat history setting to "on" for all 383 employees who have

6   received a legal hold in this case.  Absent further direction from the Court or agreement among the

7   parties, those employees will not have the ability to change history to "off."  Google will meet and

8   confer with Plaintiffs regarding those settings, and how broadly they should apply, going

9   forward.  Any dispute regarding the number of custodians for whom the history setting should

10  remain "on" is not ripe.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | Dated: February 10, 2023 |

Dated: February 10, 2023　　　　　　　　CRAVATH, SWAINE & MOORE LLP
　　　　　　　　　　　　　　　　　　　　Christine Varney *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Darin P. McAtee *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Gary A. Bornstein *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Timothy G. Cameron *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Yonatan Even *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Lauren A. Moskowitz *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Omid H. Nasab *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　Justin C. Clarke *(pro hac vice)*
　　　　　　　　　　　　　　　　　　　　M. Brent Byars *(pro hac vice)*

　　　　　　　　　　　　　　　　　　　　FAEGRE DRINKER BIDDLE & REATH LLP
　　　　　　　　　　　　　　　　　　　　Paul J. Riehle (SBN 115199)

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　By:　 */s/ Lauren A. Moskowitz*
　　　　　　　　　　　　　　　　　　　　　　　Lauren A. Moskowitz

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Epic Games, Inc.*


Dated:　February 10, 2023　　　　　　　　BARTLIT BECK LLP
　　　　　　　　　　　　　　　　　　　　Karma M. Giulianelli

　　　　　　　　　　　　　　　　　　　　KAPLAN FOX & KILSHEIMER LLP
　　　　　　　　　　　　　　　　　　　　Hae Sung Nam

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　By:　 */s/ Karma M. Giulianelli*
　　　　　　　　　　　　　　　　　　　　　　　Karma M. Giulianelli

　　　　　　　　　　　　　　　　　　　　　　*Co-Lead Counsel for the Proposed Class in*
　　　　　　　　　　　　　　　　　　　　　　*In re Google Play Consumer Antitrust*
　　　　　　　　　　　　　　　　　　　　　　*Litigation*


Dated:　February 10, 2023　　　　　　　　PRITZKER LEVINE LLP
　　　　　　　　　　　　　　　　　　　　Elizabeth C. Pritzker

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　By:　 */s/ Elizabeth C. Pritzker*
　　　　　　　　　　　　　　　　　　　　　　　Elizabeth C. Pritzker

　　　　　　　　　　　　　　　　　　　　　　*Liaison Counsel for the Proposed Class in*
　　　　　　　　　　　　　　　　　　　　　　*In re Google Play Consumer Antitrust*
　　　　　　　　　　　　　　　　　　　　　　*Litigation*

-15-

1     Dated:  February 10, 2023          OFFICE OF THE UTAH ATTORNEY GENERAL

2                                           Brendan P. Glackin

3                               Respectfully submitted,

4                               By:   */s/ Brendan P. Glackin*

5                                        Brendan P. Glackin

6                               *Counsel for Utah and the Plaintiff States*

7     Dated:  February 10, 2023          HUESTON HENNIGAN LLP

8                                           John C. Hueston

9                                           Douglas J. Dixon
                                           Joseph A. Reiter

10                                        Michael K. Acquah
                                        William M. Larsen

11                                        Julia L. Haines

12                              Respectfully submitted,

13                              By:   */s/ Douglas J. Dixon*

14                                        Douglas J. Dixon

15                               *Counsel for Match Group, LLC; Humor Rainbow,*
                               *Inc.; PlentyofFish Media ULC; and People*
                               *Media, Inc.*

16    Dated:  February 10, 2023          MUNGER, TOLLES & OLSON LLP

17                                           Glenn D. Pomerantz
                                           Kuruvilla Olasa

18                                        Emily C. Curran-Huberty
                                         Jonathan I. Kravis

19                                        Justin P. Raphael
                                         Kyle W. Mach

20                                          Dane P. Shikman
                                         Nicholas R. Sidney

21                               Respectfully submitted,

22                              By:   */s/ Glenn D. Pomerantz*

23                                        Glenn D. Pomerantz

24                               *Counsel for Defendants Google LLC et al.*

25

26

27

28

-16-

JOINT SUBMISSION RE FEBRUARY 1, 2023 MINUTE ORDER
Case Nos. 3:21-md-02981-JD; 3:22-cv-02746-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

1

Dated:  February 10, 2023

MORGAN, LEWIS & BOCKIUS LLP
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Minna L. Naranjo Rishi
P. Satia

Respectfully Submitted,

By:   /s/  Brian C. Rocca
         Brian C. Rocca

Counsel for Defendants Google LLC et al.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

1

## **E-FILING ATTESTATION**

2          I, Glenn D. Pomerantz, am the ECF User whose ID and password are being used to

3   file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the

4   signatories identified above has concurred in this filing.

5

6                                        */s/   Glenn D. Pomerantz*

7                                             Glenn D. Pomerantz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT SUBMISSION RE FEBRUARY 1, 2023 MINUTE ORDER
Case Nos. 3:21-md-02981-JD; 3:22-cv-02746-JD, 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD