Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

This Document Relates To:

*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

3:21-md-02981-JD

**DEFENDANTS' MOTION TO DEFER OR STAY TRIAL**

Judge: Hon. James Donato
Date: April 20, 2023 at 10:00 a.m.
Courtroom: 11

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD.

  
**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on April 20, 2023, at 10:00 a.m., before the Honorable James Donato, Defendants Alphabet, Inc., Google LLC; Google Ireland Limited, Google Commerce Limited; Google Asia Pacific PTE. Limited; and Google Payment Corp. (collectively, "Google"), will and hereby do move this Court to defer or stay all trials in the multidistrict litigation, *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD, pending the Ninth Circuit's interlocutory review of this Court's class certification order under Federal Rule of Civil Procedure 23(f). Google's motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the pleadings, papers, and other documents on file in this action and the Ninth Circuit Appeal, Case Nos. 22-80140 & 23-15285, and such other evidence and argument presented to the Court at or prior to any hearing in this matter.

Before filing this motion, Google conferred with Consumer Plaintiffs, the State Attorneys General, Epic Games, and Match Group on this request for relief. All Plaintiffs oppose Google's requested relief.

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ........ 1

I. THE PRACTICAL PATH IS TO MOVE THIS CASE FORWARD, BUT POSTPONE TRIAL UNTIL AFTER THE NINTH CIRCUIT'S DECISION ........ 2

II. GOOGLE'S PROPOSAL IS WELL WITHIN THE COURT'S DISCRETION ........ 5

A. Google Has a Substantial Prospect of Obtaining a Favorable Decision in the Pending Appeal ........ 6

B. Google Faces Substantial and Irreparable Harm Absent a Stay ........ 7

C. Deferring Trial Conserves Judicial Resources and Promotes the Public Interest ........ 8

D. Deferring Trial Would Not Harm Plaintiffs ........ 9

III. PLAINTIFFS' POTENTIAL COUNTER-PROPOSALS ARE NEEDLESSLY COMPLICATED AND WASTEFUL ........ 10

A. Each Case in the Multidistrict Litigation Should Be Tried Together ........ 10

B. A Bifurcated Trial Would Be Inefficient and Risks Constitutional Error ........ 12

1. The Court Should Not Defer Injury to a Second Trial ........ 12

2. The Court Should Not Defer Damages to a Second Trial ........ 14

3. Bifurcation Will Not Address the Practical Concerns Identified by Google ........ 15

IV. CONCLUSION ........ 15

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) .......... 13

*Aoki v. Gilbert*, 2015 WL 5734626 (E.D. Cal. Sept. 29, 2015) .......... 12

*Apple v. Pepper*, 139 S. Ct. 1514 (2019) .......... 11

*Aronson v. Gannett Publ'g Servs. LLC*, 2020 WL 8610851 (C.D. Cal. Dec. 15, 2020) .......... 6, 8

*Beardsley v. All Am. Heating, Inc.*, 2007 WL 1521225 (W.D. Wash. May 22, 2007) .......... 12, 13

*In re Brand Name Prescription Drugs Antitrust Litig.*, 1998 WL 326721 (N.D. Ill. June 12, 1998) .......... 13

*Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) .......... 5

*Campbell v. Best Buy Stores, L.P.*, 2014 WL 12778925 (C.D. Cal. Aug. 15, 2014) .......... 13

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .......... 13

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) .......... 3, 7

*Dietz v. Bouldin*, 579 U.S. 40 (2016) .......... 2

*Escobar v. Nevada Helicopter Leasing LLC*, 2019 WL 5777713 (D. Haw. Nov. 5, 2019) .......... 12

*FTC v. Qualcomm, Inc.*, 969 F.3d 974 (9th Cir. 2020) .......... 12

*Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) .......... 7, 9

*Johnson v. City of Mesa*,
2022 WL 137619 (D. Ariz. Jan. 14, 2022) .......... 5, 6

*Kuang v. U.S. Dep't of Justice*,
2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) .......... 6, 7, 8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 2, passim

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......... 6

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 2, 6, 7, 8

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) .......... 11

*Pena v. Taylor Farms Pac., Inc.*,
2015 WL 5103157 (E.D. Cal. Aug. 31, 2015) .......... 7, 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
286 F.R.D. 88 (D.D.C. 2012) .......... 5

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
537 F.2d 1307 (5th Cir. 1976), abrogated on other grounds *by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) .......... 13

