Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic
Games, Inc. v. Google LLC et al.*

[Additional counsel appear on signature page]

John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:     (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC;
Humor Rainbow, Inc.; PlentyofFish Media ULC;
and People Media, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD<br><br>*Match Group, LLC et al., v. Google LLC et al.*,<br>Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br><br>**EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY**<br><br><br>Judge:  Hon. James Donato<br>Date:  April 20, 2023<br>Time:  10:00 a.m.<br>Courtroom:  11 |

1

**TABLE OF CONTENTS**

2

**Page**

3   TABLE OF AUTHORITIES .................................................................................................... ii

4   BACKGROUND ................................................................................................................... 3

5   I.   Epic's Case ................................................................................................................ 3

6   II.   Match's Case ............................................................................................................. 4

7   III.   Certification of the Consumer Class and Google's Rule 23(f) Appeal ..................... 6

8   LEGAL STANDARD ............................................................................................................ 6

9   ARGUMENT ........................................................................................................................ 8

10   I.   A Stay Would Cause Substantial Injury to Epic, Match and the Public. ..................... 8

11   II.   Maintaining the November 2023 Trial Date Is in the Public Interest. ....................... 10

12   III.   Google Has Failed to Show Irreparable Injury. ....................................................... 11

13   A.   Google Would Not Be Irreparably Harmed if Epic's and Match's Cases Went to Trial as Scheduled. ........................................................................ 11

14

15   B.   The Rule 23(f) Appeal Will Have No Effect on Epic's or Match's Cases. ................... 14

16   CONCLUSION .................................................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aldapa v. Fowler Packing Co., Inc.*, 2016 WL 6124216 (E.D. Cal. Oct. 20, 2016) .............................. 10

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633 (9th Cir. 2013) ........................................ 9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)........................................................ 14

*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999) ........................................................ 6, 7

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016) ........................................................... 11

*Doe v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ...........................................................................7, 8, 11, 14

*Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) ................................................. 13

*Flores v. Barr*, 977 F.3d 742 (9th Cir. 2020)........................................................................................ 6, 7

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) .......................................................... 14

*In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2412176 (N.D. Cal. May 29, 2018)............. 7, 14

*In re Packaged Seafood Prod. Antitrust Litig.*, 2020 WL 2745231 (S.D. Cal. May 27, 2020) ...................................................................................................................................7, 10, 12, 13

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017) .............................................................. 6

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .........................................................................................7, 11

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ...............................................................7, 10, 11

*Melnik v. Dzurenda*, 2020 WL 1324993 (D. Nev. Mar. 20, 2020)........................................................ 11

*Moorer v. Stemgenex Medical Grp., Inc.*, No. 19-56500 (9th Cir.).......................................................... 9

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................................... 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-565514, Dkt. 36 (9th Cir. Jun. 1, 2020) ....................................................................................................................7, 13

*Owino v. CoreCivic, Inc.*, 2021 WL 3186500 (S.D. Cal. July 28, 2021) ................................................. 7

*Pac. Cheese Co. v. Advanced Coil Tech., LLC*, 2019 WL 1062369 (D. Nev. Mar. 6, 2019)................. 11

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ...................................................................................................................................................... 9

*Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107 (9th Cir. 2014)............................................ 14

*US Airways, Inc. v. Sabre Holding Corp.*, No. 11-cv-2725, Dkt. 1209 (S.D.N.Y. May 25, 2022) ...................................................................................................................................................... 13

*Williams v. Warner Music Group Corp.*, No. 20-55419, Dkt. 9 (9th Cir. Jun. 30, 2020) ........................ 7

*Williams v. Warner Music Grp. Corp.*, 2020 WL 2303099 (C.D. Cal. Apr. 14, 2020).........................11

**Statutes & Rules**

Fed. R. Civ. P. 1...............................................................................................................................11

**Other Authorities**

Android Developers Blog, *Continuing Our Commitment to User Choice Billing* (Nov. 10, 2022), available at https://android-developers.googleblog.com/2022/11/continuing-our-commitment-to-user-choice-billing.html ...............................................................................5

Ninth Circuit Frequently Asked Questions, https://www.ca9.uscourts.gov/general/faq .........................2

Plaintiff Epic Games, Inc. ("Epic") and Plaintiffs Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc. (collectively, "Match") submit this joint opposition to Defendants' ("Google's") Motion to Defer or Stay Trial (MDL Dkt. 467).

On August 13, 2020, Epic filed the first lawsuit in the country challenging Google's anticompetitive app store practices. ***Epic does not seek damages***, but instead seeks an injunction to end Google's anticompetitive conduct. That conduct—which includes illegal ties and *per se* unlawful agreements involving payments not to compete—prevents competition for app distribution and in-app payment solutions on billions of Android devices. This harm is substantial and ongoing: Google actively prevents the development of alternative app stores that would benefit developers and consumers, extracts billions of dollars in monopoly rents each year, and denies developers and consumers the benefits of lower prices and increased innovation that competition would bring. Epic's injury is incontestable: Google removed Epic's *Fortnite* app from Google Play, thwarted Epic's attempts to preload its apps on Android phones and effectively foreclosed Epic from launching the Epic Games Store on Android.

When Google threatened to similarly remove Match apps from Google Play starting June 1, 2022, Match filed suit on May 9 challenging the same conduct by Google seeking injunctive relief and damages. The following day, Match sought a temporary restraining order to enjoin Google's conduct. As with Epic, Google is hindering Match's product development, harming Match's users and its relationship with them, and forcing Match and its users to pay supracompetitive prices.

These harms are ongoing and will continue until Google's antitrust violations are enjoined. With its opportunistic motion, Google seeks to prolong its anticompetitive conduct by delaying plaintiffs' day in court again, this time potentially ***for years***. It should not be permitted to do so.

At the outset of this case, more than two and a half years ago, the parties—*including Google*—jointly proposed an April 26, 2022 trial date. (*Epic* Dkt. 87.) Epic preferred that its own trial proceed on an earlier date, but it agreed to a joint trial on April 26, 2022 in the interest of cooperation and efficiency. That trial date has now been pushed back ***four times***—not once because of a request by Epic—resulting in the current trial date, November 6, 2023, over three years after Epic filed its complaint. Google now seeks to postpone the trial indefinitely because of an interlocutory appeal of

the **consumers'** class certification motion that has **no bearing** on Epic's or Match's claims.  Google represents that its proposal would "in all likelihood, result in only a modest postponement of the trial". (Google Br. 1.)  That is disingenuous; Google cannot credibly or definitively predict the length of time the Ninth Circuit will take to render its decision (or how long any attendant remand or subsequent appeal could take).  In fact, Rule 23(f) appeals in the Ninth Circuit typically last for more than a year.[1] But the stay Google seeks would last much longer; if Google succeeds on its appeal, this Court would likely need to hold additional class certification proceedings, and those could again be appealed.  And if the Ninth Circuit affirms, Google reserves the right to take a further appeal.

Google's burden for obtaining a stay is steep.  It must show that it would suffer irreparable harm absent a stay and that a stay will not harm Epic, Match or the public.  Google does not even come close to meeting its burden.  It ignores the manifest prejudice that Epic, Match and the public would suffer if Google's ongoing antitrust violations continue unabated for additional years, while Google and the consumers resolve their class certification issues—which pertain to monetary damages for past conduct, but have no bearing on the injunctive relief plaintiffs seek (indeed, Epic seeks *only* injunctive relief).  The Rule 23(f) appeal has **nothing** to do with the illegality of Google's conduct.  Nor does it have anything to do with Epic's or Match's cases, which will go to trial no matter how the appeal is resolved.  Google does not argue otherwise; instead, it relies on this Court's statements about the benefits of holding a single trial, which were made before any Rule 23(f) appeal and in the context of cases that could proceed, in their entirety, on similar schedules.  That is no longer true, but a joint trial on antitrust issues common to all parties, including Epic, Match, the States, and the consumers, can still proceed as scheduled as outlined in the consumers' and States' oppositions.

Google has failed to meet its burden as to a trial on Epic's or Match's claims, and its motion should be denied.  The Court should therefore proceed as currently planned with the November 6, 2023 jury trial to resolve Epic's and Match's cases and any portion of the other plaintiffs' cases that are unaffected by the Rule 23(f) appeal.

---

[1] Indeed, the Ninth Circuit guidance Google cites states that civil appeals are typically *set for argument* "approximately 6 - 12 months from the notice of appeal date, or approximately 4 months from completion of briefing".  Frequently Asked Questions, https://www.ca9.uscourts.gov/general/faq. The court's decision can then come many months or even a year or more after argument.

# BACKGROUND

## I.    Epic's Case

On August 13, 2020, Epic initiated this lawsuit, bringing claims for injunctive relief against Google under Sections 1 and 2 of the Sherman Act, the California Cartwright Act, and the California Unfair Competition Law.  (*Epic* Dkt. 1.)  Epic alleges that Google dominates the markets for app distribution and in-app payment solutions on Android as a result of contractual and technical restraints that Google imposes on Android developers and original equipment manufacturers.  Among other things, Google requires that Google's own app store, Google Play, be preinstalled on virtually all Android devices; makes downloading competing app stores prohibitively difficult; forces developers to use Google's payment solution, Google Play Billing ("GPB"), when they sell digital content within their own Android apps; and, for most transactions, takes a supracompetitive 30% fee on in-app purchases.  These actions foreclose Epic and other developers from offering their own app stores and in-app payment solutions.  Epic does not seek any monetary damages from Google.  Instead, Epic seeks only to bring an end to the ongoing, irreparable harm caused by Google's anticompetitive practices and to open up the Android ecosystem to fair competition.

From the outset of this case, Epic sought a speedy trial.  Epic initially negotiated an April 26, 2022 trial date and jointly proposed it to the Court with Google and the other plaintiffs.[2]  (*Epic* Dkt. 87.)  Epic has never sought to push the trial beyond that date.  However, in the spirit of compromise and coordination, Epic acquiesced to the trial date being moved back four times, to accommodate the needs of parties other than Epic:

1.    After the State plaintiffs filed their case against Google, the parties proposed a new schedule to accommodate the State plaintiffs' entry to the case.  Although Epic preferred to maintain the original trial date, it agreed to jointly propose with the other plaintiffs September 21, 2022 for a trial on liability issues (but not damages), while Google proposed an October 25, 2022 date.  (MDL Dkt. 91 at 5, 12.)  On October 22, 2021, the Court entered a scheduling order setting an October 17, 2022 date for a joint trial.  (MDL Dkt. 122.)

2.    On December 9, 2021, the consumers and Google sought an extension of time for Rule 23 issues.  (MDL Dkt. 159 at 1.)  These issues had no relation to Epic's case, but Epic accommodated the request.  The parties proposed a January 30, 2023 trial.  (MDL Dkt. 181, Ex. A.)  The Court ordered an April 3, 2023 trial.  (MDL Dkt. 191 at 2.)

---

[2] The Court did not enter the scheduling order, but the parties proceeded accordingly.

3.   On August 3, 2022, all plaintiff groups except Epic sought an extension of the case schedule that would include a later trial date.  (MDL Dkt. 307, 309.)  During an August 4, 2022 hearing, Epic told the Court that the then-current April 2023 date was "already 30 months from the initial case management conference", and that further delay would prejudice Epic.  (8/4/2022 Tr. 50:20-51:9.)  Epic made clear:  "We are ready.  We want to go [to trial]".  (*Id.* at 51:12-19.)  Nonetheless, in an effort to coordinate with the other parties, Epic agreed to a proposal joined by all parties for a June 5, 2023 trial (MDL Dkt. 329), which the Court ordered on October 5, 2022 (MDL Dkt  338).

4.   In late 2022, Google asked to reopen discovery based on modest amendments to Epic's and Match's complaints.  Epic and Match disagreed but acceded to Google's request.  Based on Google's representations regarding its discovery needs, the parties proposed a July 31, 2023 trial date, which would give Google time to meet deadlines Google demanded for "Google to serve [a] supplemental expert report relating to Epic's and Match's amended complaints" and "completion of third-party depositions relating to Epic's and Match's amended complaints".  (MDL Dkt. 392 at 3.)  The Court did not enter the July 31, 2023 trial date, but rather instructed the parties that the trial should be held in the fall.  On January 18, 2023, the Court set the currently scheduled trial date of November 6, 2023, instructing "that "[t]his date should be regarded as firm".  (MDL Dkt. 421.)[3]

## II.   Match's Case

Match suffers significant harm each day this litigation goes unresolved.  For more than a decade, Google permitted Match apps to offer their own payment solutions alongside or instead of GPB.  (*Match* Dkt. 12-2, Decl. of Peter Foster ("Foster Decl.") ¶¶ 29-37.)  But that ended in March 2022, when Google began enforcing a new policy mandating exclusive use of GPB that requires payment of a supracompetitive 15-30% "service fee" on all digital transactions (*id.* ¶¶ 4, 39).  Google then began rejecting Match app updates in April (*id.* ¶ 57 (rejecting an app update from OkCupid on April 20, 2022); *id.* ¶ 58 (rejecting app updates from Match and OurTime on April 25, 2022); *id.* ¶ 59 (rejecting an app update from Tinder on April 28, 2022)); and threatened to remove Match apps from the Play Store in June for non-compliance (*id.* ¶ 107; *id.* Exs. 7, 11 ("Starting June 1st, any app that is still not compliant will be removed from Google Play.")).

These changes and the threatened expulsion from the Play Store forced Match to file suit against Google on May 9, 2022, seeking injunctive relief and damages, and file a request for a temporary restraining order the following day.  (*Match* Dkts. 1, 12.)  Match's case was coordinated

---

[3] Google represented at the time that it needed additional time to conduct multiple depositions and to supplement its expert reports.  Having obtained a delay of the schedule, Google never supplemented its expert reports and just last week purported to notice only a single additional deposition.

1    with Epic's and two other related cases with a trial date less than a year away, and in the first hearing

2    after Match filed suit, the Court directed Match to "bend" and "[w]ork something out so that we can

3    keep our schedule."  (5/12/2022 Tr. 15:21-25 (noting the Court's "main priority" of maintaining the

4    schedule).)  Match therefore expended significant resources to comply with the Court's request under

5    extraordinary time constraints.  It completed fact discovery and served opening expert reports on an

6    expedited basis, within four and five months, respectively, of filing suit.  This required, among other

7    things, foregoing depositions that Match would have otherwise participated in and accelerating

8    Match's discovery responses, including responding to and producing documents for 182 requests for

9    production and responding to a total of 44 interrogatories.[4]

10       Match also negotiated a partial, temporary solution to prevent Google from removing Match's

11   apps from the Play Store premised on an April 2023 trial.  But while this solution prevents Google

12   from removing Match's apps from the Play Store by paying $40 million into an escrow account, it also

13   preserves components of Google's anticompetitive conduct that continue to harm Match, which allows

14   Google to continue collecting Match's and its users' data.  (*See Match* Dkt. 26 ¶¶ 1, 2.c, 3, 5; MDL

15   Dkt. 191 at 2.)  Match continues to be in limbo throughout the pendency of this case, and Match must

16   maintain and work to further enable GPB as a payment option and continues to pay supracompetitive

17   monopoly rents in the form of a 15-30% "service fee" on every GPB transaction.  (*Match* Dkt. 26 ¶ 3.)

18   This has required Match to delay projects and incur substantial, additional, and otherwise unnecessary

19   costs, time and effort to comply with Google's illegal activity.  (*See* Foster Decl. ¶ 74.)  Match has also

20   been forced to delay its development roadmap pending resolution of its claims at trial, while

21   competitors get a leg up on Match by entering deals and promotions with Google that are not available

22   to Match.  (*See* Android Developers Blog, *Continuing Our Commitment to User Choice Billing* (Nov.

23   10, 2022), available at https://android-developers.googleblog.com/2022/11/continuing-our-

24   commitment-to-user-choice-billing.html ("Pilot participants can offer an additional billing system

25   alongside Google Play's billing system for their users in select countries. . . . We're also excited

26   that Bumble [a competitor of Match] has joined to partner with us in our user choice billing pilot.");

27

28       [4] Meanwhile, it took Google almost four weeks to produce to Match documents it had already
     produced to other Plaintiffs.  (MDL Dkt. 309 at 2; MDL Dkt. 377 ¶ 2.)

1   *see also Match* Dkt. 26 ¶¶ 2.c, 3.)  In the highly competitive dating app space, Match's customers

2   depend on the continuous improvement of their products.  Without these improvements, Match could

3   lose customer relationships and market share.  (Foster Decl. ¶¶ 68–71.)  Only a trial on the merits can

4   address these ongoing harms, and Google retains the ability to terminate the stipulation on 60 days'

5   notice.  (*Match* Dkt. 26 ¶ 7(b).)

6   **III.    Certification of the Consumer Class and Google's Rule 23(f) Appeal**

7           On November 28, 2022, the Court certified a class in the consumer case under Rule 23(b)(3).

8   (MDL Dkt. 383.)  On February 27, 2023, the Ninth Circuit granted Google's Rule 23(f) petition to

9   appeal the Court's class certification order.  (Dkt. 10, No. 22-8014 (9th Cir. 2023).)  In the appeal,

10  Google challenges whether the Court applied the correct legal standard in determining whether

11  individualized injury and damages questions will predominate over common class-wide questions, and

12  particularly whether the consumers have an adequate model for showing that absent class members

13  suffered injury and are entitled to damages.  (Dkt. 1 at 1, No. 22-8014 (9th Cir. 2023).)  Only the

14  consumers are a party to the Rule 23(f) appeal.

15          On March 9, 2023, Google informed plaintiffs that it would seek a stay of the November 6,

16  2023 trial dates in all cases in this MDL.  All plaintiffs informed Google that they would oppose any

17  delay of their trials, but that they would accommodate any proposal to bifurcate trial as to issues

18  unaffected by the Rule 23(f) appeal.  On March 16, 2023, Google moved to stay the trial in each action

19  in this MDL pending its Rule 23(f) appeal.  (MDL Dkt. 467.)

20                                          **LEGAL STANDARD**

21          Rule 23(f) appeals "do not automatically stay district court proceedings."  *Lambert v.*

22  *Nutraceutical Corp.*, 870 F.3d 1170, 1180 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710

23  (2019).  To the contrary, even in class actions where a Rule 23(f) appeal is taken, the Ninth Circuit has

24  stated that "stays will be infrequent".  *Id.* (quoting *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832,

25  835 (7th Cir. 1999) (Easterbrook, J.)).  To obtain a stay of trial pending appeal, the party seeking a stay

26  "bears the burden of showing that the circumstances justify an exercise of judicial discretion".  *Flores*

27  *v. Barr*, 977 F.3d 742, 745 (9th Cir. 2020) (citation and brackets omitted).  That party must make this

28  showing with respect to the case it is seeking to stay, and not merely with respect to the action subject

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

6

to appeal.  "Rule 23(f) is drafted to avoid delay" and "should not unduly retard the pace of litigation."  *Blair*, 181 F.3d at 835.  That is especially true where, as here, a defendant attempts to use a Rule 23(f) appeal in one case as a basis for staying different cases that are unaffected by the issues on appeal.

In deciding whether to grant a stay, courts consider:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies".  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  "[*I*]*f a stay applicant cannot show irreparable harm, a stay may not issue, regardless of the petitioner's proof regarding the other stay factors*."  *Doe v. Trump*, 957 F.3d 1050, 1061 (9th Cir. 2020) (citation omitted, emphasis added); *see id.* at 1070 (lack of irreparable harm "is dispositive"); *Flores*, 977 F.3d at 749 (similar).  The mere "possibility of irreparable injury fails to satisfy the second factor".  *Nken*, 556 U.S. at 434-45 (citation and quotation marks omitted).  The party seeking a stay must show that irreparable harm is "probable, not merely possible".  *Trump*, 957 F.3d at 1059.  It "cannot meet this burden by submitting conclusory factual assertions and speculative arguments".  *Id.*

Google contends that when deciding whether to issue a stay, some courts apply the factors from *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  But none of the cases Google cites involved stays pending Rule 23(f) appeals.  As this Court has held, a motion to stay based on Rule 23(f) "is controlled by *Nken*".  *In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2412176, at *1 (N.D. Cal. May 29, 2018); *see also In re Packaged Seafood Prod. Antitrust Litig.*, 2020 WL 2745231, at *2 (S.D. Cal. May 27, 2020) ("Most district courts in this circuit apply the standard articulated in *Nken*.").  The Ninth Circuit does the same.  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-565514, Dkt. 36 (9th Cir. Jun. 1, 2020) (denying motion "to stay proceedings in the class cases in the district court pending appeal . . . .  *See Nken*"); *Williams v. Warner Music Group Corp.*, No. 20-55419, Dkt. 9 (9th Cir. Jun. 30, 2020) (citing authority that uses the same factors as *Nken*).)[5]

---

[5] Even if the Court applied the *Landis* factors, that analysis would support denying a stay.  *See, e.g.*, *Owino v. CoreCivic, Inc.*, 2021 WL 3186500, at *2 (S.D. Cal. July 28, 2021) (rejecting argument to apply *Landis*, noting "the majority of district courts within the Ninth Circuit apply the *Nken* standard in assessing motions to stay pending a Rule 23(f) appeal", and explaining that "the *Landis* factors essentially are subsumed within the *Nken* factors").  Those factors are "the hardship or inequity which

1

## ARGUMENT

2    Google's motion to further delay the jury trial should be denied.  Epic and Match would suffer

3    enormous prejudice and substantial injury if their trial-ready cases were stayed by at least a year, and

4    potentially much longer, while completely unrelated consumer class certification issues are resolved

5    through appeal and subsequent additional proceedings.  In particular, without the injunctive relief that

6    plaintiffs seek, Google's anticompetitive conduct will continue, causing harm to developers, competing

7    app distributors, competing payment providers and the public.  On the other hand, Google has not

8    shown—as it must—that it would be irreparably harmed if Epic's and Match's claims went to trial as

9    currently scheduled.  The sole argument Google can muster for staying Epic's and Match's cases is

10   that Google wants a single trial with all plaintiffs, and that the Court previously indicated the same

11   preference.  Google's preference for a joint trial after a Rule 23(f) appeal does not translate to

12   irreparable harm or justify an indefinite and no doubt lengthy stay of Epic's and Match's cases, which

13   Google does not and cannot argue will be affected by its Rule 23(f) appeal.[6]  Indeed, even a joint trial

14   on antitrust issues common to Epic, Match, the States, and the consumers, can proceed as scheduled as

15   outlined in the consumers' Opposition.  A stay of the trial therefore should be denied.

16   **I.     A Stay Would Cause Substantial Injury to Epic, Match and the Public.**

17          Google fails to even address the specific prejudice to Epic or Match that would result from a

18   stay of their trial date, instead devoting three cursory paragraphs to the harm that *all* plaintiffs would

19   suffer if their cases were stayed.  (Google Br. 9.)  Google falls far short of meeting its burden.

20          Google baldly asserts that "Plaintiffs do not face any material harm or prejudice from a delay in

21   the trial date".  (*Id.*)  That is clearly wrong with respect to Epic and Match.  As noted, Epic filed its

22   lawsuit not to recover monetary damages (which it does not seek), but to bring an end to Google's

23   antitrust violations.  Google's restraints cause enormous and ongoing harm to Epic and the Android

24   community, and they can be remedied only by an injunction.  For that very reason, Epic has sought an

25

26   a party may suffer in being required to go forward, and the orderly course of justice measured in terms
     of the simplifying or complicating of issues, proof, and questions of law which could be expected to

27   result from a stay".  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

28   [6] Because Google fails to establish irreparable harm with respect to Epic's or Match's cases, this
     Opposition does not address the merits of Google's Rule 23(f) appeal.  *See Trump*, 957 F.3d at 1061.

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

8

expeditious trial schedule from the outset.  (*See, e.g.*, *Epic* Dkt. 55 at 17 ("Time is of essence in this case . . . . The longer *Fortnite* remains off the Google Play Store, the greater the harm.").)  With respect to Match, a delay in trial irreparably harms Match's market share.  Because of the stipulation, Match has been forced to delay its own projects and priorities and instead incur substantial and otherwise unnecessary costs to maintain and further enable GPB as a payment option, which allows Google to continue collecting Match's and its users' data.  (*See Match* Dkt. 26 ¶¶ 1, 2.c, 3, 5.)  In the highly competitive dating app space, these differences matter and contribute to a loss in market share for which Google will never be able to repay Match, while Google continues to make deals and promotions with Match's competitors that are not available to Match.  *See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (finding irreparable harm based on "threatened loss of . . . customers").  Google will also be unable to compensate Match for the accompanying harm to its reputation and goodwill developed over more than a decade.  (Foster Decl. ¶ 91; *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.").)

Google brushes aside the delay it seeks—which could last years—as a "modest deferral". (Google Br. 9.)  That is a gross understatement.  Since January 2019, the average Rule 23(f) appeal in the Ninth Circuit has taken approximately *16 months* from the date when the petition was granted until the date of the decision.  Google attempts to elide this problem by claiming that it would seek an expedited appeal—but *only if* "this Court agree[s] to set trial for after the Ninth Circuit's decision". (*Id.*)  Nothing stops Google from seeking an expedited appeal *now*; but it has not done so.  And there is of course no guarantee the Ninth Circuit would grant a request to expedite.  Even if it did, expedited Rule 23(f) appeals in the Ninth Circuit can still take *over a year* to resolve.  *See, e.g.*, *Moorer v. Stemgenex Medical Grp., Inc.*, No. 19-56500 (9th Cir.) (13 months).  Moreover, the Rule 23 proceedings may not end with a ruling from the Ninth Circuit.  Google or the consumers could—and likely would—seek *en banc* review or *certiorari*.  The Ninth Circuit could also remand for further Rule 23 proceedings, which would themselves take time and could lead to a subsequent Rule 23(f) petition and even more delay.  Indeed, Google's lead argument on appeal is that the Court misapplied the legal standard for class certification.  (Rule 23(f) Pet. 1.)  If Google prevails, a remand is far more

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

9

likely than outright reversal.  As such, the opportunity to seek relief at trial could be delayed yet again for *multiple years*—which is not a "modest deferral".  Epic's and Match's cases will be ready for trial as currently scheduled in November 2023, and they should not be stalled by an appeal in a different case that has no application whatsoever to their cases.

Courts in this Circuit have consistently recognized that "staying a suit seeking injunctive relief against ongoing or future harm causes a more significant hardship against a plaintiff resisting a stay than a suit for damages".  *Aldapa v. Fowler Packing Co., Inc.*, 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016); *see Lockyer*, 398 F.3d at 1112.  Here, Google has illegally foreclosed competition in the Android app distribution and in-app payment solutions markets, causing harm to Epic and Match in their capacities as app developers and competitors in the markets for app distribution (in Epic's case) and in-app payment solutions (for Epic and Match) on Android.  This harm is substantial and ongoing, and it worsens every day that Epic and Match await trial.  If Google's motion is granted as to Epic and Match, then both developers and other would-be competitors will continue to be foreclosed from these markets, and the Android ecosystem (and its approximately 3 billion users) will be denied the benefits of competition that the antitrust laws are designed to protect.

Google remarkably argues that because Epic and Match amended their complaints to add new *per se* claims, they were not concerned with a previous delay and therefore would not be prejudiced by the enormous delay that Google now seeks.  (Google Br. 9.)  In fact, *Google sought that previous delay*, not Epic or Match.  Google claimed it needed time to serve a supplemental expert report and take third-party depositions.  And yet, as noted above, that request proved to be a pretextual excuse for delay.  Google never served a supplemental report and has sought only one deposition (which it purported to notice just last week, after filing its motion to stay).  Google's motion to stay Epic's and Match's cases because of unrelated Rule 23 issues in a different case is more pretext for delay.

## II.     Maintaining the November 2023 Trial Date Is in the Public Interest.

These same reasons show why the public interest weighs heavily against a stay.  Epic and Match seek injunctive relief that would benefit the public—both similarly foreclosed developers and app distributors, as well as users.  The public interest favors enforcement of the antitrust laws.  *See In re Packaged Seafood*, 2020 WL 2745231, at *10 (denying stay of antitrust case and finding "[t]he

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

10

1  public has an interest in the efficient prosecution of antitrust actions and seeking to hold alleged

2  corporate wrongdoers accountable, especially in [the area of consumer products]"); *Boardman v. Pac.*

3  *Seafood Grp.*, 822 F.3d 1011, 1024 (9ᵗʰ Cir. 2016) (holding that an injunction against an acquisition

4  that "could substantially lessen competition" was "in the public interest", and the antitrust laws

5  "recognize [competition] as *vital to the public interest*" (citation omitted, emphasis in original));

6  *Williams v. Warner Music Grp. Corp.*, 2020 WL 2303099, at *3 (C.D. Cal. Apr. 14, 2020) (quoting

7  Fed. R. Civ. P. 1) (stating with respect to a case that had been pending for two years, a stay "will also

8  have the effect of delaying the resolution of this case.  Accordingly, the Court finds that the public

9  interest is better served by the prompt determination of this action than by a stay.").

**III.   Google Has Failed to Show Irreparable Injury.**

**A.    Google Would Not Be Irreparably Harmed if Epic's and Match's Cases Went to Trial as Scheduled.**

To prevail on its motion, Google must show that it will suffer probable irreparable injury if

Epic's and Match's cases are tried on November 6, 2023.  *Trump*, 957 F.3d at 1059.  Despite seeking

an extraordinary remedy—a stay of two cases based on an unrelated appeal in a different case—

***Google does not make a single argument for why it would be irreparably harmed if Epic's or***

***Match's cases went to trial on schedule***.  (*See* Google Br. 7-8 (focusing exclusively on harms from the

consumer class action going to trial).)

Irreparable harm is a heavy burden.  Ninth Circuit law is clear that "being required to defend a

suit, without more", does not warrant a stay.  *Lockyer*, 398 F.3d at 1112; *Melnik v. Dzurenda*, 2020

WL 1324993, at *2 (D. Nev. Mar. 20, 2020) ("[T]he mere fact of going to—and preparing for—trial

does not constitute irreparable injury."); *Pac. Cheese Co. v. Advanced Coil Tech., LLC*, 2019 WL

1062369, at *4 (D. Nev. Mar. 6, 2019) ("[T]he Court is not persuaded by [the] argument that the mere

fact of going to—and preparing for—trial constitutes irreparable injury.").  Indeed, the *Landis* case on

which Google relies states that "[o]nly in rare circumstances will a litigant in one cause be compelled

to stand aside while a litigant in another settles the rule of law that will define the rights of both".  299

U.S. at 255.  Here, a stay is even less appropriate because the Ninth Circuit's ruling will ***not*** define

Epic's or Match's rights, and Google does not contend otherwise.

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

11

Google ignores this unambiguous authority, asserting with no basis that "[n]othing about the Rule 23(f) appeal changes the efficiencies that are gained from a single trial".  (Google Br. 10.)  That is simply wrong.  Forcing Epic and Match to wait years while an unrelated appeal is pending and further proceedings take place would be *in*efficient.  Contrary to Google's assertions, getting these cases "trial ready" in November 2023 would not mean the parties could just pick up where they left off when the class certification issue is finally resolved in late 2024 or beyond.  Epic and Match are seeking forward-looking relief; by the time class certification is resolved, Google will no doubt argue that circumstances have changed; that additional "refresh" discovery is needed; and that Epic and Match cannot seek forward-looking relief based on discovery that is two, three or more years old.  Conversely, should a jury find for Epic and Match in November 2023, that outcome would greatly simplify any future trial of the consumers' claims.  Thus, while the interest of efficiency may have previously supported a unified trial, circumstances have materially changed, and efficiency and fairness would now be served by proceeding with Epic's and Match's cases on the current schedule.

But in any event, the showing Google must make is not of "efficiency", but of "irreparable injury".  Google does not cite a single case holding that being denied a single consolidated trial constitutes irreparable injury, or that a defendant has a right to a single consolidated trial across separate cases simply because multiple plaintiffs challenge similar conduct.  In fact, even if a single trial were untenable here, there is nothing unusual—let alone irreparably injurious—about requiring a defendant to face separate trials in separate cases under these circumstances.[7]  That is exactly what Judge Gonzalez Rogers required in connection with Epic's recent case against Apple.[8]  To take another example, the defendant in *In re Packaged Seafood Products Antitrust Litigation* sought to stay all cases in an MDL pending the resolution of a Rule 23(f) appeal.  2020 WL 2745231 (S.D. Cal. 2020).  As

---

[7] Indeed, that is what every MDL contemplates; MDL coordination is for pretrial purposes, not trial.

[8] In August 2020, Epic filed a case in this district challenging Apple's anticompetitive app store practices, which was related to a consumer class action that challenged similar conduct.  When it became apparent that Epic was prepared to go to trial significantly sooner than the consumers, Judge Gonzalez Rogers ordered a May 2021 trial for Epic's case, while the consumer case proceeded on a slower timeline.  *See Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR, Dkt. 116 (N.D. Cal. 2020).  The consumer class action against Apple *still* has not been tried or even set for trial.  *See* Dkt. 640, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714-YGR (N.D. Cal. Apr. 21, 2022).

here, the MDL included individual plaintiffs who were "not parties to any of the class actions or the pending appeal". *Id.* at *9.  The district court found "prejudice from the delay" to the individual plaintiffs, *id.*, and further found harm to the public through its "interest in the efficient prosecution of antitrust actions and seeking to hold alleged corporate wrongdoers accountable", *id.* at *10.  It denied the defendant's motion for a stay (there, even as to the class action claims).  *Id.*  The Ninth Circuit denied a stay motion as well.  *See Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods*, 19-56514, Dkt. 36 (9th Cir. 2020) (citing *Nken*).

Google nonetheless claims that a single trial at some unspecified date in the future with all plaintiffs in the MDL would be the most "efficient way for the jury to sort out [supposedly] conflicting theories of injury and damages" among Epic and Match on the one hand, and the consumers and States on the other.  (Google Br. 11.)  That argument falls flat as to Epic and Match, because their theories of injury—generally, and specifically in their capacity as competitors to Google—do not conflict with those of any other plaintiff.  The argument also rings hollow given that Google itself has already *settled* the claims of one class of developers that was part of this MDL prior to settlement, with no concurrent adjudication of claims from developers outside the class (like Epic and Match) or of consumers.  In any event, the potential need to adjudicate damages to different plaintiffs separately is not irreparable harm, but the simple result of Google's actions harming many stakeholders—and the virtual impossibility of adjudicating the harms to all stakeholders in one fell swoop.  Indeed, Google's suggestion that a "single trial" would provide some universal adjudication of its liabilities is illusory; nothing would prevent other developers (other than members of the settling class), other competing app store owners or other competing payment solution providers from challenging Google's conduct in new lawsuits that could be filed before or after the "single trial" Google now seeks.

Google also surmises that it would be "efficient" to have plaintiffs from both sides of a two-sided market in the same trial.  (Google Br. 11.)  But it points to no authority supporting this view or examples of such joint trials.  To the contrary, several prominent trials involving two-sided markets—including *Epic v. Apple*—involved only one plaintiff on one side of the market.  *See US Airways, Inc. v. Sabre Holding Corp.*, No. 11-cv-2725, Dkt. 1209 (S.D.N.Y. May 25, 2022) (jury trial with one plaintiff, an airline, that challenged conduct in a two-sided market that includes airlines and travel

agents); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021).

Finally, Google claims that it "will incur substantial, unrecoverable time, money, and resources" if the **consumers'** "case went to trial and the class were later decertified". (Google Br. 7.) Google does not claim that this argument presents a basis for staying Epic's or Match's cases, nor could it. Epic and Match are not part of the Rule 23(f) appeal, and their cases will go to trial no matter how that appeal is resolved. Moreover, the law is clear that "monetary injury is not normally considered irreparable". *Trump*, 957 F.3d at 1060 (citation omitted); *see In re Facebook Biometric Info*, 2018 WL 2412176, at *2 ("the ordinary costs of trying a case" do not justify a stay). The rare cases where courts credit monetary injury are those where the moving party faces a "threat of 'extinction'" to its business. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). That is not the case for Google.[9] (*See* 4/1/2021 Tr. 22:2-4 ("The Court: I'm not really swayed by the idea that Google is resource constrained.").) Google thus has not articulated a cognizable, non-conclusory theory of irreparable harm, and its Motion should be denied as to Epic and Match.

**B.     The Rule 23(f) Appeal Will Have No Effect on Epic's or Match's Cases.**

Google has not argued that the Rule 23(f) appeal could impact Epic's or Match's cases in any way. Google cannot do so—its appeal has nothing to do with Epic's or Match's claims.

On a Rule 23(f) appeal, the **only** issues the Ninth Circuit may consider are those that are strictly necessary to resolving class certification issues. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries."). In fact, "merits inquiries unrelated to certification **exceed** [the Ninth Circuit's] **limited** Rule 23(f) **jurisdiction** . . . . We must police the bounds of our jurisdiction vigorously here as elsewhere, and so may not ourselves venture into merits issues unnecessary to the Rule 23 issue before us." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014) (emphasis added).

Google's Rule 23(f) appeal has nothing to do with the merits of Epic's or Match's cases.

---

[9] In fact, it is Google's conduct that threatens developers' businesses.

Google admits that its "petition focused on the extent to which the class includes—and consumer plaintiffs' expert's model accounts for—uninjured class members", and contends that "the Ninth Circuit will necessarily scrutinize the consumer class's damages and injury model that formed the basis of their class certification motion".  (Google Br. 4.)  More specifically, Google's appeal focuses on a theory that even if developers like Epic and Match were injured, that does not automatically mean that all consumers were injured, because developers may not have "passed through" the supracompetitive costs to consumers.  (*See* Rule 23(f) Pet. 6.)  In Google's view, "most consumers were not injured because most developers *would not* have charged consumers less money", meaning developers alone suffered injury because they assumed the entire cost of Google's fee.  (*Id.* at 9 (emphasis in original).)

Whether the consumers have established that they can prove pass-through using a class-wide methodology is irrelevant to Epic's and Match's cases.  Epic and Match are not consumers; they do not rely on a pass-through model to show injury; they did not retain the consumers' expert and do not rely on his opinion; they are individual plaintiffs without class claims and do not need to prove injury to absent class members; and Epic does not seek damages.  Even if the Ninth Circuit agrees with every argument Google makes and holds that the consumers' pass-through theory is invalid, that decision will have no effect on Epic's or Match's cases—let alone an effect so probable and severe that Google would be irreparably harmed if Epic and Match went to trial while the Rule 23(f) appeal is pending.

Epic's and Match's claims should be tried in full on November 6, 2023 regardless of whether a stay is warranted in the other plaintiffs' cases.  It is also entirely practicable for all plaintiffs to participate in that trial, including any claims of the consumers and States that are not affected by the Rule 23(f) appeal.  The States' and consumers' briefs have presented efficient plans by which their claims could be bifurcated so that they could try the issues they have in common with Epic and Match that are not affected by the Rule 23(f) appeal in November 2023—and then, to the extent necessary, try the remaining, consumer- and State-specific issues after the issues on appeal are finally resolved.

## CONCLUSION

Google's motion to stay should be denied as to Epic and Match, and the Court should maintain the November 6, 2023 date for a jury trial of Epic's and Match's claims and any claims of the consumers and States that are not affected by the Rule 23(f) appeal.

EPIC AND MATCH'S JOINT OPPOSITION TO GOOGLE'S MOTION FOR A STAY
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

15

Dated: March 30, 2023

CRAVATH, SWAINE & MOORE LLP
Christine Varney *(pro hac vice)*
Gary A. Bornstein *(pro hac vice)*
Timothy G. Cameron *(pro hac vice)*
Yonatan Even *(pro hac vice)*
Lauren A. Moskowitz *(pro hac vice)*
Justin C. Clarke *(pro hac vice)*
Michael J. Zaken *(pro hac vice)*
M. Brent Byars *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Gary A. Bornstein*
Gary A. Bornstein

*Counsel for Plaintiff Epic Games, Inc.*

HUESTON HENNIGAN LLP
John C. Hueston
Douglas J. Dixon
Joseph Reiter
Christine Woodin
Michael K. Acquah
Tate E. Harshbarger

Respectfully submitted,

By: */s/ Douglas J. Dixon*
Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc.*

**E-FILING ATTESTATION**

I, Douglas J. Dixon, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


*/s/ Douglas J. Dixon*
Douglas J. Dixon