1  HUESTON HENNIGAN LLP
   John C. Hueston, State Bar No. 164921
2  jhueston@hueston.com
   Douglas J. Dixon, State Bar No. 275389
3  ddixon@hueston.com
   620 Newport Center Drive, Suite 1300
4  Newport Beach, CA 92660
   Telephone:    (949) 229-8640
5
   HUESTON HENNIGAN LLP
6  Joseph A. Reiter, State Bar No. 294976
   jreiter@hueston.com
7  Christine Woodin, State Bar No. 295023
   cwoodin@hueston.com
8  523 West 6th Street, Suite 400
   Los Angeles, CA 90014
9  Telephone:    (213) 788-4340

10 Attorneys for Plaintiffs Match Group, LLC;
   Humor Rainbow, Inc.; PlentyofFish Media ULC;
11 and People Media, Inc.

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 **IN RE GOOGLE PLAY STORE**          Case No. 3:21-md-02981-JD
   **ANTITRUST LITIGATION**
16                                       **MATCH PLAINTIFFS' MOTION FOR**
                                         **PARTIAL SUMMARY JUDGMENT ON**
17 THIS DOCUMENT RELATES TO:             **GOOGLE'S COUNTERCLAIMS**

18 *Match Group, LLC, et al. v. Google LLC,*   Judge:      Honorable James Donato
   *et al.,* Case No. 3:22-cv-02746-JD         Courtroom:  11, 19th Floor
19                                             Date:       To Be Determined (MDL Dkt. 447)

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that after conclusion of all briefing and on a date and time to be determined by the Court,[1] in Courtroom 11 of the above-entitled Court, located on the 19th floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Plaintiffs and Counterclaim-Defendants Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc. (collectively, the "Match Plaintiffs")[2] will and hereby do move for partial summary judgment ("Motion") on Defendants and Counterclaim-Plaintiffs Google LLC et al.'s (collectively, "Google's") counterclaims. *See* Dkt.[3] 101-1 ("Counterclaims").

This Motion is based on this Notice of Motion, Memorandum of Points and Authorities, the Declaration of Joseph A. Reiter ("Reiter Decl.") along with its accompanying exhibits, and all matters with respect to which this Court may take judicial notice, and such oral and documentary evidence as may be presented to the Court at the time of or before the hearing.

As explained further below, the Match Plaintiffs move for partial summary judgment on the following grounds:

| CAUSE OF ACTION | BASES FOR SUMMARY JUDGMENT |
|---|---|
| *Breach of Contract* <br> *(Google's First Counterclaim)* | Google's breach of contract claim fails for any period before March 31, 2022 because the Match Plaintiffs were not in breach, the contract was modified or Google otherwise waived performance, and Google does not seek damages before October 1, 2021. |
| *Declaratory Judgment* <br> *(Google's Fifth Counterclaim)* | To the extent Google seeks a declaratory judgment that Match Plaintiffs breached the contract prior to March 31, 2022 or that Google can remove the Match Plaintiffs' Apps from the Google Play Store based on any such purported breach, Google's declaratory judgment claim fails for the same reasons as Google's breach of contract claim. |

---

[1] The date and time of the "Dispositive motion hearing" is yet to be determined. *In re Google Play Store Antitrust Litigation*, Case No. 3:21-md-02981-JD, Dkt. 447, at 2 (N.D. Cal. Feb. 7, 2023).

[2] The term "Match Plaintiffs" includes only the operating companies named as Plaintiffs, which are part of the Match Group, Inc., portfolio of companies. For the purposes of this case, the term "Match Plaintiffs' Apps" includes Tinder, OkCupid, Match, PlentyofFish, and OurTime.

[3] Unless otherwise noted, all references to docket entries refer to those listed under the case captioned *Match Group, LLC, et al. v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD (N.D. Cal.).

| CAUSE OF ACTION | BASES FOR SUMMARY JUDGMENT |
|---|---|
| *False Promise* <br> *(Google's Third Counterclaim)* | Google's false promise claim fails because the Match Plaintiffs did not promise to exclusively use Google Play Billing, their statements to Google were truthful, Google cannot show justifiable reliance on any allegedly false statements, and there is no evidence that the allegedly false statements caused any damage to Google. |
| *Breach of Implied Covenant of* <br> *Good Faith and Fair Dealing* <br> *(Google's Second Counterclaim)* | Google's claim for breach of the implied covenant of good faith and fair dealing fails for the same reasons as Google's false promise claim, and it is otherwise duplicative of the breach of contract claim. |
| *Quasi-Contract / Unjust* <br> *Enrichment* <br> *(Google's Fourth Counterclaim)* | Google's quasi-contract claim fails because California law prohibits such claims when the parties' relationship is governed by an express contract, and the Match Plaintiffs received no unjust benefit. |
| *Punitive Damages* <br> *(Google's Prayer for Relief)* | Punitive damages are not available for claims involving breach of contract, unjust enrichment, or breach of the implied covenant of good faith and fair dealing. Punitive damages are not available for the remaining false promise claim because that claim fails. Even if Google overcomes the false promise claim's deficiencies, Google cannot show by clear and convincing evidence that the Match Plaintiffs acted with "malice, oppression, or fraud." |

Dated:  April 20, 2023

HUESTON HENNIGAN LLP
John C. Hueston
Douglas J. Dixon
Joseph A. Reiter
Christine Woodin
Michael K. Acquah
William M. Larsen
Julia L. Haines
Karen L. Ding
Tate E. Harshbarger

Respectfully submitted,


By:  */s/ Douglas J. Dixon*
Douglas J. Dixon
*Attorneys for Plaintiffs Match Group, LLC;*
*Humor Rainbow, Inc.; PlentyofFish Media ULC;*
*and People Media, Inc.*

6399180

# **TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ............................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................. 3

    A.  Google Knowingly Permitted the Match Plaintiffs to Offer Their Own Billing Systems for More Than a Decade ........................................... 3

    B.  Google Changes Its Payments Policy in September 2020 to Remove the "Outside the App" Exception ............................................................. 6

    C.  Google Extends the Payments Policy Compliance Deadline to March 31, 2022 ................................................................................................... 7

    D.  Google Has No Evidence It Believed Match Plaintiffs Pledged to Use GPB Exclusively ................................................................................... 8

    E.  Google Stipulates the Match Plaintiffs May Continue Using Alternative Billing Systems ................................................................... 9

III. LEGAL STANDARD ........................................................................................ 11

IV. ARGUMENT ..................................................................................................... 11

    A.  THE BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS FAIL FOR ANY PERIOD PRIOR TO MARCH 31, 2022 ................................................................................... 11

        1.  Prior to October 1, 2021, Google Knowingly Permitted the Match Plaintiffs to Not Use GPB ................................................. 12

        2.  Google Extended the Compliance Deadline to March 31, 2022 ................ 13

    B.  THE FALSE PROMISE CLAIM FAILS BECAUSE THE MATCH PLAINTIFFS MADE NO PROMISE—MUCH LESS KNOWINGLY OR WITH FRAUDULENT INTENT—AND GOOGLE CANNOT PROVE RELIANCE OR LOSS ......................................................... 15

        1.  There Is No Evidence the Match Plaintiffs Promised to Use GPB Exclusively .......................................................................... 15

        2.  Google Cannot Establish a Knowingly False Promise or Fraudulent Intent ................................................................................ 18

        3.  There Is No Evidence That Google Justifiably Relied On Any Alleged Promise .................................................................................. 19

        4.  There Is No Evidence that the Alleged False Promise Caused Any Loss to Google .......................................................................... 22

    C.  THE IMPLIED COVENANT CLAIM FAILS FOR THE SAME REASONS ..................................................................................... 23

    D.  THE QUASI-CONTRACT CLAIM FAILS BECAUSE THERE IS AN ACTUAL CONTRACT AND THE MATCH PLAINTIFFS RECEIVED NO UNJUST BENEFIT ............................................................ 23

    E.  GOOGLE CANNOT OBTAIN PUNITIVE DAMAGES ........................ 24

V.  CONCLUSION .................................................................................................. 25

6399180

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aguilar v. Intl Longshoremen's Unin Loc. No. 10*
5
   966 F.2d 443 (9th Cir. 1992) ................................................................................................ 17

6

*Behnke v. State Farm Gen. Ins. Co.*,
   196 Cal. App. 4th 1443 (2011) ............................................................................................ 13

7

*Beluca Ventures LLC v. Einride Aktiebolag*,
8
   2022 WL 17252589 (N.D. Cal. Nov. 28, 2022) .................................................................. 26

9

*Benson v. Hamilton*,
   126 Cal. App. 331 (1932) .................................................................................................... 19
10

11

*Bldg. Permit Consultants, Inc. v. Mazur*,
   122 Cal. App. 4th 1400 (2004) ............................................................................................ 23

12

*Brown v. Hain Celestial Grp., Inc.*,
13
   2015 WL 3398415 (N.D. Cal. May 26, 2015) .................................................................... 16

14

*Cates Constr., Inc. v. Talbot Partners*,
   21 Cal. 4th 28 (1999) ........................................................................................................... 26
15

16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ....................................................................................................... 3, 11

17

*Chanan Singh v. Cross*,
18
   60 Cal. App. 309 (1922) ................................................................................................ 14, 16

19

*Chu v. Old Republic Home Prot. Co., Inc.*,
   60 Cal. App. 5th 346 (2021) ............................................................................................... 26
20

21

*Curley v. Wells Fargo & Co.*,
   2014 WL 988618 (N.D. Cal. Mar. 10, 2014) .................................................................... 24

22

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
23
   2020 WL 4368212 (N.D. Cal. July 30, 2020) ................................................................... 12

24

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ........................................................................................... 25
25

26

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
   2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) .................................................................... 16

27

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
28
   343 F.3d 1000 (9th Cir. 2003) ............................................................................................ 17

6399180

*Granadino v. Wells Fargo Bank, N.A.*,
   236 Cal. App. 4th 411 (2015) ................................................................................................... 17, 18

*Guido v. Koopman*,
   1 Cal. App. 4th 837 (1991) ....................................................................................................... 21

*Hoffman v. 162 N. Wolfe LLC*,
   228 Cal. App. 4th 1178 (2014) ................................................................................................. 21

*Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*,
   2011 WL 13128301 (C.D. Cal. Oct. 25, 2011) ....................................................................... 25

*Johnson v. Regents of Univ. of Cal.*,
   2010 WL 2605090 (N.D. Cal. June 28, 2010) ......................................................................... 24

*Klein v. Chevron USA, Inc.*,
   202 Cal. App. 4th 1342 (2012) ................................................................................................. 25

*Leonard v. Coll. Network, Inc.*,
   2004 WL 2944050 (N.D. Cal. Dec. 17, 2004) ................................................................... 19, 21

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
   2016 WL 6082415 (N.D. Cal. Oct. 18, 2016) ................................................................... 14, 16

*Major v. W. Home Ins. Co.*,
   169 Cal. App. 4th 1197 (2009) ................................................................................................. 15

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
   224 F. Supp. 3d 891 (N.D. Cal. 2016) ..................................................................................... 23

*N. Cal. Collection Servs. Inc. of Sacramento v. Central Sierra Constr., Inc.*,
   2008 WL 3876266 (E.D. Cal. Aug. 20, 2008) ......................................................................... 22

*Nguyen v. Stephens Inst.*,
   529 F. Supp. 3d 1047 (N.D. Cal. 2021) ................................................................................... 25

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ................................................................................................... 25

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ................................................................................................. 25

*Phillips v. JP Morgan Chase Bank, N.A.*,
   2011 WL 1301726 (S.D. Cal. Nov. 14, 2011) ......................................................................... 17

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) ..................................................................................... 21

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014) ................................................................................................... 23

- v -

*Snapkeys, Ltd. v. Google LLC*,
442 F. Supp. 3d 1196 (N.D. Cal. 2020) ................................................................................. 24

*Sprint Spectrum Realty Co., LLC v. Hartkopf*,
2021 WL 1839705 (N.D. Cal. May 7, 2021) ......................................................................... 24

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal. App. 4th 153 (1991) ............................................................................................. 19, 22

*Tomaselli v. Transamerica Ins. Co.*,
25 Cal. App. 4th 1269 (1994) ............................................................................................... 26

*U.S. ex rel. Butler v. Hughes Helicopters, Inc.*,
71 F.3d 321 (9th Cir. 1995) .................................................................................................. 18

*Vella v. Hudgins*,
151 Cal. App. 3d 515 (1984) ................................................................................................ 16

*Wilhelm v. Pray, Price, Williams & Russell*,
186 Cal. App. 3d 1324 (1986) .............................................................................................. 21

*Workman-Johnson v. Kaplan Higher Educ. Corp.*,
2008 WL 11336910 (S.D. Cal. Aug. 11, 2008) ................................................................... 18

**Statutes**

Cal. Civ. Code § 3294 ............................................................................................................... 26

6399180

## I.      INTRODUCTION

This multi-district litigation concerns Google's abuse of monopoly power and includes antitrust claims brought by four groups of plaintiffs, including the Match Plaintiffs. But in response to the Match Plaintiffs' complaint, Google brought several counterclaims alleging that the Match Plaintiffs somehow breached Google's Developer Distribution Agreement and its incorporated Payments Policy (together, the "DDA"), and engaged in fraud to avoid compliance. Discovery has shown that nothing could be further from the truth.

For years, the Match Plaintiffs' dating apps have offered in-app purchases through their own billing systems, alongside or instead of Google's system ("Google Play Billing," or "GPB"). The Match Plaintiffs did so, historically, with Google's knowing acceptance and in compliance with Google's DDA, which contained an applicable exception. Indeed, since the Match and OurTime apps were first published to the Google Play Store in 2010 and 2014, they have offered their own billing systems, rather than GPB. In September 2020, Google unilaterally changed its rules, removing the exception and requiring certain apps (including the Match Plaintiffs' Apps) to exclusively use GPB. After making this change, Google set a compliance deadline of September 30, 2021, then extended it to March 31, 2022. Google granted the March 31, 2022 extension to the Match Plaintiffs after they filled a standard form and expressly noted that "Google's system is *not a suitable substitute* and exclusive use of Google's systems *will meaningfully harm our users* (inflate prices) *& undermine our business.*"[4] (Reiter Decl. ¶ 3, Ex. 1). This was consistent with the Match Plaintiffs' long-standing position and communications to Google that they did not want to exclusively use GPB.

███████████████████████████████████████████████████████████████

████████████, and Google continued to allow the Match Plaintiffs to use their billing systems until June 1, 2022, when Google would remove non-compliant apps from the Google Play Store.

In sum, it is *undisputed* that Google did not require the Match Plaintiffs to use GPB before Google changed its Payments Policy, it is *undisputed* that Google provided the Match Plaintiffs an extension to comply with Google's modified policy, and it is *undisputed* that the Match Plaintiffs

---

[4] All emphasis is added unless otherwise noted.

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1   consistently told Google they objected to being forced to exclusively use GPB and *never* promised

2   to exclusively integrate GPB (let alone made a promise that Google justifiably relied on). As a result,

3   summary judgment is appropriate on Google's counterclaims.

4         ***First***, Google alleges that the Match Plaintiffs breached the DDA by offering their own

5   billing systems for in-app purchases rather than exclusively using GPB. But there is no dispute that

6   Google ***allowed*** the Match Plaintiffs to do so for over a decade, until September 30, 2021, when a

7   new "Payments Policy" would take effect. Recognizing this, Google does *not* seek damages—an

8   essential element of its claim—prior to October 1, 2021. And after that date, there is no dispute that

9   Google provided an ***extension*** to the Match Plaintiffs ( ██████████████████████████ ),

10  so they were not required to use GPB exclusively until March 31, 2022. For these reasons, Google's

11  breach of contract and declaratory judgment counterclaims fail through March 31, 2022.[5]

12        ***Second***, Google mischaracterizes the Match Plaintiffs' extension submissions as a false

13  promise that they would comply with Google's new Payments Policy within a particular timeframe.

14  But there was no promise. The Match Plaintiffs provided a clear statement that they ***could not*** adopt

15  GPB because of the harm it would cause to their businesses and users, consistent with the feedback

16  they had provided Google for years. ████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ███████████████████████████████████ (*Id.*, Ex. 37 ( ██████████ ) at 251:12–

19  16). And there is no evidence that Google relied on any purported "promise" when granting the

20  extension—much less that any reliance could have been justified. To the contrary: the evidence

21  shows Google rubber-stamped the extension for all apps that met rudimentary criteria, and Google

22  ████████ did not believe that the Match Plaintiffs would exclusively use GPB, which is consistent

23  with what the Match Plaintiffs had been doing and telling Google for years. (*E.g.*, *id.*; *id.*, Ex. 40

24  ( ████████████████████ ) at 513:5–514:15 ( ████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  ██████████████████████████████████ )).

27  _____

28  [5] Although not at issue in this Motion, the Match Plaintiffs reserve all rights, arguments, and defenses with respect to any alleged breach after March 31, 2022. *See, e.g.*, Dkt. 26 ¶ 4.

*Third*, Google relies on those same allegations to argue that the Match Plaintiffs breached the implied covenant of good faith and fair dealing by applying for the extension. Because this claim is premised on the same allegations as the false promise claim, it fails for the same reasons and undisputed evidence. Without the false promise allegations, the implied covenant claim is a run-of-the-mill, duplicative breach of contract claim, which courts frequently dismiss for being duplicative.

*Fourth*, Google asserts a different version of its breach of contract counterclaim: restitution in quasi-contract. This claim fails because there *is* a contract—the DDA—which precludes a quasi-contract action. Moreover, there is no evidence of any unjust benefit because Google's allegations again overlap entirely with its false promise counterclaim and fail for the same reasons.

*Finally*, even if Google could overcome the many fatal defects discussed above (it cannot), punitive damages are not available as a matter of law for Google's breach of contract, breach of the implied covenant of good faith and fair dealing, or unjust enrichment claims. As for false promise, Google cannot meet its heavy burden of proving by clear and convincing evidence that the Match Plaintiffs are "guilty of oppression, fraud, or malice." Civ. Code § 3294(a).

Summary judgment against Google should be granted on all these counterclaims and the prayer for punitive damages, which involve the same universe of undisputed facts and fail for similar reasons. These counterclaims are immaterial to the antitrust claims common to this MDL and—in addition to being unsubstantiated by evidence—are a plain attempt by Google to distract from its anticompetitive conduct at the core of this MDL and to retaliate against the Match Plaintiffs for challenging that conduct. There is no reason to ask the jury to deliver a verdict on separate, Match Plaintiff–specific issues when these "factually unsupported claims" can be easily "isolated and disposed of" under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

## II.   FACTUAL BACKGROUND

### A.   Google Knowingly Permitted the Match Plaintiffs to Offer Their Own Billing Systems for More Than a Decade

Smartphone apps, like those offered by the Match Plaintiffs, are made available to users through app distribution platforms, such as the Google Play Store. Google requires every developer that publishes an app through the Google Play Store to agree to its DDA. (*See* Dkt. 101-1

1 ("Counterclaims") ¶ 43; Reiter Decl., Ex. 3 ("DDA")). The DDA incorporates Google's Payments

2 Policy, which requires the use of Google's billing system—GPB—for certain in-app purchases.

3 (Counterclaims ¶ 43 (citing DDA ¶ 4.1)). For years before September 2020, Google's Payments

4 Policy expressly allowed apps selling "digital content that may be consumed outside of the app

5 itself" to bypass GPB and use alternative billing systems (the "outside the app" exception). (Reiter

6 Decl. ¶ 6, Ex. 4 (Payments Policy); *id.* ¶ 7, Ex. 5 (███████████████████████████), at 28–29).

7      The Match Plaintiffs own and operate brands of popular dating services and mobile apps for

8 Android devices available on the Google Play Store (relevant for this case, Tinder, OkCupid, Match,

9 PlentyofFish, and OurTime). These apps offer basic services for free to users, with an option to

10 purchase additional features or subscriptions to enhance the user-experience. (*Id.*, Ex. 35 (Foster

11 Decl.) ¶¶ 5–12). There is no dispute that the Match Plaintiffs have offered their own billing systems

12 for payment of in-app purchases either alongside or instead of GPB pursuant to the "outside the app"

13 exception in Google's Payments Policy. (*Id.* ¶¶ 29–38 (explaining the Match Plaintiffs' Apps all

14 offer their own billing system and have been available on the Google Play Store as long as twelve

15 years)). Indeed, since they were first published on the Google Play Store in 2010 and 2014, the

16 Match and OurTime apps have offered their own payment systems without GPB. (*Id.* ¶¶ 32, 33, 36).

17      There also is no dispute that each Match Plaintiff App offered its alternative billing system

18 pursuant to the "outside the app" exception in Google's pre-September 2020 Payments Policy. (*E.g.*,

19 *id.* ¶ 8, Ex. 6, at -940, -945). That exception applied (at least and among other reasons) because each

20 Match Plaintiff App offers a website that users can access through a desktop computer, laptop, or

21 mobile web to consume the digital content "outside the app itself." (*Id.*, Ex. 35 (Foster Decl.) ¶ 30).

22 Google admits this. (Counterclaims ¶ 29 (admitting that digital content available for purchase

23 through the Match Plaintiffs' Apps is "available on a website [*i.e.*, outside of the app itself] or

24 through the app, regardless of where the user made the original in-app or subscription purchase.");

25 *id.* ¶ 32; Reiter Decl., Ex. 43 (████████) at 259:6–14 ("█████████████████████████████

26 ████████████████████████████████████████████████████████████████████████████")).

27      Moreover, ████████████████████████████████████████████████████████████

28 ████████████████████████████████████. (*See* Reiter Decl., Ex.



1   43 (███████) at 265:3–18 (█████████████████████

2   ███████████████████████████████████████████

3   ███████); *id.*, Ex. 42 (███████████) at 280:14–24 (███████

4   ███████████████████████████████████████████

5   ███████████████████████████████████); *id.*, Ex. 41

6   (███████) at 149:22–25 (██████████████████████

7   ████████████████████████████████████████)).

8   ████████████████████████████████████████████

9   ███████████████████████████████████. (*See id.* ¶ 9, Ex. 7, at -

10  994 (████████████████████████████████████████

11  ███████████████████████████████); *id.* ¶ 10, Ex. 8, at -731 (███

12  ████████████████████████████████████████████

13  ████████████████████████████████████████)).

14      Although Google attempted to encourage the Match Plaintiffs to use GPB, the Match

15  Plaintiffs have repeatedly made clear to Google that they *always* preferred (and insisted on using)

16  their own billing systems. Among other reasons, the Match Plaintiffs' billing systems provide

17  features that GPB does not, including installment payments and subscription bundling. (*Id.*, Ex. 35

18  (Foster Decl.) ¶¶ 79, 84). Indeed, ████████████████████████████████

19  ███████████████████████████████████████. (*Id.* ¶ 11, Ex.

20  9, at -161 (Jan. 12, 2017); *id.* ¶ 12, Ex. 10, at -301 (██████████████

21  ████████████████████████████████████████)).

22      ████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████████ (*Id.* ¶ 13, Ex. 11, at -130; *see also id.* ¶

26  14, Ex. 12, at -240–241 (████████████████████████████

27  ███████████████████████); *id.*, Ex. 44 (███████) at 165:4–

28  22 (████████████████████████████████████████

1   ); *id.*, Ex. 37 (███████) at 198:1–8 (███

2   ████████████████████████████████████████

3   ████████████████████████████████████████████); *id.* ¶

4   14, Ex. 13, at -917 (███████████████████████████

5   ██████████████████████████████████)).  ████████

6   ██████████████████████. (*Id.* ¶ 16, Ex. 14, at -492–493; *id.* ¶ 17, Ex.

7   15, at -886–887). ███████████████████████████████████

8   ████████████████████████. (*See, e.g., id.* ¶ 16, Ex. 14, at -492–493 (███

9   ████████████████████████████████████████

10  ); *id.* ¶ 18, Ex. 16, at -352 (████████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████)).

13       Google understood the Match Plaintiffs' long-standing position: for example, ████

14  ████████████████████████████████████████

15  ███████████████████████████████████████ (*Id.* ¶ 18, Ex.

16  16, at -353–54). In sum, it is undisputed that certain Match Plaintiffs' Apps have used their own

17  payment systems without GPB since they first joined the Google Play Store, Google was aware of

18  the Match Plaintiffs' concerns with exclusively using GPB, and Google has never enforced its

19  Payments Policy on the Match Plaintiffs while the policy had the "outside the app" exception.

20  **B.      Google Changes Its Payments Policy in September 2020 to Remove the "Outside the**

21         **App" Exception**

22       On September 28, 2020, Google unilaterally changed its Payments Policy to remove the

23  "outside the app" exception. (*Id.* ¶ 19, Ex. 17, at -869–870; *id.* ¶ 8, Ex. 6, at -945). Google also added

24  new language to its Payments Policy stating that "dating" apps would be required to use GPB

25  exclusively for in-app purchases. (*Id.*, Ex. 18 (Updated Payments Policy), at 1). ████████

26  ████████████████████████████. (*See, e.g., id.* ¶ 21, Ex. 19 ("█

27  ████████████████████████████████████████████████");

28  *id.* ¶ 22, Ex. 20, at -245 (████████████████████████)))

**C.**     **Google Extends the Payments Policy Compliance Deadline to March 31, 2022**

Google initially set a September 30, 2021, deadline (for most jurisdictions) to comply with the changes to its Payments Policy. (Counterclaims ¶¶ 43, 48; Reiter Decl. ¶ 7, Ex. 5 (███████ ███████████), at 23–26, 28–29). In July 2021, Google announced it would offer an extension through March 31, 2022, for apps that applied through a "form [that] was accessible to all developers." (Reiter Decl., Ex. 36 (Foster Decl. Ex. 7) ("[W]e are giving developers an option to request a 6-month extension, which will give them until March 31, 2022, to comply with our Payments policy."); Counterclaims ¶¶ 50–52)). As a part of that announcement, Google also set June 1, 2022 as the date it would begin removing non-compliant apps from the Google Play Store. (Reiter Decl. ¶ 20, Ex. 18 (Updated Payments Policy), at 1, 4).

On August 5, 2021, after Google announced the extension, Peter Foster (the General Manager of Global Advertising and Brand Solutions for Match Group, LLC) emailed Brandon Barras (Google's manager for the Match Plaintiff relationship since 2016) on behalf of Match Plaintiffs. (*Id.* ¶ 23, Ex. 21, at -746; *id.*, Ex. 37 (████████) at 28:17–29:4). Mr. Foster wrote:

> Brandon[,] I am reaching out regarding Google's announcement that it is granting extensions to its September 30, 2021 deadline for apps to use Google Play's billing system exclusively. In light of this extension, ***Match will continue to use its bespoke payment system to process payments.***

(*Id.* ¶ 23, Ex. 21, at -746). Mr. Barras responded that each of the Match Plaintiffs' Apps would need to "appeal for an extension" by filling out Google's prescribed form. (*Id.* at -743–744).

Per Mr. Barras's instructions, the Match Plaintiffs made identical submissions for each app through Google's required standardized form. In response to the form's question, "[t]his extension is intended to aid developers that need more time to comply with Google Play's Payments policy. Do you need more time to comply with Google Play's Payments policy?", a drop-down menu offered a "Yes" or "No" response, and the Match Plaintiffs selected "Yes". (*Id.* ¶ 3, Ex. 1, at -123). Google's form then asked for responses limited to 280 characters: "Please explain why you need additional time to comply with Google Play's Payments policy." (*Id.*). The Match Plaintiffs stated:

> "Our bespoke payment system is critical to our user experience. Due to significant feature gaps (payment / subs / discounts), ***Google's system is not a suitable substitute and exclusive use of Google's systems will meaningfully harm our users (inflate prices) & undermine our business[.]***

- 7 -

6399180

1   (*Id.*). Google's standard form did not ask if a developer planned to comply or when. (*Id.*) Nor did

2   the Match Plaintiffs make any such promise. On the contrary, the Match Plaintiffs' responses were

3   consistent with Mr. Foster's August 5 email, which plainly stated that the Match Plaintiffs would

4   "continue to use [their] bespoke payment system to process payments." (*Id.* ¶ 23, Ex. 21, at -746).

5   The submissions were consistent with that email and the Match Plaintiffs' history with Google: The

6   Match Plaintiffs indicated they would not make the switch to GPB because it "is not a suitable

7   substitute" and would "meaningfully harm" their users and business. (*Id.*) Indeed, ███████

8   █████████████████████████████████████████████████████████████████████████████

9   ███████████████████████████████" (*Id.*, Ex. 37 (████████) at 251:12–16).

10  Moreover, ███████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████. (*See, e.g., id.* ¶ 24,

12  Ex. 22, at -521–523, -531 (████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████████████████

14  █████████████████████████████████████████████████████████████████████████

15  ████████████)). There is no evidence that ████████████████████████████████

16  ██████████████████████████████████████████████. (*Id.*, Ex. 37 (███████

17  ███) at 246:5–11.) In sum, it is undisputed that Google granted an extension to the Match Plaintiffs

18  to comply with the Payments Policy through March 31, 2022.

19  **D.      Google Has No Evidence It Believed Match Plaintiffs Pledged to Use GPB Exclusively**

20          Google ████████████████████████████████████████. (*Id.* ¶ 25, Ex.

21  23, at -309). ████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████████████████████████████

24  ██████████████████ (*Id.* ¶ 26, Ex. 24, at -880). ███████████████████████████

25  ███████████████████████████████████████" (*Id.*, Ex. 37 (████████████) at

26  217:19–24). █████████████████████████████████████████████████████████████

27  ███████████████████████████████████████ (*Id.* ¶ 27, Ex. 25, at -850). Indeed, ███

28

1  ███████████████████████████████████████████████████████████████

2  ███████████████████████████████. (*Id.*, Ex. 37 (Barras Dep.) at 251:17–19).

3     Accordingly, besides the form, Google required nothing further of the Match Plaintiffs before

4  granting the extension, and Google never pushed back on the Match Plaintiffs' extension requests

5  or asked any questions in response to the submission. ██████████████████████████

6  ███████████████████████████████████████████████. (*Id.* ¶ 3, Ex.

7  1, at -124; *see also id.* ¶ 7, Ex. 5 (Google's Resp. to Interrog. No. 5), at 28–29 ("████████

8  ████████████████████████████████████████."); *id.*, Ex.

9  37 (███████) at 246:5–11 (█████████████████████████████

10  ████████████████████████)).

11     In fact, Google █████████████████████████████████████

12  ███████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████

16  ██████████████████████. (*Id.*, Ex. 40 (████████████████)) at 513:5–514:15; *see*

17  *also id.*, Ex. 38 (███████████) at 201:12–201:18 (███████████████████

18  ███████████████████████████████████████████████████████████

19  ███████████████████████████████ (██ ██); *id.* ¶ 28, Ex. 26, at -671 (████

20  ███████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████████

22  ████████████████████████████)). Consistent with these internal views,

23  Google's 30(b)(6) witness ███████████████████████████████████████

24  ███████████████████████████████████████████████████████████

25  ██████████. (*Id.*, Ex. 41 (███████████████████) at 264:22–265:3; *id.* at 256:13–18).

26  **E.** **Google Stipulates the Match Plaintiffs May Continue Using Alternative Billing Systems**

27     As Google's unilateral compliance deadline of March 31, 2022 approached, the Match

28  Plaintiffs again explained to Google that exclusively integrating GPB would harm their businesses

1   and users. (*Id.* ¶ 29, Ex. 27, at -139–140 (

2   )).

3   

4   . (*Id.* at -137).

5   

6   (*Id.*); *see also id.* ¶ 30, Ex. 28, at -644

7   

8       After the deadline passed, the Match Plaintiffs continued to offer their own billing systems,

9   alone or alongside GPB. On April 20, 2022, Google began rejecting the Match Plaintiffs' Apps'

10  updates for not using GPB exclusively. (*Id.*, Ex. 35 (Foster Decl.) ¶¶ 57–59). Google's updated

11  Payments Policy loomed: "[s]tarting June 1, 2022, any app that is still not compliant will be removed

12  from Google Play." (*Id.* ¶ 20, Ex. 18 (Updated Payments Policy), at 4).

13  

14  

15  ." (*Id.* ¶ 30, Ex. 28, at -642).

16      With the threat of removal pending, on May 9, 2022, the Match Plaintiffs filed a complaint

17  against Google for violations of federal and state antitrust laws and other anticompetitive

18  misconduct. (Dkt. 1). On May 19, 2022, the parties entered into a stipulation whereby "Google

19  agree[d] that . . . it will not remove, de-list, refuse to list, or otherwise make unavailable Match apps

20  . . . on the basis that (i) the Match apps or updates offer in-app purchases of digital good[s] or

21  services through means other than [GPB] or (ii) Match is not paying fees to Google in in-app

22  purchases made through means other than Google Play's billing system." (*See* Dkt. 26 ¶ 1). The

23  stipulation terminates after "[t]he date of a final judgment or other disposition of this action" or after

24  one party notifies the other that it is terminating the stipulation. (Dkt. 26 ¶ 7).

25      Shortly thereafter, the Match Plaintiffs' case was joined with the MDL involving near-

26  identical antitrust claims brought by Epic Games, Inc.; a coalition of State Attorneys General; a

27  consumer class action; and a (since settled) developer class action. (Order, 3:21-md-02981, MDL

28  Dkt. 245 (May 25, 2022)). At the time, these common antitrust claims were set for trial in April

2023, since extended to November 2023. Less than nine months before the then-scheduled antitrust trial, Google brought five counterclaims against the Match Plaintiffs for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) false promise, (4) quasi-contract, and (5) declaratory judgment. (Counterclaims ¶¶ 55–86). Google's counterclaims are all premised on either (a) an allegation that the Match Plaintiffs breached the DDA by refusing to exclusively integrate GPB, despite the exception to Google's policy and Google explicitly and knowingly permitting the Match Plaintiffs to use their alternative billing systems at least through March 31, 2022, or (b) allegations that the Match Plaintiffs misled Google or induced Google to believe the Match Plaintiffs would switch to exclusively using GPB, despite the Match Plaintiffs consistently informing Google it had no intention to do so.

As set forth below and as the undisputed evidence shows, all of Google's counterclaims fail.

### III.  LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–24. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court may dispose of less than the entire case and even just portions of a claim or defense." *CZ Servs., Inc. v. Express Scripts Holding Co.*, 2020 WL 4368212, *2 (N.D. Cal. July 30, 2020) (Donato, J.).

### IV.  ARGUMENT

### A.  THE BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS FAIL FOR ANY PERIOD PRIOR TO MARCH 31, 2022

Summary judgment should be granted on Google's breach of contract claim for all time periods prior to March 31, 2022 because there is no evidence the Match Plaintiffs breached the DDA during that period. *First*, the undisputed evidence shows that neither Google nor the DDA required the Match Plaintiffs to exclusively use GPB before changing its Payments Policy in September 2021—indeed, Google concedes it is not seeking any damages for any purported breach prior to this date. *Second*, the undisputed evidence shows that Google expressly allowed developers, including

the Match Plaintiffs, to comply with its new Payments Policy by March 31, 2022.[6] To the extent Google seeks a declaratory judgment that Match Plaintiffs breached the DDA during these same periods or that Google can remove the Match Plaintiffs' Apps from the Google Play Store based on any such purported breach, Google's declaratory judgment claim fails for the same reasons.

**1. Prior to October 1, 2021, Google Knowingly Permitted the Match Plaintiffs to Not Use GPB**

There is no dispute that the Match Plaintiffs were not required to exclusively use GPB or pay service fees for transactions made through alternative payment systems prior to October 1, 2021. Any attempt by Google to maintain a breach of contract or declaratory judgment claim during this period fails for at least three reasons:

*First,* Google does ***not*** seek ***any damages*** for any purported breach prior to October 1, 2021. (Reiter Decl. ¶ 31, Ex. 29 (Email from M. Naranjo (Apr. 12, 2023)) (". . . Google presently does not intend to seek damages for Match's breach of contract for any period before October 1, 2021"); *id.* ¶ 32, Ex. 30 ([redacted]) ¶ 37 ("[redacted]")). Because "[d]amages are an essential element of a breach of contract claim," *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1468 (2011), Google cannot maintain a claim based on the pre–October 2021 period as a matter of law. The Court should grant summary judgment as to this period for this reason alone.

*Second*, prior to October 1, 2021, ***neither Google nor the DDA required*** GPB for in-app purchases of "digital content that may be consumed out of the app itself." (Reiter Decl. ¶ 6, Ex. 4, at -254 (Payments Policy); *id.* ¶ 7, Ex. 5 ([redacted]), at 28–29). [redacted]. (*Id.*, Ex. 43 ([redacted]) at 265:3–18 ([redacted]); *id.* at 259:6–14 ("[redacted]"); *see also id.*, Ex. 42 ([redacted]) at 280:14-24 ([redacted]

---

[6] The Match Plaintiffs do not, at this time, challenge Google's breach claim after March 31, 2022. The parties have preserved all rights and arguments with respect to that period. *See* Dkt. 26 ¶¶ 4, 5.

1  ████████████████████████████████████████████████████████

2  ); *id.*, Ex. 41 (████████) at 149:22–25 (████████████

3  ████████████████████████████████████████████████████████

4  ████)). When Google announced in September 2020 that it was removing the "outside the app"

5  exception, Google "afforded non-compliant developers over a year," through September 30, 2021,

6  to come into compliance. (*Id.* ¶ 19, Ex. 17, at -869–870; Counterclaims ¶ 48). As such, Google's

7  claim for breach of contract fails prior to October 1, 2021.

8    *Third*, Google waived any right it may have had to enforce the Payments Policy. Regardless

9  of whether the "outside the exception" applied to the Match Plaintiffs, Google knowingly allowed

10 them to offer their own billing systems for years, including since Match first published on the Google

11 Play Store in 2010. (*Id.*, Ex. 35 (Foster Decl.) ¶¶ 32, 33, 36); *see Levi Strauss & Co. v. Aqua

12 *Dynamics Sys., Inc.*, 2016 WL 6082415, at *7 (N.D. Cal. Oct. 18, 2016) ("A party may waive its

13 right to enforce a contract provision through its course of conduct." (citing *Chanan Singh v. Cross*,

14 60 Cal. App. 309, 317 (1922))). ████████████████████████████████

15 ████████████████████████████████████████████ (Reiter Decl., Ex. 41 (████

16 ) at 149:22–25)████████████████████████████████████████████

17 ████████████████████████████████████████████████ (*Id.*, Ex. 42

18 (████████) at 280:20–24).████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████ (*Id.*, Ex. 43 (████████) at 250:2–11; *id.* at 248:10–

21 17 ("████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████") ; *id.* at 249:18–250:1; *id.* at 247:2–10).

24    **2.    Google Extended the Compliance Deadline to March 31, 2022**

25    From October 1, 2021 to March 31, 2022, Google's breach of contract and declaratory

26 judgment claims fail for at least two reasons: (1) by extending the compliance deadline, Google

27 modified the DDA such that the Match Plaintiffs were not required to comply with the Payments

28 Policy until March 31, 2022; and (2) Google waived compliance until March 31, 2022.

1    *First*, although Google changed its Payments Policy in September 2020, it is undisputed that

2    Google extended the deadline to March 31, 2022 and granted the Match Plaintiffs' extension request.

3    (*See, e.g., id.* ¶ 4, Ex. 2, at -078 (███████████████████████████████████████)). Nor

4    is there any dispute that this extended any deadline to exclusively use GPB until March 31, 2022.

5    (*See id.*, Ex. 40 (█████████████████)) at 510:19–23 ("█████████████████████████

6    ██████████████████████████████████████████████████████████████████████████████");

7    *id.*, Ex. 44 (███████████) at 232:2–5 ("████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████████████");

9    *id.* ¶ 20, Ex. 18 (Updated Payments Policy), at 1 ████████████████████████████████

10   ██████████████████████████████████████████████████████████████████████")).

11   Google's written extensions modified the DDA such that the Match Plaintiffs were not

12   required to exclusively use GPB until after March 31, 2022. The DDA incorporates the extensions

13   and expressly allows for such modification, as it includes "any addenda You may have agreed to

14   separately[.]" (*Id.* ¶ 5, Ex. 3 (DDA) § 16.1). Because each of the Match Plaintiffs' Apps applied for

15   "an extension until March 31, 2022 to come into compliance with Google Play's Payments policy"

16   and Google ***accepted*** the Match Plaintiffs' extension request, the DDA was modified to prohibit

17   enforcement of the DDA until after March 31, 2022. *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th

18   1197, 568–69 (2009), *as modified on denial of reh'g* (Jan. 30, 2009) (holding a contract may be

19   modified "in accordance with the terms of contract"); *see* Cal. Civ. Code § 1698(a) ("A contract in

20   writing may be modified by a contract in writing."); *Vella v. Hudgins*, 151 Cal. App. 3d 515, 519

21   (1984) ("It is axiomatic that the parties to an agreement may modify it.").

22   *Second*, if not an express modification, Google waived the requirement of exclusively using

23   GPB until March 31, 2022. "A party may waive its right to enforce a contract provision through its

24   course of conduct." *Levi Strauss & Co.*, 2016 WL 6082415, at *7 (citing *Chanan Singh*, 60 Cal.

25   App. at 317). As detailed above, it is undisputed that Google provided an extension until March 31,

26

27   ───────────────────

28   [7] The deadline for India was October 31, 2022, even later than April 2022. (Reiter Decl. ¶ 20, Ex. 18 (Updated Payments Policy), at 4). Google also announced that in South Korea, developers "have the option to integrate an alternative in-app billing system due to recent legislation." (*Id.*)

1   2022 for compliance with the Payments Policy and knowingly did not remove the Match Plaintiffs'

2   Apps from the Google Play Store, reject their app updates, or take any other enforcement action

3   during this time. (*See, e.g.*, Reiter Decl., Ex. 44 (      ) at 232:2–5; *id.* ¶ 4, Ex. 2, at -078).

4         Each reason independently precludes a jury from finding a breach of contract before March

5   31, 2022. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim

6   or defense — or the part of each claim or defense — on which summary judgment is sought.");

7   *Brown v. Hain Celestial Grp., Inc.*, 2015 WL 3398415, at *2–3, *13 (N.D. Cal. May 26, 2015)

8   (granting partial summary judgment on parts of claims; "[a]n important function of Rule 56 is to

9   streamline cases for trial."). Likewise, Google's declaratory judgment claim fails to the extent it

10  seeks a declaration that the Match Plaintiffs breached the DDA before March 31, 2022 or that Google

11  can remove the Match Plaintiffs' Apps from the Google Play Store based on any such alleged breach.

12  **B.   THE FALSE PROMISE CLAIM FAILS BECAUSE THE MATCH PLAINTIFFS**

13          **MADE NO PROMISE—MUCH LESS KNOWINGLY OR WITH FRAUDULENT**

14          **INTENT—AND GOOGLE CANNOT PROVE RELIANCE OR LOSS**

15        Summary judgment likewise should be granted on Google's false promise claim. "Under

16  California law, a cause of action for fraud based on a false promise must allege: (1) a material

17  promise, (2) knowledge of its falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance,

18  and (5) resulting damage." *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 2007 WL

19  2572191, at *4 (N.D. Cal. Sept. 5, 2007). Google's claim fails because (1) the Match Plaintiffs never

20  promised to exclusively use GPB; they told Google the opposite; (2) there is no evidence the Match

21  Plaintiffs had knowledge of the alleged falsity or had fraudulent intent; (3) even if a promise existed,

22  there is no evidence Google justifiably relied on any such promise, and (4) there is no evidence of

23  damages. Each reason is independent; Google's claim fails if the Court finds that any applies.

24        **1.   There Is No Evidence the Match Plaintiffs Promised to Use GPB Exclusively**

25        As an initial matter, the Match Plaintiffs made no promise to integrate GPB exclusively. An

26  alleged false promise must be "clear and unequivocal." *Phillips v. JP Morgan Chase Bank, N.A.*,

27  2011 WL 1301726, at *9 (S.D. Cal. Nov. 14, 2011). "[A] promise that is 'vague, general or of

28  indeterminate application' is not enforceable." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d

1000, 1017 (9th Cir. 2003) (quoting *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d

443, 446 (9th Cir. 1992)). A "promise" is an "assurance that a person will or will not do something."

*Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 417 (2015). The Match Plaintiffs

made no promise—much less a "clear and unequivocal" one—to exclusively use GPB. *Phillips*,

2011 WL 1301726, at *9. Neither statement Google relies on comes close to meeting its burden.

    *First*, Google alleges that the August 5, 2021 email from Mr. Foster constitutes a promise

that the Match Plaintiffs would endeavor to exclusively integrate GPB before March 31, 2022, if

granted the extension. (Counterclaims ¶ 70.). Mr. Foster said nothing of the sort. The *only* assurance

Mr. Foster makes in that email is that the Match Plaintiffs would "***continue to use [their] bespoke***

***payment system to process payments***." (Reiter Decl. ¶ 23, Ex. 21, at -746; Counterclaims ¶ 70). This

is the opposite of Google's allegation that the Match Plaintiffs promised "to comply."

    *Second*, after Mr. Barras told Mr. Foster that each app had to fill out the Google-provided

form to receive the extension, the Match Plaintiffs followed that instruction. (Reiter Decl. ¶ 3, Ex. 1).

Again, the Match Plaintiffs made no promise to exclusively use GPB. The Match Plaintiffs' Apps

used the standard form's 280-character response window to explain that their "bespoke payment

system is critical to [their] user experience," and because of GPB's "feature gaps," it is "not a suitable

substitute" that would harm their users and business. (*Id.* ¶ 3, Ex. 1, at -123; *see also*, Counterclaims

¶ 50). As a result, the Match Plaintiffs selected "Yes" from the drop-down menu for a prompt that

asked, "Do you need more time to comply with Google Play's Payments Policy?" (*See* Reiter Decl.

¶ 3, Ex. 1, at -123). These statements are not promises at all. They provide no "assurance that a

person will or will not do something." *Granadino*, 236 Cal. App. 4th at 417. Instead, the Match

Plaintiffs make two "statements of fact" (*id.*): (1) that the Match Plaintiffs "need more time to

comply," and (2) that the reason is because "Google's system is not a suitable substitute." Google's

extension request form did not ask "do you plan to comply," nor did the Match Plaintiffs answer that

question—and none of the Match Plaintiffs' statements promise that the Match Plaintiffs would

"bring [their] apps into compliance with the DDA," let alone unambiguously. (Counterclaim ¶ 73).

    Moreover, the Match Plaintiffs' statements of fact were consistent with what they had told

Google many times before and after the form was submitted: ████████████████

1

2

3

4

5 ████████████ (Reiter Decl., Ex. 37 (████████)) at 251:4–16; *id.* at 198:1–8;

6 *see also id.* ¶ 15, Ex. 13, at -917 (██████████████████████████████

7 ████████████████████████████████████████████); *id.* ¶ 28,

8 Ex. 26, at -671 (████████████████████████████████

9 ███████████████████████████████████████████

10 ████████████████████████████████████████

11 ████); *id.* ¶ 29, Ex. 27, at -139–140 (██████████████████

12 ███████████████████████████████████████

13 ███████████████████████████████████████

14 ███████████████████████████████████████

15 ███████████████████████████████████████

16 ████████████████████████████████████)). In sum, the

17 evidence in the record shows only that the Match Plaintiffs explicitly *disclaimed* any intent to use

18 GPB exclusively—there is no triable issue on the existence of a promise to do the opposite. *See U.S.*

19 *ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321·328 (9th Cir. 1995) (holding that statements

20 cannot be false where they "actually disclose what [the plaintiff] claims they conceal"); *Workman-*

21 *Johnson v. Kaplan Higher Educ. Corp.*, 2008 WL 11336910, at *6 (S.D. Cal. Aug. 11, 2008)

22 (holding that there was no false representation where a letter's statement of benefit also stated that

23 the benefit was contingent on other circumstances, which plaintiff did not allege were satisfied).

24     Far from interpreting the Match Plaintiffs' statements as a promise to use GPB exclusively,

25 ███████████████████████████████████████

26 ███████████████████████████████████████

27 ███████████████████████████████████████

28 ████████████████████████████. (Reiter Decl., Ex. 40 (████████)) at

1   513:5–514:15; *id.*, Ex. 38 (█████████) at 201:12–201:18 (████████

2   ████████████████████████████████████████████████████████████████

3   ██████████████████████████████); *id.* ¶ 28, Ex. 26, at -671 (███████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ███████████████████████████)).

7        Summary judgment is warranted because there is no evidence that the Match Plaintiffs—

8   through Mr. Foster, through the extension request to Google, or otherwise—promised to "come into

9   compliance with the terms of the DDA." (Counterclaims ¶ 69). There simply was no promise.

10       **2.      Google Cannot Establish a Knowingly False Promise or Fraudulent Intent**

11       A false promise must, at the time it was made, be knowingly false and intended to defraud

12  or induce reliance. *See Benson v. Hamilton*, 126 Cal. App. 331, 334 (1932) ("[T]he *essence* of the

13  fraud is the *existence of an intent at the time of the promise* not to perform it."); *Leonard v. Coll.*

14  *Network, Inc.*, 2004 WL 2944050, at *10 (N.D. Cal. Dec. 17, 2004) (plaintiff must show that "the

15  promisor did not intend to perform at the time he or she made the promise and that it was intended

16  to deceive or induce the promise not to do a particular thing" (quoting *Tarmann v. State Farm Mut.*

17  *Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991))). The opposite was true here.

18       As stated above, the Match Plaintiffs told Google in clear terms that exclusively integrating

19  GPB would be harmful to their business model and users. Google has no evidence the Match

20  Plaintiffs did not believe this. █████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████ (Reiter

23  Decl., Ex. 37 (██████████) at 250:12–251:16). Moreover, the Match Plaintiffs' stated concerns were

24  consistent with years of using non-GPB systems and communications from the Match Plaintiffs to

25  Google. (*See, e.g.*, *id.*, Ex. 39 (██████████)) at 50:6–16 (█████████

26  ███████████████████████████████████████████████)). For example:

27       • As early as 2010 and 2014, since they were first published on the Google Play Store, the
           Match and OurTime apps always offered their own payment systems without GPB. (*Id.*,
28         Ex. 35 (Foster Decl.) ¶¶ 32, 33, 36).

1   • As early as 2016 ███████████████████████████████

2   ████████████████████████████ (*Id.* ¶ 13, Ex. 11, at -130).

3   • In 2017 ███████████████████████████████████████

4   ████████████████████████ (*Id.* ¶ 14, Ex. 12, at -240–241).

5   • In 2018 ███████████████████████████

6   ███████████████████ (*Id.* ¶ 33, Ex. 31, at -948).

7   • In 2019 ███████████████████████████████████

8   ███████████████ (*Id.* ¶ 34, Ex. 32, at -902).

9   • In 2020 ████████████████████████████████████

10  ███████████████████ (*Id.*, Ex. 37 (██████████) at
    198:1–12).

11  • In March 2021 ████████████████████████████████

12  ████████████████████ (*Id.* ¶ 15, Ex. 13, at -917).

13  • In March 2022 ██████████████████████████████████

14  ███████████████████████████████████████████████████

15  ███████████████████████ (*Id.* ¶ 29, Ex. 27, at -140).

16  Google also ███████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ██████████████. (*Id.* ¶ 7, Ex. 5 (██████████████, at 41–43);

19  *see also id.*, Ex. 38 (███████████) at 168:16–169:15 (█████

20  ███████████████████████████████████████████████████

21  ██))。 ████████████████████████████████████. (*Id.*
    ¶ 35, Ex. 33, at -000.)

22      Given the Match Plaintiffs' express language and long-standing, consistent conduct and

23  criticism relating to GPB, it cannot be disputed that the Match Plaintiffs' statements were entirely

24  consistent with both their past practice and representations to Google and their eventual decision not

25  to exclusively integrate GPB. There was no knowledge of falsity or intent to defraud. *Leonard*, 2004

26  WL 2944050, at *10 (granting summary judgment against a false promise claim).

27      **3.    There Is No Evidence That Google Justifiably Relied On Any Alleged Promise**

28      Even if Google could put forward evidence to create a triable issue of fact on a false

    promise—which it cannot—undisputed evidence shows Google did not rely (nor justifiably could

1  have relied) on the Match Plaintiffs' purported "promise." Actual reliance is established where "the

2  misrepresentation . . . was an immediate cause of the plaintiff's conduct," without which the plaintiff

3  "would not, in all reasonable probability," have acted. *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App.

4  4th 1178, 1193 (2014), *as modified on denial of reh'g* (Aug. 13, 2014); *Prostar Wireless Grp., LLC*

5  *v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1018–19 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117

6  (9th Cir. 2020) (granting summary judgment against promissory fraud claim where, even if some

7  "statements could show a clear and unambiguous promise, [plaintiff] has failed to demonstrate that

8  its reliance was reasonable because of other statements by [defendant] that cast doubt on its level of

9  commitment"). But actual reliance alone is not enough—the reliance must also be *justifiable*, which

10  requires demonstrating that "circumstances were such to make it reasonable for [the] plaintiff to

11  accept [the] defendant's statements without an independent inquiry or investigation." *Wilhelm v.*

12  *Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986). Google's "particular

13  knowledge and experience should be considered in determining whether" any reliance is justified.

14  *Hoffman*, 228 Cal. App. 4th at 1194; *Guido v. Koopman*, 1 Cal. App. 4th 837, 843–844 (1991)

15  (affirming summary judgment where the plaintiff's sophistication undermined her claim of reliance).

16  There is no evidence that Google actually or justifiably relied on the Match Plaintiffs' statements to

17  grant the extension.

18      *First,* the evidence shows Google understood the Match Plaintiffs had made no promise to

19  use GPB exclusively. The Match Plaintiffs' statements, in Google's words, were "

20  ████████████." (Reiter Decl., Ex. 37 (████████) at 251:12–16;

21  *see also id.* ¶ 13, Ex. 11, at -130 (████████████████████████

22  ████████████████████████); *id.* ¶ 14, Ex. 12, at -240–241

23  (████████████████████████████████████

24  ████████████); *id.* ¶ 34, Ex. 32, at -902 (████████████████

25  ████████████); *id.*, Ex. 37 (████████) at 198:1–12 (███████

26  ████████████████████████████████████████);

27  *id.* ¶ 15, Ex. 13, at -917 (████████████████████████████████

28  ████████████████████████)). Indeed, after submitting the extension request

- 20 -

1  form, the Match Plaintiffs continued informing Google that they did not intend to exclusively use

2  GPB. (*See id.* ¶ 30, Ex. 28, at -642–643 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮). And as explained above, Google did not believe the Match Plaintiffs had "▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.*, Ex. 40 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮)) at 513:5–514:15); *see also supra* § IV.B.3). Google cannot argue reliance on an alleged

6  promise to use GPB exclusively:  The undisputed evidence is that Google understood no such

7  promise had been made.

8      *Second*, Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮. (*Id.*, Ex. 41 (▮▮▮▮▮▮▮▮▮▮)) at 256:13–

10  18). Google likewise ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮. (*Id.* at 264:12–265:3 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮")). In other words,

14  Google admits it did ***not*** rely on either alleged false promise.

15      *Third*, it is undisputed that Google did ***nothing*** to confirm its alleged understanding about

16  the Match Plaintiffs' intentions. (*E.g., id.*, Ex. 37 (▮▮▮▮▮▮▮) at 246:5–11 (▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)); *N. Cal. Collection Servs. Inc. of Sacramento v.*

19  *Central Sierra Constr., Inc.*, 2008 WL 3876266, *5 (E.D. Cal. Aug. 20, 2008) (granting summary

20  judgment where there was no "inquiring into the veracity" of the alleged misrepresentations).

21      *Finally*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Reiter Decl., Ex. 37 (▮▮▮▮▮▮▮)

24  at 217:19–24; *id.*, Ex. 44 (▮▮▮▮▮) at 231:17–232:1 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮")).

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*

28  ¶ 26, Ex. 24, at -881). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ████████████████████████████████ (*Id.*, at -880); *see also id.*, Ex. 37

2    (███████) at 251:17–19 (████████████████████████████

3    ████████████); *id.* ¶ 36, Ex. 34, at -995 (████████████████

4    ████████████████████████████████████████████████████

5    ████)). Google did not rely on the text of the individual submissions to make its decisions.

6         In sum, there is not a shred of evidence to support an allegation of reliance on a supposed

7    promise by the Match Plaintiffs. Instead, the record is full of admissions by Google that it expressly

8    *did not* rely on the Match Plaintiffs' statements (or any app's) in granting extensions.

9         **4.    There Is No Evidence that the Alleged False Promise Caused Any Loss to Google**

10        Finally, there is no evidence that Google's purported reliance caused any harm to Google.

11   *See  Bldg. Permit Consultants, Inc. v. Mazur*, 122 Cal. App. 4th 1400, 1415 (2004) ("[A]ctionable

12   deceit [] requires damages resulting from reliance on a misrepresentation."). Google's 30(b)(6)

13   representative, ████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████ (Reiter Decl., Ex. 41 (

16   ████████████) at 264:12–265:3); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891,

17   921–22 (N.D. Cal. 2016) (granting summary judgment against false promise claim; finding that "if

18   the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent

19   inducement, causation is not established"); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.

20   App. 4th 221, 235 (2014) (affirming grant of demurrer where plaintiff "would have been in the very

21   same position it is today"). As explained above, Google ████████████████████████.

22   It is thus undisputed that Google incurred no harm because of the Match Plaintiffs' alleged promises.

23                              *      *      *

24        In sum, there was no false promise or fraudulent intent by the Match Plaintiffs, and there was

25   no actual or justifiable reliance or harm incurred by Google. To avoid summary judgment, Google

26   must come forward with a triable issue of fact on *all* of these elements. It cannot do so on *any* one,

27   and the Match Plaintiffs' motion should be granted.

28

1   **C.      THE IMPLIED COVENANT CLAIM FAILS FOR THE SAME REASONS**

2          The elements of breach of the implied covenant of good faith and fair dealing are the same

3   as those for breach of contract except, instead of showing that the defendant "breached a contractual

4   duty, the plaintiff must show . . . that defendant deprived the plaintiff of a benefit conferred by the

5   contract in violation of the parties' expectations at the time of contracting." *Curley v. Wells Fargo*

6   *& Co.*, 2014 WL 988618, at *5 (N.D. Cal. Mar. 10, 2014). Google's implied covenant claim is

7   premised on the same allegations as its false promise claim and fails for the same reasons as above.

8          Moreover, a claim does not survive if it merely "allege[s] [a] contractual breach." *Curley*,

9   2014 WL 988618, at *5. Without the false promise allegations, the implied covenant claim is a run-

10  of-the-mill, duplicative breach of contract claim. The benefits Google claims it was denied are the

11  benefits it claims were expressly granted by the contract: the Match Plaintiffs' exclusive use of GPB.

12  (*See* Counterclaims ¶¶ 55–62 (Breach of Contract section); *compare id.* ¶ 66, *with id.* ¶ 59 (citing

13  the Match Plaintiffs' alleged breach "by using its own external payment systems" and thus "failing

14  to pay Google's" service fees)). Google's enforcement of the Payments Policy is "the exact

15  allegation at the heart of [Google's] breach of contract claim," and so the implied covenant claim is

16  duplicative. *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (dismissing

17  implied covenant claim because it did "not go beyond the statement of a mere contract breach");

18  *Sprint Spectrum Realty Co., LLC v. Hartkopf*, 2021 WL 1839705, *7 (N.D. Cal. May 7, 2021)

19  (granting summary judgment against an implied covenant claim because it was duplicative); *Johnson*

20  *v. Regents of Univ. of Cal.*, 2010 WL 2605090, *7 (N.D. Cal. June 28, 2010) (noting that courts in

21  the Ninth Circuit regularly dismiss duplicative implied covenant claims at the summary judgment

22  stage). In short, Google's implied covenant claim fails for the same reasons as its false promise claim

23  and because it merely alleges a superfluous contractual breach.

24  **D.      THE QUASI-CONTRACT CLAIM FAILS BECAUSE THERE IS AN ACTUAL**

25          **CONTRACT AND THE MATCH PLAINTIFFS RECEIVED NO UNJUST BENEFIT**

26          "To allege a claim for quasi-contract or unjust enrichment, a plaintiff must assert "(1) receipt

27  of a benefit and (2) unjust retention of the benefit at the expense of another." *Peterson v. Cellco*

28  *P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). Summary judgment is appropriate on Google's quasi-

contract claim for two reasons:  *First,* "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Here, it is undisputed that Google's quasi-contract claim is premised on rights governed by the DDA. Further, Google alleges the DDA is an "enforceable contract"[8] for its breach claim. (Counterclaims ¶¶ 56, 64, 86); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). Because Google does not allege that the DDA is unenforceable, this claim should be dismissed. *See Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021) (a plaintiff "must allege that the supposed contract between him and [defendant] was unenforceable or void" to assert a quasi-contract claim; collecting cases); *Klein v. Chevron USA, Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (same).

*Second*, even if Google's quasi-contract claim were not foreclosed by the DDA, Google again relies entirely on the alleged false promise discussed above to show an unjust retention of a benefit, and for the same reasons as above, summary judgment is warranted. (Counterclaims ¶ 78). Because the Match Plaintiffs informed Google that they did not want to integrate GPB exclusively, consistent with a years-long position and practice, and Google expressly ***allowed*** the Match Plaintiffs to continue using their alternative billing systems until at least March 31, 2022, there can be no "unjust" retention of a benefit. *See Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*, 2011 WL 13128301, at *4 (C.D. Cal. Oct. 25, 2011) (holding that a party cannot seek unjust enrichment for a benefit given without the expectation of payment, despite what the party had hoped to receive).

## E.      GOOGLE CANNOT OBTAIN PUNITIVE DAMAGES

The prayer for punitive damages in Google's counterclaims fails. (Counterclaims at 49). As a matter of law, Google cannot obtain punitive damages on its claims for breach of contract, unjust enrichment claims, or breach of the implied covenant of good faith and fair dealing. *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1286 (1994) ("[S]imple breach of contract . . . is not a ground for punitive damages."); *Beluca Ventures LLC v. Einride Aktiebolag*, 2022 WL

---

[8] The Match Plaintiffs reserve and do not waive their arguments and claims that Google's DDA violates federal and state antitrust laws.

1    17252589, at *5 (N.D. Cal. Nov. 28, 2022) ("Punitive damages are not available for breach of

2    contract or quasi-contract claims."); *Chu v. Old Republic Home Prot. Co., Inc.*, 60 Cal. App. 5th

3    346, 354 (2021) ("compensation for [] breach [of the covenant of good faith and fair dealing] has

4    almost always been limited to contract rather than tort remedies. . . . [T]his court recognizes only

5    one exception to that general rule: tort remedies . . . in cases involving insurance policies." (quoting

6    *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43–44 (1999))). No exception applies here.

7         Nor can Google obtain punitive damages on its false promise claim, which fails for the many

8    reasons discussed above. *See* § IV.B. But even if Google could overcome all those defects, to obtain

9    punitive damages, a plaintiff must "prove[] by clear and convincing evidence that the defendant has

10   been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code § 3294. "The wrongdoer must act with

11   the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights." *Tomaselli*,

12   25 Cal. App. 4th at 1287–88 (reversing award of punitive damages where there was nothing done

13   "which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with

14   a vexatious intention to injure."). There is no such evidence. As shown above, the statements Google

15   relies on for its false promise claim were true, not intended to deceive, ███████████████

16   ██████████████████████████████, and were "███████████

17   █████████████████████████" (Reiter Decl., Ex. 37 (███████) at 251:12–16);

18   *supra* §§ IV.B.1, 3. Google cannot show "malice, oppression, or fraud"—much less by clear and

19   convincing evidence—and punitive damages are not available for Google's remaining claims.

20   Therefore, Google's claims for punitive damages fail as a matter of law.

21                              **V.    CONCLUSION**

22         No evidence supports Google's counterclaims, which relate to the Match Plaintiffs' use of

23   their own payments systems without exclusively using GPB, despite explicitly telling Google the

24   same and Google allowing it. These issues are unrelated to the antitrust issues at the heart of the

25   complex MDL set for trial in November. Allowing Google to pursue these counterclaims would

26   derail that trial presentation for no purpose other than for the jury to confirm the obvious: Google

27   does not meet its burden of proof. The Match Plaintiffs respectfully request that this Court grant

28   partial summary judgment on each of Google's counterclaims and its request for punitive damages.

Dated:  April 20, 2023

HUESTON HENNIGAN LLP
John C. Hueston
Douglas J. Dixon
Joseph A. Reiter
Christine Woodin
Michael K. Acquah
William M. Larsen
Julia L. Haines
Karen L. Ding
Tate E. Harshbarger

Respectfully submitted,


By:   */s/ Douglas J. Dixon*
Douglas J. Dixon
*Attorneys for Plaintiffs Match Group, LLC;*
*Humor Rainbow, Inc.; PlentyofFish Media ULC;*
*and People Media, Inc.*