# Exhibit D

| | |
|---|---|
| 1 | Karma M. Giulianelli (SBN 184175) |
| 2 | **BARTLIT BECK LLP**<br>1801 Wewatta Street, Suite 1200 |
| 3 | Denver, CO 80202 |
| 4 | Telephone: (303) 592-3100<br>Facsimile: (303) 592-3140 |
| 5 | karma.giulianelli@bartlitbeck.com |
| 6 | Hae Sung Nam (*pro hac vice*) |
| 7 | **KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue |
| 8 | New York, NY 10022 |
| 9 | Telephone: (212) 687-1980<br>Facsimile: (212) 687-7715 |
| 10 | hnam@kaplanfox.com |
| 11 | *Co-Lead Counsel for the Proposed Classes* |
| 12 | [Additional Counsel on Signature Page] |

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION**<br><br>RELATED ACTIONS:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD<br><br>*State of Utah, et al., v. Google LLC, et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC, et al. v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD | No. 3:20-CV-05761-JD<br><br>**DECLARATION OF GEORGE A. ZELCS IN SUPPORT OF KOREIN TILLERY LLC'S STATEMENT OF ATTORNEYS' FEES AND COSTS PURSUANT TO CHAT SANCTION ORDER**<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Courtroom: Courtroom 11, 19th Floor<br>Judge: The Honorable James Donato |

I, George A. Zelcs, declare as follows:

1. I am a partner in the law firm of Korein Tillery LLC, one of the firms representing the Consumer Plaintiffs in this action. I have been admitted to practice *pro hac vice* in this Court.

2. I submit this declaration in support of the Consumer Plaintiffs' Statement of Attorneys' Fees and Costs Pursuant to Chat Sanction Order. The facts set forth in this declaration are based on my personal knowledge and on business records associated with this matter and/or my firm. If called as a witness, I could and would testify competently thereto.

## THE KOREIN TILLERY TEAM

3. Three Korein Tillery partners and seven Korein Tillery associates billed time related to the Rule 37 motion, evidentiary hearing, and subsequent filings. The partners were Carol O'Keefe, Marc Wallenstein, and me. The associates were Danielle Lee, Patrick McCarthy, Aidan McNamara, Ian Moody, Jaclyn Podor, Peter Rocque, and David Walchak. A true and correct firm bio is attached hereto as Annex 2.

## KOREIN TILLERY LEGAL FEES

4. In accordance with instructions from Co-Lead Class Counsel, all Korein Tillery attorneys assigned to this matter made contemporaneous records of the time they devoted to this case, which were maintained in the ordinary course of business in an electronic database administered by our firm.

5. Approximately 98% of Korein Tillery's hours in this matter were billed by associates. A team comprising Ms. Podor, Ms. Lee, Mr. McCarthy, Mr. McNamara, and Mr. Rocque led Consumer Plaintiffs' efforts to identify documentary evidence for use in the evidentiary hearing and subsequent filings. Mr. Walchak supervised this work and separately assisted with legal research and drafting of motion papers, among other tasks. All of Mr. Moody's hours were incurred cite checking the motion papers. Of the hours billed by Korein Tillery partners, the majority were billed by me, George Zelcs, in connection with my assistance preparing the Consumer Plaintiff team for, and attending, the evidentiary hearing on January 31, 2023.

6. Attached as Annex 1 is a summary of the hours contemporaneously recorded by the billable Korein Tillery personnel who performed significant work related to the Rule 37 motion. This summary was prepared in accordance with Footnote 5 to the Court's March 28, 2023 Findings of Fact and Conclusions of Law Re Chat Preservation, and identifies the total amount of time devoted to each category of tasks by each billable professional using codes that are consistent with those that have been used in recent class fee submissions in this Court and other federal courts within the Ninth Circuit. The summary also identifies each professional's name, title, hourly rate, and a calculation of the resulting fees. Detailed time entries are also available for inspection by the Court upon request.

7. I am personally familiar with, and directed, the work performed by each of the lawyers who performed work in this case. In my judgment, the work was performed efficiently considering the circumstances. All work performed was authorized by Co-Lead Class Counsel.

## COSTS INCURRED BY KOREIN TILLERY

8. Korein Tillery seeks no out-of-pocket costs incurred in relation to the Rule 37 motion.

9. I hereby certify that all of the fees sought were actually incurred and were reasonably necessary to the prosecution of the Rule 37 motion.

10. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 21, 2023.

_____
George A. Zelcs

# Annex 1

## Korein Tillery Fees in Connection with Rule 37 Motion
From December 1, 2021 Through March 28, 2023

| Biller | Biller Title | Category | 2023 Hours | 2023 Rate | 2022 Hours | 2022 Rate | Total |
|---|---|---|---|---|---|---|---|
| Aidan McNamara | Associate | 1 | 5.9 | $550 | 0 | $550 | $3,245.00 |
| Aidan McNamara | Associate | 6 | 25 | $550 | 0 | $550 | $13,750.00 |
|  |  |  |  |  |  |  |  |
| Carol O'Keefe[1] | Partner | 1 | 0 | $875 | 0.2 | $800 | $160.00 |
| Carol O'Keefe | Partner | 5 | 0 | $875 | 0.5 | $875 | $437.50 |
| Carol O'Keefe | Partner | 6 | 0 | $875 | 0.2 | $875 | $175.00 |
| Carol O'Keefe | Partner | 10 | 0.6 | $875 | 0 | $875 | $525.00 |
|  |  |  |  |  |  |  |  |
| Danielle Lee | Associate | 6 | 97 | $550 | 0 | $550 | $53,350.00 |
| Danielle Lee | Associate | 10 | 8.5 | $550 | 19.2 | $550 | $15,235.00 |
|  |  |  |  |  |  |  |  |
| David Walchak | Associate | 1 | 0.3 | $800 | 5.6 | $600 | $3,600.00 |
| David Walchak | Associate | 2 | 0 | $800 | 0.5 | $600 | $300.00 |
| David Walchak | Associate | 5 | 0.3 | $800 | 1.7 | $600 | $1,260.00 |
| David Walchak | Associate | 6 | 18.8 | $800 | 46.6 | $600 | $43,000.00 |
| David Walchak | Associate | 7 | 0 | $800 | 1.7 | $600 | $1,020.00 |
| David Walchak | Associate | 10 | 2.8 | $800 | 0.8 | $600 | $2,720.00 |
|  |  |  |  |  |  |  |  |
| George Zelcs | Partner | 1 | 0.1 | $1,300 | 0 | $1,300 | $130.00 |
| George Zelcs | Partner | 6 | 0.1 | $1,300 | 0 | $1,300 | $130.00 |
| George Zelcs | Partner | 10 | 9.9 | $1,300 | 0.1 | $1,300 | $13,000.00 |
|  |  |  |  |  |  |  |  |
| Ian Moody | Associate | 6 | 0 | $500 | 9 | $500 | $4,500.00 |
|  |  |  |  |  |  |  |  |
| Jaclyn Podor | Associate | 6 | 175.7 | $550 | 0 | $550 | $96,635.00 |
| Jaclyn Podor | Associate | 10 | 7.2 | $550 | 111.5 | $550 | $65,285.00 |
|  |  |  |  |  |  |  |  |
| Patrick McCarthy | Associate | 6 | 50.3 | $400 | 0 | $400 | $20,120.00 |
|  |  |  |  |  |  |  |  |
| Peter Rocque | Associate | 6 | 59.2 | $500 | 0 | $500 | $29,600.00 |
|  |  |  |  |  |  |  |  |
| Marc Wallenstein | Partner | 10 | 2.1 | $950 | 0 | $950 | $1,995.00 |
|  |  |  |  |  |  |  |  |
| **TOTAL** |  |  |  |  |  |  | **$370,172.50** |

---

[1] Ms. O'Keefe's hourly rate in March 2022 was $800. Her hourly rate increased to $875 later in 2022. Korein Tillery billed no time to the issue in 2021.

**Category Codes**

| | | |
|---|---|---|
| (1) Investigation / Factual or Legal Research | (6) Pleadings/Briefs/Pretrial Motions | (11) Experts/Consultants |
| (2) Lead Counsel Calls/Meetings | (7) Discovery (Draft/Respond/Meet & Confer) | (12) Settlement/Mediation |
| (3) Attorney Communications | (8) Discovery (Document Review) | (13) Trial Preparation |
| (4) Client Communications | (9) Discovery (Depositions) | (14) Trial |
| (5) Case Management & Litigation Strategy | (10) Court Appearances & Preparation | (15) Appeals |

# Annex 2

# KOREIN TILLERY
*Attorneys at Law*

| | |
|---|---|
| One U.S. Bank Plaza | 205 North Michigan, Suite 1950 |
| 505 N. 7th Street, Suite 3600 | Chicago, Illinois 60601-4269 |
| St. Louis, Missouri  63101 | Tel:  312.641.9750 |
| Tel.: 314.241.4844 | Fax:  312.641.9751 |
| Fax: 314.241.3525 | |

www.koreintillery.com

Korein Tillery — based in Chicago, St. Louis, and San Diego — is one of the country's most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. Most of our attorneys have represented both plaintiffs and defendants at some point in their careers, and, combined, we've handled cases covering virtually every conceivable substantive area of the law. We've litigated cases for clients ranging from individuals and certified classes to governmental entities and billion-dollar, multi-national corporations. Collectively, we've tried hundreds of cases to verdict, with several verdicts exceeding 10 figures. Our attorneys have been nominated for numerous regional and national trial lawyer awards, and we've won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

The National Law Journal has consistently deemed Korein Tillery to be one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past 15 years. In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit*, 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). In *Kircher*, Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

Korein Tillery has been appointed as class counsel in more than fifty class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g., Parker v. Sears Roebuck & Co.,* Case No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc.*, 04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc.*, 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel.*

*Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

**The Firm's Recent Work:**

**CLASS ACTION AND COMPLEX LITIGATION**

*National Credit Union Administration Mortgage-Backed Securities Litigation.*
The National Credit Union Administration ("NCUA") is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and co-counsel Kellogg, Hansen, Todd, Figel & Frederick filed approximately 20 federal lawsuits throughout 2011-2013 alleging that Wall Street investment banks misled credit unions about the quality of certain residential mortgage-backed securities ("RMBS"), causing billions of dollars of losses that the NCUA insured. More specifically, NCUA alleged that these banks violated the Federal Securities Act by representing in federally-regulated offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines when in fact the majority of the loans did not.

Throughout several years of contentious litigation, involving several successful appeals, Korein Tillery and Kellogg Hansen obtained more than $5.1 billion in legal settlements on NCUA's behalf, including but not limited to:

- *NCUA v. JP Morgan Chase Bank*, 2:13-cv-02012-JWL (D. Kan.) (obtained $1.4 billion settlement in Dec. 2013);
- *NCUA v. RBS Sec., Inc.*, 1:13-cv-06726-DLC (S.D.N.Y.) (accepted offer of judgment for $129.6 million plus fees in Sept. 2015);
- *NCUA v. Barclays Capital, Inc.*, 1:13-cv-06727-DLC (S.D.N.Y.) & 2:12-cv-02631-JWL (D. Kan.) (obtained $325 million combined settlement in Oct. 2015);
- *NCUA v. Wachovia Capital Markets LLC*, 1:13-cv-06719-DLC (S.D.N.Y.) & 2:11-cv-02649-JWL (D. Kan.) (obtained $53 million combined settlement in Oct. 2015);
- *NCUA v. Morgan Stanley & Co., Inc.*, 1:13-cv-06705-DLC (S.D.N.Y.) & 2:13-cv-02418-JWL (D. Kan.) (obtained $225 million combined settlement in Dec. 2015);
- *NCUA v. Goldman Sachs and Co.*, 1:13-cv-06721-DLC (S.D.N.Y.) & 2:11-cv-06521-GW-JEM (C.D. Cal.) (obtained $575 million combined settlement in Apr. 2016);
- *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.) (obtained $1.1 billion combined settlement in Sept. 2016);
- *NCUA v. UBS Securities, LLC*, 2:12-cv-02591-JWL (D. Kan.) (obtained $445 million settlement in Mar. 2017); and
- *NCUA v. Credit Suisse Sec. (USA) LLC*, 2:12-cv-02648-JWL (D. Kan.) (obtained $400 million settlement in Mar. 2017).

NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the net proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

Korein Tillery and Kellogg Hansen continue to prosecute several lawsuits on behalf of the NCUA against certain RMBS trustees regarding their alleged failure to perform their duties.

### *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, **No. 13-cv-07789-LGS (S.D.N.Y.)**

The global foreign exchange ("FX") market for currency is a $1-trillion-per-day market, with the dominant dealers representing over 90 percent of the global FX market. Beginning as early as 2003 and continuing through 2013, these dealers used communications in multiple secret chat rooms to conspire to fix spot prices in dozens of currency pairs, manipulate FX benchmark rates, and exchange key confidential customer information in an attempt to trigger client stop loss orders and limit orders. These dealers constituted some of the largest financial institutions in the world, including Bank of America, Barclays, BNP Paribas, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan Chase & Co., Morgan Stanley, Royal Bank of Scotland, and UBS.

Korein Tillery, working with co-counsel Scott+Scott Attorneys at Law, LLP and Hausfeld LLP, developed and filed a class action on behalf of individuals who entered into FX transactions in over-the-counter exchanges and/or on exchanges with these dealers, alleging violations of Sections 1 and 3 of the Sherman Antitrust Act and violations of the Commodity Exchange Act. As a result of nearly 6 years of work by Korein Tillery and its co-counsel costing the firms nearly $30 million in case-related expenses, $2.3 billion in court-approved settlements have been reached with 15 of the 16 defendants, constituting one of the largest antitrust class action recoveries in history. Mediator Kenneth Feinberg concluded that this settlement would "represent[ ] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers."

### *Senne v. The Office of the Comm'r of Baseball*, **No. 14-CV-00608-JCS (N.D. Cal.).**

In this action, Korein Tillery is co-lead counsel for a class of minor league baseball players who allege that MLB and MLB's member franchises failed to pay the players minimum wage, required overtime pay, or sometimes any wages at all. The players assert two claims under the federal Fair Labor Standards Act ("FLSA") and an additional thirty-one under the wage-and-hour laws of several states.

Early in the case, the court denied a motion to transfer the action to another venue, and denied a motion to dismiss for purported lack of standing. *See Senne*, 2015 WL 4240716 (N.D. Cal. July 13, 2015). On October 20, 2015, the Court granted the players conditional certification of a collective under the Fair Labor Standards Act. *Senne*, 2015 WL 6152476

3

(N.D. Cal. Oct. 20, 2015). A court-directed notice was sent, and around 2,300 players joined the collective.

In March 2017, the court certified a Rule 23 class of minor leaguers who played in California. *Senne*, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017). The parties cross-appealed, with MLB arguing that no class should have been certified, and the players arguing that the court should have certified additional classes. On August 16, 2019, the Ninth Circuit agreed with the players. It affirmed the certification of the class of players who worked in California, and it certified additional classes for players who worked during spring training and other periods in Arizona and Florida. MLB petitioned the Ninth Circuit for an en banc re-hearing, which was denied, and then petitioned the U.S. Supreme Court for review, which was also denied. 934 F.3d 918 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020).

In March 2022, the district court issued a landmark summary judgment decision that, for the first time ever, recognized that minor league players are employees under wage-and-hour laws. Less than a month before trial, Korein Tillery negotiated a settlement that resulted in players receiving back pay and MLB rescinding unfair rules and contractual provisions that required players to work long hours without any pay for much of the year. Those contractual rules had been in place for over 50 years. The $185 million settlement on behalf of thousands of minor league baseball players is believed to be one of the five largest wage-and-hour settlements ever.

In its order approving the settlement, the court took notice of Korein Tillery's skilled advocacy, stating that the firm "has handled this case skillfully and with professionalism, diligently pursuing the interests of the players. The significant relief they have obtained under the Settlement Agreement is, in no small part, due to their expertise and dedication."

**United States ex rel. Garbe v. Kmart Corp., 3:12-cv-00881-NJR-PMF (S.D. Ill.).** Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices—often significantly higher prices—to customers with Medicare Part D coverage than it charges self-paying customers for the same prescription. For example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but charged the Government $58.79 for the same prescription.

Korein Tillery and co-counsel Phillips & Cohen filed a False Claims Act case against Kmart after the Government declined to intervene. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contended that it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claimed its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter

4

the discount prices are the prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The U.S. District Court for the Southern District of Illinois rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed, but the Seventh Circuit affirmed the district court in large part. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). After remand, the case settled in late 2017 with Kmart agreeing to pay approximately $59 million.

### *Lightfoot v. Arkema, Inc. Ret. Benefits Plan,* **CIV. 12-773 JBS/JS (D.N.J.).**

After the court certified a class of present and former retirement benefits plan participants, plaintiffs filed a motion for partial summary judgment on the issue of whether the COLAs the Plan promised to participants who elected annuities were part of participants' "accrued benefit" under ERISA. The Plan countered with a motion for summary judgment arguing the statute of limitations had run on all class members' claims owing to statements in a 1994 Summary Plan Description (SPD) and other plan documents. Although the same judge had previously ruled that the statements in the SPD and Plan were "clear repudiations" in a companion case, Korein Tillery convinced the court to deny the Plan's motion for summary judgment and to grant plaintiffs' motion for partial summary judgment, finding that the COLAs promised annuitants were accrued benefits. 2013 WL 3283951 (D.N.J. June 27, 2013). The case settled in 2014 with the average class member receiving $11,000 in cash that could be rolled into a retirement account.

### *City of Greenville v. Syngenta Crop Prot., Inc.,* **3:10-CV-188-JPG-PMF (S.D. Ill.).**

On October 23, 2012, the U.S. District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between class members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics—that it does not readily bind to soil and that it persists in the environment—dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and contaminates surface waters such as rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

Plaintiffs alleged that atrazine had continuously entered their water supplies, and, as a result of this contamination, they had to filter atrazine from their water sources. After eight years of litigation, Korein Tillery secured a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their

5

drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012); *see also* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (granting final approval of settlement and attorneys' fees). The settlement amounted to approximately 76 percent of the $139 million estimated to be the Class's maximum potential recovery.

To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each class member through a settlement website. From there, Claimants were able to view the test data already collected for their system and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15 percent, in this case virtually all settlement funds were distributed to class members.

Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.

### *Missouri Utility Tax Litigation.*
Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues—both retrospectively and prospectively—for more than 350 cities throughout Missouri. Korein Tillery has recovered more than $1 billion for Missouri municipalities. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010, 2015, and 2017.

In 2012, Korein Tillery was successful in persuading the Supreme Court of Missouri to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away this litigation by barring cities and towns from serving as class representatives. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

### *Mansfield v. ALPA,* **06-cv-6869 (N.D. Ill.).**
Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

Korein Tillery filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the

6

sale of $550 million in convertible notes. Korein Tillery prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D. Ill. Oct. 1, 2007). After Korein Tillery also successfully opposed motions for summary judgment, 2009 WL 2386281 (N.D. Ill. Jul. 29, 2009), and to decertify the class, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009), the parties reached a settlement two weeks before trial. Per the settlement, ALPA funded an aggregate settlement fund of $44 million to be paid directly to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

***Williams v. Rohm & Haas Pension Plan*, 4:04-cv-0078-SEB-WGH (S.D. Ind.).**
Korein Tillery filed this class action in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments (COLA) in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA—$180 million. In 2006, the case was certified and Korein Tillery won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. denied*, 128 S. Ct. 1657 (2008). Settlement approval and the fee award were later affirmed. 658 F.3d 629 (7th Cir. 2011).

***Parker v. Sears, Roebuck & Co.*, Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007).**
Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered, and set-up in customers' homes. In the 1960s and 1970s, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward, spilling the hot contents onto anyone standing in the vicinity.  Children who opened the range and used the door as a step could unwittingly tip boiling liquids onto themselves. Dozens of people had been killed and hundreds had been maimed as a result of this problem.

7

Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installation of an anti-tip bracket that could be attached to the wall or floor at the back end of the range, preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States. Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

Sears, Roebuck & Company at the time was the largest retail seller of kitchen ranges in the United States—averaging more than 800,000 ranges sold every year. When selling a gas or electric range, Sears generally includes delivery, installation, and hookup in customers' homes; thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544.5 million.

This settlement was touted by the public interest organization Public Citizen as an example of how consumer class actions benefit society. Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

### *Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007).

In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100 percent of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. *The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007).

### *CUNA Mutual Mortgage-Backed Securities Litigation.*

CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company (collectively referred to as "CUNA Mutual") are financial services and insurance firms that offer insurance, investment, and retirement products and services to credit unions and their members. Korein Tillery and Kellogg Hansen filed a series of individual lawsuits in 2011 and 2013 on behalf of CUNA Mutual against eight Wall Street

8

investment banks seeking to recover losses on $300 million of RMBS purchases using the novel common-law theory of contract rescission.

As in NCUA, CUNA Mutual alleged that the banks misrepresented in offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines. CUNA Mutual also alleged that the banks misrepresented that it conducted due diligence to verify the accuracy of its offering document representations. In mid-2015, an appellate court issued a favorable opinion in CUNA Mutual's bellwether case approving of CUNA Mutual's primary litigation arguments. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015). On remand, the case settled in December 2015 for a confidential amount. CUNA Mutual eventually settled its remaining RMBS cases over the next two years for confidential amounts. *See, e.g.*, *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 3:14-cv-00249-wmc (W.D. Wis.) (settled in Oct. 2017); *CMFG Life Ins. Co. v. Morgan Stanley & Co., LLC*, 3:13-cv-00577-jdp (W.D. Wis.) (settled in Sept. 2017); *CMFG Life Ins. Co. v. J.P. Morgan Sec, LLC*, 3:13-cv-00580-wmc (W.D. Wis.) (settled in Mar. 2016).

### *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, **No. 15-cv-9323-LGS (S.D.N.Y.)**

From 2008 to 2015, Barclays Bank PLC acted as both a buyer and seller of various foreign and domestic currencies through various trading platforms. Instead of executing foreign exchange orders placed by Barclays' customers on these platforms, Barclays instituted a secret "last look" policy that delayed execution of matched trades for several hundred milliseconds or even several seconds which allowed Barclays to determine through its algorithms whether the trade would be unfavorable to its position. If the matched trade would be unfavorable, Barclays reneged on the agreed price and rejected the trade or placed the order at a worse price. Barclays used last look to reject millions of trades that would otherwise have been executed.

Korein Tillery, along with its co-counsel Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP, filed a class action against Barclays Bank PLC regarding its use of "last look," raising breach of contract and other claims. The court appointed Korein Tillery and Scott+Scott as class counsel. Counsel was successful in securing a $50 million settlement from Barclays on behalf of the class, which the court ultimately approved.

**ANTITRUST LITIGATION**

*In re GSE Bonds Antitrust Litig.*: Korein Tillery, along with co-counsel, alleged antitrust violations arising from coordinated price-fixing in the secondary market for bonds issued by the government-sponsored entities Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Farm Credit Banks, and Federal Home Loan Banks ("GSE Bonds"). Plaintiffs defeated two motions to dismiss and reached a settlement with all defendants, including Deutsche Bank Securities Inc., First Tennessee Bank, N.A., FTN Financial Securities Corp., Goldman Sachs & Co. LLC, Barclays Capital Inc., BNP Paribas

Securities Corp., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., J. P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., LLC, Nomura Securities International, Inc., SG Americas Securities LLC, TD Securities (USA) LLC, and UBS Securities LLC. The combined settlement provided $386.5 million to class members and was approved by the court on June 18, 2020.

### *Sullivan v. DB Investments, Inc.*
Korein Tillery represented a nationwide class of diamond purchasers in an antitrust case against the country's largest diamond distributor. That case was consolidated with others in the Eastern District of Pennsylvania and Korein Tillery was appointed co-lead counsel. In that role, the firm helped negotiate injunctive relief and a nationwide settlement that created a $323 million fund to compensate diamond purchasers.

### *Litovich v. Bank of America Corp., et al.*, 1:20-cv-03154-LJL (S.D.N.Y.)
The United States corporate bond market is among the world's largest and deepest sources of business capital, with over 16.5 million trades for over $8.6 trillion in par value occurring in 2019 alone. In this market, retail investors in odd lots of corporate bonds (bond trades involving less than 1,000 bonds, or that are less than $1 million in par value, which represent as many as 90% of the total number of trades in corporate bonds) receive inferior prices when they buy and sell bonds compared to investors trading in round lots (trades involving increments of 1,000 bonds, or that are greater than and divisible by $1 million in par value). This disparity has cost odd-lot investors billions of dollars. This state of affairs exists and has been perpetuated by ten of the world's largest banks/corporate bond dealers, who have engaged in a group boycott of all electronic platforms that have threatened to improve odd-lot pricing, increase competition on pricing for odd lots, or offer all-to-all trading in odd lots of U.S. corporate bonds.

Korein Tillery was named Interim Co-Lead Class Counsel (with Scott+Scott Attorneys at Law LLP) in this antitrust class action against ten banks seeking to recover damages in an amount conservatively estimated to be in excess of $10 billion dollars.