HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:     (949) 229-8640

HUESTON HENNIGAN LLP
Joseph A. Reiter, State Bar No. 294976
jreiter@hueston.com
Christine Woodin, State Bar No. 295023
cwoodin@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:     (213) 788-4340

Attorneys for Plaintiffs Match Group, LLC;
Humor Rainbow, Inc.; PlentyofFish Media ULC;
and People Media, Inc.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Match Group, LLC, et al., v. Google LLC , et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**MATCH PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:        Honorable James Donato<br>Date:         August 3, 2023<br>Time:         10:00 am<br>Courtroom: 11 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.      GOOGLE'S BREACH OF CONTRACT CLAIM FAILS BEFORE
MARCH 31, 2022 .................................................................................................. 3

     A.      Google Indisputably Modified the Compliance Deadline to
March 31, 2022 ........................................................................................ 3

         i.      The Modified Terms Are Not Disputed............................................ 3

         ii.      Google Unambiguously Consented to the
Modification in Writing ....................................................... 4

         iii.      The Modification Precludes Damages ............................................ 5

         iv.      Google's Consideration Arguments Fail ......................................... 6

     B.      Google Waived Compliance Through March 31, 2022................................ 7

II.      GOOGLE'S FALSE PROMISE CLAIM FAILS ................................................ 8

     A.      Google Cannot Prove a Clear and Unequivocal False Promise .................. 8

     B.      There is No Evidence the Match Plaintiffs Knowingly Made a
False Promise with Specific Intent to Induce Google's
Reliance ................................................................................................ 11

     C.      There Is No Evidence Google Actually or Justifiably Relied
on a False Promise ................................................................................ 12

     D.      There Is No Evidence the Alleged False Promise Caused Any
Loss to Google ...................................................................................... 14

III.      GOOGLE'S PRAYER FOR PUNITIVE DAMAGES FAILS ............................. 15

IV.      GOOGLE'S CLAIM FOR BREACH OF THE IMPLIED
COVENANT FAILS ........................................................................................ 15

V.      GOOGLE'S UNJUST ENRICHMENT / QUASI-CONTRACT
CLAIM FAILS ................................................................................................ 15

CONCLUSION................................................................................................................. 15

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

4

**<u>Cases</u>**

5

*A-1 Transmission Auto. Tech., Inc. v. AMCO Ins. Co.*,
    2012 WL 1534466 (C.D. Cal. Apr. 27, 2012) .................................................................. 15

6

7

*Acadia, Cal., Ltd., v. Herbert*,
    54 Cal. 2d 328 (1960) .......................................................................................................... 4

8

9

*Alliance Mortg. Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995) ..................................................................................................... 13

10

*Auntie Anne's, Inc. v. Wang*,
    2014 WL 11728722 (C.D. Cal. July 16, 2014) .................................................................... 7

11

12

*Bailey v. Breetwor*,
    206 Cal. App. 2d 287 (1962) ............................................................................................... 6

13

*Baldwin Park Unified Sch. Dist. v. Genesis Mgmt. & Ins. Servs. Corp.*,
    2017 WL 5635018 (C.D. Cal. July 10, 2017) ..................................................................... 8

14

15

*Barajas v. Carriage Servs., Inc.*,
    2019 WL 6699737 (N.D. Cal. Dec. 9, 2019) .................................................................... 12

16

17

*Becker v. Wells Fargo Bank NA, Inc.*,
    2014 WL 3891933 (E.D. Cal. Aug. 7, 2014) .................................................................... 14

18

19

*Boomer v. AT & T Corp.*,
    309 F.3d 404 (7th Cir. 2002) ............................................................................................... 6

20

*Carlson v. Clapper*,
    2019 WL 1061743 (N.D. Cal. Mar. 6, 2019) ...................................................................... 8

21

22

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................ 9

23

*DeLeon v. Verizon Wireless, LLC*,
    207 Cal. App. 4th 800 (2012) ............................................................................................. 4

24

25

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ......................................................................................... 15

26

*Fed. Rsrv. Bank of San Francisco v. HK Sys.*,
    1997 WL 227955 (N.D. Cal. Apr. 24, 1997) .................................................................... 10

27

28

*GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc.*,
    2000 WL 36741016 (N.D. Cal. Aug. 11, 2000) ................................................................. 5

TABLE OF AUTHORITIES (cont.)

Page(s)

*Gould v. Corinthian Colleges, Inc.*,
192 Cal. App. 4th 1176 (2011) ................................................................... 7

*Guzman v. Visalia Cmty. Bank*,
71 Cal. App. 4th 1370 (1999) ................................................................... 4

*Hills Transp. Co. v. Southwest Forest Indus., Inc.*,
266 Cal. App. 2d 702 (1968) ................................................................. 11

*Hoffman v. 162 N. Wolfe LLC*,
228 Cal. App. 4th 1178 (2014) ........................................................... 9, 13

*Huy Fong Foods, Inc. v. Underwood Ranches, LP*,
66 Cal. App. 5th 1112 (2021) ................................................................. 10

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......................................................... 10, 15

*Interstate Restoration, LLC v. Seaman*,
2014 WL 562643 (C.D. Cal. Feb. 11, 2014) ........................................... 9

*Korens v. R. W. Zukin Corp.*,
212 Cal. App. 3d 1054 (1989) ............................................................ 4, 5

*Las Vegas Land & Dev. Co., Inc. v. Bank of Am., N.A.*,
2018 WL 6991161 (C.D. Cal. Oct. 15, 2018).......................................... 8

*Major v. Western Home Ins. Co.*,
169 Cal. App. 4th 1197 (2009) ............................................................... 6

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
224 F. Supp. 3d 891 (N.D. Cal. 2016)................................................... 14

*Monster Energy Co. v. Schechter*,
7 Cal. 5th 781 (2019)....................................................................... 1, 4

*Motown Rec. Corp. v. Brockert*,
160 Cal. App. 3d 123 (1984) ................................................................. 6

*Newberger v. Rifkind*,
28 Cal. App. 3d 1070 (1972) ................................................................. 6

*Panagotacos v. Bank of Am.*,
60 Cal. App. 4th 851 (1998) ................................................................. 4

*Peterson v. Wells Fargo Bank, N.A.*,
2015 WL 3397385 (N.D. Cal. May 26, 2015)........................................ 8

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

4

*Philipson & Simon v. Gulsvig*,
   154 Cal. App. 4th 347 (2007) ........................................................................ 13

5

*Phillips v. JP Morgan Chase Bank, N.A.*,
   2011 WL 13101726 (S.D. Cal. Nov. 14, 2011) ............................................ 2, 8

6

7

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018) .......................................................... 14

8

*Rincon Center Assoc. v. Chrysler MacNally Corp.*,
   1998 WL 410886 (N.D. Cal. July 16, 1998) .................................................. 7

9

10

*Rochlis v. Walt Disney Co.*,
   19 Cal. App. 4th 201 (1993) ............................................................................ 8

11

12

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014) ........................................................................ 14

13

*S.E.C. v. Criterion Wealth Mgmt. Servs., Inc.*,
   599 F. Supp. 3d 932 (C.D. Cal. 2022) .......................................................... 12

14

15

*Smallwood v. Fremont Surgery Ctr. Med. Clinic, Inc.*,
   2010 WL 2059465 (Cal. Ct. App. May 25, 2010) .......................................... 8

16

17

*Snapkeys, Ltd. v. Google LLC*,
   442 F. Supp. 3d 1196 (N.D. Cal. 2020) ...................................................... 3, 15

18

*Sorge v. Gaasterland*,
   2011 WL 96467 (Cal. Ct. App. Jan. 12, 2011) .............................................. 8

19

20

*Spinks v. Equity Residential Briarwood Apartments*,
   171 Cal. App. 4th 1004 (2009) ...................................................................... 15

21

22

*Stockton Dry Goods Co. v. Girsh*,
   36 Cal. 2d 677 (1951) ...................................................................................... 5

23

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal. App. 4th 153 (1991) ............................................................................ 11

24

25

*Tenzer v. Superscope, Inc.*,
   39 Cal. 3d 18 (1985) .................................................................................... 2, 12

26

27

*Tribeca Companies, LLC v. First Am. Title Ins. Co.*,
   239 Cal. App. 4th 1088 (2015) .................................................................. 6, 14

28

*Tumbling v. Merced Irrigation Dist.*,
   2010 WL 11450406 (E.D. Cal. Sept. 27, 2010) ............................................ 14

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

Page(s)

3

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
4
    50 Cal. 4th 913 (2010) ........................................................................................ 5

5
*Warner Constr. Corp. v. City of Los Angeles*,
6
    2 Cal. 3d 285 (1970) .......................................................................................... 8

7
*Wilhelm v. Pray, Price, Williams & Russell*,
    186 Cal. App. 3d 1324 (1986) ......................................................................... 12
8

9
*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ......................................................................... 12

10
*Yeng Sue Chow v. Levi Strauss & Co.*,
11
    49 Cal. App. 3d 315 (1975) ............................................................................... 5

12  **<u>Statutes</u>**

13  Cal. Civil Code § 1710(1), (2), and (3)....................................................................... 8

14  **<u>Rules</u>**

15  Fed. R. Evid. § 602 .................................................................................................. 11

16  Fed. R. Evid. § 802 .................................................................................................. 11

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Google ignores undisputed facts and confuses the law in an attempt to save meritless counterclaims that would derail the upcoming antitrust trial. While Google overcomplicates things, the issues are straightforward. Google invited the Match Plaintiffs to apply for an extension of the compliance deadline for Google's new Payments Policy. Google did not condition the extension on an agreement to comply or ask the Match Plaintiffs if they would do so. Nor did the Match Plaintiffs make any such promise. For years prior, the Match Plaintiffs told Google they would not abandon their billing systems, and before applying for an extension, they again told Google they "will continue to use [their] bespoke payment system to process payments." (Dkt.[1] 486-22 at -746.) The Match Plaintiffs then explained in the extension request form why they could not comply: doing so "will meaningfully harm our users (inflate prices) & undermine our business." (Dkt. 488-3 at -123.) Google's witnesses admitted they did not believe the Match Plaintiffs promised to comply, and acknowledged the Match Plaintiffs' statements were "consistent with what Match had been telling [Google] for years." (Dkt. 488-31 at 251:12–16.) Google then granted the Match Plaintiffs an extension in writing that allowed them to continue using their billing systems until March 31, 2022. These irrefutable facts support summary judgment, as *Google's* cases show:

The extension is fatal to Google's **breach of contract claim** for any period before March 31, 2022. While Google argues it did not consent to the extension because it supposedly thought the Match Plaintiffs would comply after March 31, 2022, Google's cited cases confirm that its subjective beliefs are irrelevant. (Opp. at 12 (citing *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 789 (2019) (Consent is "determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.")).) Google's disingenuous claim that the extension lacked consideration also fails. Google does not explain how it could have *unilaterally* modified the Payments Policy in the past and then argue that consideration is somehow lacking here. Nor can Google dispute that it benefited when the Match Plaintiffs continued publishing their apps on Google Play, which they had no obligation to do, thereby providing new consideration.

---

[1] "Dkt." refers to the MDL docket, Case No. 3:21-md-02981 (N.D. Cal.), unless otherwise noted.

1   Google's **false promise claim** likewise fails. Google refuses to accept that a false promise
2 claim (aka promissory fraud) requires a "clear and unequivocal" promise. *See, e.g.*, *Phillips v. JP*
3 *Morgan Chase Bank, N.A.*, 2011 WL 13101726, at \*9 (S.D. Cal. Nov. 14, 2011) ("Promises in
4 promissory fraud . . . claims must be clear and unequivocal."). Google misleadingly refers to *different*
5 fraud claims, with *different* standards, that it chose *not* to plead. The reason is simple: Google cannot
6 identify a clear and unequivocal promise by the Match Plaintiffs. It relies on "implied" statements
7 and "interpretation," (Opp. at 19), which is insufficient, and reason alone to dismiss this claim.

8   Nor can Google satisfy the other elements of its false promise claim. There is zero evidence
9 the Match Plaintiffs knowingly made a false promise with specific intent to deceive. Google argues
10 the Match Plaintiffs did not comply after March 31, 2022, but "something more than nonperformance
11 is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*,
12 39 Cal. 3d 18, 30 (1985). Not only is that "something more" missing here, the Match Plaintiffs were
13 transparent with Google over many years (including when applying for an extension) that they would
14 continue using their own billing systems.

15   Google also cannot prove that it actually *or justifiably* relied on any alleged false promise.
16 Google relies on a conclusory and self-serving declaration of one employee, Sarah Karam, that
17 cannot overcome summary judgment, as it is inconsistent with – (1) her deposition testimony, (2) the
18 testimony of every other Google witness on this issue, and (3) internal Google documents – all of
19 which show Google did not believe the Match Plaintiffs had promised to comply nor relied on any
20 alleged promise. Google's attempt to attribute statements to Shar Dubey, then-CEO of Match Group,
21 Inc., is even more egregious. Google represents no fewer than *eight* times that Ms. Dubey said the
22 Match Plaintiffs would comply. (Opp. at 1, 2, 11, 18, 20, 21, 22, 24.) But Google cites *only* Ms.
23 *Karam's* deposition testimony even though ████████████████████████████████████████████
24 ████████████████████████████████████████████████. (Dkt. 507-10 (Karam Dep.)
25 271:4–7 ("█████████████████████████████████████████████."). Google cannot fabricate
26 a genuine dispute of material fact.[2]

27

---

28 [2] Google also lards its Opposition with allegations that have nothing to do with the issues before the Court. For example, Google argues that "Match dislikes certain pro-consumer features of GPB" and (Continued...)

1      Lastly, Google cannot dispute that its **breach of the implied covenant** and **quasi-contract**

2  claims are based on the same allegations as its breach of contract claim and therefore must be

3  dismissed. Indeed, Google recently obtained dismissal of a duplicative claim on the same basis in

4  this District. *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020).

5      Summary judgment is appropriate on all of Google's counterclaims and punitive damages.

6                                    **ARGUMENT**

7  **I.      GOOGLE'S BREACH OF CONTRACT CLAIM FAILS BEFORE MARCH 31, 2022**

8      Google's breach of contract claim fails for the pre-March 31, 2022 period[3] because: (1)

9  Google modified the Match Plaintiffs' compliance deadline and/or (2) waived enforcement.

10     **A.      Google Indisputably Modified the Compliance Deadline to March 31, 2022**

11     Google modified the deadline when it told the Match Plaintiffs – in writing – that they did

12 not need to comply until March 31, 2022. Google cannot avoid dismissal by attempting to

13 overcomplicate this issue with meritless arguments that its own cases refute.

14              *i.      The Modified Terms Are Not Disputed*

15     Google argues the Match Plaintiffs "fail[] even to provide the specific terms of [the] alleged

16 modification." (Opp. at 12.) But the terms were front and center in the Motion. (Mot. at 7-8, 14.)

17 Google modified the deadline from September 30, 2021 to March 31, 2022 when it wrote:

18 We've reviewed the information in your application form and determined your app is eligible for an extension until **March 31, 2022** to come into compliance with Google Play's Payments policy. No further action is required at this time.

19 (Dkt. 488-3 at -124; Dkt. 488-4 at -078.) Not only did Google put these terms in writing, it admits to

20 granting the extension. (Dkt. 488-5 at 29 ("Google granted Match Group's request for additional time

21 to integrate Google Play Billing into its apps."); Dkt. 488-38 at 232:2-5 (Q: "And for those who

22 applied and received an extension, the compliance deadline was March 31, 2022; correct?" A:

23 "Correct. Outside of India and Korea [which had even later deadlines].").)

24

25

26  ─────────────────

27 cites to dismissed claims in other litigation. (Opp. at 6-7.) These incorrect arguments are not at issue in this Motion. Nor are the many lawsuits and regulatory actions against Google around the world.

28 [3] Google has "conceded that it is not seeking any damages" before October 1, 2021. (Opp. at 11.) Therefore, the only period at issue is October 1, 2021 through March 31, 2022. The parties have preserved all rights with respect to the period after March 31, 2022. (*See* Mot. at 2 n.5.)

*ii.    Google Unambiguously Consented to the Modification in Writing*

Google argues it did not consent to the extension. The cases Google cites are fatal to its argument. Consent is "determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Monster*, 7 Cal. 5th at 789; *Guzman v. Visalia Cmty. Bank*, 71 Cal. App. 4th 1370, 1376–77 (1999) (an objective "reasonable person" test applies). Google's objective conduct – granting the extension in writing, continuing to publish the Match Plaintiffs' app updates, and never suggesting the March 31, 2022 deadline did not apply – shows it consented. (Dkt. 486-36  ¶¶ 55–57.) Courts have found consent at summary judgment on far weaker facts. *See DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (mutual consent existed even absent a signed document); *Acadia, Cal., Ltd., v. Herbert*, 54 Cal. 2d 328, 336 (1960) (cashing of check was consent, even where defendant denied an intention to modify). Google's other cited cases are inapposite. *See Panagotacos v. Bank of Am.*, 60 Cal. App. 4th 851, 855–56 (1998) (plaintiffs' proposed terms were never accepted); *Monster*, 7 Cal. 5th at 795 (question of fact as to whether counsel who signed settlement agreement "as to form and content" was bound by confidentiality provision).

Google argues it granted the extension only because it thought the Match Plaintiffs would comply. (Opp. at 13.) That is beside the point. As Google's cited cases confirm: "The test of the true meaning of an acceptance or rejection is not what the party making it thought it meant or intended it to mean. Rather, the test is what a reasonable person in the position of the parties would have thought it meant." *Guzman*, 71 Cal. App. 4th at 1376–77. Here, no reasonable person could conclude there was an agreement to comply. Google did not ask the Match Plaintiffs if they would comply or tell the Match Plaintiffs they could have an extension *only if* they complied by March 31, 2022. (*See* § II.A *infra*.) When it granted the extension, Google told the Match Plaintiffs "No further action is required at this time." (Dkt. 488-3 at 2.) Nor did the Match Plaintiffs promise to comply – they told Google the *opposite* immediately before applying and in the extension request form itself, which, as Google admits, was consistent with what they had told Google for years. Google's own witnesses did not believe the Match Plaintiffs promised compliance. (*See* §§ II.A-C *infra*.) Google cannot rest its breach claim on a condition the parties never discussed – let alone agreed to. *Korens v. R. W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1061 (1989) (granting summary judgment where "there was

- 4 -

1    never any discussion of" the alleged condition); *Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677,

2    680–81 (1951) ("A condition cannot be read into a contract" that the parties did not discuss).

3         But even if Google could prove the Match Plaintiffs falsely promised to comply, the breach

4    of contract claim still fails. When a party "knows what he is signing but his consent is induced by

5    fraud, ***mutual assent is present and a contract is formed***, which, by reason of the fraud, is voidable."

6    *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010)

7    (citations omitted and emphasis added). The party has two options: (1) "rescind the contract and

8    restore the consideration," or (2) "affirm the contract and recover damages for fraud." *Id.* at 923.

9    Thus, "[i]n order to escape from its obligations" Google had to *promptly* "rescind," including by

10   returning all contract benefits it received from the Match Plaintiffs. *Id.* at 921; *see also GATX/Airlog*

11   *Co. v. Evergreen Int'l Airlines, Inc.*, 2000 WL 36741016, at \*6 (N.D. Cal. Aug. 11, 2000) ("The

12   general rule is that a defrauded party must exercise his election to rescind with reasonable promptness

13   after discovering the fraud."). Here, Google did not rescind. Having made that choice, Google cannot

14   try to enforce some parts of the DDA[4] (the Payments Policy) and not others (the March 31, 2022

15   compliance deadline it granted). *GATX/Airlog*, 2000 WL 36741016, at \*6 (allowing plaintiff to

16   vitiate part of contract would "be to impermissibly allow it to partially rescind the agreement"); *Yeng*

17   *Sue Chow v. Levi Strauss & Co.*, 49 Cal. App. 3d 315, 326 (1975) (plaintiff cannot "*retain the rights*

18   *under it* which he deems desirable *and repudiate the remainder*") (emphasis added).

19                    *iii.    The Modification Precludes Damages*

20         Google claims it did not consent "to forego damages for the six-month extension period."

21   (Opp. at 13.) Google tries to impose a new contract condition: developers would be liable for

22   damages for the pre-March 31, 2022 period if they did not comply by that date. But no such condition

23   was discussed – let alone agreed to. Neither the extension request form, the DDA, nor the Payments

24   Policy include any such condition. *Korens*, 212 Cal. App. 3d at 1061 (no breach where "there was

25   never any discussion of" the condition); *Stockton Dry Goods*, 36 Cal. 2d at 680–81. Nor has Google

26   shown that it has ever sought fees from use of an alternative billing system before its counterclaims

27   in this MDL litigation. In fact, as Google admits, it allowed the Match Plaintiffs to offer their own

28

---

[4] All abbreviated terms herein have the same meaning as described in the Match Plaintiffs' Motion.

billing systems for more than a decade and never once sought any fees. (Mot. at 13; Opp. at 5.)

In any event, Google cannot prove causation. Google admits the Match Plaintiffs could have complied without using GPB, or stopped using Google Play, and in either case Google would have received *no fees*. (Opp. at 8 ("Developers could comply . . . in a number of ways—including . . . by moving to a consumption-only model."). Because Google was not entitled to fees even if the Match Plaintiffs had complied, Google cannot show the alleged breach "is a necessary antecedent" of its alleged lost fees. *Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 (2015) (no causation where plaintiff was not entitled to damages in absence of alleged breach).

> ### iv.    Google's Consideration Arguments Fail

Google argues the modification lacked consideration. If that were true, Google's unilateral modifications of the DDA, including its change to the Payments Policy, would also lack consideration, and its breach of contract claim would fail from the start. As Google's conduct admits, no new consideration is required where, as here, "[t]he modification is in accordance with the terms of the contract." *See Major v. Western Home Ins. Co.*, 169 Cal. App. 4th 1197, 1211 (2009).

Regardless, Google received new consideration. The Match Plaintiffs *continued* publishing their apps on Google Play when they had no obligation to do so. (Dkt. 486-4 ("DDA") § 10.2.) That benefited Google, thereby providing new consideration. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002) ("AT&T had no legal obligation to continue providing Boomer with telephone services. Therefore, Boomer received something of legal value—continued service—in exchange for his promise to arbitrate."); *Newberger v. Rifkind*, 28 Cal. App. 3d 1070, 1074 (1972) ("Continuing an employment to which one is not bound by contract is as clearly consideration as is entering the employment in the first place."); (Dkt. 488-28 at -917 ("Google benefits: Diversifies our business, stronger relationships w/ users"); Dkt. 488-16 at -357 (listing Tinder as an app that "bring[s] an inordinate number of users . . . to the store"); Dkt. 480-00 at 23 ("Those developers provide valuable services . . . ."); Dkt. 489-3 at 300–01 (Tables 27(a), (b) (███████████████████)).)[5]

---

[5] Google's cases merely state that no consideration exists when, unlike here, a party agrees to something it is already required to do. *Motown Rec. Corp. v. Brockert*, 160 Cal. App. 3d 123, 133 (1984) ("Teena Marie was required by the original contracts to perform exclusively… there was no consideration for the purported modification."); *Bailey v. Breetwor*, 206 Cal. App. 2d 287, 291–92
(Continued...)

**B.      Google Waived Compliance Through March 31, 2022**

Google also waived compliance. Google points to a non-waiver provision in § 16.2 of the DDA. But Google admits that "*written* intent to waive enforcement can overcome such a non-waiver provision." (Opp. at 14.) Google provided that written intent when it wrote to the Match Plaintiffs that "your app is eligible for an extension until March 31, 2022 to come into compliance with Google Play's Payments policy. No further action is required at this time." (Dkt. 488-3 at -124.) Google's cited cases support finding waiver for this reason. *Auntie Anne's, Inc. v. Wang*, 2014 WL 11728722, at *14 (C.D. Cal. July 16, 2014) (written intent to waive provision prevails over anti-waiver clause); *Gould v. Corinthian Colleges, Inc.*, 192 Cal. App. 4th 1176, 1180 (2011) (finding waiver despite anti-waiver provision); *Rincon Center Assoc. v. Chrysler MacNally Corp.*, 1998 WL 410886, at *4 (N.D. Cal. July 16, 1998) (finding waiver; "Simply put, a reading of the plain language of that document supports the conclusion that the parties intended to effectuate a waiver.").

Google also cites a case recognizing that "even a waiver clause may be waived by conduct." *Auntie Anne's*, 2014 WL 11728722, at *14. In addition to providing written waiver, Google's conduct shows it waived. Even though Google's witnesses admitted they did not believe the Match Plaintiffs had promised to comply, (*see* § II.C *infra*) there is no evidence Google took any enforcement action before April 2022, or even asked the Match Plaintiffs of their intentions. Google continued to approve the Match Plaintiffs' app updates until April 2022. (Dkt. 486-36 ¶¶ 55–57.) This is consistent with Google's historical practice – it made a "conscious decision" to not enforce the prior Payments Policy against the Match Plaintiffs for many years even though Google claims the Match Plaintiffs were not in compliance. (*See* Dkt. 486-43 at 280:20-24; *see also* Mot. at 13; Opp. at 5.)

Google claims it "could not have waived rights because it" was unaware of "Match's intention to not ultimately comply with the DDA[.]" (Opp. at 15.) Again, Google did not condition the extension on compliance. Moreover, the Match Plaintiffs made it clear they would not comply immediately before submitting the extension request and in the form itself, as they had for many years prior. (*See* § II.A *infra*; Dkt. 486-22 at -746 (days before extension request, stating: "In light

---

(1962) ("[A] promise of extra compensation for completion of a contract to a promisee who has at the time a preexisting legal duty to perform the contract is without consideration."). These cases do not apply; the Match Plaintiffs had no obligation to continue publishing apps on Google Play.

1  of this extension, Match will continue to use its bespoke payment system to process payments").)

2  Google's witnesses admitted they did not have a contrary understanding. (*See* § II.C *infra*.)

3  Google modified the Match Plaintiffs' compliance deadline to March 31, 2022; waived

4  enforcement before that date; or both. Google's breach of contract claim fails for any of these reasons.

5  **II.     GOOGLE'S FALSE PROMISE CLAIM FAILS**

6  Google confuses the applicable law and relevant facts regarding its false promise claim,

7  which fails for at least four independent reasons.

8  **A.     Google Cannot Prove a Clear and Unequivocal False Promise**

9  Google chose to plead a "false promise" claim (aka "promissory fraud"). (Dkt. 388-1 ¶¶ 68–

10 76 (Count III, False Promise).) An alleged false promise must be "clear and unequivocal." *Phillips*,

11 2011 WL 13101726, at *9. Google's argument that this standard applies only to promissory estoppel

12 claims is wrong. *See id.* ("*[P]romises in promissory fraud* or promissory estoppel claims *must be*

13 *clear and unequivocal*" (emphasis added)); *Carlson v. Clapper*, 2019 WL 1061743, at *5 (N.D. Cal.

14 Mar. 6, 2019) ("*A claim for promissory fraud requires (1) 'a promise clear and unambiguous* in

15 its terms'[.]") (emphasis added); *Baldwin Park Unified Sch. Dist. v. Genesis Mgmt. & Ins. Servs.*

16 *Corp.*, 2017 WL 5635018, at *5 (C.D. Cal. July 10, 2017) (same); *Sorge v. Gaasterland*, 2011 WL

17 96467, at *6 (Cal. Ct. App. Jan. 12, 2011) ("*To Support a Promissory Fraud Claim, the Defendant's*

18 *Promise Must Be Clear and Unequivocal*.") (emphasis added); *Smallwood v. Fremont Surgery Ctr.*

19 *Med. Clinic, Inc.*, 2010 WL 2059465, at *10 (Cal. Ct. App. May 25, 2010) (same).[6]

20 Google misleadingly points to *different* types of fraud claims that it did not plead. Google

21 quotes the definitions of intentional misrepresentation, negligent misrepresentation, and concealment

22 in Cal. Civil Code § 1710(1), (2), and (3), even though subsection (4) describes the false promise

23 claim that Google pled. The other types of fraud are not at issue and have different standards. *See*

24 *Las Vegas Land & Dev. Co., Inc. v. Bank of Am., N.A.*, 2018 WL 6991161, at *3 (C.D. Cal. Oct. 15,

25 2018) ("[Section] 1710 enumerates four types of actionable deceit or misrepresentation[.]"). Not a

26 single case cited by Google applies its standard to a false promise claim. *See Warner Constr. Corp.*

27 _____

28 [6] *See also Peterson v. Wells Fargo Bank, N.A.*, 2015 WL 3397385, at *7 (N.D. Cal. May 26, 2015) (granting summary judgment; "no evidence of a specific promise"); *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 216 (1993) ("Promises too vague to be enforced will not support a fraud claim.").

*v. City of Los Angeles*, 2 Cal. 3d 285, 293–94 (1970) (no discussion of false promise); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 493 (N.D. Cal. 2021) (analyzing "fraud and deceit based on concealment"); *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1181, 1198 (addressing "Concealment/Suppression of Fact Fraud Claim" as distinct from its analysis of a "false promise").

Google cannot prove the Match Plaintiffs made a clear and unequivocal false promise. *First*, Google's claim is predicated on a portion of the extension request form that Google – not the Match Plaintiffs – drafted, in which the Match Plaintiffs made no clear and unequivocal promise to comply. The form did not ask: "Do you intend to comply?" The form asked, "Do you need more time to comply with Google Play's Payments policy?" and allowed only "Yes" or "No" from a drop-down menu in response. (Dkt. 507-25 ¶ 9.) By clicking "Yes," the Match Plaintiffs did not make a false promise – let alone clearly and unequivocally; they stated a fact that they would need more time if forced to comply.[7] *See* Black's Law Dict. (11th ed. 2019) (a "promise" is "a person's assurance that the person will or will not do something"); *Interstate Restoration, LLC v. Seaman*, 2014 WL 562643, at *3, *9 (C.D. Cal. Feb. 11, 2014) (dismissing false promise claim because it relied on a statement of fact, that the writer "had transferred its interests," rather than a promise). The Match Plaintiffs then explained in response to Google's *next question in the same form* why they could *not* comply:

> Our bespoke payment system is critical to our user experience. Due to significant feature gaps (payments / subs / discounts), Google's system is not a suitable substitute and exclusive use of Google's systems will meaningfully harm our users (inflate prices) & undermine our business.

(Dkt. 488-3.) No reasonable juror could find that these statements constitute clear and unequivocal promises by the Match Plaintiffs that they *would* comply. Google's witnesses had no such belief. (*See* § II.C *infra*.) Nor did Google ever tell the Match Plaintiffs they could have an extension *only if* they complied by March 31, 2022. (*See* Dkt. 488-3 at 2 (Google telling the Match Plaintiffs "No further action is required at this time.").)

---

[7] Google does not (and cannot) dispute that the Match Plaintiffs needed more time if forced to comply. (Dkt. 506-29 at 3 (Google acknowledging it may "require[] technical work to integrate our billing system"); Dkt. 488-12 at -240 (Google noting the Match Plaintiffs' concerns included "[e]ffort to integrate" and "integrating Play payments [GPB] will take time").

1  Google argues the Match Plaintiffs "implied" they would comply. (Opp. at 19.) As discussed,

2  implication is not enough. Google cites *Warner* and *Cottle* but, as noted above, neither involved a

3  false promise claim. In Google's other case – *Huy Fong Foods, Inc. v. Underwood Ranches, LP* –

4  the defendant (unlike the Match Plaintiffs) made an "express[]" promise "numerous times." 66 Cal.

5  App. 5th 1112, 1124 (2021) ("[H]ere there was far more than an implied promise[.]").

6  *Second*, Google wrongly focuses on only part of the extension request form while ignoring

7  all evidence that contradicts its arguments. *See Fed. Rsrv. Bank of San Francisco v. HK Sys.*, 1997

8  WL 227955, at *5 (N.D. Cal. Apr. 24, 1997) (statement not fraudulent in "the context of the report

9  as a whole"); *In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006) (summary judgment

10  standard "does not require a district court to view *only* evidence that is favorable to the non-moving

11  party."). Most critically, *mere days before* submitting the request, the Match Plaintiffs told Google

12  they would ***not*** comply. (Dkt. 486-22 at -746 ("In light of this extension, Match ***will continue to use***

13  ***its bespoke payment system to process payments***."). Then, in the extension request form, the Match

14  Plaintiffs reiterated the reasons why they could ***not*** comply. (Dkt. 488-3 at -123.) This followed years

15  of the Match Plaintiffs telling Google they would not stop using their billing systems. (*See* Mot. at

16  5–6.) Google's manager for the Match Plaintiff relationship since 2016 admitted as much. (Dkt. 488-

17  31 at 251:12–16 (admitting the extension request was "***consistent with what Match had been telling***

18  ***[Google] for years***").) Indeed, the Match Plaintiffs had told Google this just months earlier when they

19  rejected Google's attempts to incentivize use of GPB. (Mot. at 8.)

20  Google's own witnesses did not believe the Match Plaintiffs made a clear and unequivocal

21  promise to comply. Google's President of Global Partnerships admitted that as of January 2022 –

22  long after the Match Plaintiffs submitted the extension request form – the Match Plaintiffs "***had not***

23  ***signaled commitment one way or the other*** about whether they would comply[.]" (Dkt. 488-34 at

24  513:5–514:15.) Likewise, Google's Manager for Developer Relations testified she "had ***no***

25  ***indication***" as of February 2022 that the "Match Plaintiffs would integrate with Google Play Billing

26  as of the March 31st, 2022, deadline." (Dkt. 488-32 at 201:12–18.) And Google's internal documents

27  say the same thing. (Dkt. 488-23 at -671 ("We asked them about their plans for compliance in March

28  and received a high level response that ***didn't signal commitment one way or another***.").)

Ignoring this evidence entirely, Google resorts to falsely attributing statements to Shar

1  Dubey, then-CEO of Match Group, Inc. Google claims Ms. Dubey told Google on an unidentified

2  date that the Match Plaintiffs would comply. But Google cites only Ms. Karam's – not Ms. Dubey's

3  – testimony. (Opp. at 18, Ex. 11 at 269:24–270:3.) And Google *omits* Ms. Karam's admissions that

4  she lacks personal knowledge and could not confirm *anything* about that supposed communication:

5  Ms. Karam was not present, did not ███████████████████████████████████████████

6  ████████████████████ and did not ask the individuals supposedly involved what was said. (Dkt. 507-10

7  at 270:6–272:3.) Google cites nothing else. Ms. Karam's testimony cited by Google is speculative,

8  imprecise, entirely unfounded, hearsay, and cannot overcome summary judgment, especially not on

9  this record.[8] Indeed, Google's witnesses who purportedly spoke to Ms. Dubey contradict Ms.

10  Karam's testimony. (*Compare id.* at 269:1-21 (███████████████████████████████████████████

11  ██████████████) *with* Dkt. 488-34 (Harrison Dep.) at 513:5–514:15 (admitting the Match Plaintiffs

12  "had not signaled commitment one way or the other about whether they would comply") and Dkt.

13  488-27 at -139–140; *id.* at -137 (emails from Ms. Dubey to Mr. Samat indicating the Match Plaintiffs

14  would continue to offer their billing systems).) In short, there is no genuine triable issue as to whether

15  the Match Plaintiffs clearly and unequivocally promised to comply; they did not.

16        **B.**    **There is No Evidence the Match Plaintiffs Knowingly Made a False Promise with**

17                **Specific Intent to Induce Google's Reliance**

18        Google also cannot prove the Match Plaintiffs knew the alleged promise was false and had

19  the specific intent to induce Google's reliance. *Hills Transp. Co. v. Southwest Forest Indus., Inc.*,

20  266 Cal. App. 2d 702, 708 (1968) (false promise requires "the existence of two specific intentions of

21  the promisor: an intention to cause the promisee to act by reason of the promise, and an intention at

22  the time of the promise not to keep it."); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th

23  153, 159 (1991). Google virtually ignores these elements because there is no evidence the Match

24  Plaintiffs had fraudulent intent. The only representation the Match Plaintiffs made is that they would

25  need more time if forced to comply, which was true. (*See* § II.A and n.7 *supra*.) And the Match

26  Plaintiffs told Google for years they would not stop using their billing systems, including days before

27

28  [8] Ms. Karam's testimony and declaration are also inadmissible for these reasons. *See* Fed. R. Evid. §§ 602; 802; (*see also* § II.C *infra*.)

1  submitting the extension request form, and they reiterated their concerns in the extension request

2  form itself. (*See* § II.A *supra*.) The Match Plaintiffs were transparent and consistent all along.

3      Google argues the Match Plaintiffs' non-compliance is enough to prove fraudulent intent.

4  The California Supreme Court has rejected this argument, holding that "something more than

5  nonperformance is required to prove the defendant's intent not to perform his promise.'" *Tenzer*, 39

6  Cal. 3d at 30; *see also Barajas v. Carriage Servs., Inc.*, 2019 WL 6699737, at \*7 (N.D. Cal. Dec. 9,

7  2019) ("Under California law, a defendant's subsequent failure to perform as promised – by itself –

8  is not enough to infer that the defendant did not intend to perform when the promise was made.").

9  That "something more" is missing here, as is evidence the Match Plaintiffs promised compliance.

10     **C.      There Is No Evidence Google Actually or Justifiably Relied on a False Promise**

11     Google cannot prove, as it must, that it (1) actually and (2) justifiably relied on the alleged

12 false promise. *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986).

13     *First*, Google cites Ms. Karam's conclusory declaration (Opp. at 20), while ignoring that it is

14 inconsistent with the testimony of every deposed Google witness on this issue, as well as internal

15 Google documents. That evidence decisively shows that Google understood the Match Plaintiffs

16 "***had not signaled commitment one way or the other*** about whether they would comply[.]" (Dkt.

17 488-34 at 513:5–514:15; *see also* Dkt. 488-23 at -671 (admitting the Match Plaintiffs' "response []

18 ***didn't signal commitment one way or another***."); Dkt. 488-32 at 201:12–201:18.) Google cannot

19 create a genuine issue of fact by submitting a vague and self-serving declaration that contradicts its

20 *own* witnesses and documents. What's worse, Ms. Karam testified (as a corporate representative for

21 Google): "No" Google did *not* rely on the Match Plaintiffs' extension request form when "deciding

22 how to allocate internal resources" because "that wasn't an expectation off any – any submission of

23 these forms." (Dkt. 488-35 at 264:20–265:3.) Ms. Karam's contradictory declaration cannot

24 overcome summary judgment. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general

25 rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his

26 prior deposition testimony."); *S.E.C. v. Criterion Wealth Mgmt. Servs., Inc.*, 599 F. Supp. 3d 932,

27 956 (C.D. Cal. 2022) (finding a conclusory "declaration[] amount[s] to no more than a 'scintilla' of

28 evidence" and was insufficient to defeat summary judgment). Google's egregious attempts to

attribute statements to Ms. Dubey must be disregarded as well. (*See* § II.A *supra*.)

1  Google argues its "decision not to enforce its policies against Match starting October 1, 2021"

2  shows Google's reliance (Opp. at 21), because there is no other explanation (*id.* at 20). Again, Google

3  ignores the evidence. For many years before 2021, Google made a conscious decision – completely

4  unrelated to any alleged promise – not to enforce its Payments Policy against the Match Plaintiffs (or

5  any other developer). (Mot. at 4–5 (collective evidence).) Google also ████████████████████

6  ██████████████████████. (Mot. at 21.) Given the myriad reasons why Google has not

7  enforced its Payments Policy, it cannot make the required showing that the alleged

8  "misrepresentation . . . was an immediate cause of the plaintiff's conduct," without which Google

9  "would not, in all reasonable probability," have acted. *Hoffman*, 228 Cal. App. 4th at 1193.

10  Google also argues it would not have built certain GPB features if it did not believe the Match

11  Plaintiffs would comply. But the employee who worked on the GPB features, Diana Garcia Rios,

12  "had no indication" that the "Match Plaintiffs would integrate with Google Play Billing as of the

13  March 31st, 2022, deadline." (Dkt. 488-32 at 201:12–201:18.) And although Google tries to distract

14  by citing different testimony, its 30(b)(6) witness, Ms. Karam, also admitted that Google did not rely

15  on the Match Plaintiffs' extension request form when "deciding how to allocate internal resources[.]"

16  (Dkt. 488-35 at 264:22–265:3.) Google also concedes its efforts to improve GPB began long before

17  the Match Plaintiffs submitted the extension request form, and continued *after* the March 31, 2022

18  deadline despite the Match Plaintiffs' noncompliance. (*See, e.g.*, Opp. at 6, 8; Dkt. 488-5 at 41–43.)

19  *Second*, Google cannot prove its purported reliance was justifiable. To conclude otherwise,

20  one would have to ignore the Match Plaintiffs' long-standing, expressed concerns about abandoning

21  their own billing systems, their historical refusals to do so, their statements mere days before

22  submitting the extension request form, the form itself that said GPB is "not a suitable substitute" and

23  would "meaningfully harm our users (inflate prices) & undermine our business," and the testimony

24  of Google's own witnesses. (*See* § II.A *supra*.) No reasonable person (let alone a sophisticated

25  company) would have thought the Match Plaintiffs promised to comply, and Google's witnesses had

26  no such belief. *Hoffman*, 228 Cal. App. 4th at 1194 ("reasonable person" test and plaintiff's

27  "particular knowledge and experience should be considered in" assessing if reliance is justified);

28  *Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347, 364 (2007) (finding it unjustifiable a party

would believe a position contrary to the promisor's longstanding position); *Alliance Mortg. Co. v.*

- 13 -

1    *Rothwell*, 10 Cal. 4th 1226, 1239-40 (1995) ("[W]hether a party's reliance was justified may be

2    decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.").

3          Google's argument that the Match Plaintiffs sent "mixed messages" shows why its claim

4    fails. (Opp. at 20.) If Google had questions, Google could have asked. Having failed to do so, Google

5    cannot ignore the statements and actions indicating the Match Plaintiffs would not comply. *See, e.g.*,

6    *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1018–19 (N.D. Cal. 2018)

7    (granting summary judgment where, even if some "statements could show a clear and unambiguous

8    promise, [plaintiff] has failed to demonstrate that its reliance was reasonable because of other

9    statements by [defendant] that cast doubt on its level of commitment"); *see also Tumbling v. Merced

10   Irrigation Dist.*, 2010 WL 11450406, at *7 (E.D. Cal. Sept. 27, 2010) ("[I]f the factual context makes

11   the non-moving party's claim implausible, then that party must come forward with more persuasive

12   evidence than otherwise would be necessary to show that there is a genuine issue for trial.").

13         **D.      There Is No Evidence the Alleged False Promise Caused Any Loss to Google**

14         Google speculates it has incurred fraud damages in two categories (1) costs to develop

15   features for GPB and (2) lost service fees (Opp. at 22.) The former fails because Google admits it did

16   not allocate internal resources based on the Match Plaintiffs' extension request. (*See* § II.C *supra*.)

17   Google is not seeking damages for these costs; its expert has no opinion on them. (Dkt. 488-26 ¶ 37

18   n.44.) The latter fails because Google admits the Match Plaintiffs could have stopped using Google

19   Play or complied with the Payments Policy by adopting a monetization model where Google would

20   receive *no fees at all*. (Opp. at 4.) Accordingly, Google cannot establish that the alleged false promise

21   is a "necessary antecedent" of Google's lost fees. *Tribeca*, 239 Cal. App. 4th at 1103–05; *Marentes

22   v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 921–22 (N.D. Cal. 2016) (granting summary

23   judgment; "if the defrauded plaintiff would have suffered the alleged damage even in the absence of

24   the fraudulent inducement, causation is not established"); *Rutherford Holdings, LLC v. Plaza Del

25   Rey*, 223 Cal. App. 4th 221, 235 (2014) (affirming dismissal where plaintiff "would have been in the

26   very same position it is today"). For similar reasons, Google's alleged damages are 'too remote,

27   speculative or uncertain." *See Becker v. Wells Fargo Bank NA, Inc.*, 2014 WL 3891933, at *13 (E.D.

28   Cal. Aug. 7, 2014) (granting summary judgment).

          In sum, Google cannot establish any element of its false promise claim.

## III.    GOOGLE'S PRAYER FOR PUNITIVE DAMAGES FAILS

Google understates the elevated burden of proof for this drastic remedy as merely requiring a *prima facie* showing at summary judgment. (Opp. at 23.) But the *Spinks v. Equity Residential Briarwood Apartments* case cited by Google emphasizes that the "clear and convincing" burden of proof "must be taken into account" at summary judgment. 171 Cal. App. 4th 1004, 1052 (2009); *see also In re First All. Mortg. Co.*, 471 F.3d at 999 (recognizing the need to weigh evidence "under the heightened clear and convincing evidence standard" at summary judgment). The absence of evidence on the false promise claim shows the lack of a triable issue on punitive damages. "[I]n light of the high threshold for establishing punitive damages and the lack of any direct evidence of oppression, fraud, or malice," Google's prayer must be dismissed. *A-1 Transmission Auto. Tech., Inc. v. AMCO Ins. Co.*, 2012 WL 1534466, at *6 (C.D. Cal. Apr. 27, 2012) (granting summary judgment absent "clear and convincing evidence" of conduct "required for punitive damages").

## IV.    GOOGLE'S CLAIM FOR BREACH OF THE IMPLIED COVENANT FAILS

Google does not dispute that its implied covenant claim is duplicative of the breach of contract claim. Nor could it. Google recently secured dismissal of such a duplicative claim on the same basis. *See Snapkeys*, 442 F. Supp. 3d at 1211. In addition, Google's implied covenant claim fails for the same reasons as the false promise claim. (*See* § II *supra*.)

## V.    GOOGLE'S UNJUST ENRICHMENT / QUASI-CONTRACT CLAIM FAILS

Google cannot distinguish its quasi-contract claim from its contract claim. Both are "based on Google's delivery of distribution services to Match at no cost based on Match's [alleged] false representation that it intended to comply with the Payments Policy by March 31, 2022." (Opp. at 25; *id.* at 13.) Because "an unjust enrichment claim does not lie where the parties have an enforceable express contract," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010), and Google does not allege the DDA is unenforceable, this claim should be dismissed.

## CONCLUSION

Google refuses to acknowledge the undisputed facts, relies on sham declarations, and cites cases refuting its positions. Not only are Google's counterclaims meritless, they are a sideshow from the antitrust issues at the core of this case and threaten to derail the upcoming trial. The Court should grant summary judgment.

- 15 -

1

Dated:  June 8, 2023

HUESTON HENNIGAN LLP

2

John C. Hueston
Douglas J. Dixon

3

Joseph A. Reiter
Christine Woodin
Michael K. Acquah

4

Julia L. Haines
Tate E. Harshbarger

5

6

Respectfully submitted,

7

By:   _____

8

Douglas J. Dixon
*Attorneys for Plaintiffs Match Group, LLC;*

9

*Humor Rainbow, Inc.; PlentyofFish Media*
*ULC; and People Media, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28