Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, pro hac vice
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
Attorneys for Defendants Google LLC, et al.

*Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, pro hac vice
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF NICHOLAS PFEIFFER IN SUPPORT OF OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE SUMMARY JUDGMENT AND DAUBERT BRIEFING**<br><br>Judge:  Hon. James Donato |

1.       I, Nicholas Pfeiffer, am an attorney at Morgan, Lewis & Bockius LLP, counsel of record for Defendants Google LLC, Google Ireland Limited, Google Commerce Ltd., Google Payment Corp., Google Asia Pacific Pte. Ltd., and Alphabet Inc. ("Defendants" or "Google") in this multi-district litigation (MDL). I am a member in good standing of the State Bar of California and admitted to practice in the state and federal courts of California. I respectfully submit this declaration in support of Parties' Omnibus Motion to Seal Materials Submitted in Connection with the Summary Judgment and Daubert Briefing ("Sealing Motion"). I have personal knowledge of the facts or circumstances set forth herein. If called upon as a witness in this action, I could and would testify competently thereto.

2.       As discussed in detail in the Declaration of Christian Cramer ("Cramer Declaration"), Google asserts that public disclosure of its information will cause severe and irreparable harm to not only Google's business relationships and its competitive position in the marketplace, but also that of Google's business partners. As part of the process for preparing the Sealing Motion, the Parties in good faith prepared notices for approximately 565 non-parties whose confidential information had been included in Google's Motion for Summary Judgment, Match's Motion for Summary Judgment, Google's Motions to Exclude Testimony of Dr. Marc Rysman and Dr Hal Singer, and the related materials and briefings filed in support of and in opposition of those motions, identifying non-parties' confidential information and determining whether those non-parties would support this Sealing Motion as it relates to their information. Certain parties have submitted declarations in support of this Sealing Motion, which are included in Paragraph 5 below and attached to this declaration.

3.       As stated in the Sealing Motion, while Plaintiffs and Google ("Parties") took no position on each other's specific sealing requests, Epic Plaintiffs and Consumer Plaintiffs have indicated that they oppose 60 of Google's sealing requests. Attached herewith as **Exhibit 1** is a true and correct copy of a table identifying the 60 contested sealing requests along with Google's and Epic and Consumer Plaintiffs' position statement for each request.

4.      Pursuant to the non-party notification process described in Paragraph 2, more than 20 non-parties indicated that they are joining the Sealing Motion where it pertains to their information.  Certain non-parties, however, have represented that submitting a declaration on behalf of their own interests would itself reveal confidential information, e.g., their identity as a participant in a particular Google Program or as a counterparty to an agreement, and thus the Sealing Motion and the Declaration of Christian Cramer, submitted concurrently, identifies those instances, and maintains the anonymity of those non-parties.

5.      The following non-parties joining the Sealing Motion submitted declarations in support of the Sealing Motion; true and accurate copies of which are attached herewith as:

a.  **Exhibit 2:**  Declaration of Page Robinson (Activision Blizzard)

b.  **Exhibit 3:** Declaration of Xingjian Zhao (Alibaba International Digital Commerce Group)

c.  **Exhibit 4:** Declaration of Don Morrill (Amazon)

d.  **Exhibit 5:** Declaration of Yusuke Toyama (Aniplex)

e.  **Exhibit 6:** Declaration of Jeffrey Ezell (AT&T)

f.  **Exhibit 7:** Declaration of Cassie Stratford (Boyd Gaming)

g.  **Exhibit 8:** Declaration of Li Jin (Century Games)

h.  **Exhibit 9**: Declaration of Annie Lee (Cognosphere)

i.  **Exhibit 10:** Declaration of Cheg Tyng Yow (Mondraw Limited)

j.  **Exhibit 11:** Declaration of Bessy Contro (Electronic Arts)

k.  **Exhibit 12:** Declaration of Logan Pettigrew (AppLovin Corporation and Magic Tavern)

l.  **Exhibit 13:** Declaration of Christopher Kiel (Nintendo of America)

m.  **Exhibit 14:** Declaration of Ko Chiehyuan (Qingniao Interactive Entertainment)

n.  **Exhibit 15:** Declaration of Dan Nabel (Riot Games)

o.  **Exhibit 16:** Declaration of Bill Bradford, (Smule)

p.  **Exhibit 17:** Declaration of David Jacobs (Sony Corporation of America)

q.  **Exhibit 18:** Declaration of Vivian Zhang (StarMaker)

r.  **Exhibit 19:** Declaration of Steven Reeder (TikTok)

s.  **Exhibit 20:** Declaration of Christopher Schenck (Valve)

t.  **Exhibit 21:** Declaration of Judith A. Zahid (Verizon)

u.  **Exhibit 22:** Declaration of Tingfang Zhang (Xiaomi)

v.  **Exhibit 23:** Declaration of Raymond Wijaya (Coda US)

w.  **Exhibit 24:** Declaration of Joshua Walker (Warner Bros. Discovery)

x.  **Exhibit 25:** Declaration of Sandra Alzetta (Spotify)

6.  True and correct copies of the redacted documents reflecting the sealing positions of Google, Match plaintiffs, and non-parties are attached as exhibits to this Declaration, and highlighted under seal versions have also been provided to the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 13th day of July 2023 in San Francisco, California.

        */s/ Nicholas Pfeiffer*
        Nicholas Pfeiffer

# EXHIBIT 1

**Exhibit 1 to Pfeiffer Declaration ISO Omnibus Motion to Seal Materials**
**Submitted in Connection with Summary Judgment and *Daubert* Briefing**

**Exhibit 1 to Raphael Declaration ISO Motion to Exclude Merits Opinions of Dr. Hal Singer (MDL ECF No. 487-2)**

**(Singer Expert Report)**

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 39, Para. 66, between "recognizes that" and "Google's business"; between "documents" and "recognizing"; and from "established one" to end of sentence. | This text reflects non-public, current, competitively sensitive information about an aspect of Play Store strategy and anticipated future trends. If disclosed, this information could give Google Play Store competitors an unfair advantage and result in competitive harm to Google. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or target developers. There are compelling reasons (and good cause) to seal "discussions of business strategy" like in the excerpt. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |
| Page 66, Para. 128, between "describe as" and "Although P2P". | This text reflects internal confidential Google data regarding non-Play sources of app downloads. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | disadvantage Google. For example, Google's competitors could gain insight into the metrics that Google collects relating to app downloads and user behavior and the findings from its data collection at no cost, unfairly tailoring their own competitive business strategy at Google's expense. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978) | |
| Page 66, Para. 128, n. 299, between "installs coming from?..." and end of parenthetical. | As with paragraph 128 above, this text reflects internal confidential Google data on top non-Play sources of app downloads. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into the metrics that Google collects relating to app downloads and user behavior and the findings from its data collection at no cost, unfairly tailoring their own competitive business strategy at Google's expense. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v.* | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | *Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978) | |
| Page 67, Figure 10 | This figure reflects internal confidential Google data on third-party sources of app downloads on Android devices. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978). | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |
| Page 69, Table 4 | Similar to Figure 10 above, this table reflects the share of Android devices with third-party app stores preinstalled, which is derived from Google's internal, confidential data. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google.There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978). | |
| Page 74, Para. 147, the first nine words after "Magic Lab was"; the eleven words before "Similar to"; the entire second clause of the sentence beginning "Similar to"; the first eight words after "Record evidence indicates that"; and after the next eleven words, the next three words. | This text reflects confidential information shared with Google by specific non-party developers, including results of confidential testing and analyses relating to those developers' apps performance on Google Play. If that information were revealed to competitors, and potential business counterparties, they could use that information to disadvantage Google. For example, if other developers became aware of this information, they could use it as leverage in their negotiations with Google, at the detriment of both Google and the app developer partner. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978). | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |

4

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 80, Para. 162, n. 374, between "found that" and "are from"; between "while" and "are implicit"; between "Play Store," and "responded"; and "between at -584" and "thought that". | This text reflects internal Google data on user behavior and sources of user acquisitions on Google Play. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data analytics and knowledge of user behavior at no cost, improperly tailoring their own business strategy at Google's expense. There are compelling reasons (and good cause) to seal "internal competitive analyses." *United States v. Chen*, No. 17-cr-00603-BLF, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022). | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |
| Page 82, Para. 167, between "Project Hug provided" and "The terms"; between "from Google in" and "Riot"; between "support for" and "content"; between "in" and "and"; between "receiving a" and "in which"; and from "agreed to" to end of sentence. | This text reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google. For example, Google's competitors could use this information to match or beat the types of terms offered by Google in future negotiations with Google's partners. There are compelling reasons (and good cause) to seal "terms of confidential contracts" like those in issue. *Fed. Trade Comm'n v. Qualcomm Inc.*, No. | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | |
| Page 96, Para. 197, between "Google employee wrote," and end of sentence. | This text contains Google's internal, non-public confidential analyses and statements regarding the placement of the Play Store on the home screens of mobile devices. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making, which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. | Consumers oppose sealing this information. *See* Consumers' portion of joint filing. |
| Page 100, Para. 209, the six words after "OEMs on a"; the five words before "if the OEM"; and from "stated goal was" and end of sentence. | This information reflects specific non-public details and deal terms offered by Google to certain of its partners in its commercial programs, as well as confidential internal strategy relating to this same program. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google. There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | Cal. June 25, 2011). | |
| Page 103-104, Para. 217, between "as the" and "requirement"; and from "developers to" and end of sentence. | This text reflects specific, confidential details and terms about specific programs offered by Google. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 103, Para. 217, n. 519, between "showing impact of" and "requirement". | This text reflects specific, confidential details and terms about specific programs offered by Google. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partners and any ongoing negotiations or dealings with them. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 104, Para. 218, between "imposed" and "provisions"; between "that developers" and "when distributing"; and skipping the first word after "Our GVP deal with", the remainder of the sentence. | This text reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 106, Para. 224, n. 541, after | This text reflects specific, confidential deal terms | Consumers oppose sealing this information except |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| "Play reinvests", skipping the next five characters, the remainder of the sentence; the four words before "a developer would have"; and from "dollars toward" and end of sentence. | associated with one of Google's commercial programs with its developers. Were this information to be publicly revealed, it could cause Google competitive harm by revealing confidential terms and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. | as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 112, Para. 240, n. 588, between "such as Chrome" and "Id. (showing"; and skipping the number after "Chrome with a", the next five words. | This information contains non-public and confidential data regarding malware install rates on and off Google Play. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and consumers, and how they distinguish themselves from Google Play in the eyes of U.S. developers and consumers. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 115, Para. 249, between "would-be rivals to" and end of sentence. | This text contains non-public and confidential information regarding Google's strategic business considerations relating to Google Play. If publicly revealed, this information could influence the competitive decision-making and business | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

8

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing Google's competitive strategy could influence the negotiation tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 116, Figure 15 | As stated above with respect to Paragraph 249, this text contains non-public and confidential information regarding Google's strategic business considerations relating to Google Play. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing Google's competitive strategy could influence the negotiation tactics employed by app developers and other current and prospective counterparties with which Google does or may | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | transact business.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 119, Para. 258, between "assessed that" and end of sentence. | This text contains non-public and confidential information regarding Google's own internal assessment of Project Hug. Google's internal analyses and assessments have never been disclosed publicly, and the Google Play product team treats this information as strictly confidential. Public disclosure of Google's confidential evaluations, assessments, or analyses could influence the negotiation tactics employed by current and prospective counterparties with which Google does or may transact business. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 119, Para. 259, n. 616, after "developers who represented", skipping the first word, the next six words. | This text reveals non-public and confidential aspects of eligibility criteria for Google Play's Project Hug program. Public disclosure of the basis for which certain developers are strategic to Google Play could cause Google competitive harm by revealing business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 120, Para. 262, the eight words after "would involve" and the last word of the sentence. | This text reveals Google's confidential, non-public strategic thinking and business considerations with respect to third party payment processors. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers and how they distinguish themselves from Google Play in the eyes of developers. In addition, revealing Google's strategic thought process could influence the negotiation tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 130, Para. 285, from "payment options" to end of sentence. | This text contains non-public and confidential data regarding Google's internal analyses of alternative payment options offered by developers. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals Google's strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. | |
| Page 130, Para. 285, n. 667, entire parenthetical after "at 5619". | This text contains non-public and confidential data regarding Google's internal analyses of alternative payment options offered by developers. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. Further, disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals Google's strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v.* | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | *Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). | |
| Page 164, Figure 19 | This chart contains Google's non-public and confidential analyses of developers' expected reactions to potential business decisions that Google could make.  This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing Google's expectations regarding developer reactions to potential business decisions could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business. There are compelling reasons to seal "business information that might harm a litigants competitive standing." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 180, Para. 366, n. 865, entire parenthetical before "Only recently"; and between "approximately" and "percent". | This text contains confidential, non-public information regarding Google's agreements with a non-party developer. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google. Further, the disclosure of this non-party developer's highly confidential information would significantly harm its business. For example, its competitors could exploit this information—that they otherwise would not have access to—to inform their own business strategies. There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 183, Para. 369, n. 877, between "ADAP" and "and (2)". | This text that Google seeks to seal reflects confidential, non-public information regarding Google's agreements and deal terms with respect to one of its commercial programs. Disclosure of this | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Contested Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google. | |
| Page 187, Para. 378, between "One was to" and "Another was"; between "Another was to" and "A third option"; between "A third option was to" and "Under this third"; and between "willing to" and end of sentence. | This text contains confidential information regarding possible business terms that Google discussed or considered with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

**Exhibit 6 to Raphael Declaration ISO Motion to Exclude Merits Opinions of Dr Hal Singer (MDL ECF No. 487-7)**

**(Singer Rebuttal Expert Report)**

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 13, Para. 20, n. 54, between "the price of" and "may have increased"; between "released an" and "See"; between "See" and end of footnote. | The identity of this app and developer is derived from Dr. Leonard's analysis of top paid SKUs before and after Google's service fee reductions, which is derived from Google's highly confidential transactional data. Thus, to the extent Dr. Singer is rebutting Dr. Leonard's findings with respect to this app, it reveals confidential information about a non-party developer based on its confidential revenue information. This developer has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play.  Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 53, Para. 143, between "the threat of" and "Although I did". | This information contains non-public and confidential data regarding negotiations and agreements with app developers on Google Play. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of app developers' highly confidential information would significantly harm app developers' business. For example, app developers' competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. | |
| Page 53, Para. 144, the 8 words after "third-party app distribution"; the 5 words preceding "Nor does". | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 53, Para. 144, n. 305, the 4 words after "assessed this"; the 3 words after "describing Alley-Oop"; the 4 words before "and hurting". | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 53-54, Para. 145, the 3 words after "absent Alley-Oop"; between "characterize the pre-Alley-Oop" and "as "cumbersome""; the 5 words after "predates the experiments in"; the 5 words after  was the widespread"; between "evidently intended Alley-Oop" and end of sentence. | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 54, Para. 145, n. 308, the 5 words before "[T]he question"; the 2 words after "structure Alley Oop"; between "pause their" and "we aren't" | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 54, Para. 146, the 16 words after "understand that" except for the 6th word. | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 54, Para. 146, n. 310, between "Google's Alley-Oop" and "harmed user"; between "it introduced" and "See GOOG-PLAY-007380405"; the 17 words after "to include that" except for the 11th word. | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 54, Para. 147, 8 words after "mechanisms, Alley-Oop"; between "offered to these" and "Google witness". | The contested text reveals non-public and confidential information regarding negotiations and agreements with a particular non-party partner. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The disclosure of this partner's highly confidential information would significantly harm both Google and this partner's business. For example, this partner's competitors could leverage this information to reap an unearned competitive advantage.  There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Page 54-55, Para. 147, n. 314, the 3 words before "Gentzkow Report ¶591"; the 8 words before "GOOG-PLAY-009261089" | This information reflects and is calculated from internal, non-public Google technical data and capabilities, including as related to a specific non-party developer. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and technological capabilities. There are compelling reasons (and good cause) to seal "internal competitive analyses." *United States v. Chen*, No. 17-cr-00603-BLF, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 56, Para. 150, 4 words after "version of Google's Alley-Oop". | This text reflects confidential, non-public negotiations with a non-party developer, the disclosure of which may cause both Google and that non-party developer competitive harm by revealing internal business strategy and technological capabilities. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 57, Para. 152, between "Samsung Galaxy Store is" and "Dr. Gentzkow himself". | This text contains non-public and confidential data comparing US consumer expenditure on Google Play with U.S. consumer expenditures on the Galaxy Store. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. | |
| Page 63, Figure 10, entire graph | This text contains non-public and confidential data regarding application installation behavior on Android. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 63, Para. 164, n. 358, between "Describing" and "as offering"; between "[u]p to" and "that preload"; between "RSA as" and "See also'" between "that Google" and "in exchange for". | This text contains confidential, non-public information regarding Google's agreements with non-party OEMs. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Terms of financial contracts, *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 66, Para. 167, between "to the same document" and "The Executive Summary"; between "explains" and "to protect Google"; between "[o]ffer[ing]" and "to secure Play". | This text contains confidential, non-public information regarding Google's agreements with non-party OEMs. Disclosure of this non-public information is likely to result in competitive harm to Google, as it reveals strategic decision-making which, for example, could give a competitor or potential business partner unfair leverage in competing against or negotiating with Google. Terms of financial contracts, *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019); discussions of business strategy *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 66, Para. 167, n. 366, between "specifying" and "Play revenue"; between "share…for" and "for"; between "for" and "Id. at -198"; between "spending the" and "in 2023"; between "in 2023" and "specifying"; between "specifying" and "million in revenue"; between "sharing on" and "comprised of"; between "comprised of" and end of sentence. | This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

24

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 66, Para. 168, 2 words before "protects"; between "to make" and "Google also"; between "order of" and end of sentence. | This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |
| Page 84, Para. 211, n. 467, between "iOS is about" and "for owners"; between "is about" and "for lower-priced". | This information contains non-public and confidential data regarding consumer behavior regarding app stores on Google Play. This information has never been disclosed publicly and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. developers that distribute apps on Google Play could influence the negotiating strategies and tactics employed by app developers | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | and other current and prospective counterparties with which Google does or may transact business. | |
| Page 96, Para. 253, between "LTV analyses" and "Dr. Skinner". | This information contains non-public information regarding Google's confidential non-public internal strategic considerations related to creating value for and attracting developers to the Google Play Store. This information has never been disclosed publicly. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google. This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. monetize or target developers. There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, | Consumers oppose sealing this information except as it relates to the non-party identity. *See* Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |

**Plaintiffs' Opposition to Google's Motion for Partial Summary Judgment (MDL ECF 509)**

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Page 7, Line 28, Page 8, Line 1-8, between "up to" and "in exchange for a written". | This text reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. There are compelling reasons (and good cause) to seal "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | Epic and Consumers oppose sealing this information. *See* Epic and Consumers' portion of joint filing. |
| Page 22, Line 14-19, between "including Match, Spotify" and "Epic Games"; between "Epic Games" and "and even"; between "and even" and "Ex. 44 GOOG-PLAY-000838161" | The contested the excerpt reflects specific non-public details and deal terms offered by Google to certain of its partners in its commercial programs, as well as confidential internal strategy relating to this same program. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive | Epic and Consumers oppose sealing this information. *See* Epic and Consumers' portion of joint filing. |

27

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | harm to Google. There are compelling reasons (and good cause) to seal "discussions of business strategy" like that in issue. *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |

**Exhibits to Plaintiffs' Opposition to Google's Motion for Partial Summary Judgment (MDL ECF 509)**

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Exhibit 1, Page 250, Line 7-8 (between "permission to send" and "in"; between "would grow to" and "in 2023;") | This exhibit reveals specific details about Google's commercial deals, negotiations, and strategy with respect to specific OEMs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies. There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," and "contract negotiations[.]" *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | Epic and Consumers oppose sealing this information. *See* Epic and Consumers' portion of joint filing. |
| Exhibit 2, Page -892.R (contents of box | This text reflects internal Google data on Android | Epic and Consumers oppose sealing this |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| between " CN OEMs share of GMS activations growing; but changes are lurking…" and "Google" in footer); Page -893.R (entire box above "Google" in footer); Page -894.R (entire box above "Google" in footer); Page -895.R (contents of box between "Android share in select markets - OEM Portfolio balance a concern" and "Google" in footer); Page -899.R (entire box above "Google" in footer) | market share, as well as trends in GMS activations among various OEMs. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into the metrics that Google collects when internally assessing its business prospects. This would give competitors insight into Google's business strategies. Moreover, Google's competitors would benefit from the findings of this data at no cost, unfairly tailoring their own competitive business strategy at Google's expense. There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "business information that might harm a litigant's competitive standing[.]" *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). | information. *See* Epic and Consumers' portion of joint filing. |
| Exhibit 4, Page -840 (between "tl;dr:" and end of the sentence; entire paragraph between "that happened in early April last year." and "At this time, we didn't ask for contractual commitments"; middle of page between | The contested portions of this exhibit that Google requests to seal reflect Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, and strategy with respect to counterparties. Public disclosure | Epic and Consumers oppose sealing this information, with the exception of the specific deal terms listed on -5840 and -5842. *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| "At this time, we didn't ask for contractual commitments" and "the focus was getting Riot"; between "with Riot by asking them to commit to the" and end of paragraph); Page -842 (top of page between "that we were able to get aligned on are:" and "Andreas has been doing a great job"; middle of the page sentence between "they are committing for their new games." and "We have additional regional details"); Page -842 (bottom of page between "As part of this initial proposal, it will include" and end of sentence; between "Riot asked that we roll-up the" and "with our proposal so that the Riot team") | could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies.  There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "contract negotiations[.]" *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | |
| Exhibit 5, Page 269, Line 3-4 (between "Number 3 is" and "sounds fuzzy"), Line 5 (between "approximate" and "the right market price for"), and Line 22 (between "both agree that the" and "is"); Page 270, Line 5 (between "terms of the" and "of"), Line 8 (between beginning of line and "is that correct?"), Line 11 (between "communicating to" and "some of"), Line 16 (from "around the" to end of sentence) and Line 18 (between "vis-a- | The contested portions of this exhibit that Google requests to seal reflect Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, and strategy with respect to counterparties. Public disclosure could cause harm to Google's competitive standing by giving competitors and others, including prospective business partners, insights into Google's business strategies.  There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns,* | Epic and Consumers oppose sealing this information.  *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| vis the" and "aspect"); Page 271, Line 16 (between "update on the" and end of sentence.), and Line 21 (between "spoken to" and "and had"); Page 272, Line 4 (between "meaning" and "not liking Google's"); Lines 5-6 (entire lines), Line 13 (from "of" to end of sentence), Line 17 (between "into" and "we all"), Lines 18-19 (between "make a" and end of sentence), and Line 21 (between "And" and "rejected"); Page 273, Line 3 (between "is a reference to" and end of line) and Line 24 (between "basically" and "was saying"), Lines 4-6 (from "there be a" to end of Line 6), Line 10 (from "removing" to end of sentence"), Lines 17-20 (between "distribution platform" and "[As read]"), and Line 25 (between "backed out of" and "they may"); Page 283, Lines 19-21 (in entirety) and Lines 24-25 (from "negotiations, had" to end of sentence); Page 284, Lines 3-5 (in entirety), Lines 10-13 (in entirety), Line 14 (between "And the" and "is the"), and Line 19 (between "a" and "but") | *Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts" and "contract negotiations[.]" *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | |
| Exhibit 6, Page -690.R (between"GVP 1.0 Impact Assessment" and "GVP 1.0 x-Google Financial Assessment"); Page | The limited portions of this exhibit that Google requests to seal reflect Google's non-public, competitively sensitive information as to its | Epic and Consumers oppose sealing the information identified by Google.  Epic and Consumers do not oppose sealing the |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| -694.R (text in row under "GVP 1.0 Target Developers:" and to the left of "Drive disproportionate value to Google"; text in row to the left of "Beacons of the ecosystem"; text in row to the left of "Expressed discontent over lack of unified support from Google"; text in row to the left of "May forgo Play (& Android)" and above "Full Partner List"); Page -695.R (between "Non Goals: Play exclusivity, drive additional xPA integrations (eg:" and "xPA spend commitments"); Page -697.R (Under leftmost column "1) Prioritize Play", entire first bullet, second bullet between "of titles" and "on Play", entire third bullet and entire fourth bullet; under middle column "2) Boost X-PA Product Adoption", both highlighted dollar terms in second bullet and highlighted dollar term in third bullet; and in rightmost column "3) Improve Sentiment", between "to date" and "devs"); Page -698.R (between "GOAL 1: Prioritize Play Users" and "target) devs representing"; between "target) devs representing" and "of total Play spend signed GVP," column below "2019 Play A&G | commercial dealings, negotiations, and strategy with respect to counterparties, as well as confidential financial information that has never been revealed publicly. Public disclosure could cause harm to Google's competitive standing by giving competitors insight into Google's business strategies.  Further, this information, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.  Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.  There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "detailed financial information." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations"). | information identified by the following Non-Parties:  Nintendo, Aniplex and Century Games.  *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Spend"; entire contents of column below "100% of titles simshipped (184 titles)" and "Holding Out"; in box beneath "Holding Out"; from beginning of footer and "signing up to GVP obligations"); Page -699.R, BC Success Metrics column (between "ARR acceleration" and "2024)"; between "2024)" and (by 2024)"; between "Win-Rate acceleration" and end of row; between "N/A" and end of row; between "UAC yoy growth rate acceleration" and end of row; between "SVA/Best Practice adoption" and end of row; between "Mobile game watchtime, as % of total gaming watchtime" and "(by 2022)"; between (by 2022)" and "(2020)"; between "N/A" and end of row; between "upload uplift N/A" and end of row); Page -699.R, Other Metrics column (between "Spend Commits" and end of row; between "Share of Wallet" and end of row; between "ROI" and end of row); Page -699.R, (between "Cloud Deals" and end of paragraph; between "TOTAL" and "Incremental"; between "Incremental: and "M"; between "BC 5-year total:" and "HUG BC 5-year | | |

33

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| total:" and "and HUG new projected"; between "5-year total:" and "Win-rate acceleration:"; between "BC conversion was" and "w/o HUG and"; between "w/o HUG and" and "with HUG" and "="; between "=" and end of sentence;  between 12 out of 18 developers so" and "conversion."; between "Estimating conservatively at" and "through program duration."; between "through program duration." and end of line; between "9 titles include" and "migrating from"; from "migrating from" and "-Expected to 13x spending"); Page -700.R, (between beginning of first line and "- new customer"; between beginning of second line "and new title"; between beginning of third line and "-Expected to 40x spending) | | |
| Exhibit 8, Page 226 (top of page between "further states that" and end of paragraph); Page 226 paragraph 441 (between "about developers as follows:" and end of paragraph); Page 226 paragraph 442 (between ""target developers":" and end of paragraph); Page 226 paragraph 443 (between "The" and "Project Hug agreements,") | The limited portions of this exhibit that Google requests to seal reflect Google's non-public, competitively sensitive information as to its commercial dealings, negotiations, and strategy with respect to counterparties.  Public disclosure could cause harm to Google's competitive standing by giving competitors insight into Google's business strategies. There are compelling reasons (and good cause) to seal "discussions of business | Epic and Consumers oppose sealing this information.  *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | |
| Exhibit 15, Page -650 (between "Some notes from my conversation with Armin" and "He reiterated the fact"; between "For example, can we put" and "conversation in the next week or two"; between "chance/time window." and "I asked him if this was"; between "right deal/solution with us" and "-They are planning"; between "BEFORE the holidays" and "Shanna met with Armin") | The limited portions of this exhibit that Google requests to seal reflect Google's non-public, competitively sensitive information as to its commercial dealings, negotiations, and strategy with respect to counterparties.  Public disclosure could cause harm to Google's competitive standing by giving competitors insight into Google's business strategies.  Further, this information, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.  Moreover, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer specific deal terms designed to undercut those offered by Google.  There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts" and "contract negotiations[.]" *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019). | Epic and Consumers oppose sealing this information.  *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| Exhibit 23, Page 207, Paragraph 375 (between "because only" and "of downloads"; between "in 2021, just" and "of U.S. consumer"); Page 207, Note 719 (between "Google Play store" and "is equal to"; between "number of downloads" and "is estimated by"); Page 212, Note 745 (between "were approximately" and "installs worldwide"; between "which approximately" and "were new downloads"; between "suggesting more than" and "updates"); Page 217, Paragraph 392 (between "indicate that" and "of apps"; between "that only" and "of apps"; between "and that" and "of apps"; between "ignore that" and "of Android phones"; between "in June 2022" and "of Android devices"); Page 217, Note 761 (between "In June 2022" and "percent of"); Page 218, Paragraph 393 (between "Google earned" and "of U.S. consumer") | The limited portions of this exhibit that Google requests to seal reflect internal Google data on user behavior and app downloads. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into the metrics that Google collects relating to app downloads and user behavior and the findings from its data collection at no cost, unfairly tailoring their own competitive business strategy at Google's expense.  There are compelling reasons (and good cause) to seal "business information that might harm a litigant's competitive standing[.]"  *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). | Epic and Consumers oppose sealing this information.  *See* Epic and Consumers' portion of joint filing. |
| Exhibit 29 (all proposed excerpts) | The limited portions of this exhibit that Google requests to seal reflect Google's confidential, internal analyses and strategic considerations with respect to specific non-party developers, as well as confidential financial information that has never been revealed publicly. Public disclosure could | Epic and Consumers oppose sealing this information, with the exception of the information Non-Parties seek to seal and with the exception of the specific financial information on the following pages:  -6084, -6101, -6102, -6104, -6106, -6107, -6112, -6114, |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | cause harm to Google's competitive standing by giving competitors insight into Google's business strategies.  Further, disclosure would provide competitors insight into Google's confidential financial information. If competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.   There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "detailed financial information." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations"). | -6115, -6120, -6127, -6128, -6129, -6134, -6135, -6137, -6138, -6155.  *See* Epic and Consumers' portion of joint filing. |
| Exhibit 36 (all proposed excerpts) | With respect to the limited portions of the exhibit that Google seeks to seal, the text contains Google's internal, non-public confidential information, including: Google's analyses and statements regarding the placement of the Play Store on the home screens of mobile devices; details and deal terms offered by Google to certain | Epic and Consumers oppose sealing this information, with the exception of the information Non-Parties seek to seal and with the specific financial information on pages 88; 89; 100 ¶ 209; 101; 102; 103 n. 515; 105; 106 n. 541; 107; 108 ¶ 228 and n. 560; 112 n. 588; 131; 137; 140; 141; 148; 151; 152; 154; 155; |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | of its partners in its commercial programs, as well as confidential internal strategy relating to those same programs; non-public and confidential data regarding Google's internal analyses of alternative payment options offered by developers; specific, confidential deal terms of an agreement between Google and a non-party entity; and information calculated from internal, non-public Google financial data.  There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts" and "contract negotiations," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "detailed financial information[.]" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations"). | 156; 157; and 203.  *See* Epic and Consumers' portion of joint filing. |
| Exhibit 41 (all proposed excerpts) | The limited portions of this exhibit that Google requests to seal reflect Google's confidential, internal analyses and strategic considerations with respect to a specific non-party. Public disclosure could cause harm to Google's competitive standing by giving competitors insight into Google's business strategies.If competitor platforms became | Epic and Consumers oppose sealing this information.  *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | aware of this information they could use it to inform their own strategies, unfairly leveraging Google's confidential data to compete more effectively with Google Play. There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011). | |
| Exhibit 45 (all proposed excerpts) | The limited portions of this exhibit that Google requests to seal are calculated based on internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. There are compelling reasons (and good cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17- | Epic and Consumers oppose sealing this information, with the exception of the information Non-Parties and the Match Plaintiffs seek to seal and with the exception of the specific financial information on -4313 (except as noted in Epic and Consumers' portion of the joint filing), -4330, and -4336. *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "detailed financial information." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations"). | |
| Exhibit 52 (all proposed excerpts) | The limited portions of this exhibit that Google requests to seal are calculated based on internal, non-public Google financial data. For example, the damages calculations on Page 364 are calculated based on internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. Further, this information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Similarly, the information on Page 43 are calculated based on Play revenues, and Google's internal, non-public data on sideloading off of Google Play on Android devices. There are compelling reasons (and good | Epic and Consumers oppose sealing this information, with the exception of the information Non-Parties seek to seal. *See* Epic and Consumers' portion of joint filing. |

| Location of Relevant Language | Google's Position in Support of Sealing | Epic and Consumer Plaintiffs' Position in Opposition to Sealing |
|---|---|---|
| | cause) to seal "discussions of business strategy," *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011), as well as "terms of confidential contracts," *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019), and "detailed financial information." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (finding, there are "compelling reasons" to seal detailed financial information if disclosure would create an "advantage in contract negotiations"). | |

# EXHIBIT 2

Jeffrey L. Kessler (*pro hac vice*)
JKessler@winston.com
Sofia Arguello (*pro hac vice*)
SArguello@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jenifer E. Parsigian (SBN: 289001)
JParsigian@winston.com
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Non-Party*
ACTIVISION BLIZZARD, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.,*<br>Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litig.,*<br>Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.,*<br>Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.,*<br>Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF PAGE ROBINSON IN SUPPORT OF THE PARTIES' OMNIBUS SEALING MOTION**<br><br>The Honorable James Donato |

I, Page Robinson, declare as follows:

1.    I am the Senior Director of Litigation and Intellectual Property for Activision Blizzard, Inc. ("Activision Blizzard").  I joined Activision Blizzard in 2022.  I make this Declaration on my own personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.    In my current role at Activision Blizzard, I am responsible, in part, for Activision Blizzard's litigation and intellectual property matters, including overseeing all pending and threatened litigation, IP licensing, related strategic decisions, and advising Activision Blizzard on such matters. Activision Blizzard keeps such information confidential to protect itself and its partners from potential harm.

3.    I understand that, in the above-captioned actions and in connection with dispositive and *Daubert* motions, the Court has ordered that the parties and non-parties address all sealing requests in a single omnibus sealing motion ("Sealing Motion").  *See* ECF No. 496.[1]  I understand that Defendants filed a Notice of Motion and Motion to Exclude Merits Opinions of Dr. Marc Rysman (ECF No. 484), a Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer (ECF No. 487), a Notice of Motion and Motion for Partial Summary Judgment (ECF No. 483), and exhibits to each (collectively, "Defendants' Filings").  I further understand that Match Plaintiffs[2] filed a Motion for Partial Summary Judgment on Google's Counterclaims with attached exhibits (ECF No. 486), and that the collective Plaintiffs filed an Opposition to Defendants' Motion for Partial Summary Judgment ("Summary Judgment Opposition") and the Declaration of Michael J. Zaken ("Zaken Declaration") with accompanying exhibits (ECF No. 509) (together with Defendants' Filings, the "*Daubert* and Summary Judgment Filings").

4.    I further understand from Epic and Google counsel that the *Daubert* and Summary Judgment Filings include Activision Blizzard information that is designated "NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" or "HIGHLY CONFIDENTIAL –

---

[1] The referenced ECF numbers correspond to Case No. 3:21-md-02981-JD.

[2] Activision Blizzard's reference to "Match Plaintiffs" or "Match" includes Plaintiffs Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc.

ATTORNEYS' EYES ONLY" either by Activision Blizzard or by another party.[3]  I write this Declaration in support of the parties' Sealing Motion insofar as it relates to the Activision Blizzard information incorporated into the *Daubert* and Summary Judgment Filings and described in greater detail below.

5.      I understand that, where documents are "more than tangentially related to the merits of a case," this Court requires a party to establish "compelling reasons" for sealing.  *See Connor v. Quora, Inc.*, No. 18-cv-07597, 2020 WL 7408233, at *1 (N.D. Cal. Oct. 15, 2020) (citations and internal quotation marks omitted).  By contrast, this Court requires a "lesser showing of 'good cause'" for "[f]ilings that are only tangentially related to the merits." *See id.* (citation omitted).  I also understand that these standards apply where a non-party seeks to preserve the confidentiality of its information by filing a declaration in support of a party's sealing motion.  *See* Civil L.R. 79-5(f)(3) (incorporating requirements of 79-5(c)(1)).

6.      I understand that the "compelling reasons" standard applies to briefing on summary judgment motions.  *See Hyams v. CVS Health Corp.*, No. 18-cv-06278-HSG, 2021 WL 1864737, at *2 (N.D. Cal. Mar. 18, 2021) ("Because the motion for partial summary judgment is more than tangentially related to the underlying action, the Court applies the 'compelling reasons' standard in evaluating the motion to seal."); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016) (noting that "motions for summary judgment [are] obviously" related to the merits of a case).  I also understand that courts have applied different standards to *Daubert* motions.  *Compare Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 WL 13113782, at *2 (N.D. Cal. July 18, 2019) (concluding that "compelling reasons" standard applies to motion for summary judgment and *Daubert* motions), *with In re Koninklijke Philips Patent Litig.*, No. 18-cv-01885-HSG, 2020 WL

---

[3] In submitting this Declaration, Activision Blizzard—a non-party to this case that therefore is not privy to discovery in the matter—is reliant on the parties' counsel to identify references to Activision Blizzard confidential information that warrants sealing.  In submitting this Declaration, Activision Blizzard relied on correspondence from Epic and Google counsel.  Activision Blizzard reserves the right to supplement this Declaration or submit a new declaration if it learns that other confidential information of Activision Blizzard was included in the *Daubert* and Summary Judgment Filings or other filings relating to the *Daubert* and summary judgment briefing but omitted from the parties' correspondence.

1865294, at *2 (N.D. Cal. Apr. 13, 2020) ("appl[ying] the lower good cause standard for documents related to the *Daubert* motions").  In any event, even the stricter "compelling reasons" standard is met where the subject of the sealing request is a "source[] of business information" the disclosure of which "might harm a [non-party's] competitive standing."  *See Ctr. for Auto Safety*, 809 F.3d at 1097 (internal quotation marks omitted) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

7.      Activision Blizzard is a global developer and publisher, whose objective is to develop, publish, and distribute high-quality interactive entertainment content and services and deliver engaging entertainment experiences to users worldwide.  Maintaining the confidentiality of its business plans and strategies and non-public financial metrics and strategies was—and continues to be—integral to Activision Blizzard's success.  Thus, Activision Blizzard has a legitimate interest in preserving the confidentiality of its information.

8.      The information that is redacted in the *Daubert* and Summary Judgment Filings includes highly confidential, internal business information of Activision Blizzard, which would result in serious competitive harm if disclosed.

9.      This information, in part, relates to Activision Blizzard's negotiations with Google and contains highly confidential information relating to Activision Blizzard's business strategy, including its pursuit of a confidential business initiative.  I understand that the existence of Activision Blizzard's underlying partnership with Google already has been made public during the course of this litigation. But as detailed below, excerpts from the *Daubert* and Summary Judgment Filings go beyond merely acknowledging the *existence* of an Activision Blizzard-Google partnership, and go so far as to provide insight into (i) the alleged terms and incentives underlying the Activision Blizzard-Google partnership, and (ii) the services and benefits Activision Blizzard would have purportedly received—and the purported tradeoffs Activision Blizzard made—in exchange for entering a partnership with Google. In addition, the information includes Activision Blizzard's non-public financial metrics and strategies, the confidentiality of which was—and continues to be—integral to Activision Blizzard achieving its status as a leader in the entertainment industry.

10.     The representations in the *Daubert* and Summary Judgment Filings thus contain highly confidential and competitively sensitive information relating to Activision Blizzard's business strategy

1   and financials, which would result in serious competitive harm if disclosed.  *See Epic Games, Inc. v.*

2   *Apple Inc.*, No. 4:20-cv-05640, 2021 WL 1925460, at *1 (N.D. Cal. Apr. 30, 2021) (finding

3   "compelling reasons" for sealing "highly confidential information, including . . . business decision-

4   making . . . belonging to [] a third-party non-party to th[e] action"); *Open Text S.A. v. Box, Inc.*, No.

5   13-cv-04910, 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014) (sealing information "refer[ring] to

6   [] confidential financial and revenue information, disclosure of which is likely to cause harm to

7   [business] if known by competitors"); *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133, 2014 WL

8   11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting sealing request for third-party documents where

9   they "contain[ed] . . . competitive information that could cause damage to the third parties if made

10  public"); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (directing district court to

11  grant sealing of, in part, "pricing terms").

12      11.    The *Daubert* and Summary Judgment Filings also identify non-party executives and

13  former executives who purportedly participated in Activision's partnership with Google.  Several

14  courts have recognized the propriety of redacting such non-party identifying information under the

15  "compelling reasons" standard.  *See, e.g.*, *Sentynl Therapeutics, Inc. v. U.S. Specialty Ins. Co.*, No.

16  19-cv-1667-LAB-AHG, 2021 WL 794271, at *3 (S.D. Cal. Mar. 1, 2021) (noting that "redaction of

17  non-party personal identifiers is warranted" under the "compelling reasons" standard); *G&C Auto

18  Body Inc. v. Geico Gen. Ins. Co.*, No. C06-04898-MJJ, 2008 WL 687372, at *2 (N.D. Cal. Mar. 11,

19  2008) (redacting non-party identifying information under "compelling reasons" standard—including

20  names—where it was of "little or no relevance to the issues that were raised by [party's] summary

21  judgment motions").

22      12.    Consistent with the highly confidential nature of these references and information, in

23  each instance, Activision Blizzard or another party appropriately designated the information as "NON-

24  PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" or "HIGHLY

25  CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with the protective orders in this

26  case.  *See* ECF Nos. 117, 124, 154, 170, 237, 248.

27      13.    The disclosure of Activision Blizzard's highly confidential information contained in

28  the *Daubert* and Summary Judgment Filings would significantly harm Activision Blizzard's business.

For example, Activision Blizzard's competitors could leverage this information to reap an unearned competitive advantage.  They could exploit this information—that they otherwise would not have access to—to inform their own business strategies.  *See Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678, 2016 WL 9185002, at *2 (N.D. Cal. June 17, 2016) ("[U]nder Ninth Circuit law, . . . [] reports are appropriately sealable under the 'compelling reasons' standard where that information could be used to the company's competitive disadvantage.").  Indeed, the alleged contours of Activision Blizzard's deal with Google could be used as a bargaining chip by Activision Blizzard's competitors in their negotiations with Google or a similarly situated counterparty.  Disclosing Activision Blizzard's financial metrics or strategy would give competitors unwarranted access to information that they can use to inform their own benchmarking processes and business strategies.  And disclosing the identities of the Activision Blizzard executives and former executives will run a "substantial risk of exposing [Activision Blizzard and the executives in their individual capacities] to harassment," particularly in light of Epic's and Match's blatant mischaracterizations of the Activision Blizzard-Google deal, most notably in their amended complaints.  *See Sentynl Therapeutics, Inc.*, 2021 WL 794271, at *3; ECF Nos. 378, 380.

14.     Preventing these competitive harms and the risk of harassment requires sealing of the redacted information in the *Daubert* and Summary Judgment Filings.  There is no less restrictive alternative.  Sealing is the only means of preserving the sanctity of Activision Blizzard's highly confidential, non-public, and competitively sensitive information.  Absent sealing, Activision Blizzard competitors will undeservingly have access to this information.

15.     The excerpts from the *Daubert* and Summary Judgment Filings that Activision Blizzard hereby seeks to seal, with the reasons for each request, are set forth below:

| Location of Reference in *Daubert* and Summary Judgment Filings | Reason for Sealing |
| --- | --- |
| Ex. 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof (ECF No. 487), Ex. 3c, rows 11, 24, and 30 of the table | Contains Activision Blizzard's confidential and competitively sensitive information relating to financial data and pricing strategy. |

5

| Location of Reference in *Daubert* and Summary Judgment Filings | Reason for Sealing |
|---|---|
| Ex. 1 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof (ECF No. 487), p. 82, ¶ 167 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this reference purports to describe the consideration for a confidential, non-public business transaction. |
| Ex. 1 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof (ECF No. 487), p. 104, ¶ 219, n. 523 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 1 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof (ECF No. 487), p. 104, ¶ 219, n. 528 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 1 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof (ECF No. 487), p. 104, ¶ 219 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 12 to Defendants' Notice of Motion and Motion for Partial Summary Judgment (ECF No. 483) at: <br> • p. 8 lines 23 words 8–9 <br> • p. 8 line 25 word 6 <br> • p. 9 line 7, first word following the citation <br> • p. 9 line 7 (the last two words) through line 9 (through and including word 4) <br> • p. 11 lines 2–5 (through and including word 8) <br> • p. 11 lines 7–10 in their entirety | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this document purports to describe the consideration for a confidential, non-public business transaction.  This document also identifies Activision Blizzard executives and former executives who may be subject to undue harassment if their identities are disclosed, particularly in light of Epic's and Match's public allegations regarding the Activision Blizzard-Google partnership. |
| Ex. 13 to Defendants' Notice of Motion and Motion for Partial Summary Judgment (ECF No. 483) at: <br> • p. 18 lines 10–13 (up to the first comma) <br> • p. 18 lines 15–18 in their entirety <br> • p. 20 lines 12–18, 20–25 in their | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this document purports to describe the consideration for a confidential, non-public business transaction.  This document also identifies Activision Blizzard executives and former executives who may be subject to undue harassment if their identities are disclosed, particularly in light of Epic's and |

6

DECLARATION OF PAGE ROBINSON
CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD, 3:21-cv-05227-JD, 3:22-cv-02746-JD

| Location of Reference in *Daubert* and Summary Judgment Filings | Reason for Sealing |
|---|---|
| entirety<br>• p. 21 line 4 (from the word following the citation) through line 6 (up to "Google believed")<br>• p. 21 lines 7 (from "*Id.*") through and including line 14 | Match's public allegations regarding the Activision Blizzard-Google deal. |
| Ex. 6 to Match Plaintiffs' Motion for Partial Summary Judgment on Google's Counterclaims (ECF No. 486), row 13 of table | Contains Activision Blizzard's confidential and competitively sensitive strategic business information, including financial data. |
| Summary Judgment Opposition (ECF No. 509), p. 7, line 15 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this reference purports to describe the consideration for a confidential, non-public business transaction. |
| Summary Judgment Opposition (ECF No. 509), p. 7, lines 16–17 after "Activision" to "(Ex. 13)", and lines 17–18 after "and" to "(Ex. 12)" | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this reference purports to describe the consideration for a confidential, non-public business transaction. |
| Ex. 5 to the Zaken Declaration (ECF No. 509-6) at:<br>• p. 270 lines 10–16<br>• p. 271 line 14 through and including p. 272 line 9<br>• p. 272 line 21 through and including p. 273 line 25<br>• p. 283 line 2 through and including p. 284 line 9 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this reference purports to describe the consideration for a confidential, non-public business transaction.  This document also identifies an Activision Blizzard executive who may be subject to undue harassment if his or her identity is disclosed, particularly in light of Epic's and Match's public allegations regarding the Activision Blizzard-Google deal. |
| Ex. 6 to the Zaken Declaration (ECF No. 509-7), redacted excerpts that Google counsel identified as containing Activision Blizzard's confidential information | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 10 to the Zaken Declaration (ECF No. 509-11) at:<br>• p. 144 lines 1–19 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this reference purports to describe the consideration for a confidential, non-public business transaction. |
| Ex. 12 to the Zaken Declaration (ECF | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business |

7

DECLARATION OF PAGE ROBINSON
CASE NOS. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD, 3:21-cv-05227-JD,
3:22-cv-02746-JD

| Location of Reference in *Daubert* and Summary Judgment Filings | Reason for Sealing |
|---|---|
| No. 509-13), document in its entirety | information and describes the strategic rationale for a confidential, non-public business transaction. |
| Ex. 13 to the Zaken Declaration (ECF No. 509-14), document in its entirety | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 14 to the Zaken Declaration (ECF No. 509-15), document in its entirety | Contains document descriptions that directly relate to, and would reveal, Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information. |
| Ex. 15 to the Zaken Declaration (ECF No. 509-16), redacted excerpts that Google counsel identified as containing Activision Blizzard's confidential information | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this document purports to describe the consideration for a confidential, non-public business transaction.  This document also identifies an Activision Blizzard executive who may be subject to undue harassment if his or her identity is disclosed, particularly in light of Epic's and Match's public allegations regarding the Activision Blizzard-Google deal. |
| Ex. 48 to the Zaken Declaration (ECF No. 509-49), document in its entirety | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information.  In addition, this document purports to include the terms of a confidential, non-public business transaction.  This document also identifies an Activision Blizzard executive who may be subject to undue harassment if his or her identity is disclosed, particularly in light of Epic's and Match's public allegations regarding the Activision Blizzard-Google deal. |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on July 6, 2023 in _____.

By: _____
Page Robinson
Activision Blizzard, Inc.

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF XINGJIAN ZHAO IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge: Hon. James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | |

I, XINGJIAN ZHAO, declare as follows:

1.      I am currently Senior Legal Counsel and Head of Dispute Resolution for Alibaba International Digital Commerce Group ("AIDC"), one of the main business groups under the Alibaba Group umbrella to which Alibaba.com Singapore E-Commerce Private Limited ("Alibaba") belongs.  I have been employed by the Alibaba Group since March 2021, and have always served as in-house counsel.  As part of my responsibilities, I lead the dispute resolution function of AIDC's Legal & Compliance Department.

2.      I have personal knowledge of Alibaba's practices and procedures concerning the maintenance of confidentiality of its strategic, business and financial information.

3.     I submit this declaration in support of the Parties' joint omnibus sealing motion in *In Re Google Play Store Antitrust Litigation*, Case No. 3:21-md-02981-JD.  The contents of this declaration are based on my personal knowledge, or knowledge that I acquired through review of internal Alibaba documents or consultation with relevant Alibaba personnel, and if called as a witness in this matter, I could and would testify thereto.

4.     I understand that Exhibit A to this declaration corresponds to an excerpted portion of Exhibit 6 to MATCH PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON GOOGLE'S COUNTERCLAIMS, submitted in ECF Docket Number 486 in the above-captioned litigation.

5.     Exhibit A to this declaration is a document that Alibaba received from counsel for Google and to which I then applied a redaction to the information on the row labeled "Alibaba." This row shows the amount and percentage (which I have redacted) that Alibaba spent advertising its apps on Google's "UAC" or "Universal App Campaign."  The redacted portion of this row is the confidential information that Alibaba requests to be sealed.  The other rows in Exhibit A were already redacted when Alibaba received this document.  I understand that the other rows correspond to information of other companies, and I express no view as to the confidentiality of the other information.

6.     The non-public financial information and marketing spend figures at issue arise from a private agreement consummated between Alibaba.com Singapore E-Commerce Private Limited and Google in or around 2019.

7.     Alibaba follows a strict practice that requires confidential treatment of all of its non-public financial information and marketing spend on specific online platforms.  In my experience and to the best of my knowledge, Alibaba does not disclose such information to third

parties except under the strictest confidentiality protection and for strategic business collaborations.  Alibaba considers such information to be highly confidential.

8.      The information on the amount and percentage of Alibaba's advertising spend on Google's UAC is highly sensitive and confidential to Alibaba, and is derived from confidential materials generated during the business dealings between Alibaba and Google.  This confidential information is governed by provisions of the agreement between Alibaba and Google (referred to in paragraph 6 above) that requires Google to keep the information confidential.  This information has never been disclosed publicly, and as stated, Alibaba does not disclose this type of financial information to third parties, except under the strictest confidentiality protection and for strategic business collaborations.

9.      The disclosure of this information to the public will harm Alibaba's business interests.  For instance, if disclosed publicly, Alibaba's competitors will be able to use this non-public confidential information about Alibaba's advertising spend on Google's platform to compete with Alibaba on Google and other platforms, using the competitor's apps and services. Other potential business counterparties could also use this non-public and confidential information in negotiations with Alibaba to Alibaba's disadvantage.  This information thus has economic and competitive value to Alibaba from not being generally known to Alibaba's competitors, counterparties, or the general public, and sealing this confidential information will avoid competitive harm to Alibaba and its business.

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct and that this declaration was executed on July 6, 2023 in Shanghai, China.

3

4  Respectfully submitted,

5

6  Dated: July 6, 2023                                   By:

7

8                                                        XIN

9

**EXHIBIT A TO**

**DECLARATION OF XINGJIAN ZHAO**

**IN SUPPORT OF OMNIBUS MOTION TO SEAL**



| Parent Name | Type | 2019 UAC Spend | % of Total 2019 UAC | Policy Impact? | Comment |
|---|---|---|---|---|---|
| Alibaba | | | | | Checking specific apps |

# EXHIBIT 4

I, Donn Morrill, hereby declare as follows:

1.      I am currently Director of Developer Relations for Entertainment, Devices, and Services at Amazon. I have been employed by Amazon since May 2012.

2.      I submit this declaration in support of the omnibus motion to seal material produced by Amazon.  The facts stated herein are based on my personal knowledge through my position at Amazon.

3.      This information was produced as highly confidential under the protective order.

4.      Amazon does not seek to seal all of the information it produced in the district court.  Rather Amazon only seeks to seal highly sensitive and confidential business Amazon.  This information would disclose Amazon's business model and strategy.  Amazon's competitors could use this information to disadvantage Amazon in ongoing or future business negotiations.  Amazon's business partners could use this information in their negotiations to also disadvantage Amazon and other Amazon business partners.

5.      Amazon treats this information as highly confidential.  It is not widely distributed or known at Amazon.  Amazon also takes measures to ensure that it is not publicly disclosed.

0

6.     Amazon seeks to seal the following information on the following

grounds:

| Document | Citation | Basis For Sealing |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 29, Para. 40 | Discloses confidential contract negotiations and pricing that could be used to harm Amazon |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 36-37, Para. 60 | Discloses confidential business strategy and confidential communication Amazon had with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 37, Para. 60 | Discloses Amazon's investment and business strategy |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 57, Para. 113, n. 253 | Discloses confidential business strategy and confidential communication Amazon had with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 57, Para. 113, n. 254 | Discloses confidential business strategy and confidential communication Amazon had with business partners |

| | | |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 57, Para. 113, n. 255 | Discloses confidential business strategy and confidential communication Amazon had with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 57, Para. 114, n. 258 | Discloses Amazon's pricing and business model for a particular product |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 57-58, Para. 114 | Discloses Amazon's pricing and business model for a particular product |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 58, Para. 114, n. 262 | Discloses Amazon's business strategy cand results |
| | | |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 58, Para. 115 | Discloses confidential Amazon business strategy, initiatives, and pricing |

| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 59, Para. 120 | Discloses Amazon's confidential market research, business strategy, and market share data |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 66-67, Para. 129 | Confidential business information about download on Amazon Appstore |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 67, Table 2 | Confidential business information about download on Amazon Appstore |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 83, Para. 169, n. 395 | Discloses confidential spending data on the Amazon Appstore |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 83, Para. 169, n. 396 | Discloses confidential revenue data on the Amazon Appstore |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. | Page 84, Figure 11 | Discloses confidential revenue and spending data on the Amazon Appstore |

| | | |
|---|---|---|
| SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | | |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 144-145, Para. 312 | Discloses confidential pricing information and Amazon's negotiations with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145, Para. 313 | Discloses confidential business strategy and pricing information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145, Para. 313 | Discloses Amazon's competitive intelligence and pricing information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145-146, Para. 313 | Discloses Amazon's competitive intelligence and pricing information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145, Para. 312, n. 707 | Discloses Amazon's profit, loss, and other financial data |

| | | |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page145, Para. 312, n. 708 | Discloses Amazon's profit, loss, and other financial data |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145, Para. 313, n. 709 | Discloses Amazon's business strategy and pricing information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 145, Para. 313, n. 712 | Discloses Amazon's confidential revenue and pricing information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 188, Para. 383 | Disclose confidential transactional information about Amazon Appstore |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 188, Para. 383, n. 913 | Disclose confidential transactional information about Amazon Appstore |

5

| | | |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 204, Para. 417 | Discloses confidential revenue, pricing, and discount information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 204, Para. 417, n. 954 | Discloses confidential revenue, pricing, and discount information |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 205, Table 20 | Discloses confidential revenue, pricing, and discount information, as well as business strategy |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 205, Para. 418 | Discloses Amazon's business strategy, pricing, and competitive strategy |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 205, Para. 419 | Discloses Amazon's pricing and negotiation with business partners |

| | | |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 205, Para. 420 | Discloses Amazon's pricing and negotiation with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 206, Table 21 | Discloses Amazon's pricing and negotiation with business partners |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 206, Table 22 | Discloses confidential pricing, revenue, profit, and other financial data |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 25, Para. 54 | Discloses Amazon's discount information |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 58, Para. 153 | Discloses Amazon's pricing, discount, and competitive information |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. | Page 58, Para. 153, n. 338 | Discloses Amazon's revenue, pricing, and discount information |

7

| | | |
|---|---|---|
| SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | | |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 59, Figure 8 | Discloses Amazon's sales and distribution data |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 59, Para. 155 | Discloses Amazon's sales and distribution data |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 59, Para. 155, n. 339 | Discloses Amazon Appstore distribution data |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 60, Para. 157 | Discloses Amazon's business strategy, negotiation, and distribution information |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 116, Para. 259 | Discloses Amazon's financial data, including pricing information |

| | | |
|---|---|---|
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 116, Para. 259, n. 588 | Discloses Amazon's revenue and pricing information! |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 119, Appendix Table A9 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Page 226, Para. 354 | Discloses Amazon's transactional and financial data |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Exhibit 52 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Exhibit 66 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |

| | | |
|---|---|---|
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Pg 87, Ex. 5 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Pg 87-88, Para. 153 | Discloses highly confidential pricing information and commission rates |
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Pg 132-133, Para. 242 | Discloses highly confidential business arrangement and contracts, as well as distribution metrics |
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Pg 132-133, Para. 242, n. 546 | Discloses highly confidential business arrangement and contracts, as well as distribution metrics |
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) | Pg 148, Para. 271 | Discloses confidential pricing information, including commission rates |
| EXHIBIT 4 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN | Pg 158, Para. 286, n. 644 | Discloses highly confidential business strategy document |

| | | |
|---|---|---|
| SUPPORT THEREOF (MDL ECF 484) | | |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 90-91, para. 110 | Discloses confidential information about Amazon's discount rate |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 93, para. 112 | Disclose Amazon's confidential business strategy |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 93, fn 153 | Discloses Amazon's confidential market share data for its Appstore. |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) | Page 94, para. 114 | Discloses Amazon's confidential discount, revenue, and sales data |
| MATCH PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON GOOGLE'S COUNTERCLAIMS (MDL ECF 486) | Ex. 6 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |
| DEFENDANTS' OPPOSITION TO MATCH PLAINTIFFS' | Ex. 16 | Discloses Amazon's highly confidential business strategy, |

| | | |
|---|---|---|
| MOTION FOR PARTIAL SUMMARY JUDGMENT (MDL ECF 506) | | financial, and pricing information |
| CONSUMER AND STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER (MDL ECF 508) | pg 2, line 21-23 | Discloses Amazon's discount and pricing information |
| CONSUMER AND STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER (MDL ECF 508) | p. 15, line 19 | Discloses Amazon's discount and pricing information |
| CONSUMER AND STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER (MDL ECF 508) | Ex. 7 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |
| CONSUMER AND STATE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER (MDL ECF 508) | Ex. 19 | Discloses Amazon's highly confidential business strategy, financial, and pricing information |

I declare under penalty of perjury under the laws of New York and the

United States of America that the foregoing is true and correct.

Executed on July 7, 2023

Donn Morrill

12

# EXHIBIT 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLAY STORE<br><br>ANTITRUST LITIGATION | Case No. 3:21-MD-02981-JD<br><br>**DECLARATION OF YUSUKE TOYAMA PURSUANT TO LOCAL RULE 79-5(e)(1) IN SUPPORT OF SEALING CERTAIN CONFIDENTIAL INFORMATION** |

1    I, Yusuke Toyama, hereby declare as follows:

2        1.      I work for Aniplex, Inc. ("Aniplex") in Tokyo, Japan.  I have been employed by

3    Aniplex since July 2014, and I have been the Senior Vice President of the Game Business Group

4    since July 2020.  I have personal knowledge of the following facts unless otherwise stated.  I read

5    English proficiently and I understand the contents of this declaration.

6        2.      I submit this declaration pursuant to Civil Local Rule 79-5.  The contents of this

7    declaration are true and correct to the best of my knowledge, information and belief.  This

8    declaration is based on my personal knowledge of Aniplex's policies and practices as they relate

9    to the treatment of confidential information, the materials that were provided to me and reviewed

10   by me, and/or conversation with other knowledgeable employees of Aniplex.  If called upon as a

11   witness, I could and would testify competently thereto.

12       3.      I understand that Google is submitting a request to seal certain portions of materials

13   that pertain to certain non-public, highly confidential, highly competitively sensitive aspects of

14   Google's relationship with Aniplex.  I have not specifically described those materials in this

15   declaration, which I understand will be publicly filed, because describing them in a public

16   document would itself necessarily reveal competitively sensitive information relating to Aniplex

17   and thus defeat the purpose of the sealing request.  Nonetheless, Aniplex supports Google's

18   motion to seal those materials because disclosure of those materials would significantly prejudice

19   Aniplex's competitive position and cause substantial harm to Aniplex's relationship with its

20   business partners.  Accordingly, there is good cause and there are compelling reasons to seal this

21   material.

22

23

24

25

26

27

28

1        I declare under the penalty of perjury under the laws of the United States that the foregoing

2   is true and correct to the best of my knowledge and that this declaration was executed on July 10,

3   2023 in Tokyo, Japan.

4

5   Respectfully submitted,

6

7   Dated:  July 10, 2023              Yusuke Toyama

8                              YUSUKE TOYAMA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF YUSUKE TOYAMA      3      CASE NO. 3:21-MD-02981-JD

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | Judge: Hon. James Donato |
| *EPIC GAMES, INC. V. GOOGLE LLC ET AL.,* CASE. NO. 3:20-CV-05671-JD | |
| *IN RE GOOGLE PLAY CONSUMER ANTITRUST* LITIGATION, CASE NO. 3:20-CV-05761-JD | |
| *IN RE GOOGLE PLAY DEVELOPER ANTITRUST* LITIGATION, CASE NO. 3:20-CV-05792-JD | |
| *STATE OF UTAH, ET AL. V. GOOGLE LLC ET AL.,* CASE NO 3:21-CV-05227-JD | |

## <u>DECLARATION OF JEFFREY EZELL IN SUPPORT OF</u>

## <u>JOINT OMNIBUS SEALING MOTION</u>

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

I, Jeffrey Ezell, declare as follows:

1.   I am currently Vice President of Business Development at AT&T Services, Inc. ("AT&T"). I have been employed by AT&T, or its predecessor companies, since 1997, and I have served in a business development role for much of that period. My responsibilities in this role include negotiating, on behalf of AT&T, commercial agreements with third parties, including Google LLC and other mobile app developers. Such agreements often entail the marketing or distribution of non-AT&T content or services through AT&T distribution channels, including AT&T-distributed devices.

2.   I submit this declaration in support of the Parties' joint omnibus sealing motion in In Re Google Play Store Antitrust Litigation, Case No. 3:21-md-02981-JD.

3.   AT&T is a mobile carrier that offers wireless service and distributes and sells mobile devices for use on AT&T's wireless network.

4.   For the devices AT&T distributes or sells to its network subscribers, AT&T may preinstall or preload certain mobile apps, which are then immediately available to the consumer upon device set-up without the consumer having to separately download those apps from a digital app store. The preinstallation or preloading of mobile apps onto a device may be governed by a commercial agreement between AT&T and a third-party app developer, content provider, or service provider (collectively, "counterparties").

5.   AT&T negotiates and contracts with such app developers and content or service providers, including developers and/or providers that may compete with one another in the mobile app ecosystem.

6.   AT&T, like other mobile carriers, has also previously offered its wireless subscribers a payment service known as direct carrier billing. Direct carrier billing allows wireless subscribers to pay for certain non-AT&T mobile purchases through the subscriber's monthly wireless bill. Direct carrier billing arrangements are also governed by commercial agreements between AT&T and its counterparties.

2

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

7.   Competitor wireless carriers may also distribute or sell mobile devices for use on that competitor's network. Competitor mobile carriers may also choose to preinstall or preload mobile apps onto that carrier's devices or offer direct carrier billing services to their subscribers.

8.   AT&T seeks out commercial relationships to provide, market, or distribute content and/or services on its devices that may be beneficial to mobile device consumers.

9.   The terms of AT&T's commercial agreements with app developers and content or service providers are non-public, highly sensitive business information. AT&T considers the terms of these commercial agreements to be highly confidential.

10. The terms of the commercial agreements are individually negotiated with counterparties based on the unique circumstances of the relationship between AT&T and the counterparty. These unique circumstances may include financial and other economic considerations, as well non-financial terms and conditions that reflect or reveal AT&T proprietary information or business strategy.

11. Public disclosure of the specific deal terms of AT&T's commercial agreements would significantly harm AT&T's commercial relationships and its ability to conduct business with counterparties and prospective counterparties. Specifically, current and prospective counterparties could use the confidential deal information to their advantage when negotiating with AT&T, thereby harming AT&T's business and competitive interests.

12. Public disclosure of the specific deal terms in AT&T's commercial agreements would also disadvantage AT&T relative to other mobile wireless carriers that could use AT&T's confidential information to their advantage when competing with AT&T to market their device and service portfolio to current and/or prospective wireless subscribers. Public disclosure of the contractual terms would thus do significant damage to AT&T's business and competitive interests.

13. Additionally, public disclosure of contractual terms at different points in time of AT&T's prior business dealings will reveal changes, if any, to AT&T's contractual terms over time. Disclosure of trends in AT&T's contractual dealings would provide competitors and current or

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1   prospective counterparties with valuable insight into AT&T's commercial dealings and strategy,

2   and allow them to leverage that information to disadvantage AT&T in its own business dealings.

3       14. The following information contained in Plaintiffs' filings that are the subject of the joint

4   omnibus sealing motion is highly sensitive business information and confidential. The

5   information derives from confidential material that I understand was either produced by AT&T

6   in response to non-party subpoenas or civil investigative demands or shared with Google as part

7   of a confidential commercial business relationship between AT&T and Google.

8       15. As described in detail above and below, AT&T has compelling reasons that overcome

9   public policies favoring disclosure and access in court proceedings.

10                          **Specific Information To Be Sealed**

11          **(EXHIBIT 29 TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR**

12                  **PARTIAL SUMMARY JUDGMENT (MDL ECF 509))**

13      16. **Page 72.** The information reveals the outcome and/or result of a confidential AT&T

14   business relationship.

15          **(EXHIBIT 36 TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR**

16                  **PARTIAL SUMMARY JUDGMENT (MDL ECF 509))**

17      17. **Page 87, paragraph 177, the sentence beginning with "Commencing" and ending in**

18   **"examples."** This sentence describes a confidential AT&T business relationship and attributes

19   certain characteristics to that relationship.

20      18. **Page 87, paragraph 177, beginning with "From" through "Google".** This sentence

21   describes specific financial deal terms of AT&T's contracts. These deal terms are not public, and

22   AT&T has a reasonable expectation of confidentiality in its contractual relationships. Public

23   disclosure of specific deal terms, including terms historical in nature, would significantly impair

24   AT&T's ability to negotiate agreements with third parties. Public disclosure of historical deal

25   terms provides AT&T's competitors and current or prospective counterparties with information

26   as to whether and/or how AT&T's deal terms have evolved over time, thereby providing

27   competitors and current or prospective counterparties with valuable insight into AT&T's

28

4

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1   commercial dealings and strategy. Competitors and current or prospective counterparties could

2   then leverage this information to disadvantage AT&T. For example, current or prospective

3   counterparties could use this information to its advantage in negotiations with AT&T directly or

4   in negotiations with AT&T's competitors. Similarly, AT&T's competitors could use this

5   information in negotiations with their own current or prospective business relationships to

6   undermine AT&T's commercial interests.

7      19. **Page 87, paragraph 177, footnote 405.** These sentences describe specific financial deal

8   terms of AT&T's contracts. These deal terms are not public, and AT&T has a reasonable

9   expectation of confidentiality in its contractual relationships. As described above, public

10   disclosure of specific deal terms, including terms historical in nature, would significantly impair

11   AT&T's ability to negotiate agreements with third parties, as well as provide AT&T's

12   competitors with information that could be used to undermine AT&T's commercial relationships

13   and interests. The footnote also reveals the identity of a source of AT&T confidential

14   information.

15      20. **Page 91, paragraph 185, the sentences beginning "In 2013" and ending in footnote**

16   **436.** These sentences describe specific financial and non-financial deal terms of AT&T's

17   contracts and negotiations that accompanied those deal terms. The information further describes

18   whether and/or how specified AT&T contractual terms evolved over time and business

19   communications around the negotiation of the terms, thereby revealing confidential information

20   about AT&T's business strategy and priorities. These deal terms and attendant negotiations are

21   not public, and AT&T has a reasonable expectation of confidentiality in its contractual dealings.

22   As described above, public disclosure of specific deal terms, including terms historical in nature,

23   would significantly impair AT&T's ability to negotiate agreements with third parties, as well as

24   provide AT&T's competitors with information that could be used to undermine AT&T's

25   commercial relationships and interests. Public disclosure would also violate parties' expectations

26   of confidentiality in private business dealings.

27

28

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

21. **Page 91, footnote 433, first word.** The sealed information reveals the identity of a source of AT&T confidential information.

22. **Page 91, footnote 434, first word.** The sealed information reveals the identity of a source of AT&T confidential information.

23. **Page 91, paragraph 185, footnote 435**. This sentence describes specific financial deal terms of AT&T's contracts. These deal terms are not public, and AT&T has a reasonable expectation of confidentiality in its contractual relationships. As described above, public disclosure of specific deal terms, including terms historical in nature, would significantly impair AT&T's ability to negotiate agreements with third parties, as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests.

24. **Page 91, paragraph 185, footnote 436.** This information describes specific financial deal terms of AT&T's contracts. These deal terms are not public, and AT&T has a reasonable expectation of confidentiality in its contractual relationships. This information also describes specific business communications around the negotiation of AT&T's contractual terms, thereby revealing confidential information about AT&T's business strategy and priorities. These business communications are not public, and AT&T has a reasonable expectation of confidentiality in its contractual dealings. As described above, AT&T's deal terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests. Public disclosure would also violate parties' expectations of confidentiality in private business dealings.

**(EXHIBIT 17 TO DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (MDL ECF 483))**

25. **Exhibit 17 in its entirety.** Exhibit 17 sets forth specific AT&T contractual and deal terms, including financial and non-financial terms and obligations. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to

6

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1   negotiate with third parties as well as provide AT&T's competitors with information that could

2   be used to undermine AT&T's commercial relationships and interests.  Additionally, public

3   disclosure of contractual terms at different points in time of AT&T's prior business dealings

4   would reveal changes, if any, in AT&T's contractual terms over time. Disclosure of trends in

5   AT&T's contractual dealings would provide competitors and current or prospective

6   counterparties with valuable insight into AT&T's commercial dealings, priorities, and strategy

7   that could be used to disadvantage AT&T.

8   **(EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE**

9   **MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND**

10   **AUTHORITIES IN SUPPORT THEREOF)**

11   26. **Page 77, paragraph 98, footnote 222.**  The information describes the nature of a

12   confidential AT&T business relationship.

13   27. **Page 77, paragraph 98, footnote 223**  The information reveals confidential information

14   about an AT&T business relationship.

15   28. **Page 79, paragraph 99, beginning with "For example" through "itself."** These

16   sentences describe specific financial deal terms of AT&T's contracts. These deal terms are not

17   public, and AT&T has a reasonable expectation of confidentiality in its contractual relationships.

18   As described above, public disclosure of specific deal terms, including terms historical in nature,

19   would significantly impair AT&T's ability to negotiate agreements with third parties, as well as

20   provide AT&T's competitors with information that could be used to undermine AT&T's

21   commercial relationships and interests.  Disclosure of trends in AT&T's contractual dealings

22   would provide competitors and current or prospective counterparties with valuable insight into

23   AT&T's commercial dealings, priorities, and strategy that could be used to disadvantage AT&T.

24   29. **Page 79, paragraph 99, footnote 230**.  The information describes the nature of a

25   confidential AT&T business relationship.

26   30. **Page 187, paragraph 289, footnote 621.**  The information describes the nature of

27   confidential AT&T business relationships.

28

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1    31. **Page 237, paragraph 374, footnote 771**.  The information describes the nature of

2    confidential AT&T business relationships.

3        I declare under penalty of perjury under the laws of the United States that the foregoing is

4    true and accurate to the best of my knowledge and belief, and that this declaration was executed

5    in Atlanta, Georgia on June 30, 2023.

6

7    June 30, 2023

8                               Jeffrey Ezell

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

# EXHIBIT 7

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No.: 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | DECLARATION OF CASSIE STRATFORD IN SUPPORT OF OMNIBUS MOTION TO SEAL |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | |
| *In Re Google Play Consumer Antitrust, Case No. 3:20-cv-05671* | |
| *Utah v. Google LLC, Case No. 3:21-cv-05227-JD* | |
| *Match Group, LLC., et al. v. Google LLC, et al., Case No. 3:22-cv-02746-JD* | |

I, Cassie Stratford, declare as follows:

1.      I am the Senior Vice President of Legal Operations and Regulatory Compliance for Boyd Gaming Corporation ("Boyd").

2.      Boyd's subsidiary, Boyd Interactive Gaming, Inc. is responsible for many of Boyd's online and mobile gaming operations, including the Stardust Social Casino application, which is available for download through the Google Play Store.

3.      Through my position, I am familiar with the Stardust Social Casino application, its operation, and generally Boyd's efforts to protect confidential and sensitive business information.

4.      I make this declaration pursuant to Civil Local Rule 79-5 in support of the omnibus sealing motion filed in the above-captioned matter, specifically with respect to Boyd's

confidential information contained in Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of Thereof [MDL Dkt. No. 487], Exhibit 3a to the Expert Report of Dr. Gregory K. Leonard, on pages 253, 683, and 690.

5.      Specified portions of Exhibit 3a should remain under seal as set forth below.

6.      Exhibit 3a contains confidential financial information related to the Stardust Social Casino application, including metrics related to consumer spend, associated performance in the Google Play Store, and the percentage of associated Google Play Store service fees.

7.      Boyd does not disclose these pieces of commercially sensitive business information and requests that the information remain sealed as such disclosure would put it at a competitive disadvantage.

8.      Public disclosure of the confidential information contained in Exhibit 3a would provide insight into the usage and monetization of the application and allow competitors to identify potential areas that may be exploited to undercut the Stardust Social Casino offering.

9.      The other specified information in Exhibit 3a, including service fee information and ranking information, would allow competitors to understand or approximate the consumer spend on Stardust Social Casino and reveal the percentage of revenue that Boyd pays in fees.

10.     Boyd takes steps to maintain its consumer spend and service fee information as confidential. This type of financial information is not shared outside of the company, and disclosure of it within the company is limited to persons who are subject to confidentiality obligations and who have a need to know the information.

11.     Boyd has reasonably confined its redactions to Exhibit 3a to the minimum necessary to protect confidential, competitively sensitive information:

## SPECIFIC INFORMATION TO BE SEALED

Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of Thereof , at its Exhibit 3a:

- Page 253, all data in the row for App Package Name "com ati b2bsocial stardust"
- Page 683 in its entirety

- Page 690 in its entirety

12.     Except where otherwise indicated, I have personal knowledge of matters stated herein, and if called as a witness in this matter, I could and would testify thereto.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 6, 2023 in Las Vegas, Nevada.

Respectfully submitted,

Dated:  July 6, 2023

By: _____
Cassie Stratford

# EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**IN RE GOOGLE PLAY ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*In Re Google Play Consumer Antitrust Litigation*, Case No. 3:20-CV-05761-JD.

Case No.: 3:21-md-02981-JD

## DECLARATION OF Li Jin

I, Li Jin, declare as follows:

1.      I am General Counsel at Century Games.  I am an individual over 18 years of age.  I have personal knowledge of the facts and if called and sworn as a witness to testify, I would competently testify thereto.

2.      I submit this declaration in support of Century Games' request to keep certain information under seal.

3.      The following page numbers, line numbers, and/or entirety of certain exhibits include Century Games' confidential and business strategy information that is highly confidential and would give competitors an unfair competitive advantage if disclosed.  Thus, Disclosure of these information could result in significant injury to Century Games.  *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) ("Even a seemingly insignificant risk of disclosure cannot be ignored due to the threat of significant potential injury.")

- EXHIBIT 6 TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (MDL ECF 509) - GOOG-PLAY-004146710.R
- EXHIBIT 6 TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (MDL ECF 509) - GOOG-PLAY-004146713.R
- EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND

1

POINTS OF AUTHORITIES IN SUPPORT OF THEREOF - Exhibit 36c, Graph on page 912

- EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF - Exhibit 36c, Graph on page 913

- EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF - Exhibit 36c, Graph on page 917

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 27, 2023.

Li Jin

2

# EXHIBIT 9

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| | **DECLARATION OF ANNIE CHEN IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| THIS DOCUMENT RELATES TO: | |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | |

1   I, Annie Chen, declare as follows:

2   I am currently Senior Counsel for North America at Cognosphere, LLC ("HoYoverse"). I have been employed at HoYoverse since December, 2022. I write on behalf of the internal business teams that are familiar with, and responsible for, the financial information of HoYoverse, including revenue and expenses, with whom I consulted closely on the matter of this declaration. This declaration is true and correct to the best of my knowledge.

3   I make this declaration in support of the omnibus sealing motion filed in the above-captioned matter, specifically with respect to HoYoverse's information contained in the following exhibits:

- Exhibit 2 to Defendant's Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of Thereof (hereinafter, "Exhibit 2").

4    HoYoverse is a private video game development and publishing company, dedicated to creating immersive virtual world experiences and products for players around the globe. As a private company in the entertainment industry, the significance of safeguarding the confidentiality of internal financial data cannot be overstated. HoYoverse undertakes extraordinary measures to preserve the confidentiality of its non-public business and financial information, particularly surrounding HoYoverse's product revenue.

5    Sensitive information about HoYoverse's pricing strategy and revenue is included on, and can be further inferred from, Exhibit 2. Exhibit 2 declares a percentage paid by HoYoverse to the Google Play Store in service fees for a particular product.

6    Making public such information would negatively impact HoYoverse's ability to negotiate customer/vendor contracts and future business relationships. Retaining confidentiality for this commercially sensitive information is also significant to HoYoverse's ability to compete in the interactive media entertainment industry by preventing competitors from exploiting the insight gained into the company's financial performance, market share, and growth rate/plans.

7    I understand that Google's Omnibus Motion to File Under Seal requests the Court to maintain certain information under Seal. For the reasons stated above, it is my belief that the financial information provided in Exhibit 2 represents highly sensitive and confidential business information such that the disclosure would cause substantial harm to HoYoverse if unsealed.

8    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Respectfully submitted,                         By: _____
Dated: July 12, 2023                            Annie Chen

# EXHIBIT 10

# DECLARATION

Mondraw Limited, a Hong Kong company, having its principal place of business at Unit 1003, 10/F., Tower 2, Silvercord, 30 Canton Road, Tsim Sha Tsui, Kowloon, Hong Kong, would like to include following confidential information in the joint omnibus sealing motion.

| Originating Document | Page/Para. Citation |
|---|---|
| Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of thereof (MDL Dkt. No. 487-3) | Exhibit 3b, Graph on page 255 of 1150 |
| Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of thereof (MDL Dkt. No. 487-3) | Exhibit 36b, Graph on page 796 of 1150 |

By: _Mondraw Limited_

Name: _[signature]_

Title: _CGO_

Date: _7/10, 2023_

# EXHIBIT 11

KEKER, VAN NEST & PETERS LLP
R. ADAM LAURIDSEN #243780
alauridsen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Non-Party
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF BETSY CONTRO IN SUPPORT OF OMNIBUS SEALING MOTION**<br><br>Judge:        Hon. James Donato<br><br>Date Filed:   February 5, 2021 |

1    I, Betsy Contro, declare:

2    1.    I am not a party to this action and am over the age of 18 years. I submit this

3    declaration pursuant to Northern District of California Civil Local Rule 79-5. Unless otherwise

4    stated, the contents of this declaration are based on my personal knowledge, and if called as a

5    witness in this matter, I could and would testify thereto.

6    2.    Electronic Arts Inc. ("EA") is one of the world's leading digital interactive

7    entertainment companies. It develops, publishes, and distributes games, content, and services for

8    video game consoles, personal computers, and mobile devices.

9    3.    I am an employee of EA and my title is Senior Counsel, Litigation.  I am

10   responsible for managing EA's civil litigation matters, including EA's collection and production

11   of corporate documents.  I am familiar with EA's document storage policies, including the steps

12   EA takes to ensure that certain documents remain confidential and are accessible only by a

13   limited group of authorized employees.

14   4.    EA does not publicly disclose the terms of its distribution and marketing

15   agreements with Google.  This confidential information is commercially sensitive because EA

16   frequently engages in negotiations with partners over such deals, and the public disclosure of

17   terms would give EA's other negotiating partners a strategic advantage in those negotiations.  EA

18   does not share this type of agreement information with third-parties, and allowing them access to

19   it through public disclosure in this litigation would prejudice EA and cause EA competitive harm.

20   5.    EA also does not disclose sales and customer data for mobile games.  This

21   confidential financial information is commercially sensitive because EA uses this data for its

22   strategic planning and game-development adjustments, among other purposes.  Public disclosure

23   of this information would provide EA's competitors with useful insights into the performance of

24   EA's games, such as certain features or offerings that are particularly successful, and the

25   purchasing behavior of EA's customers.  EA does not share this type of information with its

26   competitors, and allowing them access to it through public disclosure in this litigation would

27   prejudice EA and cause EA competitive harm.  EA's competitors would be able to use this type

28   of information to alter their own product development strategies, to better position their own

products to compete against EA, and to target EA's customer relationships for disruption. The public disclosure of such information would give EA's competitors an unfair advantage because EA would not have access to similar information for those competitors.

6. I understand that certain documents submitted in connection with dispositive motions and motions to exclude expert opinions reference information about EA that has been designated "Non-Party Highly Confidential - Outside Counsel Eyes Only." I have reviewed excerpts from those documents, provided to me by counsel for Defendants. EA hereby respectfully seeks the sealing of the following excerpts for the listed reasons:

| Excerpt Location | General Description | Reason for Sealing |
|---|---|---|
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (MDL ECF 484) Page 283, Para. 447 | Description of terms in EA's addendum to distribution agreement with Google. | EA does not publicly disclose the terms of its distribution agreements with Google. The terms of such agreements are commercially sensitive information, and EA's other partners would use them if publicly disclosed to gain a strategic advantage in future negotiations with EA. EA would be prejudiced by the public disclosure of this information. |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487) Page 82, Para. 167 | Description of terms in EA's marketing agreement with Google. | EA does not publicly disclose the terms of its marketing agreements with Google. The terms of such agreements are commercially sensitive information, and EA's other partners would use them if publicly disclosed to gain a strategic advantage in future negotiations with EA. EA would be prejudiced by the public disclosure of this information. |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND | Graph depicting in-app purchasing behavior of EA's customers for a recent game. | EA does not publicly disclose the in-app purchasing behavior its customers. |

| Excerpt Location | General Description | Reason for Sealing |
|---|---|---|
| MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487)<br><br>Page 125, Figure 17 | | Customer purchasing behavior is commercially sensitive information, and EA's competitors could use it to specifically target EA's customers and/or adapt their games to be more attractive to EA's customers.  EA would be prejudiced by the public disclosure of this information. |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487)<br><br>Page 256 | Chart depicting in-app purchasing behavior of EA's customers for a recent game. | EA does not publicly disclose the in-app purchasing behavior its customers. Customer purchasing behavior is commercially sensitive information, and EA's competitors could use it to specifically target EA's customers and/or adapt their games to be more attractive to EA's customers.  EA would be prejudiced by the public disclosure of this information. |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF (MDL ECF 487)<br><br>Page 926 | Graph depicting certain sales and revenue data for a recent EA game. | EA does not publicly disclose this sales and revenue data for the game at issue.  This sales and revenue data is commercially sensitive because it would allow EA's competitors to assess the performance of EA's game and to better position their competing games against it. |

7.      EA has sought to seal the narrowest amount of information possible while still protecting EA from the harm that would result from the public disclosure of this sensitive confidential information.

////

DECLARATION OF BETSY CONTRO IN SUPPORT OF OMNIBUS SEALING MOTION
Case No. 3:21-md-02981-JD

2316478

1    8.    EA respectfully requests that the Court seal this limited information based upon

2  good cause shown and file in the public record redacted versions of the documents described

3  herein.

4    Executed this 6th day of July, 2023, at ____Redwood City____, California.  I declare under

5  penalty of perjury that the foregoing is true and correct.

6

7

8

9  BETSY CONTRO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT APPLIES TO: | **DECLARATION OF LOGAN PETTIGREW ON BEHALF OF NON-PARTY APPLOVIN CORPORATION AND MAGIC TAVERN, INC. IN SUPPORT OF THE PARTIES' JOINT OMNIBUS SEALING MOTION** |
| *All Related Actions* | No Hearing Unless Requested by the Court |
| | The Honorable James Donato |

**I, Logan Pettigrew, declare as follows**:

1.      I am Sr. Managing Litigation & Regulatory Counsel for non-party AppLovin Corporation ("AppLovin") and Magic Tavern, Inc. ("Magic Tavern"), a wholly owned subsidiary of AppLovin (together with AppLovin, the "Non-Party AppLovin Entities"). I am an active member in good standing of the bars of the States of New York and New Jersey. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration.

2.      Pursuant to Civil Local Rule 79-5, the Stipulated Second Amended Supplemental Protective Order Governing Production of Protected Non-Party Materials entered by the Court on May 25, 2022 (MDL Dkt. No. 248) (the "Stipulated Protective Order"), the Court's Order (MDL Dkt. No. 496), and the Standing Order for Civil Cases before Judge James Donato, I submit this Declaration on behalf of the Non-Party AppLovin Entities in support of the parties' Joint Omnibus Sealing Motion (the "Motion to Seal").

3.      The Motion to Seal sets forth the specific documents sought to be sealed, which include designated portions of the parties' papers filed in support of and in opposition to the parties' dispositive motions and to exclude certain expert opinions (the "Motion Papers") in *In re Google Play Store Antitrust*

*Litigation*, MDL Dkt. Nos. 480, 483–84, 486–87, 506, 508–09, 512, 523–24, 526–27; *see also In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD) (N.D. Cal), Dkt. Nos. 377, 379, 381, 392, 394, 396, 406, 408, 410, 415–16, 418 (identical versions), *State of Utah, et al. v. Google LLC et al.*, No. 3:21-cv-05227-JD (N.D. Cal.), Dkt. Nos. 377, 379, 381, 395, 397–98, 406–07, 409 (identical versions); *Match Group, LLC et al. v. Google LLC et al.*, No. 3:22-cv-02746-JD (N.D. Cal.), Dkt. Nos. 156, 158, 166, 168, 172–73 (identical versions); *Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD (N.D. Cal.), Dkt. Nos. 407, 412, 416 (identical versions).

4.      As set forth in the chart below, certain narrowly tailored portions of the parties' Motion Papers, specifically Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer and the Memorandum and Points of Authorities In Support Thereof (MDL Dkt. No. 487) (the "Singer Exclusion Motion"), include non-public, sensitive, and confidential business and financial information of the Non-Party AppLovin Entities, which the parties have already designated as "Non-Party Highly Confidential – Outside Counsel Eyes Only" pursuant to the Stipulated Protective Order.

5.      For the reasons identified below, "good cause" and "compelling reasons" exist to seal those narrowly tailored portions of the Singer Exclusion Motion that include the Non-Party AppLovin Entities' non-public, sensitive, and confidential business and financial information, including specific revenue, sales, and cost information related to the Non-Party AppLovin Entities' distribution of a mobile game on the Google Play Store, the disclosure of which would likely provide competitors in the mobile gaming industry with a strategic and unfair business advantage over the Non-Party AppLovin Entities.  As evident from the parties' Motion Papers and other filings in this action, mobile game developers, like the Non-Party AppLovin Entities, operate in the highly competitive mobile gaming industry, typified by a very large number of market participants and relatively low entry costs.  The Non-Party AppLovin Entities' non-public, sensitive, and confidential business and financial information at issue in the parties' Motion to Seal could be used by competitors to extrapolate the Non-Party AppLovin Entities' specific revenues from the distribution of a mobile game on the Google Play Store, to deduce the Non-Party AppLovin Entities' individual or aggregate relative market share in certain mobile game categories, to determine the Non-Party

2

AppLovin Entities' user engagement and other statistics on the mobile game, including the success of

certain pricing models, and to calibrate their own pricing, mobile game distribution plans, and other

business methods to undercut the Non-Party AppLovin Entities' market position in the mobile gaming

industry.  In addition, the public has little, if any, interest in this non-party information and the competitive

harm that disclosure would create for the Non-Party AppLovin Entities outweighs any slight public interest

that may exist.  As further detailed in the chart below, these considerations strongly support sealing those

limited portions of the Singer Exclusion Motion that include this non-public, sensitive, and confidential

business and financial information of the Non-Party AppLovin Entities.

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer and the Memorandum and Points of Authorities In Support Thereof (MDL Dkt. No. 487) | AppLovin & Magic Tavern | Pages 255, 905, 919 | This non-public, sensitive, and confidential information discloses Magic Tavern's average monthly revenue, total annual revenue, and average in-app purchase prices from a mobile game distributed through the Google Play Store and compares that information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Magic Tavern and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to extrapolate Magic Tavern's or AppLovin's specific revenue from a mobile game distributed through the Google Play Store, relative market share in the mobile gaming industry, user engagement and other statistics on the mobile game, and to make changes to their own business models, including their pricing and distribution plans, to harm Magic Tavern's and AppLovin's competitive position in the mobile gaming industry. |

6.     As such, "good cause" and "compelling reasons" exist to seal those narrowly tailored

portions of the Singer Exclusion Motion that include non-public, sensitive, and confidential business and

financial information of the Non-Party AppLovin Entities.  As established above, the disclosure of this non-public, sensitive, and confidential business and financial information could place the Non-Party AppLovin Entities at a significant competitive disadvantage—in the already highly competitive mobile gaming industry—by allowing competitors in the mobile gaming industry to extrapolate the Non-Party AppLovin Entities' specific revenues from the distribution of a mobile game on the Google Play Store, to deduce the Non-Party AppLovin Entities' individual or aggregate relative market share in certain mobile game categories, to determine the Non-Party AppLovin Entities' user engagement and other statistics on the mobile game, including the success of certain pricing models, and to calibrate their own pricing, mobile game distribution plans, and other business methods to undercut the Non-Party AppLovin Entities' market position in the mobile gaming industry.  In addition, the public has little, if any, interest in this non-party information and the competitive harm that disclosure would create for the Non-Party AppLovin Entities outweighs any slight public interest that may exist.  These considerations strongly support sealing those limited portions of the Singer Exclusion Motion that include the Non-Party AppLovin Entities' non-public, sensitive, and confidential business and financial information.

7.    For the reasons set forth above and in the parties' Motion to Seal, I respectfully request that the parties' Motion to Seal be granted to the extent that it concerns the non-public, sensitive, and confidential business and financial information of the Non-Party AppLovin Entities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this Declaration in Washington, D.C., on July 6, 2023.

*/s/ Logan Pettigrew*
Logan Pettigrew

4

# EXHIBIT 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION

Case No. 3:21-md-02981-JD

DECLARATION OF KRISTOPHER KIEL IN
SUPPORT OF GOOGLE'S
ADMINISTRATIVE MOTION TO SEAL

I, Kristopher Kiel, declare as follows:

1.      I am currently Senior Corporate Counsel in the Legal Department at Nintendo of
America Inc. ("NOA").  I have worked at NOA since 2014.  NOA is one of many subsidiaries of
Nintendo Co., Ltd. ("NCL"), a corporation based in Japan.  Although NCL and each of its
subsidiaries (including NOA) are separate companies, for purposes of this declaration I will refer
to NCL and its subsidiaries together as "Nintendo."  The facts stated in this declaration are based
on my own personal knowledge and, if called as a witness, I could testify to those facts.

2.      In my current role at NOA, I am responsible for managing various legal matters
including litigation matters.  In my role I am aware of various agreements that Nintendo has with
third parties and confidential financial and business information associated with those agreements
and other business arrangements.  Based on my work experience, I am familiar with Nintendo's
business and strategies.  Nintendo keeps business strategy information confidential to protect
itself from competitive harm.  A significant part of my role entails being aware of and protecting
the confidentiality of that information.

3.      I understand that Parties have in the above-captioned legal case have submitted to
the Court papers in support of and in opposition to dispositive motions and to exclude expert
opinions (Daubert Motions) at Dkt. Nos. 480, 483, 484, 486, 487, 506, 508, 509, 512, 523, 524,
526, 527).  I also understand that Google is filing a motion to seal portions of Exhibits 6
submitted in support of Plaintiffs Opposition for Defendants' Motion for Partial Summary
Judgment (Dkt. 509) and Exhibit 2 submitted in support of Defendants' Notice Of Motion And

DECLARATION OF KRISTOPHER KIEL                    -1-

162779513.1

1   Motion To Exclude Merits Opinions Of Dr. Marc Rysman; Memorandum Of Points And

2   Authorities In Support Thereof (Dkt. 484).  I make this declaration in support of Google's

3   motion to seal.  I have reviewed certain portions Exhibit 6 (submitted in support of Dkt. 509),

4   including portions of GOOG-PLAY004146698.R at Page 11, portions of GOOG-

5   PLAY004146699.R at Page 12, portions of GOOG-PLAY004146701.R at Page 14, portions of

6   GOOG-PLAY004146702.R at Page 15, portions of GOOG-PLAY004146703.R at Page 16,

7   GOOG-PLAY-004146707.R at Page 20, portions of GOOG-PLAY-004146713.R at Page 26,

8   GOOG-PLAY004146729.R at Page 43, portions of GOOG-PLAY004146731.R at Page 44,

9   GOOG-PLAY004146732.R at Page 45, portions of GOOG-PLAY004146738.R at Page 51,

10  GOOG-PLAY004146739.R at Page 52, portions of GOOG-PLAY004146740.R at Page 53, and

11  portions of GOOG-PLAY004146746.R at Page 53.  I have also reviewed portions Paragraph 447

12  on Page 283 of Exhibit 2 (submitted in support of Dkt. 283).  Several portions of the documents I

13  reviewed refer to non-public information relating to Nintendo that is sensitive and highly

14  confidential.  The information would potentially cause competitive harm to Nintendo if disclosed

15  to the public.

16      4.      Several portions of the documents I reviewed relate to competitively sensitive

17  information about Nintendo's business relationship with Google.  Paragraph 447 (Page 283) of

18  Exhibit 2 (Dkt. 484-3) describes details of a confidential non-public arrangement between

19  Nintendo and Google. The text above the table, table heading, and logo on the page labeled

20  GOOG-PLAY004146698.R (Page 11), text above the table, table heading, and logo on the page

21  labeled GOOG-PLAY004146701.R (Page 14), text in the row referencing Nintendo on the page

22  labeled GOOG-PLAY004146703.R (Page 16), the table headers and row of the table referencing

23  Nintendo on the page labeled GOOG-PLAY004146732.R (Page 45), and the text above the table,

24  table title, and logo on the page labeled GOOG-PLAY004146739.R (Page 52) of Exhibit 23 (Dkt.

25  509-23) also describe information about a confidential non-public arrangement between Nintendo

26  and Google. The line referencing Nintendo on the page labeled GOOG-PLAY004146699.R (Page

27  12), text in the row referencing Nintendo on the page labeled GOOG-PLAY004146703.R (Page

28  16), title and footnote on the page labeled GOOG-PLAY-004146713.R (Page 26) and the text

1    referencing the relationship between Google and Nintendo on bottom of pages labeled GOOG-

2    PLAY004146729.R (Page 43), and GOOG-PLAY004146731.R (Page 44) of Exhibit 23 (Dkt.

3    509-23) include information that reflect whether Nintendo has executed contracts with Google

4    that contain certain substantive provisions.

5         5.    Nintendo treats its business arrangements with Google, including its contracts and

6    the specific provisions within them, as highly confidential.  Nintendo's agreements with Google

7    reflect sensitive information about Nintendo's business strategies, including strategies for

8    negotiation with partners and developing content and partnering with content platform operators

9    such as Google.  The provisions and details about their arrangement, terms, and negotiation are

10   not available to the public.  Disclosure of that information could lead to substantial competitive

11   harm to Nintendo because competitors could use the provisions in Nintendo's contracts with

12   Google to Nintendo's detriment.  Competitors seeking to make inroads with Google could copy

13   the contractual provisions that Nintendo negotiated with Google.  For example, competitors could

14   attempt to structure their deals to match the financial and term provisions of Nintendo's contract

15   with Google.  That would obviate any competitive advantage Nintendo obtained through its

16   negotiations with Google.  More broadly, competitors could adopt Nintendo's general approach

17   to working with content platform operators and, by doing so, gain ground on Nintendo in

18   competing to develop and distribute content.

19        6.    Many of the documents I reviewed include highly confidential financial

20   information.  The header of the table and row referencing Nintendo on the page labeled GOOG-

21   PLAY004146699.R (Page 12), table column titles and row referencing Nintendo on the page

22   labeled GOOG-PLAY004146703.R (Page 16), table headers and row referencing Nintendo on the

23   page labeled GOOG-PLAY004146707.R (Page 20), line referencing Nintendo on the page

24   labeled GOOG-PLAY004146729.R (Page 43), line referencing Nintendo on the page labeled

25   GOOG-PLAY004146731.R (Page 44), table header and line referencing Nintendo on the page

26   labeled GOOG-PLAY004146732.R (Page 45), and table headers and line referencing Nintendo

27   on the page labeled GOOG-PLAY004146746.R (Page 59) of Exhibit 23 (Dkt. 509-23) describe

28   confidential financial details reflecting terms and performance of the business relationship

DECLARATION OF KRISTOPHER KIEL          -3-

1 │ between Nintendo and Google.

2 │       7.      The revenue, value, cost, spend, rankings, bookings, margins, and share

3 │ information described in these documents is highly confidential and competitively sensitive

4 │ information. This type of financial and marketing information is non-public. Nintendo keeps this

5 │ information secret and confidential. Publicly disclosing revenue, value, cost, bookings, market,

6 │ and share information relating to Nintendo and its business dealings with Google would result in

7 │ competitive harm to Nintendo. Competitors could leverage that information to gain a more

8 │ thorough understanding of Nintendo's business and marketing strategies and priorities relating to

9 │ content development for Google and in general. Competitors could use that information against

10 │ Nintendo by taking steps to counteract Nintendo's business strategies and priorities, such as

11 │ Nintendo's approach to content development. The highly confidential financial and marketing

12 │ information would provide competitors with an advantage they would not have if the information

13 │ remained non-public.

14 │       8.      Some of the material I reviewed relates to Nintendo's relationship with Google or

15 │ other business partners. The slide title and logo on page labeled GOOG-PLAY004146701.R

16 │ (Page 14), language above the graphic on the page labeled GOOG-PLAY004146739 (Page 52),

17 │ and language on the page labeled GOOG-PLAY004146740.R (Page 53) describe Nintendo's

18 │ relationship and negotiation strategy with Google. The slide heading and table and column titles

19 │ and row referencing Nintendo on the page labeled GOOG-PLAY004146702.R (Page 15) and row

20 │ referencing Nintendo, its market position, and its ranking on the page labeled GOOG-

21 │ PLAY004146738.R (Page 42) reflect how Nintendo and Google view each other as partners and

22 │ their respective market positions. The table header and line referencing Nintendo on the page

23 │ labeled GOOG-PLAY004146732.R (Page 45) reflects sensitive details about Nintendo's

24 │ relationship with a third-party business partner.

25 │       9.      This non-public and highly confidential information relating to the relationship

26 │ between Nintendo and its business partners is competitively sensitive. Nintendo has developed a

27 │ relationship with its business partners over many years. If non-public and confidential

28 │ information about the Nintendo's relationship with its business partners were disclosed publicly, a

1  competitor could use that information to Nintendo's detriment by copying Nintendo's strategy for

2  dealing with its business partners, including Nintendo's approach to interacting and negotiating

3  with business partners and the unique combination of contractual arrangements entered into by

4  the two companies. That could lead to Nintendo receiving less attention from business partners

5  while other competing content developers receive more, which would result in competitive harm

6  to Nintendo. Thus, revealing details about the Nintendo's relationship other business partners

7  could potentially undermine Nintendo's competitiveness.

8

9      I declare under the penalty of perjury of the laws of the United States of America that the

10  foregoing is true and correct.

11      Executed this 6th day of July 2023 in Redmond, Washington.

12

13

14  _____
                            Kristopher Kiel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KRISTOPHER KIEL                     -5-

# EXHIBIT 14

1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5                            SAN FRANCISCO DIVISION

6

7   **IN RE GOOGLE PLAY STORE**           Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**

8                                          **DECLARATION OF KO CHIEHYUAN IN**
    THIS DOCUMENT RELATES TO:              **SUPPORT OF OMNIBUS MOTION TO**

9                                          **SEAL**
    *Epic Games, Inc. v. Google LLC, Case No.*

10  *3:20-cv-05671-JD*                     Judge James Donato

11  *In re Google Play Consumer Antitrust, Case*

12  *No. 3:20-cv-05761-JD*

13  *Utah v. Google LLC, Case No. 3:21- cv-*
    *05227-JD*

14
    *Match Group, LLC. et al. v. Google LLC et al.,*

15  Case No. 3:22-cv-02746-JD

16

17       I, KO CHIEHYUAN, declare as follows:

18       1.      I am currently CEO at Qingniao Interactive Entertainment ("Qingniao"). I have

19
    been employed by Qingniao since 2020.  Over the course of my employment at Qingniao, I have

20
    acquired personal knowledge of Qingniao's practices and procedures concerning the maintenance

21
    of confidentiality of its strategic, business and financial information.

22

23       2.      I submit this declaration pursuant to Civil Local Rule 79-5.  I submit this

24
    declaration in support of the Parties' joint omnibus sealing motion in In Re Google Play Store

25
    Antitrust Litigation, Case No. 3:21-md-02981-JD.  The contents of this declaration are based on

26
    my personal knowledge, and if called as a witness in this matter, I could and would testify

27
    thereto.

28

3.      Qingniao follows a strict practice that requires confidential treatment of all internal non-public financial information; confidential commercial proposals to third parties and confidential agreements with third parties; internal business analyses of consumer spending and revenue, market conditions, and opportunities; and internal, future strategic business plans. In my experience and to the best of my knowledge, Qingniao does not disclose such internal information to third parties except under the strictest confidentiality protection and for strategic business collaborations.

4.      Among other things, the disclosure of these materials could reveal highly sensitive non-public financial information, significantly harm Qingniao's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place Qingniao at a disadvantage with competitors who could use Qingniao's confidential information to their advantage in competition with Qingniao. These materials therefore have economic value from not being generally known to Qingniao's competitors, counterparties, or the general public.

5.      To the best of my knowledge, the following information is highly sensitive and confidential, and derives from confidential materials generated during important business collaborations between Qingniao and Google.  As described in detail below, Qingniao has both good cause and compelling reasons to seal this confidential information to, among other things, avoid competitive harm to both Qingniao and third parties, avoid potentially misleading investors, and prevent competitors and potential business partners from using the information against Qingniao in future negotiations. Text covered in <u>blue</u> is information Qingniao requests to be sealed.

**<u>Specific Information to Be Sealed</u>**

6.      Exhibit A contains two pages that contain information from various documents produced by Google in this litigation. The first page is page 255 of Exhibit 3c to Expert Report of

Dr. Gregory K. Leonard and it is Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities In Support of Thereof (MDL ECF 487) in Consumer Plaintiff's Class Certification Motion. The second page is page 872, Exhibit 36c to the same Expert Report. The redacted portion is information Qingniao requests to be sealed.

7.      The first page of Exhibit A contains one row derived from various documents produced by Google containing sensitive financial or strategic Qingniao information that may harm Qingniao's business interests if revealed to the public.  The redacted portion is information (row 17 of this page) Qingniao requests to be sealed.  All the information is financial in nature, including SKU Count, average pricing and average consumer spending on Qingniao's products. Qingniao does not publicly disclose such information, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Qingniao. This information has never been disclosed publicly, and disclosure would severely and adversely impact Qingniao's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Qingniao in marketing and in negotiations.

8.      The second page of Exhibit A contains List Price, Net Price and Service Fee Rate for Qingniao's app from 2020 to 2022. Additionally, there is a table that displays the Monthly SKU price for our product. The redacted part (most of the table) is information Qingniao requests to be sealed.  All the information is financial in nature, or the publishing performance for Qingniao's products. Qingniao does not publicly disclose such information, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Qingniao. This disclosure would severely and adversely impact Qingniao's ability to negotiate agreements in the future. If revealed to competitors and

potential business counterparties, they could use this non-public and confidential information to

disadvantage Qingniao in marketing and in negotiations.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct and that this declaration was executed on July 6, 2023 in Xin Bei City, Taiwan.

Respectfully submitted,

Dated: July 6, 2023                     By:

                                        *Signature*   KO CHIEH YUAN

                                        KO CHIEHYUAN

Exhibit A

Exhibit A-1

Exhibit 3e

Comparison of New and Existing IAPs of Apps Associated with the Top 100 IAPs

| | Comparison of New vs Existing SKUs (July 2021 – May 2022) | | | | | | Comparison of New SKUs 2020 (July – Dec.) vs 2021 (July – Dec.) | | | | | | | |
| | SKU Count | | Avg List Price | | Avg Monthly Consumer Spend | | New SKU Count | | Total New SKU Consumer Spend | | New SKU Consumer Spend (% of Total IAP Spend for the App) | | Consumer Spend (%) per New SKU | |
| App Package Name | Existing | New | Existing | New | Existing | New | 2020 | 2021 | 2020 | 2021 | 2020 | 2021 | 2020 | 2021 |

Row 17 →

**Notes:**
[1] The top 100 IAP SKUs analyzed in Exhibit 2c are associated with 40 apps, among which only 31 had new SKUs since July 2021.
[2] The average list prices and consumer spend are calculated based on data from July 2021 to May 2022. For each app, the average list price of existing (new) SKUs is calculated as the average across the post-July 2021 average prices of each existing (new) SKU of the app; the average monthly consumer spend of existing (new) SKUs is calculated the average across the post-July 2021 monthly average final consumer spend of each existing (new) SKUs of the app.
[3] "Existing" SKUs are SKUs which had their first sales anytime before July 2021 (including before July 2020), and had non-zero sales during both July 2020 – June 2021 and July 2021 – May 2022.
[4] "New" SKUs are SKUs which had their first sales during the time period indicated by the panel title and column year (i.e., July 2021 – May 2022, July – December 2020, or July – December 2021 respectively).
[5] "Consumer Spend (%) per new SKU" shows the average percentage of final consumer spend accounted for by one new SKU, i.e., "New SKU Consumer Spend (%)" divided by the number of new SKUs.
[6] Some apps launched new SKUs in the period of July 2021 – May 2022 but outside the time window of the right panel analysis (July 2021 – December 2021), thus are shown as having no new SKU in 2021 in the right panel.

**Source:**
[1] Google Play transactions data: GOOG-PLAY-007208251; GOOG-PLAY3-000015260.

Non-Party Highly Confidential – Outside Counsel Eyes Only                                Expert Report of Dr. Gregory K. Leonard

255

DECL. OF KO ISO OMNIBUS MOT. TO FILE UNDER SEAL MDL CASE NO. 321-MD-02981-JD

1

Exhibit A-2

2

3

4

5

6

7

8

9

10

11



Notes:
[1] Rank (based on consumer spend during 2020.07 - 2022.05) = 27.
[2] Price change before and after July 2021: no change in the list price, no change in the net price.
[3] Pass-through rate predicted by Dr. Singer's approach: 87% (for the corresponding app category);
99% (for the corresponding app developer).

12

13

Non-Party Highly Confidential – Outside Counsel Eyes Only          Expert Report of Dr. Gregory K. Leonard

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 21-md-02981-JD **DECLARATION OF DAN NABEL IN SUPPORT OF NON- PARTY RIOT GAMES' REQUEST TO MAINTAIN ITS HIGHLY CONFIDENTIAL INFORMATION UNDER SEAL AND IN SUPPORT OF OMNIBUS SEALING MOTION** |

I, Dan Nabel, declare as follows:

1.      I am the Associate General Counsel of non-party Riot Games ("Riot").  I have been employed by Riot in the Legal Department since 2015.  Based on my responsibilities and experience at Riot I am familiar with Riot's treatment and protection of confidential information, including highly sensitive financial information and deal terms.  I am over the age of 18 and competent to testify to the matters in this Declaration. I make this Declaration on the basis of my personal knowledge.

2.      Counsel for Google in the above-captioned MDL proceeding has informed Riot that the following filings contain Riot's confidential information currently under seal, designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Non-Party Highly Confidential - Outside Counsel Eyes Only" in accordance with the operative protective order.  The items are listed below with a generalized description to maintain their confidentiality, given that this Declaration will be filed publicly:

a. Dkt. No. 487: Exhibit 1 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of D. Hal J. Singer; Memorandum and Points of Authorities in Support Thereof.

1  Page 82, Paragraph 167 and Page 104-105, Paragraph 219: contains purported financial terms of

2  agreements.

3          b.  Dkt. No. 484: Exhibit 4 to Defendants' Notice of Motion and Motion to Exclude

4  Merits Opinions of Dr. Marc Rysman; Memorandum of Points and Authorities in Support

5  Thereof.  Page 128, Paragraph 233: contains purported terms of agreements.

6          c.  Dkt. No. 483:  Defendants' Notice of Motion and Motion for Partial Summary

7  Judgment.  Exhibit 12: contains purported financial terms of agreement.

8          3.      The information purporting to describe the financial terms and benefits to Riot

9  from agreements with Google is highly confidential and proprietary information that should be

10 maintained under seal. This information is not generally available to employees of Riot, and Riot

11 takes steps to limit the disclosure of the information to those employees whose job responsibilities

12 require it.  In addition, this highly confidential and proprietary information, if publicly disclosed,

13 could be utilized by Riot's competitors to Riot's commercial detriment in negotiations and future

14 business transactions.  This is especially true because the descriptions of the financial terms in the

15 above-referenced documents may be inaccurate and/or misleading without further context, which

16 context also is highly confidential and non-public.

17         4.      The sealing of Riot's confidential business information is necessary to prevent

18 these competitive harms to non-party Riot.  There is no less restrictive alternative that would be

19 sufficient to prevent competitive harm to Riot from the disclosure of Riot's confidential

20 information.  Moreover, the sealing request is narrowly tailored to the confidential business

21 information of Riot.

22

23         I CERTIFY UNDER PENALTY OF PERJURY that the foregoing is true and correct.

24         EXECUTED at Los Angeles, California this 10th day of July, 2023

25

26 

27 Darci Taber

28

# EXHIBIT 16

1  ALBERT J. BORO, JR. (CA Bar #126657)
   *ajboro@boro-law.com*
2  BORO LAW FIRM
   345 Franklin Street
3  San Francisco, CA 94102
   Telephone: (415) 621-2400
4  Facsimile: (415) 276-5870

5
   Attorneys for Non-Party
6  SMULE, INC.

7

8

9

10

11

12

13

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17

18  **IN RE GOOGLE PLAY STORE**              Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
19                                           **DECLARATION OF BILL BRADFORD**
20  THIS DOCUMENT RELATES TO:                **OF NON-PARTY SMULE, INC. IN**
                                             **SUPPORT OF OMNIBUS MOTION TO**
21  *Epic Games, Inc. v. Google LLC, Case No.*  **SEAL SMULE CONFIDENTIAL**
    *3:20-cv-05671-JD*                       **INFORMATION IN DISPOSITIVE AND**
22                                           ***DAUBERT* MOTIONS**
23  *In re Google Play Consumer Antitrust, Case*
    *No. 3:20-cv-05761-JD*                   Judge James Donato
24
    *Utah v. Google LLC, Case No. 3:21- cv-*
25  *05227-JD*

26  *Match Group, LLC. v. Google LLC,* Case No.
    *3:22-cv-02746-JD*
27

28
                                                                          1

I, Bill Bradford, declare as follows:

1.      I am the President of non-party Smule, Inc., a Delaware corporation ("Smule").  In my role as President, I am familiar with and oversee Smule's business operations, revenue, marketing, and business development.  I have personal knowledge of the matters stated in this declaration, unless I have stated them on information and belief, in which case I believe them to be true.  I could and would provide competent testimony to the matters stated in this declaration.

2.      Smule is a privately held U.S. company that has developed a leading music application (the "Smule App") for the Apple IOS and Google Android platforms.  The Smule App is a music app that allows users to sing songs karaoke-style with other users in the Smule App.  Smule was incorporated in 2008 and released the Smule App on the IOS platform in 2012 and on the Android platform in 2013.  Smule has a team of programmers working on updates, improvements, and security enhancements for the Smule App.  Over the years, Smule has released new product features to the Smule App, including introducing in 2018 "Live Jam," which allows a user to sing with another user anywhere in the world in real time, and in 2020, "Styles," a creative tool with audio and video filters that enable a user to modify the expression of their musical renditions.

3.      I am informed and believe, and thereon allege, that the parties to the MDL litigation have filed redacted versions of dispositive motions and *Daubert* motions on April 20, 2023, and responses and replies thereto on May 18 and June 8, 2023, and have filed unredacted copies of such pleadings provisionally under seal, pursuant to the MDL Court's Order, filed April 21, 2023 (MDL Dkt. #496).   I am further informed and believe, and thereon allege, that certain of the parties' pleadings discuss Smule confidential business information.  Smule has not been given access to the unredacted pleadings, which appear to contain confidential business information of

Smule and other entities.  Instead, the parties have provided Smule with excerpts of pleadings in which Smule's confidential business information is discussed or referenced:

(a) Exhibit 2 (Expert Report of Dr. Marc Rysman, dated Oct. 3, 2022) to the Declaration of Rishi P. Satia in support of Defendants' Motion to Exclude Merits Opinions of Dr. Marc Rysman (MDL Dkt. #484);

(b) Exhibit 8 (document with Bates range GOOG-PLAY-007325722-751) to the Declaration of Joseph A. Reiter in support of the Match Plaintiffs' Motion for Partial Summary Judgment on Google's Counterclaims (MDL Dkt. #486);

(c) Exhibit 1 (Updated Merits Report of Hal J. Singer, Ph.D., dated Oct. 19, 2022 [with signature page dated Oct. 3, 2022]) to the Declaration of Justin P. Raphael in support of Defendants' Motion to Exclude Merits Opinion of Dr. Hal J. Singer (MDL Dkt. #487);

(d) Exhibit 16 (document with Bates range GOOG-PLAY-004684227-239) and Exhibit 18 (document with Bates range GOOG-PLAY-007759245-270) to the Declaration of Kyle W. Mach in Support of Defendants' Opposition to Match Plaintiffs' Motion for Partial Summary Judgment (MDL Dkt. #506); and

(e) Exhibit 1 (Updated Merits Report of Hal J. Singer, Ph.D., dated Oct. 3, 2022) and Exhibit 13 (document with Bates range GOOG-PLAY-000579868.R to GOOG-PLAY-000579884.R) to the Declaration of Lee M. Mason in support of Consumer and State Plaintiffs' Opposition to Defendants' Motion to Exclude Merits Opinions of Dr. Hal J. Singer (MDL Dkt. #508).

4.     Based on my review of those excerpts of pleadings, all of them discuss or reveal Smule's confidential business information that should not be publicly disclosed.  Making those excerpts public would reveal Smule's confidential contractual terms and agreements with Google, matters discussed in confidential business negotiations between Smule and Google, and Smule's

1    confidential financial information, including revenue and estimated revenue of Smule and

2    payments and financial terms between Smule and Google.

3        5.    As a privately held company, Smule keeps its financial information, including

4    revenue, revenue estimates, fees and expenses paid, and payments between it and its business

5    partners, as well as its non-financial proprietary business information, such as negotiations and

6    discussions with its business partners and agreement terms, confidential and limits dissemination

7    to persons who have a need to know that information as part of their relationship with Smule.

8    Smule has a non-disclosure agreement with Google, and it treats the non-public business

9    information concerning its business relationship with the Google Play Store as Smule confidential

10   business information.  Smule does not make this business information public and takes reasonable

11   efforts to keep it confidential in order to protect Smule's competitive position in the selling of

12   music apps.

13       6.    Disclosing Smule's confidential financial information and business information

14   concerning the negotiation and terms of its business agreements with Google would cause

15   significant competitive harm to Smule.  Public disclosure of Smule's confidential financial

16   information on revenue and revenue estimates would give Smule's suppliers an advantage in

17   contract negotiations, which they could use to extract price increases from Smule and would put

18   Smule at a competitive disadvantage in those negotiations compared to its current position.

19   Public disclosure of Smule's confidential business information on the terms of its business

20   agreements with Google and negotiations concerning those agreements would put Smule at a

21   competitive disadvantage vis-a-vis its competitors, compared to its current position, because they

22   could use it to assess Smule's business strategies and relationships and to compete against Smule

23   and refine their business arrangements based on Smule's agreements.  This would give Smule's

competitors an unearned competitive advantage that could impact Smule's economic performance and ability to compete effectively.

7.     The sealing of Smule's confidential business information is necessary to prevent these competitive harms to non-party Smule.  There is no less restrictive alternative that would be sufficient to prevent competitive harm to Smule from disclosure of Smule's confidential business information, and Smule's request to seal its information is narrowly tailored to its confidential business information.

8.     This request to seal Smule's confidential business information is consistent with Northern District of California Civil Local Rule No. 79.5 governing the filing of documents under seal in civil cases.  As explained in this declaration, (a) Smule has a legitimate private interest in keeping the information confidential that warrants sealing; (b) Smule will suffer competitive injury and be put at a competitive disadvantage with its competitors and suppliers if sealing is denied, and (c) a less restrictive alternative to sealing is not sufficient and Smule's sealing request is narrowly tailored to the confidential business information of Smule.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I have executed this declaration on July 6, 2023, at Foster City, California.

*Bill Bradford*
Bill Bradford (Jul 6, 2023 18:13 PDT)
Bill Bradford

DECL. OF BILL BRADFORD ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

# Declaration B Bradford-Smule - Google Play Store Antitrust Litig 7-06-2023-execution ver

Final Audit Report                                                    2023-07-07

| | |
|---|---|
| Created: | 2023-07-07 |
| By: | Albert Boro (ajboro@aol.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZsBXKWhuO6_to9LxmDuDEPbDoLyLm6Ye |

## "Declaration B Bradford-Smule - Google Play Store Antitrust Litig 7-06-2023-execution ver" History

📄 Document created by Albert Boro (ajboro@aol.com)
2023-07-07 - 1:06:03 AM GMT- IP address: 76.126.247.247

📧 Document emailed to bill@smule.com for signature
2023-07-07 - 1:07:08 AM GMT

📄 Email viewed by bill@smule.com
2023-07-07 - 1:12:31 AM GMT- IP address: 66.249.84.75

✍️ Signer bill@smule.com entered name at signing as Bill Bradford
2023-07-07 - 1:13:01 AM GMT- IP address: 98.210.72.46

✍️ Document e-signed by Bill Bradford (bill@smule.com)
Signature Date: 2023-07-07 - 1:13:03 AM GMT - Time Source: server- IP address: 98.210.72.46

✅ Agreement completed.
2023-07-07 - 1:13:03 AM GMT

**Adobe Acrobat Sign**

# EXHIBIT 17

1  JOHN F. COVE, JR. (SBN 212213)
       john.cove@shearman.com
2  PATRICK HEIN (SBN 254431)
       patrick.hein@shearman.com
3  SHEARMAN & STERLING LLP
   535 Mission Street, 25th Floor
4  San Francisco, CA  94105-2997
   Telephone:  415.616.1100
5  Facsimile:   415.616.1199

6  *Attorneys for Sony Corporation of America*

7

8              UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  IN RE GOOGLE PLAY CONSUMER          Case No. 3:20-CV-05761-JD

13  ANTITRUST LITIGATION
                                        **DECLARATION OF DAVID JACOBS
14                                      PURSUANT TO LOCAL RULE
                                        79-5(e)(1) IN SUPPORT OF SEALING
15                                      CERTAIN CONFIDENTIAL
                                        INFORMATION**

16

17

18

19

20

21

22

23

24

25

26

27

28

I, David Jacobs, hereby declare as follows:

1.     I am currently Vice President, Global Alliances & Strategy at Sony Corporation of America.  Sony Corporation of America is one of the Sony family of companies that are subsidiaries of Sony Group Corporation.  I will refer to Sony Group Corporation along with its subsidiaries collectively as "Sony" in this declaration.  One of my responsibilities is to serve as a liaison for Sony with regard to various contracts and relationships that Sony has with Google.  Based on my experience, I am familiar with the trade secrets, contracts, and other Sony confidential and proprietary information that I discuss below, and I am making this declaration in support of sealing this material as described below.  I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to these matters.

2.     I understand that counsel for Google in this litigation has provided Sony with certain excerpts from filings in the above-named litigation.  I have reviewed those excerpts.  Some of this material relates to agreements that Sony subsidiary Sony Mobile Communications, Inc. ("Sony Mobile") negotiated with Google relating to pre-loading and uses of Google technologies on Sony-branded mobile phones and certain data reflecting activations under those agreements. The terms and conditions of these agreements are individually negotiated, contain Sony Mobile's highly sensitive, confidential, competitively valuable information, and are held in strict confidence because disclosure of these terms and conditions to third parties, such as Sony Mobile's competitors in the highly competitive mobile phone business or actual or potential business partners, such as software developers or phone distributors, could cause competitive harm to Sony Mobile. In order to avoid this competitive harm to Sony Mobile, I request that this material as described in paragraphs 3 and 4 below and as referenced in paragraph 5 below remain sealed.

3.     Pages 52 and 53 of Appendix D to Defendant's Notice of Motion and Motion to Exclude Merits Opinions of Dr. Marc Rysman; Memorandum Of Points And Authorities In Support Thereof (MDL ECF 484) contain specific details of the terms of a contract between Google and Sony Mobile.  These terms are highly sensitive, confidential, competitively valuable information, and are held in strict confidence because disclosure of these terms and conditions to third parties, such as Sony's competitors in the highly competitive mobile phone business or actual

1  or potential business partners, such as software developers or phone distributors, could cause

2  competitive harm to Sony.  Therefore, I request that the entire row of the chart beginning on page

3  52 and continuing to page 53 be sealed.

4          4.       Page 123, Exhibit 10, of Defendant's Notice of Motion and Motion to Exclude

5  Merits Opinions of Dr. Marc Rysman; Memorandum Of Points And Authorities In Support

6  Thereof (MDL ECF 484) is a slide that contains information regarding both the negotiated

7  contractual obligations of Sony Mobile and what appear to be the actual activations under the

8  Sony/Google contracts. Both the contract terms and the data reflecting activations are highly

9  sensitive, confidential, competitively valuable information, and are held in strict confidence

10  because disclosure of this information to third parties, such as Sony's competitors in the highly

11  competitive mobile phone business or actual or potential business partners, such as software

12  developers or phone distributors, could cause competitive harm to Sony.  Therefore, I request that

13  the row relating to Sony in the right-hand box on Exhibit 10 and the data relating to Sony in the

14  left-hand chart on Exhibit 10 remain sealed.

15          5.       I understand that Google is submitting a request to seal certain other portions of

16  these materials that pertain to certain confidential, highly competitively sensitive aspects of the

17  agreements with Sony Mobile.  I have not specifically described those materials in this

18  declaration, which I understand will be publicly filed, because describing them in a public

19  document would itself necessarily reveal competitively sensitive information relating to Sony

20  Mobile and thus defeat the purpose of the sealing request.  Nonetheless, Sony supports Google's

21  motion to seal those materials because disclosure of those materials would cause substantial harm

22  to Sony Mobile's competitive position as explained above.

23          I declare under the penalty of perjury that the foregoing is true and correct to the best of

24  my knowledge.

25

26  Executed on this 6th day of July, 2023.

27                                                    _____

28                                                    DAVID JACOBS

DECLARATION OF DAVID JACOBS                 3                 CASE NO. 3:20-CV-05761-JD

# EXHIBIT 18

1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF CALIFORNIA

3   SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>IN RE GOOGLE PLAY Store Antitrust LITIGATION, CASE No. 21-Md-02981-JD<br><br>IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION, CASE No. 3:20-Cv-05761-JD<br><br>STATE OF UTAH, ET AL. v. GOOGLE LLC ET AL., CASE No 3:21-Cv-05227-JD<br><br>Match Group, LLC. ET AL. v. Google LLC et al., Case No. 3:22-cv-02746-JD<br><br>EPIC GAMES, INC. v. GOOGLE LLC ET AL., CASE. NO. 3:20-Cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>DECLARATION OF Vivian Zhang IN SUPPORT OF OMNIBUS MOTION TO SEAL<br><br>Judge James Donato |

4   I, Vivian Zhang, declare as follows:

5   1. I am the Director of Revenue Operations at SKYWORK AI PTE.
6   LTD.(formerly named as STAR SHINE ENTERTAINMENT PTE. LTD. ), which is
7   the operator of application StarMaker which formerly operated by StarMaker
8   Interactive Inc (collectivly "StarMaker"). I have held this position since 2016.
9   Through my employment, I am familiar with the overall operation performance of
10  StarMaker, including revenue and expenses associated with the applications. Except
11  where otherwise indicated, I have personal knowledge of the matters stated herein.

12  2. I submit this declaration in support of the Parties' joint omnibus sealing
13  motion in In Re Google Play Store Antitrust Litigation, Case No. 3:21-md-02981-JD.
14  The sealed material cited in Exhibit 8 of MATCH PLAINTIFFS' MOTION FOR
15  PARTIAL SUMMARY JUDGMENT ON GOOGLE'S COUNTERCLAIMS (MDL
16  ECF 486) reveals confidential information about StarMaker and StarMaker's revenue
17  and monetizing performance.

18  3. I understand the importance of transparency in legal proceedings, but it is
19  equally essential to keep the proprietary information of StarMaker remain under seal.
20  I believe that keeping this information confidential is consistent with N.D. Cal. Local

21  Rule 79-5, which considers the necessity to balance public interest with the protection
22  of private and proprietary information. While under no circumstances Starmaker
23  acknowledges or verifies the authenticity or accuracy of the above-referenced
24  information, and such disclosure is considered strictly prohibited as per StarMaker's
25  internal confidentiality policy. Additionally, such disclosure will result in StarMaker's
26  violations of its confidential obligation under the agreement entered into with third
27  parties.

28      4. Moreover, comparing the monetizing level between Apple and Google,
29  could impact our relationships with those distribution channels and other stakeholders,
30  including customers, investors, and business partners, which will impact StarMaker's
31  ongoing and future business negotiations.

32      5. Given the confidential nature of the revenue data and adverse impact it may
33  cause if we disclose the monetizing performance within different distribution channels,
34  I respectfully request the court to exercise utmost discretion in handling this
35  information.

36      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the
37  foregoing is true and correct.

38      Respectfully submitted,

39  Dated: Singapore          By: _____

40      July 7, 2023              Vivian Zhang

# EXHIBIT 19

1

2

3

4

5

6

7

8

9

10

11

12

13 **UNITED STATES DISTRICT COURT**

14 **NORTHERN DISTRICT OF CALIFORNIA**

15 **SAN FRANCISCO DIVISION**

16

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | ) Case No. 3:21-md-02981-JD ) |
| | ) **DECLARATION OF STEVEN REEDER IN** |
| THIS DOCUMENT RELATES TO: | ) **SUPPORT OF THE PARTIES' OMNIBUS** ) **SEALING MOTION** |
| *In re Google Play Store Antitrust Litig.* Case No. 3:21-md-02981-JD | ) ) The Honorable James Donato ) |
| *In re Google Play Consumer Antitrust Litig.* Case No. 3:20-cv-0561 | ) ) ) |
| *Epic Games, Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | ) ) ) |
| *State of Utah et al. v. Google LLC et al.,* Case No. 3:21-cv-05227-JD | ) ) ) |
| *Match Group, LLC et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | ) ) ) |

- 1 -

I, Steven Reeder, declare as follows:

1.      I am Global Antitrust Lead for TikTok Inc. ("TikTok").  I joined TikTok in 2021.  In my current role at TikTok, I am responsible, in part, for TikTok's antitrust litigation matters, including document collection and production related to antitrust litigation and the preservation of confidentiality of competitively sensitive information.  I make this Declaration on my own personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.      Pursuant to Civil Local Rule 79-5, the Stipulated Second Amended Supplemental Protective Order Governing Production of Protected Non-Party Materials entered by the Court on May 25, 2022 (MDL Dkt. No. 248) (the "Stipulated Protective Order"), the Stipulated Order Modifying Sealing Procedures Relating to Dispositive and *Daubert* Motions dated April 21, 2023 (MDL Dkt. No. 496), and the Standing Order for Civil Cases before Judge James Donato, I submit this Declaration on behalf of Non-Party TikTok.

3.      I understand from Counsel for Google LLC ("Google") that certain information related to in-app purchases made on TikTok has been included in the Expert Report of Dr. Gregory K. Leonard, submitted as Exhibit 2 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer, and the Memorandum and Points of Authorities in Support Thereof (MDL Dkt. No. 487) ("Motion to Exclude Dr. Singer").  I further understand from Counsel for Google that the portions of Exhibit 2 that reference TikTok's information have been previously designated "Non-Party Highly Confidential – Outside Counsel Eyes Only" pursuant to the terms of the Stipulated Protective Order.

4.      For the following reasons, TikTok respectfully seeks the sealing of the row beginning "com.zhiliaoapp.musically" on page 255 (Exhibit 3c) of the Expert Report of Dr. Gregory K. Leonard, submitted as Exhibit 2 to the Motion to Exclude Dr. Singer.  This narrowly tailored portion of the motion papers includes non-public, sensitive, and confidential business and financial information of Non-Party TikTok.  Specifically, this row reflects the volume and value of in-app purchases over time, differentiated between existing and new in-app products,

1  and compares TikTok's in-app purchases to in-app purchases made in competing apps.   I

2  understand from Counsel for Google that this information was derived from data Google possesses

3  through its Play Store and that Google maintains such data as confidential, non-public, and

4  competitively sensitive.   Disclosure of this information could place Non-Party TikTok at a

5  competitive disadvantage by allowing competitors—including those apps that support in-app

6  purchases—to deduce the volume or value of TikTok's in-app purchases and the relative success of

7  new and established in-app products during certain time periods.   Such deductions could enable

8  TikTok's competitors to make changes to their own business models, including their in-app

9  products and in-app sales practices, to harm TikTok's competitive position.   This harm would be

10  compounded by the fact that TikTok is a private company which is not obligated to make such

11  financial disclosures, and the sharing of such data could impact TikTok's valuation. Furthermore,

12  the public has little, if any, interest in this non-party information and the competitive harm that

13  disclosure would create for Non-Party TikTok outweighs any slight public interest that may exist.

14  As such, there exists good cause and compelling reasons for sealing this narrowly tailored portion

15  of the Motion to Exclude Dr. Singer.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

16  1092, 1097 (9th Cir. 2016) (finding "compelling reasons" for sealing a "source of business

17  information," the disclosure of which "might harm a litigant's competitive standing." (internal

18  quotations and citations omitted)).

19      I declare under penalty of perjury and the laws of the United States that the foregoing is true

20  and correct and that I executed this Declaration on June 30, 2023, in New York, New York.

21

22  DATED: July 1, 2023

23                                              By: _____

24                                                  Steven Reeder
                                                    TikTok, Inc.

25

26

27

28

# EXHIBIT 20

1  DWIGHT C. DONOVAN (SBN 114785)
   ddonovan@foxrothschild.com
2  FOX ROTHSCHILD LLP
   345 California Street, Suite 2200
3  San Francisco, CA 94104-2670
   Telephone:    415.364.5540
4  Facsimile:     415.391.4436

5  Attorneys for Non-Party Valve Corporation

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  **IN RE GOOGLE PLAY STORE**          Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
12                                        **DECLARATION OF CHRISTOPHER
                                          SCHENCK IN SUPPORT OF**
13  THIS DOCUMENT RELATES TO:             **DEFENDANTS' INTERIM
                                          ADMINISTRATIVE MOTION TO SEAL**
    *In Re Google Play Consumer Antitrust* **MOTION TO EXCLUDE TESTIMONY OF**
14  *Litigation*, Case No. 3:20-CV-05761-JD **DR. HAL J. SINGER AND RELATED
                                          DOCUMENTS**
15  *State of Utah et al. v. Google LLC et al.*,
    Case No. 3:21-cv-05227-JD
16

17        I, Christopher Schenck, declare and state as follows in support of Defendants' Interim

18  Administrative Motion to Seal Motion to Exclude Testimony of Dr. Hal J. Singer and Related

19  Documents (Dkt. # 489):

20        1.      I am in-house counsel at Valve.  I am competent to testify and have personal

21  knowledge of the facts stated below.

22        2.      Valve is a private company headquartered in Bellevue, Washington with

23  approximately 350 employees that develops PC video games.  Valve also operates Steam, an

24  online platform that lets users purchase and play PC games on their laptops and desktops.  Over

25  50,000 PC games are available on Steam, over 99% of which were made by third parties other

26  than Valve.

27        3.      Valve is a privately held company with no outside shareholders or lenders.  It

28  is not subject to public regulatory reporting and auditing requirements.  Valve does not publicly

disclose its sales and revenue information or its business strategies. Valve derives a significant value from the confidentiality of such information. In addition, because third party games are available on Steam, Valve has a large amount of confidential third-party sales and revenue information, which Valve does not publicly disclose in order to protect the third parties' confidentiality. Our agreements with these third parties require us to keep this information confidential.

4.     In response to third-party discovery subpoenas in this matter and pursuant to the Stipulated Protective Order entered on May 12, 2021 (Dkt. # 34), Valve produced numerous documents (455 pages), including documents containing highly confidential sales and financial information, highly sensitive information regarding Steam, and competitively-valuable information. Some of the information produced was not created or kept by Valve in the ordinary course of business in the form requested by Epic Games, including the information sought to be sealed here. Instead, Valve was required to specially query and combine information from various internal Valve sources to compile it. All such information is proprietary to Valve, with restricted and controlled access (including through password protection) within Valve to preserve the confidentiality of this information.

5.     Valve requests sealing of two portions of the following document, which discloses Valve's confidential information:

| Document | Portion to be Sealed |
|---|---|
| Exhibit 6 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Hal J. Singer; Memorandum and Points of Authorities in Support of Thereof (Dkt. 487-7) | • Page 118, Paragraph 264, second sentence from "evidence indicates . . ." to "This indicates that . . ." <br><br> • Page 119, Appendix Table A9, Row, Leonard, Gentzkow, Tucker, Column, Flaw(s) & Limitations(s) from "Steam revenue . . ." to "no evidence that . . ." |

DocuSign Envelope ID: B1D4C011-3964-4975-ABF4-F31569A55B96

6.      The portions mentioned in the table above from Exhibit 6 to Defendants' Motion to Exclude Merits Opinions of Dr. Hal J. Singer (Dkt. 487)[1] disclose and discuss Valve's highly confidential sales and revenue information, as well as key competitive information about where those revenues occur or are concentrated.  This information was produced by Valve under a "Highly Confidential – Attorneys' Eyes Only" designation.  Valve does not disclose or share this information outside the company, particularly to any competitor.  Valve has chosen to stay private in part to avoid the intrusiveness and competitive harm that would come from publicly disclosing and reporting exactly this type of information.   Valve derives significant value from keeping this information confidential, and zealously protects its confidentiality.  Public disclosure of this information would harm Valve's competitive standing as it would give significant and unfair insight into Valve's internal operations, financials, and business strategy. Valve would face substantial harm to its competitive standing and to its business operations.

7.      Valve has expended significant resources and implemented strict measures to prevent disclosure of the confidential information contained in the document listed above, including by storing such information under password protection on internal Valve servers, limiting access to certain of the information described above to certain Valve employees with a specific need to know, and not making such information publicly available (including to any outside investors or lenders, which Valve does not have). The confidential Valve information contained in this document would not be available in the ordinary course of business to Valve's competitors or the public, and it would put Valve at a competitive disadvantage if those portions of Exhibit 6 to Defendants' Motion to Exclude Merits Opinions of Dr. Hal J. Singer (Dkt. 487) were made part of the public record in this matter.

//

//

//

//

---

[1] The unredacted version of this document is filed under seal at Dkt. 489-5.

1          I declare under penalty of perjury that the foregoing is true and correct.  Executed on

2    06/28/23 at Bellevue, Washington.

3

4                                                      Christopher Schenck

# EXHIBIT 21

1    Judith A. Zahid
     ZELLE LLP
2    555 12th Street, Suite 1230
     Oakland, CA 94607
3    Telephone: (415) 693-0700
4    jzahid@zellelaw.com

5    *Attorneys for Non-Party Verizon*

6

7               **UNITED STATES DISTRICT COURT**

8             **NORTHERN DISTRICT OF CALIFORNIA**

9                **SAN FRANCISCO DIVISION**

10

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | CASE NO. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF JUDITH A. ZAHID IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL (RE: CONFIDENTIAL INFORMATION OF NON-PARTY VERIZON)** |
| *In re Google Play Consumer Antitrust Litigation* | |
| *State of Utah, et al. v. Google LLC, et al.* | Hon. James Donato |
| *Match Group, LLC et al. v. Google LLC, et al.* | |
| *Epic Games, Inc. v. Google LLC, et al.* | |

22        I, Judith A. Zahid, hereby declare as follows:

23          1.      I am an attorney duly licensed to practice law in the State of California and

24 admitted to practice in this District. I am a partner with the law firm of Zelle LLP and counsel of

25 record for non-party Verizon in the above-captioned action.

26          2.      I have personal knowledge of the facts set forth below and, if called and sworn as a

27 witness, I could and would testify competently thereto.

28          3.      Pursuant to Local Rule 79-5(f)(3), I submit this Declaration in Support of the Joint

1    Omnibus Administrative Motion to Seal.

2        4.      In determining whether to permit documents to be filed under seal, courts in the

3    Ninth Circuit apply the "compelling reason" test.  *Kamakana v. City and County of Honolulu*, 447

4    F.3d 1172, 1178-79 (9th Cir. 2006); *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092

5    (9th Cir. 2016).  The Court has "broad latitude" "to prevent disclosure of materials for many types

6    of information, including, but not limited to, trade secrets or other confidential research,

7    development, or commercial information."  *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211

8    (9th Cir. 2002).

9        5.      As the Supreme Court has recognized, sealing may be appropriate to prevent

10   judicial documents from being used "as sources of business information that might harm a

11   litigant's competitive standing."  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598

12   (1978).  Accordingly, courts routinely seal information where disclosure could harm a litigant's

13   competitive standing.  *See, e.g., Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7374214,

14   at *6 (N.D. Cal. Dec. 20, 2016) (concluding that "need to avoid competitive disadvantage in

15   contract negotiations and undercutting by competitors is a compelling reason that justifies

16   sealing"); *Vigdor v. Super Lucky Casino, Inc.*, No. 16-CV-05326, 2018 WL 4510734, at *2 (N.D.

17   Cal. Sept. 18, 2018) (sealing "business and financial information relating to the operations of

18   Defendants").

19       6.      I have been informed by Defendants that they have filed papers in support of and in

20   opposition to dispositive motions and to exclude expert opinions (*Daubert* Motions) in connection

21   with the above-captioned cases and are requesting to seal certain portions of those papers (the

22   "Requested Sealed Material").

23       7.      The Requested Sealed Material includes information derived from materials

24   produced by non-party Verizon in response to a subpoena served by Plaintiffs; this material has

25   been designated "HIGHLY CONFIDENTIAL INFORMATION" pursuant to the operative

26   protective order [Dkt. No. 248], which allows Non-Parties "the opportunity to file a declaration

27   establishing that all of the designated material is sealable pursuant to Civil Local Rule 79-5(e)."

28       8.      Non-Party Verizon respectfully requests that the Court maintain Verizon's specific

DECLARATION OF JUDITH A. ZAHID IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO
SEAL (RE: CONFIDENTIAL INFORMATION OF NON-PARTY VERIZON)

information identified in the table below under seal:

| Title of Originating Document | Page/Para. Citation | Non-Party Verizon's Requested Sealed Material |
|---|---|---|
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF [Dkt. No. 487-2] | Page 87, Para. 177 | **Commencing with Google's rollout of the Android operating system, Google executed RSAs with major mobile carriers. Google's earliest contracts with Verizon [REDACTED]. In ███, as part of a broader agreement, Google entered into a revenue-sharing agreement with Verizon, wherein Google agreed to provide Verizon with** ████████████ **Google continued to pay Verizon** ████████ |
| EXHIBIT 1 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF [Dkt. No. 487-2] | Page 91, Para. 185 | **And Google finally** ████ **Verizon,** ████████ **amending their revenue-sharing agreement in late** ████ **to** ████████████ . |
| EXHIBIT 6 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. HAL J. SINGER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THEREOF [Dkt. No. 487-7] | Page 93, Para. 243 | **. . . to [Redacted] and** ████ ████ . . . . |

| Title of Originating Document | Page/Para. Citation | Non-Party Verizon's Requested Sealed Material |
|---|---|---|
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Dkt. No. 484-3] | Page 79, Para. 99 | **For example, Google** ███ ████████ **[Redacted],** ████ **, [Redacted], and [Redacted]. [Redacted].** ██████████ |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Dkt. No. 484-3] | Page 80, Para. 99, n. 232 | ████████ |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Dkt. No. 484-3] | Page 187, Para. 289 | **Google** ████ **gave a** ████ ████████ **commission to MNOs, such as** ████ **and [Redacted], as explained in Section IV.B.5.** |

DECLARATION OF JUDITH A. ZAHID IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL (RE: CONFIDENTIAL INFORMATION OF NON-PARTY VERIZON)

| Title of Originating Document | Page/Para. Citation | Non-Party Verizon's Requested Sealed Material |
|---|---|---|
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Dkt. No. 484-3] | Page 187, Para. 289, n. 621 | **Google and Verizon,** ███████████████ |
| EXHIBIT 2 TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE MERITS OPINIONS OF DR. MARC RYSMAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [Dkt. No. 484-3] | Page 237, Para. 374, n. 771 | **Google and Verizon,** ███████████████ " |

9.      Verizon's requested relief is necessary and narrowly tailored to protect Verizon's confidential, non-public, and highly sensitive business information that Verizon keeps closely guarded.  Good cause exists to seal the Requested Sealed Material because it contains Verizon's confidential business information that, if made public, could harm Verizon.  Specifically, the Requested Sealed Material contains detailed information about Verizon's confidential business negotiations with Google and specific non-public terms and conditions of Verizon's agreements with Google.  Verizon does not make this information available to the general public.  If this information were made public, it would reveal (including to Verizon's competitors) key insights into Verizon's business negotiation strategies and Verizon's market position, thus potentially allowing market participants the ability to undercut and disadvantage Verizon.  Disclosing this information could also disadvantage Verizon in negotiations with suppliers.  These confidentiality

DECLARATION OF JUDITH A. ZAHID IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL (RE: CONFIDENTIAL INFORMATION OF NON-PARTY VERIZON)

interests outweigh the public's interest in disclosure.

10.     The Civil Local Rules of this district requires the designating party must file a statement and/or declaration including a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient; This declaration addresses each requirement.

11.     Accordingly, Verizon respectfully requests that the Court permit Defendants to file the Requested Sealed Material under seal.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on July 5, 2023, in Berkeley, California.



DECLARATION OF JUDITH A. ZAHID IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL (RE: CONFIDENTIAL INFORMATION OF NON-PARTY VERIZON)

# EXHIBIT 22

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF TINGFANG ZHANG IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | |

I, Tingfang Zhang, declare as follows:

1.      I am currently Director of Partnership and Internet Business Development at Beijing Xiaomi Mobile Software Co., Ltd. ("Xiaomi"). I am called Irene Zhang in business communications.  I have been employed by Xiaomi since 2017.  Over the course of my employment at Xiaomi, I have acquired personal knowledge of Xiaomi's practices and procedures concerning the maintenance of confidentiality of its strategic, business and financial information.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      Xiaomi follows a strict practice that requires confidential treatment of all internal non-public financial information; confidential commercial proposals to third parties and confidential agreements with third parties; internal business analyses of consumer spending and revenue, market conditions, and opportunities; and internal, future strategic business plans. In my experience and to the best of my knowledge, Xiaomi does not disclose such internal information to third parties except under the strictest confidentiality protection and for strategic business collaborations.

4.      Among other things, the disclosure of these materials could reveal highly sensitive non-public financial information, significantly harm Xiaomi's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place Xiaomi at a disadvantage with competitors who could use Xiaomi's confidential information to their advantage in competition with Xiaomi. These materials therefore have economic value from not being generally known to Xiaomi's competitors, counterparties, or the general public.

5.      To the best of my knowledge, the following information are highly sensitive and confidential, and derives from confidential materials generated during important business collaborations between Xiaomi and Google. As described in detail below, Xiaomi has both good cause and compelling reasons to seal this confidential information to, among other things, avoid competitive harm to both Xiaomi and third parties, avoid potentially misleading investors, and prevent competitors and potential business partners from using the information against Xiaomi in future negotiations. Text covered in <u>blue</u> is information Xiaomi requests to be sealed.

**Specific Information to Be Sealed**

6.      Exhibit A contains excerpts and pages from various documents produced by Google in this litigation.  They are from Exhibits 2, and 4 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Marc Rysman; Memorandum of Points of Authorities

In support of Thereof [MDL Dkt. No.484] and Exhibit 1 to Plaintiff's Opposition to Defendants'

Motion for Partial Summary Judgment [MDL Dkt. No. 509]. Text described below is information

Xiaomi requests to be sealed.

       7.      Exhibit A-1 comes from Exhibit 2 to Defendants' Notice of Motion and Motion to

Exclude Merits Opinions of Dr. Marc Rysman; Memorandum of Points of Authorities In support

of Thereof [MDL Dkt. No.484]. It contains excerpts or information from various documents

produced by Google containing sensitive financial or strategic Xiaomi information that may harm

Xiaomi's business interests if revealed to the public. Text below described is information Xiaomi

requests to be sealed. All the information is financial or strategic in nature. Page 80, Para. 101,

n. 236 (illustrated by an arrow and text "Xiaomi Proposed Redaction"), has the percentage

Google pays Xiaomi on Premier Devices revenue; Page 196, Para. 305 (illustrated by lines and

text "Xiaomi Proposed Redaction", has the percentage of Xiaomi's share of monthly visits by app

users; Page 197, Exhibit 41 has Xiaomi's share of pre-installation and monthly app store visits

(illustrated by white text on black "Xiaomi Proposed Redaction"); Page 199, Para. 308 (illustrated

by white text on black "Xiaomi Proposed Redaction"), also has Xiaomi's share of user time spent

on app store; Page 243, Para. 390, n. 807 (illustrated by an arrow and text "Xiaomi Proposed

Redaction"), has information from a contract between Google and Xiaomi's and it comes from

Googplay-000620638 -675, at 649; Page 246, Exhibit 55 (illustrated by an arrow and "Xiaomi

Proposed Redaction") has information on Xiaomi's share of Android Activations. Xiaomi does

not publicly break out its revenues or profits for specific countries or into specific revenue

streams, nor does it publicly breakout its share in Android activation, app store visits, pre-

installation, as it is revealed in this document, as such disclosures would reveal important and

confidential information to competitors and counterparties regarding Xiaomi. This information

has never been disclosed publicly, and disclosure would severely and adversely impact Xiaomi's

ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

8.       The Exhibit A-2 comes from Exhibit 4 to Defendants' Notice of Motion and Motion to Exclude Merits Opinions of Dr. Marc Rysman; Memorandum of Points of Authorities In support of Thereof [MDL Dkt. No.484], specifically, Page 131, Para. 240 contains information for Xiaomi's share of monthly app store visits and share.  Xiaomi does not publicly break out its revenues or profits for specific countries or into specific revenue streams, nor does it publicly breakout its share in Android activation, app store visits, pre-installation, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Xiaomi. This information has never been disclosed publicly, and disclosure would severely and adversely impact Xiaomi's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

9.       Exhibit A-3 is from Exhibit 1 to Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment [MDL Dkt. No. 509], the relevant information is financial and strategic in nature. Pages 441, Page 442 and 443 are from a deposition transcript.  The information to be sealed are details of Xiaomi's commercial agreement with Google for particular type of electronic devices. Page 441, line 25(starting the 4th word) references detailed confidential business collaboration terms between Google and Xiaomi.  Page 442, lines 3 (the 5th word), 14 (the 5th word), 15 (4th to 7th word), 16 (6th to 8th word), 18-20, 21 (last two words), 23 (2nd word), 24 (last two words) and 25 (only first two words) also contains detailed confidential business collaboration terms between Google and Xiaomi. Page 443, lines 4 (last three words) 5

1  (first 5 words), 6 (last two words), 7 (first 5 words), 14 (last word), 15 (first two words), 17 (the

2  6th word), 18 (last 4 words), 19 (1st word) also contains detailed confidential business

3  collaboration terms between Google and Xiaomi. Xiaomi does not publicly disclose such

4  information as to how it collaborates with its business partners as it is revealed in this document,

5  as such disclosures would reveal important and confidential information to competitors and

6  counterparties regarding Xiaomi. This information has never been disclosed publicly, and

7  disclosure would severely and adversely impact Xiaomi's ability to negotiate agreements in the

8  future. If revealed to competitors and potential business counterparties, they could use this non-

9  public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

10

11

12      I declare under penalty of perjury under the laws of the United States that the foregoing is

13  true and correct and that this declaration was executed on July 6, 2023 in Beijing.

14

15  Respectfully submitted,

16

17  Dated: July 6, 2023                     By:

18

19                                          *(s) Irene Zhang*
                                            Irene Zhang

20

21

22

23

24

25

26

27

28

Exhibit A-1



100. ████████████████████████████████

101. ████████████████████████

[232] Google, ████████████████████████████████ 2015, GOOG-PLAY-003605103-106, at 106; GOOG-PLAY4-002178049; Email from Matt Schwartz to Jamie Rosenberg, Vice President of Strategy and Operations (Platforms and Ecosystems Division) at Google, Zahavah Levine, Google, TT Ramgopal, Google, Christian Veer, Google, Paul Gennai, Product Management Director at Google, ██████: ██████," GOOG-PLAY-002891881-882.

[233] Email from Cristina Bita, Google, to Patrick Pichette, Google, Jonathan Gold, Finance Manager for Android at Google, and Tim Riitters, Google, "████████████," May 7, 2013, GOOG-PLAY-003741416-420, at 417.

[234] Google, ████████████," GOOG-PLAY-000443763.R-798.R, at 775.R; and Google, "Premier Tier Requirements," July 31, 2021, GOOG-PLAY-007125883-889, at 885-886 ████████████████████████████ . *See,* e.g., Google and BLU Products, "████████," April 1, 2020, GOOG-PLAY-005706676-704.

[235] Gold (Google) Deposition, p. 256 ("████████████████████████ "); Kolotouros (Google) Deposition, p. 225 ( ████████████████)

[236] Google, ████████," Google-HMD, GOOG-PLAY-000620282-321, at 305 (████████); Google-Xiaomi RSA, GOOG-PLAY-000620210, at 235 ████████

**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Android smart mobile devices. This conclusion is consistent with the EC's findings of market shares in the Android App Distribution Market. Data on app store pre-installations on Android mobile devices (worldwide excluding China) from 2011 to 2016, show that the Google Play Store was pre-installed on 90-100% of all Android mobile devices over the same time period. No other Android app store was able to achieve a similarly high rate of pre-installations. ██████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████.[639]

305.   **App Store Visits:** ████ OEMs can install their own app stores on their devices (subject to being paid not to do so by Google).██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

████████████████████[640] According to the same presentation, the same holds for visits on Xiaomi smart mobile devices (outside of those in China): only ████ of monthly app store visits on these devices are to Xiaomi Market, and ████ to Google Play Store, as summarized in Exhibit 41 below.[641] Further, a 2019 Google presentation reflects that ████ "of all app store visits in a month are to Play Store," while only ████ of Android users' app store visits are to the ████████ and ████ to Xiaomi Market.[642] ████████████████████

██████████████████████████████████████████████████

████████████████████"[644] The same analysis determined that the sum of ████

---

[639] *See,* EC Google Android Decision, ¶¶ 591-598.
[640] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 227.R, 229.R and 230.R.
[641] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 229.R-230.R.
[642] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 229.R.
[643] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 228.R.
[644] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 229.R.



**Exhibit 41**
**Google 2019 Internal Analyses of OEM App Store Pre-Installation Shares**
**Worldwide (excluding China), 2019**



| | % of Android smart mobile devices with the app store pre-installed | |
| | % of monthly app store visits from Android smart mobile devices with the app store pre-installed | |

*Source*: Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R at 227.R, 229.R-231.R.



**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



According to the same presentation, OEM app stores such as the ███████████ make up "only a small portion of app store engagement overall"[655] with only ███ of OEM app store time spent on the ████████ ███████ and 1% on Xiaomi Market.[656] Google's own assessments of the Play Store's market share in terms of user engagement are summarized in Exhibit 42 below.

**Exhibit 42**
**Google 2019 Internal Analyses of OEM App Store Usage Shares**
**Worldwide (excluding China)**



| | | | |
|---|---|---|---|
| % of total monthly app store visits to the app store | | | |
| % of total monthly app store time spent on the app store | | | |
| % of monthly active Android users that are active at least once monthly on the app store | | | |

*Source*: Google, ██████████████████" October 31, 2019, GOOG-PLAY-002076224.R-238.R at 228.R, 229.R, 236.R.

309.    The possibility of sideloading does not alter my views about Google's share of the market, or of its power in the market. Information on sideloading indicates that only a small share of apps are sideloaded. For example, according to the CMA's analysis of Google internal data for February 2022, fewer than 5% of app downloads occurred via sideloading or via app stores that were not pre-installed by the OEM.[657] As explained by Amazon, "consumers rarely download an

---

[654] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 236.R.
[655] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 225.R.
[656] Google, "OEM App Store Share Analysis," October 31, 2019, GOOG-PLAY-002076224.R-238.R, at 236.R.
[657] *See* CMA Final Report on Mobile Ecosystems, ¶¶ 4.

**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



390.

807

804 Google, "███████████," July 31, 2020, GOOG-PLAY-007125883-889, at 886.
805 Google, ███████████," July 31, 2020, GOOG-PLAY-007125883-889, at 886.
███. *See,* e.g., Google and LGE, "███████████
███," April 1, 2020, GOOG-PLAY-005706338-391, at 378.
806 ███████████," December 1, 2019, GOOG-PLAY-000620282-321, at 284
("███████████

807 ███████████," December 1, 2019, GOOG-PLAY-000620282-321, at 292.
*See also* ███████████ February 1, 2020, GOOG-PLAY-000416651-697, at 662;
███████████," March 1, 2020, GOOG-PLAY-001745614-663, at 625-626;
███████████ March 1, 2020, GOOG-PLAY-000620442-475, at 452;
███████████ April 1, 2020, GOOG-PLAY-000416708-752, at 717;
███████████ April 1, 2020, GOOG-PLAY-000620478-520, at 488; ███████████ March 1,
2020, GOOG-PLAY-000620131-172, at 141; Google and ███████████, GOOG-
PLAY-000620638-675, at 649; ███████████" April 1, 2020, GOOG-PLAY-
005706676-704, at 685;
April 1, 2020, GOOG-PLAY-005706728-756, at 737; ███████████ April 1, 2020, GOOG-
PLAY-005706436-484, at 446; and ███████████" September 1, 2020, GOOG-PLAY-
000620770-798, at 778.
808 Google, "███████████," February, 2020, GOOG-PLAY4-
006758735-764, at 738.

**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**Exhibit 55**
█████ **of Android Smart Mobile Devices are Covered under RSA 3.0 Agreements**



*Source*: Google, "Android Commercial Agreements," October 2020, GOOG-PLAY-011057832-886, at 845.



**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Exhibit A-2

███████████████████████████████████████████

███████████████████████████████████████████

███████████████ [542] Importantly, this evidence just shows whether a store is available or installed on an Android device. It does not show whether Android users are *using* these pre-installed app stores to download apps, nor does it show other important dimension of competition such as whether these app stores have a similar selection of apps (in terms of both quantity and quality). [543]

240. ██████████████████████████████████████

███████████████████████████████████████████

████████████████████ [544] For example:

- ████████████████████ only achieved a modest ████ share of monthly app store visits relative to Play Store, with Xiaomi also on ████

  ▌ ██████████████████████████████████████

     ████████████████████

  ▌ ██████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████

  ▌ ██████████████████████████████████████

     ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

─────────────────────

[542] Gentzkow Report, ¶ 184; Rysman Opening Report Exhibit 40.

[543] As presented in Exhibit 45 in my Opening Report, the Google Play Store has many more apps available than alternative apps stores: the Samsung Galaxy Store offered only 150,000-200,000 apps in March 2017, Amazon Appstore offered 700,00-900,000 apps in April 2017, and Aptoide offered 900,000 apps in June 2017.

[544] Rysman Opening Report, ¶¶ 305-306 & 310; and Exhibits 41-42 & 44.

**NON-PARTY AND PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Exhibit A-3

Page 441

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22        Q.    And then she asks a question, second

23   paragraph, "Quick clarification, when you say

24   1st party vs. 3rd party exclusivity, the 3P

25   obviously refer to

```
                                              Page 442
 1              KOLOTOUROS - HIGHLY CONFIDENTIAL
 2    services such as ███████.  But for 1st party
 3    exclusivity, do you mean ████████ 1P services;"
 4    is that correct?
 5          A.    Yes.
 6          Q.    So, she reads this to be in relation
 7    to an exclusivity term that would impact
 8    █████████ is that correct?
 9          A.    That is correct, yes.
10          Q.    Okay.  And above that you reply
11    with, "Your interpretation is correct," is that
12    right?
13          A.    Yes.
14          Q.    So, under this framework, ████████ can
15    put its own ████████████████ on the devices
16    as long as it was ███████████; is that
17    correct?
18          A.    █████████████████████████
19    ██████████████████████████
20    █████████████████████████████,
21    but it would imply that it would be ████████████
22    or visual search product as the default and
23    with ███████ alongside of another default.
24          Q.    Okay.  Thank you.  So, ████████ ███████
25    ████████ ████████ competing products under
```

```
                                          Page 443
 1            KOLOTOUROS - HIGHLY CONFIDENTIAL
 2     this agreement as it is being discussed in this
 3     e-mail; is that correct?
 4          A.    To the extent that ████████████████
 5     ██████████████████████ within which this
 6     term was included, that ███████████████
 7     ████████████████████████ of the ████████
 8     service out of box.
 9          Q.    And so earlier you mentioned that
10     this was just about Lens, Google Lens, the
11     exclusivity provisions being discussed; is that
12     correct?
13          A.    I believe so, yes.
14          Q.    But did the agreement with ████████
15     ████████████████ for any other Google apps
16     or Google Play?
17          A.    I think that within the ██████ deal
18     there was a -- the ██████████████████████████
19     ██████████████ for additional services.
20
21
22
23
24
25
```

# EXHIBIT 23

SANJAY M. NANGIA (CA State Bar No. 264986)
DAVIS WRIGHT TREMAINE LLP
50 California Street, Floor 23
San Francisco, California  94111
Telephone:      (415) 276-6500
Facsimile:      (415) 276-6599
Email: sanjaynangia@dwt.com

Attorneys for Coda US LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Civil Case No. 3:21-md-02981 JD<br><br>**NON-PARTY CODA US LLC's DECLARATION IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE INFORMATION UNDER SEAL** |

DAVIS WRIGHT TREMAINE LLP

DocuSign Envelope ID: 268E7AAE-5750-49FD-A9B3-F705152547C8

I, Raymond Wijaya, hereby declare as follows:

1.       I am Coda US LLC's ("Coda US") Manager.  Coda US is a manager-managed LLC.  I oversee day-to-day operations of the company along with 2 other managers. I have held this role since June 2021. In addition, I serve as VP, Finance Operations for Coda Payments Pte. Ltd., Coda US's parent company (hereinafter collectively referred to as "Coda"). In the course of my work, I have become familiar with Coda's processes for maintaining confidential information, including the commission rate information that is the subject of the below sealing request.

2.       Pursuant to Civil Local Rule 79-5, I submit this declaration in support of sealing Coda's commission rate percentages.  Coda is informed that this rate information was filed within the Hal J. Singer Report at Dkt. Nos. 480-2, 487-2, and 509-37 ("Singer Report").  As explained in detail below, the requested relief is narrowly tailored and necessary to protect the confidentiality of certain Coda information.  I have knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to them.

3.       Coda is a technology company that helps enable digital content publishers to monetize their products and services. Through Coda's offerings, consumers can make purchases (such as in-game credits) via a browser that can later be used within the publisher's game/app environment.  For example, Codashop.com is a marketplace that enables consumers to discover and buy in-game/in-app digital content.  Coda also provides a service that assists publishers in using their own websites to facilitate consumer transactions.

4.       I am informed that certain Coda commission rate information was filed provisionally under seal:

| Confidentiality Request # | Document | Description |
|---|---|---|
| 1 | Dkt Nos. 480-2, 487-2 Singer Report, p. 78, Paragraph 158 Footnote 370 | Discloses proposed commission rate between Coda and Epic |
| 2 | Dkt Nos. 480-2, 487-2, 509-37 Singer Report, p. 157, Paragraph 334 | Discloses proposed commission rate between Coda and Epic |

DAVIS WRIGHT TREMAINE LLP

DECLARATION ISO ADMINISTRATIVE MOTION TO FILE UNDER SEAL
4868-1390-6542v.1 0118845-000002

5.      Coda respectfully requests that the Court permit the materials identified above to be filed under seal due to their confidential nature.  Coda only requests the commission rate percentages be kept under seal (as opposed to any other discussion about Coda within the above).

6.      It is extremely important to Coda to keep the rate information confidential.  Coda is a private company and does not publicly release its commission rates (or other financial data).

7.      Coda has never publicly disclosed, in litigation or otherwise, the above commission rate information at issue, to the best of my knowledge.  Further, Coda implements security measures to help prevent unauthorized access to its systems where such rate information is housed.

8.      If the details of the commission rate were disclosed publicly, Coda's competitors will be better able to understand Coda's strategy.  Coda has spent years building and developing its offering, and its commission rate would provide insights on Coda's success and strategy.  These competitors will then be better equipped to compete with Coda, or in determining whether building a competing offering similar to Coda's is worthwhile.  Competitors may also use the commission rate information in their own negotiations with publishers.

9.      Additionally, Coda negotiates and signs contracts with many other game/app publishers (besides Epic).  Some publishers pay Coda a lower or higher rate.  Disclosure of the above commission rate may negatively affect business relationships with existing publishers.  Moreover, this information could be used by publishers during future negotiations to the detriment of Coda.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of July, 2023 at 22 Cross Street, #02-01, Singapore.



Raymond Wijaya

DECLARATION ISO ADMINISTRATIVE MOTION TO FILE UNDER SEAL
4868-1390-6542v.1 0118845-000002

DAVIS WRIGHT TREMAINE LLP

# EXHIBIT 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF JOSHUA WALKER IN SUPPORT OF OMNIBUS MOTION TO FILE UNDER SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | |

I, Joshua Walker, declare as follows:

1.      I am Chief Financial and Strategy Officer, Streaming, for Warner Bros. Discovery, Inc. ("WBD"). I joined WBD and its subsidiaries in October 2010.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      In my current role at WBD, I oversee strategy and financial operations for WBD's streaming applications ("apps") made available to consumers via the Google Play store, as well as direct-to-consumer operations globally. Based on my work experience, I am familiar with the way confidential financial information is handled by WBD pertaining to its consumer-facing offerings. WBD keeps such information confidential to protect itself from potential competitive and commercial harm.

4.      I understand that the Defendants have filed, among other things, a Motion to Exclude the Merits Opinions of Dr. Hal J. Singer ("Singer Motion"), which cites an Expert Report written by Dr. Singer and dated October 19, 2022 ("Singer Report"), which contains information that purportedly derives from Google's internal transactional data and documents regarding WBD's sensitive and highly confidential financial information concerning its apps made available to consumers via the Google Play store. I also understand that the Consumer Plaintiffs and the State Plaintiffs have filed an Opposition to the Singer Motion, which cites a slide deck produced by Google in this litigation ("Google Slide Deck"). Google's counsel has provided WBD with redacted excerpts of the Singer Report and a redacted version of the Google Slide Deck, which contain WBD's confidential, highly proprietary, and competitively sensitive business information. Furthermore, I understand that the Parties will file a joint omnibus motion

to seal addressing the confidentiality of information included in the Singer Motion, the Singer

Report, and other recent filings.

5.      WBD's financial information referred to in the Singer Report and the Google Slide

Deck is sensitive and highly confidential information that could cause competitive and

commercial harm to WBD if publicly released.

6.      As an initial matter, in filing this Declaration, WBD does not confirm the accuracy

and/or completeness of WBD's financial information referred to in the Singer Report and the

Google Slide Deck. As it has been explained to me, although this sensitive and highly

confidential financial information concerns WBD, it purportedly is derived from Google's

internal transactional data and documents. WBD lacks sufficient background information and

context to verify it.

7.      WBD is a leading global media and entertainment company that creates and

distributes its portfolio of content and brands across television, film, streaming, and gaming.

Maintaining the confidentiality of its financial information is as important to WBD as it is to any

comparable business. As a publicly traded company, WBD is extremely mindful of the financial

and business information it publicly discloses, and WBD makes such disclosures in accordance

with the rules and regulations of the United States Securities and Exchange Commission. Thus,

WBD has an interest in preserving the confidentiality of its information that it has not elected to

publicly disclose.

8.      The information that is redacted in the Singer Report and the Google Slide Deck

includes sensitive and highly confidential financial information of WBD, which could result in

competitive harm to WBD if publicly disclosed. It is my understanding that this information

relates to: (i) the subject matter of a distribution agreement between WBD and Google regarding

the Google Play store; (ii) WBD's position relative to other companies and developers with

respect to the amount of money spent by consumers on WBD apps that are available in the Google Play store; and (iii) the difference in the amount of money spent by consumers on WBD apps that are available in the Google Play store as compared to WBD apps that are available in another app store. These references contain highly confidential information relating to WBD's business dealings and financial position within the market. Furthermore, WBD does not otherwise publicly disclose this information.

9.    The disclosure of this highly confidential financial information could harm WBD's business. For example, the public disclosure of the subject matter of WBD's distribution agreements with Google regarding the Google Play store would undermine WBD's ability to negotiate distribution agreements with other app distribution platforms. In addition, the disclosure of WBD's position relative to other companies and developers would put WBD at a competitive disadvantage both with consumers and with other distribution partners, as the performance of WBD's apps in the Google Play store is not publicly known. Finally, the public disclosure of the difference in the amount of money spent by consumers on WBD apps that are available in the Google Play store as compared to WBD apps that are available in another app store would allow for insight into what percentage of WBD's direct-to-consumer business Google represents as compared to other app distribution platforms and thus would create difficulties in negotiations with those platforms.

10.    Preventing these competitive and commercial harms requires the sealing of the redacted information in the Singer Report and the Google Slide deck. There is no less restrictive alternative. Sealing is the only means of preserving WBD's highly confidential, non-public, and competitively sensitive information.

11.    For all of the reasons set forth above, the excerpts from the Singer Report and the Google Slide Deck that WBD hereby seeks to seal are as follows:

a.   Singer Report, Singer Motion Exhibit 1, Page 81, para. 165, fn. 383.

b.   Google Slide Deck, Opposition to the Singer Motion Exhibit 13.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 5, 2023 in New York City, New York.

Respectfully submitted,

Dated: July 5, 2023                    By: *Joshua W. Walker*
                                            Joshua W. Walker (Jul 5, 2023 12:09 EDT)

# In re Google Play Store Antitrust Litig. - Walker Declaration 2023-07

Final Audit Report                                            2023-07-05

| | |
|---|---|
| Created: | 2023-07-05 |
| By: | Fallon Brink (fallon.brink@warnermedia.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjIBiVmf8cxUMZoRka_ZuNS3stDllRcFY |

## "In re Google Play Store Antitrust Litig. - Walker Declaration 2023-07" History

📄 Document created by Fallon Brink (fallon.brink@warnermedia.com)
2023-07-05 - 2:49:36 PM GMT- IP address: 157.166.255.254

📧 Document emailed to joshua.walker@warnermedia.com for signature
2023-07-05 - 2:50:21 PM GMT

📄 Email viewed by joshua.walker@warnermedia.com
2023-07-05 - 3:59:59 PM GMT- IP address: 198.147.10.10

✍️ Signer joshua.walker@warnermedia.com entered name at signing as Joshua W. Walker
2023-07-05 - 4:09:18 PM GMT- IP address: 198.147.10.10

✍️ Document e-signed by Joshua W. Walker (joshua.walker@warnermedia.com)
Signature Date: 2023-07-05 - 4:09:20 PM GMT - Time Source: server- IP address: 198.147.10.10

✅ Agreement completed.
2023-07-05 - 4:09:20 PM GMT

 
Powered by
Adobe
Acrobat Sign

# EXHIBIT 25

1 | Renata B. Hesse (SBN 148425)
(hesser@sullcrom.com)
2 | SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
3 | Palo Alto, California  94303
Telephone:     (650) 461-5600
4 | Facsimile:     (650) 461-5700

5 | Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
6 | SULLIVAN & CROMWELL LLP
125 Broad Street
7 | New York, New York  10004
Telephone:     (212) 558-4000
8 | Facsimile:     (212) 558-3588

9 | *Attorneys for Non-Party Spotify USA Inc.*

10

11

12

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

13 | **IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION** | ) | Case No. 3:21-md-02981-JD

14 | THIS DOCUMENT RELATES TO: | ) | **DECLARATION OF SANDRA
ALZETTA IN SUPPORT OF JOINT
OMNIBUS ADMINISTRATIVE
MOTION TO SEAL**

15 | *In re Google Play Consumer Antitrust
Litigation*, No. 3:20-cv-05761-JD | ) |

16 | | ) | Judge:  Hon. James Donato

17 | *State of Utah* v. *Google LLC*, No. 3:21-cv-
05227-JD | ) |

18 | *Match Group, LLC* v. *Google LLC*, No. 3:22-
cv-02746-JD | ) |

19 | | ) |

20 | *Epic Games, Inc.* v. *Google LLC*, No. 3:20-cv-
05671-JD | ) |

21 | | ) |

22

23

24

25

26

27

28

SULLIVAN
&
CROMWELL LLP

I, Sandra Alzetta, declare as follows:

1.      I am a Vice President and the Global Head of Commerce and Customer Service at Spotify.  Pursuant to Local Civil Rule 79-5(f) and the Stipulated Order Modifying Sealing Procedures Relating to Dispositive and *Daubert* Motions entered on April 21, 2023 in the case captioned *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (MDL Dkt. No. 496), I submit this declaration in support of the Joint Omnibus Administrative Motion to File Under Seal to be filed on July 13, 2023 in the cases captioned *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD, *In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD, *State of Utah* v. *Google LLC*, No. 3:21-cv-05227-JD, *Match Group, LLC* v. *Google LLC*, No. 3:22-cv-02746-JD, and *Epic Games, Inc.* v. *Google LLC*, No. 3:20-cv-05671-JD (collectively, the "Actions").

2.      I first began working at Spotify in January 2019, as Vice President,  Global Head of Payments.  I have been in my current role as Vice President, Global Head of Commerce and Customer Service, since December 2022.  My responsibilities in that role include managing Spotify's current payment methods, developing strategy with respect to future payment methods, and negotiating agreements with third parties.  I can testify competently to the facts set forth in this declaration based on personal knowledge of those facts or on conversations I had with knowledgeable individuals at Spotify.

3.      Spotify operates the world's most popular audio streaming subscription service.  Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011.  With a presence in over 180 countries and territories, Spotify's platform includes 515 million monthly active users, including 210 million subscribers to its Premium service as of March 31, 2023.

4.      I understand that the parties have filed documents in support of and opposition to summary judgment motions and *Daubert* motions in the Actions, some of which contain Spotify's confidential information.  The below chart lists the portions of those documents that are sealable for the reasons stated in this declaration.  I understand that unredacted versions of the relevant documents will be filed concurrently with the Joint Omnibus Administrative Motion

SULLIVAN
&
CROMWELL LLP

-1-

DECL. OF SANDRA ALZETTA IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
CASE NOS. 3:21-MD-02981-JD; 3:20-CV-05761-JD; 3:21-CV-05227-JD; 3:22-CV-02746-JD; 3:20-CV-05671-JD

to File Under Seal, and that the specific portions that are sealable are highlighted in those unredacted versions.

| Document | Portion(s) of Document Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|
| Exhibit 8 to Match Plaintiffs' Motion for Partial Summary Judgment on Google's Counterclaims (MDL Dkt. 486) | Page 28:  All information in the table relating to Spotify | Declaration of Sandra Alzetta ¶ 8 |
| Exhibit 20 to Match Plaintiffs' Motion for Partial Summary Judgment on Google's Counterclaims (MDL Dkt. 486) | Page ending in Bates GOOG-PLAY-001165247, Bullet Point 6:  All text in after "devs with" and before "Requires" | Declaration of Sandra Alzetta ¶¶ 14-15 |
|  | Page ending in Bates GOOG-PLAY-001165247, Line 1:<br><br>All text in the first sentence after "and" and before "If"<br><br>All text in the second sentence after "proposal to" and before "soon (asap)"<br><br>All text in the third sentence after "For" and before "this gives us" | Declaration of Sandra Alzetta ¶¶ 14-15 |
|  | Page ending in Bates GOOG-PLAY-001165248, Paragraph 1:  All text after "with us?" until the end of the paragraph | Declaration of Sandra Alzetta ¶¶ 14-15 |
|  | Page ending in Bates GOOG-PLAY-001165248, Paragraph 3:  All text in the paragraph | Declaration of Sandra Alzetta ¶¶ 14-15 |
| Exhibit 16 to Defendants' Opposition to Match Plaintiffs' Motion for Partial Summary Judgment (MDL Dkt. 506) | Page 6:  All information in the table relating to Spotify | Declaration of Sandra Alzetta ¶¶ 14-15 |
| Exhibit 29 to Plaintiffs' Opposition to Defendants' Motion for Partial | Page 12:  All text below "Spotify" column other than the headings "Product principles:" and "Economic principles:" | Declaration of Sandra Alzetta ¶¶ 14-15 |

Decl. of Sandra Alzetta in Support of Joint Omnibus Administrative Motion to Seal
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD; 3:20-cv-05671-JD

Sullivan & Cromwell LLP

| Document | Portion(s) of Document Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|
| Summary Judgment (MDL Dkt. 509) | Page 14:  All text below "Spotify Gets" column other than the headings "Product" and "Economic" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 26:  All text after "Spotify:" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 27:  All text after "Spotify:" up to the period at the end of that sentence | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 61:  All text after "Spotify:" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 77:  The entire portion of the bar chart above the text "Proposal to Spotify" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| Exhibit 30 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment (MDL Dkt. 509) | Page 174:  Lines 2-10 and 19-25 | Declaration of Sandra Alzetta ¶¶ 14-15 |
| Exhibit 45 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment (MDL Dkt. 509) | Page 9:  All text in first table column below "Concern / Spotify Complaint" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 12:  All text in the "Concerns" column and the images to the right of that column | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 15:  The logo and the line of text below "Rev Share, Pricing" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 29:  All text other than the "ATTORNEY-CLIENT PRIVILEGED" header | Declaration of Sandra Alzetta ¶¶ 14-15 |
| Exhibit 52 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment (MDL Dkt. 509) | Page 164, Para. 246, n.539:  All text between the parentheses immediately following "Rasanen (formerly Google) Deposition, p. 307" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 164, Para. 246, n.542:  All text between the parentheses immediately | Declaration of Sandra Alzetta ¶¶ 14-15 |

| Document | Portion(s) of Document Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|
| | following "December 2020, GOOG-PLAY-006997722-751, at 723" | |
| Exhibit 1 to Defendants' Notice of Motion, Motion to Exclude Merits Opinions of Dr. Hal J. Singer, and Memorandum and Points of Authorities in Support Thereof (MDL Dkt. 487) ("Motion to Exclude Singer Opinions") | Page 33, Para. 51, n.110:  All text between the parentheses immediately following "See, e.g., GOOG-PLAY-002416488" | Declaration of Sandra Alzetta ¶¶ 6-7 |
| | Page 76, Para. 153, n.358:  All text between the parentheses immediately following "See also GOOG-PLAY-000259276 GOOG-PLAY-004716632" | Declaration of Sandra Alzetta ¶¶ 9-11 |
| | Page 77, Para. 154, n.364:  All text between the parentheses immediately following "GOOG-PLAY-004470512 at -513" | Declaration of Sandra Alzetta ¶¶ 9-11 |
| | Page 82, Para. 168, n.390:  All text between the parentheses immediately following "See Alzetta Rough Dep. Tr. 42:10-43:17" | Declaration of Sandra Alzetta ¶¶ 12-13 |
| | Page 180, Para. 366, n.865:  All text after "entered into a 'Choice in Billing' agreement where Spotify would pay Google" up to the period at the end of that sentence | Declaration of Sandra Alzetta ¶¶ 12-13 |
| Exhibit 2 to Defendants' Notice of Motion, Motion to Exclude Merits Opinions of Dr. Marc Rysman, and Memorandum of Points and Authorities in Support Thereof (MDL Dkt. 484) ("Motion to Exclude Rysman Opinions") | Page 62, Para. 75:  All text after "the User Choice Billing program, pays Google" up to the period at the end of that sentence; and all text between the parentheses immediately following "See Alzetta (Spotify) Deposition p. 43" | Declaration of Sandra Alzetta ¶¶ 12-13 |
| | Page 87, Para. 107:  All information in table relating to Spotify | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 164, Para. 246, n.542:  All text between the parentheses immediately following "December 2020, GOOG-PLAY-006997722-751, at 723" | Declaration of Sandra Alzetta ¶¶ 14-15 |

SULLIVAN & CROMWELL LLP

| Document | Portion(s) of Document Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|
| | Page 223, Para. 350:  All text after "Google and Spotify agreed to a" up to the period at the end of that sentence | Declaration of Sandra Alzetta ¶¶ 12-13 |
| | Page 223, Para. 350, n.724:  All text other than "GOOG-PLAY-011250116-166, at 120" | Declaration of Sandra Alzetta ¶¶ 12-13 |
| | Page 319, Para. 512:  All text other than the first sentence | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page 319, Para. 512, n.1061:  All text after "GOOG-PLAY-000257629-633, p.2 (noting that" and before "had been one of the main issues for Spotify)." | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Pages 319-20, Para. 513:<br><br>The entire first and second sentences<br><br>In the third sentence, the year after "Sometime in" and before "Google offered Spotify"; all text between "Google offered Spotify" and "and Spotify's counteroffer was"; and all text after "and Spotify's counteroffer was".<br><br>In the fourth sentence, all text after "Google offered Spotify". | Declaration of Sandra Alzetta ¶¶ 9-11; 14-15 |
| | Page 329, Para. 532:<br><br>In the first sentence, the year following "In" and all text after "Google offered Spotify"<br><br>In the second sentence, all text after "Spotify's counteroffer was"<br><br>In the third sentence, all text after "Google offered Spotify" | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Pages 330-31, Para. 537:  All text after "these service fee rates have been 15%" and before "and a few higher" | Declaration of Sandra Alzetta ¶¶ 12-13 |
| | Page 334, Para. 546:  The word after "various developers (including" | Declaration of Sandra Alzetta ¶¶ 14-15 |

SULLIVAN
&
CROMWELL LLP

| Document | Portion(s) of Document Sought to Be Sealed | Evidence Offered in Support of Sealing |
|---|---|---|
| | Page 335, Para. 549:<br>In the first sentence, all text after "As discussed in Section VIII.B.1, Google offered Spotify"<br>The entire second sentence | Declaration of Sandra Alzetta ¶¶ 14-15 |
| | Page E-2:  All information in the three rows of the table that relate to Spotify, other than the end note references | Declaration of Sandra Alzetta ¶¶ 12-13; 14-15 |
| | Page E-3:  All text in endnote 22 after "22. Google," and before "GOOG-PLAY-011250116-166." | Declaration of Sandra Alzetta ¶¶ 12-13 |
| Exhibit 4 to Motion to Exclude Rysman Opinions | Page 51, Para. 93:  All text in the sentence immediately following "would be challenges to shifting to a consumption only model." | Declaration of Sandra Alzetta ¶¶ 9-11 |
| | Page 51, Para. 93, n.192:  All text between "Spotify," and "SPOT-GOOGLE-00001105 –109, at 107", and all text between the parentheses immediately following "SPOT-GOOGLE-00001105 –109, at 107" | Declaration of Sandra Alzetta ¶¶ 9-11 |

5.      In an effort to narrowly tailor its sealing requests, Spotify does not request to seal all of its non-public information that appears in the parties' filings in connection with summary judgment motions and *Daubert* motions in the Actions.  Although some of the information reflected in those documents is non-public, Spotify recognizes the Court's need to balance Spotify's interests against the public's interest in access to court records and has sought to narrow its sealing requests as much as possible.

6.      Footnote 110 on page 33 of Exhibit 1 to the Motion to Exclude Singer Opinions references Spotify's data, analysis, and conclusions concerning its users, their demographics, and their preferences and activities across different platforms and operating systems, such as the costs and likelihood of switching to iOS.  Public disclosure of that information would competitively harm Spotify by giving Spotify's competitors granular insight into Spotify's

SULLIVAN & CROMWELL LLP

user base.  Such information can be used by Spotify's competitors to inform their own business strategies, including with respect to product strategy and distribution.  For example, competing app developers could use the information to understand trends in user behavior across platforms and then selectively devote their resources to optimize their apps differently.

7.     Spotify uses the information referenced in that footnote for a variety of strategic business purposes, including, but not limited to:

a.   developing business strategies to provide a better user experience and compete with other apps, including audio and music streaming service providers;

b.   identifying and negotiating with potential distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; and

c.   planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.

Disclosure of this information would undermine Spotify's ability to achieve its business goals and objectives, and generally harm Spotify's ability to compete and grow its business.

8.     Page 28 of Exhibit 8 to Match Plaintiffs' Motion for Partial Summary Judgment on Google's Counterclaims contains data regarding Spotify's app performance and revenues across different platforms that has not been made public by Spotify.  If this information were disclosed publicly, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations and market share on iOS and Android.  Spotify's competitors could seek to use this data to extrapolate trends in Spotify's app performance and revenues, which they could use to inform their own business strategies, including with respect to product strategy and distribution.  For example, competing app developers could use the data to better understand Spotify usage on iOS and Android and then selectively devote their resources to optimize their apps differently.  And the competitive harm to Spotify resulting from any public disclosure of these figures would be amplified because Spotify's competitors generally do not make the same level of platform-specific revenue detail publicly available.

SULLIVAN & CROMWELL LLP

-7-

DECL. OF SANDRA ALZETTA IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
CASE NOS. 3:21-MD-02981-JD; 3:20-CV-05761-JD; 3:21-CV-05227-JD; 3:22-CV-02746-JD; 3:20-CV-05671-JD

9.     Footnote 358 on page 76 and footnote 364 on page 77 of Exhibit 1 to the Motion to Exclude Singer Opinions; paragraph 513 on page 319 of Exhibit 2 to the Motion to Exclude Rysman Opinions; and paragraph 93 and footnote 192 on page 51 of Exhibit 4 to the Motion to Exclude Rysman Opinions reflect Spotify's internal projections and analyses of the impact that availability of different payment options would have on the number of subscribers to Spotify's Premium service.  Spotify would be competitively harmed in its business if those projections and analyses were disclosed to the public.  Those figures reflect Spotify's proprietary, internal data and analyses concerning its users' preferences and behavior, which can be used by Spotify's competitors to inform their own business strategies, including with respect to product strategy and distribution.  Spotify keeps this information confidential and does not disclose it to the public.

10.    If this information were disclosed publicly, Spotify would be competitively harmed in its business because it would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the impact of the availability of different payment options. If Spotify's payment and distribution partners knew the types of internal analyses that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses as a condition of continued partnership. This, in turn, could undermine the value of Spotify's existing payment and distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new partners, negatively impact deal economics, and generally harm Spotify's ability to compete and grow its business.

11.    This information also is used by Spotify for a variety of strategic business purposes, including, but not limited to:

a.  developing business strategies to compete with other audio and music streaming app providers, including Google;

b.  identifying and negotiating with potential payment and distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; and

Sullivan
&
Cromwell llp

-8-

c.  planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.

Disclosure of this information would undermine Spotify's ability to achieve its business goals and objectives, and generally harm Spotify's ability to compete and grow its business.

12.  Footnote 390 on page 82 and footnote 865 on page 180 of Exhibit 1 to the Motion to Exclude Singer Opinions; and paragraph 75 on page 62, paragraph 350 and footnote 724 on page 223, paragraph 537 on page 330-31, and pages E-2 and E-3 of Exhibit 2 to the Motion to Exclude Rysman Opinions contain information reflecting the terms of Spotify's carefully negotiated agreement with Google regarding User Choice Billing and the Google Play Store. The terms of that agreement—which was the first of its kind, as Spotify was Google's first User Choice Billing partner—are highly confidential and commercially sensitive, and Spotify would be competitively harmed in its business by the disclosure of those terms through any public filing. Public disclosure of the terms of the agreement would disadvantage Spotify in its future negotiations with other parties, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business. For those reasons, Spotify's business model depends on the terms of its distribution agreements such as this one remaining confidential.

13.  Further, those terms reveal information about Spotify's cost structures, and Spotify would be competitively harmed in its business if they were publicly disclosed. Spotify's competitors could use such information to inform their own business strategies, including with respect to product strategy and distribution.

14.  The remaining information described in the chart above pertains to Spotify's confidential negotiations with Google regarding the use of Google Play Billing, including specific rates and terms that were proposed by each party to the negotiations leading up to the execution of the User Choice Billing Agreement and the rationale for those proposals.[1]  If

---

[1]  Certain information in paragraph 513 on pages 319-20 and on page E-2 of Exhibit 2 to the Motion to Exclude Rysman Opinions also falls within this category.

SULLIVAN
&
CROMWELL LLP

-9-

DECL. OF SANDRA ALZETTA IN SUPPORT OF JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
CASE NOS. 3:21-MD-02981-JD; 3:20-CV-05761-JD; 3:21-CV-05227-JD; 3:22-CV-02746-JD; 3:20-CV-05671-JD

this information were publicly disclosed, Spotify would be competitively harmed in its business because the information could be used to unfairly disadvantage Spotify in contract negotiations with its payment partners and distribution partners (including original equipment manufacturers such as mobile, TV, gaming, and auto partners, as well as app providers and commercial partners). Disclosure of this information could further harm Spotify by giving Spotify's competitors insight into Spotify's strategic business priorities and decisions, which they could use to inform their own business strategies, including with respect to product strategy and distribution.

15.     Further, Spotify would be competitively harmed in its business if this information were to fall into the hands of distribution platforms or payment partners because, for example, disclosure of this information would undermine Spotify's position in negotiations, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its margins), and generally harm Spotify's ability to compete and grow its business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this July 12, 2023 in London, United Kingdom.


_____
Sandra Alzetta