John C. Hueston (SBN 164921)
jhueston@hueston.com
Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

Joseph A. Reiter (SBN 294976)
jreiter@hueston.com
Christine Woodin, SBN 295023)
cwoodin@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Counsel for Plaintiffs Match Group, LLC;*
*Humor Rainbow, Inc.; PlentyofFish Media*
*ULC; and People Media, Inc.*

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY**
**GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, Colorado 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for Consumer Plaintiffs*

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH**
**LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

*Caption continued on next page.*

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **NORTHERN DISTRICT OF CALIFORNIA**

11 **SAN FRANCISCO DIVISION**

12

| 13 | IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 3:21-md-02981-JD |
|---|---|---|
| 14 | | |
| | THIS DOCUMENT RELATES TO: | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE DEFENDANTS' COUNTERCLAIMS AGAINST EPIC AND MATCH** |

13 | IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION

14 THIS DOCUMENT RELATES TO:

15

16 *Epic Games Inc. v. Google LLC et al.*,

17 Case No. 3:20-cv-05671-JD

18 *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

19

20 *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

21

22 *Match Group, LLC, et al, v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD

23

Case No. 3:21-md-02981-JD

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE DEFENDANTS' COUNTERCLAIMS AGAINST EPIC AND MATCH**

Judge:   Hon. James Donato

Date:          September 7, 2023
Time:          10:00 a.m.
Courtroom:   11

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    INTRODUCTION ................................................................................................................. 1

3    ARGUMENT ......................................................................................................................... 2

4        I.    BIFURCATION WOULD MAKE TRIAL MORE EFFICIENT .......................... 2

5            A.    Google Substantially Overstates the Factual Overlap Between Its
                  Counterclaims and the Core Antitrust Claims. ......................................... 2
6

7            B.    Bifurcation Would Promote Efficiency by Narrowing the Triable
                  Issues.......................................................................................................... 5
8

         II.    BIFURCATION IS NECESSARY TO PREVENT PREJUDICE TO THE
9                STATES AND CONSUMERS................................................................................ 7

10           A.    Google's Opposition Confirms That a Failure to Bifurcate Would
                  Prejudice the States and Consumers. ......................................................... 7
11

12           B.    Bifurcation Would Not Prejudice Google. ............................................... 10

13    CONCLUSION..................................................................................................................... 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Andrade v. Rambosk*,
  No. 2:22-cv-482-JLB-KCD, 2023 WL 2077427 (M.D. Fla. Feb. 17, 2023)..............................8

4

5

*Blessing v. Sirius XM Radio Inc.*,
  756 F. Supp. 2d 445 (S.D.N.Y. 2010) ...................................................................................9

6

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) ..............................................................................................................5, 6

7

8

*Lazar v. Superior Court of Los Angeles*,
  12 Cal. 4th 631 (1996) ............................................................................................................6

9

10

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
  224 F. Supp. 3d 891 (N.D. Cal. 2016)....................................................................................6

11

*Memorex Corp. v. Int'l Bus. Machs. Corp.*,
  555 F.2d 1379 (9th Cir. 1977) ...............................................................................................2

12

13

*N. Pac. Ins. Co. v. Stucky*,
  CV 12-15-H-DLC, 2013 WL 5408837 (D. Mont. Sept. 25, 2013) .......................................8

14

15

*New York v. Meta Platforms, Inc.*,
  66 F.4th 288 (D.C. Cir. 2023)................................................................................................9

16

*Owens v. Haslett*,
  98 Cal. App. 2d 829 (1950) ...................................................................................................5

17

18

*Ryan v. Mike-Ron Corp.*,
  226 Cal. App. 2d 71 (1964) ...................................................................................................5

19

20

*SCFC ILC, Inc. v. Visa U.S.A. Inc.*,
  801 F. Supp. 517 (D. Utah 1992) ....................................................................................7, 10

21

*SEC v. Pac. W. Cap. Grp., Inc.*,
  No. CV 15-2563 FMO (FFMx), 2018 WL 6822607 (C.D. Cal. Feb. 13, 2018) .........................8

22

23

*Smith v. Off. of Alameda Cnty. Pub. Def.*,
  No. 20-cv-08534-JST, 2022 WL 20016848 (N.D. Cal. Aug. 30, 2022) .....................................8

24

**Other Authorities**

25

26

Sameer Samat, *Listening to Developer Feedback to Improve Google Play*, ANDROID
  DEVELOPERS BLOG (Sept. 28, 2020), https://android-developers.googleblog.com/2020/09/
  listening-to-developer-feedback-to.html ................................................................................4

27

28

ii

1

**Rules**

2

Fed. R. Civ. P. 42.................................................................................................................1, 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1

## **INTRODUCTION**

2

This is a complex antitrust case involving four different Plaintiff groups, conduct ranging

3 more than a decade, and difficult economic and technological issues. The jury should be able to focus

4 on the complex issues at the core of the antitrust claims without the distraction of irrelevant evidence

5 and legal theories regarding alleged misconduct of two individual Plaintiffs. This is particularly true

6 where, as here, bifurcating that unrelated evidence against Epic and Match will promote the

7 efficiency of the trial as a whole and prevent undue prejudice to the State and Consumer Plaintiffs.

8

Google does not dispute that the Court can exercise its discretion to bifurcate Google's

9 counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize," or that any one

10 of those grounds is sufficient. Fed. R. Civ. P. 42(b). Nor does Google dispute that the vast majority

11 of evidence that Plaintiffs will introduce at trial to support their antitrust claims—*e.g.*, Google's

12 agreements with carriers, OEMs, and would-be competitors—has nothing to do with Google's

13 counterclaims. Mot. at 2. Google fails to rebut the substantial efficiencies gained from trying the

14 counterclaims after the common antitrust claims—including the strong possibility that the

15 counterclaims would not have to be tried *at all*. Moreover, Google's counterclaims against Epic and

16 Match relate to individualized issues that are separate from the core antitrust claims. Trying those

17 claims together with the core antitrust claims risks substantial prejudice to the States and Consumers,

18 who had no hand in the misconduct that Google alleges against Epic and Match. These circumstances

19 provide more than sufficient grounds to bifurcate Google's counterclaims against Epic and Match.

20

Instead of directly addressing Plaintiffs' arguments, Google attempts to argue that bifurcation

21 would be inefficient based on its plan to present to the jury "much of the same evidence to defend

22 against Plaintiffs' antitrust claims and prove its counterclaims." Opp. at 6. In effect, Google argues

23 that its defenses to Plaintiffs' claims that Google monopolized markets that impact billions of

24 individual users and tens of thousands of developers worldwide somehow depend on the specific

25 details of Epic's and Match's alleged conduct. Google's opposition thus exposes its true aim: to

26 present evidence of Epic's and Match's alleged bad faith conduct in an attempt to improperly

27

28

1    influence the jury's assessment of Plaintiffs' common antitrust claims. The Court should reject these

2    efforts, and grant Plaintiffs' motion to bifurcate Google's counterclaims against Epic and Match.

3                                              **ARGUMENT**

4    **I.       BIFURCATION WOULD MAKE TRIAL MORE EFFICIENT**

5           Google's opposition confirms that bifurcation would provide significant efficiency benefits.

6    *First*, as Google's opposition demonstrates, any factual overlap would be limited, and the jury

7    would benefit from separating the distinct counterclaim issues from the complex antitrust analysis.

8    *Second*, Google fails to rebut the efficiencies of bifurcation identified in Plaintiffs' opening motion.

9           **A.      Google Substantially Overstates the Factual Overlap Between Its Counterclaims
                      and the Core Antitrust Claims.**
10
         Google asserts that it "would present much of the same evidence to defend against Plaintiffs'
11
     antitrust claims and prove its counterclaims." Opp. at 6. Specifically, Google insists that it intends to
12
     present evidence of the Epic and Match conduct that forms the basis of its respective counterclaims
13
     as a central aspect of its antitrust defense.[1] *Id.* at 5. Even taking these assertions as true, Google does
14
     not argue that its antitrust defenses require anywhere near the quantum of evidence about the
15
     specifics of Epic's and Match's alleged conduct needed to prove its counterclaims.
16
         Consider the conduct Google alleges against Epic. Google's opposition purports to explain
17
     Epic's decision to circumvent Google's billing platform. *Id.* ("Epic secretly engineered a software
18
     mechanism to allow users to pay with Epic's billing system, sidestepping Google and the Google
19
     Play Billing policy completely."). But there is a significant difference between (1) pointing to Epic
20
     at trial as an example of how developers might attempt to "sidestep" Google Play Billing, and
21
     (2) spending hours—possibly days—of trial time presenting the details of Epic's "Project Liberty,"
22
     Epic's engagement of a public relations firm to shape the narrative around the project, and Epic's
23
     other alleged bad faith conduct. Those details are irrelevant to understanding Google's defenses to
24

25   ─────────────────────────

26   [1] As argued in Plaintiffs' opening brief, the only affirmative defense that conceivably relates to
     Google's counterclaims is unclean hands, but "'[u]nclean hands' has not been recognized as a
27   defense to an antitrust action for many years." *Memorex Corp. v. Int'l Bus. Machs. Corp.*, 555 F.2d
     1379, 1381 (9th Cir. 1977); Mot. at 10.
28

1    the common antitrust issues. Tellingly, Google's most recent witness list indicates it may or will call

2    *nine* Epic witnesses live and may designate deposition testimony from four further Epic witnesses.

3    Mason Decl. Ex. 1 at 1–3. Plaintiffs expect that number will be significantly reduced if the

4    counterclaims are bifurcated.

5         Google also asserts that it plans to defend against Plaintiffs' antitrust claims by presenting

6    evidence about Epic's "hotfix" that enabled its users to use Epic's payment solution as an alternative

7    to Google Play Billing. Opp. at 6. Google contends that the hotfix shows that Google cannot trust

8    even sophisticated developers like Epic, thereby justifying Google's imposition of "unknown

9    sources" warnings even for well-known, trusted developers. *Id.* But Google does not explain how

10   evidence that Epic attempted to circumvent Google's anticompetitive tie supports Google's argument

11   that major developers cannot be trusted to ensure they do not infect their own customers' devices

12   with malware. Simply put, one developer's strategy to publicly circumvent Google's tie to draw

13   attention to Google's unlawful practices is no defense to Google's overbroad security warnings.[2]

14        Match's alleged conduct is similarly irrelevant to Google's defense to the common antitrust

15   claims. Google says it intends to argue at trial that its Google Play Billing tie is necessary because

16   "it is the most efficient way to ensure that Google is actually paid for the value it delivers through

17   Android and the Play store." Opp. at 5. And that "[t]o prove that point at trial," it will present evidence

18   that "Match evaded paying the service fee it owed to Google for many years, and after Google

19   attempted to enforce its billing requirement against Match, Match deceived Google about its

20   intentions to comply." *Id.* But that claim has nothing to do with showing the so-called "efficiencies"

21   of an anticompetitive tie as a monetization strategy in the context of the antitrust trial.

22

23

24   _____

25   [2] Google also claims that it will need to address the removal of *Fortnite* from the Play Store as part
     of defending its antitrust claims. Opp. at 7. But brief testimony explaining that *Fortnite* was removed
26   from the Play Store for failure to comply with Google's policies—a fact that is not in dispute—is a
     far cry from the exhaustive testimony that would be necessary to tell the story detailed in Google's
27   counterclaims about how Epic supposedly concocted an elaborate scheme to deceive Google, which
     resulted in *Fortnite* being removed.
28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1    Furthermore, as the briefing on Match's Motion for Partial Summary Judgment demonstrates,

2  Google's counterclaims (if they survive the antitrust trial) will require resolution of issues that have

3  *absolutely nothing* to do with Google's tie, including questions of contract modification, waiver,

4  consent, consideration, rescission, causation, and damages. *See* Dkt. 488-1 at 11–15; Dkt. 507-1 at

5  11–16; Dkt. 528-1 at 3–8. In fact, Google lists *six* Match witnesses it may or will call at trial—far

6  more than necessary to present its purported defense to the illegal tie. Mason Decl. Ex. 1 at 1–3.

7    Google's other examples of factual overlap between its counterclaims and the core antitrust

8  claims are similarly strained. The fact that one form contract, the DDA, is involved in both the

9  antitrust claims and counterclaims does not mean bifurcation will introduce complexities, as Google

10  asserts. *See* Opp. at 6. The first phase of trial would determine whether the agreement violates the

11  antitrust laws. Then, *and only if needed*, the same jury in a second phase will decide whether the

12  agreement was breached. No inefficiencies would arise from separating consideration of these

13  distinct questions. To the contrary, substantial efficiency would result if the jury never even needs to

14  consider the counterclaims. *See infra* § I.B; Mot. at 11–12.

15    Likewise, although the antitrust claims and Google's counterclaims against Match implicate

16  Google's September 2020 statements "[c]larifying [its] policies regarding who needs to use Google

17  Play's billing system and who does not," the evidence about those statements needed to try both sets

18  of claims will not significantly overlap. Sameer Samat, *Listening to Developer Feedback to Improve*

19  *Google Play*, ANDROID DEVELOPERS BLOG (Sept. 28, 2020), https://android-developers.

20  googleblog.com/2020/09/listening-to-developer-feedback-to.html.   The   paragraphs   of   Match's

21  Answer that Google cites in support of its claims of overlap *admit* that Google publicly announced a

22  policy change that would have ultimately required Match to use Google Play Billing exclusively as

23  of March 31, 2022; that will not be a point of dispute. Opp. at 7 (citing Dkt. 335 ¶ 48). And Google

24  has not attempted to show that evidence regarding waiver, modification, and consideration will

25

26

27

28

- 4 -
REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1    overlap with the evidence needed to defend against the common antitrust claims. *See* Dkt. 507-1 at

2    11–16; Dkt. 528-1 at 3–8.[3]

3                  **B.        Bifurcation Would Promote Efficiency by Narrowing the Triable Issues.**

4            As Plaintiffs explained in their motion, bifurcation would be efficient because the outcome

5    of the antitrust phase would either obviate the need for, or significantly narrow the issues presented

6    in, the counterclaim trial. Mot. at 11–13. If the developer agreements violate the antitrust laws,

7    Google's counterclaims fail and will be disposed of without the need for the jury (and Google's

8    witnesses) to sit through days of additional testimony.

9            Google's only response is to elide hornbook law (and ignore Plaintiffs' arguments) that in the

10   context of the Sherman Act, "illegal promises will not be enforced." *Kaiser Steel Corp. v. Mullins*,

11   455 U.S. 72, 77–82 (1982). Unable to escape this black-letter doctrine (and without confronting it),

12   Google resorts to mischaracterizing Plaintiffs' arguments as "equivalent to saying that because they

13   believe Google charges a *supracompetitive* service fee, they should not have to pay anything *at all*

14   for the value they received from the Google Play store." Opp. at 9. That is wrong: Plaintiffs claim

15   that they do not owe Google anything on Google's counterclaims because Google's agreements and

16   tying practice *violate the antitrust laws*.

17          Google also cites no authority for the proposition that it could salvage a tie found unlawful

18   on a tenuous extra-contractual right to recover for the "value" it provided Epic and Match. The law

19   is the opposite. Put simply, "a guilty party to an illegal contract cannot recover in quasi contract for

20   the benefit conferred." *Ryan v. Mike-Ron Corp.*, 226 Cal. App. 2d 71, 75 (1964) ("That the

21   application of this rule may leave one of the parties unjustly enriched is generally deemed

22   unimportant since the purpose of the rule is not to effect justice between the parties, but to discourage

23   transactions in derogation of the public interest."); *Owens v. Haslett*, 98 Cal. App. 2d 829, 833 (1950)

24   (the law "precludes recovery on principles of quasicontract for benefits conferred under an illegal

25

26   _____

27   [3] Google also asserts that the September 2020 announcement overlaps with the States' own state-law
     claims. Opp. at 6. But the States do not currently intend to spend any substantial amount of trial time
     on their claims concerning the misleading nature of Google's September 2020 statements.

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1  bargain, as well as an action on the bargain itself" (citation omitted)). Google does not even attempt

2  to address the caselaw cited in Plaintiffs' motion on this point.[4]

3       Google's false promise claim against Match will likewise fail if the DDA is determined to be

4  illegal. Google (again) ignores Plaintiffs' arguments. As explained in Plaintiffs' motion, a legal and

5  enforceable DDA is a necessary factual predicate for Google's false promise claim. Google claims

6  that Match had an obligation to comply with the DDA and falsely promised it would do so. And if

7  the DDA were found illegal, any promise by Match to comply would *also* not be enforceable. *See*

8  *Kaiser Steel*, 455 U.S. at 77–82. Additionally, Google seeks damages in the form of "service fees

9  that Match owes Google" due to "noncompliance with Google's payments policies." Opp. at 9 n.2;

10  *id.* at 7 ("[T]here will be damages evidence for the counterclaims . . . principally a calculation of lost

11  service fees based on the number of transactions after specific dates."). But as before, if those policies

12  in the DDA are determined to be illegal, then Google has no entitlement to damages or justifiable

13  reliance—essential elements of its false promise claim. *Marentes v. State Farm Mut. Auto. Ins. Co.*,

14  224 F. Supp. 3d 891, 922 (N.D. Cal. 2016) (granting summary judgment where plaintiffs "have not

15  shown reliance resulting in damages"; therefore, "Plaintiffs' claim for promissory fraud fails").

16  Google's only cited case—*Lazar*—is inapposite, as it concerns an employment contract that was not

17  found to be illegal. *Lazar*, 12 Cal. 4th at 635. It does not concern whether a party may recover for a

18  false promise after a bargain was found illegal, or whether Google may justifiably rely on an illegal

19  bargain, which it cannot.

20       Trying the antitrust claims first would therefore be most efficient because it would either

21  moot Google's counterclaims entirely or significantly narrow the issues for the second phase, which

22  could eliminate days of unnecessary testimony. Google's claim that Plaintiffs' proposed trial

23  structure would drag the trial out to the December holidays is thus misplaced. Opp. at 1, 12. To the

24

25

---

26  [4] The only case Google cites for its assertion that its "claims for unjust enrichment against Epic and
    Match . . . will be heard regardless of the jury's findings on Plaintiffs' antitrust claims" is *Lazar v.*

27  *Superior Court of Los Angeles*, 12 Cal. 4th 631, 638 (1996), which does not even mention unjust
    enrichment. Opp. at 9.

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1  contrary, Google's current witness list shows that substantial time could be *saved* by bifurcation; that

2  list currently includes a total of *19* Epic and Match witnesses—the same as the 19 Google witnesses

3  that are listed. Mason Decl. Ex. 1 at 2–3.

4         Finally, given the gravity and import of Plaintiffs' antitrust claims in comparison to Google's

5  individualized counterclaims, bifurcation would serve the important interests of judicial economy by

6  preventing the counterclaims from "undermin[ing] the focus of the trier-of-fact on the important

7  antitrust issues raised in this action." *SCFC ILC, Inc. v. Visa U.S.A. Inc.*, 801 F. Supp. 517, 528 (D.

8  Utah 1992). Google's attempt to distinguish *SCFC* egregiously mischaracterizes that case. Opp. at 8.

9  There, the court noted that "*some* evidence pertinent to the non-antitrust counterclaims, particularly

10 *those dealing with fraud and bad faith*, probably will not be relevant to the antitrust dispute." *Id.* at

11 528 (emphases added). The same is true here. And while Google has identified some limited factual

12 overlap, significant portions of the counterclaim evidence, and in particular the evidence relating to

13 Epic's and Match's alleged bad faith dealings with Google, will not overlap with the evidence

14 presented in connection with the core antitrust claims. Bifurcation would better respect the jury's

15 time and allow for a more efficient and comprehensible presentation of the case.

16 **II.    BIFURCATION IS NECESSARY TO PREVENT PREJUDICE TO THE STATES
        AND CONSUMERS**

17

18      **A.    Google's Opposition Confirms That a Failure to Bifurcate Would Prejudice the
              States and Consumers.**

19      Google hardly engages with the prejudice the State and Consumer Plaintiffs would suffer if

20 the counterclaims were tried with the core antitrust claims. *See* Mot. at 4–6. Google's primary

21 response is that no jury would "confuse the Attorneys General of 39 states and territories with the

22 developers of *Tinder* and *Fortnite*." Opp. at 10. Of course, Plaintiffs do not believe the jury would

23 confuse an Attorney General's Office for an app developer. But the real and very substantial risk—

24 one that Google essentially ignores—is that, given the streamlined joint trial, the jury could

25 understand that the Plaintiffs are presenting a *single case*, and could hold conduct attributable to only

26 one plaintiff against all of the Plaintiffs when considering their common antitrust claims. An

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1   instruction reminding the jury that Epic and Match are distinct from the States and Consumers would

2   do nothing to address that concern. Opp. at 12.[5]

3        Google expressly confirms that it intends to use evidence of what it describes as bad faith

4   conduct by Epic and Match to try to "rebut[] Plaintiffs' notion that all major developers can be

5   trusted." Opp. at 6. Using Epic's and Match's alleged bad acts to impugn *all developers* reveals

6   Google's intention to use this counterclaim evidence to mislead the jury into rendering a verdict in

7   Google's favor on the common antitrust claims. That is a naked effort to tie the fate of the States and

8   Consumers' claims to the jury's assessment of Epic's and Match's alleged conduct. That is precisely

9   the prejudice the States and Consumers would suffer from trying the counterclaims and common

10  antitrust claims together.

11        Google's efforts to distinguish the specific types of prejudice that other courts have found to

12  warrant bifurcation are without merit. Opp. at 11. It is indisputable that courts can, and regularly do,

13  bifurcate claims in precisely the way Plaintiffs propose here in order to avoid prejudicial spill over

14  from one aspect of a case to another. *See* Mot. at 12. There is little doubt that the States and

15  Consumers *would* suffer prejudice without bifurcation. At a minimum, inclusion of Google's

16  counterclaims would "undermine" the jury's focus "on the important antitrust issues raised in this

17  action." *SCFC*, 801 F. Supp. at 528.

18        Google's opposition also places undue focus on the *legal* simplicity of Google's

19  counterclaims, without engaging with the extensive counterclaim-specific *fact* evidence that Google

20  appears intent on presenting to the jury. *See* Mot. at 4–5; Opp. at 5–6. Google simply ignores the jury

21

22  _____

23  [5] None of the cases Google cites (notably without parentheticals or quotations) addresses a remotely similar situation. *See N. Pac. Ins. Co. v. Stucky*, CV 12-15-H-DLC, 2013 WL 5408837, at *3 (D. Mont. Sept. 25, 2013) (no bifurcation of damages and liability in insurance coverage dispute where

24  jury instructed to first make coverage determination); *Smith v. Off. of Alameda Cnty. Pub. Def.*, No. 20-cv-08534-JST, 2022 WL 20016848, at *1 (N.D. Cal. Aug. 30, 2022) (denying bifurcation of

25  *Monell* discovery from individual discovery without prejudice to renewal); *Andrade v. Rambosk*, No. 2:22-cv-482-JLB-KCD, 2023 WL 2077427, at *2–3 (M.D. Fla. Feb. 17, 2023) (same); *SEC v. Pac.*

26  *W. Cap. Grp., Inc.*, No. CV 15-2563 FMO (FFMx), 2018 WL 6822607, at *1–2 (C.D. Cal. Feb. 13,

27  2018) (denying motion to bifurcate threshold issue of whether "life settlements at issue are securities").

28

1   confusion that could result from hours of testimony on contract-based claims that have nothing to do

2   with the common antitrust claims. Indeed, the main case Google cites for the proposition that "juries

3   regularly hear counterclaims in complicated cases," Opp. at 13, did not even involve counterclaims.

4   *See Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 449 (S.D.N.Y. 2010). The other cases

5   Google cites are outlier patent cases, which Google admits elsewhere rely on "a body of case law"

6   that is inapplicable here. Opp. at 8.

7          Finally, Google adopts a strikingly dismissive tone with respect to the States' sovereign

8   interests in prosecuting their claims on behalf of the citizens they represent—even placing

9   "sovereign" in scare quotes. Opp. at 2. The Plaintiff States' sovereignty is not in dispute. Google

10  very clearly intends to insult the States' sovereignty by hoping that the alleged bad faith conduct it

11  intends to introduce against Epic and Match in support of its counterclaims rubs off on the States.

12         Google ignores the on-point cases cited by Plaintiffs establishing that the States' sovereign

13  interests are in fact a strong basis to bifurcate the counterclaims here. *See* Mot. at 6 (citing cases).

14  Google instead relies on *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023), which is

15  inapposite. There, when the D.C. Circuit wrote that the States should not "be treated as 'special'

16  persons,'" it was interpreting "persons" in Section 16 of the Clayton Act, rejecting the States'

17  argument that laches did not apply to their antitrust claims. *Id.* at 299.

18         According to Google, the States somehow sacrificed any sovereign interest they had when

19  they chose to intervene in existing litigation and opted to litigate their claims to enforce the antitrust

20  laws on behalf of their citizens alongside private actors for the sake of efficiency. Opp. at 10–11. It

21  would be a perverse rule to require the States to pursue the least efficient means of litigating their

22  claims—and waste judicial resources—in order to avoid sacrificing the deference they are due as

23  sovereigns. In any event, the States are hardly asking to be treated as "special;" they are asking to

24  get a fair shot at trying their extremely significant antitrust claims without being saddled with alleged

25  bad faith conduct evidence concerning two private plaintiffs. That relief is squarely within the

26  Court's discretion under Federal Rule of Civil Procedure 42.

27

28

1

**B.      Bifurcation Would Not Prejudice Google.**

2      In contrast, Google would not be prejudiced by bifurcation. Google claims no prejudice to its

3  presentation in the core antitrust trial, and Google will face no prejudice to its presentation of its

4  counterclaims if they are mooted by resolution of the antitrust claims. *See infra* § 1.B; Mot. at 11–

5  12. The primary source of prejudice Google identifies is that—if the counterclaims survive—some

6  of its employees may have to come to court twice. Opp. at 12. Notably, Google does not identify

7  which witnesses it would call for both its antitrust defense and counterclaims. Even assuming such a

8  witness exists, Google does not explain why it would be necessary to call that witness twice, or why

9  it would be a significant burden to divide that witness's testimony between phases, particularly given

10  that Google is headquartered in the Bay Area. *See SCFC*, 801 F. Supp. at 528 (bifurcation will "avoid

11  the possibility of unfair prejudice to either party" and "because some evidence pertinent to the non-

12  antitrust counterclaims, particularly those dealing with fraud and bad faith, probably will not be

13  relevant to the antitrust dispute, the first proceeding may be shorter than originally anticipated"). For

14  the reasons enumerated above, it is not necessarily the case that *any* employee would need to come

15  to court twice, especially if the common antitrust trial moots Google's counterclaims. And even if a

16  second phase were required, any burden would be quite minimal, as Google overstates the factual

17  relationship between its antitrust defenses and its counterclaims. Any prejudice argument by Google

18  is purely speculative.

19                                  **CONCLUSION**

20      For the foregoing reasons, Plaintiffs respectfully request that the Court grant the relief

21  requested in their motion, namely that the Court bifurcate the trial of Plaintiffs' common antitrust

22  claims from Google's counterclaims against Epic and Match and order that, should Google's

23  counterclaims remain viable after the verdict on the antitrust claims, they will be tried to the same

24  jury in a second phase against Epic and Match only.

25

26

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1    DATED:  August 17, 2023                OFFICE OF THE UTAH ATTORNEY GENERAL

2

3
                                           By:   */s/ Brendan P. Glackin*
4                                                Brendan P. Glackin
                                                 Lauren M. Weinstein
5                                                *Attorneys for Plaintiff States*

6

7    DATED:  August 17, 2023                BARTLIT BECK LLP

8

9
                                           By:   */s/ Karma M. Giulianelli*
10                                               Karma M. Giulianelli
                                                 *Co-Lead Counsel for Consumer Plaintiffs*
11

12

13   DATED:  August 17, 2023                KAPLAN FOX & KILSHEIMER LLP

14

15
                                           By:   */s/ Hae Sung Nam*
16                                               Hae Sung Nam
                                                 *Co-Lead Counsel for Consumer Plaintiffs*
17

18   DATED:  August 17, 2023                FAEGRE DRINKER BIDDLE & REATH LLP

19

20
                                           By:   */s/ Paul J. Riehle*
21                                               Paul J. Riehle
                                                 *Counsel for Plaintiff Epic Games, Inc.*
22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1   DATED:  August 17, 2023                CRAVATH, SWAINE & MOORE LLP

2

3                                          By:   */s/ Gary A. Bornstein*

4                                                Gary A. Bornstein (*pro hac vice*)
                                                 *Counsel for Plaintiff Epic Games, Inc.*
5

6

7   DATED:  August 17, 2023                HUESTON HENNIGAN LLP

8

9                                          By:   */s/ Douglas J. Dixon*

10                                               Douglas J. Dixon
                                                 *Attorney for Plaintiffs Match Group, LLC, Humor*
11                                               *Rainbow, Inc., PlentyofFish Media ULC, and*
                                                 *People Media, Inc.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

1

**E-FILING ATTESTATION**

2

I, Douglas J. Dixon, am the ECF User whose ID and password are being used to file

3

this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the

4

signatories identified above has concurred in this filing.

5

6

7

*/s/ Douglas J. Dixon*

Douglas J. Dixon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD