1  Brian C. Rocca, S.B. #221576
   brian.rocca@morganlewis.com
2  Sujal J. Shah, S.B. #215230
   sujal.shah@morganlewis.com
3  Michelle Park Chiu, S.B. #248421
   michelle.chiu@morganlewis.com
4  Minna Lo Naranjo, S.B. #259005
   minna.naranjo@morganlewis.com
5  Rishi P. Satia, S.B. #301958
   rishi.satia@morganlewis.com
6  **MORGAN, LEWIS & BOCKIUS LLP**
   One Market, Spear Street Tower
7  San Francisco, CA 94105
   Telephone: (415) 442-1000
8
   Richard S. Taffet, *pro hac vice*
9  richard.taffet@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS LLP**
10 101 Park Avenue
   New York, NY 10178
11 Telephone: (212) 309-6000
12 *Counsel for Defendants Google LLC, et al.*
13

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. # 336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

14 Jonathan I. Kravis, *pro hac vice*
   jonathan.kravis@mto.com
15 Lauren Bell, *pro hac vice*
   lauren.bell@mto.com
16 **MUNGER, TOLLES & OLSON LLP**
   601 Massachusetts Avenue NW, Suite 500E
17 Washington, D.C. 20001
   Telephone: (202) 220-1100
18
   Neal Kumar Katyal, *pro hac vice*
19 neal.katyal@hoganlovells.com
   Jessica L. Ellsworth, *pro hac vice*
20 jessica.ellsworth@hoganlovells.com
   **HOGAN LOVELLS US LLP**
21 555 Thirteenth Street, NW
   Washington, D.C. 20004
22 Telephone: (202) 637-5600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation,* Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.,* Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Judge:       Hon. James Donato |

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ........................................................................................................1

II. PLAINTIFFS' CLAIMS WILL FAIL AT TRIAL ...................................................2

    A.  Plaintiffs' Section 2 Monopolization Claim Will Fail ................................2

        1.  Google Does Not Have Monopoly Power Because It Competes with Apple and Other Platforms ......................................................2

        2.  Plaintiffs Cannot Prove that Google Engaged in Anticompetitive Conduct that Harmed Users or Developers ......................................5

        3.  Google's Conduct Enhanced Competition with Apple and Benefited Consumers .................................................................6

        4.  Plaintiffs Cannot Prove that Google Could Have Generated these Massive Benefits With a Different Business Model ...........................6

        5.  Balancing is Not Required, but Google's Conduct on Balance Benefitted Users and Developers .................................................7

    B.  Plaintiffs' Section 1 and Cartwright Act Claims Will Fail .........................7

    C.  Plaintiffs' Tying Claims Will Fail .............................................................7

    D.  Plaintiffs' *Per Se* Claims Regarding the Games Velocity Program Will Fail...........8

    E.  Match's Unique Claims Will Fail ..............................................................9

        1.  Match's Attempted Monopolization Claim Will Fail .........................9

        2.  Match's Exclusive Dealing Will Fail .................................................9

        3.  Match's Tortious Interference Claims Will Fail ...............................9

III. GOOGLE WILL PREVAIL ON ITS COUNTERCLAIMS...............................................10

    A.  Epic Intentionally Deceived Google Using a Secret Scheme ...................10

    B.  Match Made False Promises and Breached its Contract with Google ....................10

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,*
    65 F.3d 1406 (7th Cir. 1995) ............................................................................................4

5

6

*Cascade Health Sols. v. PeaceHealth,*
    515 F.3d 883 (9th Cir. 2008) .............................................................................................8

7

*Cmty. Publishers, Inc. v. Donrey Corp.,*
    892 F. Supp. 1146 (W.D. Ark. 1995) ...............................................................................2

8

*Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.,*
    611 F.3d 495 (9th Cir. 2010) .............................................................................................9

9

10

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
    504 U.S. 451 (1992) ...........................................................................................................3

11

*Epic Games, Inc. v. Apple, Inc.* ("*Apple II*"),
    67 F.4th 946 (9th Cir. 2023) ................................................................................ 2, passim

12

13

*Epic Games, Inc. v. Apple Inc.* ("*Apple I*"),
    559 F. Supp. 3d 898 (N.D. Cal. 2021) ................................................................ 3, passim

14

*FTC v. Qualcomm, Inc.,*
    969 F.3d 974 (9th Cir. 2020) ................................................................................2, 5, 6, 7

15

16

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.,*
    386 F.3d 485 (2d Cir. 2004) ..............................................................................................2

17

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ...........................................................................................4

18

19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ...........................................................................................................9

20

*Nat'l Coll. Athletic Assoc. v. Alston,*
    141 S. Ct. 2141 (2021) ...................................................................................................3, 6

21

22

*O'Bannon v. NCAA,*
    802 F.3d 1049 (9th Cir. 2015) ...........................................................................................6

23

*Ohio v. Am. Express Co.,*
    138 S. Ct. 2274 (2018) ..............................................................................................2, 5, 6

24

*Paladin Assocs., Inc. v. Montana Power Co.,*
    328 F.3d 1145 (9th Cir. 2003) ...........................................................................................8

25

26

*PLS.Com, LLC v. Nat'l Ass'n of Realtors,*
    32 F.4th 824 (9th Cir. 2022) ..............................................................................................5

27

28

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995)....................................................................................2, 3, 5, 9

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)....................................................................................................6

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989)..................................................................................................2

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).................................................................................................................5

STATE CASES

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020)...........................................................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003).........................................................................................................10

FEDERAL STATUTES

15 U.S.C. § 1...............................................................................................................................7

15 U.S.C. § 2.................................................................................................................2, 4, 5, 9

## I. **<u>INTRODUCTION</u>**

Google created Android to provide more choice in the mobile ecosystem.  Instead of building another walled garden, Android offered a new open approach, putting choice in the hands of users and developers and harnessing the innovation of phone manufacturers.  Unlike Apple, which controls all manufacturing of iPhones and distributing apps for iPhones, Google enables phone manufacturers to build a variety of Android phones at different prices.  That business model has unlocked tremendous value for users and developers:  more and cheaper devices, millions of free and safe apps, and access to billions of potential customers.  The conduct challenged by Epic and Match—agreements with phone manufacturers and developers, security policies, and a service fee model—is how Android competes with Apple's iOS and other platforms.

App stores are a critical part of the competition between Android and iOS because applications (or apps) are central to the experience that a smartphone platform provides to users. If apps are hard to find, or difficult to acquire safely and securely, or simply do not exist on Android, users are more likely to buy an iPhone.  Thus, to compete with iOS, Google operates an app store that competes with Apple's App Store.  For developers, the Play store provides a way to showcase their apps to millions of users around the world, as well as software development tools to help them build, refine, and market their apps.  For users, the Play store provides a safe, secure, reliable way to find and acquire the apps that define the smartphone experience today.

Those users pay nothing to use the Play store.  When millions of users download free apps like Epic's *Fortnite* or Match's dating apps, Google charges them nothing.  Developers pay service fees only when they make money from selling subscriptions or digital add-ons inside apps downloaded from the Play store.  Epic and Match disagree with how Google has chosen to charge for its services and simply do not want to pay for them.  They seek to misuse the antitrust laws to upend an ecosystem that has enhanced competition, and benefited consumers and developers, based on the fiction that Google does not compete against Apple.  Epic asserted the same theory against Apple.  It lost.  Plaintiffs' claims against Google will fail for many of the same reasons (and others).  The Ninth Circuit held that Apple has not unlawfully monopolized the market by requiring all iPhone users to use the Apple App Store.  The evidence will show that Google, which

-1-

1  enables users to choose between app stores, has not violated the antitrust laws either.

2  **II.      PLAINTIFFS' CLAIMS WILL FAIL AT TRIAL**

3      **A.      Plaintiffs' Section 2 Monopolization Claim Will Fail**

4      Plaintiffs assert that Google engaged in unlawful monopolization in violation of Section 2

5  of the Sherman Act, 15 U.S.C. § 2.  "To establish liability under § 2, a plaintiff must show: (a) the

6  possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance

7  of that power; and (c) causal antitrust injury."  *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 990 (9th

8  Cir. 2020).  Plaintiffs cannot prove these elements.

9          **1.      Google Does Not Have Monopoly Power Because It Competes with
   Apple and Other Platforms**

10

11      Plaintiffs cannot prove that Google has monopoly power because the Google Play store

12  competes with the Apple App Store and other platforms.  "Market power is the ability to raise

13  price profitably *by restricting output*."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2288 (2018);

14  *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  Monopoly power

15  differs in degree from market power, requiring "something greater."  *Epic Games, Inc. v. Apple,
   Inc.* ("*Apple II*"), 67 F.4th 946, 998 (9th Cir. 2023).  To prove monopoly power, Plaintiffs must

16  first define a proper relevant antitrust market.  Indeed, "[a] threshold step in any antitrust case is to

17  accurately define the relevant market, which refers to 'the area of effective competition.'"

18  *Qualcomm*, 969 F.3d at 992.  "Without a definition of the market there is no way to measure the

19  defendant's ability to lessen or destroy competition."  *Amex*, 138 S. Ct. at 2285 (cleaned up).

20      "A relevant market contains both a geographic component and a product or service

21  component."  *Apple II*, 67 F.4th at 975.  "The goal in defining the relevant market is to identify the

22  market participants and competitive pressures that restrain an individual firm's ability to raise

23  prices or restrict output."  *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 496 (2d

24  Cir. 2004); *see also Cmty. Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146, 1153 (W.D. Ark.

25  1995) ("market constraints" also "limit one's ability to reduce quality or service below

26  competitive levels").  The market is "the group or groups of sellers or producers who have actual

27  or potential ability to deprive each other of significant levels of business."  *Thurman Indus., Inc. v.*

28

1   *Pay 'N Pak Stores, In*c., 875 F.2d 1369, 1374 (9th Cir. 1989).  Thus, a relevant market must reflect

2   "commercial realities."  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482

3   (1992); *see also Nat'l Coll. Athletic Assoc. v. Alston*, 141 S. Ct. 2141, 2158 (2021) (requiring

4   "careful analysis of market realities.").

5          Plaintiffs' alleged product markets ignore commercial realities.  Plaintiffs allege relevant

6   markets for (1) distribution of apps for Android devices, and (2) billing services for transactions

7   inside those apps.  Plaintiffs thus claim that the Google Play store does not compete with the

8   Apple App Store.  The district court and the Ninth Circuit rejected this theory.  *Epic Games, Inc.*

9   *v. Apple Inc.* ("*Apple I*"), 559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd in part, rev'd in part*, *Apple*

10  *II*, 67 F.4th 946.  Epic "structured its lawsuit to argue that Apple does not compete with anyone; it

11  is a monopoly of one." *Apple I*, 559 F. Supp. 3d at 921.  But the Court found that "Epic Games'

12  sole focus on iOS devices simply ignores the market reality that is available to consumers." *Id.* at

13  1025.  The Court found that "Apple and Google compete with one another," *id.* at 992 n.454, and

14  that Google "operates in the same market" as Apple, describing Google as "Apple's main

15  competitor," *id.* at 1031, 1036.  The Ninth Circuit affirmed in a decision describing the Google

16  Play store as the App Store's "main competitor."  *Apple II*, 67 F.4th at 985.

17         As explained in Google's motion *in limine* (No. 1), collateral estoppel precludes Epic from

18  seeking a different decision here.  It cannot be that the Apple App Store competes against the

19  Google Play store for purposes of Epic's claims against Apple, but not Epic's claims against

20  Google.  Regardless, the evidence will show that the Play store and the Apple App Store compete

21  intensely on price, quality, and security.  Google cannot have monopoly power when it competes

22  with Apple.  *E.g.*, *Rebel Oil*, 51 F.3d at 1443 (only "one firm alone" can monopolize).

23         Because apps are central to the smartphone experience, the Play store must compete with

24  the Apple App Store for Android to compete against Apple's iOS and other platforms.  The law

25  presumes that when consumers buy devices, they knowingly choose between products and

26  services for those devices, so competition between the iPhone and Android devices "will

27  significantly restrain power" over app stores.  *Kodak*, 504 U.S. at 470; *see Apple II*, 67 F.4th at

28  978 (identifying an "economic presumption that . . . consumers make a knowing choice to restrict

1    their aftermarket options when they" make a purchase "in the initial (competitive) market").  To

2    overcome that presumption, Plaintiffs must prove that (1) technical limits on what products work

3    on mobile devices are not generally known when consumers buy the devices; (2) significant

4    information costs prevent consumers from calculating the total cost of a mobile device and

5    associated products and services; and (3) significant costs to switching mobile devices.  *Id.*  This

6    test was not satisfied in *Epic v. Apple* and Plaintiffs will not satisfy it here, either.

7        Google also must compete against other major companies in addition to Apple.  Unlike on

8    the iPhone, Android users have choices for how to install apps on their phones.  Consumers can

9    download Android apps directly from websites (known as "sideloading") and choose between app

10   stores, including stores operated by major companies such as Samsung and Amazon.  Indeed,

11   Samsung smartphones come with Samsung's own app store on the home screen, right next to the

12   Play store.  Consumers also can go to websites to buy subscriptions and other in-app add-ons for

13   products like Spotify and Netflix as well as Epic's *Fortnite* and Match's dating apps.  Google

14   earns nothing when consumers make that choice.

15       Plaintiffs cannot prove that Google has monopoly power merely by showing that Google

16   has a high share of transactions in Android app stores.  *See Image Tech. Servs., Inc. v. Eastman*

17   *Kodak Co*., 125 F.3d 1195, 1208 (9th Cir. 1997) (Section 2 plaintiff "must establish more than just

18   market share").  Plaintiffs must show that "new competitors face high market barriers to entry and

19   that current competitors lack the ability to expand their output . . . ."  *Id.*  Plaintiffs cannot prove

20   barriers that would prevent Samsung or Amazon from building competitive app stores if they

21   chose to make the investments like Google has.  Nor can Plaintiffs prove that Google has

22   monopoly power merely because Plaintiffs would prefer to pay less or Google earns significant

23   profits:  "[A] reasonable finder of fact cannot infer monopoly power just from higher prices," and

24   "it is always treacherous to try to infer monopoly power from a high rate of return."  *Blue Cross &*

25   *Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995).

26       Finally, Plaintiffs' alleged geographic market for the entire world except for China is

27   artificial.  It assumes that U.S. consumers would switch to app stores designed for foreign

28   countries in languages they do not speak with prices in currencies they do not use.  Even if that

-4-

DEFENDANTS' TRIAL BRIEF
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

were true, there is no basis to exclude China from a global market merely because Google has chosen not to do business there.  App stores used in China can and do expand to compete with Google in the rest of the world, constraining the exercise of market power.  *See Rebel Oil*, 51 F.3d at 1436 ("A reasonable market definition must also be based on 'supply elasticity.'").

## 2.   Plaintiffs Cannot Prove that Google Engaged in Anticompetitive Conduct that Harmed Users or Developers

Even the "possession of monopoly power, and the concomitant charging of monopoly prices, is not [itself] unlawful; [instead,] it is an important element of the free-market system."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  "To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful [under § 2] unless it is accompanied by an element of anticompetitive *conduct*."  *Id.*  "[T]o be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect'"—that is, it "must harm the competitive *process* and thereby harm consumers."  *Id.*

Plaintiffs thus have "the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market."  *Qualcomm*, 969 F.3d at 991.  Anticompetitive effects include "reduced output, increased prices, or decreased quality in the relevant market" compared to competitive levels.  *Amex*, 138 S. Ct. at 2284.  App stores are two-sided platforms that sell a single product to two sets of consumers—users and developers—that enables them to transact with each other.  Thus, Plaintiffs "must establish an anticompetitive impact on the 'market as a whole,'" *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 839 (9th Cir. 2022), accounting for impacts on users and developers, *see Amex*, 138 S. Ct. at 2287 (rejecting evidence that "wrongly focuses on only one side of the two-sided" market).

Plaintiffs cannot meet that burden.  The evidence will show "expanding output and improved quality" of devices, apps and app transactions.  *Amex*, 138 S. Ct. at 2289.  And Google's prices were not "higher than the price one would expect to find in a competitive market."  *Amex*, 138 S. Ct. at 2288.  Users do not pay to use the Play store.  Some 97 percent of developers pay no service fees.  And Google's service fees for the fraction of developers that do pay have *declined* over time, on average, and are the same or lower than the rates that Apple, Microsoft, Sony, and

-5-

DEFENDANTS' TRIAL BRIEF
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

others charge.  *See id.* at 2289 (no anticompetitive effect where "plaintiffs did not show that Amex charged more than its competitors").  *Cf. Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (that Apple's prices remained the same "renders implausible" claim of supracompetitive prices).

### 3.   Google's Conduct Enhanced Competition with Apple and Benefited Consumers

Even if Plaintiffs could prove that Google's conduct harmed competition and consumers (and they cannot), that would merely shift the burden to Google "proffer a procompetitive justification for its conduct."  *Id.*  This involves "a nonpretextual claim that its conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal."  *Id.*  Google's challenged conduct is procompetitive.  It enhances the appeal of Android devices as compared to iPhones, expands consumers' choice of devices, reduces device prices, expands the set of potential users for developers, and increases output of apps and transactions.  *See Apple II*, 67 F.4th at 990 ("increasing the total number of iOS device users" was procompetitive); *O'Bannon v. NCAA*, 802 F.3d 1049, 1072 (9th Cir. 2015) (identifying "increasing consumer demand" as a procompetitive justification and stating "that a restraint that broadens choices can be procompetitive").  Google's challenged conduct also made Android devices more secure, which benefited consumers and enhanced competition with Apple.  *See Apple II*, 67 F.4th at 987 ("improving security and privacy" are "goals that are plainly procompetitive rationales").

### 4.   Plaintiffs Cannot Prove that Google Could Have Generated These Massive Benefits With a Different Business Model

Plaintiffs will have the burden to "demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means."  *Qualcomm*, 969 F.3d at 991.  This requires proof that Google had "a substantially less restrictive alternative," *i.e.*, one that would have been "virtually as effective' in serving [Google's] procompetitive purposes . . . without significantly increased cost."  *Apple II*, 67 F.4th at 990.  In applying this standard, "antitrust courts must give wide berth to business judgments before finding liability," *Alston*, 141 S. Ct. at 2163, and "should not second-guess degrees of reasonable necessity," *id.* at 2161.  Plaintiffs may wish that Google's business model cost them less, but they cannot prove that a different business model would have generated the same enormous benefits for users and developers as a whole.

1

**5.    Balancing Is Not Required, but Google's Conduct on Balance Benefitted Users and Developers**

In *Epic v. Apple*, the Ninth Circuit held that even if an antitrust plaintiff fails to prove a less restrictive alternative, the factfinder "must proceed to step four and balance the restriction's anticompetitive harms against its procompetitive benefits." *Apple II*, 67 F.4th at 994.  Google preserves for appellate review its argument that this step is contrary to the law.[1]  But even if balancing is permissible, "[i]n most instances," balancing "will require nothing more than . . . briefly confirming the result suggested by a step-three failure: that a business practice without a less restrictive alternative is not, on balance, anticompetitive." *Id.*

**B.    Plaintiffs' Section 1 and Cartwright Act Claims Will Fail**

Plaintiffs allege that Google unreasonably restrained trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and California's Cartwright Act.  Section 1 and Section 2 allegations involve "essentially the same" "three-part burden-shifting test." *Qualcomm*, 969 F.3d at 991; *Apple I*, 559 F. Supp. 3d at 1049 (same under Cartwright Act).  For all the reasons outlined, *supra*, at 2-7, Plaintiffs will fail at every step of that test.

**C.    Plaintiffs' Tying Claims Will Fail**

Plaintiffs allege that Google illegally ties its billing system to the Play store.  Google charges developers service fees only when they sell apps in the Play store or sell digital content in apps downloaded from the Play store.  Google requires developers to use Google Play Billing ("GPB") only to make those sales.  The Ninth Circuit held that it is "clearly lawful" for Apple to require developers to use its billing system. *Apple II*, 67 F.4th at 998.  Plaintiffs, however, allege that it is illegal tying for Google to do the same.  They allege that they should be able to use other billing systems to bypass paying *anything* for the services they get from the Play store.  Plaintiffs' tying claims will fail for the same reason Epic lost its tying claim against Apple.

The rule of reason applies to Plaintiffs' claim that Google has tied "software that serves as a platform for third-party applications." *Apple II*, 67 F.4th at 997 (rejecting parallel *per se* tying

---

[1] The panel in *Epic v. Apple* was "skeptical of the wisdom of superimposing a totality-of-the-circumstances balancing step," noted that Epic had not "articulated what this balancing really entails in a given case," and stated that it was not "evident what value a balancing step adds." *Id.*

claim against Apple).  Just like Apple, Google is justified in requiring developers to use its billing system in order "to be compensated for its IP investment."  *Id.* at 996.  In *Epic v. Apple*, "Epic propose[d] access to competing payment processors as an [alternative] to Apple's" requirement to use its own billing system.  *Id.* at 992.  However, the Court found that "in a world where Apple maintains its distribution restriction but payment processing is opened up, Apple would still be contractually entitled to its 30% commission on in-app purchases."  *Id.* at 993.  Epic failed to show how Apple could use an audit mechanism to collect those fees without "increased monetary and time costs."  *Id.*  Here, too, Plaintiffs cannot show how Google could collect compensation for the value of its IP and services if developers could bypass Google's billing system.

Even if *per se* scrutiny applied to Plaintiffs' tying claim (and it does not), that claim will fail.  The elements of a *per se* tying claim are (1) the defendant "tied together the sale of two distinct products or services," (2) "the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product," and (3) "the tying arrangement affects a not insubstantial volume of commerce in the tied product market."  *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008).  As explained, Google does not have power in the alleged "tying product market" for Android app distribution because Google competes with Apple and other platforms.  And Plaintiffs cannot show that Google "coerced or forced its customer[s] to buy the tied product"—GPB—"in order to obtain the tying product," the Play store.  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003).  Developers are free to distribute their apps through the Play store and then sell subscriptions and IAPs through their websites, and pay Google nothing.  Indeed, 97 percent of developers use the Play store without using GPB.

### D. Plaintiffs' *Per Se* Claims Regarding the Games Velocity Program Will Fail

Google's Games Velocity Program involved nearly two dozen written agreements in which Google offered gaming developers incentives to launch their apps in the Play store at the same time as in the Apple App Store and other app stores.  Google offered those incentives to twenty developers who Plaintiffs do not allege had ever explored opening an app store.  Plaintiffs nevertheless allege that three developers who signed these incentive contracts—Activision

1   Blizzard, Riot Games, and Supercell—also agreed not to open their own app stores.  Plaintiffs

2   cannot prove any such agreement existed, and cannot show "evidence that tends to exclude the

3   possibility that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co. v.*

4   *Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  The facts that (a) Google offered developers a

5   better deal to use the Play store and (b) some developers chose not to open their own app stores,

6   are "as consistent with permissible competition as with illegal conspiracy." *Id.*

7          Even if Plaintiffs could prove an agreement, it would be subject to the rule of reason for

8   the reasons Google explained in its motion for partial summary judgment.  *See* MDL Dkt. 483 at

9   9-13.  Regardless, a *per se* claim also would fail because Plaintiffs cannot prove any injury

10   "caused by the anticompetitive aspects of the illegal act." *Rebel Oil*, 51 F.3d at 1444.  Neither

11   Epic nor Match was injured because Activision, Riot, or Supercell did not open an app store.[2]

12          E.      **Match's Unique Claims Will Fail**

13                  1.      **Match's Attempted Monopolization Claim Will Fail**

14          Match (and only Match) brings an attempted monopolization claim under Section 2, which

15   requires proof "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2)

16   a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."

17   *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010).  As

18   explained, Match cannot show anticompetitive conduct or any danger of monopoly power.

19                  2.      **Match's Exclusive Dealing Will Fail**

20          Match (and only Match) alleges that Google's requirement to use GPB is a form of

21   exclusive dealing.  This claim is duplicative of Match's tying claim and fails for the same reasons.

22                  3.      **Match's Tortious Interference Claims Will Fail**

23          Match (and only Match) asserts claims for tortious interference with its contracts with

24   users and tortious interference with prospective economic advantage.  Both claims require proof of

25

26   _____

    [2] All parties agree that Epic's and Match's claims under the California Unfair Competition Law
27   ("UCL") will be tried to the Court, not the jury.  Google therefore does not address the substance
    of Plaintiffs' UCL claims in this trial brief, and reserves discussion for a separate submission,
28   including proposed findings of fact and conclusions of law if the Court requests them.  If Epic and
    Match's claims are not tried together, then the Court and the parties may need to revisit the
    question of which claims and defenses will be tried to a jury.

1    an "independently wrongful" act because Match's agreements with users are at-will.  *See Korea*

2    *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003) (required element of

3    interference with prospective advantage claim); *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th

4    1130, 1148 (2020) (same requirement when contract is at-will).  Match cannot prove any

5    "independently wrongful" act because it cannot prove that Google violated any other law.

6    **III.    GOOGLE WILL PREVAIL ON ITS COUNTERCLAIMS**

7    Google respectfully refers the Court to the parties' joint pretrial statement for a more

8    detailed description of Google's counterclaims against Epic and Match.  Google summarizes the

9    broad outlines of these counterclaims below.

10   **A.    Epic Intentionally Deceived Google Using a Secret Scheme**

11   In an effort that Epic codenamed "Project Liberty," Epic launched a secret and "highly

12   choreographed attack on Apple and Google."  *Apple I*, 559 F. Supp. 3d at 935.  One of Epic's

13   "primary reasons" for this attack was to obtain "tremendous monetary gain and wealth."  *Id.*

14   While Google provided Epic with resources to build an Android version of *Fortnite* and distribute

15   it through the Google Play store, Epic was plotting against it.  Just months later, "in willful

16   violation of [its] contractual obligations," Epic "engineered a 'hotfix' to covertly introduce code

17   that would enable additional payment methods for the iOS and Android versions of *Fortnite*."  *Id.*

18   at 936–37.  Epic's scheme to bypass agreed-upon fees for the use of the Google Play store was a

19   breach of contract.  And Epic's deceitful conduct unjustly enriched Epic at Google's expense.

20   **B.    Match Made False Promises and Breached its Contract with Google**

21   For years, Match tried to avoid paying Google service fees by misconstruing its contract

22   with Google and bypassing Google's billing system.  When Google clarified publicly that this was

23   not permitted, Match falsely promised Google that it would comply, stringing Google along for

24   months while Google wasted valuable resources trying to help Match.  Match still refuses to pay

25   the service fees required by the contract that Match signed.  Match's conduct was a breach of

26   contract and a fraud that unjustly enriched Match by more than $20 million.

27

28

DATED:  October 5, 2023          Respectfully submitted,


By:      _/s/ Glenn D. Pomerantz_____
         Glenn D. Pomerantz

         *Glenn D. Pomerantz, S.B. #112503*
         glenn.pomerantz@mto.com
         Kuruvilla Olasa, S.B. #281509
         kuruvilla.olasa@mto.com
         Nicholas R. Sidney, S.B. #308080
         nick.sidney@mto.com
         **MUNGER, TOLLES & OLSON LLP**
         350 South Grand Avenue, Fiftieth Floor
         Los Angeles, California 90071
         Telephone: (213) 683-9100
         *Counsel for Defendants Google LLC, et al.*

         Kyle W. Mach, S.B. #282090
         kyle.mach@mto.com
         Justin P. Raphael, S.B. #292380
         justin.raphael@mto.com
         Emily C. Curran-Huberty, S.B. #293065
         emily.curran-huberty@mto.com
         Dane P. Shikman, S.B. #313656
         dane.shikman@mto.com
         Rebecca L. Sciarrino, S.B. # 336729
         rebecca.sciarrino@mto.com
         **MUNGER, TOLLES & OLSON LLP**
         560 Mission Street, Twenty Seventh Floor
         San Francisco, California 94105
         Telephone: (415) 512-4000

         Jonathan I. Kravis, *pro hac vice*
         jonathan.kravis@mto.com
         Lauren Bell, *pro hac vice*
         lauren.bell@mto.com
         **MUNGER, TOLLES & OLSON LLP**
         601 Massachusetts Avenue NW, Suite 500E
         Washington, D.C. 20001
         Telephone: (202) 220-1100

-11-

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, *pro hac vice*
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Counsel for Defendants Google LLC, et al.*

## **E-FILING ATTESTATION**

I, Dane P. Shikman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


  */s/ Dane P. Shikman*
  Dane P. Shikman