1  Brian C. Rocca, S.B. #221576
   brian.rocca@morganlewis.com
2  Sujal J. Shah, S.B. #215230
   sujal.shah@morganlewis.com
3  Michelle Park Chiu, S.B. #248421
   michelle.chiu@morganlewis.com
4  Minna Lo Naranjo, S.B. #259005
   minna.naranjo@morganlewis.com
5  Rishi P. Satia, S.B. #301958
   rishi.satia@morganlewis.com
6  **MORGAN, LEWIS & BOCKIUS LLP**
   One Market, Spear Street Tower
7  San Francisco, CA 94105
   Telephone: (415) 442-1000
8
   Richard S. Taffet, *pro hac vice*
9  richard.taffet@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS LLP**
10 101 Park Avenue
   New York, NY 10178
11 Telephone: (212) 309-6000
12 *Counsel for Defendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

---

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

*Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD

Case No. 3:21-md-02981-JD

**DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO**

Judge Hon. James Donato

Date:          October 19, 2023
Time:          1:30 p.m.
Courtroom:  11

**PUBLIC-REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

MOTION *IN LIMINE* NO. 1:  TO PRECLUDE EPIC FROM OFFERING EVIDENCE OR ARGUMENT THAT THE APPLE APP STORE AND GOOGLE PLAY STORE ARE IN SEPARATE MARKETS ..................................................................1

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 1....................................................7

MOTION *IN LIMINE* NO. 2:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PRIVILEGE DESIGNATIONS ...................................................10

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 2....................................................16

MOTION *IN LIMINE* NO. 3:  TO EXCLUDE EVIDENCE REGARDING GOOGLE'S 2019 NEGOTIATIONS WITH SAMSUNG REAGRDING SAMSUNG'S GALAXY STORE ("PROJECT BANYAN") ..........................................................19

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 3....................................................25

MOTION *IN LIMINE* NO. 4:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING OTHER LAWSUITS OR SETTLEMENTS IN THIS MDL. ...................28

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 4....................................................34

MOTION *IN LIMINE* NO. 5:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING GOOGLE EMPLOYEES' COMPENSATION, STOCK HOLDINGS, OR NET WORTH .........................................................................37

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 5....................................................42

MOTION *IN LIMINE* NO. 6:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FEDERAL GOVERNMENT REPORTS....................................................45

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 6....................................................52

MOTION *IN LIMINE* NO. 7:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FOREIGN PROCEEDINGS AND INVESTIGATIONS...........................55

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* NO. 7....................................................63

-i-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND  PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*,
Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*,
Case No. 3:21-cv-05227-JD

*Match Group, LLC, et al., v. Google LLC, et al.*,
Case No. 3:22-cv-01746-JD

Case No. 3:21-md-02981-JD

**DEFENDANTS' MOTION *IN LIMINE* NO. 1**

**TO PRECLUDE EPIC FROM OFFERING EVIDENCE OR ARGUMENT THAT THE APPLE APP STORE AND GOOGLE PLAY STORE ARE IN SEPARATE MARKETS**

Judge Hon. James Donato

Date:        October 19, 2023
Time:        1:30 p.m.
Courtroom:   11

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Defendants will and hereby do move the Court for an order granting the following Defendants' Motion *In Limine*:

| Motion *In Limine* No. 1 | TO PRECLUDE EPIC FROM OFFERING EVIDENCE OR ARGUMENT THAT THE APPLE APP STORE AND GOOGLE PLAY STORE ARE IN SEPARATE MARKETS |
|---|---|
| | The Court should preclude Epic from offering evidence, expert testimony, or argument that the Google Play store and the Apple App Store do not compete in the same relevant antitrust market because Epic lost that issue in its failed antitrust suit against Apple.  At minimum, Epic should be precluded from offering evidence, expert testimony, or argument that there is a relevant market limited to the Apple App Store. |

This motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, and such other matters as may be presented to the Court at the time of or before the hearing.

1  **MOTION *IN LIMINE* NO. 1:  TO PRECLUDE EPIC FROM OFFERING EVIDENCE OR
   ARGUMENT THAT THE APPLE APP STORE AND GOOGLE PLAY STORE ARE IN**
2  **SEPARATE MARKETS**

3          The Court should preclude Epic from offering evidence or argument that the Google Play

4  store and the Apple App Store do not compete in the same relevant antitrust market because Epic

5  lost that issue in its failed antitrust suit against Apple.  *See Epic Games, Inc. v. Apple Inc. ("Apple*

6  *I")*, 559 F. Supp. 3d 898, 1026 (N.D. Cal. 2021), *aff'd in part, rev'd in part*, 67 F.4th 946 (9th Cir.

7  2023) (*"Apple II"*).

8          In the *Apple* case, Epic "structured its lawsuit to argue that Apple does not compete with

9  anyone; it is a monopoly of one."  *Id.* at 921.  The *Apple* court rejected Epic's proposed relevant

10 market, which was limited to distribution of apps for Apple devices, because "Epic Games' sole

11 focus on iOS devices simply ignores the market reality that is available to consumers."  *Id.* at

12 1025.  The Court found that "Apple and Google compete with one another," *id.* at 992 n.454, and

13 that Google "operates in the same market" as Apple, describing Google as "Apple's main

14 competitor," *id.* at 1031, 1036; *see also Apple II*, 67 F.4th at 985 (describing Google Play store as

15 the App Store's "main competitor").  In this case, using a different expert, Epic intends to ask the

16 factfinder to make the very findings that the *Apple* court and the Ninth Circuit rejected.  Epic

17 contends here that the Apple App Store and the Google Play store are *not* competitors because the

18 relevant markets are limited to (1) distribution of Android apps and (2) billing services for those

19 Android apps, which do not include the Apple App Store or Apple's billing system.

20         It cannot be that the Apple App Store competes against the Google Play store for purposes

21 of Epic's claims against Apple but not for purposes of Epic's claims against Google.  Under the

22 doctrine of collateral estoppel, Epic cannot ask a factfinder in its case against Google to make

23 findings that the courts rejected in Epic's case against Apple.  *See Intell. Ventures I LLC v. Cap.*

24 *One Fin. Corp.*, 937 F.3d 1359, 1380 (Fed. Cir. 2019) (affirming collateral estoppel as to relevant

25 market); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1216 (S.D.N.Y. 1981) (same);

26 *McNeil v. Nat'l Football League*, 790 F. Supp. 871, 892 (D. Minn. 1992) (NFL was "collaterally

27 estopped from relitigating the issue of the existence of a relevant market").

28         Collateral estoppel is appropriate where "(1) the issue at stake was identical in both

-4-

proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Velarde-Flores v. Lynch*, 623 F. App'x 426, 427 (9th Cir. 2015) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)).[1]  All four factors are satisfied here.  Epic had a full and fair opportunity to litigate whether the Apple App Store and the Google Play store compete in the same relevant market.  Epic litigated that issue and lost at trial and on appeal.  Indeed, there is an express judicial finding against them on the issue—the Court found that the Apple App Store and Google Play compete and the Ninth Circuit affirmed the district court's decision.  In *Apple*, Epic failed to prove that there is a market for the Apple App Store that does not include the Google Play store.  Here, Epic seeks to prove the other side of the same coin:  a supposed market for Android app distribution that includes the Google Play store but not the Apple App Store.  Epic cannot re-litigate that issue by alleging monopolization of the supposedly separate Android app distribution market rather than the supposedly separate Apple App Store market.  "Issue preclusion, or collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040-41 (9th Cir. 2017) (internal quotation marks and citation omitted).

Epic's theory that there is a separate market for Android app distribution that does not include the Apple App Store is "closely related," and involves "the same rule of law," as its failed theory of a market for iOS app distribution that does not include the Google Play store.  *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).  The fact that both Epic and Apple reproduced documents in this litigation produced in the *Epic v. Apple* case shows "substantial overlap" in evidence.  *Id.*  And when Epic hatched Project Liberty, "a highly choreographed attack" that used the same deceptive software code against the Apple App Store and the Google

---

[1] A motion *in limine* is a proper vehicle for collateral estoppel.  *See Holmes v. Nova*, No. C16-1422RSL, 2018 WL 1907443, at *2 (W.D. Wash. Apr. 23, 2018); *Funk v. City of Lansing*, No. 1:17-CV-514, 2021 WL 5537086, at *2 (W.D. Mich. Sept. 24, 2021). That is particularly true here where Epic's appeal was still pending at the time that Google moved for summary judgment, when the consumers and States were still likely to participate at trial.

1   Play store and that culminated in lawsuits against both companies on the same day, *Apple I*, 559 F.

2   Supp. 3d at 935-94, Epic should have "expected" that discovery in the Apple case would "have

3   embraced the matter" at issue in this case against Google.  *Resol. Tr.*, 186 F.3d at 1116.

4        Resolving the issue of whether the Apple App Store and the Google Play store compete in

5   separate markets was necessary to the Court's judgment against Epic on its antitrust claims under

6   the rule of reason.  After all, "courts usually cannot properly apply the rule of reason without an

7   accurate definition of the relevant market."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285

8   (2018).  *Cf. FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("A threshold step in any

9   antitrust case is to accurately define the relevant market").  Further, the district court found that,

10  when accounting for the Google Play store in the market, Apple's market share was "not high

11  enough to sustain a *prima facie* [sic] case of a monopoly."  *Apple I*, 559 F. Supp.3d at 1031.

12       It is true that Epic's claim against Apple *also* failed for additional reasons.  For example,

13  Epic failed to show how allowing developers to use their own billing systems (as Epic contends

14  Google must) "would allow Apple to be compensated for developers' use of its IP."  *Apple II*, 67

15  F.4th at 992.  But that is immaterial.  In this Circuit, a litigant cannot evade preclusion because it

16  lost for multiple reasons; collateral estoppel applies "even though the court rests its judgment

17  alternatively upon two or more grounds."  *In re Westgate-Cal. Corp.*, 642 F.2d 1174, 1176 (9th

18  Cir. 1981); *see also Mast v. Long*, 84 F. App'x 786, 787 (9th Cir. 2003) ("The fact that the district

19  court in the first action gave an alternative reason for its holding does not prevent the application

20  of claim preclusion"); *Picayune Rancheria of Chukchansi Indians v. U.S. Dep't of Interior*, No.

21  1:16-CV-0950-AWI-EPG, 2017 WL 3581735, at *8 (E.D. Cal. Aug. 18, 2017) (same).

22       Finally, the Match Plaintiffs' decision to piggyback on Epic's lawsuit should not give Epic

23  a do-over.  The Match Plaintiffs are not bound by Epic's loss and can try to prove their market

24  definition theory with admissible evidence.  But Epic is collaterally estopped from presenting the

25  market definition theory that failed in *Epic v. Apple* either through the testimony of its experts or

26  arguments to the factfinder.  At a minimum, Epic clearly lost the issue of whether there is a

27  relevant market limited to the Apple App Store and should be precluded from offering evidence,

28  expert testimony or argument to prove as much.

-6-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1.**

Two years after the district court issued its market definition ruling in *Epic Games, Inc. v. Apple Inc.*, Google requests that the Court give preclusive effect to a judgment that did not resolve, or even address, an issue that will be presented in the upcoming trial:  the proper antitrust markets in which to evaluate the effects of Google's conduct.  Google's motion is incorrect as a matter of law, improper as a matter of procedure and untimely, and should be denied.

## I.   GOOGLE FAILS TO ESTABLISH ISSUE PRECLUSION'S ELEMENTS.

Google cannot establish the core element required for issue preclusion:  that the issue to be decided here is identical to the issue "actually litigated" and decided in *Apple*.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (*en banc*) ("Similarity between issues does not suffice:  collateral estoppel is applied only when the issues are identical."); *Visa U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121, 1124 (N.D. Cal. 2005) (rejecting preclusion on issue of relevant antitrust market because issues were not identical).  Google mischaracterizes the question litigated in *Apple* as "whether the Apple App Store and the Google Play store compete in the same relevant market".  (Def.'s MIL No. 1 at 2.)  But *Apple* did not rule on market definition in the abstract.  The issue actually litigated in *Apple* was the proper antitrust market in which to evaluate the effects of ***Apple's*** conduct.  *Apple*, 559 F. Supp. 3d 898, 921-22, 1014-26 (N.D. Cal. 2021), *aff'd in part, rev'd in part*, 67 F.4th 946 (9th Cir. 2023).  The question to be litigated here, by contrast, is the proper antitrust market in which to evaluate the effects of ***Google's*** conduct—conduct that, in many ways, differs from Apple's (*e.g.*, Google has a web of contracts with OEMs and bespoke arrangements with developers that foreclose alternative app distribution).  *See W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1051, 1058 (N.D. Cal. 1998) ("It is not possible to analyze the alleged monopoly impact of [defendant's] conduct without first defining the relevant market which such conduct is allegedly monopolizing.").  Moreover, the court in *Apple* found that the Google Play Store may constrain Apple's actions with respect to its app store only in a market for "gaming transactions"—a market that no party in this litigation has ever claimed is the relevant market in *this* case.  And of course, whether there is a market for Android app distribution was not a question ever discussed, let alone decided, in *Apple*.

Google nonetheless contends that in this litigation, "Epic seeks to prove the other side of the same coin". (Def.'s MIL No. 1 at 2.)  But to meet the identity-of-issues requirement, Google would need to show that Epic is seeking in this litigation to prove the *same* side of the same coin.  That principle is illustrated in every case Google cites.  In *Intellectual Ventures I LLC v. Capital One Financing Corp.*, 937 F.3d 1359 (Fed. Cir. 2019), the court found, in a case between the same parties alleging essentially the same anticompetitive conduct, that the exact same markets were at issue in the first and second cases. *Id.* at 1378.  That is nothing like the circumstances here, where the parties, the conduct and the alleged markets are all different from those in *Apple*.  Similarly, in *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203 (S.D.N.Y. 1981), preclusion was applied as between two related and coordinated cases challenging the very same conduct by the very same defendant (Kodak), reasonably leading the court to conclude that the "market definition and market power issues determined . . . and presented" in both cases were identical.  *Id.* at 1214.  The same is true for *McNeil v. Nat'l Football League*, 790 F. Supp. 871 (D. Minn. 1992).  There, the court found "what constitutes a relevant market in the present case is identical to the issue litigated in prior cases", where similarly situated plaintiffs sued the same defendant for the same anticompetitive conduct.  *Id.* at 892.  That is not the case here.

## II.   GOOGLE'S MOTION *IN LIMINE* IS PROCEDURALLY DEFECTIVE AND UNTIMELY.

Even if Google could prove that it has satisfied the elements of issue preclusion (which it cannot), this Court should exercise its discretion and deny issue preclusion in this circumstance, where Google's motion is procedurally defective, belated and would further complicate an already complex trial.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 972-73 (N.D. Cal. 2012) (courts have "discretion to apply the [issue preclusion] doctrine" when it is used defensively).

Google's motion is procedurally defective because motions *in limine* are supposed to "allow parties to resolve evidentiary disputes ahead of trial" to avoid "present[ing] potentially prejudicial evidence in front of a jury".  *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).  Google's motion does not cite *any* evidentiary rule or raise the kind of narrow, evidentiary issue that motions *in limine* are

1   designed to address.[1]  Instead, Google shoehorns a dispositive, substantive issue into a motion *in limine*.

2   A party cannot use motions *in limine* as "substitutes for summary judgment or other dispositive motions".

3   (Standing Order for Civil Jury Trials Before Judge James Donato ¶ 6 (N.D. Cal. Jan. 5, 2017)); *Zamora*

4   *v. BMW of N. Am., LLC*, 2022 WL 17061082, at *1 (C.D. Cal. Sept. 13, 2022); *United States ex rel.*

5   *Streck v. Takeda Pharms. Am., Inc.*, 2023 WL 3093476, at *1-2 (N.D. Ill. Apr. 26, 2023) (finding a party

6   cannot wait until the eve of trial to file "a motion *in limine* in lieu of a motion for summary judgment to

7   raise collateral estoppel" since it "encourages trial by ambush").[2]

8        Google's motion is also remarkably late.  Google has known of the *Apple* ruling since the day it

9   was issued, over two years ago.  559 F. Supp. 3d 898 (N.D. Cal. 2021).  Google had multiple

10   opportunities to raise this substantive issue when it arose, including in its answer, summary judgment

11   motion[3] or the parties' extensive discussions (including with the Court) regarding the number and scope

12   of market definition experts, but Google failed to do so.

13        Finally, Google seeks to preclude presentation of market definition evidence only by Epic.  To

14   the extent other Plaintiffs remain parties to the case at the time of trial, they would nonetheless be entitled

15   to present this evidence of market definition—and Google offers no way of distinguishing other

16   Plaintiffs' market definition evidence from Epic's (especially since Google insists that *all* market

17   definition evidence, for all Plaintiffs, should be presented by a single expert).

18        For all the foregoing reasons, the Court should deny Google's motion.

19

20

---

21   [1] *Funk v. City of Lansing*, cited by Google, confirms that "[o]rders in limine which exclude broad categories of evidence should rarely be employed".  2021 WL 5537086, at *2 (W.D. Mich. Sept. 24,

22   2021) (denying motion *in limine* in part as "too broad").

23   [2] Unsurprisingly, Google's motion cites almost exclusively from summary judgment opinions:  *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 937 F.3d 1359 (Fed. Cir. 2019); *GAF Corp. v. Eastman Kodak*

24   *Co.*, 519 F. Supp. 1203 (S.D.N.Y. 1981); *McNeil v. Nat'l Football League*, 790 F. Supp. 871 (D. Minn. 1992); *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110 (9th Cir. 1999); *In re Westgate-Cal. Corp.*,

25   642 F.2d 1174 (9th Cir. 1981); *Picayune Rancheria of Chukchansi Indians v. U.S. Dep't of Interior*, 2017 WL 3581735 (E.D. Cal. Aug. 18, 2017).

26   [3] Google's claim that they could not have moved for summary judgment because of the pending appeal

27   is wrong.  *See Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 998 (N.D. Cal. 2007). Further, the Ninth Circuit issued its decision five months ago, so Google has had ample opportunity to

28   raise its alleged preclusive effect.

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

Counsel for Defendants

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' MOTION *IN LIMINE* NO. 2** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | **TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PRIVILEGE DESIGNATIONS** |
| I*n re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Date:        October 19, 2023 |
| *Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD | Time:        1:30 p.m. |
| | Courtroom:   11 |

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the

3    above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco,

4    California 94102, before the Honorable James Donato, Defendants will and hereby do move the

5    Court for an order granting the following Defendants' Motion *In Limine*:

6          Motion *In Limine* No. 2              TO EXCLUDE EVIDENCE OR ARGUMENT
                                                  REGARDING PRIVILEGE DESIGNATIONS
7
                                                  Plaintiffs should not be permitted to:  (1) call as
8                                                 witnesses at trial two Google in-house attorneys who
                                                  appear on Plaintiffs' witness list, (2) introduce into
9                                                 evidence training materials used with new non-
                                                  attorney employees, or (3) comment on privilege
10                                                designations that appear on documents produced in
                                                  discovery.
11

12          This motion is based on this Notice of Motion and Motion, Memorandum of Points and

13    Authorities, and such other matters as may be presented to the Court at the time of or before the

14    hearing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION *IN LIMINE* NO. 2:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PRIVILEGE DESIGNATIONS**

Google moves to exclude evidence or argument concerning references to attorney-client privilege in particular documents.  Plaintiffs have not filed any motion in this case challenging Google's privilege assertions, which were carefully reviewed by outside counsel.  Having raised no such challenge, plaintiffs should not be permitted to suggest to the jury that references to privilege in a few isolated documents are somehow improper.  Accordingly, plaintiffs should not be permitted to:  (1) call as witnesses at trial two Google in-house attorneys who appear on Plaintiffs' witness list, (2) introduce into evidence training materials used with new non-attorney employees, or (3) comment on privilege designations that appear on documents produced in discovery.  This evidence is irrelevant and unfairly prejudicial, and presentation of such evidence would serve only to confuse and mislead the jury and waste the Court's time.

**I.      BACKGROUND**

Plaintiffs have not filed a motion to compel based on Google's assertion of privilege over any particular document in this case.  On the contrary, Plaintiffs' questions on this topic were resolved through the usual meet and confer process during discovery.  In April 2022, Plaintiffs sent Google a letter raising questions about certain entries on Google's privilege logs where an attorney was copied on the email but did not respond.  To address Plaintiffs' concerns, Google agreed to re-review thousands of privilege log entries for such emails.

Plaintiffs did not request any further action by Google and chose not to raise this issue with the Court after Google's counsel re-reviewed thousands of privilege log entries and reaffirmed the validity of Google's privilege assertions.  Nevertheless, Plaintiffs now appear determined to present to the jury documents referencing attorney-client privilege.  Plaintiffs' exhibit list includes two chats between two in-house attorneys in which the attorneys used the term "fake privilege" in a colloquial conversation.  Those two in-house attorneys also appear on Plaintiffs' witness list.  (Google offered to re-review all entries on its privilege logs for which these attorneys were the basis of the privilege assertion.  Plaintiffs agreed to consider this offer and then never responded to it.)  Plaintiffs' exhibit list also includes slide decks used to train new Google non-attorney

-13-

1  employees regarding attorney-client privilege.  And in depositions, Plaintiffs have asked fact

2  witnesses about their reasons for marking as privileged emails that were produced in discovery.

3  **II.     ARGUMENT**

4        Evidence and argument concerning references to attorney-client privilege should be

5  excluded for several reasons.

6        *First,* the evidence does not bear on any fact of consequence in the case.  Fed. R. Evid.

7  401.  The only possible purpose of this evidence would be to suggest that Google has somehow

8  deprived the Plaintiffs of relevant information through improper assertions of privilege.  But

9  Plaintiffs have not even alleged—let alone established—any such thing.  Indeed, Plaintiffs have

10 never even filed a motion to compel challenging Google's assertion of privilege over any

11 particular document.  Because Plaintiffs have established absolutely no basis to conclude that

12 Google's assertions of privilege were in any way improper, references to attorney-client privilege

13 in training documents and emails and the testimony of Google in-house lawyers concerning the

14 same have no relevance whatsoever.  *Cf. In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-

15 MD-2543 (JMF), 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015) (citing *Nabisco, Inc. v. PF

16 Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999)) ("district court erred in drawing an adverse

17 inference against Nabisco by reason of its invocation of the attorney-client privilege"), *abrogated

18 on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003).

19       *Second,* in light of the fact that Plaintiffs have made no showing that Google's actual

20 assertions of privilege were in any way improper, evidence and argument concerning references to

21 privilege in particular documents would be unfairly prejudicial and would confuse and mislead the

22 jury.  Fed. R. Evid. 403.

23       That is particularly true with respect to questions challenging witness decisions to copy in-

24 house counsel on emails or mark particular emails as privileged.  Google employees do not have

25 to explicitly outline their request for legal advice in a communication with counsel—even "[a]n

26 implied request for legal advice is sufficient to support the attorney-client privilege."  *City of

27 Roseville Emps' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *13

28 (N.D. Cal. Aug. 3, 2022).  And it is not unusual for non-lawyers unfamiliar with the nuances of

-14-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:20-cv-05671-JD; 3:21-cv-05227-JD; 3:22-cv-01746-JD

attorney-client privilege to mark as privileged documents that litigation counsel later determine

not to be privileged.  After all, whether communications copying in-house counsel seek legal

advice or business advice is an "especially difficult" "area of privilege of law" on which even

reasonable lawyers can have "good-faith difference(s) of opinion."  *Am. Nat'l Bank & Tr. Co. v.*

*Equitable Life Ass. Soc'y*, 406 F.3d 867, 878-79 (7th Cir. 2005).

*Third,* presentation of this evidence would waste time by creating a trial within the trial

over privilege.  If Plaintiffs are permitted to present this evidence, Google will be forced to

introduce evidence explaining to the jury the process by which Google reviewed documents for

privilege in connection with this litigation in order to dispel the misimpression that Google

somehow acted improperly or that employees and not litigation counsel make the final

determination whether documents are privileged.  That sideshow would distract the jury from the

important task of resolving the antitrust issues.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2.**

Google's motion *in limine* to exclude evidence or argument concerning references to attorney-client privilege in Google's documents is a brazen attempt to hide from the jury Google's practice of concealing and sanitizing its communications to avoid discovery and public scrutiny.  As part of this practice, Google trained its non-attorney employees to copy an attorney into sensitive communications and mark such documents as "privileged" in an attempt to shield these documents from discovery.  Evidence of Google's scheme to conceal sensitive communications, of which its misuse of attorney-client privilege is only one part, is relevant to Google's awareness that its business practices were unlawful.

## I.   GOOGLE'S "FAKE PRIVILEGE" IS PART OF ITS SYSTEMATIC EFFORTS TO HIDE COMMUNICATIONS.

Google has a comprehensive practice of attempting to hide and sanitize its communications for the express purpose of evading discovery of its conduct.  Google warns its employees that it is "constantly in the public eye . . . and the courthouse", cautioning that employees' communications "can become public at any time" and "hurt or embarrass us".  (Declaration of Yonatan Even ("Even Decl.") Ex. 1, GOOG-PLAY-005029848.R at -850.R.)   To this end, Google trains its employees to "Communicate with Care".  (*Id.* at -849.R.)  As this Court found, in one part of this training, Google "gave specific instructions to Google employees about strategies for seeking to make their emails and other communications 'protected by the attorney-client privilege'".  (Findings of Fact & Conclusions of Law re Chat Preservation at 5, MDL Dkt. 469 (citing and quoting Google's document stating "just a reminder if you use privileged and confidential in emails an attorney must be in the To line"; "wondering what is the best way to update the team about confidential topics without having to include an attorney in all comms").)  Because of this practice, out of nearly 3,400,000 documents produced by Google, over ***500,000*** contain the word "privileged".  Even Google's in-house lawyers recognized the dishonesty of this scheme, joking to one another about emails where Google businesspeople had "looped [them] in for fake privilege".  (*See* Even Decl. Ex. 2, GOOG-PLAY5-000500320 at -332; Even Decl. Ex. 3, GOOG-PLAY5-000500584 at -631.)  This misuse of the attorney-client privilege is part of Google's broader

1  campaign to conceal or prevent the creation of evidence that shows the unlawfulness of its business

2  practices.[1]

3  ## II.   EVIDENCE AND ARGUMENTS ABOUT GOOGLE'S PRIVILEGE DESIGNATIONS

4  ## ARE ADMISSIBLE.

5  Google's motion seeks to keep from the jury evidence about Google's efforts to hide its

6  wrongdoing.  That ploy should be rejected.  Evidence and arguments about Google's deliberate misuse

7  of the attorney-client privilege are (i) relevant; (ii) not unfairly prejudicial or confusing; and (iii) not a

8  waste of time or resources.

9  *First*, Google asserts that its employees' privilege practices "do[] not bear on any fact of

10  consequence in the case".  (Def.'s MIL No. 2 at 5.)  That is wrong.  Google's systemic practice of

11  attempting to conceal important documents is evidence that Google knows its business practices were

12  illegal or, at a minimum, exposed Google to litigation and regulatory risks.  The jury can and should take

13  this into account when evaluating the evidence that Google has not hidden or destroyed.  Google's

14  primary argument in its motion—that its outside counsel overrode some of the privilege markings and

15  produced the documents anyway—is beside the point.  Plaintiffs are entitled to show that the privilege

16  markings, and the broader scheme of which they are a part, are evidence of Google's *own* understanding

17  of the unlawfulness of its conduct.

18  Google's reliance on *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449 (S.D.N.Y.

19  Dec. 3, 2015), is misplaced.  There, the court did not permit plaintiffs to argue that privilege assertions

20  were an effort to conceal evidence because the court had previously found that the plaintiffs failed to

21  "point to . . . evidence of intentional misconduct".  *Id.* at *3-4.  This Court, by contrast, has already found

22  that Google "intended to subvert the discovery process" by deleting Chats "with the intent to prevent

23  [their] use in litigation".  (MDL Dkt. 469 at 17-18.)  Google's privilege practices are part of the same,

24  company-wide initiative to conceal evidence.

25

26

27  ---

28  [1] The Court is familiar with another aspect of this practice—Google's encouragement for employees to use "history off" Chats that Google intentionally destroys, even when employees are on litigation holds, thus preventing those communications from ever being used in litigation.  (MDL Dkt. 469.)

1    *Second*, this evidence is not unfairly prejudicial.  Fed. R. Evid. 403.  There is a "high bar to

2    exclude prejudicial evidence under Rule 403".  *Appel v. Wolf*, 2023 WL 5955184, at *4 (S.D. Cal.

3    Sept. 12, 2023).   Google fails to even explain what "prejudice" would arise.   It argues as though its

4    privilege markings were innocent missteps by "non-lawyers unfamiliar with the nuances of attorney-

5    client privilege" who were navigating an "especially difficult area of privilege law".  (Def.'s MIL No. 2

6    at 5-6 (internal quotation marks omitted).)  Not so.  In reality, the privilege markings were part of an

7    intentional effort, propagated through official company training, to try to conceal evidence.  There is

8    nothing unfairly prejudicial about educating the jury on Google's concealment efforts, as well as what

9    they show about Google's wrongdoing and the legitimacy (or not) of Google's defenses.

10       *Third*, Google's argument that this evidence will waste time, creating a "trial within the trial"

11   about "the process by which Google reviewed documents for privilege in connection with this litigation",

12   (Def.'s MIL No. 2 at 6), is also wrong.  The issue is not outside counsel's assessment of privilege, but

13   rather Google's concerted effort to hide or destroy evidence of its unlawful business practices.  The

14   presentation of this evidence would not "distract" the jury from assessing the merits of the antitrust

15   issues.  To the contrary, it would inform the jury of Google's views of its practices, which the jury can

16   reasonably consider in reaching its factual determinations.

17       For the reasons stated above, the Court should deny Google's motion.

18

19

20

21

22

23

24

25

26

27

28

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' MOTION *IN LIMINE* NO. 3** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | **TO EXCLUDE EVIDENCE REGARDING GOOGLE'S 2019 NEGOTIATIONS WITH SAMSUNG REGARDING SAMSUNG'S GALAXY STORE ("PROJECT BANYAN")** |
| I*n re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Date:       October 19, 2023 |
| *Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD | Time:       1:30 p.m. |
| | Courtroom:  11 |

-20-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Defendants will and hereby do move the Court for an order granting the following Defendants' Motion *In Limine*:

| Motion *In Limine* No. 3 | TO EXCLUDE EVIDENCE REGARDING GOOGLE'S 2019 NEGOTIATIONS WITH SAMSUNG REGARDING SAMSUNG'S GALAXY STORE ("PROJECT BANYAN") |
|---|---|
| | The Court should exclude evidence, expert testimony, or argument regarding the 2019 negotiations between Google and Samsung over a potential agreement regarding Samsung's app store that the companies never actually reached (known internally as "Project Banyan").  At minimum, Plaintiffs should be precluded from arguing to the jury that the uncompleted "Project Banyan" negotiations were wrongful or unlawful conduct. |

This motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, and such other matters as may be presented to the Court at the time of or before the hearing.

1  **MOTION *IN LIMINE* NO. 3:  TO EXCLUDE EVIDENCE REGARDING GOOGLE'S 2019 NEGOTIATIONS WITH SAMSUNG REGARDING SAMSUNG'S GALAXY STORE ("PROJECT BANYAN")**

2

3    The Court should exclude evidence of 2019 negotiations between Google and Samsung

4  over a *potential* agreement regarding Samsung's app store that the companies *never actually*

5  *reached*.  To be actionable under the antitrust laws, conduct must have some anticompetitive

6  effect.  *See, e.g.*, *FTC v. Qualcomm*, 969 F.3d 974, 990–91 (9th Cir. 2020); *United States v.*

7  *Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001).  A deal that indisputably never came to be—in

8  this case, because Google decided to abandon the discussions—cannot have had anticompetitive

9  effects, so evidence about the strategy and negotiations for that deal is not probative of any

10  antitrust violation.  *See* Fed. R. Evid. 402, 403.  Rule 404 further prohibits Plaintiffs from using

11  such evidence to taint Google's other challenged conduct as improper.  *See* Fed. R. Evid. 404.

12  And evidence regarding these 2019 negotiations is unfairly prejudicial because it invites the jury

13  to conclude improperly that Google acted unlawfully in considering, and then abandoning, a

14  potential deal with Samsung.  *See* Fed. R. Evid. 403.  The Court should exclude this evidence.  At

15  a minimum, Plaintiffs' counsel should not be permitted to argue to the jury that the uncompleted

16  2019 Samsung negotiations were wrongful, improper, or unlawful conduct.

17  **I.    BACKGROUND**

18    Samsung makes the most popular Android smartphones in the United States.  On nearly

19  every one of its smartphones, Samsung preloads its own mobile app store (the Galaxy Store),

20  which developers like Epic Games and Match Group use to distribute their apps.  The Galaxy

21  Store is on the home screen of millions of Samsung smartphones, just like Google Play.

22    Epic's Amended Complaint alleges that "Google *attempted* to negotiate a deal with

23  Samsung that would prevent the Galaxy Store from becoming a competitive threat."  Epic Second

24  Amended Complaint ¶ 119, ECF No. 378 (emphasis added).  But the Complaint does not allege

25  that any such deal was ever reached.  And the undisputed evidence establishes that a final deal

26  never materialized because Google canceled the project, referred to internally as "Project

27  Banyan."  To this day, the Galaxy Store remains preloaded on nearly every Samsung smartphone

28  in the United States, right on the home screen next to the Google Play store.

II.   **ARGUMENT**

A.   **The Negotiations Are Irrelevant Because The Parties Never Reached an Agreement.**

Google's 2019 negotiations with Samsung are not probative of any antitrust violation because they did not result in a deal.  "[T]o be condemned as exclusionary, a monopolist's act must have an anticompetitive effect."  *Microsoft Corp.*, 253 F.3d at 58.  Negotiations regarding Project Banyan did not have any "effect" because they did not lead to an agreement, and there is no allegation that Samsung on its own made changes that the negotiations contemplated.  This is just a deal that Google considered, but did not consummate.  Plaintiffs should not be able to waste the jury's and court's time with evidence on this irrelevant subject.

Google's intent in the negotiations is not relevant.  "[I]n considering whether the monopolist's conduct on balance harms competition and is therefore condemned as exclusionary for purposes of § 2, our focus is upon the effect of that conduct, not upon the intent behind it." *Microsoft*, 253 F.3d at 59; *see also*, *e.g.*, *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1001 (9th Cir. 2010) (defendant's stated hope that product improvements would be a "barrier to entry" was not actionable, because "intent to harm a competitor" is not actionable without "anticompetitive effects"); *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989) (Easterbrook, J.) ("Intent does not help to separate competition from attempted monopolization and invites [factfinders] to penalize hard competition."); *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 232 (1st Cir. 1983) (Breyer, J.) ("'intent to harm' without more offers too vague a standard in a world where executives may think no further than 'Let's get more business'").  "Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct." *Microsoft*, 253 F.3d at 59.  Because the Project Banyan negotiations never resulted in an agreement and therefore could not have affected competition, evidence regarding Google's intent in those negotiations plays no interpretive role and is not relevant.

B.   **The 2019 Negotiations Regarding Samsung's Galaxy Store Are Also Improper Character Evidence.**

Evidence related to the 2019 Samsung negotiations regarding Samsung's Galaxy Store

-23-

1  should also be excluded as improper character evidence.  Fed. R. Evid. 404(a)(1), (b)(1); *Feighan*

2  *v. Res. Sys. Grp. Inc.*, No. CV-20-03759 (BAH), 2023 WL 4623123, at *9 (D.D.C. July 19, 2023)

3  ("Rule 404 is regularly applied to corporations.").  Rule 404(b)(1) provides that evidence of other

4  wrongs or acts "is not admissible to prove a person's character in order to show that on a particular

5  occasion the person acted in accordance with the character."  This Rule bars Plaintiffs from using

6  the negotiations to argue that Google had a tendency to discourage competition.  *In re Sealed*

7  *Case*, 352 F.3d 409, 412 (D.C. Cir. 2003) (Rule 404 bars evidence of character traits "for the

8  purpose of proving action in conformity therewith"); *see also In re High Fructose Corn Syrup*

9  *Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002) (excluding evidence of price-fixing conspiracy

10  in subsequent antitrust suit).[6]

11  **C.  Risk of Prejudice Substantially Outweighs Any Remaining Probative Value.**

12  The evidence's unfair prejudicial effect would substantially outweigh any abstract

13  probative value Plaintiffs may try to assert.  Fed. R. Evid. 403.  Presenting the details of the 2019

14  negotiations regarding the Galaxy Store creates a risk that the jury will draw the impermissible

15  conclusion that Google acted unlawfully in pursuing negotiations with Samsung, even if they did

16  not culminate in an agreement.  The antitrust laws do not permit liability to be found without

17  anticompetitive effects, *supra*, at 8, so presentation of this evidence could taint the jury verdict.

18  **D.  At Minimum, Plaintiffs Should be Barred from Suggesting Project Banyan**
   **Negotiations Were Improper or Unlawful.**

19

20  Google respectfully requests exclusion of the evidence of its 2019 negotiations with

   Samsung regarding the Galaxy Store.  Alternatively, Plaintiffs' counsel should be barred from

21  suggesting to the jury that those negotiations were improper or wrongful.  In the absence of this

22  relief, Google requests a limiting instruction at the time of the presentation of evidence that these

23  negotiations were not wrongful, improper or unlawful.

24

25

26  _____

27  [6] Some courts have held that legal acts may be considered in conjunction with anticompetitive conduct.  *E.g.*, *Tele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-01673 RS, 2008 WL 4911230, at *1 (N.D. Cal. Nov. 13, 2008).  But Google is aware of no case where acts that were *considered but*

28  *not pursued* could be grouped with other acts under a monopoly broth or other antitrust theory.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3.**

In 2019, Google attempted to pay Samsung not to compete with the Google Play Store ("Project Banyan").  Google seeks to exclude evidence concerning Project Banyan because the agreement with Samsung was not consummated.  But Project Banyan is highly relevant.  That project provides context to the anticompetitive revenue share agreements ("RSAs") Google ultimately entered into with Samsung just a few months later.  Moreover, Project Banyan was launched alongside two complementary anticompetitive efforts—Project Hug and RSA 3.0—and demonstrates the orchestrated anticompetitive intent behind, and effect of, those projects (which included other consummated agreements not to compete that constitute *per se* violations of the Sherman Act).  Evidence concerning Project Banyan is therefore highly probative of Plaintiffs' claims, and "prejudicial" to Google only in the sense that it is damning on the merits.

## I.    PROJECT BANYAN IN CONTEXT.

At trial, Plaintiffs intend to introduce evidence that Project Banyan was launched to prevent Samsung's Galaxy Store from competing with the Google Play Store.  Plaintiffs will demonstrate that Google offered to pay Samsung $200 million over four years to integrate the Galaxy Store with the Google Play Store and effectively cede control of the Galaxy Store to Google.  Google made that offer to Samsung and negotiated it extensively.  Plaintiffs will also demonstrate that Google pursued Project Banyan in tandem with (i) "Project Hug", pursuant to which Google paid other potential competitors hundreds of millions of dollars to prevent them from opening or facilitating the expansion of other competing stores; and (ii) "RSA 3.0", pursuant to which Google paid billions of dollars to virtually all major OEMs *other than* Samsung to make the Google Play Store the exclusive pre-installed store on their phones.  Plaintiffs will show that, soon after Project Banyan failed, Google re-launched its efforts to pay Samsung off by offering it billions of dollars over four years under new RSAs, in exchange for Samsung agreeing not to pre-install any competing Android app stores (other than the Google Play Store and the Samsung Galaxy Store) on the home screens of its devices.

## II.    PROJECT BANYAN EVIDENCE IS HIGHLY PROBATIVE OF PLAINTIFFS' CLAIMS.

Google's contention that Project Banyan negotiations are "irrelevant" because no deal was consummated (Def's. MIL No. 3 at 8) is baseless for several reasons.  "Evidence is relevant if 'it has *any* tendency to make a fact more or less probable,'. . . which is widely recognized as a 'liberal' standard."  *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1082 (9th Cir. 2022) (emphasis in original) (quoting Fed. R. Evid. 401).  For one, Project Banyan is probative of the high barriers to entry in the Android app distribution market because paying Samsung hundreds of millions of dollars not to compete with the Google Play Store makes sense only if other stores could not easily fill the void left by Samsung.  Further, Project Banyan need not itself amount to an antitrust violation for it to be probative to show that the intent behind and effect of complementary and successor projects, which *were* consummated, was to prevent competition in violation of the antitrust laws.  As Google notes, evidence of an unconsummated deal and the intent behind it is relevant to the extent it "helps us understand the likely effect of [Google's] conduct".  *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001).  That is exactly what evidence of Project Banyan does.  The fact that Google worked extensively on one project to squash competition from the Galaxy Store is powerful evidence of the intended and likely effect of the anticompetitive Project Hug agreements, of Google's RSA 3.0 agreements with OEMs other than Samsung, and of the RSA agreements it did ultimately consummate with Samsung.  All of these projects were pursued contemporaneously with Project Banyan or as an alternative thereto.  And Project Banyan, Project Hug and RSA 3.0 were frequently discussed in presentations as part of a single coordinated plan.  (*See, e.g.*, Even Decl. Ex. 4, GOOG-PLAY-001265881, at -916; Even Decl. Ex. 5, GOOG-PLAY-004488106.R, at -123.R.)  Google cannot and should not ask the jury to consider only parts of these documents yet disregard other relevant parts.

## III.    PROJECT BANYAN EVIDENCE IS NOT CHARACTER EVIDENCE.

Google's argument that Project Banyan evidence is impermissible character evidence mischaracterizes the purpose for which Plaintiffs would introduce the evidence.  Rule 404(b) permits evidence of a defendant's "other crime(s), wrong(s), or act(s)" if admitted "for another purpose" aside from proving a person's character, "such as proving . . . intent, preparation, plan, [or] knowledge".  Fed.

R. Evid. 404(b)(1), (2).  These are the purposes for which Plaintiffs intend to introduce Project Banyan evidence.  This evidence shows that Projects Banyan, Hug and RSA 3.0, and Google's RSAs with Samsung, were part of a broader, complex scheme to maintain Google's monopoly power by preventing or prohibiting competing Android app stores.

## IV.   GOOGLE PROVIDES NO EXPLANATION FOR HOW PROJECT BANYAN EVIDENCE IS PREJUDICIAL.

Google's argument that Project Banyan evidence violates Rule 403 is likewise misplaced, starting again with the misstatement of Project Banyan's probative value.  Project Banyan evidence is highly probative for the reasons described above.  Evidence is not "prejudicial" merely because it tends to prove that Google violated the antitrust laws.  *See United States v. Barker*, 1 F.3d 957, 959 n.3 (9th Cir. 1993) ("Evidence is prejudicial only when it has an additional adverse effect on a defendant beyond tending to prove the fact or issue that justified its admission.").  Google has therefore offered no plausible basis for how the strong probative value of Project Banyan evidence could be "substantially outweighed" by the danger of *unfair* prejudice.

## V.   GOOGLE FAILS TO DEMONSTRATE IT IS ENTITLED TO A LIMITING INSTRUCTION.

Google's alternative request for a limiting instruction is likewise meritless.  Contrary to Google's argument, the jury is entitled to conclude that Google's negotiations with Samsung to reach a *per se* unlawful horizontal agreement not to compete were indeed part of an improper and illegal anticompetitive scheme.  Google cites no authority for its request that the Court effectively bless this piece of the coordinated scheme, and Plaintiffs are aware of none.

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

I*n re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

*Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD

Case No. 3:21-md-02981-JD

**DEFENDANTS' MOTION *IN LIMINE* NO. 4**

**TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING OTHER LAWSUITS OR SETTLEMENTS IN THIS MDL**

Judge Hon. James Donato

Date:          October 19, 2023
Time:         1:30 p.m.
Courtroom:  11

-29-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the

3     above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco,

4     California 94102, before the Honorable James Donato, Defendants will and hereby do move the

5     Court for an order granting the following Defendants' Motion *In Limine*:

6          Motion *In Limine* No. 4          TO EXCLUDE EVIDENCE OR ARGUMENT
                                             REGARDING OTHER LAWSUITS OR
7                                            SETTLEMENTS IN THIS MDL

8                                            The Court should preclude Plaintiffs from
                                             introducing evidence of, or making any reference to,
9                                            other lawsuits in this MDL or the fact, terms, or
                                             amounts of settlements between Google and the
10                                           developer Plaintiffs, consumer Plaintiffs, and
                                             Plaintiff States in this MDL.
11

12         This motion is based on this Notice of Motion and Motion, Memorandum of Points and

13    Authorities, and such other matters as may be presented to the Court at the time of or before the

14    hearing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MOTION *IN LIMINE* NO. 4:  TO EXCLUDE EVIDENCE OR ARGUMENT
   REGARDING OTHER LAWSUITS OR SETTLEMENTS IN THIS MDL**
2

3          The Court should exclude any reference or evidence to other lawsuits in this MDL or the

4  fact, terms, or amounts of settlements between Google and the developer Plaintiffs, consumer

5  Plaintiffs and Plaintiff States.  Such evidence is inadmissible under Federal Rules of Evidence

6  408, 402, and 403.

7  **I.      SETTLEMENTS WITH DEVELOPERS, CONSUMERS AND STATES ARE NOT
           ADMISSIBLE**
8

9          Google's agreements to settle related antitrust claims brought by developers, consumers

10  and States are not relevant or admissible.  *See* Hr'g Tr. at 25:10–26:2, *In re Capacitors Antitrust*

11  *Litig.*, No. 3:17-cv-07046-JD, ECF No. 292 (N.D. Cal. Nov. 12, 2022) (Donato, J.) (excluding

12  evidence of related settlements).  Other courts likewise have regularly excluded agreements to

13  settle related litigation.[1]  The Court should do the same here.

14          To the extent that Epic or the Match Plaintiffs contend that Google's agreement to settle

15  other claims suggests that Google is liable for Epic's or Match Plaintiffs' claims, Rule 408

16  expressly prohibits offering the settlements for that purpose.  *See* Fed. R. Evid. 408(a)(1)

17  (providing that "furnishing, promising, or offering . . . a valuable consideration in

18  compromising . . . the claim" is "not admissible either to prove or disprove the validity or amount

19  of a disputed claim or to impeach by a prior inconsistent statement or a contradiction").  Under

20  Rule 408, "evidence of compromise is irrelevant, since the offer may be motivated by desire for

21  _____

22  [1] *E.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2022 WL
    4087842, at *3 (S.D.N.Y. Sept. 6, 2022) (granting motion *in limine* to exclude evidence of
23  "regulatory settlements" that did not contain "factual admissions"); *Costco Wholesale Corp. v. AU
    Optronics Corp.*, No. C13-1207RAJ, 2014 WL 4674390, at *6 (W.D. Wash. Sept. 17, 2014)
24  (excluding evidence of settlements of related litigation); *In re Static Random Access Memory
    (SRAM) Antitrust Litig.*, No. 07–md–01819 CW, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16,
25  2010) (granting motion to "exclude reference to or evidence of settlements with other
    Defendants"); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2011 WL 3300577, at *1 (E.D.
26  Tenn. Aug. 1, 2011) (same); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV 02-8462-RSWL
    (RZx), 2007 WL 5673884, at *1–2 (C.D. Cal. Dec. 5, 2007) (excluding evidence of settlement
27  with Department of Justice); *Herrera-Amaya v. Arizona*, No. CV-14-02278-TUC-RM, 2017 WL
    11595813, at *9 (D. Ariz. Sept. 19, 2017) (excluding evidence of class action settlement).
28

1  peace rather than from any concession of weakness of position." *Hudspeth v. Comm'r*, 914 F.2d

2  1207, 1213 (9th Cir. 1990) (alterations omitted).  This rule applies when the party seeking to

3  introduce the settlement was not a party to the settlement.  *Id.* (explaining that Rule 408 excludes

4  evidence of a settlement even when the party seeking to introduce the evidence was not party to

5  the settlement).

6         In addition, the settlements are inadmissible under Rule 403 because the "danger" of

7  "unfair prejudice, confusing the issues, misleading the jury, undue delay" and "wasting time"

8  would substantially outweigh any minimal "probative value" of the settlements.  Fed. R. Evid.

9  403.  A "settlement is not a reliable indicator of misconduct" and "the fact-finder may be unduly

10  swayed by" evidence that a defendant settled.  *In re Tenet Healthcare Corp. Sec. Litig.*, 2007 WL

11  5673884, at *1–2.  Indeed, numerous considerations factor into whether to settle a case.  *McDevitt*

12  *v. Guenther*, 522 F. Supp. 2d 1272, 1285 (D. Haw. 2007) ("[M]any considerations which had

13  nothing to do with [a defendant's] involvement may have entered into the determination of the

14  settlement amount paid by [a settling defendant].").  For example, a settlement "offer may be

15  motivated by the desire for peace rather than from any concession of weakness of position."

16  *Hudspeth*, 914 F.2d at 1213.

17         Thus, admitting evidence of settlements of other litigations would require Google to

18  explain the settlements' circumstances, why Google agreed to them (which might involve

19  privileged information) and why they are not probative of wrongdoing.  That would unfairly

20  prejudice Google and require mini-trials that would distract the parties and the jury from the

21  claims that remain pending.

22         The Court should preclude Plaintiffs from introducing evidence or making any reference to

23  settlements of other lawsuits in this MDL.

24  **II.     EVIDENCE OF OTHER LAWSUITS IS INADMISSIBLE**

25         The Court should also preclude Plaintiffs from introducing evidence of or referring to

26  lawsuits brought by other developers, consumers and Plaintiff States in this MDL, including the

27  existence of those lawsuits.  *See*, *e.g.*, Hr'g Tr. at 25:10–26:2, *In re Capacitors Antitrust Litig*, No.

28  3:17-cv-07046-JD, ECF No. 292 (N.D. Cal. Nov. 12, 2022) (Donato, J.) (excluding evidence of

-32-

related civil cases and settlements); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 10086747, at *3 (excluding "reference to or evidence of settlements with other Defendants," including settlement amounts); *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 WL 4674390, at *6 (excluding reference to civil trials and settlements regarding the same conduct at issue as irrelevant and "dangerous," and emphasizing that jurors may be swayed by evidence of other trials and settlements when awarding damages).  Evidence that other plaintiffs filed related claims against Google is not relevant to any issue related to Epic's or the Match Plaintiffs' claims.  Epic and the Match Plaintiffs should not be able to bolster their claims by pointing to the fact that developers, consumers or state Attorneys General filed similar claims. *See also id.* (excluding evidence of litigation and settlements concerning the same conduct at issue despite Plaintiffs' concern that Defendant will "try[] this case as the champion of its consumers.").

It would be especially improper and unfairly prejudicial to permit Plaintiffs to reference other lawsuits in this MDL when Google has resolved those lawsuits through settlements.  That will put Google to a Hobson's Choice of either disclosing settlements that would otherwise be inadmissible for the reasons set forth above, or not disclosing the settlements, leaving the jury to speculate about the outcome of the other lawsuits.  Without evidence regarding the settlements, the jury would be tempted to speculate about the outcome of the other lawsuits, such as whether they were resolved against Google or whether they remain pending such that finding for Epic or the Match Plaintiffs could lead to relief for other individuals, companies or States.  Introducing evidence that the other lawsuits have been settled would avoid speculation, but would unfairly invite the jury to infer incorrectly that Google settled related claims because the claims before them have merit.

The Court should preclude Plaintiffs from introducing evidence of, or making any reference to, other lawsuits in this MDL, including the existence of those lawsuits.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4.**

Google seeks to exclude any evidence or argument regarding the lawsuits and settlements between Google and the Developer, State and Consumer Plaintiffs (the "other MDL lawsuits"). Epic and the Match Plaintiffs do not oppose the exclusion of evidence regarding the fact, terms or amounts of any settlements in other MDL lawsuits inasmuch as they are offered to prove Google's liability. *See* Fed. R. Evid. 408(a). But evidence of the fact and consequences of the other MDL lawsuits is highly relevant to other topics at issue in this litigation, and Google's request for a complete ban on such evidence is overbroad and should be denied.[1]

## I. EVIDENCE REGARDING THE EXISTENCE OF THE OTHER MDL LAWSUITS IS HIGHLY RELEVANT.

Google seeks a complete bar on any mention of the other MDL lawsuits, claiming their existence is not relevant or probative. Not so. Contrary to Google's argument, evidence regarding the other MDL lawsuits is, at a minimum, relevant to explain to the jury the cause and motives behind changes in Google's conduct that are central to this litigation.

Plaintiffs in this litigation have challenged certain Google conduct. Because that conduct has changed as a consequence of the other MDL lawsuits, Plaintiffs will need to explain to the jury that those changes have been driven by regulatory and litigation threats—and not, for example, by competitive pressures. For example, in July 2021, after this litigation began, Google reduced the fee it charges developers from 30% to 15% for the first $1 million of revenue a developer makes—a change Google admits was driven in part by the other MDL lawsuits. (*See* Even Decl. Ex. 6, Google's R&Os to Consumers' First Set of RFAs, #11 at pp. 16-17.) A few months later, Google again lowered the fee it charges developers on the first year of in-app subscriptions, from 30% to 15%. Google's motives behind such changes are highly relevant, including to undermine Google's expected arguments that any changes in the challenged conduct were driven by competition with Apple. Epic and the Match Plaintiffs

---

[1] As of today's date (October 2), the potential settlement between Google and the State and Consumer Plaintiffs has not been finalized or disclosed. Epic and the Match Plaintiffs therefore reserve the right to present evidence regarding the settlement for purposes other than an admission of liability, such as to explain that changes Google may make to its practices were not driven by competition.

1    therefore must be allowed to reference the other MDL lawsuits to explain and provide context for

2    Google's changed behavior.

3         In addition, Google's potential settlement between the State and Consumer Plaintiffs has an

4    injunctive relief component.  Although the terms of that potential settlement have not been disclosed, it

5    is highly likely the injunctive relief component includes some changes to Google's policies or conduct

6    that are directly at issue in this case.  To the extent those changes are introduced at trial,[2] Epic and the

7    Match Plaintiffs must have the right to inform the jury that the other MDL lawsuits—not competitive

8    pressure—are what caused those changes.

9         Google's authority for its assertion that evidence of related lawsuits should be altogether

10   excluded misses the mark.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL

11   10086747, at *3 (N.D. Cal. Dec. 16, 2010), has nothing to do with the admissibility of evidence of other

12   lawsuits; instead, it addresses only the admissibility of "references to *settlements*" of lawsuits, which is

13   not at issue here.  *Id.* at *9-10 (emphasis added).  *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014

14   WL 4674390 (W.D. Wash. Sept. 17, 2014) is an out-of-district case, and a court in this district ruled the

15   exact opposite way on a similar motion in a related case.  *See* Final Pretrial Schedule Order, *In re: TFT-

16   LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, Dkt. 5597, at 4 (N.D. Cal. May 4, 2012) (denying

17   motion *in limine* to "exclude references to separate cases brought by opt-outs, state AGs and IPPs").  In

18   *In re Capacitors Antitrust Litigation*, No. 17-md-2801 (N.D. Cal.), the opposing party never argued that

19   the existence of the other lawsuits was relevant to their substantive claims.  *See* Avnet's Omnibus Mots.

20   in Limine and Defs.' Resps., No. 17-md-2801, Dkt. 1780, at 4-5 (N.D. Cal. Nov. 12, 2022).  In contrast,

21   Epic and the Match Plaintiffs have detailed how the other MDL lawsuits are directly relevant to

22   substantive issues in this litigation.

23   **II.    EVIDENCE REGARDING THE EXISTENCE OF THE OTHER MDL LAWSUITS IS
24          NOT PREJUDICIAL.**

25        Google's arguments of prejudice are speculative and should also be rejected.  Without citing any

26   authority, Google hypothesizes that it would be prejudiced if the jury were to learn of the fact of the

27

28   _____
     [2] Epic and the Match Plaintiffs reserve and do not waive any objections to the admissibility of such
     evidence.

other MDL lawsuits and "speculate" "whether [such lawsuits] were resolved against Google or whether they remain pending such that finding for Epic or the Match Plaintiffs could lead to relief for other[s]". Def.'s MIL No. 4 at 12. But Google is just speculating about jury speculation; Google does not provide any basis to assume such jury speculation will occur, let alone that it would prejudice Google. For example, Google does not explain why, should the jury engage in speculation, the jury would not form the view that Google *prevailed* in the other MDL lawsuits. Moreover, Google has failed to carry its burden that any hypothesized prejudice "substantially outweigh[s]" the probative value of evidence regarding the settled litigations as described above. Fed. R. Evid. 403.

For the foregoing reasons, the Court should reject Google's request to exclude evidence regarding the existence of the other MDL lawsuits.

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 5**<br><br>**TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING GOOGLE EMPLOYEES' COMPENSATION, STOCK HOLDINGS, OR NET WORTH**<br><br>Judge Hon. James Donato<br><br>Date:            October 19, 2023<br>Time:           1:30 p.m.<br>Courtroom:    11 |

-38-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the

3 above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco,

4 California 94102, before the Honorable James Donato, Defendants will and hereby do move the

5 Court for an order granting the following Defendants' Motion *In Limine*:

6      Motion *In Limine* No.5            TO EXCLUDE EVIDENCE OR ARGUMENT
                                          REGARDING GOOGLE EMPLOYEES'
7                                         COMPENSATION, STOCK HOLDINGS, OR NET
                                          WORTH
8
                                          The Court should preclude Plaintiffs from offering
9                                         evidence of, or referring to, the compensation, stock
                                          holdings, or net worth of current or former Google
10                                        employees.

11

12      This motion is based on this Notice of Motion and Motion, Memorandum of Points and

13 Authorities, and such other matters as may be presented to the Court at the time of or before the

14 hearing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **MOTION *IN LIMINE* NO. 5:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING GOOGLE EMPLOYEES' COMPENSATION, STOCK HOLDINGS, OR NET WORTH**

2

3           The Court should preclude Plaintiffs from offering evidence of, or referring to, the

4   compensation, stock holdings, or net worth of current or former Google employees.  Such

5   evidence is not relevant and would serve only to embarrass the witnesses, invade their privacy and

6   mislead the jury.  *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–cv–03999–BLF, 2015 WL

7   4129193, at *4 (N.D. Cal. July 8, 2015) (excluding references to compensation of consultants who

8   were "akin to employees"); *Cardoza v. Tann*, No. 1:11–cv–01386–RRB, 2015 WL 6437376, at *3

9   (E.D. Cal. Oct. 22, 2015) (excluding evidence of defendant's net worth); *Reyes v. Aqua Life Corp.*,

10  No. 10-23548-Civ-COOKE/TURNOFF, 2012 WL 12892213, at *2 (S.D. Fla. July 8, 2012)

11  (excluding evidence of individuals' "personal wealth, net worth, or income"); *Salazar v. A & J*

12  *Contr. of Mont., Inc.*, No. CV 11–16–BLG–CSO, 2012 WL 4092421, at *1 (D. Mont. Sept. 17,

13  2012) (excluding as irrelevant evidence regarding the wealth of the defendant's principals).

14          Evidence of how much income Google employees have previously earned from their work

15  for Google says nothing about bias.  The outcome of this case cannot affect compensation that

16  Google has already paid.

17          To the extent that Plaintiffs intend to introduce evidence of Google employees' current or

18  future salaries or stock holdings to show that these witnesses' interests may be aligned with

19  Google's, that evidence would be cumulative.  *See Johnson v. Hewlett-Packard Co.*, No. C09-

20  3596 CRB (BZ), 2010 WL 4510345, at *2 (N.D. Cal. Nov. 1, 2010) ("[Witness's] employment

21  with [Defendant] already implies bias, and thus, exact information as to amounts of compensation

22  is unnecessary for such a purpose.").  If the law were otherwise, trials involving companies would

23  be laden with details of the compensation paid to each company employee.

24          No facts here suggest that the amount a witness earns in income from Google or holds in

25  Google stock adds anything to the fact of the employment relationship or stock ownership.  This

26  case does not involve one of the limited circumstances where wealth-related evidence has

27  relevance.  For example, no Google witness is a majority owner of a party.  *Compare Wyatt Tech.*

28  *Corp. v. Malvern Instr., Inc.*, No. CV 07-8298 ABC (MANx), 2010 WL 11505684, at *23 (C.D.

-40-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

Cal. Jan. 25, 2010), *aff'd in part,* 526 F. App'x 761 (9th Cir. 2013) (denying motion to exclude such evidence where the witnesses owned 75 percent of a party company).  There is no allegation that any party obtained wealth by committing fraud.  *Compare United States v. Balwani*, No. 5:18-cr-00258-EJD-1, 2022 WL 597040, at *8 (N.D. Cal. Feb. 28, 2022) (holding that wealth of Theranos executives was relevant to wire fraud trial).  And because the individual witnesses are not parties, their wealth is not relevant to punitive damages.  *Compare Freeman v. Ethicon, Inc.*, No. 20-cv-10661-CBM (SKx), 2022 WL 4604603, at *1 (C.D. Cal. Aug. 26, 2022).

For these reasons, the Court should exclude reference to and argument about the compensation, stock holdings, or net worth of current or former Google employee witnesses.

**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 5.**

Google's Motion *in Limine* No. 5 to exclude evidence or argument regarding Google employees' compensation, stock holdings or net worth should be denied.  Such evidence is plainly relevant to Google employees' willingness and motivation to engage in unlawful anticompetitive conduct.  *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *11 (N.D. Cal. Mar. 31, 2021) (denying defendant's motion *in limine* to exclude "evidence or argument concerning the individual defendants' financial condition, net worth, including ownership of Twitter stock [and] compensation" for the class period because "Defendants' compensation is relevant to motive and scienter"); *United States v. Schena*, 2022 WL 2910185, at *17 (N.D. Cal. July 23, 2022) (denying defendant's motion *in limine* to exclude evidence about his financial condition because "the fact that Defendant personally owned a large amount of [company] shares and thus stood to benefit from the alleged . . . scheme, is relevant to show motive and intent"); *SEC v. Goldstone*, 2016 WL 3654273, at *15 (D.N.M. June 13, 2016) (allowing "evidence regarding the Defendants' income to . . . prove motive and scienter").  In fact, the compensation at issue *is* the motivation, or at least a driving motivation, in the employees' willingness to participate in illegal conduct.

For example, certain witnesses in this case are alleged to have been involved in negotiating *per se* illegal agreements not to compete between Google and potential competitors.  Others were involved in negotiations with Samsung as part of "Project Banyan"—a project whereby Google intended to buy off the Galaxy Store—a direct competitor to the Google Play Store—so that it would cease to compete with the Google Play Store.  The extent to which these witnesses would personally benefit from this conduct—as distinct from the benefit to Google as an entity—is relevant when evaluating these individuals' willingness to participate in violations of the antitrust laws.  *See United States v. Penn*, 2022 WL 523004, at *2 (D. Colo. Feb. 22, 2022) (noting with regard to evidence of compensation that "evidence of how [defendants] would benefit from higher chicken prices was relevant to motive for price fixing and was admissible").

Furthermore, Google's unlawful conduct in this case includes its willful destruction of evidence in the form of Chats.  The Court has already found that "Google fell strikingly short" of its duty to preserve evidence and "gave each employee carte blanche to make his or her own call about what might

1   be relevant in this complex antitrust case". (MDL Dkt. 469 at 16-17.)  Google employees' compensation

2   goes directly to their willingness to protect their employer from liability, including by failing to turn

3   their Chat history "on" when given the liberty of a "'don't ask, don't tell' policy for Chat preservation".

4   (*Id.* at 17.)  The Court further found that Google has conducted trainings entitled "Communicate with

5   Care" where employees were provided strategies on how to hide their written communications from

6   discovery or sanitize the content of what they wrote.  (*Id.* at 3-11.)  How much the Google employees

7   stood to gain from shielding Google's unlawful conduct from public scrutiny, *i.e.*, their motivation to

8   follow Google's trainings, is directly relevant information that the jury is entitled to hear.

9         Google's argument that evidence of compensation is cumulative because employment by Google

10  already implies "bias" is an attack on a straw man.  The purpose of compensation evidence would not

11  be to show that Google's witnesses are "biased"—in the sense that they may lie or shade the truth in

12  their testimony.  It is instead to show that certain Google employees have a financial incentive to

13  participate in Google's illegal anticompetitive schemes.  Compensation "may be relevant to

14  [employees'] motivation for making certain decisions on behalf of the defendant corporation[]".  *Terry v.*

15  *McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.)*,

16  181 F. Supp. 3d 278, 294 (E.D. Pa. 2016) (denying defendants' motion *in limine* to preclude all evidence

17  of employee compensation).  Google's motion simply does not address this issue, and should be denied

18  on that basis alone.

19        Moreover, even Google's argument regarding bias is wrong, because the witnesses'

20  compensation is relevant to show the *degree* of bias.  *See Oracle USA, Inc. v. Rimini St., Inc.*, 2015

21  WL 5165374, at *2-3 (D. Nev. Sept. 3, 2015) (denying plaintiff's Oracle's motion *in limine* to "exclude

22  any evidence regarding the compensation or stock holdings of any Oracle officer or employee" because

23  "the financial condition of Oracle officers or employees . . . may be relevant in examining the witnesses'

24  bias, if any, [since] Oracle officers and employees who are directly compensated by Oracle for their

25  work or hold stock in Oracle may have a financial interest in the outcome of this case and defendants are

26  entitled to examine relevant testimonial bias at trial").  Just as in *Wyatt Tech. Corp. v. Malvern*

27  *Instruments, Inc.*—a case Google cites—Google's witnesses' "bonuses . . . are based on the company's

28  profitability" and accordingly any gains or losses resulting from this case "would flow . . . to them as

corporate shareholders and executives". 2010 WL 11505684, at *23 (C.D. Cal. Jan. 25, 2010), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013). As a result of Google's anticompetitive practices, the Google Play Store is extremely profitable and contributes meaningfully to Alphabet's bottom line. (*See* Even Decl. Ex. 7, GOOG-PLAY-000338400 at -401 (noting that the Google Play Store contributed ███████████████ Alphabet H1'2020 operating profit").) The profitability of the Google Play Store thus has a direct impact on Google employees' generous compensation. (*See, e.g.*, Even Decl. Ex. 8, Dep. of Jamie Rosenberg at Tr. 387:25-389:1 (stating that he holds ██████ unvested Google shares).) That results in loyalty and hefty financial incentives that are a world away from the ordinary loyalty that is implicit in an employer-employee relationship.

For the reasons stated above, the Court should deny Google's motion to exclude evidence or argument regarding Google employees' compensation, stock holdings or net worth.

In the event that the Court grants Google's motion, the Court should preclude evidence or argument regarding *all* witnesses' compensation, stock holdings or net worth.

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' MOTION *IN LIMINE* NO.6** |
| | **TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FEDERAL GOVERNMENT REPORTS** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Date:      October 19, 2023<br>Time:      1:30 p.m.<br>Courtroom:   11 |
| *Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD | |

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2       PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the

3 above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco,

4 California 94102, before the Honorable James Donato, Defendants will and hereby do move the

5 Court for an order granting the following Defendants' Motion *In Limine*:

6       Motion *in Limine* No. 6        TO EXCLUDE EVIDENCE OR ARGUMENT
                                          REGARDING FEDERAL GOVERNMENT
7                                         REPORTS

8                                         The Court should exclude evidence, argument, or
                                          expert testimony concerning reports by Congress or
9                                         the Executive Branch.

10

11      This motion is based on this Notice of Motion and Motion, Memorandum of Points and

12 Authorities, the Declaration of Justin P. Raphael and accompanying exhibits, and such other

13 matters as may be presented to the Court at the time of or before the hearing.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MOTION *IN LIMINE* NO. 6:  TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FEDERAL GOVERNMENT REPORTS**

2

3          The Court should preclude Plaintiffs from introducing into evidence or eliciting expert

4  testimony based on reports by Congress or the Executive Branch.  Plaintiffs' exhibit list includes a

5  Majority Staff Report of the House Subcommittee on Antitrust, Commercial and Administrative

6  Law ("House Rep.") (excerpts attached as Ex.[10] 1 to Raphael Decl.) and a report on "Competition

7  in the Mobile Application Ecosystem" by the U.S. Department of Commerce ("NTIA Rep.").

8  Plaintiffs' expert reports also rely on the House Subcommittee Report.  The reports and evidence

9  based upon these reports by entities in the federal government are inadmissible for several reasons.

10          *First*, the reports are inadmissible hearsay that do not fall within any exception, including

11  the exception for public reports that have sufficient indicia of trustworthiness.  Fed. R. Evid.

12  803(8)(B) (previously Fed. R. Evid. 803(8)(c) (1975), am. Apr. 26, 2011, eff. Dec. 1, 2011).

13  "Courts have consistently excluded congressional reports, finding that they did not satisfy the

14  requirements of Rule 803(8)(c) because of the inherently political nature of the reports."

15  *Richmond Med. Ctr. v. Hicks*, 301 F. Supp. 2d 499, 512 (E.D. Va. 2004) (excluding House Report

16  that "represents the political position of the representatives who voted for it"), *vacated on other*

17  *grounds by Herring v. Richmond Med. Ctr. for Women*, 550 U.S. 901 (2007).[11]

18          "Given the obviously political nature of Congress, it is questionable whether any report by

19  a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a

20  private party.  There would appear to be too great a danger that political considerations might

21  affect the findings of such a report."  *Pearce*, 653 F. Supp. at 814.  Indeed, "it cannot be denied

22  that hearings and subsequent reports are frequently marred by political expediency and

23  grandstanding."  *Anderson*, 657 F. Supp. at 1579.  Moreover, congressional staffers preparing

24

25  [10] All references to "Ex." are exhibits to the declaration of Justin P. Raphael ("Raphael Decl.").

26  [11] *E.g*, *Anderson v. City of New York*, 657 F. Supp. 1571, 1579-80 (S.D.N.Y. 1987) (excluding
report by House Judiciary Committee); *Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th
27  Cir. 1986) (district court properly excluded subcommittee report). *Cf. Knight Pub. Co. v. U.S.
Dep't of Just.*, 631 F. Supp. 1175, 1178 (W.D.N.C. 1986) (House subcommittee report not
28  "productive of any facts which would persuade the Court one way or the other").

-48-

1   reports often have "lacked personal or actual knowledge of the events about which testimony was

2   being taken and heard, primarily, only one side of the story." *Id.* Thus, "while Congressional

3   hearings are so termed, they do not fit closely the judicial meaning of hearings, at least in

4   comparison to the hearings held by administrative agencies in their quasi-judicial capacity." *Id.*

5          The reports that Plaintiffs seek to rely on here suffer from similar flaws that make them

6   insufficiently trustworthy to qualify for an exception to the hearsay rule.  The House

7   Subcommittee Report reflected the views of only some Subcommittee members, all from a single

8   political party.  The other members dissented from the report, warning that "Americans should not

9   understand this staff report as the bipartisan, formal conclusion of the Committee on the Judiciary"

10  and criticizing the Majority for not "citing—let alone accounting for and seeking to rebut—

11  perspectives that conflict with" their views.  *See* Ex. 1, House Rep. at 362.  *See United Air Lines v.*

12  *Austin Travel Corp.*, 867 F.2d 737, 742–43 (2d Cir. 1989) (affirming exclusion of House

13  committee report where eleven committee members dissented from report); *Pearce v. E.F. Hutton*

14  *Grp., Inc.*, 653 F. Supp. 810, 815 (D.D.C. 1987) (excluding "report that was hotly disputed and

15  dissented to directly along lines of political affiliation").  Indeed, the report was not prepared

16  pursuant to an adversary proceeding.  Google had no ability to use compulsory process to obtain

17  evidence or cross-examine witnesses against it.

18         The NTIA Report suffers from similar flaws.  The report was prepared in response to an

19  Executive Order.  Rather than the product of adversarial testing, the report was based entirely on

20  hearsay:  (1) "public reports and literature," (2) "consultations" with certain individuals whom

21  Google has never had the chance to cross-examine, and (3) "comments received in response to a

22  public Request for Comment."  NTIA Rep. at 3–4.  Moreover, the Commerce Report extensively

23  cited the House Subcommittee Majority Report as well as reports by foreign regulators that

24  Google has concurrently also moved *in limine* to exclude.

25         Even if the House Subcommittee and NTIA Reports qualified for an exception to the

26  hearsay rule, each is replete with inadmissible double or triple hearsay and legal conclusions.  *See*

27  *Romero–Baldazo v. Pan–Amer. Assur. Co.*, Nos. 98-20271, 98-20731, 1999 WL 824563, at *1

28  (5th Cir.1999) ("Federal Rule of Evidence 803(8) applies to observations or findings of a

-49-

1    government official, not to hearsay statements made by private actors which are contained in the

2    report."); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) ("Pure legal

3    conclusions are not admissible as factual findings" under Rule 803); *Allan v. Realcomp II, Ltd.*,

4    No. 10-cv-14046, 2012 WL 12929751, at *2 (E.D. Mich. May 28, 2012) (refusing to admit an

5    "*entire* opinion" of the FTC "including its application of antitrust law to the facts it found and its

6    legal conclusions," because the public records exception "permits 'factual findings,' and not legal

7    opinions, to come into evidence").

8         *Second*, federal government reports are inadmissible under Rule 403 because they present

9    a danger of "unfair prejudice" and a mini-trial regarding political affairs.  Fed. R. Evid. 403.  The

10   government reports contain findings regarding a number of the issues that the jury will decide in

11   this case, including which products compete with the Google Play store and whether app stores

12   face barriers to entry.  (*See, e.g.*, House Rep. at 77, 81; NTIA Rep. at 5.)  The reports' imprimatur

13   of official government business will invite the jury to decide the case on the improper basis of

14   what "the government" has already determined rather than what the evidence shows.  *See United*

15   *States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007) (excluding evidence that risks leading jurors to

16   "defer to findings and determinations relevant to credibility made by an authoritative, professional

17   factfinder rather than determine those issues for themselves.").  To avoid that unfair prejudice,

18   Google would have to conduct a distracting and time-consuming mini-trial into the political

19   processes that produced the reports, which could require Google to align itself with political

20   figures whose views jurors oppose or dislike.  That would be unfairly prejudicial.

21        Finally, Plaintiffs should not be able to end-run the inadmissibility of these reports by

22   having their experts rely on or repeat them.  An economist's testimony that he reached a

23   conclusion on a particular issue because a government report reached that conclusion invites the

24   jury to do the very same thing.  *See Hynix Semiconductor Inc. v. Rambus, Inc.*, Nos. CV-00-20905

25   RMW, C-05-00334 RMW, C-06-00244 RMW, 2008 WL 282376, at *4 (Jan. 28, 2008) (barring

26   expert from disclosing to the jury that his findings were based on an FTC decision that the Court

27   refused to admit under Rule 803(8)).

28

## INDEX OF EXHIBITS TO DEFENDANTS' MOTION *IN LIMINE* NO. 6 REGARDING FEDERAL GOVERNMENT REPORTS

The table below lists exemplary documents that are affected by this motion.  Defendants' motion is not limited to the documents on this list, but includes documents covered by the substance of this motion that Plaintiffs' may identify, including in Plaintiffs' list of rebuttal exhibits.

The documents below are those Defendants have thus far identified on Plaintiffs' initial exhibit lists.  On those lists, Plaintiffs recorded their "Purpose" in including the document as: "Proof of Defendants' liability for antitrust violations, unreasonable restraints of trade, unfair competition and/or tortious interference; proof of Defendants' discovery conduct; proof of appropriate injunctive relief; proof of resulting damages; and/or proof rebutting allegations in Defendants' Answers and Counterclaims against Plaintiffs."

| Ex. No. | Name / Description |
|---------|--------------------|
| 1 | Document titled, "Investigation of Competition in Digital Markets - Majority Staff Report and Recommendations / Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary", by Jerrod Nadler, Chairman, Committee on the Judiciary & David N. Cilline, Chairman, Subcommittee on Antitrust, Commercial and Administrative Law |
| 2 | Document titled: "Competition in the Mobile Application Ecosystem" - NTIA Report by U.S. Department of Commerce |

1  **OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6.**

2  The Court should deny Google's attempts to exclude Congressional and Executive Branch

3  reports ("Government Reports") that reflect extensive investigation of Google's conduct at issue in this

4  case.  The Government Reports are (1) "presumptively admissible" for their underlying factual findings

5  and data under Fed. R. Evid. 803(8); (2) admissible to show that Google changed its behavior in response

6  to regulatory and legislative pressure—not competitive pressure; (3) properly considered by Plaintiffs'

7  experts' in forming their opinions; and (4) not unduly prejudicial.

8  *First*, the Government Reports are "presumptively admissible", *Est. of Gonzales v. Hickman*,

9  2007 WL 3237727, at *2 n.3 (C.D. Cal. May 30, 2007) (admitting OIG report), for their "factual

10  findings" regarding Google's conduct, Fed. R. Evid. 803(8).  (*E.g.*, House Rep. at 14-15 ("Google

11  place[s] multiple restrictions on apps that create barriers to developers" and "significant barriers remain"

12  in relevant markets).  Rule 803(8) "assumes admissibility in the first instance".  *Beech Aircraft Corp. v.*

13  *Rainey,* 488 U.S. 153, 167, 169 (1988).  "[F]actual findings from a legally authorized investigation" are

14  not excluded as hearsay unless the opponent "show[s] that the source of information or other

15  circumstances indicate a lack of trustworthiness".  Fed. R. Evid. 803(8); *see also Gilbrook v. City of*

16  *Westminster*, 177 F.3d 839, 859 (9th Cir. 1999).  The relevant factors are "(1) the timeliness of the

17  investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible

18  bias when reports are prepared with a view to possible litigation".  *LocusPoint Networks, LLC v. D.T.V.*

19  *LLC*, 2015 WL 5043261, at *7 (N.D. Cal. Aug. 26, 2015).

20  Google fails to satisfy its burden, relying instead on out-of-circuit cases that are easily

21  distinguishable.  *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 815 (D.D.C. 1987) involved a *draft*

22  report (containing no factual findings) by an *anonymous* committee, which inherently lacked

23  trustworthiness.  In *Anderson v. New York*, 657 F. Supp. 1571, 1579-80 (S.D.N.Y. 1987), the report "was

24  not the product of a timely investigation or examination", and resulted from hearings "lack[ing]

25  procedural due process protections" that focused on "primarily, only one side of the story".[1]

26  _____

27  [1] Google's other cases likewise involved incomplete, preliminary or underdeveloped reports.  *Baker v.*
*Firestone Tire & Rubber Co*., 793 F.2d 1196, 1199 (11th Cir. 1986) (report "did not contain the factual

28  findings necessary to an objective investigation"); *United Air Lines, Inc. v. Austin Travel Corp*., 867
F.2d 737, 743 (2d Cir. 1989) (report "d[id] not reflect real concerns of the business world"); *Romero-*

By contrast, the House Report "is the product of a considerable evidentiary and oversight record", including 1,287,997 documents (*1,135,398* produced by Google) responsive to "bi-partisan requests" and interviews with over 240 market participants, including former employees of the investigated platforms.  (House Rep. at 21.)   The Committee held "seven oversight hearings" at which 38 witnesses (including Google's CEO, Sundar Pichai) testified.  (*Id.* at 6, 10).  The Committee conducted multiple briefings and "bipartisan roundtables" that "allowed representatives from Google[] to make their own presentations to Subcommittee staff and to answer questions and provide details regarding [Google's] business practices, structures, and strategies in the marketplace".  (*Id.* at 31.)  The NTIA Report is likewise "based on a review of public reports and literature; consultations with a diverse array of stakeholders from multiple sectors of industry, academia, and civil society; and the comments received in response to a public Request for Comment".  (NTIA Rep. at 3.)  The Department of Commerce extensively considered Google's positions in developing the NTIA Report, including Google's 20+ page comment letter that detailed Google's reasoning relating to, *e.g.*, security and privacy protections, the "rationale behind some Google [] policies that implicate app competition", and Google publications. (*See, e.g.*, *id.* at 36 n.224, 225; 48.)

The Government Reports are products of timely, rigorous investigations, by experienced investigators, developed without an eye toward litigation, and with Google's participation.  *See Wishtoyo Found. v. United Water Conservation Dist.*, 2017 WL 6940510, at *14 (C.D. Cal. Dec. 1, 2017) ("United participated extensively [including] offering comments on a draft of the [report] in writing and at a teleconference[.] United has not come forward with enough negative factors to persuade the Court to exclude the [subject report] as untrustworthy.").  Because "there is 'some reasonable basis for the conclusions'", *McConnell v. Lassen Cnty.*, 2008 WL 4482853, at *5 (E.D. Cal. Oct. 3, 2008), the Government Reports' underlying factual findings and data are admissible.[2]

---

*Baldazo v. Pan-Am. Assur. Co*., 198 F.3d 242 (5th Cir. 1999) ("preliminary criminal inquest"); *Sullivan v. Dollar Tree Stores, Inc*., 623 F.3d 770, 777 (9th Cir. 2010) (report "incomplete", "[i]ts author unidentified and unknown" and "no hearing was held").  *Knight Pub. Co. v. U.S. Dep't of Just*., 631 F. Supp. 1175, 1178 (W.D.N.C. 1986) (dissents not included in report).

[2] Google claims that even if the Rule 803(8) exception applies, Government Reports contain "double or triple hearsay", however, Google has not identified any such hearsay for Plaintiffs to address and respond

*Second*, even if Rule 803(8) did not apply, the Government Reports are admissible to prove the reasons for Google's conduct. *See Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 223 (9th Cir. 1957) (evidence admissible "to show . . . [a] pattern of business conduct, . . . or motive"). Google has made changes to its Payments Policy and enforcement strategy, which it may argue reflect its response to supposed competitive pressure and developer concerns. The Government Reports help show that Google reacted not to competitive pressure, but to mounting regulatory/legislative pressure. (*See* Even Decl. Ex. 9, GOOG-PLAY-007819062 at -102 (reflecting Google's motive to "[m]aximize[] our influence with legislation; get ahead of legislation"); Even Decl. Ex. 10, GOOG-PLAY-011450558 at -639 ("Congress is clearly getting more involved in [] the digital economy space . . . . Our teams are tracking these issues carefully.").)

*Third*, Plaintiffs' experts may properly rely on the Government Reports as a "source of corroborative evidence" for their testimony. *Ponce v. Constr. Laborers Pension Tr. for S. California*, 774 F.2d 1401, 1403 (9th Cir. 1985). Rule 703 permits experts to rely on evidence that would otherwise be inadmissible, including hearsay. *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) ("[E]xperts are entitled to rely on hearsay in forming their opinion."); *Wishtoyo Found.*, 2017 WL 6940510, at *14 ("[E]ven if the [subject report] was not admissible as a public record, it can be relied on by [p]laintiffs' expert biologist as a basis for her opinion[.]").[3]

*Finally*, Google has not met its burden of showing that any prejudicial effect of this evidence "substantially outweighs" its highly probative value. Fed. R. Evid. 403; *Gilbrook*, 177 F.3d at 859 ("[T]he challenged portions of the FRC's report, . . . were probative of defendants' actual motives for their actions.").

---

to. *See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2034800, at *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* must identify the evidence at issue.").

[3] Google cites *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2008 WL 282376, at *4 (Jan. 28, 2008), but the court's Rule 703 analysis only addressed a Federal Circuit opinion, not the FTC proceedings as Google represents. Moreover, the excluded expert testimony in *Hynix* was about the Federal Circuit's findings on "legal issues in dispute". *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. CV 00-20905, Dkt. 2943 (N.D. Cal. Jan. 4, 2008). Here, Plaintiffs' experts only rely on the Government Reports for factual findings and data. Plaintiffs' experts also only cite one of the two documents Google references in its motion. To the extent Google seeks to prohibit Plaintiffs' experts from relying on other materials, such request should be denied. *See Colton Crane*, 2010 WL 2034800, at *1.

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
Rebecca L. Sciarrino, S.B. #336729
rebecca.sciarrino@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
Lauren Bell, *pro hac vice*
Lauren.Bell@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' MOTION *IN LIMINE* NO. 7** |
| | **TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FOREIGN PROCEEDINGS AND INVESTIGATIONS** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| I*n re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | Date:        October 19, 2023<br>Time:        1:30 p.m.<br>Courtroom:  11 |
| *Match Group, LLC, et al., v. Google LLC, et al.*, Case No. 3:22-cv-01746-JD | |

1

## **NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE that on October 19, 2023, at 1:30 p.m., in Courtroom 11 of the

3   above-entitled Court, located on the 19th Floor of 450 Golden Gate Avenue, San Francisco,

4   California 94102, before the Honorable James Donato, Defendants will and hereby do move the

5   Court for an order granting the following Defendants' Motion *In Limine*:

6          Motion *In Limine* No. 7                TO EXCLUDE EVIDENCE OR ARGUMENT
                                                    REGARDING FOREIGN PROCEEDINGS AND
7                                                   INVESTIGATIONS

8                                                   The Court should exclude evidence, argument, or
                                                    expert testimony concerning investigations, reports,
9                                                   proceedings, findings, or judgments of foreign
                                                    regulators.
10

11

12          This motion is based on this Notice of Motion and Motion, Memorandum of Points and

13   Authorities, the Declaration of Justin P. Raphael and accompanying exhibits, and such other

14   matters as may be presented to the Court at the time of or before the hearing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1    **MOTION *IN LIMINE* NO. 7:  TO EXCLUDE EVIDENCE OR ARGUMENT**
     **REGARDING FOREIGN PROCEEDINGS AND INVESTIGATIONS**
2

3           Google moves to exclude evidence and argument concerning investigations, reports,

4    proceedings, findings or judgments of foreign antitrust regulators.  *See* Pretrial Order No. 2 for

5    Direct Purchaser Plaintiffs' Trial at 4, *In re Capacitors Antitrust Litig*, No. 3:14-cv-03264-JD,

6    ECF No. 2559 (N.D. Cal. Feb. 14, 2020) (Donato, J.) (excluding evidence of foreign proceedings).

7    Such evidence is not relevant and would only confuse and mislead the jury and unfairly prejudice

8    Google.  Plaintiffs' experts also should not be able to testify about or based upon foreign

9    regulators' investigations or findings.  The unfair prejudice and risk of confusion is particularly

10   acute in this case, in light of the findings in the *Epic v. Apple* case by another Court in this District

11   (and upheld by the Ninth Circuit), which applied U.S. law to substantially similar antitrust claims

12   by Epic.  It would be unfair for Plaintiffs to tell the jury about a decision from Brussels while

13   hiding a decision from Oakland.

14          *First*, evidence regarding foreign proceedings is not relevant because foreign regulators

15   apply foreign antitrust laws that are not at issue in these cases brought under U.S. law.  *See Sugar*

16   *Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04–10077 DSF (RZx), 2008 WL 4755611 (C.D. Cal. Jan.

17   7, 2008) (excluding judgment under foreign law as irrelevant).  Moreover, foreign investigations'

18   fact-gathering procedures are very different from those in the United States, undermining the

19   relevance of any factual findings in those investigations.  Foreign regulatory proceedings, for

20   example, do not allow Google to collect evidence using compulsory process or cross-examine

21   witnesses.  *Cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL

22   7803893, at *1 (N.D. Cal. Nov. 15, 2016) (declining to apply findings by European Commission

23   where defendant lacked ability "to take discovery and use compulsory process and the ability to

24   cross-examine witnesses," which made it "conceivable that a jury might rule differently than the

25   EC").  Indeed, Plaintiffs' experts rely on a report by the Competition & Markets Authority of the

26   United Kingdom that was not the product of any judicial proceeding whatsoever.

27          *Second*, findings or reports by foreign regulators are inadmissible under Rule 403.  The

28   probative value of foreign jurisdictions' findings of fact and law is minimal because they were

made under irrelevant legal standards.  Thus, "allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion." *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007).  Further, admitting evidence of foreign regulators' findings would invite the jury to rely improperly on what other tribunals have decided under foreign laws rather than deciding the facts itself under U.S. law.  *See, e.g.*, *Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7803893, at *2-3 ("If a jury hears . . . Defendants have been found liable by the EC, it will be very difficult for the jury not to find them liable as well."); *3Com Corp. v. Realtek Semiconductor Corp.*, No. C 03-2177 VRW, 2008 WL 783383, at *5 (N.D. Cal. Mar. 24, 2008) ("introducing the fact that a foreign court had fined 3Com for making the same charges it brings in this case would be highly prejudicial"); *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. Apr. 18, 2016) (excluding conclusions of report because "admitting [its] conclusions invites the jury to improperly substitute [its] findings—under a different standard and for a different purpose—for its own findings").

The probative value of foreign proceedings is lower and the potential for prejudice even higher given that several of the foreign proceedings Plaintiffs may rely on remain on appeal.  *See Rambus*, 2008 WL 282376, at *4 (excluding regulatory decision on appeal under Rule 403).  *Cf. Google LLC and Alphabet, Inc v. European Comm'n*, Case No. C-738/22 P, on appeal from *Google LLC and Alphabet, Inc. v. European Comm'n*, Case No. T-604/18, ECLI:EU:T:2022:541 (Sept. 14, 2022) (European Union); *Alphabet Inc & Ors v. CCI & Ors* (National Company Law Appellate Tribunal, Principal Bench, New Delhi – Competition Appeal (AT) No. 4 of 2023) (India); *Google LLC v. Competition Commission of India* (Civil Appeal No.4098/2023) (India).

In order to prevent that unfair prejudice, the Court would be required to instruct the jury on the differences between U.S. and foreign antitrust law, resulting in a distracting and confusing detour into comparative antitrust law during the trial.  Google also might need to explain why the foreign proceedings have no probative value, resulting in a distracting mini-trial. *See In re CRT Antitrust Litig.*, 2016 WL 7803893, at *2–3 (excluding European Commission ("EC") decision where "Defendants would be required to respond to it by demonstrating what evidence was not before the EC; to cross-examine the evidence that was before the EC; and, in essence, to conduct a

-59-

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

mini-trial of the EC proceeding"); *accord In re Seroquel*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. Mar. 11, 2009) (admission of foreign-agency reports would "result in a series of 'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the three foreign countries involved," which would "confuse the jury and waste everyone's time").

*Third*, for similar reasons, the findings and reports of foreign regulators are inadmissible hearsay that do not fall within any exception, including the exception for public reports that have sufficient indicia of trustworthiness.  Fed. R. Evid. 803(8)(c).  For example, the United Kingdom Competition & Markets Authority has "chosen not to publish" some information and "anonymised [sic] parties' submissions" that it relied upon in preparing its report on mobile ecosystems. Competition and Markets Authority, *Mobile Ecosystems Market Study Final Report* at 8 (June 10, 2022) (UK), https://www.gov.uk/cma-cases/mobile-ecosystems-market-study.

Plaintiffs also should not be able to introduce expert testimony based on findings or reports by foreign regulators.  *See, e.g.*, *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 477 (S.D.N.Y. 2016) (expert "will not be allowed to opine on foreign regulatory issues" where his "proposed testimony in this area is a recitation of reports and regulatory actions with little or no analysis").  An economist's testimony that he reached a conclusion on a particular issue because the European Commission or the Competition Commission of India reached that conclusion invites the jury to do the very same thing.  At a minimum, Plaintiffs' experts should not be able to offer testimony based on findings or reports of foreign regulators if Google cannot introduce evidence of the *Epic v. Apple* case in this District, or refer to or cross-examine witnesses regarding those findings.  Indeed, the Match Plaintiffs' expert disclaimed any opinion "that there's greater economic significance to decisions of the European Commission or reports of regulators in the United Kingdom than a federal court decision in Oakland."  (Ex. 2, Schwartz Dep. 41:24–42:6.)

1

## INDEX OF DOCUMENTS TO MOTION *IN LIMINE* NO. 7 REGARDING FOREIGN PROCEEDINGS AND INVESTIGATIONS

2

3       The table below lists exemplary documents that are affected by this motion.  Defendants'

4   motion is not limited to the documents on this list, but includes documents covered by the

5   substance of this motion that Plaintiffs' may identify, including in Plaintiffs' list of rebuttal

6   exhibits.

7       The documents below are those Defendants have thus far identified on Plaintiffs' initial

8   exhibit lists.  On those lists, Plaintiffs reported that each of the below documents is being offered

9   for the "Purpose": "Proof of Defendants' liability for antitrust violations, unreasonable restraints

10  of trade, unfair competition and/or tortious interference; proof of Defendants' discovery conduct;

11  proof of appropriate injunctive relief; proof of resulting damages; and/or proof rebutting

12  allegations in Defendants' Answers and Counterclaims against Plaintiffs."

13

14

| Doc No. | Bates | Name / Description |
|---------|-------|--------------------|
| A | | UK CMA report, 2022 (06/10/2022) |
| B | | European Commission Decision relating to a proceeding under Article 102 of the Treaty on the Functioning of the European Union (the Treaty) and Article 54 of the EEA Agreement in Case AT.40099 - Google Android |
| C | | European Commission Opinion of the Advisory Committee on restrictive practices and dominant positions at its meeting on 6 July 2018 concerning a draft decision in Case AT.40099 - Google Android |
| D | | European Commission Opinion of the Advisory Committee on restrictive practices and dominant positions at its meeting on 17 July 2018 concerning a draft decision in Case AT.40099 - Google Android |
| E | | European Commission Decision relating to a proceeding under Article 102 of the Treaty on the Functioning of the European Union and Article 54 of the EEA Agreement in Case AT.40099 - Google Android |
| F | | European Commission Google Android Appeal Judgment |
| G | | Competition Commission of India, Case No. 39 of 2018 |
| H | | Competition Commission of India, Case No. 07 of 2020, No. 14 of 2021, No. 35 of 2021 |

| Doc No. | Bates | Name / Description |
|---|---|---|
| I | | South Korea KFTC Decision (Translated) available at https://www.ftc.go.kr/ www/selectReportUser View.do?key= 1 0&rpttype= 1 &report data no=10005 |
| J | | Document titled, "Competition & Markets Authority: Mobile ecosystems - Market study final report" |
| K | GOOG-PLAY-005613457 | Turkish Dkt 2015-2-036 - TCA Investigation Second Writ (04/16/2016) |

1   **OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 7.**

2       Google's Motion *in limine* to exclude evidence of foreign antitrust investigations concerning the

3   Google Play Store should be denied.  Evidence regarding the *existence* of foreign investigations is both

4   highly probative and admissible to show the motivations behind Google's changes to its business

5   practices—namely, that changes Google has made to its conduct in the relevant market were driven by

6   regulatory scrutiny rather than by competition.  Moreover, opinion testimony by Plaintiffs' experts that

7   relies on facts and data from reports by foreign regulators is admissible.

8   **I.    EVIDENCE OF THE EXISTENCE OF FOREIGN INVESTIGATIONS IS
9           ADMISSIBLE.**

10      At trial, Google is likely to tout recent changes to its Payments Policy and service fee as beneficial

11  to consumers and responsive to supposed competitive challenges.  Evidence of foreign regulatory

12  investigations is relevant to show that these changes to Google's conduct have been motivated not by

13  *competitive* pressure, but by mounting *regulatory* pressure.

14      Google's internal discussions prove "[t]he objective of [Google] Play Policy enforcement on both

15  [first-party and third-party] Apps is ***not driven by economic considerations***.  [Rather, the] ***Goal is to (1)***

16  ***address Regulatory risk to Google*** and (2) preserve Play's business model".  (Even Decl. Ex. 11,

17  GOOG-PLAY-009212734 at -734 (emphasis added); Even Decl. Ex. 12, GOOG-PLAY-011675561 at -

18  633 ("[Form of payment] expansion is ***critical to . . . mitigating regulatory issues***." (emphasis added)).)

19  As a monopolist, Google has been able to "make no changes" to its anticompetitive conduct unless and

20  until developer "agitation" and regulatory pressure threaten to boil over.  (Even Decl. Ex. 9, GOOG-

21  PLAY-007819062 at -064 (Google's "Conservative approach . . . is to ***comply with the Korean law***,

22  allow alternate billing & charge a service fee ***but otherwise make no changes***. . . . This approach

23  addresses the major agitation of Apps developers"  (emphasis added)); Even Decl. Ex. 13, GOOG-

24  PLAY-007868187 at -202.)  The threat posed by foreign antitrust investigations has informed Google's

25  "global approach" to its billing practices, including in the relevant market.  (Even Decl. Ex. 9, GOOG-

26  PLAY-007819062 at -097; Even Decl. Ex. 14, GOOG-PLAY-004119228.R at -239.R.)    Most

27  significantly, these foreign investigations directly motivated Google's recent introduction of User

28  Choice Billing and its change from a 30% to 15% fee on certain in-app transactions in the relevant

1    market.  (*See, e.g.*, Even Decl. Ex. 13, GOOG-PLAY-007868187 at -239 ("Assuming billing optionality

2    **inevitable** due to regulatory/litigation environment", "Billing optionality is **part of a broader package**

3    of changes Google makes (with 15% for $1M already announced)". (emphasis in original)).)

4         *Second*, evidence of foreign antitrust investigations would not be unduly prejudicial.  Plaintiffs

5    do not seek to introduce the *outcome* of these investigations as evidence of wrongdoing, but only to

6    introduce the *existence* of such investigations to explain the reasons for Google's reactive conduct.

7    Accordingly, there would be no need for detours through foreign legal principles or findings, and there

8    would be little risk of confusing the jury.  *See Brown v. DirecTV, LLC*, 2022 WL 2117803, at *2 (C.D.

9    Cal. May 19, 2022) (denying motion to exclude where the evidence was "not confusing", "directly

10   relevant to [defendant's] theory of the case" and "essential to providing context" for asserted conduct).

11   Google's prejudice cases are therefore inapplicable.  For example, the language Google quotes from *In*

12   *re Cathode Ray Tube Antitrust Litigation* and *3Com Corp. v. Realtek Semiconductor Corp.* relates to the

13   admissibility of fines issued in foreign proceedings, rather than the proceedings' existence.  2016 WL

14   7803893, at *1-2 (N.D. Cal. Nov. 15, 2016); 2008 WL 783383, at *5 (N.D. Cal. Mar. 24, 2008).  In fact,

15   *In re Cathode Ray Tube* went on to **deny** the defendant's motion "to exclude all evidence or mention of

16   any antitrust investigations in foreign jurisdictions".  2016 WL 7803893, at *3.

17        *Third*, admitting evidence of foreign investigations for the purpose of explaining Google's

18   business motives is not inadmissible hearsay.  *See Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188, 217

19   n.36 (9th Cir. 1957) (noting evidence "may also be admissible . . . for limited and nonhearsay purposes,

20   such as to show [a] pattern of business conduct, contemporary explanations of ambiguous conduct,

21   notice, or motive"); *Sanders v. Arnold*, 2017 WL 3168521, at *13 (N.D. Cal. July 26, 2017) (emphasizing

22   that out-of-court statements "could properly be admitted for a nonhearsay purpose, such as[] explaining

23   conduct").

24   **II.    EXPERT OPINIONS THAT RELY ON FOREIGN REPORTS SHOULD BE
          ADMITTED UNDER RULE 703.**

25

26        Google's argument that Plaintiffs "should not be able to introduce expert testimony based on

27   findings or reports by foreign regulators" is without merit.  Under Rule 703, "[i]f [the underlying facts

28   or data are] of a type reasonably relied upon by experts in the particular field in forming opinions or

inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted". Fed. R. Evid. 703. Experts "are entitled to rely on hearsay in forming their opinion". *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001). Accordingly, opinion testimony by Plaintiffs' experts that relies on facts and data from foreign regulators' reports is admissible even if the reports themselves are inadmissible.

For example, Google argues that the U.K. Competition & Market Authority's ("CMA") "Mobile Ecosystems Market Study Final Report" is inadmissible hearsay. But the CMA report includes information such as industry pricing data and survey results regarding the extent to which smartphone users considered switching from Android to iOS devices and the reasons they did not do so. *See* Competition and Markets Authority, *Mobile Ecosystems Market Study Final Report* at 29-49 (June 10, 2022) (UK), https://www.gov.uk/government/publications/mobile-ecosystems-market-study-final-report. This is *exactly* the type of "facts and data" on which an economic expert would ordinarily rely to analyze market power and competitive effects. Tellingly, Google does not address Rule 703 in its motion. And Google's only cited authority is inapposite. In *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 477 (S.D.N.Y. 2016), unlike here, the plaintiffs' expert did not rely on regulatory data or findings as inputs to support the expert's independent opinion. She instead proposed to give testimony that was only a "recitation of reports and regulatory actions, with little or no analysis" of her own.

Google's motion includes a final Hail Mary, that "[a]t a minimum, Plaintiffs' experts should not be able to offer testimony based on findings or reports of foreign regulators if Google cannot introduce evidence of the *Epic v. Apple* case in this District, or refer to or cross-examine witnesses regarding those findings". (Def.'s Mot. 7 at 17.) These issues are not related, but in any event, Plaintiffs' position on the admissibility of both related foreign and domestic antitrust proceedings is consistent: evidence of the *existence* of such proceedings is permitted but evidence of the *outcome* is not. Moreover, as explained in Plaintiffs' Motion *in Limine* No. 1, *Epic v. Apple* involved a completely different antitrust defendant and market, unlike the foreign proceedings here.

For the foregoing reasons, the Court should reject Google's request to exclude evidence regarding the existence of foreign antitrust proceedings and expert opinions that rely on facts and data in foreign regulatory reports.

1   DATED:  October 5, 2023                    Respectfully submitted,

2

3                                              By :

4                                                      */s/ Glenn D. Pomerantz*
                                                   Glenn D. Pomerantz

5                                                  Glenn D. Pomerantz, S.B. #112503
                                                   glenn.pomerantz@mto.com
6                                                  Kuruvilla Olasa, S.B. #281509
                                                   kuruvilla.olasa@mto.com
7                                                  Nicholas R. Sidney, S.B. #308080
                                                   nick.sidney@mto.com
8                                                  **MUNGER, TOLLES & OLSON LLP**
                                                   350 South Grand Avenue, Fiftieth Floor
9                                                  Los Angeles, California 90071
                                                   Telephone: (213) 683-9100
10                                                 *Counsel for Defendants Google LLC, et al.*

11                                                 Kyle W. Mach, S.B. #282090
                                                   kyle.mach@mto.com
12                                                 Justin P. Raphael, S.B. #292380
                                                   justin.raphael@mto.com
13                                                 Emily C. Curran-Huberty, S.B. #293065
                                                   emily.curran-huberty@mto.com
14                                                 Dane P. Shikman, S.B. #313656
                                                   dane.shikman@mto.com
15                                                 Rebecca L. Sciarrino, S.B. #336729
                                                   rebecca.sciarrino@mto.com
16                                                 **MUNGER, TOLLES & OLSON LLP**
                                                   560 Mission Street, Twenty Seventh Floor
17                                                 San Francisco, California 94105
                                                   Telephone: (415) 512-4000
18

19                                                 Jonathan I. Kravis, *pro hac vice*
                                                   jonathan.kravis@mto.com
20                                                 Lauren Bell, *pro hac vice*
                                                   Lauren.Bell@mto.com
21                                                 **MUNGER, TOLLES & OLSON LLP**
                                                   601 Massachusetts Avenue NW, Suite 500E
22                                                 Washington, D.C. 20001
                                                   Telephone: (202) 220-1100

23

24

25

26

27

28

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, *pro hac vice*
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Counsel for Defendants Google LLC, et al.*

DEFENDANTS' OMNIBUS MOTIONS *IN LIMINE* AND PLAINTIFFS' RESPONSES THERETO
Case Nos. 3:21-md-02981-JD, 3:20-cv-05761-JD, 3:20-cv-05671-JD, 3:21-cv-05227-JD, 3:22-cv-01746-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **E-FILING ATTESTATION**

      I, Glenn D. Pomerantz, am the ECF User whose ID and password are being used to file this document and the papers submitted in connection with it.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above and in the papers submitted in connection with this motion have concurred in this filing.

                                                         */s/ Glenn D. Pomerantz*
                                                           Glenn D. Pomerantz