*In re Rhone-Polenc, Inc.*,
51 F.3d 1293 (7th Cir. 1995) .......... 12

*Romero v. Securus Techs., Inc.*,
383 F. Supp. 3d 1069 (S.D. Cal. 2019) .......... 1, passim

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 14

*Sweet v. City of Mesa*,
2022 WL 912561 (D. Ariz. Mar. 29, 2022) .......... 6

*Todd v. Tempur-Sealy Int'l, Inc.*,
2016 WL 6082413 (N.D. Cal. Oct. 18, 2016) .......... 9

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 13

*Wright v. Schock*,
742 F.2d 541 (9th Cir. 1984) .......... 8

-iii-

DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

**FEDERAL RULES**

Fed R. Civ. P. 23(f) ........................................ 1, passim

Fed. R. Civ. P. 42(b)........................................12

**OTHER AUTHORITIES**

https://www.ca9.uscourts.gov/general/faq/ ........................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Ninth Circuit recently granted Google's Rule 23(f) petition for review of this Court's November 28, 2022, Order certifying a consumer class. ECF No. 377, No: 3:20-cv-05761-JD (Feb 27, 2023). Google expects that the Ninth Circuit's decision will be issued after November 6, 2023, the date set for trial in this MDL.[1]

Parties often request and courts frequently grant a stay of all proceedings once a Rule 23(f) petition has been granted. *E.g.*, *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1072 (S.D. Cal. 2019). Google does not request that relief. Instead, Google proposes that the parties continue to move this case forward by completing expert depositions, dispositive motions, *Daubert* motions, and the expert "hot tub." But, in light of the expected timing of the Ninth Circuit's decision, the November 6, 2023, trial date, and the significant impact the Ninth Circuit's decision may have on any trial, Google submits that the most practical and sensible path forward is for the Court to exercise its inherent docket-management authority to defer the trial and final pre-trial conference in this MDL until after the Ninth Circuit has decided Google's appeal. Once the Ninth Circuit has ruled, the parties will be prepared to proceed to trial expeditiously.[2]

Google's proposal is the most efficient path forward, regardless of the outcome of the appeal. If the Ninth Circuit decertifies the consumer class, the ruling will have a profound effect on this litigation. The consumers' injury and damages model is central to the appeal, and a trial on that model should not go forward until the Ninth Circuit has weighed in. If the Ninth Circuit affirms, Google's request would, in all likelihood, result in only a modest postponement of the trial and still permit the Court to hold a single trial, which the Court has previously stated it prefers. Because the parties would continue to make progress on this case by completing expert

[1] Under the schedule issued by the Ninth Circuit, briefing on the appeal will be completed on July 31, 2023, with argument and a decision to follow. Based on the Ninth Circuit's guidance on the timing of argument and decision, an opinion is unlikely to be issued before November 2023. *See* U.S. Court of Appeals for the Ninth Circuit, *Frequently Asked Questions* #17 and 18 (updated Jan. 2023) (addressing time to oral argument and decision), https://www.ca9.uscourts.gov/general/faq/.

[2] Before filing this motion, Google conferred with Consumer Plaintiffs, the State AGs, Epic Games, and Match Group on this request for relief. All Plaintiffs oppose Google's requested relief.

discovery, summary judgment motions, *Daubert* motions, and expert "hot-tub" proceedings, there would be only limited work remaining after the Ninth Circuit's decision.  To further ensure that any delay is as short as possible, if this Court agrees to sequence the trial to follow the Ninth Circuit's decision, Google will seek to expedite the Ninth Circuit appeal.  Google hopes that Consumer Plaintiffs will join in that request.

As discussed in Part I, below, Google's proposal is the most practical, fair, and efficient path forward.  By contrast, proceeding to trial before the Ninth Circuit rules would threaten several negative consequences: wasted judicial resources, multiple trials, confusion and uncertainty in the class notice process, and prejudice to Google.  The modest postponement Google proposes avoids these risks and does not harm Plaintiffs.  Moreover, as discussed in Part II, regardless of the specific test the Court applies—the three-factor *Landis* test or the four-factor *Nken* test—deferring trial until the Ninth Circuit rules is the appropriate outcome.  Finally, Part III addresses why alternative approaches, such as a partial trial against some Plaintiffs or a trial of only some issues are impractical and prejudicial.  As this Court previously recognized, this case should be tried only once.  *E.g.*, Hr'g Tr. 49:17-19 (Aug. 4, 2022), No. 21-md-02981-JD.

## I. THE PRACTICAL PATH IS TO MOVE THIS CASE FORWARD, BUT POSTPONE TRIAL UNTIL AFTER THE NINTH CIRCUIT'S DECISION

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."  *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  In light of the pending appeal, the most efficient and expedient path forward is for the parties to continue trial preparation—including expert discovery and *Daubert* and dispositive motions—but for the Court to defer the trial until after the Rule 23(f) appeal is resolved.

**First**, Google's proposal will not prejudice Plaintiffs and will allow the parties to keep making substantial progress on this case.  Much remains to be done before the parties get to trial.  Currently, the parties are in the process of completing the depositions of 11 Plaintiff experts and 7 Google experts.  The parties will then brief dispositive and *Daubert* motions.  That briefing will not be complete until June 8, 2023.  Based on that briefing and based on which experts are the subject of *Daubert* motions, the Court will set dates for a dispositive motion hearing and the

expert "hot tub" proceedings. Google's proposal will not interfere with any of these pre-trial activities. Instead, for the reasons described below, Google proposes that the Court merely defer trial (and the final pre-trial conference) until after the Ninth Circuit has resolved the interlocutory appeal.

Plaintiffs will not be prejudiced by a deferral of the trial date pending the Ninth Circuit's decision. There is no particular reason Plaintiffs must have a trial in November 2023 rather than in 2024. Indeed, as discussed below, Plaintiffs themselves have previously requested schedule modifications that resulted in moving the trial date. *See supra* Part II.D. And in any event, the costs of a deferral, if any, are vastly outweighed by the efficiencies of sequencing this trial to follow the Ninth Circuit's ruling.

**Second**, proceeding to trial before the Ninth Circuit has decided whether the consumer class was properly certified threatens unnecessarily to waste judicial and party resources. If Google prevails at trial and the Ninth Circuit vacates the class certification order, then class members will not be bound to the trial verdict. Despite prevailing at trial, Google would face—and this Court would be burdened with—additional litigation to adjudicate the parties' rights. Alternatively, if the consumer class prevails at trial and the Ninth Circuit vacates the class certification order, the jury's verdict will have to be set aside. In either scenario, the Ninth Circuit's decision will upend the verdict.

Google recognizes that, as in any class action case, there is the theoretical possibility that a post-trial appeal could result in decertification. But Rule 23(f) is designed to identify the "rare cases in which *interlocutory* review is preferable to end-of-the-case review." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (emphasis added). Now that the Ninth Circuit has determined that interlocutory review is preferable here, this Court should allow the Ninth Circuit to complete its review before the Court and the parties expend the resources required to conduct a complex, high-stakes, and high-cost trial. As currently certified, the consumer class involves *21 million* individuals and *billions* of dollars in alleged damages. ECF No. 383 at 12, 18.[3]

[3] ECF citations are to the MDL docket, No. 3:21-md-02981-JD, unless otherwise specified.

**Third**, the Ninth Circuit's decision will also affect the evidence that Consumer Plaintiffs and the State AGs may rely on at trial to demonstrate Article III standing, antitrust injury, and damages.  Google's petition for interlocutory review asserted that: (1) there was insufficient analysis of the extent to which the class is composed of individuals who lack injury, (2) Consumer Plaintiffs' antitrust injury model did not account for independent variables affecting whether a consumer is uninjured, and (3) the class certification order did not sufficiently account for individualized damages issues in certifying the class.

Because Google's petition focused on the extent to which the class includes—and Consumer Plaintiffs' expert's model accounts for—uninjured class members, the Ninth Circuit will necessarily scrutinize the consumer class's damages and injury model that formed the basis of their class certification motion.  *See* ECF No. 280, No: 3:20-cv-05761-JD  (N.D. Cal. May 26, 2022).  The State AGs, who seek to represent millions of consumers in their states as *parens patriae*, have likewise advanced and rely on that same damages and injury model from Prof. Singer.  If this case proceeds to trial, then Prof. Singer's model will be a central issue for the parties and the jury. Plaintiffs will argue, based on Prof. Singer's model, that millions of consumers—and all class members—were harmed by Google's conduct to the tune of billions of dollars in the aggregate.  Google will of course argue that the model is deeply flawed and that real-world evidence shows that consumers were not injured.  Given the central role Prof. Singer's model will play at trial, it does not make sense to go forward with trial before the Ninth Circuit addresses the issues that Google has raised regarding this novel model.  Instead, deferring trial would "ensure the proper resolution of the important issues raised in this case by preventing potentially wasteful work on the part of the court and the parties."  *Romero*, 383 F. Supp. 3d at 1077.

**Fourth**, proceeding to trial before the appeal is resolved will inject unnecessary confusion into an already-complicated class notification process.  Before this case can proceed to trial as a nationwide class action, class notice must be disseminated and consumers must be provided with an opportunity to opt out.  But the Court should not disseminate class notice until the Ninth Circuit has rendered its decision.  As the Manual for Complex Litigation notes, in the context of a Rule

23(f) petition, "the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination." Manual for Complex Litigation (Fourth) § 21.28 (2004). Those risks—confusion and the substantial expense of renotification—are particularly salient in this case, which involves a massive class of 21 million consumers. In these circumstances, the "public interest consideration counsels in favor of staying class notice." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012).

In *Brown*, for example, the district court held that issuing class notice while a Rule 23(f) petition was pending risked "generating confusion among class members." *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012). Given the size of the class in *Brown*—22,000 individuals—"a curative notice would not be sufficient to stem the confusion that would arise in the event of a change to the class definition or decertification of the class altogether." *Id.* Here, with a class that is nearly *1000 times* larger than the class in *Brown*, curative notice would be even less effective in stemming potential confusion.[4]

Because it does not make sense to issue class notice until the Ninth Circuit has ruled—and because issuing class notice is a prerequisite to proceeding to trial—the Court should adopt Google's proposal to defer trial until after the Ninth Circuit's decision.

## II. GOOGLE'S PROPOSAL IS WELL WITHIN THE COURT'S DISCRETION

"[T]he majority approach taken by courts in this circuit" is to evaluate a request to defer or stay judicial proceedings as an exercise of the Court's discretion as "guided by the *Landis* factors." *Johnson v. City of Mesa*, 2022 WL 137619, at *2 & n.1 (D. Ariz. Jan. 14, 2022) (emphasis added). As the Supreme Court explained in *Landis*, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to stay proceedings under *Landis*, courts consider: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a

[4] For example, some class members who receive initial notice may ignore or not see subsequent curative notice, including because the class member changes address.

party may suffer [in being required] to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Kuang v. U.S. Dep't of Justice*, 2019 WL 1597495, at *2 (N.D. Cal. Apr. 15, 2019) (internal quotation marks and citation omitted).

Some courts in this circuit, however, have applied the standard from *Nken v. Holder*, 556 U.S. 418 (2009). The *Nken* test involves weighing the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (internal quotation marks and citation omitted). Courts apply these factors flexibly, "so that a stronger showing of one element may offset a weaker showing of another." *Aronson v. Gannett Publ'g Servs. LLC*, 2020 WL 8610851, at *2 (C.D. Cal. Dec. 15, 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 964-66 (9th Cir. 2011)).

"[D]istrict courts that have directly confronted the question [whether to apply *Nken* or *Landis*] have overwhelmingly concluded that the *Landis* test or something similar governs." *Kuang*, 2019 WL 1597495, at *3. These Courts have reasoned that *Nken* governs the stay of a district court's "judgment or order pending an appeal," "while *Landis* applies to the decision to stay proceedings, regardless whether the stay is based on a direct appeal or an independent case." *Id.*; *Johnson*, 2022 WL 137619, at *2 n.1; *Sweet v. City of Mesa*, 2022 WL 912561, at *2 (D. Ariz. Mar. 29, 2022).

In this case, postponement of the trial pending the Ninth Circuit's review is appropriate under both *Nken* and *Landis*.

**A. <u>Google Has a Substantial Prospect of Obtaining a Favorable Decision in the Pending Appeal</u>**

Under *Nken*, courts first consider the stay applicant's likelihood of success on the merits. *Nken*, 556 U.S. at 426. Because the Ninth Circuit has accepted Google's Rule 23(f) petition, this Court should conclude, for the purposes of this motion, that Google has a substantial prospect of prevailing on the issues raised in its petition and obtaining vacatur of the class certification order.

The Ninth Circuit has held that "Rule 23(f) review should be a rare occurrence" and that such petitions "should be granted sparingly." *Chamberlan*, 402 F.3d at 955, 959. Therefore, "[t]he Ninth Circuit's acceptance of [Google's] Rule 23(f) petition for appeal demonstrates that serious legal questions are at issue." *Romero*, 383 F. Supp. 3d at 1074. "By granting" Google's petition "to appeal under Rule 23(f), the Ninth Circuit has already weighed in on the substantiality of [its] case for relief." *Pena v. Taylor Farms Pac., Inc.*, 2015 WL 5103157, at *3 (E.D. Cal. Aug. 31, 2015).

**B. <u>Google Faces Substantial and Irreparable Harm Absent a Stay</u>**

Proceeding to trial before the Ninth Circuit resolves the class-certification appeal on which it granted interlocutory review would likely inflict harm on Google that is both substantial and irreparable. This harm suffices under either the *Landis* or *Nken* tests. Under *Landis*, courts consider "the hardship or inequity which a party may suffer [if the case is allowed] to go forward." *Kuang*, 2019 WL 1597495, at *2 (citation omitted; brackets in *Landis*). Under *Nken*, courts require a showing that the movant "will be irreparably injured absent a stay." *Id.* (quoting *Nken*, 556 U.S. at 434).

If Google must proceed to trial before the Ninth Circuit has ruled, it will effectively have lost the opportunity to pursue the very interlocutory appeal that the Ninth Circuit just authorized. *See Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) (finding irreparable harm when forcing defendants to litigate before a 23(f) appeal is heard would render the right to appeal "meaningless"). It is no answer to say that Google can obtain post-trial review of the Court's class certification order. As the Ninth Circuit has recognized, the point of Rule 23(f) is to identify the "rare cases in which *interlocutory* review is preferable to end-of-the-case review." *Chamberlan*, 402 F.3d at 959 (emphasis added).

In addition, if this case proceeds to trial before the Ninth Circuit rules, Google will incur substantial, unrecoverable time, money, and resources. Although "routine discovery and litigation costs that are unavoidable regardless of the outcome of the appeal do not amount to irreparable harm," "courts have found irreparable harm probable where an appeal may result in decertification of the class, thereby resulting in a substantial waste of time and resources."

*Romero*, 383 F. Supp. 3d at 1075. Here, Google does not seek to avoid routine discovery and litigation costs. On the contrary, Google is prepared to complete expert discovery, *Daubert* motions, and summary judgment to keep this case moving forward. Google instead seeks to ensure that it does not unnecessarily expend the very substantial litigation costs that would be incurred in a complex and high stakes jury trial involving a class of *21 million* people and *billions* of dollars in asserted damages. Moreover, the unnecessary trial costs that Google would incur if this case went to trial and the class were later decertified would constitute irreparable harm because there is no mechanism for Google to recover those costs. *See Pena*, 2015 WL 5103157, at *4-5.

Worse, forcing Google into a trial before the Ninth Circuit has ruled has the potential to create an inequitable and prejudicial situation for Google. Even if Google decisively prevails at trial, the class will not be bound to the trial verdict if the Ninth Circuit subsequently vacates class certification. *See Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("The judgment will not be res judicata as to other individual plaintiffs or other members of any class that may be certified."). Despite *winning* a complex and costly trial, Google would face the prospect of further litigation from successive consumer plaintiffs and additional class action or representative proceedings.

### C. <u>Deferring Trial Conserves Judicial Resources and Promotes the Public Interest</u>

In applying the *Landis* factors, the Court should consider "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Kuang*, 2019 WL 1597495, at *2. "[C]onsiderations of judicial economy are highly relevant to this evaluation." *Id.* at *5 (internal quotations and citation omitted). Similarly, if the Court were to apply the *Nken* test, it would consider "where the public interest lies." *Id.* at *2 (citation omitted).

"[T]he public generally has an interest in accuracy of judicial proceedings and in efficient use of government resources." *Aronson*, 2020 WL 8610851, at *3 (citation omitted). As explained above, proceeding to trial before the Ninth Circuit rules poses substantial risk of wasting significant judicial resources. *Supra* Part I. The trial is currently scheduled to last for three weeks.

Therefore, repeating this trial unnecessarily could mean *months* of resources wasted. *See Romero*, 383 F. Supp. 3d at 1077; *see Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 6082413, at *2 (N.D. Cal. Oct. 18, 2016) ("stay would avoid the parties and the Court wasting resources on litigation that might be changed on appeal"); *Gray*, 2011 WL 6934433, at *3.

Moreover, the class confusion risks discussed *supra* Part I also weigh in favor of deferring trial. Nobody is served—not Google, not the class, and not the public—by injecting unnecessary complexity into an already complex notice procedure for 21 million class members.

**D. <u>Deferring Trial Would Not Harm Plaintiffs</u>**

Plaintiffs do not face any material harm or prejudice from a delay in the trial date. Google's request here is the most efficient path forward—a deferral of the trial and final pre-trial conference, combined with a motion to expedite the appeal in the Ninth Circuit in order to ensure the deferral is as short as possible. Google is prepared to continue with the rest of the case schedule, including expert depositions, summary judgment motions, and *Daubert* motions.

Plaintiffs themselves have requested modifications to the case schedule previously in this litigation. For example, Consumer and State Plaintiffs asked for a month-long extension to complete additional discovery in August 2022, which resulted in the trial being moved from April 3, 2023 until June 5, 2023. *See* ECF Nos. 307 & 338. Similarly, Epic Games and Match Group amended their complaints after the close of fact discovery to add new *per se* claims against Google. ECF No. 343. They made this choice despite the clear risk that such amendment would result in a later trial date, which is exactly what happened. *See* ECF Nos. 374 & 392. And the Court will recall that Match Group previously proposed a trial in *2024*. ECF 309.

Given Google's plan to continue with all remaining steps of trial preparation and to move for the Ninth Circuit to expedite proceedings should this Court agree to set trial for after the Ninth Circuit's decision, any delay caused by the modest deferral that Google requests is far outweighed by the many reasons to grant relief.

## III. PLAINTIFFS' POTENTIAL COUNTER-PROPOSALS ARE NEEDLESSLY COMPLICATED AND WASTEFUL

Based on the parties' discussions regarding Google's request to defer the trial in this action, Google understands that Plaintiffs may propose certain alternative approaches. As discussed below, those alternatives should be rejected in favor of Google's proposal.

### A. Each Case in the Multidistrict Litigation Should Be Tried Together

Plaintiffs may suggest that, regardless of whether trial is deferred for the consumer class, the other Plaintiffs—the State AGs, Match, and/or Epic—should proceed to trial in November. But that approach does not have anything to recommend it.

Throughout the litigation, this Court has consistently recognized that the best path forward is a single trial. *E.g.*, Hr'g Tr. 48:17-19 (Aug. 4, 2022), No. 21-md-02981-JD; Hr'g Tr. 21:9-19 (Dec. 16, 2021), No. 21-md-02981-JD (N.D. Cal.). Indeed, when Epic Games previously suggested moving forward with a trial before the class, this Court unequivocally rejected the concept of multiple trials, explaining:

> Now, [Epic Games] brought the exactly same antitrust claims that every other plaintiff brought. Why would I ever try that separately? What if the jury in your case said no, there had been no antitrust violation? And then Google has to go through it again as if that never happened? That doesn't make any sense. That's the whole point of what I'm talking about. We're not going to do that. All right? … So, please, put that out of your mind. That's not going to happen.

Hr'g Tr. 21:9-19 (Dec. 16, 2021), No. 21-md-02981-JD (N.D. Cal.).

Google agrees that the cases should be tried together. Nothing about the Rule 23(f) appeal changes the efficiencies that are gained from a single trial. Each case raises similar and overlapping antitrust claims based on the same market definitions. Plaintiffs also share numerous expert witnesses amongst themselves, and Google has retained a single set of experts to respond to Plaintiffs' experts. At trial, Plaintiffs will likely rely on testimony from the same core set of witnesses. The documentary evidence will also overlap because all of the Plaintiffs have asserted claims based on Google's agreements with developers (the Developer Distribution Agreement and Project Hug agreements), carriers (Revenue Share Agreements), and equipment manufacturers (Mobile Application Distribution Agreements). In addition, the State AGs have advanced the

same injury and damages model as the consumer class—the very model that will be reviewed by the Ninth Circuit.  Given all this overlap, it does not make sense to split this case into multiple trials.

Moreover, a single trial is particularly efficient in the circumstances of this litigation. Plaintiffs all agree that the Google Play store is a two-sided platform.  *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2280-81 (2018) (explaining that "a two-sided platform offers different products or services to two different groups who both depend on the platform to intermediate between them.").  Consumers (represented by the consumer class and State AGs) are on one side of the market and developers (like Epic and Match) sit on the other side of the market.  Whether Google's conduct is anticompetitive can only be assessed by looking at both sides of the market simultaneously.  *Id.* at 2287 ("Evaluating both sides of a two-sided transaction platform is … necessary to accurately assess competition.") (reversing judgment based on effects on only one side of two-sided transaction platform).  It is therefore efficient to proceed to trial with both sides of the alleged market.

Indeed, proceeding to trial with only one side of the market risks both inconsistent results and "duplicative damages awards totaling more than the full amount [the alleged antitrust violator] collected…."  *Apple v. Pepper*, 139 S. Ct. 1514, 1529 (2019) (Gorsuch, J., dissenting).  Match Group alleges that it was injured because it paid supracompetitive service fees.  Epic, too, claims harm as a developer.  By contrast, the consumers' and States' theory of damages is that consumers were injured because developers passed on alleged supracompetitive service fees to individual consumers.  Thus, if trial goes forward with only some plaintiffs, the jury in that trial could decide that consumers bore the brunt of any elevated service fees while a jury in a later trial could conclude that developers were injured by such fees.  The most efficient way for the jury to sort out these conflicting theories of injury and damages is to have all claims as to all sides of the platform litigated at the same trial.

In short, the only path forward that makes sense, that preserves public resources, and that is fair to Google is a single trial.  The Court should exercise its inherent authority to manage this case "with economy of time and effort for itself, for counsel and for litigants" by proceeding with

a single trial. *Landis*, 299 U.S. at 254; *Cf. Beardsley v. All Am. Heating, Inc.*, 2007 WL 1521225, at *2 (W.D. Wash. May 22, 2007) (explaining, in light of a bankruptcy stay, that "even if the automatic stay does not extend to all of AAH's co-defendants, the Court has inherent authority to stay this litigation in its entirety.").

### B. A Bifurcated Trial Would Be Inefficient and Risks Constitutional Error

During the parties' meet-and-confer discussions, consumer counsel suggested that, rather than defer trial, the Court could proceed with a bifurcated trial, with injury and damages issues deferred to a second trial (and second jury) and other issues addressed by a first trial (and first jury). Regardless of the precise contours of consumers' suggestion, the Court should proceed with a single, unified trial before a single jury.

Although courts have discretion under Rule 42(b) to bifurcate trials, bifurcation "is not to be routinely ordered." *Aoki v. Gilbert*, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 29, 2015); 1966 Advisory Committee's Notes to Rule 42. "The party requesting bifurcation has the burden of proving that bifurcation is justified given the particular circumstances." *Aoki*, 2015 WL 5734626, at *4. "In determining whether separate trials are appropriate, courts consider several factors, most commonly whether separate trials will result in judicial economy and whether separate trials will unduly prejudice either party." *Escobar v. Nevada Helicopter Leasing LLC*, 2019 WL 5777713, at *3 (D. Haw. Nov. 5, 2019). When evaluating a motion to bifurcate, "the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). When bifurcating a trial between separate juries, the Seventh Amendment requires that courts "carve at the joint." *In re Rhone-Polenc, Inc.*, 51 F.3d 1293, 1302 (7th Cir. 1995).

#### 1. The Court Should Not Defer Injury to a Second Trial

To the extent Plaintiffs propose that the Court should defer both injury and damages to a later trial, that proposal makes no sense and would be unworkable. In an antitrust case such as this, "injury" and "liability" cannot be disentangled—indeed, "injury" is a core part of the Plaintiffs' liability case. *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) ("To establish liability under § 2, a plaintiff must show … causal antitrust injury." (internal quotation marks and citation omitted)). As the Ninth Circuit has recognized, "the antitrust injury analysis must begin

with the identification of the defendant's specific unlawful conduct." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999).  For antitrust injury to occur, that conduct must cause "an injury to the plaintiff" that "flows from that which makes the conduct unlawful." *Id.*  Likewise, Google cannot be held liable at trial unless Plaintiffs establish an Article III injury-in-fact as to *all* Plaintiffs, including "[e]very class member." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In practical terms, to evaluate whether a plaintiff suffered antitrust injury and Article III injury-in-fact, the jury must identify the alleged conduct at issue, evaluate the effects of that conduct on the market, determine whether the effects of that conduct injured the plaintiff, and determine if that injury "flows from that which makes the conduct unlawful." *Am. Ad. Mgmt.*, 190 F.3d at 1055.  These issues have significant evidentiary and logical overlap with the question of whether the defendant engaged in anticompetitive conduct such that it does not make sense to try these issues separately and before two separate juries.  *See Campbell v. Best Buy Stores, L.P.*, 2014 WL 12778925, at *11 (C.D. Cal. Aug. 15, 2014) (rejecting bifurcation where "a determination of liability" also required showing "that the class members were injured …."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1998 WL 326721, at *4 (N.D. Ill. June 12, 1998) (rejecting proposal to separate liability and injury issues because the "'fact of injury' question is clearly part of the liability wing of an antitrust case …."); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1320-21 (5th Cir. 1976) (explaining that even where an antitrust trial is bifurcated, injury and liability are inseparable and that "there must be some evidence showing a causal link between the violation and alleged injury" in the liability phase), *abrogated on other grounds by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977).  There is no logical, sensible, or efficient way to separate out *some* elements of antitrust liability—such as market or monopoly power and anticompetitive conduct—for one trial and jury and defer the question of injury to a second trial and jury.

For the same reasons, Consumer Plaintiffs' approach would risk violating Google's Seventh Amendment rights.  "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano v. Am.*

*Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996). But, because of the close relationship between injury and the other elements of antitrust liability, Consumer Plaintiffs' bifurcation plan would risk two separate juries passing on the same fact issues.

Moreover, a trial as to only certain elements of liability—without addressing injury—would violate the Supreme Court's clear instructions that courts may not proceed to merits-related issues before ascertaining that the Article III injury-in-fact has been adequately proven. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (quotation marks and alteration omitted).

**2. The Court Should Not Defer Damages to a Second Trial**

Plaintiffs may propose instead that the Court conduct a first trial on all liability issues (including injury) and defer damages. Bifurcating liability and damages would result in a first jury assessing injury and a second jury assessing damages. That approach is untenable due to the issues before the Ninth Circuit and the way the consumer class was certified.

As the Court previously noted, antitrust injury was the class certification element "most hotly contested by Google." ECF No. 383 at 15. Consumer Plaintiffs sought and obtained class certification on the basis of Prof. Singer's "overcharge" model. That model purports to show antitrust injury on a classwide basis by demonstrating that Google charged a supracompetitive service fee that was passed through to all consumers by app developers. *See* ECF No. 383 at 15-25. Prof. Singer's model and the basis for the class certification decision with respect to injury are therefore at the very core of Google's appeal. Accordingly, for all the reasons discussed in this motion, *see* Parts I and II, it does not make practical or logical sense for the Court and the parties to proceed to a trial while the Ninth Circuit is reviewing these precise issues.

In addition, in the circumstances of this case, bifurcating antitrust injury and damages raises a Seventh Amendment problem. Consumer Plaintiffs (and State AGs) rely on Prof. Singer's overcharge model to demonstrate damages. *See* ECF No. 383 at 23. Indeed, the purported overcharges predicted by Prof. Singer's model constitute *both* the injury and the damages allegedly suffered by each consumer. Therefore, after a first jury passes on Prof. Singer's model

to address the issue of injury, a second jury would have to re-examine the same model to assess damages to each consumer.

#### 3. Bifurcation Will Not Address the Practical Concerns Identified by Google

Finally, bifurcation would not actually solve many of the logical and practical reasons why it does not make sense to proceed with a trial until the Ninth Circuit has issued its decision. For example, it would not address the concern that, even if Google prevails at trial, the class would not be bound to that verdict if the Ninth Circuit vacates the class certification order. Nor would bifurcation address the inefficiency of issuing class notice to 21 million class members before the Ninth Circuit has decided whether a class is appropriate. Rather than injecting additional complexity into this already complex case through the logistical gymnastics of bifurcation, the Court should, as Google proposes, simply defer the previously-contemplated single trial in this action until after the Ninth Circuit's decision.

## IV. CONCLUSION

For the foregoing reasons, the Court should defer the trial in this matter pending the resolution of class certification issues in the Ninth Circuit.

DATED: March 16, 2023

Respectfully submitted,

By: */s/ Glenn D. Pomerantz*
Glenn D. Pomerantz

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER TOLLES & OLSON LLP**
560 Mission St., Suite 2700
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

-16-
DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC et al.*

-17-
DEFENDANTS' MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD